# **<u>EXHIBIT E</u>**

DocuSign Envelope ID: 3A7E13D4-2973-4897-9B57-D27EEEA065DB

## AT-WILL EMPLOYMENT AGREEMENT

**THIS AT-WILL EMPLOYMENT AGREEMENT** ("Agreement") is entered into on this _____ 4/25/2022 _____ by and between OtterSec LLC, a Wyoming limited liability company (the "Company"), and the person identified as Employee in the signature line below ("Employee").

1. **AT-WILL EMPLOYMENT**. Employee understands and agrees that Employee's employment with the Company is "at will" for no definite term and, as such, can be terminated by the Company for any reason or cause or without any reason or cause at any time so long as the termination does not violate federal, state, or local law. Nothing contained in this Agreement is intended to or shall be interpreted to create employment for a definite term. This Agreement will be effective as of the date Employee affixes Employee's signature below. Employee understands and agrees that any work Employee performs on behalf of the Company shall be referred to herein as the "Services."

2. **EMPLOYEE'S REPRESENTATIONS**. Employee affirms that all oral and written statements made by Employee to Company representatives during the hiring process are true and complete.

3. **CONFIDENTIAL INFORMATION**. During the term of this Agreement, Employee has or will receive information that is proprietary and confidential to the Company ("Confidential Information"), including but not limited to customer lists and names, customer information, vendors, intellectual property, inventions, discoveries, financial information, policies, procedures, operations, plans, methods of doing business, strategic plans, computer systems and finances, intellectual property (whether or not reduced to writing and in any and all stages of development), information, data, trade secrets, know-how, ideas, processes, computer programs, source code, flowcharts, logic diagrams, pricing policies, forecasts, research, designs, drawings, formulas, marketing techniques and plans, and anything else of a similar nature. The term "Confidential Information" as used herein shall encompass all such information in all forms (*i.e.* electronic, written or oral) whether it originates from the Company or from third parties that have shared such Confidential Information with the Company and/or Employee.

     (a)  **Confidential Information of Third Parties.** Employee understands that, from time to time, Confidential Information may be submitted to the Company by third parties (*i.e.* by other persons or entities) and that said Confidential Information falls within the scope of this Agreement. Employee further understands that as a condition for receiving said Confidential Information, the Company may enter into an agreement with said third party restricting or prohibiting use, transfer or disclosure of said Confidential Information. Employee agrees to respect any such agreement and to avoid any action or inaction that is inconsistent with the obligations lawfully imposed on the Company thereunder and to treat said Confidential Information with the same (or greater) degree of care than is afforded to the Company's Confidential Information addressed herein.

     (b)  **Delivery of Confidential Information on Termination of Agreement.** Employee agrees that all Confidential Information which Employee creates or to which Employee has access as a result of Employee's performance of the Services is, and shall remain, the sole and exclusive property of the Company. In addition, all documents, records and files, in any media of whatever kind and description, relating to the business, present or otherwise, of the Company and any copies, in whole or in part, thereof (collectively, the "Documents"), whether or not prepared by Employee, are and shall remain the sole and exclusive property of the Company. Upon the termination of this Agreement for any reason, and at such other times as may be specified by the Company, Employee shall immediately deliver to the Company any and all Confidential Information and Documents (and all copies thereof including, without limitation, all electronically stored versions) and all other property of the Company then in Employee's possession or under Employee's control. Employee agrees that Employee will not copy Company information to personal devices and/or accounts without written authorization from the Company and, that even with authorization, Employee must delete and/or remove such copied information upon request by the Company.

     (c)  **No Use or Disclosure of Confidential Information**. Except as necessary in the performance of the Services or as expressly authorized in writing by the Company, Employee shall not directly or indirectly: (a) disclose, reveal or make available any Confidential Information to any other person or entity; (b) aid, encourage or allow any other person or entity to gain possession of or access to any Confidential Information; (c) use, sell, transfer or exploit any Confidential Information or aid, encourage or allow any other person or entity to use, sell or exploit any Confidential Information; (d) exercise judgment or perform analysis based upon knowledge of Confidential Information; or (e) otherwise enter into any agreement or understanding

(oral or written) with any party, or otherwise circumvent, avoid, bypass, and/or obviate the Company with respect to its relationship with any party whose identity is Confidential Information, including any work to be performed by the Company with respect thereto. This Section 3 shall survive the expiration of this Agreement.

(d)     **Immunity.** Pursuant to 18 U.S.C. § 1833(b), an individual shall not be held criminally liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b). An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

4.   **WORK FOR HIRE**. Employee expressly agrees that everything Employee creates, writes or develops in the course of providing the Services shall be "works made for hire" as defined by U.S. copyright law and the property of the Company, including all inventions, technology, programs, text, ideas, computer code, processes, trade secrets, techniques, operating ideas, Confidential Information, processes and materials, whether or not published, patented, copyrighted, registered or suitable therefor, and all intellectual property rights therein, that are made, developed, written, conceived or first reduced to practice by Employee in part or in whole, whether alone or with others, during Employee's employment with Company, to the extent they relate to the Company's business (including future or anticipated business) or are developed using the Company's time, equipment or materials (collectively, "Works"). To the extent such "work for hire" doctrine may be legally inapplicable for any reason, Employee hereby assigns to the Company all right, title and interest in the Works, including all rights of patent, trademark, copyright and other intellectual property rights, and agrees to execute at the Company's request subsequent documents as further evidence of this assignment. Employee further assigns to the Company all right, title and interest in any invention, patentable or not, made or conceived solely or jointly during the course of developing the Services. Employee also agrees to assist the Company, at the Company's expense, as reasonably requested in any efforts the Company may make to obtain a patent or other intellectual property protection with respect to the Works or any portion thereof. If Employee has any rights to the Works that cannot be assigned to the Company, during the term of such rights Employee unconditionally and irrevocably grants to the Company an exclusive, irrevocable, perpetual, worldwide, fully-paid and royalty-free license, with rights to sublicense through multiple levels of sublicensees, to reproduce, create derivative works of, distribute, publicly perform and publicly display, by all means now known or later developed, such rights and to use, make, have made, or offer for sale, by all means now known or later developed, such rights. Employee agrees to promptly disclose the existence, use and manner of operation of any Works to the Company. For the avoidance of doubt, the parties hereto acknowledge and agree that (a) the term "Works" shall not include any of the foregoing created prior to the date hereof or any tools, methodologies, architecture, code, programs or processes used to create the Works, and (b) Employee possesses certain skills, knowledge, know-how, experience, techniques, methods and tools by which Employee performs services and none of such shall be deemed Works.

(a)     **Ownership of Rights.** The Company shall be the sole owner of the Works and all rights therein throughout the world, including without limitation all intellectual property rights therein. Employee specifically waives any and all "artist's rights" or "moral rights" Employee may have with respect to the Works pursuant to any law or statute. Employee and the Company agree that the Services and Works provided to the Company pursuant to this Agreement may be used by the Company in its sole discretion.

(b)     **Warranties.** Employee represents and warrants (a) that the Works provided by Employee to the Company are and shall be  Employee's original work and will not infringe any copyright or other intellectual property rights of any third party, invade any right of privacy, contain any libelous material, or infringe or violate any other right of any third party; (b) that Employee is able to perform the Services specified in this Agreement and does not have any understanding or agreement with anyone else which restricts  Employee's ability to perform such Services; and (c) that any Services Employee provides and Works Employee develops for or discloses to the Company will not in any way be based upon confidential or proprietary information derived from any source other than the Company, unless Employee is specifically authorized in writing by such source and by the Company to use such proprietary information.

5.   **RESTRICTIVE COVENANTS**.

(a)     **Definitions.** The following defined terms shall be used in these restrictive covenants:

"Restricted Area" shall be worldwide. Employee understands and agrees that this broad Restricted Area is necessary, given that the Company operates online, and its Clients may be located anywhere in the world.

"Client" shall mean any person or entity that has a business relationship with the Company such that the Company provides services to the person or entity.

"Prospective Client" shall mean any person or legal entity that has sent or received communication to or from the Company at any time within one year prior to the termination of this Agreement, or at any time during the Non-solicitation Period, regarding the possibility of becoming a Client. Prospective Clients shall include former Clients, to the extent they satisfy the definition above as a Prospective Client.

"Non-solicitation Period" shall mean the period of time during the term of this Agreement and for two years following the termination this Agreement for any reason.

**(b)**    **Non-Competition.** The business of the Company is highly competitive, and Employee shall have direct access to the Company's customers and Confidential Information. Due to Employee's access to Company's Confidential Information, the Company's business and its ability to retain clients and attain its goals could be materially jeopardized and irreparably and continually damaged if Employee competes with the Company or assist other persons to compete with the Company. Accordingly, Employee shall abide by the non-competition restrictions contained herein and acknowledges that they are reasonable and necessary for the protection of the immediate interests of the Company and that any violation of these restrictions could cause substantial injury to the Company. During Employee's employment with the Company and for a period of one year following the cessation of Employee's employment with the Company for any reason, Employee shall not—either directly or indirectly—without the express written permission of the Company, be employed by, own, manage, operate, contract with, consult for, control, have any financial interest in, or lend his/her name to any person or entity engaged in, a business or enterprise that competes with the Company within the Restricted Area. Employee shall not undertake any planning for any outside business that will engage in a business competitive with the Company within the Restricted Area.

**(c)**    **Non-solicitation.** As an inducement to the Company to enter into this Agreement, Employee shall not, without the Company's prior written consent, on his/her own account or as an employee, agent, or independent contractor of any other person, firm or entity or in any other capacity, do any of the following during the Non-solicitation Period:

    (i)    Directly or indirectly solicit any Client or Prospective Client for any commercial purpose that is not in the interest of the Company, including but not limited to, obtaining business from the Client or Prospective Client for a person or entity other than the Company or inducing the Client or Prospective Client to discontinue or diminish its relationship with the Company; and/or

    (ii)    Directly or indirectly—regardless of who initiates contact—do business with or provide services for any Client or Prospective Client; and/or

    (iii)    Directly or indirectly notify any Client or Prospective Client of the termination, or prospective termination, of Employee's engagement with the Company for the purpose of notifying the Client or Prospective Client of Employee's availability to provide services at any other location; and/or

    (iv)    Directly or indirectly solicit or induce any employee, agent, or independent contractor of the Company to discontinue his/her employment or business relationship with the Company; and/or

    (v)    Directly or indirectly solicit any vendor of the Company to discontinue or diminish its relationship with the Company.

**(d)**    **Limited Waiver of Covenants under Exceptional Circumstances.** The Company may consider modifying and/or waiving the restrictive covenants in this Agreement in exceptional circumstances in which the Company determines—in its sole discretion—that certain activities in which the Employee might engage, which may otherwise technically violate the restrictive covenants herein, would not significantly harm the Company's legitimate, protectible interests. Any such request for modification or waiver must be in writing and can only be authorized in writing signed by the Company's Founder.

DocuSign Envelope ID: 3A7E13D4-2973-4897-9B57-D27EEEA065DB

**(e)**   **Fairness of Covenants.** Employee agrees that the duration and scope of activities restricted under these restrictive covenants are reasonable and necessary to protect the Company's legitimate business interests. If any court determines that these provisions or any portion of these provisions are unenforceable because of the duration or scope of activities restricted hereunder, such court shall have the power to and shall reduce such duration or scope to the maximum allowed by applicable law. In its reduced form, such provision shall then be enforced, and Employee shall abide by such provisions as altered.

**(f)**   **Extension of Covenants.** In the event of Employee's breach of any of Employee's obligations under these restrictive covenants, the periods stated under such restrictive covenants shall be automatically extended for the same amount of time during which Employee was in breach.

6.   **ENFORCEMENT; REMEDIES**. Employee acknowledges that if Employee breaches any obligation under this Agreement, including a breach of provisions regarding confidentiality or non-solicitation, the Company will suffer immediate and irreparable harm and damage and that a remedy at law would be inadequate. Employee therefore agrees that upon such breach or threatened breach of any obligation under this Agreement, in addition to any and all legal remedies, Company shall be entitled to any injunctive relief available without the posting of a bond or other security, in order to prevent or restrain any such breach by Employee or by  Employee's partners, agents, representatives, employees, affiliates and/or any and all persons directly or indirectly acting for or with Employee. This paragraph shall not be construed as an election of any remedy, or as a waiver of any right available to Company under this Agreement or the law, including the right to seek damages from Employee for a breach of any provision of this Agreement.

7.   **SEVERABILITY**. If any part of this Agreement violates any statute or public policy, that part will have no effect, and the rest of the Agreement shall be fully enforceable. If any part of this Agreement is unenforceable, the court shall narrow its scope and then enforce that part to the maximum effect permissible. The term "Company" wherever used herein includes any current or future subsidiaries or affiliates of the Company.

8.   **FINAL AGREEMENT**. This Agreement constitutes the final complete and exclusive agreement between the Company and Employee concerning the subject matter of this Agreement. Any modification, rescission or amendment of this Agreement shall not be effective unless made in a writing executed by both parties.

9.   **WAIVER**. Any waiver of, or promise not to enforce, any right under this Agreement shall not be enforceable unless evidenced by a writing signed by the party making said waiver or promise. No claim nor right arising out of a breach of this Agreement can be discharged in whole or in part by a waiver or renunciation of the claim or right unless said waiver or renunciation is evidenced by writing signed by the aggrieved party. Any waiver or renunciation by a party of any claim or right arising out of a breach by the other party of any provision of this Agreement shall not be deemed a waiver or renunciation of any claim or right arising out of a subsequent breach of the same provision and shall not affect said other party's obligation to comply with the same provision in the future.

10.   **ATTORNEYS' FEES**. If any party is required to bring any action to enforce the terms of this Agreement, the prevailing party will be entitled to attorneys' fees.

11.   **HEADINGS**. The subject headings of this Agreement are included for purposes of convenience only, and shall not affect the construction of any of the provisions of this Agreement.

12.   **ASSIGNMENT**. Company may assign this Agreement to a successor to all or part of its business or assets without restriction.

13.   **EMPLOYMENT-AT-WILL ACKNOWLEDGMENT**. Employee understands and agrees that this Agreement does not constitute a contract of employment for a specific term and that either the Company or Employee may terminate Employee's employment at any time, with or without notice or cause.

14.   **APPLICABLE LAW**. This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming, without regard to conflicts of law. Any dispute concerning this Agreement must be brought in the state or federal courts located in Wyoming.

Company and Employee have executed this Agreement to be effective as of the date first written above.

**OTTERSEC LLC:**

By: _Robert Chen_

Printed Name: Robert Chen

Title: Founder

**EMPLOYEE:**

_Harikesh Kailad_

Printed Name: Harikesh Kailad

Address: 5304 Bangor Drive, Kensington MD

Email: harikeshkailad@gmail.com


**EMPLOYEE'S PARENT/GUARDIAN:**

Printed Name: Gopal Kailad


*Remainder of page intentionally left blank*

### ADDENDUM TO AT-WILL EMPLOYMENT AGREEMENT

**THIS ADDENDUM** amends the **AT-WILL EMPLOYMENT AGREEMENT** ("Agreement") entered into between Employee and the Company.  All defined terms used in the Agreement are incorporated herein.

1.   **CONSIDERATION**. As additional consideration for entering into the Agreement, and notwithstanding Paragraphs 1 and 13 of the Agreement, for a period of 90 days after Employee signs this Addendum, Employee shall not be deemed an at-will employee and may only be discharged for Cause as defined in this Addendum. Upon the expiration of the 90-day period after Employee signs this Addendum, however, Employee shall again be deemed an at-will employee in accordance with the terms of the Agreement.

2.   **CAUSE**. The term "Cause" shall mean any of the following: (i) willful misconduct or gross negligence in performance of the Services; (ii) a material breach of the provisions of the Agreement; (iii) repeated failure to perform one or more of Employee's essential duties and responsibilities under the Agreement; or (iv) indictment or conviction of, or a plea of nolo contendere by, Employee for a (A) a felony or (B) a crime involving moral turpitude.

This addendum is executed on the _____4/25/2022_____.

**OTTERSEC LLC:**

By: _Robert Chen_
 90E7105AC07D400...

Printed Name: ___Robert Chen___

Title: ___Founder___

**EMPLOYEE:**

By: _Harikesh Kailad_
 CF217390A9B8408...

Printed Name: ___Harikesh Kailad___

Address: ___5304 Bangor Drive, Kensington MD___

Email: ___harikeshkailad@gmail.com___
 @

*Remainder of page intentionally left blank*