## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LI FEN YAO, as Administrator of the
Estate of Sam Mingsan Chen,

               Plaintiff,

     v.

ROBERT CHEN, OTTER AUDITS
LLC, and RC SECURITY LLC,

               Defendant.

Case No. 8:23-cv-00889-TDC

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
## FOR LACK OF PERSONAL JURISDICTION

## <u>TABLE OF CONTENTS</u>

**Pages(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

   A.   Nature of the Case ................................................................................................ 3

   B.   Business Activities, Operations and Revenue in Maryland ................................. 7

   C.   Communications and Other Persistent Conduct Directed to Maryland ............. 9

I     LEGAL STANDARD ....................................................................................................... 11

II    THE JURISDICTIONAL CONTACTS OF OTTERSEC ARE IMPUTED TO THE
SUCCESSOR DEFENDANTS ......................................................................................... 12

III   JURISDICTION OVER DEFENDANTS IS PROPER UNDER THE MARYLAND LONG
ARM STATUTE AND THE FOURTEENTH AMENDMENT .......................................... 14

   A.   Jurisdiction Is Authorized Under The Maryland Long Arm Statute .............................. 14

   B.   The Exercise of Jurisdiction Satisfies Due Process ....................................... 16

      1.   Defendants Purposefully Availed Themselves of the Privilege of Conducting Business
in Maryland ....................................................................................... 17

      2.   Plaintiff's Claims Arise Out of Activities Directed at Maryland .............................. 19

      3.   The Exercise of Jurisdiction is Constitutionally Reasonable ...................................... 19

IV   CONCLUSION .................................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*A Helping Hand, LLC v. Balt. Cty.*,

    515 F.3d 356 (4th Cir. 2008) ................................................................ 12

*Aerovation v. Airtec, Inc.*,

    2019 U.S. Dist. LEXIS 139340 (D. Md. Aug. 16, 2019) ............................ 16, 17, 18

*Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*,

    460 F. Supp. 3d 621 (D. Md. 2020) ........................................................ 16

*Auto USA, Inc. v. DHL Express (USA), Inc.*,

    2018 U.S. Dist. LEXIS 30084 (D. Md. Feb. 26, 2018) ............................ 20

*Bahn v. Chicago Motor Club Ins.*,

    98 Md. App. 559 (1993) ........................................................................ 14

*Botts v. Johns Hopkins Univ.*,

    2021 U.S. Dist. LEXIS 76788 (D. Md. Apr. 21, 2021) ............................ 20

*Bradley v. DentalPlans.com*,

    617 F. Supp. 3d 326 (D. Md. 2022) ........................................................ 16, 18

*Bristol-Myers Squibb v. Superior Ct. of CA*,

    137 S. Ct. 1773 (2017) .......................................................................... 15

*Brown Inv. Advisory & Tr. Co. v. Allen*,

    2020 U.S. Dist. LEXIS 181067 (D. Md. Sept. 29, 2020) ........................ 10

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985) .............................................................................. 18

*Calder v. Jones*,

    465 U.S. 783 (1984) .............................................................................. 15

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,

    334 F.3d 390 (4th Cir. 2003) ................................................................ 10

*Chavakula v. Christian Heritage Broad., Inc.*,

    2023 U.S. Dist. LEXIS 34586 (D. Md. Feb. 28, 2023) ............................ 20

*Christian Science Bd. v. Nolan*,

    259 F.3d 209 (4th Cir. 2001) ................................................................ 13

*City of Richmond v. Madison Management Group, Inc.*,

   918 F.2d 438 (4th Cir. 1990) ......................................................................... 11, 12

*CoStar Realty Info., Inc. v. Field*,

   612 F. Supp. 2d 660 (D. Md. 2009) ....................................................................... 13

*Crussiah v. Inova Health Sys.*,

   2015 U.S. Dist. LEXIS 156751 (D. Md. Nov. 19, 2015) ................................. 13, 15

*CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*,

   764 F. Supp. 2d 745 (D. Md. 2011) ....................................................................... 19

*CX Reins, Co. v. Leader Rlty. Co.*,

   252 F. Supp. 3d 439 (D. Md. 2017) ....................................................................... 15

*Duris v. Erato Shipping, Inc.*,

   684 F.2d 352 (6th Cir. 1982) ................................................................................. 13

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,

   141 S. Ct. 1017 (2021) ........................................................................................... 18

*Fox v. DRA Services, LLC*,

   2012 U.S. Dist. LEXIS 202767 (D. Wyo. May 17, 2012) ..................................... 15

*Hartford Mut. Ins. Co. v. Hoverzon, LLC*,

   2021 U.S. Dist. LEXIS 71263 (D. Md. Apr. 13, 2021) .......................................... 11

*Johns Hopkins Health v. Al Reem Gen. Trading & Co.*,

   374 F. Supp. 2d 465 (D. Md. 2005) ....................................................................... 14

*Johnson-Howard v. Aecom Special Missions Servs.*,

   434 F. Supp. 3d 359 (D. Md. 2020) ....................................................................... 10

*Mylan Labs., Inc. v. Akzo, N.V.*,

   2 F.3d 56 (4th Cir. 1993) ....................................................................................... 11

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,

   416 F.3d 290 (4th Cir. 2005) ................................................................................. 10

*Ritz Camera Centers v. Wentling Camera Shops*,

   982 F. Supp. 350 (D. Md. 1997) ............................................................................ 18

*St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*,

   691 F. Supp. 2d 626 (D. Md. 2010) ....................................................................... 17

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ........................................................................................ 16, 18

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................................ 15

*Young v. Swirsky*,
   2015 U.S. Dist. LEXIS 144671 (D. Md. Oct. 26, 2015) .................................................... 11

**Statutes**

28 U.S.C. § 1404 ........................................................................................................................ 20

28 U.S.C. § 1406 ........................................................................................................................ 20

Md. Code Ann., Corps. & Ass'ns § 1-401(a) ........................................................................... 17

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) .......................................................................... 13

11265745.2

## PRELIMINARY STATEMENT

Plaintiff Li Fen Yao ("Plaintiff") is the administrator of the estate (the "Estate") of her late husband, Sam Mingsan Chen ("Sam" or "Sam Chen"). Sam Chen was one of two members of OtterSec LLC ("OtterSec"), until passing away in a car accident on July 13, 2022. Defendant Robert Chen ("Robert" or "Robert Chen") was the other member. This action arises out of Robert's brazen scheme to steal the Estate's interest in OtterSec.

As detailed in the Complaint, after explicitly threatening to "dissolve" OtterSec "and reform it" if Sam Chen did not agree to a buy-out, Defendant Robert Chen secretly formed two companies in South Dakota on September 13, 2022, Defendants Otter Audits LLC ("Otter Audits") and RC Security LLC ("RC Security," and together with Otter Audits, the "Successor Defendants"). Next, Robert unilaterally pushed through, over the Estate's objection, a pretextual dissolution of OtterSec on October 6, 2022, and seized control over a wind-down process that he shrouded in secrecy. Robert then took OtterSec's assets, property, employees, and clients and transferred them to his new companies, the Successor Defendants Otter Audits and RC Security, and continued the exact same business as OtterSec's, using OtterSec's name.

The Complaint sets forth, over the course of 164 paragraphs, the facts supporting Plaintiff's eight causes of action and personal jurisdiction over Defendants in Maryland, including how: (a) Robert knowingly entered into a business relationship with individuals located in Maryland to form, own, and operate OtterSec; (b) Robert engaged in extensive communications with, and made numerous false and misleading statements and omissions to, individuals located in Maryland relating to that business; (c) Robert transmitted and entered into agreements with Maryland residents for that business; (d) a significant portion of OtterSec's business operations and asserts

1

were based in Maryland, (e) OtterSec generated substantial revenue from activities and services in Maryland, and (f) Defendants committed several intentional torts injuring Plaintiff in Maryland.

Nevertheless, alternatively disregarding or gainsaying the allegations of the Complaint, Defendants contend in their motion that "[t]he alleged facts relating to Plaintiff's chosen forum are confined to a single paragraph," that Plaintiff "does not allege any conduct by the Defendants that occurred in or targeted Maryland," and that this Court lacks personal jurisdiction over them. Def. Mem. at 1, 5. In truth, Plaintiff commenced this action in Maryland because every aspect of this case arises out of or relates to Defendants' extensive contacts with Maryland. Those contacts are liberally referenced throughout the Complaint and, for the avoidance of doubt, are detailed further in the accompanying Declaration of David Chen.

Defendants' motion appears founded upon the mistaken belief that they somehow cleansed themselves of their Maryland contacts by virtue of the very scheme at issue in this case – *i.e.*, Robert's admitted plan to "dissolve the company and reform it."  Indeed, this can be the only explanation for why Defendants' motion (a) completely disregards Robert's conduct in, and directed to, Maryland, and (b) focuses exclusively on the Maryland contacts of Otter Audits and RC Security after the dissolution of OtterSec, while disregarding Plaintiff's allegations that they are the successors to OtterSec. However, once Robert's connections to Maryland during OtterSec's existence are considered, and OtterSec's connections to Maryland are imputed to the Successor Defendants, as they must be, personal jurisdiction over all Defendants is manifest.

As further detailed below, the allegations of the Complaint, particularly as amplified by the facts set forth in the accompanying Declaration of David Chen, are more than adequate to sustain Plaintiff's burden of showing that this Court has personal jurisdiction over all Defendants, and their motion to dismiss should be denied.

2

## STATEMENT OF FACTS[1]

### A.   Nature of the Case

OtterSec was a limited liability company formed under Wyoming law on February 8, 2022, and it was engaged in the business of performing security audits of software code used by companies operating on the blockchain. Ex. 4-A (Compl.), ¶¶ 15-16 (J.R.018).  The only two members of OtterSec were Sam Chen and Defendant Robert Chen. Ex. 4-A (Compl.), ¶ 15 (J.R.018). After Sam Chen tragically passed away in a car accident on July 13, 2022, his interest in OtterSec passed to the Estate. *Id.*

Apart from having been formed and dissolved in Wyoming, OtterSec had no connection to the State of Wyoming. Defendant Robert Chen was a resident of Bellevue, Washington and Sam Chen was a resident of Rockville, Maryland. Ex. 4-A (Compl.), ¶¶ 7-8 (J.R.017); Ex. 5 (D. Chen Decl.), ¶ 3 (J.R.058). Wyoming was chosen because Robert Chen had once before assisted with the formation of an unrelated entity there.  Ex. 5 (D. Chen Decl.), ¶ 9 (J.R.060).  OtterSec had no employees, office or other physical presence in Wyoming, and thus appointed "Registered Agents Inc.," a paid corporate services provider,[2] to serve as its statutory agent in Wyoming. Ex. 5 (D. Chen Decl.), ¶ 4 (J.R.059), Ex. 5-B (J.R.073).

OtterSec was born from a friendship between Robert Chen and David Chen, Sam Chen's minor son ("David" or "David Chen"). Ex. 4-A (Compl.), ¶¶ 17-20 (J.R.018-19); Ex. 5 (D. Chen Decl.), ¶¶ 6-10 (J.R.059-60). Robert and David met in 2019 while participating in a cybersecurity competition and came to know each other in the years that followed. *Id.* They began discussing

---

[1]  The facts set forth herein come from (a) the Complaint filed by Plaintiff on March 31, 2023 (ECF Doc. No. 1), a true and correct copy of which is attached to the accompanying Declaration of Stephen M. Plotnick ("Plotnick Decl.") as Exhibit A ("Compl."), and (b) the accompanying Declaration of David Chen ("D. Chen Decl.").

[2]  https://www.registeredagentsinc.com/wyoming/

and pursuing the business that eventually became OtterSec on February 4, 2022. *Id.* Robert knew that David was still a minor at the time, in high school, and that he lived with his parents in Maryland. Ex. 4-A (Compl.), ¶ 19 (J.R.018-19); Ex. 5 (D. Chen Decl.), ¶ 10 (J.R.060).

Shortly after OtterSec was formed, Robert and David came to recognize that David's status as a minor was likely to be problematic. Ex. 4-A (Compl.), ¶ 20 (J.R.019); Ex. 5 (D. Chen Decl.), ¶¶ 10-12 (J.R.060-62). Robert thus suggested as a work-around that one of David's parents serve as the co-owner of OtterSec. Ex. 4-A (Compl.), ¶ 20 (J.R.019); Ex. 5 (D. Chen Decl.), ¶¶ 11-12 (J.R.060-62). They settled on David's father, Sam Chen, and agreed that David would act as Sam's "proxy" with respect to OtterSec. Ex. 4-A (Compl.), ¶¶ 20-22 (J.R.019); Ex. 5 (D. Chen Decl.), ¶¶ 11-12 (J.R.060-62). Using David as the go-between for Robert and Sam, Robert prepared and signed an operating agreement for OtterSec, which documented the 50/50 ownership structure as between Robert and Sam and included David and Sam Chen's mailing address in Rockville, Maryland immediately below their signatures. Ex. 4-A (Compl.), ¶ 22 (J.R.019); Ex. 5 (D. Chen Decl.), ¶ 14 (J.R.062), Ex. 5-D (J.R.085).

Consistent with the agreement and understanding of the parties, David was closely involved in OtterSec from the outset, working from the home he shared with his parents in Rockville, Maryland during the period of February-April 2022. Ex. 4-A (Compl.), ¶¶ 23-24 (J.R.019); Ex. 5 (D. Chen Decl.), ¶ 21 (J.R.064). Robert and David's relationship started to deteriorate beginning in April 2022, when David began to suspect that Robert was being dishonest about discussions Robert was having with a firm named Jump Trading. Ex. 4-A (Compl.), ¶¶ 29-40 (J.R.020-23); Ex. 5 (D. Chen Decl.), ¶ 24 (J.R.064-65). As the facts came to light and revealed Robert's duplicity, David ceased working for OtterSec. Ex. 4-A (Compl.), ¶ 70 (J.R.029). When negotiations for Robert to acquire Sam Chen's membership interest in OtterSec stalled, Robert

4

threatened on to "dissolve the company and remake it." Ex. 4-A (Compl.), ¶ 77 (J.R.030); Ex. 5 (D. Chen Decl.), ¶¶ 31-32 (J.R.067-68).

Robert put his plan to "dissolve the company and remake it" in motion after Sam Chen suddenly and tragically passed away in a car accident. Ex. 4-A (Compl.), ¶ 97 (J.R.034). As a first step, Robert secretly formed two new companies in South Dakota on September 13, 2022, the Successor Defendants Otter Audits and RC Security. Ex. 4-A (Compl.), ¶ 100 (J.R.034); Ex. 4 (Plotnick Decl.), ¶¶ 3-4 (J.R.012), Exs. 4-B (J.R.049), 4-C (J.R.053).  Robert chose South Dakota to avoid detection and circumvent Wyoming law prohibiting the use of a name (like "Otter Audits") that is the same as, or deceptively similar to, the name "OtterSec." Ex. 4-A (Compl.), ¶ 104 (J.R.035).

As a next step, Robert pushed through a dissolution of OtterSec on October 6, 2022, followed by a wind-up process that he controlled and shrouded in secrecy. Ex. 4-A (Compl.), ¶ 101 (J.R.035); Ex. 5 (D. Chen Decl.), ¶ 4 (J.R.059).  Robert, in fact, has never disclosed any of the details of the dissolution of OtterSec or the disposition of its assets. Ex. 5 (D. Chen Decl.), ¶ 33 (J.R.068).  Despite now claiming in general terms that he paid for OtterSec's assets, he never previously disclosed that to Plaintiff and has never revealed how much he paid, what he purchased or how he arrived at a purchase price. Ex. 5 (D. Chen Decl.), ¶ 33 (J.R.068).  Moreover, even though OtterSec was highly profitable – and appears to be experiencing continued success as the Successor Defendants – Plaintiff has not received any distributions from OtterSec or any financial or tax information for calendar year 2022. Ex. 5 (D. Chen Decl.), ¶¶ 33-35 (J.R.068-69).

What is clear, however, is that Robert carried through with his threat to dissolve OtterSec and reform it as the Successor Defendants, Otter Audits and RC Security. They are openly utilizing the OtterSec website and domain name, and the OtterSec name and logo. Ex. 4-A (Compl.), ¶ 105-

08 (J.R.035-37); Ex. 5 (D. Chen Decl.), ¶ 25 (J.R.065).   They list on their website OtterSec clients, include audit reports for those clients that were done by OtterSec, and describe themselves as a business identical to OtterSec.  Ex. 4-A (Compl.), ¶¶ 105-08 (J.R.035-37); D. Chen Decl., ¶ 25 (J.R.065). They are utilizing OtterSec's social media accounts, and multiple former OtterSec employees now work for them. Ex. 4-A (Compl.), ¶¶ 105-08 (J.R.035-37); Ex. 5 (D. Chen Decl.), ¶ 26 (J.R.065). Plaintiff specifically alleges in her Complaint that Otter Audits and RC Security are the successors to OtterSec. Ex. 4-A (Compl.), ¶¶ 109-110 (J.R.037).

The Complaint filed by Plaintiff in this action asserts eight causes of action: (1) for unfair competition under Section 43(a) of the Lanham Act as to all Defendants, (2) for a Declaratory Judgment as to all Defendants, principally determining that Otter Audits and RC Security are the successors to OtterSec and awarding the Estate is rightful interest in them, (3) for Breach of Fiduciary Duty as to Defendant Robert Chen, and Aiding and Abetting Breach of Fiduciary Duty as to the Successor Defendants, (4) for Fraud as to Defendant Robert Chen, and Aiding and Abetting Fraud as to the Successor Defendants, (5) for Misappropriation and Conversion as to all Defendants, (6) for Breach of Contract as to Defendant Robert Chen, (7) for Tortious Interference as to all Defendants, and (8) for an Accounting as to all Defendants. Ex. 4-A (Compl.), ¶¶ 111-164 (J.R.037-46).

The Complaint and accompanying Declaration of David Chen detail the facts, summarized below, supporting jurisdiction over all Defendants. These include the extensive business activities and other conduct of Robert and OtterSec, which are imputed to Otter Audits and RC Security as OtterSec's successors, that took place in or were directed to Maryland – all of which give rise to Plaintiff's claims in this case.

6

### B.      Business Activities, Operations and Revenue in Maryland

OtterSec, borrowed over $292,000 from David in February 2022, to help fund its initial operations, and repaid the majority of that loan to David in April 2022. Ex. 5 (D. Chen Decl.), ¶ 20 (J.R.064).

During the same period of February-April 2022, OtterSec generated approximately $925,000 in auditing revenue, much of which it derived from services rendered by David for OtterSec in Maryland. Ex. 4-A (Compl.), ¶ 29 (J.R.020); Ex. 5 (D. Chen Decl.), ¶ 21 (J.R.0064). David, in fact, worked on one-half of the company's audits during that period and those audits were responsible for $625,000 in revenue, equating to approximately 67.5%, of OtterSec's total auditing revenue during that period. Ex. 5 (D. Chen Decl.), ¶ 21 (J.R.064).

Moreover, at Robert's request, David was responsible for handling OtterSec's money, the majority of which was held in a hardware Ledger wallet and an account maintained with the now-defunct cryptocurrency exchange FTX Trading Ltd. ("FTX"). Ex. 5 (D. Chen Decl.), ¶ 15 (J.R.062-63).  David had exclusive possession and control of OtterSec's hardware Ledger wallet, which is a physical device used for cryptocurrency transactions on the blockchain that must be physically connected to an interface (like a computer), from his home in Maryland.  Ex. 5 (D. Chen Decl.), ¶¶ 15-19 (J.R.062-64).  Similarly, David had exclusive possession and control of the password and hardware security key (also a physical device that needed to be connected to an interface) that was necessary to gain access to the FTX account, again from his home in Maryland. Ex. 5 (D. Chen Decl.), ¶¶ 15-19 (J.R.0062-64).

OtterSec used David's computer server, located in his home in Rockville, Maryland, for its auditing work. Ex. 4-A (Compl.), ¶ 24 (J.R.019); Ex. 5 (D. Chen Decl.), ¶¶ 27-29 (J.R.065-67). Robert and other OtterSec employees or consultants were granted access to that server, and

regularly logged into and accessed it remotely for executing code and performing auditing work for OtterSec. Ex. 5 (D. Chen Decl.), ¶ 27 (J.R.065).  Robert knew that the server was located in Sam's and David's home. Ex. 5 (D. Chen Decl.), ¶¶ 28-29 (J.R.065-67).

OtterSec also had at least three other employees or consultants located in Maryland. Each signed an employment or consulting agreement indicating his name and address, and Robert counter-signed for OtterSec:

- Harikesh Kailad, 5304 Bangor Drive, Kensington MD;

- Andrei Kotliarov, 13972 Saddleview Dr., North Potomac MD; and

- William Wang, 9706 Watts Branch Dr., Rockville, MD.[3]

Ex. 5 (D. Chen Decl.), ¶ 23 (J.R.064), Exs. 5-E (J.R.091), 5-F (J.R.099), 5-G (J.R.106).

One of these employees, William Wang, is specifically referenced in the Complaint because Robert was secretly negotiating to bring Mr. Wang with him from OtterSec to Jump Trading in April 2022, while Robert was a member of OtterSec and Mr. Wang was still under contract with OtterSec pursuant to a consulting agreement that included confidentiality obligations, work-for-hire provisions, and restrictive covenants. *See* Ex. 4-A (Compl.), ¶¶ 55-64 (J.R.026-28); Ex. 5 (D. Chen Decl.), ¶ 23 (J.R.064), Exs. 5-E (J.R.091), 5-F (J.R.099), 5-G (J.R.106).  The Complaint details Robert's numerous false and misleading statements or material omissions, made to David in Maryland as his father's agent, with respect to his discussions with Jump Trading. *See* Ex. 4-A (Compl.), ¶¶ 55-65 (J.R.026-028), 131-145 (J.R.041-44). Further, Mr. Wang is just one of several former OtterSec employees or consultants that now appear to be working for Robert and the Successor Defendants. Ex. 5 (D. Chen Decl.), ¶ 26 (J.R.065). Several

---

[3]  Messrs. Kailad's, Kotliarov's and Wang's agreements with OtterSec contain Wyoming choice of law and forum selection clauses, but none of them were ever physically located there. Ex. 5 (D. Chen Decl.), ¶ 10 (J.R.060).

claims asserted by Plaintiff in this case are based at least in part of these allegations, including the causes of action for a declaratory judgment, breach of fiduciary duty, fraud, and tortious interference.

**C.**     **Communications and Other Persistent Conduct Directed to Maryland**

The Complaint details the circumstances that led to a breakdown in the relationship between Robert and David and, ultimately, the claims in this case. Plaintiff's allegations quote directly from logs of myriad electronic messages exchanged over the course of several months between Robert and David. For context, David and Robert exchanged a total of ***18,543 messages*** over Discord alone, between the date OtterSec was formed and the date it was dissolved. Of those, 8,088 were messages sent by David to Robert and ***10,455 were messages sent by Robert to David in Maryland***, who was acting as his father's agent with respect to OtterSec.  Ex. 5 (D. Chen Decl.), ¶¶ 11 (J.R.060), 31 (J.R.067-68).  These communications, which include Robert's threat to "dissolve the company and remake it" as the Successor Defendants, form at least part of the basis of essentially every cause of action asserted against Defendants. *See, e.g.,* Ex. 4-A (Compl.), ¶¶ 36-39 (J.R.022-23), 42-49 (J.R.023-24), 53-54 (J.R.025-26), 59 (J.R.027), 69 (J.R.029), 74-77 (J.R.029-30), 87-88 (J.R.032).

For example, the Complaint details Robert's materially false or misleading statements and material omissions to David concerning his discussions with Jump Trading. Despite having (a) provided Jump Trading with financial details concerning OtterSec's revenue and profitability, and (b) scheduled a call with the President of a Jump Trading affiliate that was expected to lead to "an offer," Robert falsely represented to David that he was exploring raising money from "friends and family," and that he was "talking to some potential vcs" in an effort to build "connections" for OtterSec. Ex. 4-A (Compl.), ¶ 36 (J.R.022). The Complaint alleges that, knowing David was his

9

father's agent with respect to OtterSec, Robert's statements and omissions were made to David knowing that that they would be conveyed to and relied upon by Sam Chen – and that is precisely what happened when Sam Chen was induced by those statements to transfer a portion of his membership interests in OtterSec to Robert. Ex. 4-A (Compl.), ¶¶ 44-45 (J.R.024). The Complaint seeks recission of that transfer.

The Complaint further alleges that, as Robert's discussions with Jump Trading progressed, he eventually brought David into the loop under the guise that they related to a potential "acquihire" of OtterSec. Ex. 4-A (Compl.), ¶¶ 50-53 (J.R.025). However, in truth, Robert's discussions with Jump Trading were centered on negotiating deals for himself and two others: Kevin Chow and Mr. Wang, both of whom had employment or consulting agreements with OtterSec. Ex. 4-A (Compl.), ¶ 56 (J.R.026). As set forth in the Complaint, David became suspicious of Robert's duplicity following a call he had with principals of Jump Trading, during which he learned for the first time that Robert's discussions with Jump Trading did not concern an "acquihire" at all. Ex. 4-A (Compl.), ¶ 58 (J.R.026). Robert then feigned ignorance afterwards during a discussion with David and compounded his misconduct with additional misrepresentations and omissions. Ex. 4-A (Compl.), ¶ 59 (J.R.027). Robert even received an offer to join Jump Trading, and according to messages he exchanged with a third party, admitted that he had "signed" a deal with Jump Trading that involved a "partial share acquisition." Ex. 4-A (Compl.), ¶ 85 (J.R.032).

The Complaint details numerous other breaches of fiduciary duty, and materially false and misleading statements or omissions, by Robert over the course of the months that followed, including in connection with the dissolution and winding up of OtterSec. Ex. 4-A (Compl.), ¶¶ 99-110 (J.R.034-37). In one such communication, Robert advised Plaintiff that he was "not aware" of

10

any "third parties" that were "interested" in purchasing OtterSec's assets (Ex. 4-A (Compl.), ¶ 93 (J.R.033)) – despite now having effectively admitted that he was interested in them for his new companies, the Successor Defendants. These statements and other conduct detailed in the Complaint concerning the dissolution and wind-up of OtterSec also form part of the Complaint, as the entire process was plainly a pretext for stealing the Estate's interest in OtterSec for the two companies Robert formed before he even dissolved OtterSec, the Successor Defendants Otter Audits and RC Security. Ex. 4-A (Compl.), ¶¶ 93-105 (J.R.033-36); Ex. 4 (Plotnick Decl.) ¶¶ 3-4, Exs. 4-B (J.R.049), 4-C (J.R.053).

## ARGUMENT

## I   LEGAL STANDARD

On a pre-answer motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Brown Inv. Advisory & Tr. Co. v. Allen*, 2020 U.S. Dist. LEXIS 181067, at *9 (D. Md. Sept. 29, 2020) (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)); *see also Johnson-Howard v. Aecom Special Missions Servs.*, 434 F. Supp. 3d 359, 365 (D. Md. 2020). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Ibid.* (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). Courts may consider evidence outside the pleadings, including affidavits submitted by both sides, but need not resolve any contradictions because all factual disputes must be resolved in favor of the plaintiff. *Young v. Swirsky*, 2015 U.S. Dist. LEXIS 144671, at *6, *9 (D. Md. Oct. 26, 2015) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)).

11

As further detailed below, the allegations of the Complaint, particularly as amplified by the facts set forth in the accompanying Declaration of David Chen, are more than adequate to make a *prima facie* showing that this Court has personal jurisdiction over the Defendants.

## II      THE JURISDICTIONAL CONTACTS OF OTTERSEC ARE IMPUTED TO THE SUCCESSOR DEFENDANTS

At the outset, Defendants' motion disregards Plaintiff's allegations that Otter Audits and RC Security are the successors to OtterSec. As the Fourth Circuit has observed, "the great weight of persuasive authority permits imputation of a predecessor's actions upon its successor whenever forum law would hold the successor liable for its predecessor's actions." *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 454 (4th Cir. 1990). Thus, where there is evidence supporting the imposition of successor liability, it is proper to assert personal jurisdiction over the successor based on the forum contacts of the predecessor. *Id.* at 455; *see also Hartford Mut. Ins. Co. v. Hoverzon, LLC*, 2021 U.S. Dist. LEXIS 71263, at *13-17 (D. Md. Apr. 13, 2021) (denying motion to dismiss for lack of personal jurisdiction where defendant was alleged to be successor-in-interest to predecessor company).

Plaintiff alleges in the Complaint that, after having threatened to "dissolve the company and remake it," Defendant Robert Chen (a) secretly formed Otter Audits and RC Security in South Dakota on September 13, 2022, (b) unilaterally dissolved OtterSec on October 6, 2022, and (c) proceeded to transfer OtterSec's assets, including its name, logo, website, domain, social media accounts, clients, employees and contracts, to Otter Audits and RC Security. Plaintiff further alleges that Otter Audits and RC Security are not only engaged in the exact same business as OtterSec, but are in fact actually holding themselves out to be OtterSec. As detailed above, these allegations are well-supported by the evidence, even at this early stage of the case and

12

notwithstanding Defendants' lack of transparency in connection with the dissolution and winding up of OtterSec. On the basis of that evidence, the Complaint alleges specifically that:

- "The transfer of OtterSec's assets and property to Defendants Otter Audits and RC Security is a classic example of a de facto merger, and Otter Audits and RC Security are the essence of a mere continuation of OtterSec."

- "The dissolution of OtterSec and formation of Otter Audits and RC Security were fraudulent transactions arranged and effectuated by Robert Chen, in violation of his fiduciary duties, in furtherance of his scheme to 'dissolve the company and remake it' without Sam Chen or the Estate."

- ***"Otter Audits and RC Security are the successors to OtterSec,*** and the Estate is therefore entitled to the same interest in Otter Audits and RC Security as it would be entitled to in OtterSec, together with an award of damages, profits costs and other relief as further detailed below."

Ex. 4-A (Compl.), ¶¶ 109-110 (J.R.037) (emphasis added).

Defendants' motion does not address, let alone challenge the sufficiency of, these allegations or the causes of action upon which they are based.[4] Rather, Defendants disregard them altogether and focus their argument exclusively on the Successor Defendants' contacts in Maryland as though Plaintiff's successor allegations do not exist. That is precisely the type of argument the Fourth Circuit cautioned against in *City of Richmond* because it "would allow corporations to immunize themselves by formalistically changing their titles." *City of Richmond*, 918 F.2d at 455 (quoting *Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 356 (6th Cir. 1982)).

---

[4] "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *A Helping Hand, LLC v. Balt. Cty.*, 515 F.3d 356, 369 (4th Cir. 2008).

Accordingly, accepting Plaintiff's well-pleaded and uncontested allegations as true, it is proper to assert personal jurisdiction over Otter Audits and RC Security based on OtterSec's contacts with Maryland.

## III   JURISDICTION OVER DEFENDANTS IS PROPER UNDER THE MARYLAND LONG ARM STATUTE AND THE FOURTEENTH AMENDMENT

As non-residents, exercising personal jurisdiction over Defendants is proper because (a) it is authorized under the Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103; and (b) it satisfies the due process requirements of the Fourteenth Amendment.  *See Christian Science Bd. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

### A.    Jurisdiction Is Authorized Under The Maryland Long Arm Statute

Courts have interpreted the Maryland long-arm statute "to reach as far as the Constitution allows, [and thus] the statutory and due process components of the personal jurisdiction analysis merge."  *Crussiah v. Inova Health Sys.*, 2015 U.S. Dist. LEXIS 156751, at *8 (D. Md. Nov. 19, 2015).  It authorizes courts to exercise jurisdiction over non-residents if (among other reasons) the cause of action arises from the transaction of business in Maryland, or if the non-resident "causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue" from services in Maryland.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) and (4). Jurisdiction exists over the Defendants under both of these sections.

Subsection (b)(1) of the long arm statute "does not require the defendant to have been physically present in Maryland."  *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 671 (D. Md. 2009).  All that is required "are actions by the defendant that 'culminate in purposeful activity within the state.'"  *Johns Hopkins Health v. Al Reem Gen. Trading & Co.*, 374 F. Supp. 2d 465, 472 (D. Md. 2005) (quoting *Bahn v. Chicago Motor Club Ins.*, 98 Md. App. 559 (1993).

14

In *Bahn*, the court found that the defendant had transacted business in Maryland when it sent insurance renewals to Maryland and accepted payment under those renewals from Maryland. *See* 98 Md. App. at 578. Here, there is far more.

Robert knowingly entered into a business relationship with individuals located in Maryland, Sam Chen and David Chen, to form and operate OtterSec (the predecessor to Otter Audits and RC Security). Robert engaged in extensive communications with an individual (David) in Maryland relating to that business, transmitted to Maryland residents and entered into agreements (such as the operating agreement and amendments) with Maryland residents for that business, and a significant portion (if not most) of the business's operations were based in Maryland. The majority of OtterSec's funds were located and controlled exclusively in Maryland (in the case of the hardware Ledger wallet and FTX account). OtterSec borrowed over $292,000 from an individual (David) located in Maryland, routinely accessed and utilized a computer server located in Maryland for its auditing work, and generated substantial revenue from auditing work performed by employees or consultants that were located in Maryland. Moreover, at least one of those consultants, Mr. Wang, still works for the Successor Defendants and Plaintiff has asserted claims in this case that arise directly out of that relationship. These contacts are significantly more than the contacts found sufficient in *Bahn* and they are more than sufficient to confer jurisdiction on the Defendants.

The Complaint also alleges that Defendants have committed several torts that caused injury to Plaintiff in Maryland, including breaches of fiduciary duties and aiding and abetting breach of fiduciary duties; fraud and aiding and abetting fraud; misappropriation and conversion; and

tortious interference.[5]  Thus, jurisdiction is also present under subsection (b)(4) of the long arm statute because Defendants have also done substantial business, engaged in a persistent course of conduct, <u>and</u> derived substantial revenue from services in Maryland. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (personal jurisdiction proper where defendants' "intentional, and allegedly tortious, actions were expressly aimed at" forum state, and "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works.").

**B.**   **The Exercise of Jurisdiction Satisfies Due Process**

A court may exercise personal jurisdiction over a foreign defendant consistent with due process so long as there is an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb v. Superior Ct. of CA*, 137 S. Ct. 1773, 1776 (2017) (quotation omitted); *accord Walden v. Fiore*, 571 U.S. 277, 277 (2014) (analysis of whether defendant has minimum contacts for jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation") (quotation omitted).  In assessing specific jurisdiction, courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Crussiah*, 2015 U.S. Dist. LEXIS 156751, at *10-11.

---

[5] Robert's misrepresentations and omissions to David may be treated as misrepresentations and omissions to Sam. *See CX Reins, Co. v. Leader Rlty. Co.*, 252 F. Supp. 3d 439, 446 (D. Md. 2017) (holding that knowledge gained by agent may be considered knowledge of the principal.); *Fox v. DRA Services, LLC*, 2012 U.S. Dist. LEXIS 202767, at *11 (D. Wyo. May 17, 2012) ("It is general rule of the law of agency that knowledge of the agent will be imputed to the principal[.]").

     1.     <u>Defendants Purposefully Availed Themselves of the Privilege of
Conducting Business in Maryland</u>

Courts consider a variety of factors in assessing whether out of state defendants have
purposefully availed themselves of the privilege of doing business in a particular state, including:

> (1) Whether the defendant maintained offices or agents in the State; (2) whether the
> defendant maintained property in the State; (3) whether the defendant reached into
> the State to solicit or initiate business; (4) whether the defendant deliberately
> engaged in significant or long-term business activities in the State; (5) whether a
> choice of law clause selects the law of the State; (6) whether the defendant made
> in-person contact with a resident of the State regarding the business relationship;
> (7) whether the relevant contracts required performance of duties in the State; and
> (8) the nature, quality, and extent of the parties' communications about the business
> being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quotation omitted); *accord
Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 335 (D. Md. 2022).  It is not merely the *number*
of contacts, but rather "the *quality* and *nature*" of the connections to the forum state.  *UMG
Recordings, Inc.* 963 F.3d at 352 (emphasis in original).  Even a single business transaction can be
sufficient to support specific personal jurisdiction.  *See, e.g.*, *Aerovation v. Airtec, Inc.*, 2019 U.S.
Dist. LEXIS 139340, at \*11 (D. Md. Aug. 16, 2019).

In attempting to distance themselves from Ottersec, Defendants cite to *Ark. Nursing Home
Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 641 (D. Md. 2020) for the proposition
that simply using assets that might have had a connection to Maryland at one point is insufficient
to confer personal jurisdiction.  *See* Def. Mem. at 12.  But this distorts the allegations in this case.
Plaintiff does not contend that Otter Audits and RC Security are merely in receipt of OtterSec's
assets; Plaintiff alleges that Otter Audits and RC Security effectively *are* OtterSec – *i.e.,* its
successors in interest.

Here, Robert chose to enter into a business relationship with David and Sam – forming an
entity in which Sam (a Maryland resident) had a 50% interest. As a member of OtterSec, Sam was

17

an agent of the company located in Maryland, and his residence in Maryland subjected OtterSec to service of process in Maryland. Md. Code Ann., Corps. & Ass'ns § 1-401(a). Moreover, the parties agreed that, in order to run OtterSec, David would serve as Sam's "proxy" on a day-to-day basis.  Ex. 5 (D. Chen Decl.), ¶¶ 11-12 (J.R.060-62).  David and Robert exchanged a total of ***18,543 messages*** over Discord alone, between the date OtterSec was formed and the date it was dissolved, the majority of which related to OtterSec. Ex. 5 (D. Chen Decl.), ¶ 31 (J.R.067-68).  Of those, 8,088 were messages sent by David to Robert and ***10,455 were messages sent by Robert to David in Maryland***.  Ex. 5 (D. Chen Decl.), ¶ 31 (J.R.067-68).  Those messages include many of the misrepresentations and omissions forming the basis of Plaintiff's claims in this case. Robert knew that David was his father's "proxy" with respect to OtterSec, that David and Sam lived in Maryland at the time of these communications, and that those communications would be relayed to Sam and relied upon. Ex. 4-A (Compl.), ¶ 139 (J.R.042).

Additionally, OtterSec conducted substantial business, and maintained a significant presence and tangible property, in Maryland.  The majority of OtterSec's funds were located and controlled in Maryland, it borrowed over $292,000 from an individual (David) located in Maryland, routinely utilized a computer server located in Maryland for its auditing work, and generated substantial revenue from work performed by David and at least three employees or consultants who were located in Maryland. Accordingly, the purposeful availment requirement is plainly satisfied in this case.  *See*, *e.g.*, *St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 691 F. Supp. 2d 626, 629 (D. Md. 2010) ("[T]he acts done within a State which will support in personam jurisdiction as transacting 'any business' are not necessarily limited to acts which are a part of commerce or of transactions for profit, but include acts which constitute a purposeful activity within the State." (quotation omitted)); *accord Aerovation, Inc.*, 2019 U.S. Dist. LEXIS

18

139340, at *12 (finding that defendant had purposely availed itself of the privilege of doing business in Maryland by "submitting multiple contract proposals to . . . a Maryland company, executing a multimillion dollar contact with [that company], and visiting Maryland six different times as part of the execution of that contract.").

### 2.    Plaintiff's Claims Arise Out of Activities Directed at Maryland

Under the second prong, a court merely looks at whether "activity in the forum state is the genesis of the dispute." *See UMG Recordings, Inc.*, 963 F.3d at 354 (quotation and alteration omitted). The dispute must "arise out of or relate to the defendant's contacts with the forum." *Bradley*, 617 F. Supp. 3d at 336 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)); *accord Aerovation, Inc.*, 2019 U.S. Dist. LEXIS 139340, at *13.

Again, Defendants argue that this action does not arise out of their connections with Maryland because they ignore all pre-OtterSec dissolution conduct and Plaintiff's successor allegations. *See* Def. Mem. at 16. Once Ottersec's connections to Maryland are considered, and Robert's dealings, actions, and conduct directed towards Maryland residents are considered, together with the theft of a Maryland resident's membership interest, it is difficult to fathom how Defendants can seriously dispute that the second requirement is met because it is clear that every aspect of this dispute arises out of or relates to those contacts.

### 3.    The Exercise of Jurisdiction is Constitutionally Reasonable

"In assessing the sufficiency of a defendant's contacts with the forum state, the 'constitutional touchstone' is whether the contacts were purposefully established' by the defendant such that he 'will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Ritz Camera Centers v. Wentling Camera Shops*, 982 F. Supp. 350, 353 (D. Md. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

19

Defendants' contacts with Maryland were neither "fortuitous" nor "attenuated."  Rather, they deliberately and knowingly formed a business with an individual residing in Maryland (Sam Chen), interacted on a regular basis with his agent in Maryland (David Chen), borrowed funds from that same agent to operate the business, kept the company's money in Maryland, ran significant aspects of the business out of the co-owner's and agent's home in Maryland, hired other Maryland residents to perform auditing work for that business from Maryland, generated substantial revenue from services performed in Maryland, and then carried out an intentional scheme specifically to steal a Maryland resident's interest in that business..

In arguing that the exercise of jurisdiction is not constitutionally reasonable, Defendants point to two factors: (1) none of them are physically located in Maryland, and (2) the Court will need to apply law from a state other than Maryland.  *See* Def. Mem. at 19-20.  Both arguments are unavailing, and do not outweigh other factors that courts consider in assessing the constitutional reasonableness of a forum.

Specifically, in assessing whether a selected forum is constitutionally reasonable, courts consider a variety of factors, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 751 (D. Md. 2011).

Consideration of these factors leads to the conclusion that the exercise of jurisdiction over Defendants is constitutionally reasonable. Whatever inconvenience there may be to Defendants is the product of their own knowing and intentional conduct, and it should neither be a surprise to

them that they have been haled into court in Maryland nor should it outweigh Maryland's interest in adjudicating a case involving a resident who has been victimized by that conduct.

Additionally, there is no jurisdiction in which the Defendants' argument could not be made. Robert lives in Washington, OtterSec was formed in Wyoming, the Successor Defendants were formed in South Dakota, and Plaintiff is in Maryland. Any of these jurisdictions would have to apply the law of other jurisdictions. Moreover, to the best of Plaintiff's knowledge, Robert is the only individual located in Washington, and there is no actual person, witness or evidence located in Wyoming or South Dakota. Thus, Maryland would appear to be the most practical jurisdiction for this dispute; not only are witnesses and evidence located here, but Maryland law will apply to at least some of Plaintiff's tort claims. *See, e.g., Botts v. Johns Hopkins Univ.*, 2021 U.S. Dist. LEXIS 76788, at *15 (D. Md. Apr. 21, 2021) ("When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state"); *Auto USA, Inc. v. DHL Express (USA), Inc.*, 2018 U.S. Dist. LEXIS 30084, at *5 (D. Md. Feb. 26, 2018) ("Maryland's choice of law rules … adopt the principle of lex loci delicti: "the law of the place where the tort or wrong was committed. … The 'place of wrong' is the place of injury.") (internal citations omitted).

## IV     CONCLUSION

Accordingly, and for all the forgoing reasons, Plaintiff respectfully submits that she has carried her burden of making a *prima facie* showing that this Court has personal jurisdiction over all Defendants, and requests that Defendants' motion to dismiss be denied. If for some reason this Court finds that Plaintiff has not carried her burden, it should exercise its discretion to transfer this case to another district, rather than dismiss it. *Chavakula v. Christian Heritage Broad., Inc.*, 2023 U.S. Dist. LEXIS 34586, at *15 (D. Md. Feb. 28, 2023) (citing 28 U.S.C. §§ 1404, 1406).

Dated:  February 5, 2024               Respectfully submitted,

CARTER LEDYARD & MILBURN LLP

/s/ Stephen M. Plotnick

By: _____

Stephen M. Plotnick, *pro hac vice*
Madelyn K. White, *pro hac vice*
Nathan D. Harp, *pro hac vice*

28 Liberty Street, 41st Floor
New York, New York 10005
Tel: 212.732.3200
plotnick@clm.com
white@clm.com
harp@clm.com

-and-

BARKLEY & KENNEDY

/s/ Daniel M. Kennedy, III

By: _____

Daniel M. Kennedy, III
(signed by Stephen M. Plotnick with the
permission of Daniel M. Kennedy, III)

51 Monroe Street, Suite 1407
Rockville, Maryland 20850
301-251-6600
dkennedy@barkenlaw.com

*Attorneys for Plaintiff Li Fen Yao*

22