## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

LI FEN YAO, *as Administrator of the Estate of Sam Mingsan Chen*,

      Plaintiff,

      v.

ROBERT CHEN,
OTTER AUDITS LLC and
RC SECURITY LLC,

      Defendants.

Civil Action No. TDC-23-0889

## MEMORANDUM OPINION

Plaintiff Li Fen Yao, in her capacity as the administrator of the estate of her late husband, Sam Mingsan Chen, has filed this civil action against Defendants Robert Chen, Otter Audits LLC ("Otter Audits"), and RC Security LLC ("RC Security"), in which she alleges a violation of the Lanham Act, 15 U.S.C. § 1125(a) (2018), a breach of contract claim, and multiple state law tort claims arising out of Robert Chen's dissolution of OtterSec LLC ("OtterSec"), a company jointly owned by Robert Chen and Sam Chen. Yao seeks compensatory and punitive damages, injunctive relief, a declaratory judgment, and an accounting of the financial activities of Otter Audits, RC Security, and OtterSec. Defendants have filed a Motion to Dismiss for Lack of Personal Jurisdiction, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

### I.    OtterSec Formation

In 2019, Defendant Robert Chen and David Chen, who are not related to each other, met while they were teenagers participating in a cybersecurity competition. After meeting, Robert Chen and David Chen partnered in cybersecurity competitions and began to work together. They typically communicated through various internet messaging services, as Robert Chen resided in Washington state and David Chen resided with his parents, Sam Chen and Plaintiff Li Fen Yao, at a residence in Rockville, Maryland ("the Maryland Residence"). Robert Chen knew that David Chen lived with his parents in Maryland.

On February 4, 2022, Robert Chen, then 19 years old, approached David Chen, then 16 years old, with a proposal to start a cybersecurity company together. The proposed company, which they named "OtterSec," would audit software code for companies operating on the blockchain that faced security vulnerabilities. Compl. ¶ 16, ECF No. 1; Joint Record ("J.R.") 59, ECF No. 31. Robert Chen and David Chen worked together to develop a plan to market OtterSec's services to clients, set up a website, choose a logo, and create email and social media accounts for the company. Robert Chen took responsibility for formally establishing OtterSec as a limited liability company ("LLC") in Wyoming and received money from David Chen to cover the formation costs for the company. On February 8, 2022, OtterSec was formally established as a Wyoming LLC.

On February 11, 2022, Robert Chen and David Chen discussed the terms of an operating agreement for OtterSec. As David Chen was still a minor, Robert Chen suggested that Sam Chen, David Chen's father, serve as the co-owner of OtterSec, but that David Chen would act on his father's behalf. On February 13, 2022, after receiving confirmation from Sam Chen that such an

arrangement would be acceptable, Robert Chen prepared and mailed a proposed operating agreement for OtterSec to David Chen and Sam Chen at the Maryland Residence. On February 14, 2022, Sam Chen signed the operating agreement in Maryland. The operating agreement provided that Robert Chen and Sam Chen were the only members, that they each owned a 50 percent interest in OtterSec, and that OtterSec would be managed by the members.

## II.    OtterSec Operations

OtterSec "experienced explosive growth from the outset and generated over $1 million in revenue in its first two months of operations." Compl. ¶ 29. To support its business operations, OtterSec hired or retained multiple employees and consultants. At least one of OtterSec's employees, Harikesh Kailad, lived in Maryland, as did at least two of OtterSec's consultants, Andrei Kotliarov and William Wang. In April 2022, OtterSec and Kailad entered into a written employment agreement that listed Kailad's Maryland address and that was signed by Robert Chen on behalf of OtterSec. Similarly, OtterSec entered into written consulting agreements with Kotliarov and Wang that listed their Maryland addresses and that were signed by Robert Chen on behalf of OtterSec.

Although David Chen never signed an employment agreement with OtterSec, he contributed to OtterSec's operations in various ways, including by working at the Maryland Residence on approximately 50 percent of OtterSec's client audits, which generated approximately 67 percent of OtterSec's auditing revenue between February and April 2022. On February 26, 2022, David Chen contributed over $292,000 as a loan to OtterSec to fund its operations. At Robert Chen's request, David Chen also took responsibility for managing OtterSec's money. To do so, David Chen maintained at the Maryland Residence a hardware Ledger wallet, consisting of a physical device held separately from an internet connection that must first be connected to a

computer before being used to send or receive cryptocurrency on the blockchain. Finally, at the Maryland Residence, David Chen built a computer server from spare parts that was used by Robert Chen and OtterSec employees and consultants to execute code and perform auditing work for OtterSec. When the server was first assembled, David Chen informed Robert Chen that it would be located in the basement of the Maryland Residence, and it remained at that residence throughout OtterSec's operations.

By April 2022, two months after OtterSec was established, Robert Chen was regularly complaining that David Chen was not devoting sufficient time to OtterSec. David Chen, for his part, did not believe that he could commit any more time to OtterSec because he was still in high school. To address Robert Chen's complaints, David Chen contacted Robert Chen on April 15, 2022 with a proposal that Sam Chen transfer 10 percent of his membership interest in OtterSec to Robert Chen. On April 16, 2022, Sam Chen and Robert Chen entered into an amended operating agreement which resulted in Robert Chen owning 60 percent of OtterSec and Sam Chen owning 40 percent.

## III.    OtterSec Dissolution

Also during April 2022, Robert Chen engaged in negotiations with Jump Trading, a registered broker-dealer, regarding a potential acquisition of OtterSec by Jump Crypto, which was then a division of Jump Trading (collectively, "Jump"). Though Robert Chen had previously disclosed to David Chen prior negotiations regarding other potential OtterSec investors, Robert Chen did not initially disclose his negotiations with Jump to either David Chen or Sam Chen. On April 14, 2022, Robert Chen and David Chen communicated regarding OtterSec's fundraising activities, but Robert Chen did not mention that he was scheduled to speak with Kanav Kariya, the president of Jump Crypto, on April 18, 2022 regarding a possible acquisition of OtterSec by Jump.

4

On April 18, 2022, Robert Chen met with Kariya and discussed the terms of a potential Jump offer to purchase OtterSec. Robert Chen understood that such an offer would be an "acquihire," under which Jump would primarily acquire OtterSec for OtterSec's employees and not its products or services. Compl. ¶ 51. Later that day, Robert Chen first notified David Chen of the Jump discussions and told him that Jump was interested in an acquihire. On April 21, 2022, Robert Chen negotiated the terms of a potential acquihire with Jump: he represented to Jump that he would welcome an offer for OtterSec and three full-time staff consisting of himself and two of OtterSec's employees, but not including David Chen, and suggested to Jump that David Chen could remain at OtterSec. On April 22, 2022, David Chen spoke with Kariya and was surprised to hear that Jump's proposed acquihire would include neither David Chen nor Sam Chen's interest in OtterSec. On April 29, 2022, without the knowledge of either Sam Chen or David Chen, Robert Chen received an offer from Jump.

By April 27, 2022, David Chen had concluded that he could no longer work with Robert Chen, and told Robert Chen that he would cease further work with OtterSec. Robert Chen responded by asking Sam Chen to relinquish his remaining 40 percent interest in OtterSec. Sam Chen and David Chen declined. In a message sent on May 10, 2022, Robert Chen asked David Chen whether Sam Chen would be willing to sell his 40 percent interest in OtterSec and stated that if Sam Chen was unwilling to sell, Robert Chen would "probably dissolve the company and remake it." Compl. ¶ 77; J.R. 68. David Chen informed Robert Chen that Sam Chen was willing to consider selling his 40 percent interest in OtterSec, but only if Robert Chen would disclose certain financial information pertaining to the Jump acquihire, which Robert Chen refused to provide.

On May 27, 2022, Iquan Fadaei, an attorney purporting to act on behalf of OtterSec, emailed Sam Chen and David Chen to advise them that Robert Chen "will be exercising his right

to dissolve OtterSec shortly." Compl. ¶ 82. On June 1, 2022, Sam Chen and David Chen retained the law firm of Hathaway & Kunz ("H&K") as counsel. On June 4, 2022, Fadaei claimed to H&K that Robert Chen had the right to dissolve OtterSec based on his 60 percent ownership interest and stated that Robert Chen planned to conduct an auction for OtterSec's intangible assets after its dissolution. On June 9, 2022, H&K served OtterSec with a request for various records and information relating to OtterSec and raised concerns and objections to Robert Chen's proposed plan of dissolution. On June 23, 2022, Fadaei responded to H&K's request and again stated that Robert Chen was authorized to dissolve OtterSec unilaterally based on his 60 percent ownership interest.

On July 13, 2022, Sam Chen was killed in a car accident. Yao, Sam Chen's wife and David Chen's mother, was later appointed as the administrator of Sam Chen's estate ("the Estate"). Yao alleges that Sam Chen's membership interest in OtterSec passed to the Estate upon his death, as OtterSec had not yet been dissolved.

On September 13, 2022, Robert Chen formed two new LLCs in South Dakota, which he named Otter Audits LLC and RC Security LLC (collectively, "the LLC Defendants"). Robert Chen is the sole member of both LLC Defendants. In a signed declaration, Robert Chen described the business operations of Otter Audits and RC Security as follows:

Otter Audits performs security audits not only of software code used by companies operating on the blockchain but also of code used by cryptocurrency exchanges, off-chain wallets used to store cryptocurrency assets, and off-chain applications. Otter Audits does not do any trading on the blockchain.

RC Security is a security consulting firm. It performs consulting work that has involved advising security committees on best practices and evaluating vulnerabilities in airport infrastructures and blockchain code. It also licenses intellectual property.

J.R. 133.

6

On September 20, 2022, Fadaei informed H&K that Robert Chen had dissolved OtterSec. Robert Chen has stated that on September 24, 2022, he "personally purchased a number of OtterSec's assets, including intellectual property rights in OtterSec's logos, website, social media accounts, code, and computers," as well as "the right to a cryptocurrency wallet containing OtterSec's funds, and where future funds owed to OtterSec were expected to be received," at a cost of "hundreds of thousands of dollars." J.R. 133. According to David Chen, Robert Chen has not provided information on the disposition of OtterSec's assets to David Chen or any member of his family, and the Estate has not received any distribution of funds from OtterSec.

On September 27, 2022, Robert Chen filed Articles of Dissolution for OtterSec, and on October 6, 2022, the Wyoming Secretary of State filed a Certificate of Dissolution for OtterSec. Robert Chen used the OtterSec assets he acquired to fund RC Security. He also "contributed" the OtterSec logos, website, social media accounts, code, computers, and cryptocurrency assets to RC Security and arranged to have RC Security license them to Otter Audits. J.R. 134. Yao alleges that Defendants continue to use OtterSec's logo, name, and social media account, among other assets. For example, the cover page of a 2023 audit report conducted by Otter Audits states that the audit was "Presented by: OtterSec" and contains a logo alleged to be an OtterSec logo. J.R. 108.

## IV.    Procedural History

On March 31, 2023, Yao filed the Complaint in this case. Count 1 asserts a violation of the Lanham Act based on Defendants' alleged misuse of OtterSec's name, logo, trademarks, website, domain name, and social media and communication accounts, in violation of 15 U.S.C. § 1125(a). Count 2 requests a declaratory judgment that OtterSec's dissolution was improper and invalid, and that the Estate is entitled to the same interest in the LLC Defendants as it would have

had in OtterSec. Counts 3 through 7 allege common law claims arising out of OtterSec's dissolution and the establishment of the LLC Defendants, consisting of breach of fiduciary duty and aiding and abetting breach of fiduciary duty (Count 3); fraud and aiding and abetting fraud (Count 4); misappropriation and conversion (Count 5); breach of contract (Count 6); and tortious interference (Count 7). Count 8 seeks an accounting of the assets and finances of OtterSec, Otter Audits, and RC Security. All counts are asserted against all Defendants, except that Count 6 is asserted against Robert Chen only.

## DISCUSSION

In their Motion to Dismiss for Lack of Personal Jurisdiction, Defendants assert that this case must be dismissed because the Court lacks general or specific personal jurisdiction over Defendants. In particular, Defendants argue that the Court lacks specific jurisdiction under both the Maryland long-arm statute and pursuant to the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In opposing the Motion, Yao does not claim that Defendants are subject to general jurisdiction in Maryland but instead argues that the exercise of specific jurisdiction as to all Defendants comports with both the Maryland long-term statute and constitutional due process. As to the LLC Defendants, Yao's argument is based on the position that OtterSec's contacts with Maryland may be imputed to the LLC Defendants and thus considered in the jurisdictional analysis relating to those defendants.

## I.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). When the court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction. *Id.*;

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Mylan Labs., Inc.*, 2 F.3d at 59-60. The Court may consider affidavits and other evidence submitted with the pleadings in resolving a Rule 12(b)(2) motion. *See CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009).

Under Rule 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the due process requirement of the Fourteenth Amendment. *Id.*

## II.      Successor Liability Theory

At the outset, the Court addresses a significant issue that underlies the parties' arguments: whether the LLC Defendants are successor corporations to OtterSec, such that OtterSec's Maryland contacts may be imputed to the LLC Defendants for purposes of establishing personal jurisdiction. This issue is central to resolving the Motion because the LLC Defendants were neither organized under the laws of Maryland nor physically present in Maryland, and Yao has not offered a persuasive argument for finding personal jurisdiction over the LLC Defendants without imputation of OtterSec's jurisdictional contacts.

Under the "successor corporation liability theory" of personal jurisdiction, "a non-resident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so by virtue of its succeeding to a corporation that was subject to personal jurisdiction in the forum state." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Under this theory, imputation of a

9

predecessor's actions upon a successor corporation may be permitted "*whenever* forum law would hold the successor liable for its predecessor's actions." *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454-55 (4th Cir. 1990) (quoting *Simmers v. Am. Cyanamid Corp.*, 576 A.2d 376, 385 (Pa. Super. Ct. 1990)) (affirming the exercise of personal jurisdiction over a successor corporation by virtue of its predecessor's actions in the forum state). In evaluating whether this theory of personal jurisdiction applies, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *In re Celotex Corp.*, 124 F.3d at 628 (quoting *Combs*, 886 F.2d at 676).

Under Maryland law, which is the law of the forum state, the general rule is that a successor corporation is not liable for its predecessor's actions unless: (1) the successor expressly or impliedly agreed to assume the liabilities of the predecessor; (2) "the transaction amounts to a consolidation or merger"; (3) "the successor entity is a mere continuation or reincarnation of the predecessor entity"; or (4) "the transaction was fraudulent, not made in good faith, or made without sufficient consideration." *See Nissen Corp. v. Miller*, 594 A.2d 564, 565-66 (Md. 1991) (quoting 1 Am. L. Prod. Liab. § 7:1 (3d ed. 1990)).

Here, Yao focuses on the "mere continuation" exception. The exception applies when "there is a continuation of directors and management, shareholder interest and, in some cases, inadequate consideration" and thus "focuses on the continuation of management and ownership." *Id.* at 567. A determination of whether a new entity is a "mere continuation" and thus subject to successor liability requires consideration of five factors: "(1) any change in ownership and management, (2) the continued existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any instrumental employees from the predecessor to the

10

successor, and (5) the purpose of the asset sale." *Martin v. TWP Enters., Inc.*, 132 A.3d 361, 377 (Md. Ct. Spec. App. 2016). In *Martin*, the plaintiff had sought to recover unpaid wages from TWP Enterprises, Inc. ("TWP"), which had acquired the assets of Martin's former employer, Best & Brady Components, LLC ("Best & Brady"). *Id.* at 363-64. The Maryland Court of Special Appeals, now the Appellate Court of Maryland ("the Maryland Appellate Court"), affirmed the trial court's ruling that TWP was not a mere continuation of Best & Brady because even though there was "substantial overlap" in the management, control, and ownership between the two companies, after the sale, the minority owner and president of Best & Brady was involved only as a contractor sales representative, and "the decision to sell assets to TWP "was not merely a change of form to place assets beyond [the plaintiff's] reach, but was instead "an attempt to salvage . . . a failing business." *See id.* at 378-79.

The relevant factors support the conclusion that the successor liability theory applies here. As to the first factor, unlike in *Martin*, there is substantial continuity of ownership and management in that the majority owner remains the same: Robert Chen owned 60 percent of OtterSec and was thus the controlling member, and he owns 100 percent of both LLC Defendants. On the second factor, the selling company no longer exists, as Robert Chen dissolved OtterSec. As to the fourth factor, the transfer of instrumental employees, at least one instrumental member of OtterSec— Robert Chen himself—has moved to the LLC Defendants; William Wang, a former OtterSec consultant, now works for Otter Audits; and David Chen has identified eight other OtterSec employees or consultants who are now working for one or the other of the LLC Defendants. On the fifth factor, the allegations in the Complaint, which must be read in the light most favorable to Yao, provide that the purpose of both the dissolution of OtterSec and the establishment of the LLC

Defendants was to exclude the Estate from its interest in OtterSec and thus to avoid paying or owing distributions to which Sam Chen was entitled under the OtterSec operating agreement.

Finally, as for adequate consideration, Robert Chen has stated in a declaration that he paid "hundreds of thousands of dollars" to acquire OtterSec's assets upon its dissolution. J.R. 133. However, where Defendants have conceded in their reply brief that Robert Chen's payment for OtterSec's assets was sent to OtterSec itself, and David Chen has stated in his declaration that neither he nor the Estate "received any distribution of any funds from OtterSec," J.R. 68, the most reasonable inference is that the funds paid by Robert Chen for OtterSec's assets were then returned to him as the controlling member of OtterSec. Thus, there are serious questions whether the consideration paid for OtterSec's assets was adequate and whether this purchase was an arm's length transaction. Where most if not all factors weigh in favor of a finding of mere continuation, the Court concludes that Yao has established a *prima facie* case that imputation of OtterSec's jurisdictional contacts to the LLC Defendants is warranted.

This conclusion is consistent with other decisions in this District applying the mere continuation exception. In *Hartford Mutual Insurance Company v. Hoverzon, LLC*, No. SAG-20-2713, 2021 WL 1390317 (D. Md. Apr. 13, 2021) ("*Hartford*"), an insurance company sought compensation for property damage arising out of a fire caused by an allegedly defective hoverboard produced by Swagway, LLC ("Swagway"). *Id.* at *3. The plaintiff sued both Swagway and Hoverzon, LLC ("Hoverzon"), a company that had acquired a Swagway-owned trademark used to sell hoverboards and that was allegedly responsible for handling a recall of defective Swagway hoverboards. *Id.* at *1, *3. When Hoverzon filed a motion to dismiss for lack of personal jurisdiction, the court denied the motion based on its finding that the plaintiff had provided sufficient evidence to establish that Hoverzon was a "mere continuation" of Swagway

12

such that Swagway's jurisdictional contacts could be imputed to Hoverzon. *Id.* at *5. In so ruling, the court relied on the facts that the same individual, Jianqing Zhu, had a controlling interest in both Swagway and Hoverzon, and "every key player in this web of asset transfers is or has been controlled by Zhu"; "while Swagway continues to exist in name, it [did] not have any substantive operations"; and the timing of the transfer of the trademark suggested that its purpose may have been to insulate Swagway from liability. *Id.* at *5. The court denied the motion even though the record did not yet contain sufficient information to determine what consideration was given for the trademark. *Id.*

In *HRW Systems, Inc. v. Washington Gas Light Co.*, 823 F. Supp. 318 (D. Md. 1993), a case that pre-dated *Martin*, the plaintiff filed federal and state claims against Washington Gas Light Company ("Washington Gas") arising from the presence of contaminants at the site of a former gas plant. *Id.* at 325. Washington Gas had acquired the assets and liabilities of Washington Gas Light Company of Maryland, Inc. ("WGLCM"), the company that had owned the property up until the demolition of the gas plant in the 1950s. *Id.* The court found that, pursuant to both federal common law and Maryland law, the mere continuation exception applied and Washington Gas was subject to successor liability, because Washington Gas had acquired all of WGLCM's assets and liabilities upon its dissolution; the same shareholders controlled both companies at the time of WGLCM's dissolution; all but two of the directors of Washington Gas were also directors of WGLCM; and both companies "were in the business of supplying gas to consumers" such that there was continuity of the business. *Id.* at 330-32, 337.

Here, as in *Hartford* and *HRW Systems*, there was common ownership and management across OtterSec and the LLC Defendants, specifically Robert Chen, and the predecessor entity was dissolved. As in *Hartford*, the timing of OtterSec's dissolution, as well as the sale of its trademarks

13

to Robert Chen, arguably suggests a purpose of avoiding financial obligations, which could become liabilities, to the Estate. There was also substantial continuity of the business in that OtterSec's business, which David Chen has identified as performing security audits of software code, was effectively replicated by Otter Audits, as reflected by the numerous audit reports that appear on the former OtterSec website now utilized by the LLC Defendants, and RC Security, which now owns the intellectual property originally created and owned by OtterSec, has licensed it to Otter Audits. Thus, the Court finds that imputation of OtterSec's jurisdictional contacts to the LLC Defendants is proper pursuant to the successor liability theory of personal jurisdiction.

## III.    The Maryland Long-Arm Statute

In the Motion, Defendants argue that Yao's allegations are insufficient to bring the Defendants under the ambit of the Maryland long-arm statute. In response, Yao argues that both Robert Chen and the LLC Defendants, based on the imputed contacts of OtterSec, have either transacted business in Maryland, or caused tortious injury in Maryland by an act occurring outside the state, so as to render personal jurisdiction over them proper under the Maryland long-arm statute.

The Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103 (West 2020), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *Krashes v. White*, 341 A.2d 798, 804 (Md. 1975). Thus, the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.*, 892

14

A.2d 479, 493 n.6 (Md. 2006) (stating that although the "long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to . . . dispense with analysis under the long-arm statute").

As relevant here, the Maryland long-arm statute authorizes jurisdiction over a party which, directly or by an agent: "(1) [t]ransacts any business or performs any character of work or service in the State; [or] . . . (4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1), (4). To find personal jurisdiction, the Court must determine that at least one of these bases for jurisdiction has been satisfied. *See id.* § 6–103(a).

"Transacting business pursuant to section (b)(1) of the long-arm statute requires actions [that] culminate in purposeful activity within the State." *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014) (quoting *Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993)). This subsection, however, "does not require the defendant to have been physically present in Maryland." *Id.* (citing *Sleph v. Radtke*, 545 A.2d 111, 115 (Md. Ct. Spec. App. 1988)). "[E]ven a single contact with the forum can satisfy the transaction of business standard in subsection (b)(1)." *Id.* (citing *Jason Pharm. Inc. v. Jianas Bros. Packaging Co.*, 617 A.2d 1125 (Md. Ct. Spec. App. 1993)).

## A.     Robert Chen

Robert Chen argues that he is not subject to personal jurisdiction because he has never been physically present in Maryland and has no commercial or business connection to Maryland, and that even though he entered into a contract with a Maryland resident, neither that action nor any

other conduct constituted the transaction of business in Maryland. The Court, however, finds that Robert Chen "transacted business" in Maryland within the meaning of the Maryland long-arm statute. Under section 6–103(b)(1), the defendant need not have been physically present in the state but must have engaged in actions that "culminate in purposeful activity within the State." *Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993). In *Bahn*, the plaintiffs had moved their vehicle from Illinois to Maryland and then filed suit against their Illinois-based auto insurance company in relation to a vehicle accident. *Id.* at 64-65. The court held that although the Illinois company had no physical presence in Maryland, did not advertise in Maryland, and generally did not insure vehicles registered in Maryland, it had nevertheless "transacted business" in Maryland within the meaning of section 6–103(b)(1) where it had been informed that the plaintiffs now had a Maryland address, mailed lapse-in-coverage and renewal notices relating to the insurance policy to the plaintiffs' Maryland address, and received payments mailed from that Maryland address. *Id.* at 67-68. In *Jason Pharmaceuticals., Inc. v. Jianas Brothers Packaging Co., Inc.*, 617 A.2d 1125 (Md. Ct. Spec. App. 1993), in which a Missouri company entered into a single contract with a Maryland company to purchase two packaging machines, the court concluded that the Missouri company had "transacted business" within the meaning of section 6–103(b)(1) where it had called the Maryland company at its office in Maryland, engaged in a series of telephone calls with the Maryland company, signed a written proposal sent from Maryland, and mailed back the signed document and a down payment check back to Maryland. *Id.* at 1126-27, 1129. In so ruling, the court rejected the lower court's conclusion that a "one-transaction contract" was insufficient to deem the Missouri company to have transacted business within the meaning of section 6–103(b)(1). *Id.* at 1128.

Here, as in *Bahn* and *Jason Pharmaceuticals*, Robert Chen transacted business in Maryland by knowingly entering into a business contract with a Maryland resident through a course of activity that included initiating and engaging in discussions with someone he knew to be a Maryland resident and present in Maryland; mailing the contract to Maryland; and receiving payments relating to the business relationship from Maryland. According to a declaration submitted by David Chen, during the period in which OtterSec was formed and in operation, Robert Chen knew that David Chen and Sam Chen resided in Maryland. Robert Chen initiated contact with David Chen, while David Chen was in Maryland, regarding the potential business opportunity that later became OtterSec. Robert Chen received money from David Chen, sent from Maryland, to provide for OtterSec's formation costs, and he negotiated the terms of a potential OtterSec operating agreement through electronic communications with David Chen while David Chen was in Maryland. When the operating agreement was finalized, Robert Chen mailed the document to the Maryland Residence to secure Sam Chen's signature. Finally, this transaction culminated in continuous purposeful activity in the state because, as discussed below, the entity created by Robert Chen's transaction, OtterSec, engaged in ongoing business activity in Maryland, including hiring and retaining Maryland residents as employees and consultants and conducting audits from the Maryland Residence that resulted in over $625,000 in revenue, from which Robert Chen profited as one of the owners. *See infra* part III.B.

Thus, where Robert Chen contacted, negotiated an agreement with, received money from, and mailed a contract to known Maryland residents, and the contract was signed in Maryland and governed the conduct of a company that operated in Maryland, the Court finds that Robert Chen has transacted business within the meaning of section 6–103(b)(1). *See Bahn*, 634 A.2d at 68; *Jason Pharms., Inc.*, 617 A.2d at 1129. Accordingly, the Court need not address whether

17

alternative bases exist for personal jurisdiction over Robert Chen pursuant to any other provisions of the Maryland long-arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6–103(a).

### B.     The LLC Defendants

As for the LLC Defendants, for purposes of the jurisdictional analysis, OtterSec's jurisdictional contacts are imputed to the LLC Defendants. *See supra* part II. OtterSec's contacts are sufficient to demonstrate that OtterSec "transact[ed] business" and "perform[ed] any character of work" in Maryland such that the requirements of the Maryland long-arm statute are satisfied as to the LLC Defendants. Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1).

Although OtterSec was established under the laws of Wyoming, it had significant operations in Maryland, specifically at the Maryland Residence. Working on behalf of OtterSec, David Chen conducted half of OtterSec's audits for clients, valued at over $625,000, from the Maryland Residence. Both the computer server assembled by David Chen for use by OtterSec, and the Ledger wallet, a physical device used for OtterSec's financial transactions, were also located at the Maryland Residence. OtterSec also entered into specific transactions with a Maryland resident: it received a loan of over $292,000 from David Chen in February 2022 and then repaid that loan in two installments in April 2022.

OtterSec also engaged in business with other Maryland residents. It employed or retained at least three other Maryland residents, including Harikesh Kailad, who was an employee, and Andrei Kotliarov and William Wang, who were consultants. For each, OtterSec entered into a formal written agreement, electronically signed by the individual, with the individual's Maryland address listed on the agreements. These employees and consultants then performed services for OtterSec in Maryland.

By having a significant portion of its operations occurring in Maryland, and receiving loans from and entering into employment and consulting agreements with Maryland residents, OtterSec transacted business in Maryland, and performed work in Maryland, that culminated in purposeful activity sufficient to render personal jurisdiction over it proper under section 6–103(b)(1). *See Bahn*, 634 A.2d at 65, 67-68; *Jason Pharms.*, 617 A.2d at 1126-27, 1129. In turn, because OtterSec's jurisdictional contacts are properly imputed to the LLC Defendants, the Court finds that the LLC Defendants are also deemed to have transacted business or performed work within Maryland pursuant to section 6–103(b)(1). Accordingly, the Court need not address whether alternative bases exist for personal jurisdiction over the LLC Defendants pursuant to any other provisions of the Maryland long-arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6–103(a). The requirements of the Maryland long-arm statute are therefore satisfied as to all Defendants.

## IV. Due Process

Even if the requirements of the Maryland long-arm statute are satisfied, personal jurisdiction must also comport with due process requirements. Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may be exercised over a party upon a showing that the party has sufficient "minimum contacts" with the forum state such that "maintenance of the suit [in the state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing the presence of minimum contacts, courts distinguish between two types of personal jurisdiction: general and specific. Defendants argue, and Yao does not dispute, that general jurisdiction is not available in Maryland as to any of the Defendants. Accordingly, the Court's analysis will be limited to whether specific jurisdiction in Maryland is available.

Specific, or case-linked, jurisdiction provides authority "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For a court to exercise specific jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court determines if it has specific jurisdiction over an entity by considering "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc.*, 293 F.3d at 712).

The Court will examine each element in turn. As discussed above, in conducting the analysis, the Court may and will impute OtterSec's jurisdictional contacts with Maryland to the LLC Defendants. *See supra* part II. *Cf. Beyond Sys., Inc.*, 878 A.2d at 582-83 (examining whether a putative agent's actions may be imputed to an out-of-state principal for purposes of analyzing whether the exercise of specific personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment).

### A. "Purposefully Availed"

The United States Court of Appeals for the Fourth Circuit has noted that the purposeful availment inquiry "is not susceptible to a mechanical application" and has identified a list of non-exclusive factors to be considered in the analysis:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into

the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018)). In assessing this element, courts consider "the *quality* and *nature* of the defendant's connections" to the forum state, "not merely the number of contacts between the defendant and the forum state." *Id.* In determining whether out-of-state defendants purposefully availed themselves of the privilege of doing business in the forum state, a court is "entitled to accord special weight to the fact that" the out-of-state defendant initiated contact with the plaintiff in the forum state. *CFA Inst. v. Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009).

Purposeful availment can exist "where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute," but it may be lacking "in cases in which the locus of the parties' interaction was overwhelmingly abroad," or where there was a single "overpowering foreign nexus to the dispute." *Tire Eng'g & Distrib. LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012) ("*Tire Engineering*"). Under these principles, the Fourth Circuit has found purposeful availment when an Arizona resident entered into a "collaborative enterprise" under which a North Carolina resident would create and maintain a website for an online university, with the knowledge that those activities would occur in North Carolina. *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 212-13, 217 (4th Cir. 2001) ("*Christian Science*"). Likewise, the Fourth Circuit has found purposeful availment with Virginia by defendant Shandong Linglong Rubber Company ("Linglong"), a foreign company, which collaborated in a joint enterprise with a Virginia resident

21

and others to use designs stolen from the plaintiff company to develop a tire manufacturing process that would be established in China.  *Tire Engineering*, 682 F.3d at 298-99.  In so ruling, the court relied on the fact that Linglong engaged in substantial correspondence with the Virginia resident on issues such as developing a business plan and exchanging design ideas, then received drawings from this individual that were sent from Virginia.  *Id.* 305-06.

Here, the quality and nature of Robert Chen's contacts with Maryland constitute purposeful availment of the privilege of conducting activities in the state.  Knowing that David Chen resided in Maryland, Robert Chen "reached into the State to solicit or initiate business" by contacting David Chen and proposing the idea for OtterSec.  *UMG Recordings*, 963 F.3d at 352.  Robert Chen specifically mailed the proposed operating agreement to the Maryland Residence and received funds from David Chen in Maryland to pay the costs of establishing OtterSec, a "collaborative enterprise" between Robert Chen, Sam Chen, and David Chen.  *Christian Science*, 259 F.3d at 217.  The joint enterprise involving Robert Chen, Sam Chen, and David Chen—OtterSec—is an "integral element" of this dispute, which centers on whether Robert Chen unlawfully dissolved OtterSec and established the LLC Defendants in violation of his contractual and fiduciary duties.  *Tire Engineering*, 682 F.3d at 302.  In light of this activity, "the locus of the parties' interaction" was not "overwhelmingly abroad," and there is no single "overpowering foreign nexus to the dispute," as Robert Chen resides in Washington state, the LLC Defendants are established under the laws of South Dakota, OtterSec was established in Wyoming, and both Sam Chen and David Chen were located in Maryland.  *Id.*  The Court therefore finds that Robert Chen purposefully availed himself of the privilege of engaging in activities in Maryland.

As for the LLC Defendants, upon consideration of the factors set forth in *UMG Recordings*, the record shows that OtterSec, whose contacts are imputed to the LLC Defendants, also

purposefully availed itself of the privilege of conducting activity within Maryland. *UMG Recordings*, 963 F.3d at 352. OtterSec effectively maintained an office at the Maryland Residence and maintained agents in Maryland, including David Chen, Kailad, Kotliarov, and Wang. Through these agents, OtterSec deliberately engaged in significant business activities in Maryland, including the conduct of over half of OtterSec's audits and the management of OtterSec's finances, both of which were performed by David Chen from the Maryland Residence. OtterSec also maintained property in Maryland, consisting of the computer server and Ledger wallet located at the Maryland Residence, both of which were specifically used as part of its operations. Finally, the extensive communications about OtterSec's business activities between Robert Chen and David Chen while the latter resided in Maryland also demonstrate purposeful availment by OtterSec. *See id.* Thus, even if some of the relevant factors may not favor a finding of personal jurisdiction, the Court finds that these facts demonstrate that OtterSec purposefully availed itself of the privilege of conducting activity in Maryland. *See id.* Accordingly, the Court finds that, upon imputing OtterSec's jurisdictional contacts to the LLC Defendants, the purposeful availment requirement is satisfied as to the LLC Defendants.

## B.     "Arise Out of Activities Directed at the State"

The second due process requirement is that the plaintiff's claims must "arise out of activities directed at the forum state." *Tire Engineering*, 682 F.3d at 303. This prong is satisfied if "activity in the forum state is 'the genesis of [the] dispute.'" *Id.* (quoting *CFA Inst.*, 551 F.3d at 295). "A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.*

Here, each of Yao's causes of action arise out of activities directed at Maryland by either Robert Chen or OtterSec, whose contacts are imputable to the LLC Defendants. In particular, the "substantial correspondence and collaboration" between Robert Chen and two Maryland residents, David Chen and Sam Chen, relating to OtterSec's formation, Robert Chen's negotiations with Jump, and Robert Chen's dissolution of OtterSec, form an important part of each claim. *See id.* OtterSec's Maryland operations also underlie the claims. Specifically, Count 1 alleges a violation of the Lanham Act arising out of Defendants' misleading use of OtterSec's trademarks, which were jointly developed by Robert Chen and David Chen and which were used in OtterSec's audit work performed by David Chen in Maryland. Count 2 seeks a declaratory judgment that OtterSec's dissolution was invalid, that the LLC Defendants are subject to successor liability, and that the Estate is entitled to the same interest in the LLC Defendants as it would have had in OtterSec. This claim arises out of the Maryland contacts of Robert Chen and OtterSec because it relates to the terms of and execution of OtterSec's operating agreement, which was entered into after Robert Chen mailed it to Maryland and Sam Chen, a Maryland resident, signed it in Maryland. Counts 3, 4, 5, 6, and 7, which respectively allege breach of fiduciary duty and aiding and abetting breach of fiduciary duty, fraud and aiding and abetting fraud, misappropriation and conversion, breach of contract by Robert Chen, and tortious interference, all similarly arise out of an alleged breach of the same OtterSec operating agreement and relate to discussions between Robert Chen and David Chen at the time when Robert Chen was allegedly seeking to undo the agreement, dissolve OtterSec, and reestablish its operations without either Sam Chen or David Chen. Finally, Count 8 requests an accounting of the finances of OtterSec and the LLC Defendants to determine whether OtterSec's assets have been misappropriated and denied to the Estate as a result of OtterSec's allegedly improper dissolution, which is similarly connected to OtterSec's

operations and those same discussions. As each of the causes of action arise out of the relevant Maryland contacts of Robert Chen and OtterSec, particularly the substantial correspondence and collaborations between Robert Chen and Maryland residents on behalf of or relating to OtterSec, the second element of the due process analysis is satisfied.

## C.    "Constitutionally Reasonable"

Finally, the Court must assess whether its exercise of jurisdiction would be constitutionally reasonable. *Christian Science*, 259 F.3d at 217. "In determining whether jurisdiction is constitutionally reasonable, [courts] may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)). The "reasonableness analysis is designed to ensure that jurisdictional rules are not exploited 'in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 478). Where the out-of-state defendant is "able to secure able counsel and should have foreseen the possibility of being forced to litigate in the forum state," asking the defendant to defend the suit in the forum state "is not particularly burdensome." *Tire Engineering*, 682 F.3d at 304-05; *see also CFA Inst.*, 551 F.3d at 296 ("Furthermore, the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there.").

Under these principles, the Fourth Circuit has found personal jurisdiction over out-of-state defendants who never entered the forum state to be constitutionally reasonable under comparable circumstances to those presented here. In *Christian Science*, the court found it constitutionally

reasonable to exercise personal jurisdiction in North Carolina over the Arizona defendant based on his interactions with the North Carolina resident who maintained the website for the defendant's online university business, in part because one defendant was located in North Carolina and thus rendered the forum a "sensible choice," and North Carolina had an interest in deterring violations of trademark law in North Carolina through the website. *See Christian Science*, 259 F.3d at 212-13, 217-18. Similarly, in *Tire Engineering*, the court concluded that where Linglong engaged in extensive collaborative correspondence with a Virginia resident while he was working from a Virginia office, and received designs it then used to establish a tire manufacturing process in China, it was constitutionally reasonable for the suit to proceed against Linglong in Virginia even though it was far from its home jurisdiction, in part because it was foreseeable that it would be required to litigate in Virginia, and Virginia had an interest in ensuring that laws are not violated within that state. *See Tire Engineering*, 682 F.3d at 298 n.3, 299, 305-306.

Here, to litigate the present case in Maryland would impose some burden on Defendants, as Robert Chen is a Washington state resident and would be required to litigate in Maryland. Where Robert Chen is the sole member of each LLC Defendant, there is no additional burden on those Defendants. The burden, however, is mitigated in part by the fact that Defendants have retained able counsel based in Washington, D.C. and are thus equipped to defend this case. *See id.* at 304-05. More importantly, the burden is also lessened because where Robert Chen initiated business contacts with known Maryland residents to form OtterSec and was aware that a significant part of OtterSec's operations were occurring in Maryland, he should have reasonably foreseen that these contacts could have resulted in a lawsuit in Maryland, including as to new companies he allegedly created to cut out an original member and a *de facto* founder of OtterSec. *See id.*

As to the other factors, the forum state has an interest in adjudicating the dispute because it arises from a business dispute involving Maryland residents—Sam Chen and David Chen—relating to a company that had significant operational activity in Maryland. Relatedly, the plaintiff, Yao, has a substantial interest in obtaining convenient and effective relief in Maryland, as both she and Sam Chen resided in Maryland, so the impact of the financial harms caused by OtterSec's allegedly improper dissolution is experienced in Maryland. *See id.* at 305 (considering a state's interest in preventing violations of law within its borders). As for the interest in the most efficient resolution of the controversy, there is no other forum in which this case could be litigated more efficiently. Wyoming and South Dakota have no relevance other than being the states in which the relevant LLCs were established for legal purposes, so there are no witnesses or substantial amounts of evidence located there. The connection to this dispute of Washington state, where Robert Chen resides and presumably conducted work on behalf of OtterSec, does not make that forum a more efficient one than Maryland. *See Christian Science*, 259 F.3d at 218 (finding that where the plaintiff was a Massachusetts entity, one defendant was a resident of North Carolina, and the other was a resident of Arizona, the choice of North Carolina was "a relatively sensible choice in terms of promoting judicial efficiency" where it reduced the burden on one party).

Therefore, upon consideration of the relevant factors, the Court finds that the exercise of personal jurisdiction over Defendants is constitutionally reasonable because litigation in Maryland is not so "gravely difficult and inconvenient" that Defendants are at a "severe disadvantage" as compared to Yao. *See id.* at 217. The Court finds that the third element of the due process analysis is satisfied, and that the exercise of personal jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

Where the requirements of both the Maryland long-arm statute and the Due Process Clause have been satisfied, the Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction will be DENIED.  A separate Order shall issue.


Date:   March 11, 2024

THEODORE D. CHUANG
United States District Judge