## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LI FEN YAO,
as Administrator of the Estate of Sam Mingsan
Chen

        Plaintiff,

    v.

ROBERT CHEN, OTTER AUDITS LLC, and RC
SECURITY LLC,

        Defendants.

Case No. 8:23-cv-00889-TDC

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STAY DISCOVERY

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ...........................................................................................2

LEGAL STANDARD .....................................................................................5

ARGUMENT .................................................................................................6

   I.   WYOMING LAW GOVERNS...................................................................6

   II.  OTTERSEC LLC WAS REQUIRED TO DISSOLVE...........................................7

   III. THE ESTATE IS NOT A MEMBER OF OTTERSEC LLC................................8

   IV. AN INJURY TO OTTERSEC MUST BE ALLEGED THROUGH A DERIVATIVE SUIT .........................................................................................................11

   V.  THE LANHAM ACT CLAIMS MUST BE DISMISSED .....................................12

        A.  The Estate Does Not Have the Necessary Interests .......................................12

        B.  The Complaint Does Not Plausibly Allege a Lanham Act Injury to the Estate ...............................................................................................................13

   VI. PLAINTIFF HAS FAILED TO STATE ANY CLAIM UNDER STATE LAW ..16

        A.  Plaintiff Cannot Claim Breach of Fiduciary Duty .........................................16

            1.  The Complaint does not plausibly allege conduct that amounts to a breach of Robert Chen's fiduciary duty to Sam Chen. ...............................................16

            2.  Robert Chen never owed a fiduciary duty to the Estate.........................18

            3.  Robert Chen's fiduciary duty to OtterSec could only be the basis for a derivative claim—and Plaintiff has not brought one. ...............................................19

            4.  The aiding and abetting claims must also be dismissed. .........................19

        B.  The Complaint Fails to Plausibly Plead Fraud or with Particularity. ............19

            1.  The Complaint identifies no misrepresentations relating to Jump that could have plausibly been intended to induce Sam to transfer 10% to Robert. .........20

            2.  The fraud claim is barred by laches. .....................................................22

            3.  The Complaint does not identify with particularity any misrepresentations made after April 16, 2022 .......................................................................23

        C.  The Complaint Does Not Plausibly Plead Breach of Contract. ....................24

        D.  Plaintiff's Conversion Claim Fails Because Robert Chen Legally Dissolved OtterSec, Which Had Legal Title to the Assets at Issue ...............................25

        E.  The Tortious Interference Claim Fails. .........................................................26

        F.  The Complaint Identifies No Tortious Conduct by Either South Dakota Defendant. ................................................................................................27

        G.  Plaintiff Is Not Entitled to an Accounting ...................................................28

   VII.   THE DECLARATORY JUDGMENT ACTION SHOULD BE DISMISSED. ...............................................................................................................28

   VIII.  THE COURT SHOULD STAY DISCOVERY……………………………… 29

   CONCLUSION ...........................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................5, 19

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.,*
  888 F.3d 696 (4th Cir. 2018) ...........................................................20, 23

*Belmora LLC v. Bayer Consumer Care AG,*
  819 F.3d 697 (4th Cir. 2016) ...........................................................12, 14

*Bixler v. Foster,*
  596 F.3d 751, 758 (10th Cir. 2010) ........................................................11

*Campbell v. Davidson,*
  537 P.3d 734 (Wyo. 2023)...............................................................16, 19

*CGM, LLC v. BellSouth Telecomms., Inc.,*
  664 F.3d 46 (4th Cir. 2011) .....................................................................28

*Coastal Spray Foaming, LLC v. Reynolds Home Solutions, Inc.,*
  No. 17-cv-0070, 2017 WL 2242666 (D. Md. May 23, 2017).........................15

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962).................................................................................28

*Davidson-Eaton v. Iversen,*
  519 P.3d 626 (Wy. 2022)..........................................................................28

*Faienza v. T–N–B Marble–N–Granite, LLC,*
  No. HHDCV176082028S, 2018 WL 1882686 (Conn. Super. Ct. Mar. 26, 2018)..........10

*First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.,*
  672 Fed. App'x 229 (4th Cir. 2016) .........................................................13

*Fritchel v. White,*
  452 P.3d 601, 604 (Wyo. 2019)........................................................12, 14

*Garner v. Hickman,*
  709 P.2d 407 (Wyo. 1985)........................................................................23

*Gaston v. Life Care Centers of America, Inc.,*
  488 P.3d 929 (Wyo. 2021)........................................................................27

*Gorby v. Weiner,*
  No. 13-cv-3276, 2014 WL 4825962 (D. Md. 2014)......................................11

*Gould v. Ochsner,*
  354 P.3d 965 (Wyo. 2015)........................................................................26

*Gowdy v. Cook,*
  455 P.3d 1201 (Wyo. 2020)......................................................................16

*Hague v. Rica*,
No. A-1083-03T2, 2008 WL 2329897 (N.J. Super. Ct. App. Div. June 9, 2008) ..........11

*Harper v. Fidelity and Guar. Life Ins. Co.*,
234 P.3d 1211 (Wyo. 2010) ....................................................................................25

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*,
299 F.Supp.2d 505 (D. Md. 2004) ..........................................................................28

*Hooker v. Tunnell Government Services, Inc.*,
447 F.Supp.3d 384 (D. Md. 2020) ............................................................................5

*In re Estate of Mandelstein*,
Case No. 2-17-1009, 2018 WL 4191344 (Ill. App. Ct. Aug. 31, 2018) ...................18

*Kantsevoy v. LumenR LLC*,
301 F.Supp.3d 577 (D. Md. 2018) ............................................................................5

*Lamparello v. Falwell*,
420 F.3d 309 (4th Cir. 2005) ..................................................................................14

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....................................................................................12, 13, 14

*Lieberman v. Mossbrook*,
208 P.3d 1296 (Wyo. 2009) ....................................................................................26

*Lieberman v. Wyoming.com LLC*,
11 P.3d 353 (Wyo. 2000) ..........................................................................................8

*Made in the USA Foundation v. Phillips Foods, Inc.*,
365 F.3d 278 (4th Cir. 2004) ..................................................................................13

*Mantle v. N. Star Energy & Constr. LLC*,
437 P.3d 758 (Wy. 2019) ...........................................................................12, 19, 21

*Motzko Company USA, LLC. v. A & D Oilfield Dozers, Inc.*,
316 P.3d 1177 (Wyo. 2014) ....................................................................................26

*Occupy Columbia v. Haley*,
738 F.3d 107 (4th Cir. 2013) ....................................................................................5

*Olukoya v. Sowore*,
2020 WL 7769777 (D. Md. 2020) ............................................................................5

*Peterson v. Laramie City Council*,
543 P.3d 922 (Wyo. 2024) ..................................................................................22-23

*Philips v. Pitt County Memorial Hosp.*,
572 F.3d 176 (4th Cir. 2009) ....................................................................................6

*Procter & Gamble Co. v. Amway Corp.*,
242 F.3d 539 (5th Cir. 2001) ..................................................................................13

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
407 F.3d 631 (4th Cir. 2005) ....................................................................................7

*Richardson v. Hardin*,
    5 P.3d 793 (Wyo. 2000) .................................................................................24

*Rubris, Inc. v. Ankura Consulting Grp., LLC*,
    No. 1:20-CV-1111 (ABJ), 2021 WL 7210782 (D.D.C. Mar. 26, 2021) ........................13

*Sheaffer v. State ex rel. Univ. of Wyoming ex rel. Bd. of Trs.*,
    202 P.3d 1030 (Wyo. 2009) ....................................................................26-27

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) .........................................................................6

*Spence v. Sloan*,
    515 P.3d 572 (Wyo. 2022) ..........................................................................12

*Storetrax.com, Inc. v. Gurland*,
    915 A.2d 991 (Md. 2007) .............................................................................7

*Strange v. Prince George's County, Maryland*,
    No. CV TDC-19-2761, 2020 WL 4350373 (D. Md. July 29, 2020) ..........................5

*TEP Rocky Mountain LLC v. Record TJ Ranch Limited P'ship*,
    516 P.3d 459 (Wyo. 2022) ..........................................................................29

*Thompson v. Greene*,
    427 F.3d 263 (4th Cir. 2005) .........................................................................6

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
    No. 08-cv-00259, 2009 WL 2601940 (Aug. 21, 2009) ...................................15

*United States v. Acorn Technology Fund, L.P.*,
    No. Civ.A.03–0070, 2004 WL 1803321 (E.D. Pa. Aug. 12, 2004) .........................11

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) .......................................................................20

*U.S. v. Rodriguez-Aguirre*,
    264 F.3d 1195 (10th Cir. 2001) ...................................................................22

*Young v. Ditech Financial, LLC*,
    No. 16-cv-3986, 2017 WL 3066198 (D. Md. July 19, 2017) .........................28

**Statutes**

Wyo. Stat. Ann. § 17-29-101 *et seq.* ...................................................................*passim*

**Other**

Stuart L. Pachman, The Sole Member's Death: A Modest Proposal, ABA Digital Publication,
July 2019, https://www.americanbar.org/groups/business_law/resources/business-law-
today/2019-august/the-sole-member-s-death-a-modest-proposal/ ........................................10

Stuart L. Pachman, Death of an LLC Member, Part II, ABA Digital Publication, January 2020), https://www.americanbar.org/groups/business_law/resources/business-law-today/2020-january/death-of-an-llc-member-part-ii/ .............................................................................10

Restatement (Second) of Conflict of Laws § 307 (1971) ......................................................15

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Robert Chen, Otter Audits LLC, and RC Security LLC hereby respectfully move for judgment on the pleadings and for a stay of discovery pending the outcome of this motion.

Plaintiff tells a false story of Robert dissolving OtterSec to avoid paying distributions to the Estate. Not true: OtterSec has always been willing to distribute 40% of the net profits to the Estate, and continues to take that position. OtterSec has not made any distributions of the net profits to Robert or otherwise. The delay in distributions is because the Estate did not have an administrator, and once the Estate finally had one, the Estate filed this lawsuit rather than inform OtterSec. Once this dispute is resolved, OtterSec can distribute net profits, which are held in the OtterSec bank accounts. *See* Ex. 5 to Am. Answer (ECF 49-5).

The accurate story is that David Chen, a co-founder who contributed no capital to OtterSec, decided that he didn't want to work at OtterSec (which was mainly a personal services blockchain auditing company), unilaterally quit OtterSec, absconded with OtterSec's trading code, and used it to immediately make more than half a million dollars for himself. Then, when his father, Sam Chen, died, the Operating Agreement *required* dissolution of OtterSec and Sam Chen's lawyers, citing the Operating Agreement, demanded that OtterSec dissolve. Now the Estate complains that Robert should have violated the terms of the Operating Agreement and continued to devote himself 100% to OtterSec (with no help from David) so that the Estate could continue to rake in 40% of the profits from Robert's work. The truth is that Robert did not have a choice and the OtterSec Operating Agreement required that it be dissolved upon Sam's death. Robert did so in an orderly fashion and kept the profits in OtterSec's accounts, but the Estate chose to file a lawsuit and try to tax Robert's wholly separate post-OtterSec personal services businesses rather than take its pro rata distribution.

Even taking the Complaint's factual allegations as true, Plaintiff has not stated a claim for relief. First, the Lanham Act, breach of fiduciary duties, breach of contract, and tortious interference claims must be dismissed as improper derivative claims. The Estate is not a member of OtterSec, cannot bring a derivative claim, and was not owed fiduciary duties. Second, the Operating Agreement required and/or authorized dissolution of OtterSec, thus defeating Plaintiff's claims, which all rely in some part on wrongful dissolution. Third, many of Plaintiff's claims contain implausible allegations, are contradicted by the written instruments themselves, which are part of the pleadings, *see* Exs. to Am. Answer, and fail for additional reasons on the pleadings.[1]

## BACKGROUND

Plaintiff in this case is the administrator of the Estate of her husband, Sam Chen. Robert Chen and David Chen (no relation) were both less than 20 years old when they co-founded OtterSec LLC ("OtterSec"), a Wyoming LLC, that engaged in blockchain auditing and trading. Robert and David did not contribute capital to OtterSec; they contributed their work. David was never a member of the member-managed LLC. Instead, his father, Sam, who did no work for OtterSec and also contributed no capital to OtterSec, initially owned 50% of OtterSec, and Robert owned the other 50%. Compl. ¶ 15. The Complaint alleges that by April 13, 2022, Robert was having conversations with potential investors of OtterSec, including Jump Crypto ("Jump"). Compl. ¶¶ 29–30. The Complaint alleges that Robert "advised David of his discussions with Jump for the first time in the afternoon of April 18, 2022." *Id.* ¶ 53. This is false. On April 10, 2022, Robert offered to give David access to his Telegram chats to keep David abreast of business

---

[1] This motion follows the Court's decision on personal jurisdiction, which found successor liability for purposes of imputing jurisdictional contacts by inferring that "funds paid by Robert Chen for OtterSec's assets were then returned to him as the controlling member of OtterSec." ECF 36, at 12. Plaintiff *never* alleged what the Court inferred—most likely because this inference, and the inference that the dissolution was to avoid paying or owing distributions, are demonstrably false.

developments. Ex. 4 to Am. Answer at 4/10/2022 at 21:29 (ECF 49-4). On April 12, 2022, Robert twice posted to a Discord channel, which included David, that Robert had a call with Jump scheduled. Ex. 2 to Am. Answer (ECF 49-2).

On April 15, 2022, David determined that he could not contribute as much work to OtterSec as Robert. Compl. ¶ 43. Without first speaking to Robert, David proposed that Sam transfer 10% of his interest in OtterSec to Robert to make up for David not working full-time. *Id.* ¶ 44. On April 15 at 11:51 AM, David messaged Robert that Sam would transfer equity to Robert. Ex. 3 to Am. Answer (ECF 49-3).[2] Robert asked, "hm why," and at 12:03 PM David responded, "it's the best compromise[.] this way it's not unfair when you do more work because you reap more of the benefits[.] as much as i want to, i'm not developed enough to perform on the same level as you[.]" *Id.* On April 16, 2022, Sam and Robert signed an Amended Operating Agreement, with Sam owning 40% of OtterSec and Robert owning 60%. *Id.* ¶ 48.

Contrary to the allegations in the Complaint, *see* Compl. ¶¶ 55–57, David *was on the April 21, 2022 call with Jonathan Claudius*, a Jump officer. Indeed, David commented to Robert on Telegram about what Mr. Claudius said on the call: "bish [bitch] ragging on us for having high schoolers lmao." Ex. 4 to Am. Answer at 4/21/22 at 11:24 AM (ECF 49-4). David also commented on the username Robert had used with Mr. Claudius ("What were you nicked [named] as lmao"). Ex. 3 to Am. Answer at 4/21/2022 at 7:01AM (ECF 49-3). Robert then messaged David to "talk ab[ou]t acquihire structuring[.]" Ex. 4 to Am. Answer at 4/21/22, 11:30AM to 12:08PM (ECF 49-4).

---

[2] The Discord chat (ECF 49-3) is in PST and the Telegram chat (ECF 49-4) is in EST.

As of April 22, 2022, David was "growing suspicious that Robert was not being forthright." Compl. ¶ 67. David mistakenly believed that Robert was hiding a deal with Jump. That was never the case. Despite Robert's many attempts to clear the air, *see, e.g.*, Ex. 3 to Am. Answer, at 4/23/22 1:57PM to 4/27/22 at 2:00PM,[3] David decided to quit OtterSec by April 27, 2022. Compl. ¶ 70. Acting out of spite, he "took with him or removed Robert's and Ottersec's access" to certain alleged "personal code and other property." *Id.* ¶¶ 70–71. In leaving OtterSec, David stopped contributing work to OtterSec, absconded with the company's trading code, deleted data owned by OtterSec, and removed trading-related communication channels. Robert, a 60% owner, was contributing 100% of the work. In contrast, David contributed no work to OtterSec and used the stolen code to immediately make over half a million dollars *for himself*. As before, Sam, the 40% owner, did not contribute work or capital to OtterSec.

In June 2022, Robert worked with OtterSec's counsel to provide David and Sam with certain information and documentation they requested. *Id.* ¶ 94. Nevertheless, David still believed Robert was hiding something. David was and is still wrong. None of Robert's companies have ever been acquired or invested in by Jump or any other entity; none of them has even received an offer to invest at any particular valuation. Robert has never been employed by Jump.

On July 13, 2022, Sam was killed in a car accident. *Id.* ¶ 97. On September 20, 2022, OtterSec's counsel informed David and Sam's counsel that Robert had dissolved OtterSec. *Id.* ¶ 101. OtterSec's counsel also provided a list of OtterSec assets available for purchase from the company. *Id.* ¶ 102. Neither David nor the Estate made any offer to purchase the assets, nor did

---

[3] For instance, Robert told David: "i mean did i not call you to ask you if you'd be ok with what kanav [Jump president] proposed[.] i mean if the main issue is jump acquihire terms, i can sign something that says we'll only agree if we're both onboard? which i was planning on doing anyways :/" Ex. 3 to Am. Answer, 4/24/2022 at 9:14 AM (ECF 49-3).

they dispute the method by which the auction occurred. Six months later, after failing to inform OtterSec that a personal representative for the Estate had been appointed, and after failing to ask for distributions or inquire as to when they would be made, the Estate filed this lawsuit. The Estate retained a 40% interest in OtterSec, but at no time was the Estate a member of OtterSec.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "On such a motion, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are 'integral to the complaint and authentic.'" *Olukoya v. Sowore*, No. CV TDC-18-2922, 2020 WL 7769777, at *1 (D. Md. Dec. 30, 2020) (Chuang, J.) (emphasis added) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)).[4] "Under Rule 12(h)(2)(B), a party may assert '[f]ailure to state a claim upon which relief can be granted' in a Rule 12(c) motion." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 591 (D. Md. 2018). "In resolving a Rule 12(c) motion, the court accepts as true the facts alleged in the complaint by the plaintiff and draws all reasonable factual inferences in its favor, and judgment is appropriate if the complaint fails to state a plausible claim for relief." *Strange v. Prince George's Cnty.*, No. CV TDC-19-2761, 2020 WL 4350373, at *2 (D. Md. July 29, 2020). In evaluating whether a "claim has crossed 'the line from conceivable to plausible,' the Court must employ a 'context-specific' inquiry, drawing on the court's 'experience and common sense.'" *Hooker v. Tunnell Gov't Servs., Inc.*, 447 F. Supp. 3d 384, 390 (D. Md. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)).

---

[4] In *Olukoya*, the defendants first filed a Rule 12(b)(6) motion, followed later by the 12(c) motion.

The Exhibits attached to the Answer are part of the pleadings for all purposes and thus are considered in ruling on this Rule 12(c) motion.[5] Fed. R. Civ. P. 10(c). *See* Exs. 1–5 to Am. Answer. (ECF 49). In addition, the chat logs and Operating Agreement, Exs. 1–4 to Am. Answer, are "integral to the complaint and authentic," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), and are made part of the pleadings for that reason as well. *See Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005). The Complaint quotes extensively from the chat logs, *see, e.g.*, Compl. ¶¶ 36–39, 47, 54, 59, 76, 87, attempts to summarize and draw conclusions from these messages, *see, e.g.*, Compl. ¶¶ 35, 40, 42, 43, 46, 53, 60, 65, 69, 70, 75, 80, 87, 88, and bases its claims on these conversations, *see e.g.,* Compl. ¶¶ 49, 133, 138–144. Where the chat logs conflict with the bare allegations in the Complaint, however, the chat logs prevail. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] ... the exhibit prevails.").

## ARGUMENT

Two legal errors pervade the Complaint. First, dissolution of OtterSec was required by the Operating Agreement. Second, the Estate is not a member of OtterSec. Consequently, the Estate has no right to bring a derivative action and was not owed a fiduciary duty, and many of its claims fail on that basis.

### I.   WYOMING LAW GOVERNS.

Wyoming law governed OtterSec's operations and its dissolution, Compl. ¶ 2, and also

---

[5] Under Rule 12(c), unlike Rule 12(b)(6), the Court considers not just the Complaint, but also the Answer, and the written instruments attached to the Answer, which are pleadings. Fed. R. Civ. P. 10(c). A Rule 12(c) motion was not available until after the Court ruled on the Rule 12(b)(2) motion and Defendants filed an answer, and Defendants filed this at the earliest time possible.

governs Plaintiff's state law claims. As "[a] federal court hearing a diversity claim," this Court "must apply the choice-of-law rules of the state in which it sits," Maryland. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005). In cases involving foreign corporations, "Maryland courts have traditionally declined to interfere in management disputes under the 'internal affairs doctrine,'" which is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs," defined as "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Storetrax.com, Inc. v. Gurland*, 915 A.2d 991, 1000 (Md. 2007); *see also* Md. Code Ann., Corps. & Ass'ns § 4A-1001(a)(1). To avoid "conflicting demands" from different state laws, "the laws of the state of incorporation"—Wyoming for OtterSec—"generally will govern matters involving the internal workings of a corporation," *Storetrax.com, Inc.*, 915 A.2d at 1000. Plaintiff's state law claims all concern the "internal affairs" of OtterSec and must therefore be evaluated under Wyoming law.

## II.     OTTERSEC LLC WAS REQUIRED TO DISSOLVE.

Counts II-XVIII are based on the alleged invalidity of the dissolution, but they fail because (1) the Operating Agreement required OtterSec's dissolution once Sam died, *see* Section 1.3(c) of the Operating Agreement, and (2) once Sam died, Robert, as the sole surviving member, had the authority to dissolve OtterSec, *see* Sections 1.3(d) & 8.1 of the Operating Agreement.

***First***, upon Sam's death, the Operating Agreement applicable at the time of Sam's death, *see* Compl. ¶ 98, required dissolution. Ex. 1 to Am. Answer ("Op. Agreement") (ECF 49-1). Section 1.3(c) provides that OtterSec "will continue perpetually unless" among other things, "[t]he death . . . of a member . . . terminates the continued membership of a member of the Company." *Id.* Sam's death caused his dissociation from OtterSec, which terminated his continued membership in OtterSec, and thus required dissolution of OtterSec. Wyo. Stat. Ann. § 17-29-

602(a)(vi)(A) ("A person is dissociated as a member . . . [i]n the case of a person who is an individual. . . [when] [t]he person dies[.]")[6] Dissociation means the "withdrawal from membership in an LLC," *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 359 (Wyo. 2000), and, upon dissociation, "[t]he person's right to participate as a member in the management and conduct of the company's activities terminates[.]" Wyo. Stat. Ann. § 17-29-603(a)(i).

Section 1.4 confirms that the death of a member triggers the dissolution of OtterSec: it provides that "[i]n the event of an occurrence described in Section 1.3(c), if there are at least two remaining members, those members have the *right* to continue the business of the Company," (emphasis added) provided they exercise that right in within 90 days of the Section 1.3(c) event. If, as here, Section 1.4 is not triggered, because there is only one remaining member, no one has the option to continue the business of the company. Dissolution is therefore required.

***Second***, Robert was empowered to dissolve the company under the Operating Agreement. Section 8.1 provides: "The member(s) may dissolve the company at any time." Op. Agreement (ECF 49-1). Robert, as the sole surviving member, had the power to dissolve OtterSec at any time. Moreover, Section 1.3(d) provided that the company could dissolve following "any . . . event causing dissolution of the company under applicable state laws." *Id.* The Wyoming Limited Liability Company Act ("WLLCA") provides that a Wyoming LLC "is dissolved, and its activities must be wound up, upon . . . [t]he consent of all the members." Wyo. Stat. Ann. § 17-29-701(a)(ii). Under this provision, Robert could also decide to dissolve OtterSec at any time.

### III.     THE ESTATE IS NOT A MEMBER OF OTTERSEC LLC.

Plaintiff's claims fail because the Estate is a transferee of Sam's 40% economic interest in OtterSec, not a member with rights. When a person dissociates from a Wyoming LLC, including

---

[6] Wyoming law governed dissociation because the Operating Agreement was silent. *See* Wyo. Stat. Ann. § 17-29-110(b).

upon death, and the Operating Agreement does not provide otherwise, that person's membership interest divides into the economic interest, which is transferrable, and the member rights, which are not transferrable and devolve to the LLC's other surviving members. Under Wyo. Stat. Ann. § 17-29-603(a), the dissociated person's "right to participate as a member in the management and conduct of the company's activities terminates" and "any transferable interest owned by the [dissociated] person immediately before dissociation in the person's capacity as a member is owned by the person solely as a transferee." *Id.* § 17-29-603(a). Thus, the moment Sam died the Estate received Sam's 40% "transferable" economic interest in OtterSec. *See also id.* § 17-29-504 ("If a member dies, the deceased member's personal representative . . . may exercise the rights of a transferee").

The WLLCA provides: "If a member dies, the deceased member's personal representative or other legal representative may exercise" two sets of rights: "[1] the rights of a transferee provided in W.S. 17-29-502(c), and [2], for the purposes of settling the estate, the rights of a current member under W.S. 17-29-410." *Id.* § 17-29-504. The first set of rights provides that "[i]n a dissolution and winding up of an LLC, a transferee is entitled to an account of the company's transactions only from the date of dissolution." *Id.* § 17-29-502(c). The latter provides for the right to certain information about the company. *Id.* § 17-29-410. Neither gives a holder of a transferable interest, like Plaintiff here, any right to a role in decisions by surviving member(s) about the management (or dissolution of) the LLC. Sam's right to manage OtterSec ended when he died and did not pass over to the Estate. *See id.* § 17-29-102(a)(xxii) (defining a "transferable interest" as a right "*originally associated with a person's capacity as a member*, to receive distributions from a [LLC]" (emphasis added)); *id.* § 17-29-502(a)(iii)(A) ("A transfer, in whole or in part, of a

transferable interest . . . does not entitle the transferee to. . . [p]articipate in the management or conduct of the company's activities.").

The reason the right to manage and participate in the LLC does not pass to a member's heirs is to "protect[]" the surviving members "from unadmitted heirs participating in management." Stuart L. Pachman, The Sole Member's Death: A Modest Proposal, ABA Digital Publication (July 18, 2019), https://www.americanbar.org/groups/business_law/resources/business-law-today/2019-august/the-sole-member-s-death-a-modest-proposal/. Members of an LLC who wish to allow heirs to succeed to a deceased member's full rights must provide as much in the operating agreement. *Id*. *See also* Stuart L. Pachman, Death of an LLC Member, Part II, ABA Digital Publication (Jan. 8, 2020), https://www.americanbar.org/groups/business_law/ resources/business-law-today/2020-january/death-of-an-llc-member-part-ii/. The OtterSec agreement did not.

Connecticut, like Wyoming, has adopted the Revised Uniform Limited Liability Company Act ("RULLCA"). One of its courts has explained the transferee status: "[U]nless a written operating agreement exists which specifies that the legal successor to a deceased LLC member is entitled to exercise all of that member's rights, the Uniform Limited Liability Company Act strips that legal successor of some of those membership rights, giving the successor the status of a 'transferee,' rather than a member." *Faienza v. T-N-B Marble-N-Granite, LLC*, No. HHDCV176082028S, 2018 WL 1882686, at *2 (Conn. Super. Ct. Mar. 26, 2018).[7] "The result of a disassociation event is that the disassociated member (or legal successor) retains an economic

---

[7] Connecticut's limited liability company act is essentially identical to the WLLCA provisions on the restrictions on transferable interests and dissociation. *Compare* C.G.S. §§ 34-243a(32); 34-259a(a)(3)(A); 34-259c; 34-263a(6), *with* Wyo. Stat. Ann. §§ 17-29-102(xxii); 17-29-502(a)(iii)(A); 17-29-504; 17-29-602(a)(vi)(A).

interest in the LLC, but possesses only limited rights, rather than the full complement of rights possessed by a 'member.' For example, in the case of a deceased member, the legal successor has the status (and thus only the rights) of a 'transferee.'" *Id.*

The Estate retains a 40% interest in the now-dissolved OtterSec. However, with only a transferable interest (and no membership status), Plaintiff had no right to prevent the dissolution of OtterSec and cannot bring a derivative claim on behalf of OtterSec, and Robert did not owe the Estate fiduciary duties.

## IV. AN INJURY TO OTTERSEC MUST BE ALLEGED THROUGH A DERIVATIVE SUIT.

To the extent the Complaint alleges an injury to OtterSec, the claim must be dismissed because it was not pleaded as a derivative action. For instance, throughout the Complaint, the Estate appears to allege harm from a diminution in value of its 40% interest in OtterSec, but that is a quintessential derivative claim, and thus must be dismissed. *See, e.g., Bixler v. Foster*, 596 F.3d 751, 758 (10th Cir. 2010) ("Because plaintiffs' injuries were based on the diminution of the value of their METCO shares, and not on direct injury to them, we conclude their claims are derivative of the corporation's."); *Hague v. Rica*, No. A-1083-03T2, 2008 WL 2329897, at *3 (N.J. Super. Ct. App. Div. June 9, 2008) ("Shareholders cannot sue individually for a diminution in the value of their shares."); *United States v. Acorn Technology Fund, L.P.*, No. Civ.A.03–0070, 2004 WL 1803321, at *5 (E.D. Pa. Aug. 12, 2004) (finding that plaintiff's alleged injury of a diminution in value of their partnership interest "can only be construed as derivative.").

"Unless there is an otherwise controlling federal law, the requirements for a derivative action are governed by the state of incorporation." *Gorby v. Weiner*, No. TDC-13-cv-3276, 2014 WL 4825962, at *5 (D. Md. Sept. 23, 2014). Under Wyoming law, when a "shareholder or member . . . seeks to remedy an injury to the corporation rather than [her]self, the action is

derivative in nature." *Mantle v. N. Star Energy & Constr. LLC,* 437 P.3d 758, 806–07 (Wyo. 2019). Wyoming law is clear: to the extent the Estate seeks to remedy any injury to OtterSec through this direct action, the claim must be dismissed. The Wyoming Supreme Court has "never strayed from the rule that derivative injuries must be remedied by derivative actions." *Fritchel v. White*, 452 P.3d 601, 606 (Wyo. 2019); *see also Mantle*, 437 P.3d at 806–07; *Spence v. Sloan*, 515 P.3d 572, 587 (Wyo. 2022) (same). The Estate has not, and cannot, meet the requirements for bringing a derivative claim under Wyoming law. The plaintiff "must (1) be a member of the LLC; and (2) make demand on the other members of the LLC or state with particularity why demand would be futile." *Mantle*, 437 P.3d at 807 (citing Wyo. Stat. Ann. §§ 17-29-902 to 904). The Estate is not, and never was, a member of OtterSec. *See supra* Section III. Plaintiff's pleading also says nothing about the demand requirement. Therefore, the Complaint's claims under the Lanham Act, and for breach of fiduciary duty, breach of contract, and tortious interference must all be dismissed as improperly pleaded derivative claims.

## V.    THE LANHAM ACT CLAIMS MUST BE DISMISSED.

### A.  The Estate Does Not Have the Necessary Interests.

Plaintiff's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Compl. ¶¶ 111–122, fails because the Estate is not engaged in commerce and does not fall within the zone of interests, as required. To bring a claim under § 43(a), a plaintiff "must fall within the 'zone of interests' protected by the statute," as enumerated in § 45 of the same Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-31 (2014) (quoting 15 U.S.C. § 1127); *accord Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707 (4th Cir. 2016) (same). "[T]o come within the zone of interests in a suit for false advertising . . . a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32. The zone of interests for

false association is somewhat broader, as "[m]ost of the enumerated purposes" in § 45 "are relevant to false-association cases." *Id.* at 131.

The Estate does not fall within either zone of interest. Each relates to registered marks or commerce, but Plaintiff has not alleged any engagement in commerce or ownership of any registered marks. It has alleged no commercial interest whatsoever, let alone one affected by the use of OtterSec's "name, logo, trademarks, website, domain name and other communication accounts." Compl. ¶ 112. The Estate is not competing in commerce with RC Security LLC or Otter Audits LLC (the "South Dakota Defendants") and thus has no cause of action under § 43(a). *See Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 280 (4th Cir. 2004) (collecting cases establishing that "the focus of the [Lanham Act] is on anti-competitive conduct in a commercial context" (quoting *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539, 561 (5th Cir. 2001), *abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. 118); *see also Rubris, Inc. v. Ankura Consulting Grp., LLC*, No. 1:20-CV-1111 (ABJ), 2021 WL 7210782, at *6 (D.D.C. Mar. 26, 2021) (dismissing plaintiff's Lanham Act claim based on failure "to plead some commercial interest . . . for it to qualify as protected under the statute.").

### B. The Complaint Does Not Plausibly Allege a Lanham Act Injury to the Estate.

*First*, to the extent the Complaint alleges an injury to OtterSec, the claim must be dismissed as an improperly pleaded derivative action. *See supra* Section III.

*Second*, Plaintiff tries to dodge a derivative action by alleging that "[t]he Estate has been damaged" by Defendants' alleged false advertising and by "the diversion of OtterSec's business and opportunities, and the loss of the Estate's interest in the company." Compl. ¶ 119. To the extent that such a claim would not be derivative in nature, which it is, it fails because it does not state a claim under the Lanham Act for false advertising or false association. *See First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 F. App'x 229, 234 (4th Cir. 2016) (setting forth elements for a

false advertising claim); *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (listing elements of a claim for "false designation of origin").

(1)     The Plaintiff lacks any injury. *See Belmora LLC*, 819 F.3d at 710 (noting that the Supreme Court, in *Lexmark*, required "proximate causation of a cognizable injury" for both false association and false advertising claims). The "loss of the Estate's interest in the company" never took place, so no injury to the Estate has occurred. *See* Am. Answer ¶ 48. If the Plaintiff is alleging that the Estate's interest *lost value*, that is a derivative claim, as a diminution in the value of OtterSec is an injury to the corporation, not a direct harm. *Fritchel*, 452 P.3d at 604; *see also supra* at Section IV.

(2)     Plaintiff cannot meet the Act's "proximate-cause requirement," *Lexmark*, 572 U.S. at 133, for a similar reason: none of the alleged injuries, *see* Compl. ¶ 119, "flow[] directly from" Defendants' conduct to Plaintiff. *Lexmark*, 572 U.S. at 133. OtterSec intervenes in each formulation. If anyone lost trade as a result of Defendants' use of supposedly "misleading" branding, it would be OtterSec (assuming it still existed and was not lawfully dissolved, which it was), not the Estate. Similarly, the Complaint lacks any theory of causation whatsoever. There are no allegations suggesting that the Estate—or even OtterSec—ever competed with or lost customers to the South Dakota Defendants or to Robert. The Complaint makes only a conclusory, formulaic, and insufficient, reference to "diversion of . . . business and opportunities." Compl. ¶ 119.

(3)     The Complaint never alleges that Defendants used, in a misleading way, any mark that was ever possessed *by the Estate*. *See* Compl. ¶ 105. It does not plead facts suggesting that the South Dakota Defendants are using any assets at all that *the Estate* ever owned. Plaintiff only alleges that "Robert is using the '*OtterSec* website and domain name' for his companies' website," and that "Robert has also appropriated *OtterSec's* social media accounts for his new companies."

*Id.* ¶¶ 106–07 (emphasis added). (Again, this shows the derivative nature of the claim; the Estate cannot say that it possessed the marks and assets at issue.) The Complaint also entirely fails to plead elements relating to consumer confusion.

Finally, the Lanham Act claim against Robert must be dismissed because Plaintiff has not alleged facts providing a sufficient basis for the Court to pierce the corporate veil and hold him liable for conduct by the South Dakota Defendants. *See Coastal Spray Foaming, LLC v. Reynolds Home Solutions, Inc.*, No. 17-cv-00701-JMC, 2017 WL 2242666, at *3 (D. Md. May 23, 2017) (dismissing claims against individual defendants based on their failure to allege facts sufficient for veil-piercing).

To plausibly allege that Robert is liable for the corporations' actions, under South Dakota law,[8] Defendants would need to allege (1) that there was "such unity of interest and ownership that the separate personalities" of Robert and the South Dakota Defendants "are indistinct or non-existent" as well as (2) that "adherence to the fiction of separate corporate existence sanction fraud, promote injustice or inequitable consequence or lead to an evasion of legal obligations." *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994). Even if the allegations of fraud throughout the Complaint sufficed to meet the second prong—which they do not for the reasons stated throughout this motion—the Complaint lacks allegations of the unity of interest and ownership. There are no allegations concerning, for example, "undercapitalization," "failure to observe corporate formalities," "absence of corporate records," or "payment by the corporation of

_____

[8] "[T]he majority of jurisdictions addressing th[e] question have . . . applied the law of the state of incorporation to veil-piercing issues." *Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-cv-00259-TCK, 2009 WL 2601940, at *3 (N.D. Okla. Aug. 21, 2009); *see also* Restatement (Second) of Conflict of Laws § 307 (1971) ("The local law of the state of incorporation will be applied to determine . . . a shareholder's liability . . . to its creditors for corporate debts.").

individual obligations." *Id.* at 112–13. Because the corporate veil of a South Dakota corporation should only be pierced "upon the strongest evidence of" factors like these, *id.* at 113 n.9, and the Complaint fails to do so here, the claim against Robert must be dropped for this additional reason.

## VI.     PLAINTIFF HAS FAILED TO STATE ANY CLAIM UNDER STATE LAW.

### A. Plaintiff Cannot Claim Breach of Fiduciary Duty.

The Complaint alleges that Robert breached his fiduciary duties "in relation to, among other things, his dealings with Jump, the conduct and affairs of OtterSec, the formation of Otter Audits and RC Security, and the dissolution and winding up of OtterSec." Compl. ¶ 133. The Complaint says Robert owed these fiduciary duties "to OtterSec, Sam Chen, and the Estate," *id.* ¶ 132, but Plaintiff cannot state a claim with respect to any of these three for three different reasons.[9]

#### 1. The Complaint does not plausibly allege conduct that amounts to a breach of Robert Chen's fiduciary duty to Sam Chen.

Robert could only have breached a fiduciary duty to Sam during Sam's lifetime, and the only direct harm to Sam the Complaint alleges is Sam's transfer of 10% of his interest to Robert. Therefore, the only plausible claim of breach of fiduciary duty to Sam the Complaint could allege is one stemming from Robert's conduct, during Sam's lifetime, that caused the 10% transfer. The Complaint does not and cannot plausibly allege this, because it is clear that Sam had notice of Robert's call with Jump before he transferred his 10% interest, and, regardless, Sam never objected to the transfer on the basis of lack of notice of the alleged April 13, 2022, call; thus, such a claim is not plausible.

The Complaint alleges that Robert did not advise David or Sam of his discussions with

---

[9] "To establish a claim for breach of fiduciary duties, the plaintiff must show a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage." *Campbell v. Davidson*, 537 P.3d 734, 745 (Wyo. 2023) (quoting, in parenthetical, *Gowdy v. Cook*, 455 P.3d 1201, 1208 (Wyo. 2020)).

Jump prior to April 18, 2022, *see* Compl. ¶¶ 31, 40, 53, and that Sam would not have transferred his 10% interest on April 16, 2022, had he known of the April 13, 2022 call with Jump. Compl. ¶ 49. These allegations are directly contradicted by the actual messages between Robert and David, which show David was on notice of Robert's communications with Jump. The Discord channel log, which is part of the pleadings under Rule 10(c), shows that Robert gave notice of his Jump call to not just David, but all OtterSec employees and contractors, at least as early as April 12, 2022. Ex. 2 to Am. Answer (ECF 49-2). *See also* Fed. R. Civ. P. 10(c); *see supra* Legal Standard, at 5–6.



As shown in Exhibit 2 to the Amended Answer (ECF 49-2), an excerpt of which is above, on April 12, 2022, at 9:59 AM Robert ("NotDeGhost") posted to a Discord channel where he, David, and others working for OtterSec posted their daily tasks, stating: "time to call jump crypto." He included a screenshot of the call's proposed attendees, including the Jump president. *Id.* One minute later, David ("ra" in the chat) also posted a message. Therefore, at least as early as April 12, 2022, Robert notified David of a call with Jump's president. Again, on April 12, 2022, at 9:10

PM, Robert posted to the same group chat: "+call w/ jump crypto president." Again, David was next to post on the thread. *Id.* Again, Robert notified David.

It is therefore incorrect, and not plausible, that Sam's supposed harm—transferring 10% of his interest at David's request on April 16—resulted from Robert allegedly concealing his conversations with Jump until April 18, 2022. David knew, on April 12, about the Jump call. While Robert did not apprise Sam directly, he did not generally do so, nor does the Complaint allege that he should have done so, rather than communicating through David as was their typical practice.

### 2. Robert Chen never owed a fiduciary duty to the Estate.

At Sam's death, the Estate became transferee of Sam's interest in OtterSec, not a member. *See supra* Section III. Wyoming law provides that "[t]he obligations of a limited liability company and its members to a person in the person's capacity as a transferee or dissociated member are governed by the operating agreement." Wyo. Stat. Ann. § 17-29-112. No version of OtterSec's Operating Agreement ever said that transferees or dissociated members (or their Estates) were owed fiduciary duties of any kind.

The Second District Appellate Court of Illinois, a state which also follows the RULLCA and whose provisions on transferable interests and dissociation are essentially identical to the WLLCA's,[10] has explained that a sole surviving member of a member-managed LLC owes no fiduciary duty to a deceased member's estate. *In re Estate of Mandelstein*, Case No. 2-17-1009, 2018 WL 4191344, at *7 (Ill. App. Ct. Aug. 31, 2018). Therefore, the Estate cannot bring a claim for breach of fiduciary duty.

---

[10] *Compare* 805 ILCS 180 §§ 1-5; 30-5(b); 30-25; 35-45(8)(A); 35-45(10), *with* Wyo. Stat. Ann. §§ 17-29-102(xxii); 17-29-502(a)(iii)(A); 17-29-504; 17-29-602(a)(vi)(A).

**3. Robert Chen's fiduciary duty to OtterSec could only be the basis for a derivative claim—and Plaintiff has not brought one.**

The Complaint references Robert breaching his fiduciary duty to OtterSec, but, for the reasons explained, *supra* Section IV, any such duty could only be enforced through a derivative action filed on behalf of OtterSec itself. *See Mantle*, 437 P.3d at 806–07.

**4. The aiding and abetting claims must also be dismissed.**

The claim that the South Dakota Defendants aided and abetted Robert's breaches of fiduciary duties, Compl. ¶ 136, fails because the Complaint fails to state a predicate claim for breach of fiduciary duty against Robert. *See supra* at 15–18. The fiduciary duty that Robert owed Sam ceased to exist at Sam's death, before the existence of the South Dakota Defendants, so there can be no aiding and abetting claim based on the fiduciary duty to Sam; Robert owed no fiduciary duty to the Estate, so there can be no aiding and abetting claim as to that alleged fiduciary duty; and the Estate has not brought a derivative suit, so there can be no aiding and abetting as to that claim. *See Campbell v. Davidson*, 537 P.3d 734, 747 (Wyo. 2023) (affirming dismissal of claims for aiding and abetting breach of fiduciary duty because the claims were derivative and the plaintiff failed to comply with derivative suit requirements). Moreover, the allegations, *see* Compl. ¶ 136, are entirely formulaic and conclusory recitations of the elements of a claim. *See Iqbal*, 556 U.S. at 678.

**B. The Complaint Fails to Plausibly Plead Fraud or with Particularity.**

Plaintiff fails to plead each element of fraud under Wyoming law or to do so with the particularity required by Federal Rule of Civil Procedure 9(b). The elements of fraud under Wyoming law are: "(1) the defendant made a false representation intended to induce the plaintiff to act; (2) the plaintiff reasonably believed the representation was true; and (3) the plaintiff relied on the representation and suffered damages as a result." *Mantle*, 437 P.3d at 786. Also, "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b). At a minimum, the plaintiff must describe "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.* [hereinafter *Bakery Union Fund*], 888 F.3d 696, 705 (4th Cir. 2018) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

The Complaint does not identify a single misrepresentation that Robert plausibly "intended to induce" Sam to act upon and on which Sam then relied. The Complaint alleges two sets of misrepresentations: (1) those "made on or before April 16, 2022, in relation to [Robert's] dealings with Jump specifically," Compl. ¶ 143; *see also id.* ¶ 144; and (2) those "relat[ing] to . . . the conduct and affairs of OtterSec, the formation of [the South Dakota Defendants], and the dissolution and winding up of OtterSec," *id.* ¶ 144. These are best addressed separately.

1. **The Complaint identifies no misrepresentations relating to Jump that could have plausibly been intended to induce Sam to transfer 10% to Robert.**

The Complaint alleges that Robert misrepresented his conversations with Jump, and connects these supposed misrepresentations to the April 16, 2022, Amended Operating Agreement, signed by Sam, transferring 10% of his OtterSec shares to Robert. These allegations are not remotely plausible. For one thing, they rely on a selective, and misleading, reading of the chat log of Robert and David's communications. As detailed above, Robert told David on April 12 of Robert's alleged April 13 call with Jump. *See supra* at 16–17. On April 15, unprompted by Robert, David messaged Robert to say he had "thought about stuff some more and discussed with [his] parents" and suggested he "transfer over % of equity to you [i.e. Robert]." Ex. 3 to Am. Answer (ECF 49-3). Robert asked David why, and David wrote: "it's the best compromise . . . this

way it's not unfair when you do more work because you reap more of the benefits." *Id.* Robert asked what percentage David wanted to transfer, and David suggested "10% from me to you making it 40:60." *Id.* Robert expressed "hope" that this did not mean David would "adjust [his] work down." *Id.* Because David knew, on April 15, about Robert's conversations with Jump, and because the full chat log shows that David, not Robert, initiated the proposal to transfer 10% of Sam's interest to Robert, there is no plausible argument that David made this proposal, or that Sam transferred his shares, based on any misrepresentations or omissions made by Robert.

Even putting aside that David and Sam had notice of the Jump call, the Complaint nowhere alleges misrepresentations concerning Jump were "intended to induce [Sam] to act," or that "[Sam] reasonably believed" them, or that "[Sam] relied on the representation[s]" when agreeing to the transfer. *Mantle*, 437 P.3d at 786. According to the Complaint (and the chat log) the transfer was David's idea. Compl. ¶ 44; Ex. 3 to Am. Answer (ECF 49-3). Robert did not suggest it, and Robert did not hear of it until April 15, 2022—the day after Robert's allegedly misleading conversation with David. Compl. ¶¶ 43–44, 46. The Complaint nowhere plausibly explains how, on April 14, 2022, Robert could have intended his comments to David to induce David, let alone Sam, to accept a deal Robert had no idea David was contemplating. To the contrary, the Complaint states that David proposed the 10% transfer from Sam to "appease" Robert and make up for David's "inability to dedicate himself OtterSec full-time," *id.* ¶ 44. The Complaint does not plausibly allege that Robert's alleged failure to notify David of his April 14, 2022, call with Jump was intended to induce Sam to transfer 10% of his interest to Robert.

The Complaint's conclusory allegation that Sam "would not have agreed to the transfer" if he had known the full facts, *id.* ¶¶ 49, 143, is not supported by factual allegations. The Complaint shows that Sam agreed to the 10% transfer in reliance on *David's* representations (not Robert's)

about what would be good for the company, *id.* ¶ 44. The Complaint likewise fails to assert that Sam heard or learned about, let alone "reasonably believed," anything Robert had said (or not said) to David on April 14 concerning Jump. *See* Compl. ¶ 44.

## 2. The fraud claim is barred by laches.

The Complaint nowhere alleges that, prior to this lawsuit, Sam ever objected to the 10% transfer on the grounds that he did not know about the Jump discussions beforehand. Indeed, this Complaint, filed nearly a year after the transfer, is the *first time* Robert was put on notice that Sam objected to the transfer based on not having known at the time —April 16, 2022—about Robert's alleged preliminary call with Jump on April 13, 2022. The Complaint does not allege otherwise (nor can it).

This claim is barred by laches. "Two elements must be proven to establish laches: 1) inexcusable delay; and 2) injury, prejudice, or disadvantage to the defendants or others." *Peterson v. Laramie City Council*, 543 P.3d 922, 927 (Wyo. 2024) (citation omitted). In addition, "[t]he existence of laches is primarily determined not by lapse of time but by considerations of justice." *Id.* "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another." *Id.* (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001)). Here (1) Sam and the Estate inexcusably delayed in objecting to the transfer because Sam allegedly did not know, on April 16, 2022, that Robert had spoken to Jump on April 14, 2022; and (2) this delay prejudices and disadvantages Robert, who could have remedied this supposed objection back in April 2022 had he known about it because Robert could have set up calls between Sam and Jump, or had a conversation with Sam about the transfer, for instance.

The belated objection also exposes the implausibility of the Complaint's allegation that Sam would not have transferred his 10% interest had he known about the discussions. *See, e.g.,* Compl. ¶ 49. If David and Sam objected to the transfer upon supposedly learning of the Jump call

on April 18, 2022, *id.* ¶ 53, a mere 2 days after the transfer, they would have raised an objection on that basis sooner.

### 3. The Complaint does not identify with particularity any misrepresentations made after April 16, 2022.

Plaintiffs' second set of alleged misrepresentations—those "relat[ing] to . . . the conduct and affairs of OtterSec, the formation of [the South Dakota Defendants], and the dissolution and winding up of OtterSec," *id.* ¶ 144—can be disregarded because they are not identified with particularity,[11] and because the Complaint identifies no way in which Sam or the Estate (or even David) relied on any alleged misrepresentation.

First, these allegations fall short of what is required by Rule 9(b) because they do not describe the "time, place, and contents of [these] false representations." *Bakery Union Fund*, 888 F.3d at 705. Failure to explain "how" fraud occurred is grounds for dismissal. *Kellogg Brown & Root, Inc.*, 525 F.3d at 379 (explaining that the Rule 9(b) standard requires the "who, what, when, where, and how" of the alleged fraud).

Second, Plaintiff has not identified "what [Robert] obtained" as a result of the nonspecific misrepresentations about "the conduct and affairs of OtterSec," its dissolution, or the formation of the South Dakota Defendants. *Bakery Union Fund*, 888 F.3d at 705. Plaintiff also does not identify any action that Sam or the Estate took in reliance on these alleged "misrepresentations and omissions," Compl. ¶ 144. Since, to state a claim, "[t]he false representation must be one which induces action," the lack of action by Plaintiff is another fatal defect in these vague allegations. *Garner v. Hickman*, 709 P.2d 407, 410 (Wyo. 1985).

---

[11] To the extent that the second set of alleged misrepresentations, in ¶ 144, concerning "[Robert's] dealings with Jump" overlap with the first set, in ¶ 143, they fail to state a claim for fraud for the same reasons discussed above.

Third, because the only allegedly detrimental action taken by Sam or the Estate is signing the Amended Operating Agreement, on April 16, 2022, all allegations concerning misrepresentations made after that date can be disregarded for purposes of the fraud claim. "In order to establish fraud" in connection with the signing of a contract, "the alleged false representations must be made before execution of the contract upon which the action is based." *Id.*; *see also Richardson v. Hardin*, 5 P.3d 793, 797 (Wyo. 2000). Nothing that happened after the Amended Operating Agreement can be the basis for this fraud claim, because the Complaint alleges the signing of the Amended Operating Agreement, and its accompanying transfer of the 10% interest, as the only detrimental action the Estate or Sam took in reliance on supposed misrepresentations.

Finally, Plaintiff alleges that as early as April 22, 2022, "David was growing suspicious that Robert was not being forthright." Compl. ¶ 67. Therefore, it is not plausible that Sam or the Estate would have reasonably believed or relied on any alleged misrepresentations made after April 22. For example, it is not plausible that the Estate believed and reasonably relied on statements concerning the formation of the South Dakota Defendants or the dissolution of OtterSec, both of which did not occur until months into a dispute with someone that David no longer trusted. *See* Compl. ¶¶ 82, 89–102 (detailing Robert and David communicating through counsel as early as May 2022).

Because the Complaint failed to state a claim for fraud, it has likewise failed to state a claim for aiding and abetting fraud against Otter Audits and RC Security.

## C. The Complaint Does Not Plausibly Plead Breach of Contract.

Plaintiff alleges that Robert breached Section 8.1 of OtterSec's Operating Agreement, Compl. ¶¶ 78, 151–55, because "Robert Chen dissolved OtterSec for the purpose of causing the loss of the Estate's interest in the company, and in furtherance of his scheme to misappropriate

OtterSec and the Estate's interest in OtterSec." Section 8.1 states in relevant part: "The member(s) may dissolve the company at any time. The member may NOT dissolve the company for a loss of membership interests." Ex. 1 to Am. Answer (ECF 49-1).

*First*, Plaintiff has not and cannot plead that Robert dissolved OtterSec to cause the Estate to lose its membership interest because Robert *admits* that the Estate has a 40% economic interest in OtterSec, Am. Answer ¶ 48, and he always has. Dissolution did not deprive the Estate of this interest. *Second*, to the extent the Estate is claiming that "loss of membership interest" means the value of the Estate's economic interest diminished as a result of dissolution, this is a harm common to all shareholders, and must be brought as a derivative claim, which the Estate cannot bring. *See supra* Section IV. In other words, if Plaintiff's complaint is that the Estate's 40% interest was worth less after dissolution than if OtterSec had continued as a business, that is a harm common to all members, not a direct or special harm. *Third*, the event that caused the Estate to inherit only Sam's economic interest, but not his member rights, was Sam's death, *not* the dissolution. The dissolution did not deprive the Estate of any rights or property that the Estate had upon Sam's death. *Finally*, Plaintiff's claim that Robert breached an implied covenant of good faith and fair dealing, Compl. ¶¶ 153–54, fails, because such a claim "cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Harper v. Fid. & Guar. Life Ins. Co.*, 234 P.3d 1211, 1221 (Wyo. 2010). Robert properly dissolved OtterSec, as explained above, and had he not done so, he would have been in violation of Section 1.3 of the Operating Agreement.

### D. Plaintiff's Conversion Claim Fails Because Robert Chen Legally Dissolved OtterSec, Which Had Legal Title to the Assets at Issue.

The Complaint fails to plausibly allege the majority of the elements for conversion, requiring Plaintiff to establish that: (1) the Estate had "legal title to the converted property"; (2)

the Estate had "possession of the property or the right to possess it at the time of the conversion"; (3) Defendants "exercised dominion over the property in a manner which denied the plaintiff [her] rights to use and enjoy the property"; (4) the Estate demanded the property's return, if the Defendants obtained it lawfully or without fault; and (5) the Estate suffered damage as a result of the loss. *Lieberman v. Mossbrook*, 208 P.3d 1296, 1304 (Wyo. 2009). *See* Compl. ¶ 148.

The Complaint does not allege the third element: Robert has never denied that the Estate had a 40% economic interest in OtterSec, *see* Am. Answer ¶ 48, and the Complaint does not so allege. The Estate had no right to participate in the management of OtterSec, so Robert could not have denied it that right. Dissolution was required, so that also cannot be the basis of this claim. *See supra* at Section II. The Estate had the chance to bid on OtterSec's assets, Compl. ¶ 102, and failed to do so; so again, that is not the basis for the claim. Robert purchased OtterSec's assets and those funds were remitted to OtterSec's bank account and not distributed to Robert, *see* Ex. 5 to Am. Answer (ECF 49-5). The Estate's economic interest in OtterSec has not been denied. Therefore, the Complaint fails to allege *what* was supposedly converted. Additionally, Plaintiff nowhere alleges that the Estate demanded the return of any property, the fourth element, which is fatal to the claim. *See Motzko Co. USA, LLC v. A & D Oilfield Dozers, Inc.*, 316 P.3d 1177, 1182 (Wyo. 2014).[12]

### E. The Tortious Interference Claim Fails.

Plaintiff's tortious interference claim, Compl. ¶¶ 157–58, fails because the Estate is suing over an injury to OtterSec, but has not brought a derivative claim. *See supra* Section IV. Plaintiff has also failed to plausibly allege each element of the claim under Wyoming law. *See Sheaffer v.*

---

[12] Plaintiff also misstates the remedy for conversion, *see* Compl. ¶ 149. The remedy for conversion is the return of the converted property, *e.g.*, *Gould v. Ochsner*, 354 P.3d 965, 976 (Wyo. 2015), or some measure based on value of that property at the time of loss, *e.g.*, *Lieberman v. Mossbrook*, 208 P.3d 1296, 1311 (Wyo. 2009), not a share of a defendant's new endeavors.

*State ex rel. Univ. of Wyo.*, 202 P.3d 1030, 1044 (Wyo. 2009). These are: "(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Id.* at 1044.

Plaintiff fails most obviously to plead the existence of a valid relationship element and the damage element. The Complaint asserts that "[b]y reason of Defendants' . . . interference with *OtterSec's* existing and prospective contracts . . . *the Estate* has been damaged." Compl. ¶ 159 (emphasis added). In the Complaint's own terms, then, the Estate did not have a business expectancy, and the party whose expectancy was disrupted is not the one who suffered damage. Yet again, the Estate is not the party alleged to have suffered an injury. *See Gaston v. Life Care Ctrs. of Am., Inc.*, 488 P.3d 929, 943 (Wyo. 2021) ("[T]he plaintiff must suffer an injury.").

Plaintiff additionally fails to plead that Defendants did anything "improper." Plaintiff's timeline and description of Robert's conversations with Jump and David's knowledge of them is contradicted by the chat logs. Exs. 2–4 to Am. Answer (ECF 49-2 to 49-4). Nor was the dissolution of OtterSec improper in any way. *See supra* Section II.

### F. The Complaint Identifies No Tortious Conduct by Either South Dakota Defendant.

The Complaint alleges no tortious conduct—and very little conduct of any kind—by either South Dakota Defendant company. Plaintiff appears to assert either that the Estate has an ownership interest in these companies, *see* Compl. ¶ 149, or that they were tools by which Robert stole the Estate's interest in OtterSec, *see id.* ¶ 103. In either event, they are—at most—alleged to have been *involved in* tortious conduct, not to have committed torts themselves. The Complaint therefore fails to state a claim against the South Dakota Defendants.

### G. Plaintiff Is Not Entitled to an Accounting.

An accounting is an equitable remedy that is only proper where there is no adequate remedy at law, and where "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962); *accord Davidson-Eaton v. Iversen*, 519 P.3d 626, 645 (Wyo. 2022). Only in "a rare case" is such a remedy appropriate. *Dairy Queen, Inc.*, 369 U.S. at 478. This is not such a case. If Plaintiff's other claims have been dismissed—as they must be—this will not show the inadequacy of remedies at law, but only the inadequacy of the facts as laid out by Plaintiff. And if any one of Plaintiff's claims survives the instant motion, then a remedy at law is available and the claim for an accounting is improper.

### VII.    THE DECLARATORY JUDGMENT ACTION SHOULD BE DISMISSED.

Since Plaintiff has failed to state a claim for relief on any other basis, the Declaratory Judgment Act (DJA) is not available as a basis for jurisdiction. The DJA "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011). Requests for declaratory relief in general—including those invoking the DJA—are thus "barred to the same extent that the claim for substantive relief on which it is based would be barred." *Id.* at 55–56; *see also, e.g.*, *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 528 (D. Md. 2004). Because Plaintiff has failed to adequately plead any of its other claims, the DJA cannot function as a standalone cause of action. Additionally, the Complaint does not establish plausible grounds for the declaratory relief it seeks—a declaration of the Estate's ownership interest in Otter Audits and RC Security. *See Young v. Ditech Fin., LLC*, No. PX 16-cv-3986, 2017 WL 3066198, at *8 (D. Md. July 19, 2017) ("Seeking a declaratory judgment does not eliminate Plaintiff's obligation to state a claim upon which such relief may [be] granted.").

Plaintiff's request for the imposition of a constructive trust aimed at securing "the Estate's rightful interest in Otter Audits and RC Security," Compl. ¶ 130, is even less warranted. When properly invoked, these doctrines are traditionally used to argue that a corporation would be liable for another entity's debts or liabilities, *see TEP Rocky Mountain LLC v. Record TJ Ranch Ltd. P'ship*, 516 P.3d 470–71 (Wyo. 2022), but the Estate does not claim that it was owed money by or wronged by OtterSec. The Estate cannot claim ownership over either South Dakota Defendant based on its prior ownership of OtterSec; the "mere continuation" and "de facto merger" doctrines it invokes do not go this far. *See id.* Thus, Plaintiff has not plausibly alleged facts that would permit this Court to provide the injunctive relief sought.

## VIII.   THE COURT SHOULD STAY DISCOVERY

Defendants request that the Court stay discovery pending the outcome of this motion. Defendants brought this Rule 12(c) motion at the earliest time possible. Granting this Rule 12(c) motion will dispose of all the claims in the Complaint. Permitting discovery will impose undue burden or expense on Defendants and will not aid in the resolution of this Motion.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and dismiss the Complaint. Defendants also request that the Court stay discovery and the related deadlines pending the outcome of this Motion.

Respectfully submitted,

Dated: April 19, 2024

/s/ Rachel Clattenburg_____
Rachel Clattenburg
Joshua A. Levy, *pro hac vice*
Kevin P. Crenny, *pro hac vice*
Justin A. DiCharia, *pro hac vice*
**LEVY FIRESTONE MUSE LLP**
900 17th St. NW, Suite 1200

Washington, DC 20006
Tel: (202) 845-3215
Fax: (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com
jdicharia@levyfirestone.com

*Counsel for Defendants*