## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

LI FEN YAO, *as Administrator of the Estate of Sam Mingsan Chen*,

      Plaintiff,

v.

ROBERT CHEN,
OTTER AUDITS LLC and
RC SECURITY LLC,

      Defendants.

Civil Action No. TDC-23-0889

## MEMORANDUM OPINION

Plaintiff Li Fen Yao, in her capacity as the administrator of the estate of her late husband, Sam Mingsan Chen ("the Estate"), has filed this civil action against Defendants Robert Chen, Otter Audits LLC ("Otter Audits"), and RC Security LLC ("RC Security"), in which she alleges a violation of the Lanham Act, 15 U.S.C. § 1125(a); a breach of contract claim; and multiple state law tort claims, including breach of fiduciary duty, fraud, misappropriation and conversion, and tortious interference, arising out of the activities leading up to and during Robert Chen's dissolution of OtterSec LLC ("OtterSec"), a company jointly owned by Robert Chen and Sam Chen. Yao seeks compensatory and punitive damages, injunctive relief, a declaratory judgment, and an accounting of the financial activities of OtterSec, Otter Audits, and RC Security. Defendants have filed a Motion for Judgment on the Pleadings, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Relevant factual background is set forth in the Court's March 11, 2024 Memorandum Opinion on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, *Yao v. Chen*, No. TDC-23-0889, 2024 WL 1051740, at \*1-4 (D. Md. Mar. 11, 2024) ("*Yao I*"), which is incorporated here by reference. Additional facts and procedural history are provided below as relevant to the resolution of the pending Motion.

### I.      Formation of OtterSec

In 2019, Defendant Robert Chen and David Chen, who are not related to each other, met while they were teenagers participating in a cybersecurity competition. After meeting, Robert Chen and David Chen partnered in cybersecurity competitions and began to work together. Robert Chen resided in Washington state and David Chen resided with his parents, Sam Chen and Plaintiff Li Fen Yao, in Rockville, Maryland.

On February 4, 2022, Robert Chen approached David Chen, then 16 years old, with a proposal to start a cybersecurity company together. The proposed company, which they named "OtterSec," would audit software code for companies operating on the blockchain that faced security vulnerabilities. Compl. ¶ 16, ECF No. 1. Robert Chen formally established OtterSec as a limited liability company ("LLC") under the laws of Wyoming and received money from David Chen to cover the formation costs for the company. As David Chen was still a minor, Robert Chen suggested that Sam Chen, David Chen's father, serve as the co-owner of OtterSec. On February 14, 2022, Robert Chen and Sam Chen entered into the operating agreement ("the Operating Agreement") for OtterSec LLC ("OtterSec" or "the Company"), which provided that Robert Chen and Sam Chen were the only members, that they each owned a 50 percent interest in OtterSec, and that OtterSec would be managed by the members.

2

OtterSec "experienced explosive growth from the outset and generated over \$1 million in revenue in its first two months of operations." *Id.* ¶ 29. Although David Chen was in high school, he also worked on OtterSec business, including by contributing his own personal funds, computer code, auditing strategies, and computer hardware. OtterSec also hired or retained multiple employees and consultants.

## II.    The Amended Operating Agreement

By April 2022, two months after OtterSec was established, Robert Chen was regularly complaining that David Chen was not devoting sufficient time to OtterSec and even suggested that he drop out of high school so he could work for the Company full-time. David Chen, for his part, did not want to drop out of high school and did not believe that he could commit any more time to OtterSec.

By April 15, 2022, David Chen had "reached a breaking point" in trying to balance his school responsibilities and his work for OtterSec and decided that he could not "dedicate the time to OtterSec that Robert Chen was consistently demanding of him." *Id.* ¶ 43. In order to "appease" Robert Chen and "resolve any disharmony," David Chen developed a proposal under which Sam Chen would transfer 10 percent of his membership interest in OtterSec to Robert Chen so that David Chen could still attend school and not increase his OtterSec workload. *Id.* ¶¶ 44, 46. After discussing the proposal with Sam Chen and securing his agreement to it, David Chen messaged Robert Chen on April 15, 2022 and made this proposal, which Robert Chen accepted with the understanding that David Chen would neither increase nor decrease his OtterSec workload. On April 16, 2022, Sam Chen and Robert Chen entered into an amended operating agreement ("the Amended Operating Agreement") which resulted in Robert Chen owning 60 percent of OtterSec and Sam Chen owning 40 percent.

3

This Amended Operating Agreement contained various provisions, which may have also been in the original Operating Agreement, governing OtterSec's operations and its members' rights and duties. As relevant here, Section 1.3 of the agreement specifies that OtterSec would "continue perpetually unless . . . "(a) Members whose capital interest as defined in Article 2.2 exceeds 50 percent vote for dissolution; . . . (c) The death . . . of a member or the occurrence of any other event that terminates the continued membership of a member of the Company; or (d) Any other event causing dissolution of the Company under applicable state laws." Joint Record ("J.R.") 85, ECF No. 57. Section 4.1 provides that "[t]he members are responsible for the management of the Company," and Section 4.3 states that "[a]ll members are authorized on the Company's behalf to make decisions as to . . . the sale . . . or other disposition of the Company's assets." J.R. 86. Finally, Section 8.1 states that "[t]he member(s) may dissolve the [C]ompany at any time" but that "[t]he member may NOT dissolve the [C]ompany for a loss of membership interests." J.R. 89.

## III.    Negotiations with Jump Trading

Meanwhile, sometime prior to April 13, 2022, Robert Chen began engaging in negotiations with Jump Trading, a registered broker-dealer, regarding a potential acquisition of OtterSec by Jump Crypto, which was then a division of Jump Trading (collectively, "Jump"). The Complaint alleges that although Robert Chen had disclosed to David Chen prior negotiations regarding other potential OtterSec investors, he did not initially disclose his negotiations with Jump to either David Chen or Sam Chen. In contesting this point, Defendants have attached to their Amended Answer an April 12, 2022 posting by Robert Chen to a chat group of OtterSec employees, which included David Chen, in which he stated that it was "time to call jump crypto" and that he had a "call [with]

4

jump crypto president." J.R. 91. According to the chat group logs, in the same time frame as these posts, David Chen sent messages to the chat group about what appear to be unrelated issues.

Nevertheless, the Complaint also asserts that "no later than April 13, 2022, Robert [Chen] entered into discussions in earnest with principals of Jump Trading, Jonathan Claudius and Hendrik Hofstadt, regarding a potential acquisition of OtterSec," Compl. ¶ 30, and that neither David Chen nor Sam Chen was involved in these discussions. On April 14, 2022, the day before David Chen reached out to him to first discuss the transfer of part of Sam Chen's ownership interest and two days before Sam Chen signed the Amended Operating Agreement, Robert Chen exchanged text messages with Claudius in which Robert Chen stated "that it was great to hear his perspective about being acquired by Jump" and in which he shared with Claudius OtterSec's revenues from its first two months of operations. *Id.* ¶ 33. Claudius responded that as a next step, he "was thinking of getting Kanav involved," referring to Kanav Kariya, the president of Jump Crypto. *Id.* ¶ 34. Claudius then stated that if the call with Kariya went well, he "suspect[ed] the next step would be to make you an offer." *Id.* Claudius then agreed to set up a telephone call between Robert Chen and Kariya to occur on Monday, April 18, 2022. *Id.*

The Complaint alleges that neither David Chen nor Sam Chen was a party to these discussions and "did not know that they had taken place," and that Robert Chen did not disclose them at the time. *Id.* ¶ 35. Instead, on April 14, 2022, Robert Chen sent text messages to David Chen regarding efforts to raise capital for OtterSec but did not specifically reference his discussions with Jump and stated only that he was "talking to some potential vcs," referring to venture capitalists, to try to build connections and secure investments for OtterSec. J.R. 107. During this exchange, David Chen stated to Robert Chen that "giving out any equity at all is a huge commitment since it breaks the 50/50 balance" and continued to ask for more specifics about

Robert Chen's discussions, including by asking "what's the real reason you want investment?" and stating that Robert Chen had been "very deflective about it in the past." J.R. 107. Although Robert Chen told David Chen that he had been "connected" with "a company today," J.R. 108, the Complaint alleges that Robert Chen "concealed that his discussions with that 'company' were 'about being acquired' and affirmatively misrepresented them as being associated with his efforts to build 'connections.'" Compl. ¶ 38.

On April 18, 2022, Robert Chen met with Kariya and discussed the terms of a potential Jump offer to purchase OtterSec. Robert Chen understood that such an offer would be an "acquihire," under which Jump would primarily acquire OtterSec for OtterSec's employees and not its products or services. *Id.* ¶ 51. Later that day, Robert Chen told David Chen that Jump was interested in an acquihire. The Complaint alleges that on April 21, 2022, unbeknownst to David Chen or Sam Chen, Robert Chen negotiated the terms of a potential acquihire with Jump. Specifically, he represented to Jump that he would welcome an offer for OtterSec and three full-time staff consisting of himself and two of OtterSec's employees, but not including David Chen, and suggested to Jump that David Chen could remain at OtterSec. Defendants contest whether David Chen was aware of these discussions by attaching as exhibits to their Amended Answer various messages exchanged between Robert Chen and David Chen on April 21, 2022 which, they argue, show that Robert Chen shared with David Chen a link to a video meeting with Jump that day and that they shared reactions to the meeting with each other. Defendants have also provided an April 21, 2022 text message from Robert Chen asking David Chen to call him and telling David Chen that he "needs to talk ab[ou]t acquihire structuring." J.R. 152. Nevertheless, the Complaint alleges that on April 22, 2022, David Chen spoke with Kariya and was surprised to hear that Jump's proposed acquihire would include neither David Chen nor Sam Chen's interest in OtterSec.

On April 29, 2022, without the knowledge of either Sam Chen or David Chen, Robert Chen received an offer from Jump.

Based on this sequence of events, the Complaint alleges that Sam Chen and David Chen did not learn about Jump's potential acquisition of OtterSec until after Sam Chen signed the First Amended Operating Agreement on April 16, 2022 and thereby transferred 10 percent of his interest in OtterSec to Robert Chen. It further asserts that "[h]ad Robert [Chen] disclosed what he actually knew about Jump," Sam Chen "would not have agreed to the transfer" or the Amended Operating Agreement. Compl. ¶ 49.

## IV.   Dissolution of OtterSec

By April 27, 2022, David Chen had concluded that he could no longer work with Robert Chen and had told him that he would cease further work with OtterSec. Robert Chen responded by asking Sam Chen to relinquish his remaining 40 percent interest in OtterSec. Sam Chen and David Chen declined. In a message sent on May 10, 2022, Robert Chen stated that if Sam Chen was unwilling to sell his 40 percent interest in OtterSec, Robert Chen would "probably dissolve the company and remake it." *Id.* ¶ 77. David Chen informed Robert Chen that Sam Chen was willing to consider selling his 40 percent interest in OtterSec but only if Robert Chen would disclose certain financial information pertaining to the Jump acquihire. Robert Chen refused to provide such information.

On May 27, 2022, Iquan Fadaei, an attorney purporting to act on behalf of OtterSec, emailed Sam Chen and David Chen to advise them that Robert Chen "will be exercising his right to dissolve OtterSec shortly." *Id.* ¶ 82. On June 1, 2022, Sam Chen and David Chen retained the law firm of Hathaway & Kunz ("H&K") as counsel. On June 4, 2022, Fadaei asserted to H&K that Robert Chen had the right to dissolve OtterSec based on his 60 percent ownership interest and

stated that Robert Chen planned to dissolve the Company and have an auction among the members for OtterSec's intangible assets. On June 9, 2022, H&K served OtterSec with a request for various records and information relating to OtterSec and raised concerns and objections to Robert Chen's proposed plan of dissolution. On June 23, 2022, Fadaei responded to H&K's request and again stated that Robert Chen was authorized to dissolve OtterSec unilaterally based on his 60 percent ownership interest.

On July 13, 2022, Sam Chen was killed in a car accident. Yao, Sam Chen's wife and David Chen's mother, was later appointed as the administrator of his estate ("the Estate"). The Complaint asserts that Sam Chen's membership interest in OtterSec passed to the Estate upon his death, as OtterSec had not yet been formally dissolved.

On August 15, 2022, Robert Chen, as the sole remaining member of OtterSec, executed an amendment to the Amended Operating Agreement ("the Second Amendment"). The Second Amendment, after acknowledging the death of Sam Chen and stating that the remaining member of OtterSec, Robert Chen, believed that it was in the best interest of OtterSec to continue in existence, deleted the entirety of Section 1.3(c) of the Amended Operating Agreement, which had provided that OtterSec would dissolve upon the death of a member, and replaced it with new language stating that OtterSec would "continue perpetually" unless there was a "termination of the membership of all members of the Company." J.R. 2, 85. To clarify the effect of this new language, the Second Amendment also replaced Section 1.4 of the Amended Operating Agreement, entitled "Continuance of Company," with the following text: "For the avoidance of doubt, the dissociation of a member shall not cause the dissolution of the Company." J.R. 2. The Second Amendment left all other provisions of the Amended Operating Agreement unmodified.

8

On September 13, 2022, Robert Chen, without informing Yao or David Chen, formed two new LLCs under the laws of South Dakota, which he named Otter Audits LLC and RC Security LLC (collectively, "the LLC Defendants"). On September 20, 2022, Fadaei emailed H&K to notify the Estate that "Robert [Chen] has dissolved OtterSec, and the company is now beginning to wind up." Compl. ¶ 101. The Articles of Dissolution of OtterSec were later filed with the Wyoming Secretary of State on October 6, 2022.

Also on September 20, 2022, Fadaei informed H&K by email that the winding-up process would include the sale of OtterSec's assets and provided "a list of assets that prospective purchasers may offer to purchase from the Company," including OtterSec trademarks, its website and domain name, "OtterSec code," and certain "Communication and Operational Accounts," such as OtterSec's "Discord, Slack, Notion, and GSuite accounts." *Id.* ¶ 102. Robert Chen, however, "did not make any offer to purchase the listed assets." *Id.* ¶ 103. Rather, the Complaint alleges that Robert Chen has taken the listed assets as part of a plan to "dissolve the company and remake it" in the form of Otter Audits and RC Security so that he could "continue the exact same business" and "thereby steal OtterSec for himself." *Id.* Specifically, Robert Chen is using the OtterSec website and domain name for the company website of Otter Audits and RC Security, and he is also using OtterSec's name, logo, and social media accounts for the benefit of his new companies. *Id.* ¶¶ 105-107.

## V.    Procedural History

On March 31, 2023, Yao filed the Complaint in this case. Count 1 asserts a violation of the Lanham Act based on Defendants' alleged misuse of OtterSec's name, logo, trademarks, website, domain name, and social media and communication accounts, in violation of 15 U.S.C. § 1125(a). Count 2 requests a declaratory judgment that OtterSec's dissolution was improper and

invalid, and that the Estate is entitled to the same interest in the LLC Defendants as it would have had in OtterSec. Counts 3 through 7 allege common law claims arising out of OtterSec's dissolution and the establishment of the LLC Defendants, consisting of breach of fiduciary duty and aiding and abetting breach of fiduciary duty (Count 3); fraud and aiding and abetting fraud (Count 4); misappropriation and conversion (Count 5); breach of contract (Count 6); and tortious interference (Count 7). Count 8 seeks an accounting of the assets and finances of OtterSec, Otter Audits, and RC Security. All counts are asserted against all Defendants, except that Count 6 is asserted against Robert Chen only.

Defendants initially filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) but did not seek dismissal for failure to state a claim pursuant to Rule 12(b)(6). On March 11, 2024, the Court denied the Motion to Dismiss through a memorandum opinion. *See Yao I*, 2024 WL 1051740, at \*1. Defendants then filed an Answer. After discovery commenced, Defendants provided notice to the Court that it intended to file a Motion for Judgment on Pleadings and filed an Amended Answer, which included six exhibits that were not attached to the original Answer. Defendants then filed the present Motion for Judgment on the Pleadings.

## DISCUSSION

In the Motion for Judgment on the Pleadings, Defendants assert that they are entitled to judgment on all counts because the Complaint has failed to state any claim upon which relief can be granted. Specifically, Defendants argue that: (1) the Lanham Act, breach of fiduciary duty, breach of contract, and tortious interference claims must be dismissed because they are derivative claims that needed to be filed on behalf of OtterSec but were instead improperly filed as direct claims; (2) the claims that rely on a wrongful dissolution of OtterSec necessarily fail because the

10

dissolution was required or authorized by the Amended Operating Agreement; and (3) in any event, upon consideration of the full pleadings, the allegations are insufficient to support any of the asserted causes of action.

## I.      Legal Standards

Defendants have filed their Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "a party may move for judgment on the pleadings" after the pleadings have been filed. Fed. R. Civ. P. 12(c). On such a motion, courts apply the "same standard" as "for motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

On a Rule 12(c) motion, the Court considers the pleadings and any attachments to those filings, as well as any documents submitted with the motion that are "integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). At the outset, the parties dispute whether and to what extent the Court may consider the exhibits attached to the Amended Answer and to the Motion. The exhibits attached to the Amended Answer include: (1) the Amended Operating Agreement; (3) an OtterSec Discord chat log containing electronic messages among OtterSec

11

employees; (4) a Discord chat log containing electronic messages between Robert Chen and David Chen ("the Discord Chat Log"); (5) a Telegram chat log containing electronic messages between Robert Chen and David Chen; and (6) various bank statements from OtterSec's bank account. The Second Amendment was included as an exhibit to the Motion. Yao argues that the Court may consider only those of Defendants' exhibits that are of undisputed authenticity and were incorporated by reference in, or are integral to, the Complaint. In contrast, Defendants assert that the Court may consider all of the exhibits because those attached to the Amended Answer are part of the pleadings and that, in any event, the Amended Operating Agreement, the Second Amendment, and the three chat logs may be considered because they are integral to the Complaint.

Defendants are correct that the exhibits attached to the Amended Answer are part of the pleadings because "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Several courts have held that exhibits to an answer should not be considered on a motion for judgment on the pleadings unless they are also incorporated by reference in or integral to the complaint because to do so would permit a defendant to attach selectively to its answer its preferred documents and effectively compel the equivalent of a summary judgment ruling on such a self-selected, partial record. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.2 (2d Cir. 2021); *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002). Indeed, here, Defendants attached their preferred documents, which were not included with their original Answer, to an Amended Answer that they filed after they provided notice to the Court of their intent to file the Motion for Judgment on the Pleadings and only a week before the Motion was filed. Although this Court finds the reasoning of *Lively* and *Horsley* highly persuasive, the United States Court of Appeals for the Fourth Circuit has stated that on a Rule 12(c) motion, "[o]pen to the district court's consideration" were the "complaint; the officers'

12

answers thereto; matters of public record; the exhibits to the answers (as there were no exhibits to the complaint); and exhibits to the Rule 12(c) motions that were integral to the complaint and authentic." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Though *Massey* itself relied on exhibits attached to answers for its "de novo review of the [district] court's Rule 12(c) rulings," it does not appear to have substantively addressed the question of whether exhibits to an answer must always be considered on a Rule 12(c) motion. *Id.* at 348-49, 353. Rather, its ruling permitting consideration of the only exhibit it specifically analyzed, a trial transcript, appears to have been primarily based on determinations that it was integral to the complaint and a matter of public record. *Id.* at 352-53. Nevertheless, where *Massey*, which is binding precedent, generally stated that exhibits to an answer are considered on a Rule 12(c) motion and considered such exhibits itself, the Court will consider the exhibits to the Amended Answer in addressing the present Motion. The Court notes that two of the exhibits attached to the Amended Answer, the Amended Operating Agreement and the Discord Chat Log containing messages between Robert Chen and David Chen, are specifically referenced and relied upon in the Complaint and of undisputed authenticity, so the Amended Operating Agreement and the limited portions of the Discord Chat Log relating to the discussions referenced in the Complaint may also be considered because they are integral to the Complaint. As for the Second Amendment, which Defendants attached to the Motion but not to their Amended Answer, the Court may consider that document as integral to the Complaint because it is explicitly relied upon and quoted from in the Complaint and is of undisputed authenticity. *See* Compl. ¶ 98.

Though the Court may consider these exhibits and is not required to accept allegations in the Complaint that are contradicted by one of the exhibits, it is still required to view the complaint in the light most favorable to the plaintiff. *Massey*, 759 F.3d at 347. Under this standard, factual

13

allegations in an answer, including those contained in an exhibit to an answer, are "taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Lancaster v. Bd. of Educ. of Balt. Cnty.*, No. GLR-20-3685, 2021 WL 4148459, at \*4 (D. Md. Sept. 13, 2021) (quoting *Pledger v. N.C. Dep't of Health & Hum. Servs, Dorothea Dix Hosp.*, 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998)); *see also MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006) (holding that on a Rule 12(c) motion, the court must "accept as true all allegations" in the complaint and "treat as false those allegations in the answer that contradict" the allegations in the complaint).

## II.     Choice of Law

As a preliminary matter, the parties disagree on the applicable governing law for some of the claims. The parties do not dispute that Wyoming law governs the breach of fiduciary duty claims and the breach of contract claims. They also agree that Wyoming law governs the question of whether some of the claims must be asserted as derivative claims on behalf of OtterSec. However, the parties disagree over whether Wyoming law or Maryland law applies to the remaining state law claims consisting of the fraud, misappropriation and conversion, and tortious interference claims.

It is undisputed that the choice-of-law rules of the forum state, in this case, Maryland, apply to this question. *See ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("Federal courts, when exercising their diversity or pendent jurisdiction over state law claims, must of course, apply the choice of law rules applicable in the forum state."). However, the parties disagree over which Maryland choice-of-law doctrine to apply to the remaining claims. Defendants invoke the provision of Maryland law stating that "[t]he laws of the state under which a foreign limited liability company is organized govern its organization, internal affairs, and the

14

liability of its members." Md. Code Ann., Corps. & Ass'ns, § 4A-1001(a)(1) (LexisNexis 2014). Defendants contend that this "internal affairs doctrine" applies to the remaining state law claims because they all relate to the internal affairs of OtterSec, and where OtterSec was organized under the laws of Wyoming, it is Wyoming law that governs all of the claims.

Yao, however, asserts that the state law claims for fraud and tortious interference are governed by Maryland law because for common law torts, Maryland generally applies the law of the state in which the injury occurred. *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). As to the misappropriation and conversion claim, Yao does not directly argue that Maryland law governs that claim; instead, she cites to both Wyoming and Maryland law in the portion of her brief addressing that claim. The issue is whether these tort claims are sufficiently connected to the internal affairs of OtterSec such that Maryland's general choice-of-law rule for torts should be set aside and the more specific internal affairs doctrine should apply.

"The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *see also NAACP v. Golding*, 679 A.2d 554, 559 (Md. 1996) (quoting *Edgar*, 457 U.S. at 645). For purposes of this doctrine, a corporation's internal affairs consist of "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Edgar*, 457 U.S. at 645; *see also NAACP*, 679 A.2d at 559 (quoting *Edgar*, 457 U.S. at 645). The law of the state of incorporation therefore governs questions relating to the "rights and responsibilities" of such entities and individuals arising from the corporate relationship. *Tomran, Inc. v. Passano*, 891 A.2d 336, 346 (Md. 2006). It also applies "to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more

15

significant relationship" to the dispute. *Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 371–72 (Md. Ct. Spec. App. 2006) (quoting Restatement (Second) of Conflicts of Laws § 309 (Am. L. Inst. 1971)). The internal affairs doctrine therefore generally applies to "disputes involving a corporation and its relationships with its shareholders, directors, officers, or agents." Internal-Affairs Doctrine, Black's Law Dictionary (12th ed. 2024). However, it generally does not apply "where the rights of third parties *external* to the corporation are at issue." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). In the related context of determining whether a case involved the internal affairs of an out-of-state corporation such that a Maryland court lacked jurisdiction over the case, a judge in this District applied the principle that "where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in [a] stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation," but that when a corporate action "affects the complainant's individual rights only," it is not. *Poe v. Marquette Cement Mfg. Co.*, 376 F. Supp. 1054, 1056–57 (D. Md. 1974) (quoting *N. State Copper & Gold Mining Co. v. Field*, 20 A. 1039, 1040 (Md. 1885)).

Here, the tort claims at issue do not involve "matters peculiar to the relationships" between OtterSec and its members or among current OtterSec members in that they involve no allegations of misconduct by OtterSec, a dispute involving OtterSec and its relationship with its members, or an act by the company affecting a member solely in his capacity as a member. Rather, the fraud claim is based on acts by Robert Chen, in his personal capacity, that are wrongful independent of the specific corporate relationships, specifically, Chen's alleged "material misrepresentations and omissions . . . in relation to his dealings with Jump" that "fraudulently induced Sam Chen to enter

16

into the First Amendment and transfer 10% of his membership interest in OtterSec to Defendant Robert Chen," Compl. ¶ 143, and that injured Sam Chen in his personal capacity. Similarly, the misappropriation and conversion claim, which arises from Defendants' alleged conversion of "the Estate's interest in OtterSec, to the exclusion of the Estate," Compl. ¶ 148, does not derive from the legal relationships between OtterSec and its members and instead alleges an injury to the Estate, which was not even a member of OtterSec, perpetrated in part by the LLC Defendants, which also were not members of OtterSec. *See First Nat'l City Bank*, 462 U.S. at 621.

As for the tortious interference claim, though it alleges an injury to OtterSec as pleaded, it is a claim advanced by the Estate, which was not a member of OtterSec, in part against the LLC Defendants, which also were not members of OtterSec, and is not based on the legal relationships among OtterSec and its members. *See id.* Because none of these tort claims implicate the internal affairs of OtterSec, the Court will apply the law of the place of injury.

Here, the injuries resulting from these torts are economic, rather than personal, so they are traditionally interpreted as accruing where the injury was suffered. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (in a case applying Maryland choice-of-law principles, stating that "the place of injury is the place where the injury was suffered, not where the wrongful act took place"); Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971) ("The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business."). Furthermore, "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." Restatement (First) of Conflict of Laws § 377 n.4 (Am. Law Inst. 1934); *see also Lab. Corp. of Am.*, 911 A.2d at 845 (noting that Maryland courts follow the principles stated in the Restatement (First) of Conflict of Laws). Sam Chen and Yao resided in

17

Maryland at all times relevant to these claims.  Accordingly, Maryland law governs Yao's fraud, misappropriation and conversion, and tortious interference claims.

## III.    Derivative Claims

Defendants argue that the Lanham Act, breach of fiduciary duty, breach of contract, and tortious interference claims all must be dismissed because they allege injuries to OtterSec that can be remedied only through a derivative action brought on behalf of OtterSec, not through a direct civil action by the Estate.  Under Wyoming law, courts "look to the bearer of the injury to determine the nature of the claim," and "[w]hen the director (or shareholder or member) seeks to remedy an injury to the corporation rather than himself, the action is derivative in nature."  *Fritchel v. White*, 452 P.3d 601, 604 (Wyo. 2019) (quoting *Sullivan v. Pike & Susan Sullivan Found.*, 412 P.3d 306, 312 (Wyo. 2018)); *see also Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 807 n.28 (Wyo. 2019) (stating that "[c]ourts can apply corporate precedent to derivative suits on behalf of other types of business entities").  "Generally, '[a] claim is derivative in nature where the plaintiff was not injured 'directly or independently' of the [entity].'"  *Mantle*, 437 P.3d at 807 (quoting *Wallop Canyon Ranch, LLC v. Goodwyn*, 351 P.3d 943, 951 (Wyo. 2015)).  A suit arising from an act that injures members of an LLC "only indirectly . . . through their interest in" the LLC is based on a derivative injury and must be pleaded as such.  *Fritchel*, 452 P.3d at 605 (quoting *Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 969 S.W.2d 625, 628 (Ark. 1998)).  A direct suit, on the other hand, "is appropriate when the nature of the injury is to" the member of an LLC, instead of to the LLC itself, such that the injury to the member is "direct and unique" to the member.  *Id.* (quoting *Golden Tee, Inc.*, 969 at 628).

To bring a derivative suit on behalf of an LLC, a plaintiff must meet the statutory requirements set out in the Wyoming Limited Liability Company Act ("the Wyoming LLC Act"),

18

Wyo. Stat. Ann. §§ 17-29-902 to 904 (2023). *Mantle*, 437 P.3d at 807. Specifically, "[w]hen a derivative action is brought on behalf of an LLC, the plaintiff must: (1) be a member of the LLC; and (2) make demand on the other members of the LLC or state with particularity why demand would be futile." *Id.*

Here, the parties agree that neither Yao nor the Estate are members of OtterSec and that she did not comply with the demand requirement. Rather, upon Sam Chen's death, the Estate became a "transferee" of Sam Chen's interest in OtterSec without the right to file a derivative action. The Wyoming LLC Act provides that: "When a person is dissociated as a member of a limited liability company . . . [t]he person's right to participate as a member in the management and conduct of the company's activities terminates," and "any transferable interest owned by the person immediately before dissociation in the person's capacity as a member is owned by the person solely as a transferee." Wyo. Stat. Ann. §§ 17-29-603(a)(i), (iii). It also provides that: "A person is dissociated as a member from a limited liability company when . . . the person dies." *Id.* § 17-29-602(a)(vi)(A). With respect to a member's death, the Wyoming LLC Act further states that: "If a member dies, the deceased member's personal representative or other legal representative may exercise the rights of a transferee provided for in [§ 17-29-502(c) of the Wyoming LLC Act] and, for the purposes of settling the estate, the rights of a current member under [§ 17-29-410 of the Wyoming LLC Act]." *Id.* § 17-29-504. Neither of the two sections referenced in that provision include the right to file a derivative action on behalf of the LLC. *See id.* §§ 17-29-502(c), 17-29-410. Accordingly, upon Sam Chen's death, the Estate became a transferee of Sam Chen's interest in OtterSec, and its rights under the Wyoming LLC Act do not include the right to file a derivative action on behalf of OtterSec.

19

Nevertheless, Yao argues that even if some or all of her claims are derivative in nature, she may still pursue them directly under the present circumstances based on principles of Delaware law and *Lynch v. Patterson*, 710 P.2d 1126 (Wyo. 1985), in which the Wyoming Supreme Court authorized a shareholder to obtain a direct recovery in a derivative action where a grant of relief to the corporation "would simply return the funds to the control of the wrongdoers" because "the three defendant directors in the case . . . constitute[d] the policy making body of the corporation," "manage[d] the business and affairs of the corporation," and together held "70 percent of the voting stock of the corporation." *Id.* at 1130. In that instance, direct recovery would assure that the shareholder who brought the derivative action would "reap some benefits from his lawsuit." *Id.* Even if, as in *Lynch*, a derivative action providing relief to OtterSec may primarily benefit the alleged wrongdoer, Robert Chen, the need for a derivative action for claims arising from injuries to the company still cannot be excused under Wyoming law. First, *Lynch* itself authorized only a direct recovery in a derivative suit; it did not authorize the use of a direct suit to remedy derivative harms. *See id.* Second, section 17-29-906(a) of the Wyoming LLC Act, which post-dates *Lynch* and became effective on July 1, 2010, expressly prohibits direct recovery in a derivative action. Wyo. Stat. Ann. § 17-29-906(a). Third and most importantly, in *Fritchel*, which post-dates *Lynch*, the Wyoming Supreme Court foreclosed Yao's theory when it plainly stated that courts applying Wyoming law "are without discretion to allow a direct action to remedy derivative injuries." *Fritchel*, 452 P.3d at 606. In so holding, the court emphasized that it "ha[s] never strayed from the rule that derivative injuries must be remedied by derivative actions," and it declined to "deviate from that rule" in that case. *Id.*

Accordingly, any of the claims that should have been brought as derivative actions will be dismissed. *See id.*; *Mantle*, 437 P.3d at 807 (affirming the dismissal of claims that should have

been brought as derivative claims and for which the statutory requirements for a derivative claim were not satisfied).

### A.     Lanham Act

As to the Lanham Act claim, the Court finds that it can be brought only as a derivative claim. The Complaint repeatedly states that the Lanham Act violation stems from Defendants' use of OtterSec's "name, logo, trademarks, website, domain name, and social media and other communication accounts." Compl. ¶¶ 112-15, 117, 119. The Complaint also alleges that OtterSec, not the Estate, owns the OtterSec website, trademarks, and communication accounts. Thus, the injury from an alleged Lanham Act violation for false and misleading representations by Defendants through their alleged use of these OtterSec assets, *see* 15 U.S.C. § 1125(a), would be suffered by OtterSec because, as the Complaint alleges, it is likely to cause "confusion or . . . mistake" or is likely to "deceive as to the affiliation, connection or association of Defendants with OtterSec, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by OtterSec." Compl. ¶ 114. Accordingly, any injury to the Estate flows to it "only indirectly . . . through [its] interest in" OtterSec. *Fritchel*, 452 P.3d at 605 (quoting *Golden Tee, Inc.*, 969 at 628). Because Yao has not brought the Lanham Act claim as a derivative claim, it will be dismissed. See *Mantle*, 437 P.3d at 807.

### B.     Breach of Fiduciary Duty

Defendants also argue that the breach of fiduciary duty claims should be dismissed because they were not filed as derivative claims. In asserting these claims, Yao alleges that Robert Chen "owed fiduciary duties to OtterSec, Sam Chen, and the Estate," which he breached "in relation to, among other things, his dealings with Jump, the conduct and affairs of OtterSec, the formation of Otter Audits and RC Security, and the dissolution and winding up of OtterSec." Compl. ¶¶ 132-

33. The claims therefore have multiple components. Any alleged breach by Robert Chen of his fiduciary duty to OtterSec would necessarily impose its harm on OtterSec, not Yao or the Estate. Indeed, Yao does not argue in her brief in opposition to the Motion that she has any direct claims for a breach of fiduciary duty stemming from Robert Chen's alleged breach of his duty to OtterSec. Because such a claim must be a derivative claim, the Court will dismiss it based on the failure to meet the statutory requirements for a derivative claim. *See Mantle*, 437 P.3d at 807.

Robert Chen does not dispute that he owed a fiduciary duty to Sam Chen, which arises from their relationship as fellow members of an LLC. The Complaint asserts two different claims arising from Robert Chen's alleged breach of a fiduciary duty owed to Sam Chen. First, Yao argues that Robert Chen breached this duty when he failed to disclose the substance of his negotiations with Jump to Sam Chen or to David Chen prior to their agreement to transfer 10 percent of Sam Chen's interest in OtterSec to Robert Chen in April 2022. Second, Yao alleges a claim for a breach of this duty arising from the "substantial steps to dissolve OtterSec" that Robert Chen allegedly took before Sam Chen died, arguably in order to deprive Sam Chen of his membership interest in OtterSec. Opp'n at 13, ECF No. 89. Where these claims assert direct harms to Sam Chen rather than to OtterSec, they are properly asserted as direct claims, and the Court will not dismiss them on the basis that they had to be asserted as derivative claims.

Finally, Robert Chen's claim of a breach of a fiduciary duty owed to the Estate, which is based on Robert Chen's actions to dissolve OtterSec, form Otter Audits and RC Security, and transfer OtterSec's assets to Otter Audits and RC Security, also asserts a direct claim because the asserted harm was the alleged theft of the Estate's financial interest, as a transferee of Sam Chen's interest, in OtterSec. Defendants argue that the breach of fiduciary duty claims must be dismissed to the extent that they allege "harm from a diminution in value of [the Estate's] 40% interest in

OtterSec." Mot. at 11, 12, ECF No. 59. However, where the Complaint asserts that Robert Chen engaged in "a plot to steal the Estate's interest" in OtterSec, Compl. ¶ 1, and bases the breach of fiduciary duty claim in part on that allegation, the Complaint alleges a direct harm to the Estate beyond just the derivative "diminution in value of" the Estate's interest. Mot. at 11. Although Defendants also dispute that Robert Chen owed any fiduciary duty to the Estate, that issue is unconnected to the question of whether this claim had to be asserted as a derivative claim and will be addressed in relation to the merits of the claim. *See infra* part IV.A.

### C. Breach of Contract

As alleged in the Complaint, the breach of contract claim stems from (1) Robert Chen's decision to dissolve OtterSec in order to effect "a loss of the Estate's interest" in OtterSec, which the Amended Operating Agreement specifically prohibited; and (2) Robert Chen's alleged violation of the implied covenant of good faith and fair dealing in dissolving OtterSec. Compl. ¶¶ 152, 155. In her brief, Yao clarifies that the first theory of breach of contract arises from Robert Chen's alleged repudiation of the Amended Operating Agreement in May 2022, before Sam Chen's death. Under this first theory, the harm from the repudiation flowed directly to Sam Chen as the member of OtterSec whose membership interest Robert Chen sought to usurp. Similarly, the claim for a breach of the implied covenant of good faith and fair dealing alleges that Robert Chen owed to Sam Chen, as a member of OtterSec, an obligation to act in good faith toward him when exercising his rights and duties under the Amended Operating Agreement, which included the right to dissolve OtterSec and the right to sell OtterSec's assets. *See* Wyo. Stat. Ann. § 17-29-409(d) (stating that "[a] member in a member-managed limited liability company . . . shall discharge the duties . . . under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing"). As with the breach of fiduciary duty

claims, these claims allege that the breaches of the contract and the implied covenant of good faith and fair dealing caused harm directly to Sam Chen, and by extension the Estate, because the violations deprived them of their interests in the Company, and not solely because those actions diminished the value of OtterSec. Thus, the breach of contract claims are properly pleaded as direct claims, and the Court declines to dismiss them on the basis that they are improperly pleaded derivative claims.

**D.    Tortious Interference**

As for the tortious interference claim, the Complaint states that Defendants' alleged tortious interference was with OtterSec's "existing and prospective contracts, relationships, business expectations, and opportunities." Compl. ¶¶ 157-59. Where the Complaint specifically alleges that the tortious interference was with rights of the Company and does not allege any harm to the Estate's contracts, business relationships, or economic opportunities, it does not allege any direct harm to the Estate. Rather, the alleged harm to the Estate is "derivative in nature" because the Estate "was not injured 'directly or independently' of" OtterSec. *Mantle*, 437 P.3d at 807. Any claim of a direct injury to the Estate arising from tortious interference, such as for the alleged "theft of [the Estate's] interest in OtterSec," Opp'n at 15, has not been properly asserted in the Complaint and thus may be considered only if Yao seeks and is granted leave to amend to add such a claim. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff may not amend a complaint through assertions made in a brief on a dispositive motion). Accordingly, the Court will dismiss the tortious interference claim on the basis that it alleges a derivative claim but does not comply with the statutory requirements for such claim. *See Mantle*, 437 P.3d at 807.

## IV.    Breach of Fiduciary Duty

Defendants also seek dismissal of the breach of fiduciary duty claims in Count 2 on the grounds that the allegations in the Complaint fail to state plausible claims for relief. To state a claim for a breach of fiduciary duty under Wyoming law, a plaintiff must show (1) "a duty based on a fiduciary relationship"; (2) a "breach of the duty"; and (3) that "the breach caused . . . damage" to the plaintiff. *Gowdy v. Cook*, 455 P.3d 1201, 1208 (Wyo. 2020).

In Count 2, Yao asserts claims for breach of fiduciary duty against Robert Chen and for aiding and abetting a breach of fiduciary duty against the LLC Defendants. As discussed above, these claims stem from Robert Chen's "dealings with Jump, the conduct and affairs of OtterSec, the formation of Otter Audits and RC Security, and the dissolution and winding up of OtterSec," which allegedly breached fiduciary duties Robert Chen owed to "OtterSec, Sam Chen, and the Estate." Compl. ¶¶ 132-33. The Complaint further alleges that the LLC Defendants "provided substantial assistance to Robert Chen in achieving the breaches of his fiduciary duties" such that they are liable for aiding and abetting. *Id.* ¶ 136. Based on the Court's rulings relating to derivative actions, the claims based on a breach of a fiduciary duty owed to OtterSec will be dismissed. *See supra* part III.B. Thus, the Court will address the merits of the claims based on the alleged breach of fiduciary duties owed to the Estate and to Sam Chen.

### A.    The Estate

As for the breach of fiduciary duty claim based on a duty allegedly owed by Robert Chen to the Estate, the Complaint has not alleged sufficient facts to demonstrate that Robert Chen owed such a fiduciary duty. Yao advances two theories under which Robert Chen owed a fiduciary duty to the Estate. First, Yao argues that Robert Chen "owed duties to the Estate in connection with the dissolution of OtterSec" under the Wyoming LLC Act, which provides that a member of a

25

member-managed LLC owes a "duty of care . . . in the conduct and winding up of the company's activities." Opp'n at 14 (citing Wyo. Stat. Ann. § 17-29-409(c)). That statute, however, further provides that this duty of care is a fiduciary duty owed by a member of a member-managed LLC to "the company" and "other members" of the LLC. Wyo. Stat. Ann. § 17-29-409(a). As discussed above, and as Yao acknowledges in her brief, the Estate was not a "member" of OtterSec as the term is defined in the Wyoming LLC Act and was "instead a 'transferee' of [Sam Chen's] interest." Opp'n at 13; *see supra* part III. Under the Wyoming LLC Act, "[t]he obligations of a limited liability company and its members to a person in the person's capacity as a transferee or dissociated member are governed by the operating agreement." Wyo. Stat. Ann. § 17-29-112(b). Here, neither the Amended Operating Agreement nor the Second Amendment specified that transferees like the Estate had the same rights as members, or that members of OtterSec owed fiduciary duties to transferees. *See* J.R. 2-3, 85-89. Accordingly, the Court declines to find that Robert Chen owed a fiduciary duty to the Estate based on the Wyoming LLC Act or the OtterSec Operating Agreement.

Second, Yao asserts that Robert Chen had an "informal fiduciary relationship" with the Estate as recognized in *Johnson v. Reiger*, 93 P.3d 992 (Wyo. 2004), in which the Wyoming Supreme Court found such a fiduciary relationship to be "implied in law due to the factual situation surrounding the involved transaction, and the relationship of the parties to each other and to the transaction." *Id.* at 999. Such an implied fiduciary relationship is "considered a relation of trust and confidence" and thus "exists when one party has gained the confidence of the other and purports to act or advise with the other's interests in mind." *Id.* "One asserting a fiduciary relationship bears the burden of establishing it by clear and convincing evidence," and "the unilateral actions or beliefs of a party" are not "sufficient to establish a fiduciary relationship."

26

*Martinez v. Assocs. Fin. Servs. Co. of Colo., Inc.*, 891 P.2d 785, 789-790 (Wyo. 1995). Instead, the person asserted to have a fiduciary duty must have, through that person's own "undertaking," effectively created a duty "to act primarily for another's benefit in matters connected with such undertaking." *Id.* at 790 (quoting Fiduciary, Black's Law Dictionary (6th ed. 1990)). For example, in *Johnson*, the Wyoming Supreme Court reversed a grant of a post-trial motion for judgment as a matter of law based in part on its finding that the plaintiff, Johnson, had presented sufficient evidence to support an implied-in-law fiduciary duty owed to her by her adult daughter and son-in-law where those family members had attended a meeting the purpose of which was to assist Johnson "in figuring out" her finances and those of her legally incompetent husband and subsequently arranged a deal through which Johnson transferred stock ownership in the family's ranch to her children in exchange for the children assuming her husband's credit card debt. *Johnson*, 93 P.3d at 994-95, 999. The court held that such evidence sufficiently demonstrated that Johnson's family members "undertook to act with the Johnsons' benefit in mind and, by that undertaking, assumed a duty of honest advice and full disclosure" thereby establishing an implied-in-law fiduciary duty. *Id.* at 999.

Here, the allegations do not support an inference of an implied-in-law fiduciary relationship of this kind between Robert Chen and the Estate. Yao argues that such a relationship arose in part from his "decision to speak to Plaintiff about OtterSec's dissolution," Opp'n at 14, which presumably occurred when an attorney purporting to act on OtterSec's behalf, Iquan Fadaei, informed the law firm retained by Sam Chen, H&K, of Robert Chen's decision to dissolve OtterSec and to put OtterSec's assets up for sale. The relationship between Robert Chen and the Estate, however, cannot fairly be characterized as a "confidential relationship" and one of "trust and confidence." *Johnson*, 93 P.3d at 999. Rather, the Complaint alleges that David Chen "had lost

27

faith in Robert's integrity" months earlier in April 2022. Compl. ¶ 70. Indeed, the allegations in the Complaint demonstrate that, at the outset of the interactions between Robert Chen and the Estate upon Sam Chen's death, there was a lack of trust and confidence between these parties. There is no way to characterize the email sent by Fadaei to H&K, or any other communications between the parties, as constituting a "knowing undertaking" by Robert Chen "for the benefit" of the Estate that could trigger an implied-in-law fiduciary relationship as contemplated by Wyoming law. *Martinez*, 891 P.2d at 790. Lastly, the Court notes that where the Wyoming LLC Act and the OtterSec Operating Agreement define the relationship between a member and a transferee without referencing any fiduciary duty to a transferee, *see* Wyo. Stat. Ann. §§ 17-29-502(b), (c), 17-29-504; J.R. 85-89, there would need to be more specific facts establishing that such a relationship of trust and confidence existed so as to create an implied-in-law fiduciary relationship. In the absence of a viable claim that the requirement of a fiduciary duty has been satisfied, this claim cannot succeed. Accordingly, the Court will grant the Motion as to the breach of fiduciary claim based on Robert Chen's alleged fiduciary duty owed to the Estate.

### B.    Sam Chen

The claim of breach of a fiduciary duty owed to Sam Chen is based on two different theories. First, the Complaint alleges that Robert Chen breached this fiduciary duty by failing to disclose the substance of his negotiations with Jump to Sam Chen and to David Chen before they agreed to transfer 10 percent of Sam Chen's ownership interest in OtterSec to Robert Chen in April 2022. Second, it alleges that Robert Chen breached the fiduciary duty by taking "substantial steps to dissolve OtterSec" before Sam Chen died, arguably in order to deprive Sam Chen of his membership interest in OtterSec. Opp'n at 13.

28

As to the first claim, Defendants do not dispute that Robert Chen owed Sam Chen a fiduciary duty as a fellow member of an LLC or that Sam Chen suffered harm when he lost 10 percent of his interest in OtterSec. Defendants dispute only the element of a breach of the fiduciary duty. Under Wyoming law, a defendant's "intentional failure to disclose important financial information" to individuals to whom the defendant owes a fiduciary duty can "amount to an individual breach of a fiduciary duty." *Ravenswood Inv. Co., L.P. v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1066 (D. Wyo. 2005). For example, in *Squaw Mountain Cattle Co. v. Bowen*, 804 P.2d 1292 (Wyo. 1991), the Wyoming Supreme Court concluded that the president of a company breached his fiduciary duty to the company when he failed to disclose the correct terms of a litigation settlement offer to the company's board of directors prior to a board vote and instead presented a different set of terms. *Id.* at 1294-95, 1296-97. In so ruling, the court noted that it did not matter whether the president may not have believed that the offer was a bona fide offer; rather, the mere fact that he failed to disclose the information to the board "amounted to a breach of his fiduciary duty." *Id.* at 1296-97.

Here, Yao's claim is based on the allegation that Robert Chen failed to disclose his discussions with Jump prior to the April 16, 2022 transfer of the 10 percent interest. Defendants argue that this allegation cannot support a breach of fiduciary duty claim because a chat group log accessible to David Chen, which they attached as an exhibit to their Amended Answer, shows that Robert Chen referenced a discussion with Jump and Jump's president on April 12, 2022 and thus did not conceal those discussions from Sam Chen and David Chen. Defendants further note that David Chen posted messages in the same chat group immediately after Robert Chen referenced his discussion with Jump. Though this evidence may prove useful to Defendants during this case, the fact that David Chen either was aware or could have been aware that Robert Chen had talked

to Jump representatives does not refute the more specific allegation that Robert Chen concealed the more significant fact that he was discussing a potential acquisition of OtterSec by Jump.

According to the Complaint, Robert Chen had discussions on April 14, 2022 with Claudius, a Jump representative, during which Claudius referenced a potential acquisition of OtterSec by Jump; set up an April 18, 2022 telephone call between Robert Chen and Kariya, the president of Jump Crypto; and told Robert Chen that if the conversation with Kariya "went well," the "next step" would be that an offer would be made to Robert Chen. Compl. ¶¶ 33-34. Notably, also on April 14, 2022, Robert Chen spoke to David Chen about potential investments in OtterSec by venture capital firms and stated that he had been connected to a "company," but he did not disclose that the company was Jump or that he had had discussions about Jump actually acquiring OtterSec, even when David Chen pressed him for more information about his discussions with venture capitalists. *Id.* ¶ 38. Where such an acquisition could reasonably be inferred to have a substantial impact on the value of the company, such information could fairly be deemed to be important financial information of which a member of an LLC should be made aware of before entering into an amendment to the LLC's operating agreement, as Sam Chen did, by which he would relinquish 10 percent of his ownership interest in the company. Even without considering the documented post-April 15, 2022 discussions in which Robert Chen discussed cutting David Chen out of the planned acquisition, from which it could arguably be inferred that such a plan had already been hatched even before April 15, the Court finds that the Complaint has plausibly stated a breach of fiduciary duty claim based on Robert Chen's failure to disclose to Sam Chen the known discussions about a potential acquisition by Jump prior to the 10 percent transfer. *See Squaw Mountain Cattle Co.*, 804 P.2d at 1296-97; *Ravenswood Inv. Co., L.P.*, 374 F. Supp. 2d at 1058-59, 1066 (in a case applying Wyoming law, declining to dismiss a breach of fiduciary claim

premised on "Defendant['s] intentional failure to disclose important financial information to the shareholders" ahead of the shareholders' vote on a proposed a stock split). Accordingly, the Motion will be denied as to this claim.

As for the second claim for breach of the fiduciary duty based on a duty that Robert Chen owed to Sam Chen, Yao asserts that Robert Chen breached the duty when he took "substantial steps to dissolve OtterSec" before Sam Chen died. Opp'n at 13. Specifically, the Complaint alleges that Robert Chen: (1) told David Chen on May 10, 2022 that he would "probably dissolve the company and remake it" if David Chen did not agree to transfer the rest of Sam Chen's interest in OtterSec to Robert Chen, Compl. ¶ 77; (2) through counsel, informed Sam Chen and David Chen on May 27, 2022 that he "will be exercising his right to dissolve OtterSec shortly," *id.* ¶ 82; and (3) through counsel, circulated to the attorneys for Sam Chen and David Chen on June 4, 2022 his "plan for dissolution," which included a list of the company's assets to be sold during the winding up period, *id.* ¶¶ 90-91. Based on these allegations, which arguably describe a plan to deprive Sam Chen of his membership interest in OtterSec, Robert Chen could have breached his fiduciary duty to Sam Chen had Robert Chen dissolved OtterSec while Sam Chen was still alive. Nevertheless, as Yao acknowledged in her brief, Robert Chen did not dissolve OtterSec during Sam Chen's lifetime. Because at that point, the Estate held Sam Chen's interest in OtterSec as a transferee, *see supra* part III, and Robert Chen owed no fiduciary duty to the Estate, *see supra* part IV.A, his dissolution did not actually breach a fiduciary duty. Accordingly, the Court will dismiss this portion of the breach of fiduciary duty claim for failure to allege a breach of the duty. *See Gowdy*, 455 P.3d at 1208 ("To establish a claim for breach of fiduciary duties, the plaintiff must show a . . . breach of the duty . . . .").

31

##### C.     The LLC Defendants

Where the only remaining breach of fiduciary duty claim relates to the alleged breach of the fiduciary duty that occurred in April 2022 when Robert Chen allegedly failed to disclose the substance of his discussions with Jump to Sam Chen and David Chen, the Court will dismiss the claim against the LLC Defendants for aiding-and-abetting that breach of fiduciary duty.  The Wyoming Supreme Court has cited to the Second Restatement of Torts in discussing civil aiding-and-abetting liability, *see Campbell v. Davidson*, 537 P.3d 734, 743 (Wyo. 2023), and pursuant to that Restatement:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:  (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (Am. L. Inst. 1979).  Because Robert Chen undisputedly did not form either of Otter Audits or RC Security until September 13, 2022, months after this alleged breach of fiduciary duty occurred, neither company could have performed "a tortious act in concert with" Robert Chen's alleged April 2022 breach of fiduciary duty, or "give[n] substantial assistance or encouragement" to that alleged breach.  *See id.*  The Motion will be granted as to the breach of fiduciary duty claims against the LLC Defendants.

#### V.     Fraud

Defendants also seek dismissal of the fraud claim asserted in Count 4 of the Complaint, which generally alleges that "Robert Chen made or approved . . . materially false and misleading statement and omissions . . . in relation to his dealings with Jump, the conduct and affairs of OtterSec, the formation of Otter Audits and RC Security, and the dissolution and winding up of

32

OtterSec" which were made "to the Estate and Sam Chen directly, or via David Chen with the knowledge or belief that they would be conveyed to the Estate and Sam Chen and that the Estate and Sam Chen would rely on them." Compl. ¶¶ 138-39.  In particular, the Complaint asserts that "Robert Chen's material misrepresentations and omissions made on or before April 16, 2022, in relation to his dealings with Jump specifically, fraudulently induced Sam Chen to enter into" the Amended Operating Agreement "and transfer 10% of his membership interests in OtterSec to Defendant Robert Chen, which Sam Chen would not have agreed to if he had been aware of the true and complete facts." *Id.* ¶ 143.

Under Maryland law, to state a claim for fraud based on a failure to disclose material facts, a plaintiff must allege sufficient facts to support the following elements: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block*, 735 A.2d 1039, 1059 (Md. 1999).  A material fact is one whose "existence or non-existence is a matter to which a reasonable [person] would attach importance in determining his choice of action in the transaction." *Gross v. Sussex*, 630 A.2d 1156, 1161 (Md. 1993) (quoting *Carozza v. Peacock Land Corp.*, 188 A.2d 917, 921 (1963)). Under Federal Rule of Civil Procedure 9(b), fraud claims in federal court are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Under this heightened pleading standard, a plaintiff must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and "what he obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

As to the first element, for the reasons discussed above, the Complaint sufficiently alleges that Robert Chen owed a fiduciary duty to Sam Chen, and that it included a duty to disclose important financial information. *See supra* part IV.B; *Squaw Mountain Cattle Co.*, 804 P.2d at 1296-97; *Ravenswood Inv. Co.*, 374 F. Supp. 2d at 1066. As to the second element, even assuming, as emphasized by Defendants, that Robert Chen referenced a call with a Jump official in a chat group accessible to David Chen, the Complaint alleges that Robert Chen failed to disclose the more significant fact that he was engaged in discussions over a potential acquisition of OtterSec by Jump prior to Sam Chen's transfer of 10 percent of his interest in OtterSec to Robert Chen on April 16, 2022, even though he had specific discussions with David Chen (1) on April 14, 2022, about his discussions with venture capitalists; and (2) on April 15, 2022, about the proposed 10 percent transfer. Viewing the allegations in the light most favorable to the plaintiff, as is required at this stage, the Court finds that the omitted fact was material because the potential for an acquisition of OtterSec by another company would likely have had a materially positive impact on the value of Sam Chen's ownership interest such that a reasonable person in his position would have attached some importance to knowing that fact before deciding whether to transfer the rights to 10 percent of the company just to maintain good relations with Robert Chen, without any financial compensation. *See Gross*, 630 A.2d at 1161. Relatedly, someone in Sam Chen's position would also have wanted to know about the discussion about a potential acquisition by Jump because it may have affected his willingness to give Robert Chen a controlling interest in OtterSec such that Robert Chen could unilaterally decide whether and how such an acquisition would proceed, including one that cut David Chen out of the Company, with no requirement of approval by Sam Chen or David Chen.

The same allegations also support an inference of justifiable reliance, because in the absence of disclosure of the discussions about a potential acquisition of OtterSec, David Chen and Sam Chen could have reasonably but mistakenly believed that proposing and agreeing to the 10 percent transfer was in their best interest. Further, the allegations support the inference that Sam Chen, and by extension the Estate, suffered damages from the transfer, which was the result of the concealment, in that he lost a 10 percent interest in OtterSec and control of OtterSec.

Contrary to Defendants' argument, the allegations are sufficient to support an inference of an intent to deceive. Although it is correct that Robert Chen did not propose the 10 percent transfer, it is reasonable to infer that his failure to disclose the Jump acquisition discussions before that transfer was agreed upon was based on an intent to deceive, particularly where the discussions between David Chen and Robert Chen on April 14, 2022 can fairly be construed as demonstrating a deliberate effort by Robert Chen to conceal those discussions from David Chen. For example, when David Chen told Robert Chen that he had been "very deflective" in the past about his reasons for seeking investments and specifically asked, "[W]hat's the real reason you want investment?", Robert Chen still did not disclose the discussions about a potential acquisition by Jump. Compl. ¶ 37. Accordingly, the Court finds that the Complaint plausibly alleges a fraud claim with particularity.

Defendants' invocation of the defense of laches is wholly unpersuasive. Laches "is an equitable defense that bars a plaintiff's action if the plaintiff was negligent or lacked diligence in asserting his rights, causing prejudice or injury to the defendant." *Buxton v. Buxton*, 770 A.2d 152, 158 (Md. 2001). "The passage of time, alone, does not constitute laches," and "where the delay is of less duration than the statute of limitations, the defense of laches must include an unjustifiable delay and some prejudice to the defendant." *Id.* at 158-59 (quoting *Park v. Bd of*

35

*Election Supervisors*, 186 A.2d 195, 197 (Md. 1962)). Here, Yao filed the Complaint on March 31, 2023, less than one year after the alleged fraud occurred in April 2022. Under Maryland law, the statute of limitations for a civil action, including a fraud claim, is three years. Md. Code Ann. Cts. & Jud. Proc. § 5-101 (LexisNexis 2020); *Meleski v. Pinero Int'l Restaurant, Inc.*, 424 A.2d 784, 793 (Md. Ct. Spec. App. 1981); *Morris v. Bank of America*, No. 24-cv-01949-JRR, 2024 WL 4651028, at *2 (D. Md. Nov. 1, 2024). Defendants have identified no basis to support a finding of an unjustifiable delay. Indeed, with Sam Chen's tragic death, the impact of his loss on Yao and David Chen, and the fact that Yao was not appointed as executor of the Estate until January 27, 2023, one could have hardly expected the Complaint to be filed any earlier. Accordingly, the Court finds that the assertion of the defense of laches was borderline frivolous and will not dismiss the fraud claim on that basis.

Defendants also argue that any other claims of fraud based on other misrepresentations or material omissions, which they refer to as the "second set of alleged misrepresentations" relating to the later events associated with the dissolution and winding up of OtterSec and the establishment of the LLC Defendants, Mot. at 23, must be dismissed in part because the Complaint fails to state with particularity the specific acts of fraud as required by Rule 9(b). The Court agrees that other than conclusory assertions of fraud arising from these events, the Complaint fails to specify the particular false statements or material omissions underlying any such additional fraud claims. Notably, Yao identifies none in her brief in opposition to the Motion. *See* Opp'n at 23-25. Accordingly, the Court will dismiss without prejudice any such additional fraud claims pursuant to Rule 9(b).

Finally, because the only remaining fraud claim against Robert Chen arises from his alleged material omissions in April 2022 about the discussions relating to a possible acquisition

by Jump, the claim for aiding and abetting fraud asserted against the LLC Defendants must be dismissed. Under Maryland law, a person "may be held liable as a principal" for the tortious conduct of another where that person "by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Duke v. Feldman*, 226 A.2d 345, 347 (1967); *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995). As with the breach of fiduciary duty claim, where the LLC Defendants did not exist until nearly five months after the alleged fraud, they could not have "encouraged, incited, aided or abetted" the fraud "by any means." *Duke* 226 A.2d at 347. Accordingly, the Court will grant the Motion as to the fraud claim against the LLC Defendants.

## VI.    Misappropriation and Conversion

In Count 5, the Complaint asserts a claim of misappropriation and conversion against all Defendants based on the allegations that "Defendants have wrongfully misappropriated and converted the Estate's interest in OtterSec, to the exclusion of the Estate," and "have exercised and are continuing to exercise dominion and control over the Estate's rightful interest in Otter Audits and RC Security so as to unlawfully deny the Estate its rightful interest in and to them." Compl. ¶¶ 148-49.

"Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). The physical element is met by "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Id.* (quoting *Allied Inv, Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999)). The element of intent is met by evidence showing that "the defendant possessed an intent 'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Yuan v. Johns Hopkins*

*Univ.*, 157 A.3d 254, 270 (Md. 2017) (quoting *Darcars Motors*, 841 A.2d at 836). This element can be met even when the defendant "acted in good faith and lacked any consciousness of wrongdoing." *Darcars Motors*, 841 A.2d at 836. Under Maryland law, however, an exercise of control over intangible property constitutes a conversion only "where the defendant converts a document that embodies the plaintiff's right to the plaintiff's intangible property," such as a stock certificate or promissory note. *Thompson v. UBS Financial Servs.*, 115 A.3d 125, 131 (Md. 2015). Accordingly, in Maryland, where a plaintiff seeks to advance a claim for conversion of an interest in a corporate entity, such as a partnership or, as here, a limited liability company, the complaint "must . . . contain[] facts alleging that tangible documents evidenced those property interests and that the documents were transferred improperly to" the defendant. *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 965 (Md. 1999). Under Wyoming law, which Yao also cites in her brief when discussing her conversion claim, "[o]nly personal property (chattel) can be converted." *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994).

As for misappropriation, Yao has identified no authority demonstrating that such a common law claim exists in Maryland or Wyoming law, and the Court has not found any. Notably, the parties' discussion in the briefs relating to Count 5 addresses only conversion, not misappropriation. The Court therefore construes the claim to be one of conversion.

Here, the conversion claim arises from the alleged conversion of intangible property, specifically, "the Estate's interest in OtterSec," or in the alternative, the Estate's interests in Otter Audits and RC Security, as OtterSec's successors-in-interest. Compl. ¶¶ 148-49. Thus, Yao alleges conversion of intangible property. *Cf. Allied Inc. Corp.*, 731 A.2d at 965 (describing an interest in a partnership as an intangible property right for the purposes of assessing a conversion claim). Such a claim is not available under Wyoming law, *see Ferguson*, 884 P.2d at 975, and it

is not sufficiently pleaded under Maryland law because the Complaint does not allege that Defendants converted any tangible documents evidencing the Estate's interests in OtterSec, Otter Audits, or RC Security. *See Thompson*, 115 A.3d at 131-32; *Allied Inv. Corp.*, 731 A.2d at 965. Accordingly, the Motion will be granted as to the conversion claim in Count 5.

## VII. Breach of Contract

In Count 6, the Complaint includes a breach of contract claim against Robert Chen alleging that he breached Section 8.1 of the OtterSec Operating Agreement, which provides that a member "may NOT dissolve the company for a loss of membership interests," J.R. 89, when he "dissolved OtterSec for the purpose of causing the loss of the Estate's interest in the company, and in furtherance of his scheme to misappropriate OtterSec and the Estate's interest in OtterSec." Compl. ¶¶ 152, 154. The Complaint also asserts that this same conduct breached "the implied covenant of good faith and fair dealing included in OtterSec's Operating Agreement, the [Amended Operating Agreement], and the Second Amendment." *Id.* ¶ 155. The Court will consider each of these two theories of breach of contract in turn.

### A. Repudiation

To state a claim for breach of contract under Wyoming law, a plaintiff must allege the following elements: "(1) 'a lawfully enforceable contract,' (2) 'an unjustified failure to timely perform all or any part of what is promised therein,' and (3) 'entitlement of [the] injured party to damages.'" *Kappes v. Rhodes*, 512 P.3d 31, 36 (Wyo. 2022) (quoting *Halling v. Yovanovich*, 391 P.3d 611, 616-17 (Wyo. 2017)). Defendants do not squarely contest the first or third elements. Rather, as to the first theory of breach of contract, Defendants argue only that Robert Chen never breached Section 8.1 of the Amended Operating Agreement, primarily because he was required by its terms to dissolve OtterSec upon Sam Chen's death. Yao, however, argues that Robert Chen

39

repudiated, and therefore breached, Section 8.1 when he told David Chen in May 2022 that he would "probably dissolve the company and remake it" if David Chen did not agree to transfer the rest of his interest in OtterSec to Robert Chen. Compl. ¶ 77; J.R. 141.

Upon review of the Complaint, the Court concludes that it has pleaded sufficient facts to establish a plausible breach of contract claim under a theory of repudiation. "[A] party's repudiation of its duty [under a contract] before the time for performance has arrived is called an anticipatory breach or, more precisely, anticipatory repudiation." *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 254 (Wyo. 2000). "Usually a repudiation consists of a statement that the repudiating party cannot or will not perform. The statement must be sufficiently positive to be reasonably understood as meaning that the breach will actually occur. A party's expressions of doubt as to its willingness or ability to perform do not constitute a repudiation." *Id.*

Here, Defendants argue that because Robert Chen stated only that he would "probably dissolve the company and remake it," Compl. ¶ 77, his statement was not sufficiently "positive" that it could have been understood as "meaning that the breach [would] actually occur." *Roussalis*, 4 P.3d at 254. The Complaint, however, contains further allegations that more definitively state an intent to dissolve OtterSec even before Sam Chen's death. For example, on May 27, 2022, 17 days after Robert Chen told David Chen that he would "probably dissolve" OtterSec, Fadaei, the attorney retained by Robert Chen to represent OtterSec, "sent an email to Sam and David Chen stating that 'Robert [Chen] will be exercising his right to dissolve OtterSec shortly.'" Compl. ¶ 82. Then, on June 2, 2022, Fadaei emailed H&K and "confirmed Robert [Chen]'s intent to proceed with the dissolution." *Id.* ¶ 90. Indeed, the email "also set forth Robert [Chen]'s plan for dissolution." *Id.* When these statements, which must be taken as true for purposes of the Motion, are considered along with the original May 10, 2022 message, they could be "reasonably

40

understood" as meaning that Robert Chen had definitively determined that he would dissolve OtterSec to deprive Sam Chen of his membership interest in OtterSec, thereby repudiating Robert Chen's obligation under Section 8.1 not to dissolve the Company in order to deprive Sam Chen of his membership interest. *Roussalis*, 4 P.3d at 254. Accordingly, the Motion will be denied as to the breach of contract claim relating to Robert Chen's alleged repudiation of his obligation under Section 8.1.

### B.      Implied Covenant of Good Faith and Fair Dealing

The Court also finds that the Complaint sufficiently states a breach of contract claim based on an alleged breach of the implied covenant of good faith and fair dealing arising from Robert Chen's dissolution of OtterSec. A member of member-managed LLC organized under Wyoming law "shall discharge the duties . . . under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing." Wyo. Stat. Ann. § 17-29-409(d). "The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Scherer Const., LLC v. Headquist Const., Inc.*, 18 P.3d 645, 653 (Wyo. 2001). "Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to." *Id.* at 654 (quoting *Gilmore v. Dunderstadt*, 961 P.2d 175, 182 (N.M. Ct. App. 1998)). "In the absence of evidence of self-dealing or breach of 'community standards of decency, fairness or reasonableness,' the exercise of contractual rights alone will not be considered a breach of the covenant." *Id.* at 653–54 (quoting Restatement (Second) of Contracts § 205 cmt. a. (Am. L. Inst. 1981)). However, "[w]here the evidence is disputed as to whether a party's conduct went beyond the exercise of contract rights and amounted

to self-dealing . . . the issue is one for determination by the fact finder." *Jontra Holdings Pty Ltd. v. Gas Sensing Tech. Corp.*, 479 P.3d 1222, 1246 (Wyo. 2021).

As a preliminary matter, the parties dispute whether Robert Chen dissolved OtterSec pursuant to the Second Amendment, as Yao argues, or whether, as Defendants argue, OtterSec automatically dissolved upon Sam Chen's death. The Court finds that OtterSec dissolved upon Sam Chen's death. The Wyoming LLC Act provides that "[a] limited liability company is dissolved, and its activities must be wound up, upon the occurrence of . . . [a]n event or circumstance that the operating agreement . . . states causes dissolution." Wyo. Stat. Ann. § 17-29-701(a)(i). Section 1.3(c) of the Amended Operating Agreement, which was in effect when Sam Chen passed away, provides that OtterSec "will continue perpetually unless . . . [t]he death . . . of a member or the occurrence of any other event that terminates the continued membership of a member of the Company." J.R. 85. Although, pursuant to Section 1.4 the remaining members have the right to continue "the business of the Company" upon a unanimous vote of the remaining members within 90 days after such a death, this option applies only "if there are at least two remaining members," which was not the case upon Sam Chen's death. *Id.* Where the Amended Operating Agreement contains no other provisions for continuing the Company after such a death, OtterSec was required to dissolve when Sam Chen passed away in July 2022, before Robert Chen purported to dissolve the Company later in September 2022. *Cf. Fritchel*, 452 P.3d at 608 (finding that a Wyoming limited partnership dissolved upon the death of the partnership's general partner where the partnership agreement provided that "[t]he withdrawal of the General Partner shall dissolve the Partnership" and that the general partner's death "constituted an event of withdrawal").

42

Despite this finding, the Court concludes that the Complaint has a stated a plausible claim for breach of the implied covenant of good faith and fair dealing based on Robert Chen's conduct during OtterSec's winding-up period. As Defendants acknowledge in their reply brief, "[t]he dissolution of a Wyoming LLC is not a single-day event" as it "begins on a particular date but continues through a winding-up period." Reply at 4, ECF No. 75; *see* Wyo. Stat. Ann. § 17-29-702. Here, the Complaint alleges that Robert Chen undertook various acts during OtterSec's winding-up period that could reasonably be deemed to have gone "beyond the exercise of contract rights and amounted to self-dealing." *Jontra Holdings Pty Ltd.*, 479 P.3d at 1246. For example, one of Robert Chen's rights under the Amended Operating Agreement, including after the Second Amendment, was the right to make decisions as to the "disposition of the Company's assets." J.R. 86. The Complaint alleges that Robert Chen "did not make any offer to purchase the listed assets" of OtterSec and instead acted to "simply take the listed assets (and others) for OtterSec and RC Security, continue the exact same business through them, and thereby steal OtterSec for himself." Compl. ¶ 103. If Robert Chen took OtterSec's assets for use by these new companies wholly controlled by him without paying the value of those assets, he could fairly be deemed to have engaged in the kind of self-dealing that at least requires further determination from a factfinder as to whether it violates the implied covenant of good faith and fair dealing. *See Jontra Holdings Pty Ltd.*, 479 P.3d at 1246.

Although Defendants claim that Robert Chen paid for OtterSec's assets, that the proceeds from those payments are currently in an OtterSec bank account, and that Robert Chen has always intended to distribute the Estate's share to it, such a claim, even if it can be considered at this stage, provides at most a factual dispute that cannot be resolved though the Motion. Indeed, where such a disbursement should have occurred long ago, and there is no claim that the Estate was ever

43

informed of the existence of such an account or any intent to disburse proceeds to the Estate, it is entirely unpersuasive as a basis for dismissal at this time. Accordingly, the Motion will be denied as to the breach of contract claim based on a breach of the implied covenant of good faith and fair dealing.

## VIII. Accounting

In Count 8, Yao requests an accounting of "the transactions and affairs of OtterSec, Otter Audits and RC Security." Compl. ¶ 164. As to an accounting of the transactions and affairs of OtterSec, Defendants acknowledge that Yao and the Estate are statutorily entitled to such an accounting. *See* Wyo. Stat. Ann. §§ 17-29-504, 17-2-410; Mot. at 9. As to an accounting of the transactions and affairs of the LLC Defendants, under both Maryland and Wyoming law, an accounting is a remedy rather than an independent cause of action. *Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010); *Y-O Invs., Inc. v. Emken*, 142 P.3d 1127, 1130 (Wyo. 2006) (stating that an accounting is an "equitable remedy" that is "within [the trial court's] discretion" to grant). Where a plaintiff has alleged independent causes of action that remain following a motion to dismiss, equitable accounting may be available. *See West v. Koehler*, No. RDB-11-3051, 2012 WL 868657, at *7 (D. Md. Mar. 13, 2012) (stating that "an accounting is . . . a remedy, not a separate cause of action, and not available absent some independent cause of action" (quoting *IFAST, Ltd. v. All. for Telecomm. Indus. Sols., Inc.*, No. CCB-06-2088, 2007 WL 3224582, at *11 (D. Md. Sept. 27, 2007))).

At the same time, "[w]hen a plaintiff properly pleads another cause of action that will entitle the plaintiff to discovery, the remedy of accounting is generally superfluous." *Bochenski v. M & T Bank*, No. ELH-14-1031, 2015 WL 1040281, at *32 (D. Md. Mar. 10, 2015); *cf. Alternatives Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*, 843 A.2d 252, 307-08 (Md.

Ct. Spec. App. 2004) ("[W]hereas an equitable claim for an accounting once served a necessary discovery function, that function has been superseded by modern rules of discovery."). Although Yao has pleaded independent causes of action that entitle her to discovery, and the parties in this case are presently engaged in discovery, the Court presently declines to dismiss the request for an accounting of the LLC Defendants' transactions and affairs. If Yao receives the equivalent of the requested accounting by the close of discovery, Defendants can again seek dismissal of the accounting request. *See Layani v. Ouazana*, No. 20-00420-SAG, 2022 WL 294286, at *8 (D. Md. Feb. 1, 2022) (finding that a motion to dismiss an accounting claim was premature where the plaintiffs could receive the requested information during discovery).

## IX.    Declaratory Judgment

In seeking dismissal of the declaratory judgment claim in Count 2, Defendants argue that "[b]ecause Plaintiff has failed to adequately plead any of its other claims, the [Declaratory Judgment Act] cannot function as a standalone cause of action." Mot. at 28. Defendants also argue that Yao's request for the imposition of a constructive trust over the Estate's alleged interest in the LLC Defendants is not warranted. Where the Court will deny Defendant's Motion for Judgment on the Pleadings as to some of the claims, it declines to dismiss the requests for declaratory relief and related remedies at this time.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the Lanham Act claim in Count 1, the breach of fiduciary claims in Count 3 against the LLC Defendants and those against Robert Chen relating to alleged duties owed to OtterSec and the Estate or relating to the

45

dissolution of OtterSec; the misappropriation and conversion claim in Count 5; and the tortious interference claim in Count 7. The Motion will be otherwise denied. A separate Order shall issue.


Date:   January 27, 2025

THEODORE D. CHUANG
United States District Judge

46