# Exhibit 3

**Subject:** Yao v. Chen and Chen v. Chen Meet and Confer (Apr. 10, 2025)
**Date:** Friday, April 11, 2025 at 2:27:58 PM Eastern Daylight Time
**From:** Christina Lamoureux
**To:** Plotnick, Stephen M., White, Madelyn K., Malyshev, Alexander G., Bei, Yining, Leff, Mara, Dan Kennedy, Simpson, Kevin M.
**CC:** Rachel Clattenburg, Josh Levy, Justin DiCharia, Kevin Crenny, Emma Floyd

Counsel,

Thank you for the meet and confer yesterday on April 10, which lasted approximately 70 minutes, and during which we discussed the issues we raised in our motion to compel served on April 4, 2025. Below is a summary of our discussion, separated by topic, including the parties' relative positions and where we left each issue. Please let us know if you have comments on any of this.

## (1) Missing Relevant Discord Messages from within Plaintiff Yao's and David's Productions.

We pointed you to Exhibits 1 and 2 of our Motion to Compel (served April 4) for examples of these missing, relevant, Discord messages, and explained their relevance.

Specifically, with respect to the missing Discord messages shown in Exhibit 2, we discussed:

- **Exports**: We asked if all Discord productions were exported on the same date. You said that the conversations were collected multiple times in multiple formats. You stated that there were known problems with Plaintiff's Yao's fifth production, made on December 24, 2024, and confirmed that production should not be relied on. We stated that you had not disclosed these problems to us, and left it to us to identify and raise these with you, which we had done in the past week. You said it did not matter who disclosed the problems. You stated that your vendor exported complete sets of messages using the vendor's Discord export tool, that these complete copies were uploaded to your document database, that these conversations were processed and reviewed on a message-by-message basis, and that this process was done multiple times for some messages. You stated that some of the second copies of threads were only partially de-duplicated, creating one complete thread of messages, which you represent we have received, and one incomplete thread. When we asked for additional details about the Discord export tool, you stated it is a tool from the vendor, and contended that any additional information is protected by the work product privilege.

    - **Message by Message Exports**: You had not previously told us that you were

processing discord messages on a message-by-message basis. When we asked, given this information, how we would be able to tell whether you have withheld individual messages that would otherwise appear as part of a conversation thread, you represented that you are not withholding messages from a thread. You stated that in Relativity, documents appear on a message by message basis, but do not appear as "unconnected." We asked at what level and in what format the messages were de-duplicated, in what format the messages appear in Relativity, and how we can be sure that you are not withholding individual messages within a thread since there was no indication in the incomplete threads you produced showing that messages were missing. We asked that you get back to us with answers to these questions.

- **April 29, 2022 Conversation**: We pointed you to the three versions of a conversation from April 29, 2022 that you have produced, for which missing messages cannot be explained by the deduplication errors, given that there are two versions of that thread, each of which is missing different messages. You said you were not familiar with the conversation from Exhibit 2.

- **Processing Error**: Steve confirmed there was a vendor processing error that you are correcting, and that the error was isolated to Plaintiff Yao's fifth production. When we asked what the error was, and how the error was being corrected, you stated that you have changed "protocols" with the vendor to include messages that were previously excluded, and declined to provide any explanation of the error. We reiterated our concern that you had not identified the underlying errors, and that a failure to do so meant we could not trust that the Discord documents you have produced and are producing are complete and authentic.

- **Completeness and Authenticity**: We raised that we have concerns about how we can rely on the completeness and authenticity of your other productions, and of future productions given the information discussed today and raised in our April 4 motion to compel. You contended that is discovery on discovery to which we are not entitled. We provided case law on circumstances in which discovery on discovery is allowed; we contend it is allowable in these circumstances. You stated you disagree and said you had other case law but did not provide those citations.

- **Exhibit 1**: We also pointed you to Exhibit 1 of our Motion to Compel, which shows missing, relevant, Discord messages on June 27, 2022, and for which you have not produced what you call a "complete" version. You said you had not looked at that Exhibit, but that you are still producing documents. We asked if you would be producing the rest of this conversation, and you did not know. We also asked whether you would be producing the rest of the conversation between David Chen and Phillip

Papurt, from dates after August 5, 2022, which is missing from your production, even though you have produced some of that conversation from before August 5, 2022 (and as detailed in our Motion to Compel). You said you would be producing more documents, but did not confirm that these messages would be in that production.

- **Substantial Completion**: When we raised concerns that we have not received all relevant messages, you stated that you have not substantially completed your production. We pointed to a January 23 email in which you stated that, other than a known issue with documents containing only David's messages, you were about a week away from substantial completion, and asked what had changed. You stated you were in the process of reproducing the problematic December production and said you had not substantially completed production. We asked if this meant you would be producing additional documents. You pointed to the proposed discovery schedule submitted to the Court and reiterated that you are in the process of continuing to make productions.

- **Export Intervals**: We asked for confirmation that you were exporting messages at 12-hour intervals. You confirmed this was not correct and that exports were being made in 24-hour or day-by-day increments. When we asked for clarification because the messages do not appear from midnight to midnight, you stated that messages in documents produced after Plaintiff Yao's fifth production should all be from the same calendar day, and that threads would start from the first message and end with the last message.

## (2) Deletion Analysis & April 1, 2025 Letter

- **Relevance and Burden**: We contended that it is your burden to show why David's deletions did not contain potentially relevant messages, as shown by case law in our motion to compel, and asked how you have shown that the deleted messages were not relevant. You disagreed that it is your burden, and stated that it is our burden to prove that the deleted messages were relevant. You also stated that the answers to our questions about how you analyzed the deleted messages for relevance is work product/privileged and constitutes discovery on discovery, and declined to answer, except to point to your letter as sufficient. Your position is that you have provided sufficient information in that April 1 letter to satisfy your burden.

    - **Copies of Deleted Messages**: We asked whether you have copies of, and reviewed, any of the messages David deleted, and asked for information on how you determined the messages are not relevant. You stated that the information you have provided in the April 1 letter is sufficient, and that additional information is protected by the work product doctrine and attorney client privilege. We stated you had waived any such privilege or protection through the letter and by relying on the letter, which relies on selective

disclosure of the very information you assert is privileged and/or protected in order to claim that none of the deleted messages are relevant, for purposes of claiming David and Plaintiff have not spoliated evidence.

The parties are in disagreement as to whether information on how you analyzed the deleted messages for relevance, and the analysis behind your conclusion that David did not delete any relevant messages, are protected by the attorney work product doctrine and/or attorney-client privilege, whether you waived such protection (to the extent it applies), and whether we are entitled to this discovery.

- **High School Friends**: We asked for clarification on your position from the April 1 letter that "*1,204 messages are from a Discord server used by David for communications with a group of his high school friends about topics having nothing to do with OtterSec or any issue in this case. David's communications with his high school friends are not relevant.*" We specifically asked how conversations with high school friends can be considered categorically not relevant given that you have produced relevant conversations with high school friends. You stated that the fact that you have produced these conversations belies our position, and that additional questions about how relevant messages were identified was privileged. We asked if you have reviewed the messages between David and high school friends that you are claiming are irrelevant, or if you have reviewed the surrounding conversations. You stated that we are not entitled to that information.

    - We raised our position that it is a waiver of the privilege you are claiming to provide selective information, such as telling us that you have identified specific irrelevant channels but refusing to tell us how you identified those channels as irrelevant. You contended this was not a waiver of privilege.

- **Relevant Channels**: We noted that the list of channels or servers where David has deleted messages has changed over time (such as SVBonk and "a group of users with whom David formed an online friendship"), and that some of these appear inconsistently throughout your opposition to the motion for a preservation order and your April 1 letter. You stated that some of these channels were part of a preliminary review, that they could have been excluded for a number of reasons, and that your April 1 letter represented a complete analysis.

- **Discovery Period**: We explained that we have never agreed to the global relevant time period you used in your April 1 letter to write off over 15,000 messages as necessarily irrelevant, and that you knew we disagreed with this when you made your

claims to the Court in ECFs 117 and 122 that there was such an agreement. We pointed you to our February 26, 2025 email where we specifically disagreed with this claim of a relevant time period. We also pointed you to Steve's February 25, 2025, email, which claimed a relevant time period of February 2022 through February 2024, which is longer than what you have now claimed in Court filings and in your April 1 letter.

We explained that, in *Chen v. Chen*, the relevant time period for discovery starts well before February 1, 2022, because David contends he owned the code(s) before that date, and we are entitled to discovery on that claim and the functionality of any such code(s) prior to the creation of OtterSec. We also explained that the end date for *Chen v. Chen* extends well past December 31, 2023, because the Chen Plaintiffs have claims for unjust enrichment.

We also explained that in *Yao v. Chen*, we never agreed to a global relevant time period, and that the agreements reached in the January meet and confers were as to specific, disputed requests, and were on a request-by-request basis. Most, if not all, of those agreements pertained to the period for production of financial information from the Yao Defendants. In addition, we pointed you to the RFPs on Plaintiff and the Subpoena on David, both of which have a relevant time period through the present. We noted that David has waived and withdrawn all objections to the Subpoena. We pointed you to specific requests in David's Subpoena that necessarily require the production of documents past December 2023, including Request 20 (for all documents and communications concerning the deletion or loss of any data from any communication device in his possession, custody, or control during the relevant period, including but not limited to his phone); Request 19 (documents sufficient to identify any and all mobile phones used by David during the Relevant Time period); Request 17 (all non-privileged communications regarding this Action); Request 16 (documents sufficient to identify all blockchain or digital wallets used by David or any entity in which he has an ownership or beneficial interest); Request 12 (all documents and communications concerning revenues or income David earned from the "personal code and other property" referenced in Paragraph 71 of the Complaint).

You stated that the discovery period is the subject of the pending motion for a preservation order, and that the only relevant topic after December 2023 is damages and that the information is available on the blockchain. We disagreed, because the claim is for unjust enrichment, and that is not available on the blockchain, and discovery is not limited to what you deem sufficient evidence. You contend that relevance should be measured against proportionality. You reiterated your position that you do not believe you are under any obligation to preserve, collect, or search every piece of paper past December 2023 solely because of our damages claim. You also stated that the information we are seeking is available on the blockchain. You

did not respond to our position on the time period from prior to February 2022.

The parties thus disagree on the relevant time period for discovery in both *Yao v. Chen* and *Chen v. Chen*.

- **Discord Information**:

    - We asked where you obtained the spreadsheet and scientific Discord ID numbers. You stated you obtained this information in an email from Discord, which was new information to us. We asked you to formally produce this information as you would typically produce a third-party production, and reminded you that there is a RFP served on Plaintiff for all documents received from third parties in this action, whether in response to a formal or informal request (see RFP 10 on Plaintiff). You stated you would send an email confirming it came from Discord, Bates stamp the document, and produce it.

    - With respect to the spreadsheet, which has numbers that have been translated into specific conversations and dates, we asked how these numbers had been translated into the substance of the messages. You stated this information is protected by the work product doctrine.

- **Deletion Process**: We asked how David determined which messages to delete, and whether he had used a script to do so. You stated that those messages are irrelevant and outside the date range, and claimed additional information is privileged.

- **Deletion of Relevant Messages**: We asked whether you are representing that David did not delete any relevant messages. You reiterated that your April 1 letter is correct and that the specifics of the messages are privileged information and discovery on discovery. We again asked if it is your position that David has not deleted relevant messages in the case. You did not, and would not, say whether David deleted relevant messages or not and instead repeated your position that you have fully discharged your obligations (with respect to both your law firm and your client).

### (3) David's "Bricked" Phone

We asked if your position had changed with respect to declining to provide an affidavit on David's phone "bricking." You asked for the legal basis for our request. We noted that both parties had agreed to hire TeelTech, and that the examiner needs to know what happened to the phone to have the best plan to retrieve data and to determine whether David's claims about what happened to the phone are plausible. We explained that we initially thought we could rely on David's counsel's explanation of what happened to the phone, but that you have since backed away from that and said we could not rely on that explanation. Therefore, we either need an explanation from counsel or from David, which is why we are

asking for the affidavit now. You contended that the request for the affidavit is coming from us, not TeelTech. You claim that TeelTech said that information about what happened to the phone would not be helpful. We said that email does not say that. The parties thus disagree as to whether an affidavit would be useful and whether there is a basis for requesting it.

Best,
Christina

--
**Christina Lamoureux**
Associate

**Levy** | **Firestone** | **Muse**
900 17th Street NW, Suite 1200, Washington, DC 20006
T 202-845-3215  •  C 203-273-7737  •  F 202-595-8253  •  levyfirestone.com