<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2
      LI FEN YAO, as Administrator of )
 3    the Estate of Sam Mingsan Chen, )
                            Plaintiff, )
 4                                     )    CIVIL CASE NO.
                    vs.                )    8:23-cv-00889-TDC
 5                                     )
      ROBERT CHEN, OTTER AUDITS, LLC  )    TUESDAY, APRIL 29, 2025
 6    And RC SECURITY, LLC,            )
                            Defendants. )
 7    _____ )

 8                   TRANSCRIPT OF PROCEEDINGS
              TELEPHONE DISCOVERY DISPUTE HEARING
 9            BEFORE THE HONORABLE GINA L. SIMMS
                 UNITED STATES MAGISTRATE JUDGE
10

11    For the Plaintiff:

12    Stephen M. Plotnick, Esquire
      Madelyn K. White, Esquire
13    Alexander G. Malyshev, Esquire
       Carter Ledyard & Milburn, LLP
14     28 Liberty Street, 41st Floor
      New York, NY 10005
15
      Daniel M. Kennedy, III, Esquire
16     Barkley & Kennedy, Chartered
       51 Monroe Street, Suite 1407
17     Rockville, MD 20850

18    For the Defendants:

19    Justin A. DiCharia, Esquire
      Joshua A. Levy, Esquire
20    Kevin P. Crenny, Esquire
      Rachel Clattenburg, Esquire
21     Levy Firestone Muse, LLP
       900 17th Street NW, Suite 1200
22     Washington, DC 20006

23    Also Present:
      Yining Bei, Esquire
24    Christina Lamoureux, Esquire
      Emma Floyd, Paralegal
25    _____
      (Proceedings Recorded by Audio Recording - Transcript Produced
                    by Computer-aided Transcription)
</pre>

Telephonic Discovery Dispute Hearing 4/29/25

1              P R O C E E D I N G S

2        (11:05 a.m.)

3              THE COURT:  Good morning.  This is Judge Simms.  Is

4    my courtroom deputy on the line, please?

5              THE CLERK:  Yes, Your Honor.

6              THE COURT:  If you would go ahead and call the case.

7              THE CLERK:  Yes, Your Honor.  The matter now pending

8    before the Court is Civil Case Number TDC-23-889, Yao versus

9    Chen, et al.  The matter now comes before the Court for a

10   telephonic discovery hearing.  Starting with plaintiff counsel,

11   can you please identify yourself for the record?

12             MR. PLOTNICK:  This is Stephen Plotnick speaking from

13   Carter Ledyard and Milburn.  I'm appearing on behalf of Li Fen

14   Yao and David Chen.  I'm joined by my colleagues this morning

15   from Carter Ledyard and Milburn also Alexander Malyshev,

16   Madelyn White, and my associate Yining Bei.

17        Dan, I will leave it to you to enter your appearance.

18             MR. KENNEDY:  Thank you.  Your Honor, Daniel Kennedy

19   on behalf of plaintiffs as well.

20             THE COURT:  And who's with you?  I have someone named

21   Nathan Harp and Kevin Simpson.  Do they work with you,

22   Mr. Kennedy?

23             MR. KENNEDY:  They do not.  I believe they're with

24   Robert Chen's counsel.

25             MR. PLOTNICK:  Your Honor, this is Stephen Plotnick

1    speaking.  Nick is no longer with my firm.  He's moved and he's

2    withdrawn his appearance from the case.  And Kevin Simpson is

3    my associate but he is not on the line.

4              THE COURT:  Okay.  All right.  I just got a list that

5    didn't tell me who was on the line.

6         Okay.  All right.  Counsel for the defendant, if you could

7    just introduce yourself, Mr. Levy, and everybody else who's

8    with you.

9              MR. DiCHARIA:  Of course, Your Honor.  This is Justin

10   DiCharia for Levy Firestone Muse, and I have my colleagues on

11   the line Joshua Levy, Rachel Clattenburg, Kevin Crenny,

12   Christina Lamoureux, and our paralegal Emma Floyd.

13             THE COURT:  All right.  Mr. Plotnick, are you

14   speaking on behalf of Yao Chen and David Chen?

15             MR. PLOTNICK:  I am, Your Honor.

16             THE COURT:  All right.  And Mr. Levy, your name is in

17   all of these various filings.  I'm assuming you're speaking on

18   behalf of Robert Chen and the corporate defendant, right?

19             MR. DiCHARIA:  I am, Your Honor.  This is Mr. --

20         [Indiscernible crosstalk.]

21             MR. DiCHARIA:  I'm sorry, Josh.  This is

22   Mr. DiCharia, Your Honor.

23             THE COURT:  Whoa, whoa, who.  No, no, no, no, no.

24   One person at a time speaks.  So my question was directed to

25   Mr. Levy.  I don't want somebody else to chime in.

1    Mr. Levy, you have a voice, you can answer.  What's the
2    response to my question?
3    MR. LEVY:  Thank you, Your Honor.  This is Joshua
4    Levy.  I am -- my colleague Justin DiCharia is going to be
5    speaking on behalf of the Yao versus Chen defendants and Chen
6    versus Chen plaintiff today.
7    THE COURT:  All right, everybody.  You can go ahead
8    and put yourselves on mute.  My law clerk as a courtesy to you
9    all notified you of what it was that we were going to be
10    discussing today.  We're going to be discussing ECF Number 121
11    and all the attachments related thereto, so you should have
12    those in front of you and ready to go.
13    We're also going to be discussing ECF 122 and the
14    attachments related thereto so you should have those in front
15    of you and ready to go as well.
16    We will then discuss ECF 106, Pages 3 and 5, and I may
17    refer in passing to ECF Number 128-1.  But my expectation is
18    that everybody is ready and will have this in front of them.
19    Next, don't do that, what we just had a minute ago.  You
20    need to identify yourself when you are speaking on the record,
21    and I don't want people talking up and starting to speak unless
22    I have asked you to speak.
23    So I will be very particular.  I will say, Mr. Plotnick,
24    for an example, Mr. DiCharia for example.  I only want you to
25    respond if I have directed a question to you.

Telephonic Discovery Dispute Hearing 4/29/25

1    Put another way, if there is no question that has been

2    posed to you, I do not need to hear from you.  I have read

3    everything that you have submitted.  I've seen the back and

4    forth between you all, so I have very particular questions that

5    I need to have answered and that's what we're going to be

6    spending the time today doing.

7    If my question is unclear, do not be shy about asking me

8    to repeat it, but don't just go off on a tangent and answer

9    something else and kind of make an argument.  You have to

10   answer my question.  So a lot of my questions will literally

11   just be "yes, Your Honor," or "no, Your Honor" will be the only

12   appropriate response.

13   Keep yourselves on mute, and each time you are speaking in

14   the beginning, just please of course introduce yourself saying

15   our name so that if this ever gets transcribed later on the

16   court reporter can understand who is speaking.  Do not, n-o-t,

17   ever speak over for me.  Those are the rules of the road.

18   Any questions, Mr. Plotnick?

19        MR. PLOTNICK:  No, Your Honor.

20        THE COURT:  Any questions, Mr. DiCharia?

21        MR. DICHARIA:  No, Your Honor.

22        THE COURT:  All right.  So let's start first with

23   you, Mr. DiCharia.  I just want to make sure, I'm assuming you

24   have a copy of Local Rule 104.7 in front of you.  So you agree

25   that the plain language says that meet and confer contemplates

Telephonic Discovery Dispute Hearing 4/29/25

1  that you meet in video, in person, or over the phone, correct?
2  That's what the plain language says, right?
3              MR. DICHARIA:  Yes, Your Honor.
4              THE COURT:  All right.  My specific question to you,
5  did you ever meet and confer, either via video, in person, or
6  over the phone, to discuss ECF 121-2 or ECF 121-10, Pages 10
7  through 15?
8              MR. DICHARIA:  Yes, Your Honor, after the filing was
9  made.  We made attempts to schedule a telephonic meeting and we
10 described those attempts in accordance with 104.7(b) in the
11 motion, Your Honor.
12             THE COURT:  What date did you meet and confer to
13 discuss ECF 121-2?
14             MR. DICHARIA:  Your Honor, we met on March 7th to
15 discuss the issues that are underlying ECF 121 and 122, and we
16 recently met and conferred on April 10th and some of the issues
17 in this -- in these two filings were discussed there as well.
18             THE COURT:  So when you filed ECF Number 121 on
19 March -- I just want to make sure I understand because my
20 question -- all right.  So you met on March 7th to discuss the
21 issues in 121, 122; is that right?
22             MR. DICHARIA:  I believe so.  That's the date, Your
23 Honor, yes.
24             THE COURT:  Well, there's something that doesn't make
25 sense so I'll circle back to that later, then.  All right.

Telephonic Discovery Dispute Hearing 4/29/25

1       So next question:  Did you ever meet and confer via video,

2   in person, or over the phone to discuss ECF 121-9, Pages 16

3   through 19, or 121-9, Pages 21 through 22?  Same question,

4   Mr. DiCharia.

5           MR. DiCHARIA:  Yes, Your Honor.  My apologies.  I've

6   turned to 121-9 to see what it's discussing.  Your Honor, on

7   the Jito messages, we met and conferred with opposing

8   counsel --

9           THE COURT:  No, no, no, no.  No, no, no, no, no.

10  121-9, Pages 16 through 19.  16 through 19.  And by the way --

11          MR. DiCHARIA:  My apologies.

12          THE COURT:  Hold on.  Hold on.  I refer to the CM/ECF

13  pages at the top, all right, just so everybody's clear because

14  it's the numbers in blue.

15      Pages 16 through 19, ECF 121-9, what date did you meet and

16  confer to discuss that?

17          MR. DiCHARIA:  We attempted to meet and confer with

18  counsel.  We did not meet and confer prior to the filing, Your

19  Honor.

20          THE COURT:  ECF 121-9 --

21          MR. DiCHARIA:  We were unable to.

22          THE COURT:  -- Pages 21 through 22.  What day did you

23  meet and confer to discuss that?

24          MR. DiCHARIA:  My apologies, Your Honor.  On 121-9,

25  we did meet and confer with opposing counsel on the proposed

Telephonic Discovery Dispute Hearing 4/29/25

1    limited deposition.  I don't have the dates.  We would have to
2    look that up for you.
3              THE COURT:  Mr. Plotnick --
4              MR. DiCharia:  On your --
5              THE COURT:  Mr. Plotnick, what date did you all meet
6    and discuss ECF 121-9, Pages 21 through 22?
7              MR. PLOTNICK:  Your Honor, I'm just get to the page.
8    I apologize.  Got it.  With apologies, my computer is moving
9    very, very slowly right now and I'm trying to pull up that
10   specific --
11             THE COURT:  Do you have the whole thing?
12             MR. PLOTNICK:  -- 121-9.
13             THE COURT:  You have other people working with you.
14   They ought to be jumping and doing it, too.  We got to keep
15   moving, counsel.  All right?
16             MR. PLOTNICK:  I understand, Your Honor.  Yes.
17             THE COURT:  Somebody, Mr. DiCharia, or somebody on
18   Mr. Plotnick's team, I need to know what date you all met and
19   conferred and discussed 121-9, Pages 21 through 2, and as I
20   said, I'm going by the CM/ECF number at the top.  Whoever
21   answers first and fastest, just say your name and tell me what
22   the date was, please.
23             MR. DiCharia:  Your Honor, this is Justin DiCharia.
24   We discussed a limited deposition of David regarding the ECF
25   numbers that you pointed out.  We discussed that with opposing

1    counsel and his team on November 22nd, 2024.

2              THE COURT:  All right.  But so here's -- let me just

3    try this again, all right?  So what I literally mean is the

4    following.  So let's go back through this.

5        ECF 121-2, Mr. DiCharia, did you say, did you give a copy

6    of this proposed order to Mr. Plotnick and his team and, if so,

7    when and did you discuss it?  ECF 121-2.

8              MR. DICHARIA:  Your Honor, if I could have one moment

9    to turn to that page.  As relates to 121-2, we did give

10   opposing counsel a copy of this, Your Honor.

11             THE COURT:  What date?

12             MR. DICHARIA:  One moment, Your Honor.  We forgot to

13   get that up.  It looks like February 14th, 2025, Your Honor.

14             THE COURT:  Mr. Plotnick, do you agree you got a copy

15   of 121-2 on February 14th, 2025?  Yes or no.

16             MR. PLOTNICK:  I am checking my e-mail, Your Honor,

17   but I have no -- I have no reason to doubt counsel's statement.

18   There was -- it certainly was provided to us over e-mail.  I'm

19   looking for the exact e-mail.  It was provided.  We provided

20   comments to it as well.

21             THE COURT:  ECF 121-10, Pages 15 through 19,

22   Mr. Plotnick, were you given a copy of that and, if so, when?

23             MR. PLOTNICK:  Your Honor, I apologize.  It's 121-10

24   Your Honor was referring to?

25             THE COURT:  Yes.

Telephonic Discovery Dispute Hearing 4/29/25

1      MR. PLOTNICK:  Let me just see when that would have

2  been.

3        (Pause in Proceedings.)

4      THE COURT:  All right.  Let me just short circuit

5  this because we need to get moving.

6        Mr. Plotnick, turn to ECF 122, Page 16.

7      MR. PLOTNICK:  Yes, Your Honor.

8      THE COURT:  Your first argument is you are claiming

9  that not only there wasn't a Local Rule 104.7 certificate done,

10  but you make a representation that you didn't discuss this

11  request for order by phone, video, or in person, you just

12  merely exchanged e-mails.  Is that true or not true?

13      MR. PLOTNICK:  That is true, Your Honor.  We did not

14  discuss the proposed preservation order by phone, that is

15  correct.

16      THE COURT:  Or video or in person?

17      MR. PLOTNICK:  That's correct.  We only exchanged

18  e-mails.  That is correct.

19      THE COURT:  All the numbers, as you all can tell that

20  I've been asking you about, 121-2, 121-10, right, 121-9 are the

21  actual orders.  Are you with me so far, Mr. Plotnick?  These

22  are the draft proposed orders, right?

23      MR. PLOTNICK:  Yes, Your Honor.

24      THE COURT:  Did you discuss -- and let me try it

25  again.  These numbers, 121-2, 121-9, Pages 16 through 19,

1  121-9, Pages 21 and 22, 121-10, Pages 15 through 19, I just

2  need to know, Mr. Plotnick, did you meet and confer where you

3  actually had copies of these and you actually had a discussion

4  or is it just back and forth via e-mail?  That's what I'm

5  trying to understand.

6          MR. PLOTNICK:  Yes, Your Honor.  Understood.  Only

7  back and forth via e-mail with respect to the order.

8      If I could clarify, there was a meet-and-confer that took

9  place on -- I believe the date was March 7th, but it did not

10  relate specifically to the proposed terms of the preservation

11  order.  They were more -- there were questions related to the,

12  you know, the Discord deletions and the questions counsel had

13  and information that they wanted us to provide to them but we

14  did not discuss a preservation order.

15          THE COURT:  Or any of the documents that I keep

16  reciting.  I really mean what I'm say.  Any of those

17  documents [indiscernible] --

18          MR. PLOTNICK:  Correct, yes.

19          THE COURT:  -- that [indiscernible.]

20      All right.  Mr. DiCharia, do you agree with what

21  Mr. Plotnick has just said or do you disagree?

22          MR. DICHARIA:  Your Honor, I agree we did not meet

23  and confer specifically on the orders that you've identified.

24  We did attempt to meet and confer prior to filing, and then we

25  did on the March 7th meet-and-confer discuss issues that would

1    have mooted the preservation order motion had they been

2    discussed --

3             THE COURT:  All right.  So here's --

4        [Indiscernible crosstalk.]

5             THE COURT:  I understand what you meant.  Not a

6    problem.

7        So here's the deal.  I could just deny outright,

8    Mr. DiCharia, your motion ECF 122 because you had failed to

9    comply with the meet-and-confer process, right?  You haven't

10   done it.  You guys are going back and forth in e-mails and

11   you're talking past each other.  But I'm not going to do that,

12   but let me be clear for whoever wants to appeal me.  I am

13   perfectly within my rights to deny this motion outright and

14   send you back to meet and confer because you haven't done it.

15   You're talking past each other in e-mails, number one.

16        Number two, that's exactly the reason why I denied

17   Mr. DiCharia, your latest filing, right?  ECF Number 128-1,

18   right, after getting the 127 and 128 and all of the

19   attachments, because I could tell you all are talking past each

20   other and not meeting and conferring.  So your decision to

21   appeal me to Judge Chuang is certainly your decision but you

22   haven't met and conferred sufficiently.

23        So what I'm going to do today is I'm going to still make

24   my ruling, we're going to still go through the facts and the

25   evidence, but let me make a collusive statement, Your Honor,

1    which I know Judge Chuang will back me up on.

2        Any future motion that you have to file that's related to

3    a discovery dispute, you shall meet and confer either via

4    video, in person, on the phone -- and here's the other thing --

5    you have to have a court reporter present.  I have more than

6    enough basis on this record and how I see you all interact

7    before that we need to use my time and Judge Chuang's time

8    efficiently.

9        So if you have any discovery disputes going forward or if

10   there's anything less after I make my ruling with respect to

11   this that's pending in front of me, you shall have a court

12   reporter present and do it via phone, video, in person, but not

13   just back and forth through e-mail, all right?  That's my first

14   ruling.  Now let's just go ahead and get to the substance of

15   all of this.

16       All right.  Let's talk about the phone.  Mr. Plotnick, I

17   want to start with you for the phone.  As we sit here today at

18   11:25 in the morning, is the phone, Mr. David Chen's phone been

19   the subject of a lot of this, ECF 121, is that still with Teel

20   Tech?

21            MR. PLOTNICK:  Yes, Your Honor, it is.

22            THE COURT:  All right.  And I just wanted to make

23   sure, Mr. Plotnick, I understand the status.  Is it that -- I

24   guess there were two different things you had articulated.

25   Either nothing has been done to the phone or it hasn't been

1   touched, or you've made an attempt to reinstall it or fix the

2   software or whatever the technological nomenclature is, so

3   pardon me if it's [indiscernible].  But is it that nothing's

4   been done or has there been some attempts made to do something

5   with the software, if you will?  What's the status, Mr.

6   Plotnick?

7               MR. PLOTNICK:  The status of the phone, Your Honor,

8   is it is been provided to Teel Tech.  They have performed an

9   inspection of the phone.  They have attempted to recover the

10  data.  Per the technician at Teel Tech recommended certain next

11  steps that would need to be followed in order to try to recover

12  the text messages, essentially, or the data from the phone.

13        For shorthand, the defendants' counsel has objected to

14  proceeding with that as a next step, and we are essentially in

15  a holding pattern now as a result of that objection.

16              THE COURT:  Okay.  All right.  Mr. Plotnick, as I

17  understand ECF 122-6, which is David Chen's declaration, I

18  think it's Paragraph 3, he's represented in the declaration

19  that he doesn't use -- I'm just going to call it "the phone"

20  for business purposes.  Am I understanding that correctly?

21              MR. PLOTNICK:  That's correct, Your Honor, at the

22  time that is correct, that phone.

23              THE COURT:  And is it correct, Mr. Plotnick, that

24  David Chen is available to be deposed?  And I'd like you to

25  just take a look at ECF 121-9, Page 21, Paragraph 1.  Just let

Telephonic Discovery Dispute Hearing 4/29/25

1   me know when you're there, please, Mr. Plotnick.

2           MR. PLOTNICK:  That's 121-9, Your Honor said?

3           THE COURT:  Yep, Page 21, Paragraph 1.

4           MR. PLOTNICK:  Apologize for the slowness for my

5   computer.  I have too many large PDFs open at the same time and

6   it's just reacting very slowly right now.  I should be with you

7   momentarily.

8       (Pause in Proceedings.)

9           THE COURT:  Anybody on Mr. Plotnick's team who can

10  help him out?  If so, please do.

11          MR. PLOTNICK:  This is very frustrating to me, Your

12  Honor.  I apologize.

13          THE COURT:  Hit the print button, just start

14  printing.  Hit the print button.  I got to keep moving.

15          MR. PLOTNICK:  I do.  But Your Honor is referring to

16  Mr. Chen's affidavit, correct?  I think I understood.  Let me

17  pull that up.

18          THE COURT:  Actually, no, I'm not.  ECF 129, Page 21,

19  the first paragraph is your stipulation regarding the proposed

20  limited deposition of nonparty David Chen regarding spoliation

21  of evidence.

22          MR. PLOTNICK:  That is Exhibit 5 to the defendants'

23  motion, correct?

24          THE COURT:  Yep.

25          MR. PLOTNICK:  I do have -- I think I have that now

Telephonic Discovery Dispute Hearing 4/29/25

1    in front of me.

2              THE COURT:  Page 21 of 28.  I'm going by the numbers

3    at the top.

4              MR. PLOTNICK:  Madelyn or Alex, do you have that in

5    front of you that you could e-mail that to me right now?

6              THE COURT:  Okay.  So here's what's going to happen,

7    everybody.  So I'm going to take a five-minute pause.

8    Everybody needs to get all of the documents in front of them

9    printed, available in PDF, talk about that because I'm going to

10   be jumping through different pages with these documents.

11        In the olden days when people came to court they were

12   ready with paper copies and they could answer at a moment's

13   notice.  My law clerk gave you all advanced notice we were

14   going to be talking about this.  I guess the technology is not

15   working.  I will be back in four minutes and 52 seconds and I

16   want everybody ready.  All right?  I'll be back.

17            (Pause in Proceedings.)

18            MR. PLOTNICK:  I apologize.

19            THE COURT:  No worries.  Everyone just needs to get

20   used to being ready.  You can tell I've read everything.

21        All right.  ECF 129, Page 21, Paragraph [indiscernible].

22   The question is, I'm assuming your client, Mr. David Chen, is

23   still available to be deposed to talk about -- right -- the

24   things that you mentioned in Paragraph 1, right?

25            MR. PLOTNICK:  Yes, Your Honor.

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:  All right.  Then I want to get,

2    Mr. Plotnick -- I guess actually let me turn to you,

3    Mr. DiCharia.  I want to get the sequencing of things right.

4          ECF 121-9, Pages 2 and 3, are your October 28th letter to

5    the opposing side, right?  You're still on mute, Mr. DiCharia.

6          MR. DICHARIA:  Yes.

7          THE COURT:  Okay.  All right.  And that's of course

8    when you bring up -- and by the way, is it pronounced Jido?

9    Jido?  How do you pronounce that, do you know?

10         MR. DICHARIA:  I think it's Jido, Your Honor, but

11   honestly I'm not sure.

12         THE COURT:  All right.  So this is when you notified

13   the other side about some Discord messages that were on the

14   Jido server that have been deleted, right?  That's kind of the

15   first time that you're having -- raising this topic with the

16   other side; is that correct, Mr. DiCharia?

17         MR. DICHARIA:  Yes, Your Honor.

18         THE COURT:  All right.  There may be some back and

19   forth, but then I jump forward to November 27th, 2024, ECF

20   121-9, Page 13, is your November 27th e-mail or your

21   co-counsel's November 27th e-mail which has attached your

22   proposal for the terms under which you want to depose him,

23   which is ECF 121-9, Pages 16 through 18, right?

24         MR. DICHARIA:  Pages 16 through 18 is their proposal,

25   Your Honor; and then Pages 21 through 23 is our proposal, Your

Telephonic Discovery Dispute Hearing 4/29/25

1    Honor.

2            THE COURT:  Got it, all right.  So I have it

3    backwards.  So their proposal came first on November 20 --

4    well, wait a minute.  But it says, the letter says -- isn't

5    Josh Levy your co-counsel?

6            MR. DICHARIA:  Yes, Your Honor.

7            THE COURT:  Okay.  All right.  Let's see.  Hold on

8    one second.  121-9, Page 13.  Oh, I'm looking at the wrong

9    page.  That's what's happening.

10        Okay.  It says -- okay.  So what you attach -- 121-9, Page

11    13, which is the attached stipulation, the one that you

12    attached was which one?  121-9, Pages 16 through 18, or 21

13    through 22?

14            MR. DICHARIA:  21 through 22, Your Honor.

15            THE COURT:  Okay.  So I just had it backwards.  You

16    did 21 through 22.  And so that was you gave that to them on

17    November 27th.

18            MR. DICHARIA:  Yes, Your Honor.

19            THE COURT:  Okay.  All right.  So then let's see

20    here.  All right.  Then on December 5th, it looks like, ECF

21    121-9, Pages 10 through 11, Mr. Plotnick, ECF 121-9, Pages 10

22    through 11, is when you respond to Mr. DiCharia's proposal.

23            MR. PLOTNICK:  Yes, Your Honor.

24            THE COURT:  Is that right, Mr. Plotnick?

25            MR. PLOTNICK:  Yes, Your Honor.

Telephonic Discovery Dispute Hearing 4/29/25

1           THE COURT:  Okay.  And then your response is -- okay.
2     And your response is 121-9, 16 through 18?
3           MR. PLOTNICK:  I'm just double-checking but that is
4     correct, Your Honor.
5           THE COURT:  Okay.  So then you send this on or about
6     December 5th, Mr. Plotnick, and is it correct you never heard
7     back from opposing counsel on the proposal of the terms to the
8     depose Mr. David Chen; is that right?
9           MR. PLOTNICK:  That's partially correct, Your Honor.
10    The initial response was in essence that they don't agree to
11    our counter, they would come back to us with comments, we said
12    fine, and that was followed by a response that said essentially
13    never mind, we don't intend to proceed with his deposition.
14          THE COURT:  Okay.  All right.  Mr. DiCharia, do
15    you -- DiCharia, excuse me -- do you agree that you ultimately
16    after December 5th said you didn't want to proceed with David
17    Chen's deposition at that time, because I think you had
18    proposed maybe in December 2024 or January 2025 if my memory
19    serves me correctly, but you said you didn't want to proceed at
20    that time; is that right?
21          MR. DICHARIA:  We -- when opposing counsel sent their
22    version of stipulation, Your Honor, we identified some issues
23    with it.  And because of the issues and the timing of the
24    discovery schedule at that moment, we thought that at that time
25    it would only be a month or two or sooner that we would be able

1    to depose Mr. Chen in a full deposition.  And so that's why we

2    said -- that's why we dropped the deposition at that time, but

3    as you know, Your Honor, the discovery schedule's been moved

4    out pretty significantly.

5              THE COURT:  Right.  But -- okay.  But as we sit here

6    today, that phone is sitting in Teel Tech's possession and

7    there's been no moment on the phone, right, Mr. DiCharia?

8              MR. DICHARIA:  Yes, Your Honor.

9              THE COURT:  So I don't know what's on that phone as

10   we sit here today, and you don't know what's on that phone

11   either, right?

12             MR. DICHARIA:  That -- that's correct, Your Honor.

13             THE COURT:  Okay.  So then --

14             MR. DICHARIA:  Our -- at the --

15             THE COURT:  No, you need to answer my question.  If

16   you don't know what's on the phone, it's in Teel Tech's

17   custody, so help me to understand why it is that you think that

18   phone has relevant evidence when you have a declaration from

19   David Chen telling you he didn't use the phone for any -- for

20   business purposes.  Tell me what's on that phone -- I don't

21   know how you're going to answer that -- and why you think the

22   phone has relevant evidence.

23             MR. DICHARIA:  Yes, Your Honor.  So we do have a text

24   message from -- from Li Fen Yao, which is David's mother, with

25   David about the case, about OtterSec-related discussions, and

Telephonic Discovery Dispute Hearing 4/29/25

1    that is, because we don't have the phone, obviously, Your

2    Honor, that's the only indication we have that there are

3    discussions about OtterSec through text messages on that phone,

4    and the only way to recover those would be through the phone.

5        THE COURT:  Did you give me a copy of that e-mail

6    from the mother to the son?  Maybe I missed it.  Tell me which

7    of your exhibits I should be looking at that has that.

8        MR. DICHARIA:  Yes, Your Honor.  I don't believe

9    we -- the text message was produced before this filing.  I

10   believe it was produced to us after this filing.

11       THE COURT:  So at the time -- unbelievable.  What's

12   the date of that text message?

13       MR. DICHARIA:  I can give it to you in one moment.

14   One of my team members is looking for the Bates number at the

15   moment and the text message, Your Honor.

16       (Pause in Proceedings.)

17       MR. DICHARIA:  The date of the text message, Your

18   Honor, is October 31st of 2023.

19       THE COURT:  So seven months after the plaintiff's

20   lawsuit was initiated, right?

21       MR. DICHARIA:  Yes, Your Honor, and it was designated

22   confidential so we cannot read the content batch.

23       THE COURT:  And what date was that produced to you?

24       MR. DICHARIA:  That will take a second for us to

25   figure out, Your Honor, but one of my team members will get

Telephonic Discovery Dispute Hearing 4/29/25

1    that information for you.

2        (Pause in Proceedings.)

3        MR. DICHARIA:  It looks like it was produced to us on

4    February 11th of 2025, Your Honor.

5        THE COURT:  It was produced before you made your

6    filing.

7        MR. DICHARIA:  It does appear that way, Your Honor.

8    We may not have, I suppose, come across it until after the

9    filing.  I believe -- my recollection is we did not become

10   aware of it until after the filing was made, Your Honor.

11       THE COURT:  All right.  Let me ask you one final

12   question about the phone, Mr. DiCharia.  So what evidence do

13   you have -- evidence, evidence, evidence, right?  That's the

14   key word -- that Mr. David Chen rendered his phone inaccessible

15   and allow text messages to be reviewed, what evidence do you

16   have to support that?

17       MR. DICHARIA:  The suspicious timing of the breaking

18   of the phone, Your Honor, is our first and primary piece of

19   evidence.  It happened right after the complaint was filed and

20   opposing counsel told us nothing was recoverable from the

21   phone.  They gave us an explanation in November that we relied

22   upon for why the phone broke, and then in discussions with Teel

23   Tech they backed away from that explanation.

24       THE COURT:  Yes, I -- I've read everything.  I've

25   read everything.  So it sounds like -- okay.  So you don't

Telephonic Discovery Dispute Hearing 4/29/25

1    actually as you sit here today have any evidence that he

2    destroyed it.  You have a suspicion, you have a theory, you

3    have what Mr. Plotnick said.  I've read everything, counsel.  I

4    have read everything.  You actually don't have any evidence.

5    It's just your theory right now, right?

6                MR. DICHARIA:  Yes, Your Honor, the circumstantial

7    evidence.

8                THE COURT:  Right.

9                MR. DICHARIA:  And, Your Honor, we have evidence that

10   he deleted Discord messages, which I --

11               THE COURT:  Nope, I'm asking about the phone.  Asking

12   about the phone.  Asking about the phone.  Not talking about

13   Discord.

14               MR. DICHARIA:  Yes, Your Honor.

15               THE COURT:  And circumstantial evidence in terms

16   of -- what that term means isn't -- all right.  I understand

17   your theory.  I understand your theory.

18        Anything else you want to say about the phone?  I'm going

19   to move on to the next thing.

20               MR. DICHARIA:  No, Your Honor.

21               THE COURT:  All right.  Let's move on.  Let's talk

22   about Telegram.  All right, Mr. Plotnick.  My understanding is

23   that your client David Chen does not dispute that he used

24   Telegram and Discord for -- I'm just going to keep calling it

25   "business purposes," but I will infer that you know what I

Telephonic Discovery Dispute Hearing 4/29/25

1   mean, right?  He doesn't dispute that fact, right?

2             MR. PLOTNICK:  That is correct, Your Honor.

3        If I may add one thing about the text messages Your Honor

4   was just referring to?  I didn't want to interrupt, but I don't

5   know what specific message Mr. DiCharia is referring to.  I'm

6   sure I could pull it up if you had a Bates number, but I would

7   just add that he mentioned that it was from a text message from

8   October 31st, 2023.  That means that that message would not

9   have been from the broken phone.  He of course got another

10  phone afterwards.  That message, if it's from -- excuse me,

11  October 31st, 2023, would have come from the new phone and it

12  would have been collected from his phone.

13            THE COURT:  Okay.  All right.  So I appreciate that.

14  Actually, I could still make my ruling without it, but that's

15  fine, not a problem.

16       All right.  So we don't dispute that your client David

17  Chen used Telegram to -- and Discord for business purposes,

18  right, to do messaging for lack of a better phrase, right?

19            MR. PLOTNICK:  Yes.  Correct, Your Honor.

20            THE COURT:  All right.  Help me understand,

21  Mr. Plotnick, I have David Chen's declaration, and I don't

22  understand why hasn't your client answered when the Telegram

23  messages, we'll call them messages, were retrieved, preserved,

24  collected?  Why haven't -- don't I have any evidence in front

25  of me about that?

1      MR. PLOTNICK:  Your Honor, as we understand the law

2    on the issue -- we'll, first of all, the motion that was filed

3    was one for a preservation order.  So we were focused on

4    responding to that.  And in our view, dates of collection

5    ultimately were more directed to issues of spoliation of

6    evidence as opposed to the preservation order.  So our response

7    was -- was really attempting to focus on the issue at hand,

8    which is a preservation order necessary and, as we indicated in

9    our papers, everything has been collected.  That was our

10   fundamental position.

11      With respect to Your Honor's questions about bits of

12   collection and the questions that the, again, I'll just call

13   them the defendants for shorthand, were asking, those are --

14   those are -- in our reading of the law, those are questions

15   that are ultimately what we call, for lack of a better term,

16   discovery on discovery, which requires --

17      THE COURT:  No.

18      MR. PLOTNICK:  -- some --

19      THE COURT:  No.  No.  No.  No.  No.  Not -- no.  I'm

20   going to shut you down now.  Because, look, I understand that

21   you chose the character -- look, in order for me to make a

22   determination as to whether or not a preservation order is

23   needed here, I need to look at the evidence in front of me.  I

24   need to figure out whether an order is necessary, whether it's

25   unduly burdensome, right, whether or not --

1          MR. PLOTNICK:  Yes.

2          THE COURT:    -- there is a -- Robert Chen's counsel

3    can meet the burden of showing that there is evidence that's

4    lost -- that's been lost or destroyed that's, in fact,

5    relevant, right?

6          So on this picture, when -- let me just tell you how I

7    approach this.  When I see that, you know, there's a scheduling

8    order that's issued March 31st -- March 26th, 2024, in this

9    case, that's ECF 39, I see that you disclosed to the opposing

10   side that back in May of 2024, right, that there's some issue

11   with Discord messages, let's just call it that.  I see here

12   that there's a subpoena that's served on David Chen in June of

13   2024.  I see in October 2024 Robert Chen's counsel reaches out

14   after [indiscernible] the Jido or Jido server has messages that

15   are deleted.  And so -- and frankly, there is evidence here

16   that back in June of 2022 when prior counsel was involved with

17   these different people, there was a letter sent about --

18   telling people about a duty to preserve.

19         So when I see this, right, and I look at Gambino and I

20   look at the case law, here's how I view it.  I need to

21   understand what's going on with the phone because to the extent

22   that the opposing counsel could meet their burden by showing

23   that there's evidence that was on the phone that was destroyed,

24   that's certainly relevant.  If -- are there Discord messages or

25   Telegram messages or anything that have been destroyed,

1 focusing on Discord, then I need to understand that.  I need to

2 understand whether it's relevant, if there is evidence, whether

3 there's a significant risk that exists that your client is

4 going to do this again.

5   And so this distinction in saying, well, but that's for

6 spoliation and it's really not for preservation.  I mean, we've

7 already preserved it.  I mean, your narrative would basically

8 allow people to destroy messages, frankly, after they've been

9 issued a subpoena, right, and to say oop, well, now we've taken

10 care of it.  I mean, that can't be what the law requires us to

11 do.

12   I think I'm allowed to look at everything and then make

13 sure that Mr. DiCharia has met his burden under Gambino and its

14 progeny, right?  So, you know, because -- and when you look at

15 ECF 121-2, right, he's asking not only to preserve evidence but

16 he also wants to get information about the dates of collection

17 of potentially relevant evidence because we need to understand

18 when all of this happened to be able to help me make my ruling.

19   So you thought this was sort of inference, I guess, but

20 I'm just not understanding -- because that's what I'm not

21 understanding here, folks.

22   MR. PLOTNICK:  Yes.

23   THE COURT:  Because you all have been talking past

24 each other.  Nobody's focusing on what's relevant, which is

25 putting evidence in front of me to help me do my job.  I have

1    enough that I can make my ruling, frankly, if you don't like it

2    that's fine, you're welcome to appeal it, but -- anyway.

3         All right.  So it sounds like the -- I'm done with my

4    little explanation.  Sounds like the answer to my question is

5    there is no evidence in front of me right now other than your

6    general statement, right, which, by the way -- all right, now

7    I'm just going to say it parenthetically, right?  I'm not sure

8    why you did a declaration, right, about -- I'm just not sure

9    why you did it when it comes from your client, because, you

10   know, you're potentially making yourself a witness if we ever

11   had to have a hearing about this, and I want to make sure

12   that's consistent with Maryland's ethical rules.  I'm not even

13   sure why that happened.

14        But in any event, I mean, I have your declaration, right,

15   so I get that and I see your representation that you say

16   everything now has collected and preserved.  But, again, this

17   is about David Chen's actions, it's not about your actions.

18        All right.  Now I'm done with my little diatribe.  So let

19   me just tell you what my specific question is, then,

20   Mr. Plotnick.  Let's just try this again, because I'm just

21   telling you where I'm headed on all of this.

22        It sounds like right now as I sit here today I do not have

23   any evidence from anybody other than you saying you preserved

24   and collected Telegram and Discord and GitHub -- or however you

25   pronounce it -- and all that other stuff.  That's all I have.

1    I don't have any dates, I don't have any times, I don't have

2    any of that in front of me right now.  Right, Mr. Plotnick?

3    That's really the sum and substance of where we are.

4            MR. PLOTNICK:  Yes, that is -- that is correct, Your

5    Honor.  And if I could just clarify one point.

6        What we did disclose to the defendants, again, because

7    what we were focused on was responding to the preservation

8    order which would apply prospectively, obviously if something

9    has been deleted you can't go back and undo something, but the

10   preservation order, therefore, would ensure future preservation

11   of evidence.

12       What we did disclose to the defendants is, you know, at

13   some point we went back in and collected his entire Discord

14   history all the way through the end of I believe it was 2024.

15   So we went in -- regardless of any sort of considerations of

16   are these Discord chats or channels, as they're called, are

17   they -- are they, you know, chats that are likely to contain,

18   you know, any sort of relevant evidence.  But regardless of

19   that, we went in and collected everything.

20       So the point in our opposition was, certainly as of the

21   time of the filing of the preservation order, everything,

22   regardless of relevance whatsoever, had been preserved.  But

23   Your Honor is correct, that only came from -- from counsel

24   because we obviously work with our, you know, discovery vendor

25   to do that.

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:  All right.  So let's talk about this for

2    a second.  I'm looking at ECF 122, Page 6, right.  First full

3    paragraph where you're talking about the eight terabytes of

4    data that you've collected.

5          MR. PLOTNICK:  Yes.

6          THE COURT:  You have -- I don't have an ending.  You

7    have the end of 2024 but what's your start date?  So for what

8    period of time, from what start date to end date do you have

9    information, let's start with for Discord.

10          MR. PLOTNICK:  My colleague Madelyn could correct me

11    if I'm wrong, but it should be the very beginning of February.

12    So February 1st of 2022, which actually is slightly before the

13    formation of the company.

14          THE COURT:  It's two months before, yeah.  Yep, it's

15    two months before.  All right.  So you've got -- all right.

16    You've got that.  What about for Telegram and X, for what

17    period of time?

18          MR. PLOTNICK:  Same.  We have collected -- it begins

19    in February of 2022 -- and, again, Madelyn, please correct me

20    if I'm wrong, but we have collected all of that also through

21    2024 as well.

22          THE COURT:  All right.  So same thing for the

23    hardware wallet.  And I don't know if it's GitHub or GitHub,

24    however you pronounce that.  But same thing for GitHub, same

25    period of time?

Telephonic Discovery Dispute Hearing 4/29/25

1          MR. PLOTNICK:  Yes.  That may actually go past 2024,

2    but certainly through 2024.

3          THE COURT:  Same thing for X.  I'm sorry, same thing

4    for -- let's see here -- server -- and I don't need you to

5    speak until I address you.  I don't need you to speak,

6    Ms. White.  Give me a minute.

7       All right.  Server and other hard drive, what period of

8    time for that Mr. Plotnick?

9          MR. PLOTNICK:  I may need to defer to Madelyn.

10      Madelyn, do you have the -- through what period that was?

11          THE COURT:  Okay.  All right.  Ms. White, I'm going

12    to give you -- Ms. White, I'm going to give you a list.  Period

13    of time for Discord February 2022 through 2024; agree or

14    disagree?

15          MS. WHITE:  I agree with that, Your Honor.

16          THE COURT:  Telegram, same question.  What's the

17    period of time?

18          MS. WHITE:  We have Telegram, we've preserved it

19    through April 25th, 2024, Your Honor, so we do not have that

20    one through the end of 2024.

21          THE COURT:  Okay.  But February 1st --

22          MR. PLOTNICK:  Thank you.

23          THE COURT:  -- is the start date.

24          MS. WHITE:  Yes, Your Honor.

25          THE COURT:  X, same question.  What's your period of

Telephonic Discovery Dispute Hearing 4/29/25

1    time, Ms. White?

2              MS. WHITE:  The same start day, Your Honor, and we

3    have that one through November 1st, 2024.

4              THE COURT:  GitHub, GitHub, however you pronounce it,

5    what's your period of time?

6              MS. WHITE:  That one, Your Honor, I don't have the

7    exact date in front of me, but I know we collected that one

8    more -- we have that one more recently.  We have it at least

9    through the end of 2024.

10             THE COURT:  All right.  I'll need the start date

11   server and hard drive, what period of time are we talking

12   about?

13             MS. WHITE:  The end of 2024, Your Honor.

14             THE COURT:  Start dates?

15             MS. WHITE:  The same, the February 1st, 2022.  We

16   used the same start date for everything.

17             THE COURT:  Okay.  Same start date for everything,

18   all right.  So GitHub or GitHub, whatever, is also February

19   2022?

20             MS. WHITE:  That is my understanding, Your Honor.

21             THE COURT:  Hardware wallet and authentication

22   devices, same question, the same period of time?

23             MS. WHITE:  I believe so, Your Honor.  I don't have

24   that in front of me right now but we -- everything's starting

25   February 1st of 2022.

1           THE COURT:  All right.

2           MS. WHITE:  And we would have done it at some point.

3           THE COURT:  All right.  So Mr. Plotnick, when you say

4    that this has been collected and preserved, so this is just a

5    technology for you.  Is it sitting on a server, because I don't

6    understand GitHub.

7           MR. PLOTNICK:  Yes.

8           THE COURT:  I don't mean Discord.  Is it like sitting

9    on a server?  Is it a drive?  Just tell me what the terminology

10   is.

11          MR. PLOTNICK:  Yes.

12          THE COURT:  Where is it?

13          MR. PLOTNICK:  Yeah, the best way to describe is our

14   vendor sort of forensically collects it, you know, through

15   remote means and once the vendor collects the information the

16   vendor is now storing that information.  I don't know whether

17   it's a Cloud-based service, but the vendor has imaged or

18   collected that information and is now storing it all on its own

19   separate server.

20          THE COURT:  All right.  Mr. DiCharia, so you've read

21   what Mr. Plotnick said.  He doesn't believe that your February

22   1st, 2021 date is the appropriate date.  He said that there was

23   an agreement in the litigation to only do a period of time

24   from -- wait, let me turn to my page -- from 2023 -- I forgot

25   my first date.  I will come back to me in a minute.  I don't

Telephonic Discovery Dispute Hearing 4/29/25

1    have my date.  From in on about April of 2022 through -- I

2    don't have my end date.  I'm sorry.  February 2022 to December

3    2023, there it is.

4        All right.  So he said your February 1st through present

5    date is too broad, all right?  What say you?  Tell me what the

6    significance is of your February 1st, 2021 date.

7            MR. DICHARIA:  Of course, Your Honor.  So one of the

8    claims that opposing counsel and David Chen have made is that

9    David Chen owns a computer code that was eventually transferred

10    to OtterSec in February of 2022, and we think a year prior to

11    that would allow us -- it's a reasonable time period to allow

12    us to test that theory.  Because if he doesn't own the code,

13    Your Honor, then it changes what -- it changes the -- their

14    defense and what they can and can't argue in relation to that

15    defense.  And so we believe that February 2021 is a reasonable

16    amount of time for us to gather communications and documents to

17    test that claim that David owned the code before it was

18    transferred to OtterSec.

19        And I'd also note, Your Honor, that we have never agreed

20    to a global relevant time period.  We did make agreements

21    related to certain discovery requests during the January

22    meet-and-confers, but those agreements were related to specific

23    discovery requests and not the relevant period at large.

24            THE COURT:  But so are you saying that -- let's just

25    go back for a second.  Are you saying, then, that you're going

Telephonic Discovery Dispute Hearing 4/29/25

1    to have, depending on the discovery request, you're going to

2    keep shifting the time period?

3              MR. DICHARIA:  Your Honor, so the discovery request

4    that we made the compromise on were the -- were related to --

5    Your Honor?

6              THE COURT:  Still there.  I'm still here.

7              MR. DICHARIA:  Oh, okay.  My apologies, Your Honor.

8         So I'd first note that Chen versus Chen is different

9    than --

10             THE COURT:  I know.

11             MR. DICHARIA:  -- than Yao v. Chen, right?

12             THE COURT:  I know.

13             MR. DICHARIA:  Sorry, Your Honor.

14        And the discovery has not started in that case.  The 2021

15   time period is specific to Chen v. Chen.

16        On the discovery request that we compromised on, those

17   were related to financial documents in -- from specific

18   discovery requests that sought those financial documents from

19   the LLC defendants and from Robert Chen, and --

20             THE COURT:  Got it.

21             MR. DICHARIA:  -- we had made -- yeah, we made these

22   compromises, Your Honor.  We did not believe that they were

23   relevant because we believed they went to plaintiff's claims

24   regarding successor liability and believed that they only

25   needed documents from the end of 2022 and early 2023.

1          THE COURT:  Got it.

2          MR. DICHARIA:  But we wanted to compromise on that,

3    Your Honor, and so that's why we agreed to provide those

4    documents through the end of 2023.

5          THE COURT:  Understood.  All right.

6          So then, Mr. DiCharia, so looking at -- because I have ECF

7    63-3, which is the Second Amended Complaint in the Chen versus

8    Chen litigation in front of me, so I see a lot of dates and I

9    have to confess it's been a little while since I've read this.

10    I mean, I understand what the nature of the claims are.  I

11    remember that the date of an alleged action was February of

12    2024, right?  So I remember that.  I just can't find the page

13    right now.  I think that was when you said there was a theft

14    that occurred in about February of 2024.

15          But in any event, here is my specific question for you.

16    Yeah, here it is, Paragraph 117.  It starts around 117 where

17    you say there's this theft of funds you allege in February

18    2024.  So is the period of time, then, so I'm clear that you're

19    looking for for the Chen versus Chen litigation, is it February

20    1st, 2021, through what end date in 2024?  Let's start with

21    that first.  What's your end date?

22          MR. DICHARIA:  So we don't have a specific end date

23    yet, Your Honor, because we -- two of the torts, our one tort,

24    conversion, is ongoing, Your Honor, and the unjust enrichment

25    claim under the statute in Wyoming allows damages that -- so it

1    doesn't just allow direct damages but it allows you to get

2    damages from what the person does with the money they gained.

3    And so we believe because of the tort and the unjust enrichment

4    damages that those would expand the discovery at least to 2025,

5    to where we are today, Your Honor.

6            THE COURT:  Got it.  I understand.  All right.  And

7    is it your intention, then, that the period for discovery for,

8    again, the Chen versus Chen matter which is not the lead case,

9    right, but the other case, that would be -- you're going to use

10   that same February 1st, 2021 date; is that right?

11           MR. DICHARIA:  Yes, Your Honor.  So Chen v. Chen it's

12   February 2021 through the present; and then for Yao v. Chen,

13   Your Honor, we would agree that February 2022 is the start date

14   for that case.

15           THE COURT:  Okay.  And why don't we just finish it.

16   So then for Yao versus Chen the end date is still going to be

17   that December 2023 date, too?

18           MR. DICHARIA:  So because one of our defenses, Your

19   Honor, is that David Chen is the -- has used the code and is

20   continuing to use the code, regardless of whether he owns it or

21   not, to devalue OtterSec's worth, we would say that the

22   relevant period there goes -- continues to go on so long as he

23   uses it and continues to devalue OtterSec.

24           THE COURT:  Got it.

25           MR. DICHARIA:  We understand that discovery has to

Telephonic Discovery Dispute Hearing 4/29/25

1    end at some point, Your Honor, but, yeah, that's our position,

2    Your Honor.

3        THE COURT:  Got it.  All right.  That was very

4    helpful, Mr. DiCharia.

5        All right, Mr. Plotnick.  So I have read what you've

6    written in ECF 122 that you don't think the February 1st, 2021,

7    date is a reasonable start date.  You think that that's too

8    broad, right, or in Chen versus Chen.  I understand what you've

9    written.  Anything else you want to put on the record with

10   respect to having heard what Mr. DiCharia has said?  Anything

11   else you want to put on the record about that February 1st

12   date, and then similarly --

13       MR. PLOTNICK:  Yes, Your Honor.

14       THE COURT:  -- anything else you want to put on the

15   record about the 2024 date?

16       MR. PLOTNICK:  Yes, Your Honor, a few things, please.

17   And thank you for the opportunity.

18       In terms of the start date of February 1st of 2021, the --

19   it doesn't seem to be tied to anything that is reasonable in

20   any way.  Oddly, the claim in the Chen versus Chen case is a

21   claim that David Chen effectively -- the argument is that he

22   transferred ownership of this code to OtterSec.

23       Now, OtterSec did not even exist, it wasn't formed, which

24   is why in every instance, including in the subpoena that was

25   sent to David Chen, the start date for the subpoena, the start

Telephonic Discovery Dispute Hearing 4/29/25

1    date for subpoena is February of 2022 because that's when

2    OtterSec was formed.

3        The argument that the defendants have put forward about

4    wanting to sort of test his claims of ownership, I'm struggling

5    to understand that because fundamentally, if the argument is

6    that David Chen transferred ownership of the code to OtterSec

7    in February of 2022, if he didn't own the code to begin with,

8    he could not have transferred ownership of it to OtterSec in

9    February of 2022.  It's not possible.  Their claim is

10   contingent on the fact that he owned the code in the first

11   place.  Otherwise they wouldn't have a claim to begin with.  So

12   I struggle to understand --

13        THE COURT:  But what I think what I heard

14   Mr. DiCharia say -- and correct me if I'm wrong, Mr.

15   DiCharia -- right -- he's saying that he wants to make sure

16   right -- so yeah, I've read the Second Amended Complaint.  He's

17   saying, look, this is David's code and he transferred it to

18   OtterSec.  But what he's saying to me today is that he wants to

19   allow for the possibility and make sure that it was, in fact, a

20   code that David Chen actually had the -- I'm just going to use

21   the word "rights to."  That's not the right phrase and I will

22   say that, Mr. Plotnick.  But that it was his to begin with,

23   that he had the right to do it, to transfer it, and to make

24   sure that nobody else owned it.

25        Am I right about that, Mr. DiCharia?

Telephonic Discovery Dispute Hearing 4/29/25

1          MR. DICHARIA:  Yes, Your Honor.

2          THE COURT:  Yeah.  "Right" is not the right word,

3     Mr. Plotnick, and I apologize for that.  But the ability to --

4     I mean, I think you understand what I'm saying.  That's what he

5     said today.  He wants to make sure that's true because

6     otherwise the Second Amended Complaint could be false, it could

7     not be accurate, right?

8          MR. PLOTNICK:  Yes, I suppose, but as I said, if he

9     did not own the code, they would have no claim.

10          THE COURT:  Yep.

11          MR. PLOTNICK:  So it strikes me as somewhat illogical

12    that they would be disputing our position that David created

13    and owned the code in the first instance and that they would

14    need to test that in support of an argument that he stole it or

15    removed it wrongfully after having transferred ownership of it

16    to them.

17          Separately, if I could add an additional point onto this,

18    and it's one that relates somewhat, Your Honor, to sort of a

19    broader -- broader questions of proportionality and consistency

20    I think is perhaps a good way to put it.  You know, as I

21    mentioned, I mean, in all instances until quite recently, the

22    only dates that we have talked about, the only date that we

23    have ever talked about as a start date is February of 2022.

24    And the defendants have issued about two dozen subpoenas to

25    third parties that use February of '22 as a start date.

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:   Sure.

2          MR. PLOTNICK:   The discovery requests that both sides

3     have used in the case has used February '22, so that's more of

4     a consistency point.

5          In terms of a proportionality point, which we have

6     explained to them, it strikes me as disproportionate to the

7     needs of the case to effectively state that -- or to maintain

8     the position that every single scrap of paper going back to

9     February of 2021 would need to be preserved, searched, et

10    cetera, when the creation of the code, the history of the code

11    is all available in really fundamentally in one location and

12    that's GitHub, which we've collected and we've explained that,

13    that it's available in there, that, you know, preserving every

14    single Discord communication that might exist out there going

15    back in time -- Your Honor understands my point.

16         THE COURT:   Right.  Yes.

17         MR. PLOTNICK:   That there is documentation that has

18    been preserved in GitHub, which we were just talking about,

19    that would be sufficient to show the ownership, the creation,

20    the history, the use of the code.

21         Same thing with the end date, Your Honor.  You know, going

22    past -- while it is true to a certain degree that the

23    meet-and-confer discussions were focused on some disputes over

24    specific requests, the reality is the defendants' initial

25    position where it started off in discovery was that the end

1    date for discovery should actually be earlier than that, that

2    it should be in March of '23.  Their initial position was that

3    the cutoff date for all discovery should be that date of the

4    filing of the complaint which was in March of 2023.

5        So while it is a technically correct statement that there

6    were compromises made as part of the meet-and-confer process,

7    the compromise actually extended the date to December of 2023

8    as part of that to sort of focus on specific documents.

9        Now, similarly, when it comes to what would possibly be

10   relevant, the only thing that I have heard from the defendants

11   is, well, our claim is -- our claim with respect to the code

12   and discovery related to the code and why it would be necessary

13   to go beyond that date, as we just heard, is this claim of,

14   well, we want to know what profits, what money he has earned

15   from the code.

16       On the proportionality point, again, this code, Your

17   Honor, runs on the block chain.  That information is publicly

18   available.  So we've disclosed the wallet address that gets

19   used.  So essentially the code generates revenue, the revenue

20   gets deposited into a wallet.  We've provided that wallet

21   information.  You can see it, it is publicly available

22   information.  So the point is, again, on the proportionality

23   point, to say that we would need to preserve effectively every

24   single piece of paper, single communication that he has

25   indefinitely when there are documents publicly available

1    sufficient to show, more than sufficient to show, it's publicly

2    available the money, the profits that have been earned from the

3    code --

4              THE COURT:  Right, but we're not talking about --

5              MR. PLOTNICK:  -- strikes me as disproportionate to

6    the needs of the case.

7              THE COURT:  Yeah, but we're not talking about

8    indefinitely.  This case is not going to go on forever and

9    ever.  As you can tell, I'm going to keep a very tight rein on

10   you all, so it's not going to go on forever and ever, right?

11        I mean, he certainly has a right to explore each and every

12   piece of paper that does contain potentially relevant

13   information, and it's really not up to you to agree with his

14   theory of relevancy, right?  The case law makes that clear,

15   right?

16        And so, okay, I think I've heard enough from you on the

17   start date.  Anything else you want to say on the end date,

18   Mr. Plotnick, before I turn back to Mr. DiCharia?

19             MR. PLOTNICK:  Yeah.  The end date, again, Your

20   Honor, it raises proportionality issues.

21             THE COURT:  Okay.

22             MR. PLOTNICK:  It's really the same point, and that

23   is this also came up during the meet-and-confer where we were

24   seeking information from the defendants relating to profits

25   that were being earned, generated by the new company.  And we

1   agree, that's to Your Honor's point that discovery cannot go on

2   indefinitely, so let's focus on what the documents are that

3   would be sufficient to show.  You don't -- if the focus is on

4   how much money David earned, which is all I've ever heard, is

5   relevant past -- you know, past the point of December 2023,

6   you know, there are documents that are publicly available as

7   I've said, and we've also, for example, agreed to provide them

8   with his tax returns, right, also on top of that that will show

9   them that information.  So we've agreed to give them that

10  information.  And the issue that we have is -- and this is an

11  important point, Your Honor, that I want to make -- that David

12  is a regular user of Discord.  He uses Discord --

13          THE COURT:  I read that.  I saw that in his

14  declaration.  I saw that in his declaration.  I read it.

15          MR. PLOTNICK:  Yeah.

16          THE COURT:  I understand.  I got it.

17          MR. PLOTNICK:  For matters wholly unrelated, yeah.

18  And the concern is, quite frankly, at the time which is now

19  sort of borne out, is exactly what happened and that is, right,

20  the -- we have the documents that are relevant to the case that

21  have been preserved that would be more than sufficient to show,

22  you know, the profits that he's earned, whatever the issue may

23  be and, you know, David Chen, who's a college student, right,

24  so I know, for example, he has -- he uses Discord for his

25  schoolwork at the University of Maryland.

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:  Right, I read it.  I saw that.

2          MR. PLOTNICK:  Yeah.  The concern is for someone, you

3   know, a kid in school who's using Discord for really wholly

4   unrelated purposes that -- and this is what just happened and

5   we had mentioned it in our letter to Your Honor is there are

6   these serial subpoenas that are being sent to Discord and there

7   may be an edit or a simple deletion in -- in some sort of

8   Discord chat related to his college coursework, and the

9   defendants send a subpoena to Discord, they --

10         THE COURT:  Right.  I know.

11         MR. DICHARIA:  -- receive a response to the subpoena

12   that says, oh, he's deleted messages, he keeps deleting things.

13         THE COURT:  I understand.  I understand.  I

14   understand.

15         MR. PLOTNICK:  And that's the concern, Your Honor.

16         THE COURT:  I understand.  I understand.

17      All right.  Mr. DiCharia, let's -- because -- all right.

18   So Mr. DiCharia, so you've just heard what Mr. Plotnick has

19   said.  We know that from at least February 2023 through in or

20   about February 2024, November depending on what we're talking

21   about when you've preserved things, so let's talk about the end

22   date.  What's the need for the end date to continue to be

23   present.  We're already at April 28th, 2025.  Why are we still

24   talking about this in 2025?  Why isn't either February 2024 or

25   November 2024, why isn't that a sufficient end date?

Telephonic Discovery Dispute Hearing 4/29/25

1    MR. DICHARIA:  So Your Honor, in relation to Chen v.

2    Chen, discovery just started I believe last week or two weeks

3    ago, and so we would say that that is why 2024 is not a

4    sufficient end date because the claims we're pursuing are

5    ongoing, and discovery had not even begun in 2024.

6    THE COURT:  Right, but when you say the claims you

7    pursue are ongoing, tell me what claims.  It's about damages,

8    right?  It's the damages information that you're seeking that

9    gets into 2024, right?

10   MR. DICHARIA:  Partially, Your Honor, yes.  So for

11   the unlimited damage -- or unjust -- the unjust enrichment

12   claims.

13   THE COURT:  Yes.

14   MR. DICHARIA:  Yes, Your Honor.  That is related to

15   damages but the conversion claim that we would need to have

16   substantive information to prove our claim that the conversion

17   is ongoing in order -- to present day in order to acquire

18   damages for the conversion for the period in which it was

19   possessed and wrongfully -- the codes were possessed and

20   wrongfully used.

21   THE COURT:  Start date, anything else you want to say

22   on the start date of 2021?  Mr. Plotnick is saying some of that

23   information would be available on GitHub or GitHub.  Anything

24   else you want to say on the start date of February 2021?

25   MR. DICHARIA:  Yes, Your Honor.  So as it relates to

1    GitHub, we -- first, we're not -- as Your Honor referenced,

2    we're not limited to the documents that opposing counsel wants

3    us to look at.  We think we should be able to test our theories

4    of other documents.  We don't know where David is running the

5    code.  There are multiple codes.  We don't know the

6    extensiveness of his use.

7          But other than that, Your Honor, I would say that the --

8    the use of February 2022 as Mr. Plotnick referred to in the

9    case is in relation to Yao v. Chen, and we don't disagree with

10   Mr. Plotnick that February 2022 is the appropriate end date

11   for -- a start date -- my apologies -- for Yao v. Chen, but it

12   is not for Chen v. Chen.  And our claim does not require David

13   to have owned the code.  We merely stated in the complaint that

14   he transferred the code.  And ownership in GitHub terms is not

15   legal ownership, Your Honor.  It's just whoever has access to

16   the GitHub page and can use the code.

17               THE COURT:  Gotcha.

18               MR. DICHARIA:  It doesn't mean copyright law or other

19   laws that the person actually use it.

20               THE COURT:  Gotcha.

21               MR. DICHARIA:  And so our contention is that he

22   could -- it's very possible that he doesn't actually own the

23   code, then he does work or people at OtterSec do work on the

24   code, and then OttSec owns that code.  So that's our position

25   on February 2021, Your Honor.

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:  Understood.  Understood.  Okay.  All

2    right.  So Mr. DiCharia, so Signal, information about Signal

3    and X, which I guess is -- used to be Twitter and Facebook and

4    LinkedIn, right, ECF 121-2, you're asking for -- we've talked

5    of course about Telegram, we've talked about Discord.  We

6    haven't talked about those other platforms, right, and I don't

7    see any exhibits or any information in front of me about

8    whether or not those particular platforms are even used by

9    David Chen.  I don't have any information.

10         So tell me what evidence I should look at as to why you

11   think that I should allow you to have the preservation order

12   extend to Signal and X and Facebook and LinkedIn, right?  I

13   don't have anything.  Maybe I missed it, but --

14          MR. DiCHARIA:  Yes.  Yes, Your Honor.  So we know

15   that he uses X and LinkedIn, and those may not be in exhibits

16   to Your Honor so we apologize.  I think primarily when we came

17   across the fact that there were 17,000 deletions made during

18   discovery, we were concerned that there are other areas where

19   there are deletions being made.  For example, Your Honor,

20   Telegram is a company outside the United States.

21          THE COURT:  I saw that.

22          MR. DiCHARIA:  And they traditionally don't -- yes.

23   Yes, Your Honor.  They traditionally, you know, don't take

24   subpoenas.  So there are potentially other sources where we

25   just don't have the information, and because of the magnitude

Telephonic Discovery Dispute Hearing 4/29/25

1   of the deletions and the fact that we haven't gotten assurances

2   that he has stopped deleting data, we wanted the order to be

3   broad enough to protect all areas where there could be

4   potentially relevant data but where we don't know if he's

5   conducting similar deletions.

6          THE COURT:  Right, but don't you think that all of

7   this would have resolved itself if you had just proceeded with

8   the deposition on a limited basis?

9       So what do I mean by that?  You would have been able to

10  ask him about the calls and Telegram and Discord and Signal and

11  X and Facebook and LinkedIn and GitHub.  You could have asked

12  him, right?  You could have asked him about that if you had

13  done the deposition, but you didn't, right?

14         MR. DICHARIA:  So, Your Honor, if I may, the edited

15  deposition -- or opposing counsel's position on the deposition

16  was that the deposition needed to be limited to the phone of

17  Jito Discord messages only.  They defined Discord messages as

18  those being related to Jito -- and at this time, Your Honor, we

19  didn't know about the 17,000 deleted Discord messages -- and to

20  the preservation of the ESI relevant to this case.

21      We wanted to know by about David's preservation and

22  collection and deletion of ESI and not just what opposing

23  counsel, you know, unilaterally believes was relevant but what

24  was potentially relevant because they're narrowly interpreting

25  what relevance is.

Telephonic Discovery Dispute Hearing 4/29/25

1          We also -- and so those are the reasons why we thought

2   their stipulation was problematic in their position and why we

3   didn't want that -- like why we thought that deposition

4   wouldn't be helpful to us.  At the time we thought we would be

5   able to depose David in a month or two away from that.  We also

6   had no indication that he had deleted as many Discord messages

7   as he did.  We only learned that in January, at the end of

8   January, Your Honor, and by that time discovery had been pushed

9   out to where depositions wouldn't have been appropriate until

10  now months down the road.

11          THE COURT:  Look at ECF 129, Page 17, Paragraph 2,

12  Subpart C.  121-9, Page 17, Paragraph 2(c), which I think you

13  told me is what came from David Chen's attorneys.  I just to

14  make sure I didn't mishear you.

15          MR. DICHARIA:  Yes.  Yes, Your Honor.  Page 16

16  through --

17          THE COURT:  17.  121-9 --

18          MR. DICHARIA:  I got it, Your Honor.

19          THE COURT:  -- Page 17, Paragraph 2, then Item C.  If

20  I heard you correctly, this version came from the David Chen's

21  counsel.  Did I mishear you?

22          MR. DICHARIA:  No, Your Honor.  You're correct, this

23  came from David Chen's counsel.

24          THE COURT:  So look at Item 2(c).  It says David

25  Chen's preservation of ESI relevant to this action.  Why isn't

Telephonic Discovery Dispute Hearing 4/29/25

1    that broad enough?

2            MR. DICHARIA:  Your Honor, we were inferring the

3    use --

4            THE COURT:  It's not limited just to Moto.  It's not

5    limited just to Moto.  That's what (a) says.  (b) says Discord

6    and it says ESI relevant to this action which is broad enough

7    to include all the different platforms and other things, right,

8    ESI under Federal Rule of Civil Procedure 37, right?  I mean,

9    why isn't this broad enough?

10           MR. DICHARIA:  Well, Your Honor, because it's not --

11   it wasn't David's preservation of ESI that was potentially

12   relevant to this action which is his duty under a duty of

13   preservation.

14        As you can see, Your Honor, opposing counsel, plaintiff is

15   attempting to limit -- David's counsel is attempting to limit

16   the period of time that's relevant in this action, so our

17   concern was that if --

18           THE COURT:  But --

19           MR. DICHARIA:  Yes, Your Honor.

20           THE COURT:  Okay.  Bear with me.  Okay.  We'll get to

21   the period of time in a second, right?  But it says the

22   defendants' request is withdrawn.  Defendants may take the

23   deposition of Chen on a date to be agreed upon for 1.5 hours

24   about the phone, Discord, and his preservation of the ESI

25   relevant to this action, right?  We'll talk about the date in a

1      minute but the topic of ESI, right, it's clearly there, right?

2          MR. DICHARIA:  Yes, Your Honor.  I believe our

3      hang-up was on the word "relevance" and how opposing counsel

4      would interpret it.  Our concern was that we would go to a

5      deposition and they would object and say, well, that's not

6      relevant because they have their own opinion of what's relevant

7      rather than what was potentially relevant to the case.

8          THE COURT:  Right, but if that happens you always

9      just call me right in the middle, right?  I mean, that's --

10      anyway, you didn't go through the deposition.  You all got --

11      that's what I meant by insufficient meet-and-confer.  You all

12      were so busy doing e-mails and talking past each other, right,

13      that we've spent an extraordinary amount of time, the whole

14      stable of attorneys on both sides, and my time because I've

15      read every page, as you can tell, and every paragraph and every

16      sentence, right, and we really -- anyway, it's just not an

17      efficient use of time.  All right.  I think I understand what

18      you have to say about that.

19          All right.  So I got your thing on the dates.  Let me just

20      check a couple more things because I need to make my ruling,

21      everybody, and I'm ready to do that because I'd already written

22      out what I thought you all were going to do.

23          All right.  So let's see here.  Let's switch and talk

24      about -- I'm just going to call them, everyone, the 17,000

25      deleted Discord messages.  I know that there are different

1   subcategories, right, and I get that.  Right?  17,222 messages.

2   There are different subcategories and different dates when

3   certain subcategories like 9817 were deleted between 10/10/2024

4   and 10/27 and 628 were deleted on 10 -- because I know there's

5   different categories.  I'm just going to call them the 17,000,

6   though, all right, just so that we can just know that I

7   understand the different dates in 2024 when these Discord

8   messages were deleted.  All right.  Okay?  So that's just by

9   way of background.

10       All right.  Mr. Plotnick, you are not disputing, are you,

11  that Mr. Chen destroyed the 17,000 -- the 17,000, excuse me,

12  Discord messages have been deleted and the dates and times

13  identified by Mr. DiCharia, right?  You're not disputing that

14  that happened, right?  You're still on mute, Mr. Plotnick.

15            MR. PLOTNICK:  I'm sorry, Your Honor.  I'm rejoining.

16  I don't know what happened.  All of a sudden everybody went

17  mute on me about two minutes ago, so I hung you will and dialed

18  back in.

19            THE COURT:  No worries.  All right.  So I don't know

20  when in my little rant you joined in.  But all I was saying is

21  I'm just going to talk about the 17,000 Discord messages,

22  right?  I mean, that's the Number 17,000 and I know there is.

23            MR. PLOTNICK:  Yes.

24            THE COURT:  Dates and times that are alleged 6644

25  these messages were deleted between July 28th and July 30th,

Telephonic Discovery Dispute Hearing 4/29/25

1    9817 on 10/10/2024 and 10/20 -- all right.  So but I'm going to

2    call them the 17,000, okay?  You with me so far?

3            MR. PLOTNICK:  Yes, Your Honor.  Yes, I am.

4            THE COURT:  So you do not dispute that David Chen

5    deleted the 17,000 messages on the different dates and times

6    identified by Mr. DiCharia in ECF 121; you don't dispute

7    they've been deleted, correct?

8            MR. PLOTNICK:  No, I do not.  I mean, the only --

9            THE COURT:  Okay.

10           MR. PLOTNICK:  -- the only -- yes, they've been

11   deleted.

12           THE COURT:  All right.

13           MR. PLOTNICK:  Yes.

14           THE COURT:  You do not dispute that they were deleted

15   after there was a scheduling order entered in this case, right?

16   You don't dispute that fact.

17           MR. PLOTNICK:  That is correct, Your Honor.

18           THE COURT:  You don't dispute they were deleted after

19   the subpoena was issued in or -- in or about June of 2024,

20   right?

21           MR. PLOTNICK:  I don't have all of the dates in front

22   of me.  Some may have been deleted before Your Honor but

23   certainly, yes, some were deleted after.  That is absolutely

24   correct.

25           THE COURT:  Right.  Mr. DiCharia, because your

Telephonic Discovery Dispute Hearing 4/29/25

1    subpoena was June 2024, right, Mr. DiCharia?

2            MR. DICHARIA:  Yes, Your Honor.

3            THE COURT:  And I think you gave me dates in July

4    2024, October 2024 -- October 2024, October 11th, I'm looking,

5    those are the dates of the deletions, right, July or October

6    various dates, right, Mr. DiCharia?

7            MR. DICHARIA:  Yes, Your Honor.  There were deletions

8    in about almost every month in 2024.  I don't know if we

9    identified every single one because there were so many in the

10   drafts.

11           THE COURT:  Fair enough point, because you do have

12   the graph and the pages.  You did do the graph.  I was focusing

13   on the 17 in the bulk of it, but you're right you did do a

14   graph or little chart thingy ECF 121-1, Pages 18 through 20 --

15   18 and 19.  Well, actually, you only identified dates in July

16   and October, Mr. DiCharia.  Look at 121-1, Pages 18 and 19.

17   That's why -- you only gave me dates in July and October.

18           MR. DICHARIA:  Yes, Your Honor.  I believe one of the

19   exhibits provided all of them, and I think it was just trying

20   to -- it was just so -- it was too many for us to identify

21   every single one given the page limit I believe, Your Honor,

22   but they are all in one exhibit.

23           THE COURT:  Okay.  Well, all right.  So what's the

24   other month I want to make my -- and I don't think --

25           [Indiscernible crosstalk.]

1    THE COURT:  Anyway, I think it's July and October.

2    But when's the other month, because I'm looking at, you know,

3    121-1, Page 16, you say the 17,000 -- and I know it's 17,222

4    whatever -- but you give me all the dates and you say it's all

5    in the months that I just identified.  Maybe I misunderstood.

6    That's what it says, but --

7    MR. DICHARIA:  Yes, it does say that, Your Honor.  I

8    believe the point we were trying to make was that a lot of

9    deletions were made after significant events in the litigation.

10    THE COURT:  Yeah, I got it.  All right.  All right.

11    So that's fine.  I'm just going to use July and October for

12    now.  Whatever.  It doesn't matter.

13    All right.  So Mr. Plotnick, back to my original question,

14    right?  So you don't dispute that he deleted Discord messages

15    after the scheduling order's in place.  You now know that

16    there's deletions that happened after the subpoena was issued.

17    You don't dispute that that happened, right?  I have more

18    questions for you, but am I right so far, you don't dispute

19    that, right?

20    MR. PLOTNICK:  That is correct, Your Honor.

21    THE COURT:  All right.  But then you believe of these

22    17,000 -- I'm just going to keep calling them that -- you don't

23    think that these messages are relevant to this litigation,

24    right?

25    MR. PLOTNICK:  That is correct, Your Honor, and we

1   had recently -- well, I guess it wasn't all that recent, about
2   a month ago or so, we had completed our sort of review and
3   analysis of what was deleted and provided -- it would be an
4   updated version of what Your Honor has, you know, providing the
5   defendants with -- I guess the best way to describe it is an
6   overview of what it was, time frames that were covered where,
7   you know, of the 17,000 or so, almost 15,000 of them all
8   predate -- some of them go back to 2017, you know, when he was
9   in I think eighth grade or so, well before OtterSec.  But the
10  bulk of them all predate that February of 2021 date range.
11  There were some that postdate December of 2023.
12          We've -- for the messages that we would call sort of
13  within the date range that we've always been talking about, we
14  also provided them with a description, you know, generally sort
15  of what the subject matter of those discussions were.  So the
16  bulk of -- most of them were or at least a big chunk of them
17  were dealing with this comic, I don't know if it's a comic book
18  or -- you know, it's a Japanese Anime sort of -- Manga novel
19  series there.
20          THE COURT:  Manga, yeah.
21          MR. DICHARIA:  Yeah, Manga.
22          THE COURT:  Got it.
23          MR. PLOTNICK:  They're from his high school friend
24  group.
25          THE COURT:  Sure.  Sure.

1          MR. PLOTNICK:  Things like that.  Other messages

2    were -- which, again, we've agreed with our messages that were

3    deleted from this Jito server.

4          THE COURT:  Sure.

5          MR. PLOTNICK:  As well as we understand it, the

6    defendants have all of those messages as well.  So we've

7    provided them a more complete response, I suppose, is the best

8    way to put it --

9          THE COURT:  What date was that?

10         MR. PLOTNICK:  -- once they finish going through

11   that.

12        [Indiscernible crosstalk.]

13         MR. PLOTNICK:  April -- April 1st, 2025.

14     I would also add, Your Honor, what we did, too, was when

15   there were -- and I think we mentioned this in one of our

16   letters to Your Honor that the information that was provided to

17   us -- well, by the defendants but it was the spreadsheet that

18   was provided by Discord had a number of errors in the

19   formatting --

20         THE COURT:  Yes, I saw that.

21         MR. PLOTNICK:  -- of the -- yeah, we went back, we

22   e-mailed Discord, we said, hey, can you correct this?  It's

23   doing this weird conversion, we can't figure out what these

24   messages were.

25         THE COURT:  Sure.

Telephonic Discovery Dispute Hearing 4/29/25

1    MR. PLOTNICK:  Discord provided that updated version

2    with the message IDs and whatnot.  We've provided that to the

3    defendants as well [indiscernible].  So a lot of that

4    information, the dates that the messages were sent, that's

5    independently verifiable that, you know, the defendants can do

6    much of the same way that we did.  There's a way you can punch

7    in, say, a message ID, once you have the proper message ID, it

8    tells you when the messages were sent.  So it would tell them

9    it was sent in 2017, 2018, whenever it was sent.

10    THE COURT:  Sure.

11    MR. PLOTNICK:  So we also provided that and we

12    provided that to the defendants with our letter on April 1st as

13    well.

14    THE COURT:  Mr. DiCharia, have you and your team had

15    an opportunity to sufficiently review the April 1st submission,

16    or do you need some more time to do that?  And I need you to

17    answer me honestly, please.

18    MR. DICHARIA:  Yes, Your Honor.  We had sufficient

19    time to review the one-and-a-half-page letter about the more

20    than 17,000 deletions.  We had a meet-and-confer with opposing

21    counsel about the letter on April 10th.

22    THE COURT:  What date?

23    MR. DICHARIA:  April 10th.

24    THE COURT:  Okay.

25    MR. DICHARIA:  Okay, you caught that.  So yes, Your

1    Honor, we had the meet-and-confer.  And if I may, I can

2    identify the issues we have with it and the issues we discussed

3    on the meet-and-confer, if Your Honor would allow it.

4              THE COURT:  All right.  So here is -- all right,

5    everyone.  So I think I've had enough for today, and so what

6    does that mean, all right?  There is now, if it wasn't clear

7    when I began this hearing, you know, an hour and 41 minutes

8    ago, you can tell that I take very seriously the

9    meet-and-confer process.  So we're going to hit the reset

10   button, everybody.  So what does what mean?

11        Number one, everybody now has clarity as to what I expect

12   from meet-and-confer.  No more e-mails.  No more e-mails.  No

13   more e-mails back and forth.  You can certainly e-mail each

14   other but you have to talk over the phone, you've got to meet

15   in person and do a video and you've got to have a court

16   reporter present.  Because what we've been doing for an hour

17   and 40 minutes illustrates that.  You all talk past each other.

18   You hit a logjam on the deposition of people.  You were doing

19   submissions in April, you're doing things after you've done

20   your filings.  This is an inefficient use of anybody's time.

21   It's just not, least of all mine.  It's not.

22        So number one is let me be clear before you bring any

23   discovery disputes even related to this, and I'm going to be

24   down in a few minutes, you better have met and conferred and

25   you need to send me a transcript.

1       Next, here's what I need to understand from you,

2    Mr. DiCharia.  What are you -- looking at ECF Number 121-2,

3    what are you -- we're going to go paragraph by paragraph.  So

4    get it in front of you because I need to know what exactly it

5    is that you're looking for as we sit here now because the

6    landscape has shifted in the past six weeks since you filed

7    this, right?  And it's like a moving target.  What's still

8    live, what's not, what have you talked about, what's not.

9             MR. DICHARIA:  Yes, Your Honor, I have it up in front

10   of me.

11            THE COURT:  Number one, ECF 121-2, are you still

12   looking for that?  Are there any alterations to Paragraph 1?

13            MR. DICHARIA:  We're still looking for that, Your

14   Honor.

15            THE COURT:  Mr. Plotnick, is there any reason why I

16   shouldn't, irrespective of whether they've met their burden

17   under Gambino, right, why shouldn't I -- why couldn't I just as

18   a matter of course, right, as part of my [audio gap] order

19   everybody to preserve all evidence, do that?

20            MR. PLOTNICK:  I think, Your Honor -- well, obviously

21   Your Honor's a judge and we will certainly respect whatever

22   Your Honor directs.  But I come back to the point of really

23   proportionality and what is really necessary with respect to

24   some of these claims.

25            THE COURT:  Yeah, but you're not going to persist --

1    let me just cut you off, Mr. Plotnick.  Right?  You're not

2    going to persuade me that your theory is the right one.  Your

3    theory of discovery is that Robert Chen and OtterSec are only

4    entitled to the evidence that you think they should look at.

5    That's what David Chen's declaration to me is all about.  Well,

6    if you want the evidence look at GitHub or if you want the

7    evidence -- that's not how it works, sir, and you know that.

8        So you've not persuaded me that what they're looking for

9    isn't necessary.  They have a right, right, under Rule 26(b)(1)

10    to look at there's relevance, not privileged, and proportionate

11    to the needs of the case, right?

12        So relevance is broadly defined.  They can have a

13    different theory than you have.  O'Malley versus Trader Joe's

14    tells us, right, I've cited to that before.  They can have a

15    different theory of relevance.  You don't have to agree to it.

16    It doesn't matter.  And it's a pretty low threshold and bar on

17    relevance.

18        "Necessary" does not mean, sir, in the context of Gambino

19    and I read all the cases that you all cited to, it doesn't

20    mean, right, that they have to buy your theory of what's truly

21    necessary.  It doesn't mean that.  And under burdensome, I got

22    to tell you your declaration doesn't meet the burden, right?

23    If you look at [indiscernible] and others it's not particular

24    enough.  His declaration, Paragraph 6 or whatever it is, I'll

25    pull it up in front of me, not particular enough.  It's generic

1    burdensome.  It's not.  So it's just not.  It's not.

2         Now, there may be some arguments with respect to 2025,

3    we're going to talk about that in a second, but again, I mean,

4    it's just so you need to step back and be reasonable here.  All

5    of this is starting because you're all just talking past each

6    other and you're not working together to try to get through

7    discovery, right?

8         Item Number 1, anything else you want to put on the record

9    about 121-2, Paragraph 1, Mr. Plotnick?  I understand you think

10   it's not proportional.  I understand you think it's not

11   necessary.  I understand you think it's burdensome, too

12   generic.  There's plenty of case law to support me on that.

13   Anything else you want to put on the record about 121-2 item

14   Number 1, Mr. Plotnick?  Anything else?

15             MR. PLOTNICK:  I just have difficulty understanding

16   based on what has been articulated which are things like

17   ownership of the code, owner -- excuse me -- profits earned

18   from the code, why -- for example, I'm looking at I think Your

19   Honor was referring to 121.  Which paragraph was Your Honor

20   referring to?  1(b) in the -- because I'm reading that.  That's

21   referring to all other electronic records including but not

22   limited to e-mails, chat records.

23             THE COURT:  I was literally in Paragraph 1.  I

24   haven't gotten to 1(a) or 1(b) yet.  I was literally talking

25   about --

1          MR. PLOTNICK:  Yeah, it's -- it's yeah.  I mean, I

2    would say, Your Honor, fundamentally my concern -- I appreciate

3    the Court's point.  I appreciate the Court's, you know,

4    concerns here, but even relevance is always judged against the

5    yardstick of proportionality.

6          THE COURT:  I understand what 26(b)(2)(C) says.  I

7    understand what 26(b)(2)(C) says.

8          MR. PLOTNICK:  Yes.

9          THE COURT:  I got it.

10          MR. PLOTNICK:  Yeah.  And so, you know, when I look

11    at some of these, some of them are not even sources of relevant

12    information that has ever been discussed before.

13          THE COURT:  Okay.  All right.

14          MR. PLOTNICK:  I have no --

15          THE COURT:  All right.

16          MR. PLOTNICK:  I have no underst -- yeah, I'm sorry,

17    Your Honor.

18          THE COURT:  No, no, no.  That's okay.  No, no, no.

19    Mr. Plotnick, I'm talking over you because I think I just lost

20    my patience, right, so I probably need a timeout.  So here's

21    what the deal is, right?

22          So look, Mr. DiCharia, let me say this, right?  I

23    understand pending now in front of me is ECF Number 121 and the

24    attachments thereto where there's a motion for entry of an

25    order directing the defendant David Chen to preserve evidence

Telephonic Discovery Dispute Hearing 4/29/25

1    and to provide dates of collection of potentially relevant

2    evidence.

3        I understand that this motion has been filed in the

4    consolidated matter and not under the lead case, but it's been

5    filed in the member case where Robert Chen and OtterSec are

6    suing David Chen via Second Amended Complaint alleging that

7    David Chen has inter alia stolen computer codes that powered

8    OtterSec's crypto currency trading business, deleted company

9    records, sabotaged OtterSec and stole company passwords inter

10   alia.

11       In the motion, plaintiffs Robert Chen and OtterSec assert

12   that David Chen has, first, destroyed thousands of Discord

13   messages; second, rendered his cell phone inaccessible thereby

14   allowing text messages to be deleted, and because of these

15   actions, according to you, your clients, Mr. DiCharia, this

16   Court must issue an order requiring David Chen to comply with

17   his duty to preserve all documents that may be relevant to this

18   action.  You could further contend that David Chen has not

19   complied with his duty so far and that Court intervention is

20   required to put a stop to his destruction of evidence.

21       In support of your motion, Mr. DiCharia, you are arguing

22   that David Chen's counsel hasn't provided explanation of the

23   deletions stating when the Discord messages were exported,

24   stating whether deleted messages were preserved and had to be

25   provided assurances that, quote, David has stopped deleting

1    Discord messages.

2         Relatedly, I understand that David Chen also uses a

3    platform called Telegram, yet according to you, Mr. DiCharia,

4    counsel for David Chen has also reportedly failed to provide

5    assurance that David did not, quote, similarly delete, for

6    example, Telegram messages.

7         According to you, Mr. DiCharia, there are unanswered

8    questions about whether defendant David Chen's phone was

9    bricked or not, which had rendered the data inaccessible, and

10   your -- obviously have quarrel with the claims by David Chen's

11   counsel that he's provided perhaps contradictory explanations

12   about what happened to the phone.  And you suggest, Mr.

13   DiCharia, that counsel for David Chen delayed notifying you

14   until May about the phone which was suspicious, and it was

15   after that disclosure that you discovered the 17,000 deleted

16   Discord messages.

17        And finally, I guess because David has refused to provide

18   a declaration stating that had stopped destroying documents or

19   any -- because he's refused to provide any assurances in this

20   respect, quote, there's a significant risk that additional

21   relevant evidence will be destroyed absent a court order,

22   right?  That's basically what ECF 121 is about.

23        Defendant David Chen counters with the following argument:

24        First, the plaintiff's counsel failed to comply with Local

25   Rule 104.7 because there was no phone or video or in-person

1    conference that occurred, all right, and basically the argument

2    continues on this procedural basis alone the motion should be

3    denied.

4        Second, plaintiff has failed to meet their burden of

5    demonstrating a significant risk that evidence will be

6    destroyed without the Court intervention because, according to

7    David Chen's counsel, they haven't pointed to prior evidence

8    that was lost or destroyed, and they haven't really identified

9    potentially relevant evidence.

10       According to David Chen's counsel, all they've shown is

11   that David has deleted Discord messages but they haven't really

12   shown this is actually evidence, but they want me to read

13   evidence in a narrow fashion.  Okay.  And, of course, they

14   argue that Robert Chen and OtterSec have not shown that

15   evidence was destroyed on David's phone.

16       Relatedly, as I've said, they haven't established the

17   relevance of the 17,000 messages, and there's a lot of back and

18   forth about, well, 14,711 were sent outside the discovery

19   period and that some were sent from servers or channels that

20   are plainly irrelevant and some messages were deleted -- were

21   sent, deleted within 24 hours, right, and then Robert --

22   there's also this argument that because Robert Chen already has

23   many of these deleted messages from the Jito server, then why

24   are they asking David for them.

25       Next, there's this argument that a preservation order is

1    unnecessary because, quote, all searches of potentially

2    relevant evidence had been collected for what you identify as

3    the relevant period being February 2022 through December 2023,

4    but then in some instances, as Ms. White has chronicled through

5    different parts of 2024, making any future deletions impossible

6    and future collections preservation order is unnecessary.

7          Next, the preservation order would not undo anything that

8    has already been deleted, and then if I find that a

9    preservation order's appropriate, then somehow the order is

10   overbroad with respect to the start date and the end date, and

11   then it's generally sort of disproportionate.  There's this

12   generic 26(b)(2)(C) argument without really flushing out how

13   it's disproportionate.

14         Then it's overbroad, as I said, because OtterSec was

15   dissolved in July 2022 according to David Chen's counsel and,

16   you know, it shouldn't be allowed -- required to preserve every

17   piece of paper, right?

18         All right.  Look, I'm aware of what the law is on this

19   issue.  I have read Gambino versus Hershberger, 2017 Westlaw

20   2493443.  That is an opinion by Judge Chuang from June 8th,

21   2017.  I have also read -- I'm just going to spell it because

22   I'm mispronouncing it -- C-o-g-n-a-t-e, Cognate Bioservices

23   Inc. versus Smith decision, 2014 Westlaw 988857.  That's by

24   Judge Quarles.  It's March 12th, 2024.  I think I also looked

25   at United Medical Supply versus U.S.  that's from The Court of

1    Federal Claims in September 2006, 73 Federal Claim 35.  Pueblo

2    of Laguna versus U.S., again, that's the Court of Federal

3    Claims in 2004, 60 Fed.Cl. 133.  And there was another one that

4    I looked at that I can't put my -- oh, Eox Technology versus

5    Galasso, G-a-l-a-s-s-o, 2023 Westlaw 3478445.  That is out of

6    the Southern District of Florida from May of 2023.

7        All right.  So where are we?  First with respect to the

8    phone.  Again, as I've already said, I find on this record that

9    you haven't followed Local Rule 104.7 in terms of meeting via

10   phone, video, in person, but also more saliently, after these

11   filings had been initiated, I'm hearing about various things in

12   April or later in March where you all continue to meet and

13   confer.  But again, you seem to be talking past each other,

14   right?  So you all haven't really done enough to resolve this

15   issue on a procedural basis.  All right?

16       But even if there's some concept under which I'm wrong and

17   you had sufficiently met and conferred on this issue, the issue

18   being the phone, there's no evidence before me that David Chen

19   rendered this phone inaccessible.  There's no evidence of the

20   destroyed evidence in front of me.  Why?  Because the phone is

21   sitting at Teel Tech because your discussions broke down.  And

22   there's no evidence at all -- that's the key phrase -- other

23   than David Chen's declaration that he didn't use the phone but

24   for business purposes.

25       You, Mr. DiCharia, make some reference to some particular

Case 8:23-cv-00889-TDC    Document 138    Filed 05/06/25    Page 70 of 125

70

Telephonic Discovery Dispute Hearing 4/29/25

1    exhibit that nobody bothered to include in my joint appendix --

2    or I'm sorry, your index of exhibits in ECF 121.  It wasn't

3    included in 122, right?  So I really have nothing in front of

4    me that I can look at and to evaluate to see whether or not

5    there was some sort of text message from Li Fen Yao with David

6    in 2023 or not [audio gap] even back February on 11th but

7    didn't even bother to include it in your motion, right?

8    Mr. Plotnick says, look, it's from the new phone so it's not

9    even relevant.

10         So my point is you haven't met your burden on

11   establishing, Mr. DiCharia, that there has been -- there's

12   evidence in front of me that David Chen destroyed the phone or

13   lost or destroyed evidence on his phone or taken steps to

14   render the phone inaccessible.  There's no evidence in front of

15   me.  There's a representation from counsel about what happened,

16   right, which I understand is suspicious.  I get that,

17   Mr. DiCharia.  From your perspective it's suspicious because

18   it's about the timing of the Discord messages.  I get you don't

19   trust him, but you didn't put any evidence in front of me.  And

20   again, it's because you didn't get to the point where you just

21   should have taken the deposition and put evidence in front of

22   me about what David Chen did on the phone.

23         So I'm not going to find that you have met your burden

24   because the burden is on you clearly, Mr. DiCharia, to show

25   that the opposing party has lost or destroyed evidence with

Telephonic Discovery Dispute Hearing 4/29/25

1    respect to the phone.  You haven't met your burden.  You

2    haven't put any evidence in front of me with respect to the

3    phone.  You haven't met any burden about anything lost or

4    destroyed on Telegram because you all haven't put the evidence

5    before me about Telegram and anything being destroyed.  Okay?

6         You have had no significant discussion about Signal or X

7    or Facebook or LinkedIn, right, so I don't have any evidence in

8    front of me about that.  All right?  So that doesn't help me.

9    So then we really turn to the Discord messages, all right?  So

10   I understand there's no question that it's suspicious.  You

11   have a scheduling order in place here.  2024, there's a

12   subpoena issued in June, you got 17,000 Discord messages being

13   deleted.

14        Now, the reason why I think we can infer that there was

15   evidence that was destroyed is this, Mr. Plotnick:  If the

16   messages are talking about things in school or if the messages

17   are talking about things that are not related to this case, the

18   timing is really off, and the timing is what is the most

19   disturbing to me as an initial matter, Mr. Plotnick.

20        You got the scheduling other, you had the subpoena.  It's

21   clear he's under a duty to preserve, the litigation's ongoing.

22   Yet he decides in July and October of 2024 to delete things.

23   And, Mr. Plotnick, I've read his declaration, I've read yours.

24   This isn't like the Gambino case where at least in Gambino the

25   Government acknowledges there was a duty to preserve, they had

Telephonic Discovery Dispute Hearing 4/29/25

1   established with facts in front of Judge Chuang that in that
2   case the Bureau of Prisons had taken reasonable steps to
3   preserve the evidence, they had people acknowledge receipt of a
4   memo telling him he's got to preserve, they had certifications
5   that everybody was complying.  You didn't put any of that in
6   front of me.  There's no declaration by David Chen that he's
7   acknowledging receipt of any memo or notice or anything he's
8   under a duty to preserve.  There's a lot of back and forth
9   snipe in e-mails about my client understands his duty to
10  preserve, but in terms of evidence or a declaration or an
11  attestation or something that tells me that he understands his
12  duty to preserve and that he will not destroy things if not
13  given the chance, you didn't put any of that evidence in front
14  of me.
15        Now, I understand it's the burden of the plaintiff to
16  persuade me that absent a court order a significant risk exists
17  that evidence, relevant evidence will be lost or destroyed.
18  You spent a lot of time, Mr. Plotnick, talking about how the
19  dates aren't relevant to you, your theories aren't relevant to
20  you, and you may be right that some of this is
21  disproportionate.  But the problem is you all are talking in
22  dribs and drabs and you've precluded me from being able to
23  agree with you, Mr. Plotnick, and say, yes, February 1st is too
24  early of a date and 2025 is too late of a date.
25        So what does all this mean, counsel?  Mr. DiCharia, you

1   can tell from where I'm headed that you've started to convince
2   me that where there's smoke there's fire.  But the problem is,
3   you all haven't finished putting enough evidence in front of me
4   from which I can reasonably infer.  ECF 121-2, as it is
5   currently drafted, Mr. DiCharia, is what is necessary under
6   these circumstances.
7        So what do I mean by that?  There've been additional facts
8   that have developed, things that you all haven't been talking
9   about since then, since you filed your pleadings.  So I feel
10  like I'm behind by whatever many days of discussions you all
11  have had or have not had, frankly.
12       So, Mr. DiCharia, here is my specific task for you.  ECF
13  121-2, you need to meet and confer with the other side.  You
14  all need to do it in front of a court reporter.  You have the
15  benefit of what my thinking is on this.  You need to tell me
16  which parts of this order are still applicable but you have to
17  do a sufficient meet-and-confer.
18       I'm not denying your motion outright, Mr. DiCharia.  It's
19  just you all keep shifting the factual landscape which deprives
20  me of my ability to finish my job.  Now that you all know what
21  my expectations are, you can meet and confer and you can
22  certainly resolve it.
23       Any questions, Mr. DiCharia?  So I'm going to hold my
24  ruling in abeyance and I'm going to give you a date and time by
25  which you need to meet and confer, you need to get me your

Telephonic Discovery Dispute Hearing 4/29/25

1    transcript and I'll just make my rulings then.  I'm also going

2    to give you a chance to look at 121-2 while you all meet and

3    conferring.  Any questions so far, Mr. DiCharia?

4              MR. DICHARIA:  Yes, Your Honor.  My only concern is

5    that when we did meet and confer on this they claimed privilege

6    on the answers that you want to be discussed in the

7    meet-and-confer.

8              THE COURT:  So then you have your meet-and-confer.

9    If they say privilege, you give me the transcript, I can make

10   my ruling.

11             MR. DICHARIA:  Okay.  Understood, Your Honor.

12             THE COURT:  Right?  Because you will obviously, Mr.

13   DiCharia, have asked them what's your basis for claiming

14   privilege?  Tell me what it is.  They'll have to clearly

15   articulate it, I'll have it in my record, I can make my ruling.

16   Next question.

17             MR. DICHARIA:  I don't have any further questions,

18   Your Honor.

19             THE COURT:  ECF 128-1, Mr. DiCharia, pull that out in

20   front of you, please.

21             MR. DICHARIA:  Can you repeat that, Your Honor?

22             THE COURT:  128-1.  It was one of the things I listed

23   at the outset that you needed to have in front of you.

24             MR. DICHARIA:  I've got it, Your Honor.

25             THE COURT:  You have the -- the reason for my ruling

Telephonic Discovery Dispute Hearing 4/29/25

1   in ECF Number 132 was because a lot of these topics touch

2   directly or indirectly on the very things we've been discussing

3   today.  Am I not right about that, Mr. DiCharia?

4           MR. DICHARIA:  You are, Your Honor.  We agreed with

5   you, though, that these issues were not ripe for a motion, and

6   we apologize if there was any confusion over whether we were

7   attempting to file a motion.

8       We were not, Your Honor.  We believed that we needed to

9   still go through 104.8 and then meet and confer with opposing

10  counsel before we could ever file the motion.

11          THE COURT:  All that ECF 132, my letter order, does

12  is say it was premature, that you have to meet and confer.

13  That's all I did.  So when you did an appeal of it, I just said

14  it was premature.  That's all.  Because you hadn't finished.

15  My whole point of my order was having read all of this stuff

16  pretty much predicting that this hearing would go this way,

17  what I knew you all were going to tell me because you had other

18  things that had happened since the filings, that's why I issued

19  my order to send a message to you all that you actually need to

20  be talking.  Do you understand now why I did 132?  You're still

21  on mute, Mr. DiCharia.

22          MR. DICHARIA:  Your Honor, respectfully -- I'm sorry,

23  Your Honor, I was on mute.

24      Respectfully, they refused to respond to our motion which

25  then stopped us from being able to have a productive

1  meet-and-confer on the issue, and we read the order as denying

2  outright our --

3       THE COURT:  No, I said previous order --

4       MR. DICHARIA:  -- our ability to bring the motion.

5       THE COURT:  Oh, no, no, no, no, no, no, no, no.  It

6  just says for insufficient meet-and-confer.  I talk about how

7  you just haven't met and conferred.  It's premature.  Doesn't

8  it say that in the order?  It says premature, doesn't it?  I

9  don't have it in front of me right now.  I'm looking at my law

10 clerk.  Xara, could you sent that to me?  Because I'm sitting

11 in the other room.  I thought it talked about how it was

12 premature.

13      MR. DICHARIA:  I don't have it up in front of me,

14 right now, Your Honor, but I'm pulling it up right now.

15      THE COURT:  Yeah, no, I'm talking to my law clerk.

16      MR. DICHARIA:  Oh, sorry.  I'm sorry.

17      THE COURT:  I'm talking to my law clerk.  That's

18 okay.  She's going to e-mail it to me.  There we go.  Thank

19 you, Xara.  She's got it.  Thank you, Xara.  Thank you so much.

20      Okay.  Right.  I said for the reasons explained below,

21 right, and it says, right, some effort to meet and confer, some

22 of which has been fruitful, right, and I talk about the tone,

23 good faith, reasonable effort, I said that, right, before I --

24 yep, yep, yep, exactly.  It's just -- right.  And so --

25      MR. PLOTNICK:  Your Honor, could I --

Telephonic Discovery Dispute Hearing 4/29/25

1          THE COURT:  -- this is premature.  No.  I don't need

2     to hear from you.  No.  Not right now.  I don't.  I'm talk to

3     Mr. DiCharia right now.  So it's premature.  That's what it is.

4     I'm just pulling it up.  Yeah, it's just premature.  That's

5     what it is, Mr. DiCharia.

6          MR. DICHARIA:  Yes, Your Honor.  I just wanted to

7     clarify that.  We -- you know, opposing counsel has filed 127

8     and the only reason why we filed 128 was to tell Your Honor

9     that we agreed that it was -- that we did believe it was

10    premature for anything to be filed on that issue.

11         THE COURT:  Okay.  Yeah, but so -- okay.  So look,

12    it's clear that -- again, maybe this is evidence that we're all

13    talking past each other.  All right.

14         So look, there is no motion to compel that is ripe for my

15    consideration.  I've made the point in the order that I don't

16    think you all have been meeting and conferring in the way that

17    you should have as evidence by what's been happening here in

18    this hearing today.  That's why I'm trying to send you the

19    message to say you really need to make reasonable effort.  You

20    all need to sit down, you need to do everything, and I'm not

21    going to allow this motion to be filed.  And I also say we're

22    going to be talking about some of the topics during today's

23    hearing.  That's what I say in the first paragraph, right,

24    indirectly or -- that's what I said, for example.  Yep.  Right.

25    It says the first paragraph of the motion lists 11 different

topics, the majority of which seem directly related to the issues raised to different things which I already told you we're going to be talking about today. That's what it is.

MR. DICHARIA: Yes, Your Honor. Our concern in this particular matter was that opposing counsel refused to respond to our motion and we think 104.8 is the most productive way to have meet-and-confers. In fact, that is how we had the very productive meet-and-confers in January, Your Honor. We fully -- we briefed the issues, Your Honor asked us to meet and confer on the record after briefing the issues, and we had -- we had great meet-and-confers, in fact. Most of the issues were resolved. And in this particular issue opposing counsel's just refused to respond to our motion. And so if we were to have a meet-and-confer after on the motion, we would not have opposing counsel's position and so we wouldn't be able to have a productive meet-and-confer without knowing where they stand on the substantive issues we've raised in our --

THE COURT: Sure.

MR. DICHARIA: -- motion that we served them.

THE COURT: So here's how I view the interplay between Local Rule 104.7 and Local Rule 104.8, right? Step one -- I'm going to make up the date -- April 30th, 2025, you all video, phone, in person, you have a discussion. Here are the ten things that I want to talk to you about. You have a discussion, see if you could reach an agreement, that's step

1    one.

2        Step two is you can't reach an agreement, the you serve

3    your motion to compel, right, consistent with Local Rule 104.8

4    on the other side.  They have step three, they have to respond,

5    right?  Step four, meet and confer because now you've fully

6    aired everybody's positions and then at that point if you

7    haven't been able to resolve it, that's when you file your

8    motion.  That's how I view the process.  Are you with me so

9    far?

10           MR. DICHARIA:  Yes, Your Honor.

11           THE COURT:  I am -- as I said, from what you all

12    filed in 121 and 122, what you were doing with 127 and 128, I

13    wasn't getting the feeling that you were doing Steps 1, 2 and 3

14    and 4.  If that was my mistake, that's fine.  That's why the

15    whole point of 132 is you all need to sit down and actually

16    really meet and confer, not just talk past each other, because

17    there are so many different things you all should have been

18    able to agree upon, right, basics.  Get David Chen in a

19    deposition and just ask him the questions.  What'd you do with

20    the phone?  Did you do this, did you do this, do this.  What's

21    the deal with the Discord?  You could have done that.  You

22    didn't, but you all got stymied into fighting via e-mail.

23    That's why I issued my order.  Now does that make sense?

24           MR. DICHARIA:  It does, Your Honor.  And for some

25    additional clarification, part of the March 7th meet-and-confer

Telephonic Discovery Dispute Hearing 4/29/25

1   would have fallen under the 104.7 meet-and-confers.  So we

2   brought up issues to opposing counsel, we did not get answers.

3   We then drafted a motion to compel and served it upon opposing

4   counsel.  They weren't going to respond to it because they

5   didn't think it fell under 104.8 and that they didn't have to

6   respond.  We told them that they'd be waiving their arguments

7   if they didn't respond to us as the Local Rules require, and

8   they filed 127 with Your Honor and we filed 128 to explain to

9   Your Honor that we think this falls under 104.8, we think they

10  should be required to respond.

11              THE COURT:  Sure.

12              MR. DICHARIA:  They did respond but their response

13  was just saying that 104.8 does not apply, I believe, I think a

14  three-and-a-half-page response.  And then we met and conferred

15  with them after that to address the substance -- an attempt to

16  address the substantive issues so that we had some idea on what

17  their positions were and it was there where most of their

18  answers, Your Honor, were -- we sent you this

19  one-and-a-half-page letter that that satisfies our obligation

20  or it's privileged and confidential and we're not going to give

21  you that information.

22              THE COURT:  So --

23              MR. PLOTNICK:  Your Honor, may I raise one point on

24  that?

25              THE COURT:  I don't know who that is.  I don't know

1    who that is that's taking.  I don't know who that is that's

2    talking.  I don't know who that is that's talking.  Who is it

3    that's speaking?

4              MR. PLOTNICK:  I apologize, Your Honor.  Steve

5    Plotnick.

6              THE COURT:  Just a minute, Mr. Plotnick.  I always

7    give everyone a chance to be heard.  I'll talk to you in a

8    minute.

9              MR. PLOTNICK:  Thank you.

10              THE COURT:  So look, Mr. DiCharia, you now have an

11    understanding of how I view the meet-and-confer process, right?

12              MR. DICHARIA:  Yes, Your Honor.

13              THE COURT:  You now have an understanding of my

14    preliminary ruling with respect to the order that you seek in

15    121-2, right?

16              MR. DICHARIA:  Yes, Your Honor.

17              THE COURT:  You now understand that there's some

18    additional facts and evidence that I would need from either you

19    or the other side that you may end up getting what you're

20    looking for in 121-2, do you understand that, but I don't have

21    a complete record in front of me.  Do you understand that?

22              MR. DICHARIA:  Yes, Your Honor.

23              THE COURT:  You understand now that going forward, I

24    expect you all, as I said -- I'm repeating myself because

25    people always repeat themselves -- to do a meet-and-confer

Telephonic Discovery Dispute Hearing 4/29/25

1    process consistent with what I've outlined, right?

2              MR. DICHARIA:  Yes, Your Honor.

3              THE COURT:  So with all of those things, I will now

4    turn to Mr. Plotnick to make sure he has an understanding, and

5    if it is the case, if you'd just said, Mr. DiCharia, for

6    example, that in your meet-and-confer he claims privilege, you

7    ask him what's your basis.  He doesn't have a legitimate basis,

8    it's in the transcript, I can make my ruling or any other

9    particular issue.  If they on the record -- and that's the

10   point, Mr. DiCharia -- continue to take positions, I now have a

11   transcript generated by a court reporter and I can make my

12   ruling.  Are you with me?

13             MR. DICHARIA:  Yes, Your Honor.  Would you -- for

14   filing this transcript, how would you like us to go about that,

15   Your Honor?  Just filing the transcript or do you want

16   something attached to it?

17             THE COURT:  Yeah, I'm going to get to that in a

18   minute because I haven't given you specific instructions, but I

19   was just responding to -- sorry.  I'm going to give you a date

20   by which to meet and confer.  I'm going to give you a date --

21   explicit instructions, excuse me, about what it is I'm looking

22   for you.  I was trying to get the background taken care of.  So

23   any questions before I let Mr. Plotnick, anything else

24   before -- I'm going to give you the date, I'll give you all

25   that stuff.

Telephonic Discovery Dispute Hearing 4/29/25

1          MR. DICHARIA:  Okay.  Understood, Your Honor.  No
2    further questions.  My apologies.
3          THE COURT:  You're fine.  Mr. Plotnick, now what is
4    it that you wanted to say to me?  You just couldn't wait.
5    Mr. DiCharia was speaking, right, so just please give him the
6    courtesy of letting him finish, right?  That's why I wasn't
7    going to entertain you.  I was going to hear from you, but
8    please, that's the thing, when you're meeting and conferring,
9    just let the other side talk, right?  I know you're litigators,
10   I get it, but please, let's just take it down a notch and be
11   reasonable.  Everyone's going to get what they're entitled to
12   because I have a very broad view of relevance.  I understand
13   quite purely what is privileged and is not, and I have lots of
14   case law and lots of views of proportionality, and I have lots
15   of views on boilerplate objections, right?  But let's just take
16   it down a notch and let's move forward.
17        All right.  Now, Mr. Plotnick, I will not interrupt you,
18   go ahead and say whatever you needed to say.
19          MR. PLOTNICK:  Your Honor, I'll leave it be and I
20   will -- in the spirit of moving forward I'm happy to silence
21   myself and continue to move forward.
22          THE COURT:  Okay.  All right.  So here's what we need
23   to do.  I just need to know how much time you need to meet and
24   confer, like are we talking next week, a week from now, I don't
25   know if you want to order a transcript of today's hearing so

Telephonic Discovery Dispute Hearing 4/29/25

1    you can see where I'm headed.  So start first with you,

2    Mr. DiCharia, and for you, Mr. Plotnick, you can just think

3    about it.

4        How much time do you need to be ready to have a

5    meet-and-confer to be discussing 121.2, to be taking into

6    account everything I've said, to talk -- you know, we've had

7    all these extra dates made, April 1st, April 10th, all these

8    dates you've been needing subsequent to the filing, so just

9    tell me, Mr. DiCharia, how much time do you need?

10               MR. DiCHARIA:  I am checking with --

11               THE COURT:  Sure.

12               MR. DiCHARIA:  It appears we're available

13   immediately, Your Honor.

14               THE COURT:  Okay.  So are we talking this week or

15   next week?  What does that mean, Mr. DiCharia, for you?

16               MR. DiCHARIA:  We can do this week, Your Honor.

17               THE COURT:  Okay.  All right.  Mr. Plotnick, could

18   you and your team -- now, again, Mr. DiCharia, right, you

19   understand where I'm kind of headed with my ruling.  You

20   haven't satisfied me that the phone has been -- you know, that

21   David Chen has taken steps to render the phone, you know,

22   inaccessible and that there was evidence on it.  You haven't

23   persuaded me, right?  You haven't.

24        On Discord, you know, I still need to understand relevance

25   and is it evidence or not, so I just want to make sure

Telephonic Discovery Dispute Hearing 4/29/25

1    everybody's ready.  So if you'd rather have until next week,

2    that's not a problem.  You just need to tell me honestly,

3    Mr. DiCharia.

4              MR. DICHARIA:  Yes, Your Honor.  I just got a text

5    from one of my colleagues who will be out of town this week, so

6    I think next week actually is better.

7              THE COURT:  I do think it's wiser, right?  You just

8    need a chance to sort of sit and think about this, reread

9    through everything, digest it, think about 121-2, think about

10   128-1, think about all these issues and then just sort of they

11   me where we are.  I'll get the transcript of that, I'm just

12   going to make my ruling from that, okay?

13        So we're looking at next week, which is the week of May

14   5th; is that right, Mr. DiCharia?

15             MR. DICHARIA:  Yes, Your Honor, it is right.

16             THE COURT:  Okay.  Mr. Plotnick, so now you've had

17   some time.  Are you going to be available next week or do you

18   need a little bit more time?  But if you need a little bit more

19   time, you're going to have to tell me like do you need a day

20   more, beyond that, and why can't we do it next week.  So what's

21   your availability, Mr. Plotnick, for the meet-and-confer?

22             MR. PLOTNICK:  Yeah.  I am looking at my calendar,

23   and if -- Your Honor, if we could have two weeks just to

24   complete the meet-and-confer, that would greatly -- that would

25   make it very doable and I could absolutely get that done.  So

1    my calendar is very free the week of May 12th, I know that.  If

2    I could do it sooner, meet with some of my colleagues on the

3    line with me, but that's what I would appreciate.

4            THE COURT:  So Mr. Plotnick, let me make this clear.

5            MR. PLOTNICK:  Within two weeks, yes.

6            THE COURT:  If I do within two weeks, I know you

7    understand the Rules of Civil Procedure, I know now you

8    understand how I view your declaration from Mr. Chen and your

9    declaration.  You understand where I'm headed, which is I'm

10   heading toward granting his order directing David Chen to

11   preserve evidence and to provide dates of collection for

12   potentially relevant evidence, maybe not as broad as he's

13   crafted it.  So you need to make sure that when you are meeting

14   and conferring with Mr. DiCharia you are, in fact, making

15   reasonable compromises or not resisting things that are

16   inconsistent with the Rules of Civil Procedure and the Local

17   Rules.  I know you know that but I thought it was worth

18   stating.  So I'm going the give you the two weeks.  You've got

19   to have a sufficient meet-and-confer that's actually

20   productive.

21           MR. PLOTNICK:  Understood, Your Honor.

22           THE COURT:  All right.  Mr. DiCharia, was there

23   anything else that you wanted me to -- I'm going to give you

24   all -- I'm going to give you a date that's within the next two

25   weeks to do your meet-and-confer.  Anything else that you think

Telephonic Discovery Dispute Hearing 4/29/25

1    that I needed to say, piggybacking on what I just said to

2    Mr. Plotnick and his team?

3                MR. DICHARIA:  No, Your Honor.

4                THE COURT:  All right.  So by no later than -- I

5    think May 16th is the Friday; is that right?  Sorry, I don't

6    have my calendar in front of me.

7                MR. PLOTNICK:  Yes.

8                THE COURT:  Is May 16th the Friday?

9                MR. PLOTNICK:  Yes.

10               THE COURT:  Thank you.  Then by no later we're going

11   to do this.  So order's going to go out, it's going to say I'm

12   going to defer ruling on ECF Number 121 for the reasons I've

13   articulated in the record, but I've made my preliminary rulings

14   but I'm deferring my final ruling.  By no later than May 16th,

15   2025, you all shall have met and conferred, 121-2, 128-1,

16   because really Items 1 through 11 are really related, are they

17   not, Mr. DiCharia?  They really are.  Look at them.  Oops, I'm

18   sorry.

19               MR. DICHARIA:  Yes, Your Honor, they're

20   interconnected.

21               THE COURT:  I'm sorry, excuse me.  It's 1 through 13.

22   I said 11 but that's just wrong.  It's 1 through 13, right?

23   It's 13, not 11.  I don't know why I said 11.  Right?  It's

24   through 13.

25          [Indiscernible crosstalk.]

1      MR. DICHARIA:  I think, Your Honor, you cut out at

2  the beginning of when you were listing the ECF, so I don't --

3      THE COURT:  Oh, yeah, I'm sorry, 128-1, I said Items

4  1 through 11 but it's actually Items 1 through 13.  I misspoke

5  earlier when I said 11.

6      MR. DICHARIA:  Yes, Your Honor.

7      THE COURT:  It's 1 through 13, right?

8      MR. DICHARIA:  Yes.  I'm pulling up that to be sure.

9  1 through 13 yes, Your Honor.

10      THE COURT:  Yeah, I just said that wrong.  Okay.

11  It's the wrong number, and if my order says 11 it's actually

12  through 13 so I'll correct that.  I'll look back at that later.

13  But it's actually 1 through 13.

14      So this is also the subject of your meet-and-confer.  Not

15  only 121 and 122, specifically 122-2, but you might as well

16  talk about 128-1 because the 13 items really directly or

17  indirectly relate to what we've been talking about anyway,

18  right?

19      MR. DICHARIA:  Yes, Your Honor.

20      THE COURT:  Some are relevant maybe for any

21  spoliation, some may be relevant for this preservation order,

22  right?

23      MR. DICHARIA:  Yes, Your Honor.

24      THE COURT:  Okay.  So then you all are going to be

25  talking about that.  So by no later than May 16th, as I said,

Telephonic Discovery Dispute Hearing 4/29/25

1    121, 122, 128-1, Items 1 through 11 [sic], that's what you all

2    are meeting and conferring about.

3         If, Mr. DiCharia, you've already served the motion to

4    compel on the other side that touches upon these issues, then,

5    Mr. Plotnick, you and your team need to respond in writing.

6    Sounds like you've already talked about it.  We've gotten some

7    sort of written response back but it's not clear to me whether

8    or not you've fully responded because Mr. DiCharia said that

9    you had asserted privilege but he doesn't know the basis.  So I

10   think to make sure you've got full responses, so when you're

11   sitting down and meeting and conferring, you understand what

12   the original motion to compel was about, you understand the

13   topics that you're talking about, you've put something in

14   writing in front of the other party.  The other party has

15   responded to it and you're trying to get together and you're

16   trying to resolve it under meet and confer by no later than May

17   16th.  That's what I'm expecting to happen in the next two

18   weeks.  You've got enough of a runway.  You just need to

19   finish.

20        Any questions, Mr. DiCharia, before I move onto the next

21   two things I need to say?

22             MR. DICHARIA:  No, Your Honor.

23             THE COURT:  Okay.  Mr. Plotnick, same question for

24   you.  I have two more things to say but anything else so far

25   about the process?

1          MR. PLOTNICK:  Yeah.  Just I'm unclear, you mentioned

2     the motion to compel.  You would -- you want the motion to

3     compel that was previously filed fully briefed prior to the

4     meet-and-confer, or Your Honor wants us to meet and confer

5     first?  And then -- because part of the issue with the motion

6     to compel as was originally filed, Your Honor, is the timing of

7     it was such that we had already scheduled a meet-and-confer for

8     April 10th.  The motion got served after we provided the dates

9     and scheduled the meet-and-confer.  We -- the best example I

10     can give Your Honor is in the motion to compel that was served,

11     I mentioned earlier that we had received from Discord the

12     accurate ID information.  So, for example, part of the motion

13     thought to effectively compel us to tell them where we got it

14     from, we got on the phone, we said we got it from Discord.  So

15     the point of it was, some of those issues had been addressed

16     and I mean, I didn't consider that Your Honor would want issues

17     in a motion like that if they hadn't been vetted between the

18     parties.

19          So my question is, for example --

20          THE COURT:  Sure.  Sure.  I understand.

21          MR. PLOTNICK:  -- to the extent that the motion --

22     issues are resolved, yeah, issues are resolved via the

23     meet-and-confer process, I would not think that Your Honor

24     would want a motion to compel dealing with issues that had been

25     otherwise resolved through the meet-and-confer process.

Telephonic Discovery Dispute Hearing 4/29/25

1            THE COURT:  That's right.  But, Mr. DiCharia, here is

2    what I assumed.  Let me just do this.  Mr. DiCharia, to respond

3    to what Mr. Plotnick is saying, here's what I think you're

4    going to be doing.  After we hang up on this hearing, you're

5    going to sit down, you're going to look at ECF 121 and 121 --

6    and excuse me -- 121 and all these exhibits, 122, you're going

7    to look at 128 and 128-1, 121-2, and you're going to focus on

8    what do we need to talk about.  Am I right so far,

9    Mr. DiCharia?

10            MR. DICHARIA:  Yes, Your Honor.

11            THE COURT:  You haven't put your position in writing.

12    You would put your position in writing so the other side has

13    the benefit of your thinking.  Am I right so far?

14            MR. DICHARIA:  Yes, Your Honor, but I do want,

15    respectfully, to point out that we properly served this motion

16    to compel under Local Rule 104.8.

17            THE COURT:  I understand.  I understand.  I

18    understand that.  I understand that.  But did you not hear

19    Mr. Plotnick just say that there were some issues, you were

20    already going to be meeting and conferring and then you served

21    it.  I don't know if the landscape has changed.  I don't know

22    if you have new information now.  I don't know if you want to

23    tweak your positions a little bit.  Now that you've heard what

24    I'm saying, you want to speak about it differently.  I don't

25    know what you want to do.

1      All I'm trying to do, everybody, is to give you a chance
2   to step back for a second to figure out what it is you really
3   want, Mr. DiCharia, to ask the other side for it, to make your
4   best case as to why it's relevant, not privileged and
5   proportional to the needs of the case, give them a chance to
6   respond, do whatever filings you need to do knowing how I'm
7   headed on both the preservation order and the collection --
8   provide dates of collection about potentially relevant --
9   excuse me -- evidence order, and to just talk it out and tell
10  me, Your Honor, here are the three things that are left so we
11  couldn't come to an agreement on what the order says.  We
12  couldn't come to agreement on this other issue.  Here it's ripe
13  for your consideration.
14      I can't -- I mean, that's all I want to happen.  I don't
15  have the benefit of the motion to confer -- excuse me --
16  compel, Mr. Plotnick, because it hasn't been given to me.  But
17  I expect you all to actually now that you know, I need you to
18  meet-and-confer in front of a court reporter, to sit in front
19  of a court reporter and just go through it in a methodical
20  fashion.  And if there's any doubt, you can always supplement
21  or do something else in lieu of.  You could just work it out.
22  That's what my expectation is.
23      I don't know how to make that any clearer, I just don't,
24  and I'm sorry if I don't know how to make that any clearer.  I
25  don't.  It's just step back from the precipice and just figure

Telephonic Discovery Dispute Hearing 4/29/25

1    out what you want, Mr. DiCharia, let the other side know about

2    it.  If you've already let them know and your answer is that we

3    already filed it, we're waiting for your response, then that's

4    your answer, isn't it, Mr. DiCharia?

5         That's what I'm not understanding, why we're spending all

6    this time, you all are talking past each other because you're

7    posturing and not stepping back for a second.  It should

8    literally be here is the 15 things in my hypothetical,

9    Mr. DiCharia, we want, here why we think that they're relevant,

10   here's why we think they're proportional to the needs of the

11   case, here's why you think you can't claim privilege.  Are you

12   going to give it to us or not?  Here's the time period, this is

13   what we want.  The other side responds yes or no and we're

14   done.  You have to talk about it, you got to get a court

15   reporter to report it, and you got to have something in writing

16   that you've served upon each other.  That's all I'm trying to

17   achieve.  Any questions, Mr. DiCharia?

18            MR. DiCHARIA:  No, Your Honor.  I understand.

19            THE COURT:  All right.  Mr. Plotnick, any questions

20   now?

21            MR. PLOTNICK:  No, Your Honor.

22            THE COURT:  All right.  May 16th, by no later than,

23   your meet-and-confer, you've served whatever you need to serve

24   on each other, it's a productive meet-and-confer with a court

25   reporter.  If you have to have multiple ones, you can have

1    multiple ones.  It's entirely up to you.  You want to have ten

2    of them in the next ten days, it's totally fine.  However many

3    meet-and-confers, I only want to see what you say on the record

4    in front of the court reporter.

5         Then you need to give me a joint status report.  The

6    status report, do you want seven days?  I can have it due by

7    the 23rd of May.  Can you get it to me by the 23rd of May,

8    Mr. DiCharia?  Let me start with you first.

9              MR. DICHARIA:  Yes, Your Honor.

10             THE COURT:  And Mr. Plotnick, May 23rd?

11             MR. PLOTNICK:  Yes, Your Honor.

12             THE COURT:  The expectation is that that

13   [indiscernible] has whatever those transcripts are that you

14   need me to be looking at and it's got here -- in my

15   hypothetical -- here's what we raised, Mr. DiCharia, they

16   didn't agree to any of these, here's our position.  I'm going

17   to tell you about the page limit in the JSR in a second, but I

18   want it there and then here is the attached transcript.

19        Then here's the opposition from David Chen and Yao Chen's

20   counsel, it's in there.  30 pages, excluding the attachments.

21   So each of you get 15 pages.

22        So Mr. DiCharia, here are the ten issues, we want to

23   compel them, here is why, see attached transcript, here's why

24   we said it's relevant, here's why he's objecting, if you want

25   to throw any case law you can.  I can just make my ruling

Telephonic Discovery Dispute Hearing 4/29/25

1    looking at that, because I'm now seen -- I've heard from all of
2    you all, I've seen -- I've considered whatever evidence it is
3    that you provided to people and what dates you provided to
4    people and I can just rule from that.  So 15 pages each with a
5    JSR not to exceed 30 pages.
6         Any questions, Mr. DiCharia, before I go on to Point
7    Number 3?
8              MR. DiCHARIA:  No, Your Honor.
9              THE COURT:  Any questions, Mr. Plotnick?  You each
10   get 15 pages excluding --
11             MR. PLOTNICK:  No, no questions, Your Honor.
12             THE COURT:  Excuse me.  All right.
13             MR. PLOTNICK:  Yes.  Understood.
14             THE COURT:  Now, last thing is ECF 106, right, Page 3
15   and Page 5.  If you could all get that in front of you because
16   my [indiscernible] e-mailed you that we were going to talk
17   about that today before we went over -- and I'm sorry to the
18   courtroom deputy, I don't know if you have another matter that
19   you need to get to but we went over.
20        So, Mr. DiCharia, you got ECF 106, Pages 3 and 5, in front
21   of you?  Just let me know.  Same question for you,
22   Mr. Plotnick.
23             MR. DiCHARIA:  I do, Your Honor.
24             THE COURT:  Okay.
25             MR. PLOTNICK:  As do I, Your Honor.  I have it.

1    Sorry.

2              THE COURT:  All right.  So then it looks like -- all

3    right.  So this was -- I just want to make sure, so it looks

4    like, Mr. Plotnick, Page 3, right, I want to make sure I'm not

5    wrong about that.  Yeah.  Wait a minute.  I'm sorry, I may

6    have -- yeah.

7         So Page 3, Mr. Plotnick, Items A, B, C, and D, right, are

8    your position, correct?  I want to make sure I didn't mix this

9    up.  Is that right?

10             MR. PLOTNICK:  Yes.  That's correct, Your Honor.

11             THE COURT:  And then also obviously that means that

12   Page 5 is the other side.  All right.  Item A, Mr. Plotnick, is

13   that still an issue?

14             MR. PLOTNICK:  It is.

15             THE COURT:  All right.  Mr. DiCharia.

16             MR. DICHARIA:  Yes, Your Honor?

17             THE COURT:  Yeah, no, I'm just looking here.  I just

18   had to read something again.

19        All right.  So Mr. DiCharia, anything you want to put on

20   the record about why it's overly burdensome and not

21   proportionate for the 9,000 e-mails?  Anything else you want to

22   put on the record?

23             MR. DICHARIA:  Yes, Your Honor.  So as it relates to

24   Daryl Yeo's e-mails we have already produced to the plaintiff

25   in Yao v. Chen more than 800 documents with Daryl Yeo including

Telephonic Discovery Dispute Hearing 4/29/25

1    Discord messages.  Daryl Yeo's handled OtterSec customer

2    invoices and last week we produced those OtterSec customer

3    invoices to opposing counsel.

4        Additionally, opposing counsel has not identified the --

5    the need and benefit and relevance of these documents, and we

6    don't think the benefit outweighs the undue burden of having to

7    review these additional items and the fact that they're not

8    proportional to the needs of the case.  We don't think there's

9    going to be much of anything relevant within them.  And also,

10   Your Honor, these were issues that were not briefed before and

11   so these were off-the-record discussions in the January

12   meet-and-confer.

13            THE COURT:  All right.  Mr. Plotnick, I'm happy to

14   hear from you about Item A.

15            MR. PLOTNICK:  Yes.  Sure, Your Honor.  In terms of

16   Daryl Yeo, he was identified by the defendants as one of their

17   custodians of financial documents, which are documents that we

18   have sought in the case.  When we received their search

19   protocol, he was not listed as an individual whose e-mails they

20   searched.

21       Now, they said 9,000 e-mails.  That is a total number,

22   Your Honor.  That's before search terms had been applied.  One

23   of the things that we'd ask them to do, okay, you're claiming

24   burden in the searches, tell us what the volume is that we're

25   talking about and we'd be willing to work with you.  We said

1    that repeatedly.  They haven't even run the searches against

2    his e-mails to tell us what the actual volume of hits are that

3    they got out of those 9,000 e-mails.  I don't even know what

4    date range those 9,000 e-mails are referring to.

5        So I don't think that they have satisfied their obligation

6    to show that it would be a burden because we didn't ask them to

7    review all 9,000 e-mails.  We've asked them to run searches and

8    tell us what you -- what the search results are.  If you're

9    saying that there's a burden, just tell us what that burden is

10   and we could work with you to find ways to sort of narrow the

11   scope of the e-mails.

12            THE COURT:  Got it.

13            MR. PLOTNICK:  It just simply says he has 9,000

14   e-mails.

15            THE COURT:  Got it.  Okay.  Item B, Mr. Plotnick, you

16   said defendants' redactions of large swaths of messages on

17   grounds of relevance.  Can you just give me a bit more on that,

18   please?

19            MR. PLOTNICK:  Sure, Your Honor.  There are a number

20   of messages that were produced, Discord messages in the case

21   where the -- in the middle of the message chain the defendants

22   have taken the position that -- that they're entitled to redact

23   within the middle of a discussion that states -- which

24   obviously removes context from documents and makes it difficult

25   to determine what's being discussed.  And they have just taken

1    it upon themselves to redact on grounds of relevance.  We don't

2    think that's proper.  We've provided them with the case law on

3    that point from the District of Maryland.  I'm happy to provide

4    that on -- that case to Your Honor if Your Honor would like it.

5              THE COURT:  Yep, I'm ready.

6              MR. PLOTNICK:  But I don't believe that -- sure.  I

7    will if Your Honor could give me one second to find the case.

8              THE COURT:  That's fine.  Sure.  Sure.  Um-hmm.  And

9    while you're --

10             MR. PLOTNICK:  The name of the case --

11             THE COURT:  Go ahead.

12             MR. PLOTNICK:  Yes.

13             THE COURT:  Thank you.

14             MR. PLOTNICK:  It's In Re:  Marriott International

15   and the citation to the case is 2020 Westlaw 5525043.  It is a

16   decision from Judge Grimm.

17             THE COURT:  By Judge Grimm, yep.

18             MR. PLOTNICK:  September 14th, 2020.

19             THE COURT:  Yep.

20             MR. PLOTNICK:  Effectively, it's very similar in that

21   regard that you cannot redact a document on grounds of

22   relevance precisely for the reasons that we mentioned.

23        We have not done that with our production of any of the

24   messages.  There have been a great number of personal messages

25   that are included in there.  We have a confidentiality order in

Telephonic Discovery Dispute Hearing 4/29/25

1       the case.  If these are personal messages or sort of sensitive

2       in some other way, they can designate that as confidential, but

3       redacting in the middle of the document on grounds of

4       relevance, our understanding of the case law referencing that

5       case is that is not proper to do so.

6                    THE COURT:  And one final question before I turn to

7       Mr. DiCharia.  You had said that you had given -- have you

8       given them examples, like take a look at Bates Number 222 or

9       Bates Number 668?  Have you given them specific examples?

10                   MR. PLOTNICK:  Your Honor, is that -- that question

11      is directed at me.

12          I don't recall, Your Honor, in all honesty.  I don't

13      recall whether we've given them specific examples.  There are

14      many examples where that's been done.  I'd be happy to do that

15      but there are many examples where that has been done.

16                   THE COURT:  Okay.  All right.  I'm sorry, can you

17      hear me?

18                   MR. DICHARIA:  Yes, Your Honor.

19                   MR. PLOTNICK:  Yes.  Yes, Your Honor.

20                   THE COURT:  Great.  So we need to check and see if

21      you've given examples.

22          Okay.  So Mr. DiCharia, so [indiscernible] and plaintiff

23      hasn't identified any specific redactions despite a request, so

24      I'm happy to hear whatever you have to say, Mr. DiCharia, on

25      this topic.

Telephonic Discovery Dispute Hearing 4/29/25

1          MR. DICHARIA:  Yes, Your Honor.  They've not -- we've
2    asked them to point out -- so first, Your Honor, no
3    meet-and-confer on this decision has ever been requested; but
4    second, we asked them in correspondence to identify which ones
5    they were concerned about and they did not do that.
6          We produced a lot of these messages in large time
7    intervals so some of them are big documents and some threads
8    within these big documents have threads that are fully
9    extraneous to the litigation.  On February 3rd of 2025, we sent
10   a letter to plaintiff's counsel.  Sorry, they sent a response
11   to us to our letter and they told us that they were willing to
12   just further our position concerning the redaction of
13   extraneous, irrelevant, and nonresponsive material for
14   messages, but they did say that they needed certain redactions
15   on account numbers on financial statements removed so they
16   could determine which statements go together.
17         And on that, we considered their position, Your Honor,
18   we've reproduced the financial statements so that they had the
19   last three digits of the bank account numbers so that they
20   could match them up as they requested.  And then we've not
21   heard an issue, we've not heard about this issue on redaction
22   since February 2025, Your Honor.
23         THE COURT:  Got it.  Item C, as in cat, Mr. Plotnick,
24   which says defendants' omission of searches for documents
25   concerning their defenses and affirmative defenses.  What did

Telephonic Discovery Dispute Hearing 4/29/25

1    you want to say on that, Mr. Plotnick?

2         MR. PLOTNICK:  Yeah, that's specifically relates

3    to -- well, the primary item that that relates to is quite

4    frankly the code issue.  We brought up to the defendants that

5    they're looking at their search protocol based on their

6    document production.  It did not appear that they had run any

7    receives related to what was initially a defense in the Yao

8    versus Chen matter.  It is now the subject obviously of the

9    litigation to the consolidated Chen versus Chen matter.  But

10   they did not appear to have brung any searches whatsoever or

11   anything related to the -- I'll just call them the code-related

12   claims.

13        THE COURT:  Okay.

14        MR. PLOTNICK:  And that is primarily what that has

15   related to.  We brought that issue up with them, and had asked

16   them to do so.

17        THE COURT:  Got it.  Okay.  Mr. DiCharia, your

18   response is defendants' searches were adequate.  They also

19   invited plaintiffs' counsel to suggest the search term or maybe

20   terms for you to all to consider.  Anything else you want to

21   say on Item E, Mr. DiCharia?

22        MR. DICHARIA:  Yes, Your Honor.  We, on February 4th,

23   informed plaintiffs' counsel that we were not aware of the

24   defendants having any copies of the code.  We in that letter

25   identified several documents that showed how our search

Telephonic Discovery Dispute Hearing 4/29/25

1    protocol satisfied their request for a lot of our searches.  We

2    searched entire time periods rather than using specific

3    searches.  And in our letter we also asked for specific

4    searches that we could consider and add to our searches to

5    review [indiscernible] since they've never provided any.

6        On other search term issues they have provided those and

7    when they have done that we -- you know, we added those search

8    terms when they were reasonable and reviewed the documents.  So

9    we've just not heard back from them on this since February,

10   Your Honor, after we identified documents.  Yeah.

11            THE COURT:  Okay.  All right.  I'm going to stick

12   with you, Mr. DiCharia, for a second because Item D as in dog

13   kind of relates to sort of assertions of privilege.  So what's

14   the status?  Are you working on a privilege log?  I'll turn to

15   Mr. Plotnick in a second.  It sounds like you said you're going

16   to be producing a privilege log.  I just need to get some

17   flavor and context of what's going on with that, Item D as in

18   dog.

19            MR. PLOTNICK:  Yes, Your Honor.

20            MR. DICHARIA:  Yes.

21            THE COURT:  Yeah, to Mr. DiCharia.

22        [Indiscernible crosstalk.]

23            THE COURT:  No worries.  Mr. DiCharia, I just wanted

24   to -- yeah, um-hmm.

25            MR. DICHARIA:  Yes, Your Honor.  We are working on a

1    privilege log.  We agreed on dates for privilege logs in the

2    scheduling order.

3              THE COURT:  Okay.

4              MR. DICHARIA:  And we -- and in relation to that

5    issue in January, we explained to opposing counsel we thought

6    the request was premature but we did also provide explanations

7    for our assertions.  That was on January 22nd and we've not

8    heard about this issue since then.

9              THE COURT:  Okay.  All right.  Now, Mr. Plotnick, I

10   want to hear from you about the assertions of privilege or

11   whatever in light of what Mr. DiCharia has just said.  What do

12   you want to say about Item D as in dog?  I'm looking at your

13   Page 3.

14             MR. PLOTNICK:  I think the short answer, Your Honor,

15   is that we subsequently after this joint status report we

16   have -- which Your Honor has now entered a scheduling order

17   which provides for an exchange of privilege logs in October.

18   This we explain when we had different timing and the discovery,

19   that meet-and-confer process is still ongoing, so we're content

20   I would say for now to await the production of the privilege

21   log as we've now agreed to do.

22             THE COURT:  All right.  So then, Mr. Plotnick, just

23   to make sure I understand, Items A, B, and C I need to resolve

24   but D is now moot because you have that scheduling order you

25   were looking for; is that right?

Telephonic Discovery Dispute Hearing 4/29/25

1          MR. PLOTNICK:  Yes.  I think that's correct, Your

2    Honor.

3          THE COURT:  Okay.  All right.  So just A, B, and C.

4    So I think I've heard from you all on that.  I will go ahead

5    and make my ruling.

6        Mr. DiCharia, I know Mr. Plotnick gave me some case law.

7    Any case law you want to give me on Points A, B, C or whatever?

8    He did that.  Anything else you want to say?

9          MR. DICHARIA:  Your Honor, if I may, these issues

10   have never been briefed before and we've not met and conferred

11   on them besides this initial discussion.  We would appreciate

12   if we were able to either brief these issues or meet and confer

13   with opposing counsel before a ruling was made because we don't

14   think the issues are ripe yet for ruling, Your Honor.

15         THE COURT:  Okay.  Except for D, of course, which is

16   now moot, right?

17         MR. DICHARIA:  Yes.  D is moot, Your Honor.

18         THE COURT:  Okay.  Mr. Plotnick, do you want -- I

19   mean, is there any reason why I shouldn't take -- follow

20   Mr. DiCharia's lead here on Items A, B, and C, that you all

21   should just talk about it?

22         MR. PLOTNICK:  No, I think we could do that.  I mean,

23   we're going to be scheduling to meet and confer anyways.  So I

24   believe we've provided them some information.  If we haven't,

25   we can provide it as far as the meet-and-confer process, so I

Telephonic Discovery Dispute Hearing 4/29/25

1    have no problem with doing that and rolling it into the

2    discussions we're about to have.

3              THE COURT:   All right.  So here's where I see things

4    big picture.  You have your schedule for May 16th.  You have a

5    date by which you need to give me the joint status report.  You

6    get 15 pages each.  You have a sense of everything you need to

7    discuss.  These three Items A through C, when you just reach a

8    compromise, if you all want to discuss it by May 16th, if

9    that's fine.  If you need a couple more days beyond it, that's

10   fine, too.  It may make more sense for you all to focus on is

11   121 and 122 and all those issues and 128-1 between now and May

12   16th, so I don't have a problem if you have a separate joint

13   status that comes in after May 23rd dealing with Items A

14   through C at ECF 106.  Does that sound fair, everyone?

15         Mr. DiCharia, I'll start with you.  Is that fair?

16              MR. PLOTNICK:  It does.

17              MR. DICHARIA:  Yes, Your Honor.  That sounds fair.

18              THE COURT:  Yes.  And Mr. Plotnick, that's not a

19   problem?

20              MR. PLOTNICK:  No, it is not, Your Honor.

21              THE COURT:  Okay.  All right.  So I am actually not

22   going to put a deadline on you, believe it or not, and the

23   order will say for the joint status report to discuss ECF 106

24   Items A through C because I know your primary focus has to be

25   on these other issues.  So I'm not going to put a date on that,

Telephonic Discovery Dispute Hearing 4/29/25

1    but if weeks and weeks go by and I haven't heard from you, I'll

2    certainly poke you all and ask for it.  All right.  Fair

3    enough?

4                    MR. PLOTNICK:  Yes.

5                    MR. DICHARIA:  Yes, Your Honor.

6                    THE COURT:  All right, everyone.  Is there anything

7    else that we need to discuss today?  I'm going to give you all

8    just a couple of minutes to sort of gather your thoughts, you

9    have a captive audience, right?  So everybody knows meet and

10   confer and only put things in front of me that are ripe.

11         But anyway, all right.  So anything else?  I'm going to

12   give it a couple of minutes, Mr. Plotnick, for you to think

13   about it, gather your thoughts.  Mr. DiCharia, same question

14   for you and I'm going to put myself on mute and then just let

15   me know, go through your notes see if there's anything else

16   since we're together, all right?  I'll come back to you in

17   about two minutes.

18         (Pause in Proceedings.)

19                    THE COURT:  Okay.  So Mr. Plotnick, are you ready or

20   do you need another minute?  I'm just shy of two minutes by two

21   seconds.  Do you need another minute or anything else we need

22   to discuss?

23                    MR. PLOTNICK:  I don't need more time, Your Honor,

24   and I don't have anything further to raise.

25                    THE COURT:  All right.  Mr. DiCharia, same two

1    questions for you.  Do you need another few seconds or anything

2    else we need to talk about?  Are you ready?  Anything else we

3    need to talk about?

4              MR. DICHARIA:  Nothing else from us, Your Honor.

5    Thank you.

6              THE COURT:  All right.  So Mr. DiCharia, I'm going to

7    tell Judge Chuang he doesn't need to resolve ECF Number 133

8    because I made it clear that I'm not precluding your ability to

9    file a motion to compel if it's appropriate later on, all

10   right?  So I'm going to go ahead and tell him, right, and it's

11   going to be in the order that that's just going to be on hold

12   because we're going to see whether you all can resolve this.

13   All right?

14             MR. DICHARIA:  Thank you, Your Honor.

15             THE COURT:  So he doesn't spend the time.

16             MR. DICHARIA:  Your Honor, is it possible --

17             THE COURT:  Yeah.  Um-hmm.

18             MR. DICHARIA:  Is it possible to correct the original

19   order just to --

20             THE COURT:  Sure.

21             MR. DICHARIA:  Okay.  Thank you, Your Honor.

22             THE COURT:  So I'll do an amended order and I'll just

23   say it's really pre -- and I'll add that basically for the

24   reasons articulated today in sum it's really just premature,

25   right?  That's how I'll amend it, okay?

Telephonic Discovery Dispute Hearing 4/29/25

1        MR. DICHARIA:  Thank you, Your Honor.

2        THE COURT:  Not that you're not -- you know, I'm not

3    precluding you from filing it if you need to later on, okay?

4    All right, everyone.  We stand adjourned.  Good luck.  Let's

5    see if we can get this resolved, all right?  Have a good day,

6    everyone.

7        MR. PLOTNICK:  Thank you, Your Honor.

8        MR. DICHARIA:  Your Honor -- Your Honor?

9        THE COURT:  Yes.

10        MR. DICHARIA:  If the amended order could just

11    clarify that we didn't file the proposed motion.

12        THE COURT:  Sure.

13        MR. DICHARIA:  Thank you, Your Honor.

14        THE COURT:  Well, okay.  All right.  It says in an

15    exhibit appended to ECF Number 126, whatever it is, whatever,

16    that's fine.  If you read literally what it says, but that's

17    fine.  I understand what you want.  All right.  Thank you to

18    the courtroom deputy for staying late.  I apologize.

19        All right.  We stand adjourned, everyone.  Bye-bye.

20        MR. DICHARIA:  Thank you.

21        (The proceedings concluded at 1:51 p.m.)

22

23

24

25

Telephonic Discovery Dispute Hearing 4/29/25

1                    CERTIFICATE OF OFFICIAL REPORTER

2            I, Amanda L. Longmore, Registered Professional Reporter
    and Federal Certified Realtime Reporter, do hereby certify that
3    the foregoing is a correct transcript of the audio-recorded
    proceedings in the above-entitled matter, audio recorded via
4    FTR Gold on April 29, 2025, and transcribed from the audio
    recording to the best of my ability and that said transcript
5    has been compared with the audio recording.

6                            Dated this 2nd day of May 2025
                             -S-
7                            _____

8                            AMANDA L. LONGMORE, RPR, CRR, FCRR
                             FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'22** [2] - 40:25;
41:3
**'23** [1] - 42:2
**1** [18] - 14:25;
15:3; 16:24;
61:12; 63:8, 14,
23; 79:13;
87:16, 21-22;
88:4, 7, 9, 13;
89:1
**1(a** [1] - 63:24
**1(b** [2] - 63:20, 24
**1.5** [1] - 51:23
**10** [4] - 6:6; 18:21;
53:4
**10/10/2024** [2] -
53:3; 54:1
**10/20** [1] - 54:1
**10/27** [1] - 53:4
**104.7** [6] - 5:24;
10:9; 66:25;
69:9; 78:21;
80:1
**104.7(b** [1] - 6:10
**104.8** [8] - 75:9;
78:6, 21; 79:3;
80:5, 9, 13;
91:16
**106** [5] - 4:16;
95:14, 20;
106:14, 23
**10th** [5] - 6:16;
59:21, 23; 84:7;
90:8
**11** [11] - 18:21;
77:25; 87:16,
22-23; 88:4, 11;
89:1
**117** [2] - 36:16
**11:05** [1] - 2:2
**11:25** [1] - 13:18
**11th** [3] - 22:4;
55:4; 70:6
**121** [18] - 4:10;
6:15, 18, 21;
13:19; 54:6;
63:19; 64:23;
66:22; 70:2;
79:12; 87:12;
88:15; 89:1;
91:5; 106:11
**121-1** [3] - 55:14,
16; 56:3
**121-10** [5] - 6:6;
9:21, 23; 10:20;
11:1
**121-2** [2] - 6:6,
13; 9:5, 7, 9, 15;
10:20, 25;
27:15; 48:4;

61:2, 11; 63:9,
13; 73:4, 13;
74:2; 81:15, 20;
85:9; 87:15;
91:7
**121-9** [26] - 7:2, 6,
10, 15, 20, 24;
8:6, 12, 19;
10:20, 25; 11:1;
14:25; 15:2;
17:4, 20, 23;
18:8, 10, 12, 21;
19:2; 50:12, 17
**121.2** [1] - 84:5
**122** [13] - 4:13;
6:15, 21; 10:6;
12:8; 30:2; 38:6;
70:3; 79:12;
88:15; 89:1;
91:6; 106:11
**122-2** [1] - 88:15
**122-6** [1] - 14:17
**126** [1] - 109:15
**127** [4] - 12:18;
77:7; 79:12;
80:8
**128** [5] - 12:18;
77:8; 79:12;
80:8; 91:7
**128-1** [11] - 4:17;
12:17; 74:19,
22; 85:10;
87:15; 88:3, 16;
89:1; 91:7;
106:11
**129** [3] - 15:18;
16:21; 50:11
**12th** [2] - 68:24;
86:1
**13** [13] - 17:20;
18:8, 11;
87:21-24; 88:4,
7, 9, 12-13, 16
**132** [4] - 75:1, 11,
20; 79:15
**133** [2] - 69:3;
108:7
**14,711** [1] - 67:18
**14th** [3] - 9:13, 15;
99:18
**15** [8] - 6:7; 9:21;
11:1; 93:8;
94:21; 95:4, 10;
106:6
**15,000** [1] - 57:7
**16** [12] - 7:2, 10,
15; 10:6, 25;
17:23; 18:12;
19:2; 50:15;
56:3

**16th** [9] - 87:5, 8,
14; 88:25;
89:17; 93:22;
106:4, 8, 12
**17** [5] - 50:11, 17,
19; 55:13
**17,000** [17] -
48:17; 49:19;
52:24; 53:5, 11,
21-22; 54:2, 5;
56:3, 22; 57:7;
59:20; 66:15;
67:17; 71:12
**17,222** [2] - 53:1;
56:3
**18** [7] - 17:23;
18:12; 19:2;
55:14
**19** [9] - 7:3, 10,
15; 9:21; 10:25;
11:1; 55:15
**1:51** [1] - 109:21
**1st** [18] - 30:12;
31:21; 32:3, 15,
25; 33:22; 34:4,
6; 36:20; 37:10;
38:6, 11, 18;
58:13; 59:12,
15; 72:23; 84:7
**2** [5] - 8:19; 17:4;
11:20, 19; 79:13
**2(c** [1] - 50:12
**2(c)** [1] - 50:24
**20** [2] - 18:3;
55:14
**2004** [1] - 69:3
**2006** [1] - 69:1
**2014** [1] - 68:23
**2017** [4] - 57:8;
59:9; 68:19, 21
**2018** [1] - 59:9
**2020** [2] - 99:15,
18
**2021** [14] - 33:22;
34:6, 15; 35:14;
36:20; 37:10,
12; 38:6, 18;
41:9; 46:22, 24;
47:25; 57:10
**2022** [20] - 26:16;
30:12, 19;
31:13; 32:15,
19, 25; 34:1, 10;
35:25; 37:13;
39:1, 7, 9;
40:23; 47:8, 10;
68:3, 15
**2023** [17] - 21:18;
24:8, 11; 33:24;
34:3; 35:25;

36:4; 37:17;
42:4, 7; 44:5;
45:19; 57:11;
68:3; 69:5; 70:6
**2024** [40] - 9:1;
17:19; 19:18;
26:8, 10, 13;
29:14; 30:7, 21;
31:1, 13, 19-20;
32:3, 9, 13;
36:12, 14, 18,
20; 38:15;
45:20, 24-25;
46:3, 5, 9; 53:7;
54:19; 55:1, 4,
8; 68:5, 24;
71:11, 22
**2025** [14] - 9:13,
15; 19:18; 22:4;
37:4; 45:23;
58:13; 63:2;
72:24; 78:22;
87:15; 101:9, 22
**21** [14] - 7:3, 22;
8:6, 19; 11:1;
14:25; 15:3, 18;
16:2, 21; 17:25;
18:12, 14, 16
**22** [7] - 7:3, 22;
8:6; 11:1; 18:13,
16
**222** [1] - 100:8
**22nd** [2] - 9:1;
104:7
**23** [1] - 17:25
**23rd** [4] - 94:7,
10; 106:13
**24** [1] - 67:21
**2493443** [1] -
68:20
**25th** [1] - 31:19
**26(b)(1** [1] - 62:9
**26(b)(2)(C** [3] -
64:6; 68:12
**26th** [1] - 26:8
**27th** [4] -
17:19-21; 18:17
**28** [1] - 16:2
**28th** [3] - 17:4;
45:23; 53:25
**3** [10] - 4:16;
14:18; 17:4;
79:13; 95:7, 14,
20; 96:4, 7;
104:13
**30** [2] - 94:20;
95:5
**30th** [2] - 53:25;
78:22
**31st** [4] - 21:18;

24:8, 11; 26:8
**3478445** [1] - 69:5
**35** [1] - 69:1
**37** [1] - 51:8
**39** [1] - 26:9
**3rd** [1] - 101:9
**4** [1] - 79:14
**40** [1] - 60:17
**41** [1] - 60:7
**4th** [1] - 102:22
**5** [5] - 4:16; 15:22;
95:15, 20; 96:12
**52** [1] - 16:15
**5525043** [1] -
99:15
**5th** [4] - 18:20;
19:6, 16; 85:14
**6** [2] - 30:2; 62:24
**60** [1] - 69:3
**628** [1] - 53:4
**63-3** [1] - 36:7
**6644** [1] - 53:24
**668** [1] - 100:9
**73** [1] - 69:1
**7th** [5] - 6:14, 20;
11:9, 25; 79:25
**800** [1] - 96:25
**8th** [1] - 68:20
**9,000** [6] - 96:21;
97:21; 98:3, 7,
13
**9817** [2] - 53:3;
54:1
**988857** [1] - 68:23
**a.m** [1] - 2:2
**abeyance** [1] -
73:24
**ability** [4] - 40:3;
73:20; 76:4;
108:8
**able** [11] - 19:25;
27:18; 47:3;
49:9; 50:5;
72:22; 75:25;
78:15; 79:7, 18;
105:12
**absent** [2] -
66:21; 72:16
**absolutely** [2] -
54:23; 85:25
**access** [1] - 47:15
**accordance** [1] -
6:10
**according** [6] -
65:15; 66:3, 7;
67:6, 10; 68:15
**account** [3] -
84:6; 101:15, 19
**accurate** [2] -
40:7; 90:12

**achieve** [1] -
93:17
**acknowledge** [1]
- 72:3
**acknowledges** [1]
- 71:25
**acknowledging**
[1] - 72:7
**acquire** [1] -
46:17
**action** [7] - 36:11;
50:25; 51:6, 12,
16, 25; 65:18
**actions** [3] -
28:17; 65:15
**actual** [2] - 10:21;
98:2
**add** [6] - 24:3, 7;
40:17; 58:14;
103:4; 108:23
**added** [1] - 103:7
**additional** [6] -
40:17; 66:20;
73:7; 79:25;
81:18; 97:7
**additionally** [1] -
97:4
**address** [4] -
31:5; 42:18;
80:15
**addressed** [1] -
90:15
**adequate** [1] -
102:18
**adjourned** [2] -
109:4, 19
**advanced** [1] -
16:13
**affidavit** [1] -
15:16
**afterwards** [1] -
24:10
**ago** [5] - 4:19;
46:3; 53:17;
57:2; 60:8
**agree** [15] - 5:24;
9:14; 11:20, 22;
19:10, 15;
31:13, 15;
37:13; 43:13;
44:1; 62:15;
72:23; 79:18;
94:16
**agreed** [10] -
34:19; 36:3;
44:7, 9; 51:23;
58:2; 75:4; 77:9;
104:1, 21
**agreement** [5] -
33:23; 78:25;

Telephonic Discovery Dispute Hearing 4/29/25

79:2; 92:11
**agreements** [2] - 34:20, 22
**ahead** [7] - 2:6; 4:7; 13:14; 83:18; 99:11; 105:4; 108:10
**aired** [1] - 79:6
**al** [1] - 2:9
**Alex** [1] - 16:4
**Alexander** [1] - 2:15
**alia** [2] - 65:7, 10
**allege** [1] - 36:17
**alleged** [2] - 36:11; 53:24
**alleging** [1] - 65:6
**allow** [9] - 22:15; 27:8; 34:11; 37:1; 39:19; 48:11; 60:3; 77:21
**allowed** [2] - 27:12; 68:16
**allowing** [1] - 65:14
**allows** [2] - 36:25; 37:1
**almost** [2] - 55:8; 57:7
**alone** [1] - 67:2
**alterations** [1] - 61:12
**amend** [1] - 108:25
**amended** [3] - 40:6; 108:22; 109:10
**Amended** [3] - 36:7; 39:16; 65:6
**amount** [2] - 34:16; 52:13
**analysis** [1] - 57:3
**Anime** [1] - 57:18
**answer** [11] - 4:1; 5:8, 10; 16:12; 20:15, 21; 28:4; 59:17; 93:2, 4; 104:14
**answered** [2] - 5:5; 24:22
**answers** [4] - 8:21; 74:6; 80:2, 18
**anyway** [6] - 28:2; 52:10, 16; 56:1; 88:17; 107:11
**anyways** [1] - 105:23

**apologies** [7] - 7:5, 11, 24; 8:8; 35:7; 47:11; 83:2
**apologize** [10] - 8:8; 9:23; 15:4, 12; 16:18; 40:3; 48:16; 75:6; 81:4; 109:18
**appeal** [4] - 12:12, 21; 28:2; 75:13
**appear** [3] - 22:7; 102:6, 10
**appearance** [2] - 2:17; 3:2
**appearing** [1] - 2:13
**appended** [1] - 109:15
**appendix** [1] - 70:1
**applicable** [1] - 73:16
**applied** [1] - 97:22
**apply** [2] - 29:8; 80:13
**appreciate** [5] - 24:13; 64:2; 86:3; 105:11
**approach** [1] - 26:7
**appropriate** [6] - 5:12; 33:22; 47:10; 50:9; 68:9; 108:9
**April** [16] - 6:16; 31:19; 34:1; 45:23; 58:13; 59:12, 15, 21, 23; 60:19; 69:12; 78:22; 84:7; 90:8
**areas** [2] - 48:18; 49:3
**argue** [2] - 34:14; 67:14
**arguing** [1] - 65:21
**argument** [11] - 5:9; 10:8; 38:21; 39:3, 5; 40:14; 66:23; 67:1, 22, 25; 68:12
**arguments** [2] - 63:2; 80:6
**articulate** [1] - 74:15
**articulated** [4] - 13:24; 63:16;

87:13; 108:24
**assert** [1] - 65:11
**asserted** [1] - 89:9
**assertions** [3] - 103:13; 104:7, 10
**associate** [2] - 2:16; 3:3
**assumed** [1] - 91:2
**assuming** [3] - 3:17; 5:23; 16:22
**assurance** [1] - 66:5
**assurances** [3] - 49:1; 65:25; 66:19
**attach** [1] - 18:10
**attached** [6] - 17:21; 18:11; 82:16; 94:18, 23
**attachments** [5] - 4:11, 14; 12:19; 64:24; 94:20
**attempt** [3] - 11:24; 14:1; 80:15
**attempted** [2] - 7:17; 14:9
**attempting** [4] - 25:7; 51:15; 75:7
**attempts** [3] - 6:9; 14:4
**attestation** [1] - 72:11
**attorneys** [2] - 50:13; 52:14
**audience** [1] - 107:9
**audio** [2] - 61:18; 70:6
**authentication** [1] - 32:21
**availability** [1] - 85:21
**available** [13] - 14:24; 16:9, 23; 41:11, 13; 42:18, 21, 25; 43:2; 44:6; 46:23; 84:12; 85:17
**await** [1] - 104:20
**aware** [3] - 22:10; 68:18; 102:23
**backed** [1] - 22:23
**background** [2] -

53:9; 82:22
**backwards** [2] - 18:3, 15
**bank** [1] - 101:19
**bar** [1] - 62:16
**based** [3] - 33:17; 63:16; 102:5
**basics** [1] - 79:18
**basis** [8] - 13:6; 49:8; 67:2; 69:15; 74:13; 82:7; 89:9
**batch** [1] - 21:22
**Bates** [4] - 21:14; 24:6; 100:8
**bear** [1] - 51:20
**become** [1] - 22:9
**began** [1] - 60:7
**begin** [3] - 39:7, 11, 22
**beginning** [3] - 5:14; 30:11; 88:2
**begins** [1] - 30:18
**begun** [1] - 46:5
**behalf** [5] - 2:13, 19; 3:14, 18; 4:5
**behind** [1] - 73:10
**Bei** [1] - 2:16
**believes** [1] - 49:23
**below** [1] - 76:20
**benefit** [5] - 73:15; 91:13; 92:15; 97:5
**best** [5] - 33:13; 57:5; 58:7; 90:9; 92:4
**better** [4] - 24:18; 25:15; 60:24; 85:6
**between** [6] - 5:4; 53:3, 25; 78:21; 90:17; 106:11
**beyond** [3] - 42:13; 85:20; 106:9
**big** [4] - 57:16; 101:7; 106:4
**Bioservices** [1] - 68:22
**bit** [4] - 85:18; 91:23; 98:17
**bits** [1] - 25:11
**block** [1] - 42:17
**blue** [1] - 7:14
**boilerplate** [1] - 83:15
**book** [1] - 57:17
**borne** [1] - 44:19

**bother** [1] - 70:7
**bothered** [1] - 70:1
**breaking** [1] - 22:17
**bricked** [1] - 66:9
**brief** [1] - 105:12
**briefed** [4] - 78:9; 90:3; 97:10; 105:10
**briefing** [1] - 78:10
**bring** [3] - 17:8; 60:22; 76:4
**broad** [8] - 34:5; 38:8; 49:3; 51:1, 6, 9; 83:12; 86:12
**broader** [2] - 40:19
**broadly** [1] - 62:12
**broke** [2] - 22:22; 69:21
**broken** [1] - 24:9
**brought** [3] - 80:2; 102:4, 15
**brung** [1] - 102:10
**bulk** [3] - 55:13; 57:10, 16
**burden** [17] - 26:3, 22; 27:13; 61:16; 62:22; 67:4; 70:10, 23-24; 71:1, 3; 72:15; 97:6, 24; 98:6, 9
**burdensome** [5] - 25:25; 62:21; 63:1, 11; 96:20
**Bureau** [1] - 72:2
**business** [6] - 14:20; 20:20; 23:25; 24:17; 65:8; 69:24
**busy** [1] - 52:12
**button** [3] - 15:13; 60:10
**buy** [1] - 62:20
**bye** [2] - 109:19
**bye-bye** [1] - 109:19
**calendar** [3] - 85:22; 86:1; 87:6
**cannot** [3] - 21:22; 44:1; 99:21
**captive** [1] - 107:9
**care** [2] - 27:10;

82:22
**Carter** [2] - 2:13, 15
**case** [46] - 2:6; 3:2; 20:25; 26:9, 20; 35:14; 37:8, 14; 38:20; 41:3, 7; 43:6, 8, 14; 44:20; 47:9; 49:20; 52:7; 54:15; 62:11; 63:12; 65:4; 71:17, 24; 72:2; 82:5; 83:14; 92:4; 93:11; 94:25; 97:8, 18; 98:20; 99:2, 4, 7, 10, 15; 100:1, 4-5; 105:6
**Case** [1] - 2:8
**cases** [1] - 62:19
**cat** [1] - 101:23
**categories** [1] - 53:5
**caught** [1] - 59:25
**cell** [1] - 65:13
**certain** [5] - 14:10; 34:21; 41:22; 53:3; 101:14
**certainly** [11] - 9:18; 12:21; 26:24; 29:20; 31:2; 43:11; 54:23; 60:13; 61:21; 73:22; 107:2
**certificate** [1] - 10:9
**certifications** [1] - 72:4
**cetera** [1] - 41:10
**chain** [2] - 42:17; 98:21
**chance** [6] - 72:13; 74:2; 81:7; 85:8; 92:1, 5
**changed** [1] - 91:21
**changes** [2] - 34:13
**channels** [2] - 29:16; 67:19
**character** [1] - 25:21
**chart** [1] - 55:14
**chat** [2] - 45:8; 63:22
**chats** [2] - 29:16

**check** [2] - 52:20; 100:20
**checking** [3] - 9:16; 19:3; 84:10
**Chen** [84] - 2:9, 14; 3:14, 18; 4:5; 14:24; 15:20; 16:22; 19:8; 20:1, 19; 22:14; 23:23; 24:17; 26:12; 34:8; 35:8, 11, 15, 19; 36:7, 19; 37:8, 11-12, 16, 19; 38:8, 20-21, 25; 39:6, 20; 44:23; 46:1; 47:9, 11-12; 48:9; 51:23; 53:11; 54:4; 62:3; 64:25; 65:5-7, 11-12, 16, 18; 66:2, 4, 13, 23; 67:14, 22; 69:18; 70:12, 22; 72:6; 79:18; 84:21; 86:8, 10; 94:19; 96:25; 102:8
**Chen's** [22] - 2:24; 13:18; 14:17; 15:16; 19:17; 24:21; 26:2, 13; 28:17; 50:13, 20, 23, 25; 62:5; 65:22; 66:8, 10; 67:7, 10; 68:15; 69:23; 94:19
**chime** [1] - 3:25
**chose** [1] - 25:21
**Christina** [1] - 3:12
**chronicled** [1] - 68:4
**Chuang** [5] - 12:21; 13:1; 68:20; 72:1; 108:7
**Chuang's** [1] - 13:7
**chunk** [1] - 57:16
**circle** [1] - 6:25
**circuit** [1] - 10:4
**circumstances** [1] - 73:6
**circumstantial** [2] - 23:6, 15
**citation** [1] - 99:15

**cited** [2] - 62:14, 19
**Civil** [4] - 2:8; 51:8; 86:7, 16
**claim** [15] - 34:17; 36:25; 38:20; 39:9, 11; 40:9; 42:11, 13; 46:15; 47:12; 69:1; 93:11
**claimed** [1] - 74:5
**claiming** [3] - 10:8; 74:13; 97:23
**claims** [12] - 34:8; 35:23; 36:10; 39:4; 46:4, 6-7, 12; 61:24; 66:10; 82:6; 102:12
**Claims** [2] - 69:1, 3
**clarification** [1] - 79:25
**clarify** [4] - 11:8; 29:5; 77:7; 109:11
**clarity** [1] - 60:11
**Clattenburg** [1] - 3:11
**clear** [11] - 7:13; 12:12; 36:18; 43:14; 60:6, 22; 71:21; 77:12; 86:4; 89:7; 108:8
**clearer** [2] - 92:23
**clearly** [3] - 52:1; 70:24; 74:14
**CLERK** [2] - 2:5, 7
**clerk** [5] - 4:8; 16:13; 76:10, 15, 17
**client** [7] - 16:22; 23:23; 24:16, 22; 27:3; 28:9; 72:9
**clients** [1] - 65:15
**Cloud** [1] - 33:17
**Cloud-based** [1] - 33:17
**CM/ECF** [2] - 7:12; 8:20
**co** [2] - 17:21; 18:5
**co-counsel** [1] - 18:5
**co-counsel's** [1] - 17:21
**code** [34] - 34:9,

12, 17; 37:19; 38:22; 39:6, 10, 17, 20; 40:9, 13; 41:10, 20; 42:11, 15-16, 19; 43:3; 47:5, 13-14, 16, 23-24; 63:17; 102:4, 11, 24
**code-related** [1] - 102:11
**codes** [3] - 46:19; 47:5; 65:7
**COGNATE** [1] - 68:22
**Cognate** [1] - 68:22
**colleague** [2] - 4:4; 30:10
**colleagues** [4] - 2:14; 3:10; 85:5; 86:2
**collected** [15] - 24:12, 24; 25:9; 28:16, 24; 29:13, 19; 30:4, 18, 20; 32:7; 33:4, 18; 41:12; 68:2
**collection** [8] - 25:4, 12; 27:16; 49:22; 65:1; 86:11; 92:7
**collections** [1] - 68:6
**collects** [2] - 33:14
**college** [2] - 44:23; 45:8
**collusive** [1] - 12:25
**comic** [2] - 57:17
**comments** [2] - 9:20; 19:11
**communication** [2] - 41:14; 42:24
**communications** [1] - 34:16
**company** [5] - 30:13; 43:25; 48:20; 65:8
**compel** [15] - 77:14; 79:3; 80:3; 89:4, 12; 90:2, 6, 10, 13, 24; 91:16; 92:16; 94:23; 108:9
**complaint** [4] -

22:19; 40:6; 42:4; 47:13
**Complaint** [3] - 36:7; 39:16; 65:6
**complete** [3] - 58:7; 81:21; 85:24
**completed** [1] - 57:2
**complied** [1] - 65:19
**comply** [3] - 12:9; 65:16; 66:24
**complying** [1] - 72:5
**compromise** [4] - 35:4; 36:2; 42:7; 106:8
**compromised** [1] - 35:16
**compromises** [3] - 35:22; 42:6; 86:15
**computer** [4] - 8:8; 15:5; 34:9; 65:7
**concept** [1] - 69:16
**concern** [8] - 44:18; 45:2, 15; 51:17; 52:4; 64:2; 74:4; 78:4
**concerned** [2] - 48:18; 101:5
**concerning** [2] - 101:12, 25
**concerns** [1] - 64:4
**concluded** [1] - 109:21
**conducting** [1] - 49:5
**confer** [74] - 5:25; 6:5, 12; 7:1, 16-18, 23, 25; 11:2, 8, 23-25; 12:9, 14; 13:3; 41:23; 42:6; 43:23; 52:11; 59:20; 60:1, 3, 9, 12; 69:13; 73:13, 17, 21, 25; 74:5, 7-8; 75:9, 12; 76:1, 6, 21; 78:10, 14, 16; 79:5, 16, 25; 81:11, 25; 82:6, 20; 83:24; 84:5; 85:21, 24;

86:19, 25; 88:14; 89:16; 90:4, 7, 9, 23, 25; 92:15, 18; 93:23; 97:12; 101:3; 104:19; 105:12, 23, 25; 107:10
**conference** [1] - 67:1
**conferred** [10] - 6:16; 7:7; 8:19; 12:22; 60:24; 69:17; 76:7; 80:14; 87:15; 105:10
**conferring** [8] - 12:20; 74:3; 77:16; 83:8; 86:14; 89:2, 11; 91:20
**confers** [6] - 34:22; 78:7, 11; 80:1; 94:3
**confess** [1] - 36:9
**confidential** [3] - 21:22; 80:20; 100:2
**confidentiality** [1] - 99:25
**confusion** [1] - 75:6
**consider** [3] - 90:16; 102:20; 103:4
**consideration** [2] - 77:15; 92:13
**considerations** [1] - 29:15
**considered** [2] - 95:2; 101:17
**consistency** [2] - 40:19; 41:4
**consistent** [3] - 28:12; 79:3; 82:1
**consolidated** [2] - 65:4; 102:9
**contain** [2] - 29:17; 43:12
**contemplates** [1] - 5:25
**contend** [1] - 65:18
**content** [2] - 21:22; 104:19
**contention** [1] - 47:21
**context** [3] - 62:18; 98:24;

103:17
**contingent** [1] - 39:10
**continue** [4] - 45:22; 69:12; 82:10; 83:21
**continues** [3] - 37:22; 67:2
**continuing** [1] - 37:20
**contradictory** [1] - 66:11
**conversion** [5] - 36:24; 46:15, 18; 58:23
**convince** [1] - 73:1
**copies** [3] - 11:3; 16:12; 102:24
**copy** [6] - 5:24; 9:5, 10, 14, 22; 21:5
**copyright** [1] - 47:18
**corporate** [1] - 3:18
**correct** [35] - 6:1; 10:15, 17-18; 11:18; 14:21-23; 15:16, 23; 17:16; 19:4, 6, 9; 20:12; 24:2, 19; 29:4, 23; 30:10, 19; 39:14; 42:5; 50:22; 54:7, 17, 24; 56:20, 25; 58:22; 88:12; 96:8, 10; 105:1; 108:18
**correctly** [3] - 14:20; 19:19; 50:20
**correspondence** [1] - 101:4
**counsel** [53] - 2:10, 24; 3:6; 7:8, 18, 25; 8:15; 9:1, 10; 11:12; 14:13; 18:5; 19:7, 21; 22:20; 23:3; 26:2, 13, 16, 22; 29:23; 34:8; 47:2; 49:23; 50:21, 23; 51:14; 52:3; 59:21; 65:22; 66:4, 11, 13, 24; 67:7, 10; 68:15;

70:15; 72:25; 75:10; 77:7; 78:5; 80:2, 4; 94:20; 97:3; 101:10; 102:19, 23; 104:5; 105:13

**counsel's** [5] - 9:17; 17:21; 49:15; 78:12, 15

**counter** [1] - 19:11

**counters** [1] - 66:23

**couple** [4] - 52:20; 106:9; 107:8, 12

**course** [9] - 3:9; 5:14; 17:7; 24:9; 34:7; 48:5; 61:18; 67:13; 105:15

**coursework** [1] - 45:8

**COURT** [278] - 2:3, 6, 20; 3:4, 13, 16, 23; 4:7; 5:20, 22; 6:4, 12, 18, 24; 7:9, 12, 20, 22; 8:3, 5, 11, 13, 17; 9:2, 11, 14, 21, 25; 10:4, 8, 16, 19, 24; 11:15, 19; 12:3, 5; 13:22; 14:16, 23; 15:3, 9, 13, 18, 24; 16:2, 6, 19; 17:1, 7, 12, 18; 12:2, 7, 15, 19, 24; 19:1, 5, 14; 20:5, 9, 13, 15; 21:5, 11, 19, 23; 22:5, 11, 24; 23:8, 11, 15, 21; 24:13, 20; 25:17, 19; 26:2; 27:23; 30:1, 6, 14, 22; 31:3, 11, 16, 21, 23, 25; 32:4, 10, 14, 17, 21; 33:1, 3, 8, 12, 20; 34:24; 35:6, 10, 12, 20; 36:1, 5; 37:6, 15, 24; 38:3, 14; 39:13; 40:2, 10; 41:1, 16; 43:4, 7, 21; 44:13, 16; 45:1, 10, 13, 16;

46:6, 13, 21; 47:17, 20; 48:1, 21; 49:6; 50:11, 17, 19, 24; 51:4, 18, 20; 52:8; 53:19, 24; 54:4, 9, 12, 14, 18, 25; 55:3, 11, 23; 56:1, 10, 21; 57:20, 22, 25; 58:4, 9, 20, 25; 59:10, 14, 22, 24; 60:4; 61:11, 15, 25; 63:23; 64:6, 9, 13, 15, 18; 74:8, 12, 19, 22, 25; 75:11; 76:3, 5, 15, 17; 77:1, 11; 78:18, 20; 79:11; 80:11, 22, 25; 81:6, 10, 13, 17, 23; 82:3, 17; 83:3, 22; 84:11, 14, 17; 85:7, 16; 86:4, 6, 22; 87:4, 8, 10, 21; 88:3, 7, 10, 20, 24; 89:23; 90:20; 91:1, 11, 17; 93:19, 22; 94:10, 12; 95:9, 12, 14, 24; 96:2, 11, 15, 17; 97:13; 98:12, 15; 99:5, 8, 11, 13, 17, 19; 100:6, 16, 20; 101:23; 102:13, 17; 103:11, 21, 23; 104:3, 9, 22; 105:3, 15, 18; 106:3, 18, 21; 107:6, 19, 25; 108:6, 15, 17, 20, 22; 109:2, 9, 12, 14

**court** [14] - 5:16; 13:5, 11; 16:11; 60:15; 66:21; 72:16; 73:14; 82:11; 92:18; 93:14, 24; 94:4

**Court** [7] - 2:8; 65:16, 19; 67:6; 68:25; 69:2

**Court's** [2] - 64:3

**courtesy** [2] - 4:8; 83:6

**courtroom** [3] -

2:4; 95:18; 109:18

**covered** [1] - 57:6

**crafted** [1] - 86:13

**created** [1] - 40:12

**creation** [2] - 41:10, 19

**Crenny** [1] - 3:11

**crosstalk** [6] - 3:20; 12:4; 55:25; 58:12; 87:25; 103:22

**crypto** [1] - 65:8

**currency** [1] - 65:8

**custodians** [1] - 97:17

**custody** [1] - 20:17

**customer** [2] - 97:1

**cut** [2] - 62:1; 88:1

**cutoff** [1] - 42:3

**damage** [1] - 46:11

**damages** [8] - 36:25; 37:1, 4; 46:7, 15, 18

**Dan** [1] - 2:17

**Daniel** [1] - 2:18

**Daryl** [4] - 96:24; 97:1, 16

**data** [6] - 14:10, 12; 30:4; 49:2, 4; 66:9

**date** [81] - 6:12, 22; 7:15; 8:5, 18, 22; 9:11; 11:9; 21:12, 17, 23; 30:7; 31:23; 32:7, 10, 16-17; 33:22, 25; 34:1, 5-6; 36:11, 20-22; 37:10, 13, 16-17; 38:7, 12, 15, 18, 25; 39:1; 40:22, 25; 41:21; 42:1, 3, 7, 13; 43:17, 19; 45:22, 25; 46:4, 21-22, 24; 47:10; 51:23, 25; 57:10, 13; 58:9; 59:22; 68:10; 72:24; 73:24; 78:22; 82:19, 24; 86:24; 98:4; 106:5, 25

**dates** [30] - 8:1; 25:4; 27:16; 29:1; 32:14; 36:8; 40:22; 52:19; 53:2, 7, 12, 24; 54:5, 21; 55:3, 5-6, 15, 17; 56:4; 59:4; 65:1; 72:19; 84:7; 86:11; 90:8; 92:8; 95:3; 104:1

**David** [7] - 2:14; 3:14; 8:24; 13:18; 14:17, 24; 15:20; 16:22; 19:8, 16; 20:19, 25; 22:14; 23:23; 24:16, 21; 26:12; 28:17; 34:8, 17; 37:19; 38:21, 25; 39:6, 20; 40:12; 44:4, 11, 23; 47:4, 12; 48:9; 50:5, 13, 20, 23-24; 54:4; 62:5; 64:25; 65:6, 12, 16, 18, 22, 25; 66:2, 4-5, 8, 10, 13, 17, 23; 67:7, 10-11, 24; 68:15; 69:18, 23; 70:5, 12, 22; 72:6; 79:18; 84:21; 86:10; 94:19

**David's** [6] - 20:24; 39:17; 49:21; 51:11, 15; 67:15

**days** [5] - 16:11; 73:10; 94:2, 6; 106:9

**deadline** [1] - 106:22

**deal** [3] - 12:7; 64:21; 79:21

**dealing** [3] - 57:17; 90:24; 106:13

**December** [10] - 18:20; 19:6, 16, 18; 34:2; 37:17; 42:7; 44:5; 57:11; 68:3

**decides** [1] - 71:22

**decision** [5] -

12:20; 68:23; 99:16; 101:3

**declaration** [18] - 14:17; 20:18; 24:21; 28:8, 14; 44:14; 62:5, 22, 24; 66:18; 69:23; 71:23; 72:6, 10; 86:8

**defendant** [5] - 3:6, 18; 64:25; 66:8, 23

**defendants** [21] - 4:5; 25:13; 29:6, 12; 35:19; 39:3; 40:24; 42:10; 43:24; 45:9; 51:22; 57:5; 58:6, 17; 59:3, 5, 12; 97:16; 98:21; 102:4, 24

**defendants'** [7] - 14:13; 15:22; 41:24; 51:22; 98:16; 101:24; 102:18

**defense** [3] - 34:14; 102:7

**defenses** [3] - 37:18; 101:25

**defer** [2] - 31:9; 87:12

**deferring** [1] - 87:14

**defined** [2] - 49:17; 62:12

**degree** [1] - 41:22

**delayed** [1] - 66:13

**delete** [2] - 66:5; 71:22

**deleted** [33] - 17:14; 23:10; 26:15; 29:9; 45:12; 49:19; 50:6; 52:25; 53:3, 8, 12, 25; 54:5, 7, 11, 14, 18, 22-23; 56:14; 57:3; 58:3; 65:8, 14, 24; 66:15; 67:11, 20-21, 23; 68:8; 71:13

**deleting** [3] - 45:12; 49:2; 65:25

**deletion** [2] - 45:7; 49:22

**deletions** [12] -

11:12; 48:17, 19; 49:1, 5; 55:5, 7; 56:9, 16; 59:20; 65:23; 68:5

**demonstrating** [1] - 67:5

**denied** [2] - 12:16; 67:3

**deny** [2] - 12:7, 13

**denying** [2] - 73:18; 76:1

**depose** [4] - 17:22; 19:8; 20:1; 50:5

**deposed** [2] - 14:24; 16:23

**deposited** [1] - 42:20

**deposition** [19] - 8:1, 24; 15:20; 19:13, 17; 20:1; 49:8, 13, 15-16; 50:3; 51:23; 52:5, 10; 60:18; 70:21; 79:19

**depositions** [1] - 50:9

**deprives** [1] - 73:19

**deputy** [3] - 2:4; 95:18; 109:18

**describe** [2] - 33:13; 57:5

**described** [1] - 6:10

**description** [1] - 57:14

**designate** [1] - 100:2

**designated** [1] - 21:21

**despite** [1] - 100:23

**destroy** [2] - 27:8; 72:12

**destroyed** [18] - 23:2; 26:4, 23, 25; 53:11; 65:12; 66:21; 67:6, 8, 15; 69:20; 70:12, 25; 71:4, 15; 72:17

**destroying** [1] - 66:18

**destruction** [1] - 65:20

**determination** [1] - 25:22

determine [2] - 98:25; 101:16
devalue [2] - 37:21, 23
developed [1] - 73:8
devices [1] - 32:22
dialed [1] - 53:17
diatribe [1] - 28:18
DICHARIA [144] - 3:9, 19, 21; 5:21; 6:3, 8, 14, 22; 7:5, 11, 17, 21, 24; 8:4, 23; 9:8, 12; 11:22; 17:6, 10, 17, 24; 18:6, 14, 18; 19:21; 20:8, 12, 14, 23; 21:8, 13, 17, 21, 24; 22:3, 7, 17; 23:6, 9, 14, 20; 34:7; 35:3, 7, 11, 13, 21; 36:2, 22; 37:11, 18, 25; 40:1; 45:11; 46:1, 10, 14, 25; 47:18, 21; 48:14, 22; 49:14; 50:15, 18, 22; 51:2, 10, 19; 52:2; 55:2, 7, 18; 56:7; 57:21; 59:18, 23, 25; 61:9, 13; 74:4, 11, 17, 21, 24; 75:4, 22; 76:4, 13, 16; 77:6; 78:4, 19; 79:10, 24; 80:12; 81:12, 16, 22; 82:2, 13; 83:1; 84:10, 12, 16; 85:4, 15; 87:3, 19; 88:1, 6, 8, 19, 23; 89:22; 91:10, 14; 93:18; 94:9; 95:8, 23; 96:16, 23; 100:18; 101:1; 102:22; 103:20, 25; 104:4; 105:9, 17; 106:17; 107:5; 108:4, 14, 16, 18, 21; 109:1, 8, 10, 13, 20
DiCharia [108] - 3:10, 22; 4:4, 24; 5:20, 23; 7:4; 8:17, 23; 9:5; 11:20; 12:8, 17; 17:3, 5, 16; 19:14; 20:7; 22:12; 24:5; 27:13; 33:20; 36:6; 38:4, 10; 39:14, 25; 43:18; 45:17; 48:2; 53:13; 54:6, 25; 55:1, 6, 16; 59:14; 61:2; 64:22; 65:15, 21; 66:3, 7, 13; 69:25; 70:11, 17, 24; 72:25; 73:5, 12, 18, 23; 74:3, 13, 19; 75:3, 21; 77:3, 5; 81:10; 82:5, 10; 83:5; 84:2, 9, 15, 18; 85:3, 14; 86:14, 22; 87:17; 89:3, 8, 20; 91:1, 9; 92:3; 93:1, 4, 9, 17; 94:8, 15, 22; 95:6, 20; 96:15, 19; 100:7, 22, 24; 102:17, 21; 103:12, 21, 23; 104:11; 105:6; 106:15; 107:13, 25; 108:6
DiCharia's [2] - 18:22; 105:20
different [18] - 13:24; 16:10; 26:17; 35:8; 51:7; 52:25; 53:2, 5, 7; 54:5; 62:13, 15; 68:5; 77:25; 78:2; 79:17; 104:18
differently [1] - 91:24
difficult [1] - 98:24
difficulty [1] - 63:15
digest [1] - 85:9
digits [1] - 101:19
direct [1] - 37:1
directed [4] - 3:24; 4:25; 25:5; 100:11
directing [2] -
64:25; 86:10
directly [3] - 75:2; 78:1; 88:16
directs [1] - 61:22
disagree [3] - 11:21; 31:14; 47:9
disclose [2] - 29:6, 12
disclosed [2] - 26:9; 42:18
disclosure [1] - 66:15
Discord [53] - 11:12; 17:13; 23:10, 13, 24; 24:17; 26:11, 24; 27:1; 28:24; 29:13, 16; 30:9; 31:13; 33:8; 41:14; 44:12, 24; 45:3, 6, 8-9; 48:5; 49:10, 17, 19; 50:6; 51:5, 24; 52:25; 53:7, 12, 21; 56:14; 58:18, 22; 59:1; 65:12, 23; 66:1, 16; 67:11; 70:18; 71:9, 12; 79:21; 84:24; 90:11, 14; 97:1; 98:20
discovered [1] - 66:15
discovery [33] - 2:10; 13:3, 9; 19:24; 20:3; 25:16; 29:24; 34:21, 23; 35:1, 3, 14, 16, 18; 37:4, 7, 25; 41:2, 25; 42:1, 3, 12; 44:1; 46:2, 5; 48:18; 50:8; 60:23; 62:3; 63:7; 67:18; 104:18
discuss [20] - 4:16; 6:6, 13, 15, 20; 7:2, 16, 23; 8:6; 9:7; 10:10, 14, 24; 11:14, 25; 106:7, 23; 107:7, 22
discussed [9] - 6:17; 8:19, 24-25; 12:2; 60:2; 64:12;
74:6; 98:25
discussing [6] - 4:10, 13; 7:6; 75:2; 84:5
discussion [6] - 11:3; 71:6; 78:23, 25; 98:23; 105:11
discussions [9] - 20:25; 21:3; 22:22; 41:23; 57:15; 69:21; 73:10; 97:11; 106:2
disproportionate [4] - 41:6; 43:5; 68:11, 13; 72:21
dispute [12] - 13:3; 23:23; 24:1, 16; 54:4, 6, 14, 16, 18; 56:14, 17
disputes [3] - 13:9; 41:23; 60:23
disputing [3] - 40:12; 53:10, 13
dissolved [1] - 68:15
distinction [1] - 27:5
District [2] - 69:6; 99:3
disturbing [1] - 71:19
doable [1] - 85:25
document [3] - 99:21; 100:3; 102:6
documentation [1] - 41:17
documents [29] - 11:15, 17; 16:8, 10; 34:16; 35:17, 25; 36:4; 42:8, 25; 44:2, 6, 20; 47:2, 4; 65:17; 66:18; 96:25; 97:5, 17; 102:24; 101:7, 24; 102:25; 103:8, 10
dog [3] - 103:12, 18; 104:12
done [10] - 10:9; 12:10, 14; 13:25; 14:4; 28:3, 18; 33:2; 49:13; 60:19; 69:14; 79:21;
85:25; 93:14; 99:23; 100:14; 103:7
double [1] - 19:3
double-checking [1] - 19:3
doubt [2] - 9:17; 92:20
down [10] - 25:20; 50:10; 60:24; 69:21; 77:20; 79:15; 83:10, 16; 89:11; 91:5
dozen [1] - 40:24
drabs [1] - 72:22
draft [1] - 10:22
drafted [2] - 73:5; 80:3
drafts [1] - 55:10
dribs [1] - 72:22
drive [3] - 31:7; 32:11; 33:9
dropped [1] - 20:2
due [1] - 94:6
during [4] - 34:21; 43:23; 48:17; 77:22
duty [10] - 26:18; 51:12; 65:17, 19; 71:21, 25; 72:8, 12
e-mail [13] - 9:16, 18-19; 11:4, 7; 13:13; 16:5; 17:20; 21:5; 60:13; 76:18; 79:22
e-mailed [2] - 58:22; 95:16
e-mails [20] - 10:12, 18; 12:10, 15; 52:12; 60:12; 63:22; 72:9; 96:21, 24; 97:19, 21; 98:2-4, 7, 11, 14
early [2] - 35:25; 72:24
earned [6] - 42:14; 43:2, 25; 44:4, 22; 63:17
ECF [58] - 4:10, 13, 16-17; 6:6, 13, 15, 18; 7:2, 15, 20; 8:6, 24; 9:5, 7, 21; 10:6; 12:8, 17; 13:19;
14:17, 25; 15:18; 16:21; 17:4, 19, 23; 18:20; 26:9; 27:15; 30:2; 36:6; 36:6; 48:4; 50:11; 54:6; 55:14; 61:2, 11; 64:23; 66:22; 70:2; 73:4, 12; 74:19; 75:1, 11; 87:12; 88:2; 91:5; 95:14, 20; 106:14, 23; 108:7; 109:15
edit [1] - 45:7
edited [1] - 49:14
effectively [5] - 38:21; 41:7; 42:23; 90:13; 99:20
efficient [1] - 52:17
efficiently [1] - 13:8
effort [3] - 76:21, 23; 77:19
eight [1] - 30:3
eighth [1] - 57:9
either [7] - 6:5; 13:3, 25; 20:11; 45:24; 81:18; 105:12
electronic [1] - 63:21
Emma [1] - 3:12
end [26] - 29:14; 30:7; 31:20; 32:9, 13; 34:2; 35:25; 36:4, 20-22; 37:16; 38:1; 41:21, 25; 43:17, 19; 45:21, 25; 46:4; 47:10; 50:7; 68:10; 81:19
ending [1] - 30:6
enrichment [3] - 36:24; 37:3; 46:11
ensure [1] - 29:10
enter [1] - 2:17
entered [2] - 54:15; 104:16
entertain [1] - 83:7
entire [2] - 29:13; 103:2
entirely [1] - 94:1
entitled [3] - 62:4;

83:11; 98:22
**entry** [1] - 64:24
**Eox** [1] - 69:4
**errors** [1] - 58:18
**ESI** [8] - 49:20, 22; 50:25; 51:6, 8, 11, 24; 52:1
**essence** [1] - 19:10
**essentially** [4] - 14:12, 14; 19:12; 42:19
**established** [2] - 67:16; 72:1
**establishing** [1] - 70:11
**et** [2] - 2:9; 41:9
**ethical** [1] - 28:12
**evaluate** [1] - 70:4
**event** [2] - 28:14; 36:15
**events** [1] - 56:9
**eventually** [1] - 34:9
**evidence** [74] - 12:25; 15:21; 20:18, 22; 22:12, 15, 19; 23:1, 4, 7, 9, 15; 24:24; 25:6, 23; 26:3, 15, 23; 27:2, 15, 17, 25; 28:5, 23; 29:11, 18; 48:10; 61:19; 62:4, 6-7; 64:25; 65:2, 20; 66:21; 67:5, 7, 9, 12-13, 15; 68:2; 69:18-20, 22; 70:12-14, 19, 21, 25; 71:2, 4, 7, 15; 72:3, 10, 13, 17; 73:3; 77:12, 17; 81:18; 84:22, 25; 86:11; 92:9; 95:2
**exact** [2] - 9:19; 32:7
**exactly** [4] - 12:16; 44:19; 61:4; 76:24
**example** [12] - 4:24; 44:7, 24; 48:19; 63:18; 66:6; 77:24; 82:6; 90:9, 12, 19
**examples** [6] -

100:8, 13-15, 21
**exceed** [1] - 95:5
**except** [1] - 105:15
**exchange** [1] - 104:17
**exchanged** [2] - 10:12, 17
**excluding** [1] - 94:20; 95:10
**excuse** [10] - 19:15; 24:10; 53:11; 63:17; 82:21; 87:21; 91:6; 92:9, 15; 95:12
**exhibit** [3] - 55:22; 70:1; 109:15
**Exhibit** [1] - 15:22
**exhibits** [6] - 21:7; 48:7, 15; 55:19; 70:2; 91:6
**exist** [2] - 38:23; 41:14
**exists** [2] - 27:3; 72:16
**expand** [1] - 37:4
**expect** [3] - 60:11; 81:24; 92:17
**expectation** [3] - 4:17; 92:22; 94:12
**expectations** [1] - 73:21
**expecting** [1] - 89:17
**explain** [2] - 80:8; 104:18
**explained** [4] - 41:6, 12; 76:20; 104:5
**explanation** [4] - 22:21, 23; 28:4; 65:22
**explanations** [2] - 66:11; 104:6
**explicit** [1] - 82:21
**explore** [1] - 43:11
**exported** [1] - 65:23
**extend** [1] - 48:12
**extended** [1] - 42:7
**extensiveness** [1] - 47:6
**extent** [2] - 26:21; 90:21

**extra** [1] - 84:7
**extraneous** [2] - 101:9, 13
**extraordinary** [1] - 52:13
**Facebook** [4] - 48:3, 12; 49:11; 71:7
**fact** [11] - 24:1; 26:4; 39:10, 19; 48:17; 49:1; 54:16; 78:7, 11; 86:14; 97:7
**facts** [4] - 12:24; 72:1; 73:7; 81:18
**factual** [1] - 73:19
**failed** [4] - 12:8; 66:4, 24; 67:4
**fair** [5] - 55:11; 106:14, 17; 107:2
**faith** [1] - 76:23
**fallen** [1] - 80:1
**falls** [1] - 80:9
**false** [1] - 40:6
**far** [10] - 10:21; 54:2; 56:18; 65:19; 74:3; 79:9; 89:24; 91:8, 13; 105:25
**fashion** [2] - 67:13; 92:20
**fastest** [1] - 8:21
**February** [49] - 9:13, 15; 22:4; 30:11, 19; 31:13, 21; 32:15, 18, 25; 33:21; 34:2, 4, 6, 10, 15; 36:11, 14, 17, 19; 37:10, 12-13; 38:6, 11, 18; 39:1, 7, 9; 40:23, 25; 41:3, 9; 45:19, 24; 46:24; 47:8, 10, 25; 57:10; 68:3; 70:6; 72:23; 101:9, 22; 102:22; 103:9
**Fed.Cl** [1] - 80:13
**Federal** [3] - 51:8; 69:1
**federal** [1] - 69:1
**fell** [1] - 80:5
**Fen** [3] - 2:13; 20:24; 70:5
**few** [3] - 38:16;

60:24; 108:1
**fighting** [1] - 79:22
**figure** [5] - 21:25; 25:24; 58:23; 92:2, 25
**file** [6] - 13:2; 75:7, 10; 79:7; 108:9; 109:11
**filed** [17] - 6:18; 22:19; 25:2; 61:6; 65:3, 5; 73:9; 77:7, 10, 21; 79:12; 80:8; 90:3, 6; 93:3
**filing** [15] - 6:8; 7:18; 11:24; 12:17; 21:9; 22:6, 9-10; 29:21; 42:4; 82:14; 84:8; 109:3
**filings** [6] - 3:17; 6:17; 60:20; 69:11; 75:18; 92:6
**final** [3] - 22:11; 87:14; 100:6
**finally** [1] - 66:17
**financial** [5] - 35:17; 97:17; 101:15, 18
**fine** [12] - 19:12; 24:15; 28:2; 56:11; 79:14; 83:3; 94:2; 99:8; 106:9; 109:16
**finish** [5] - 37:15; 58:10; 73:20; 83:6; 89:19
**finished** [2] - 73:3; 75:14
**fire** [1] - 73:2
**Firestone** [1] - 3:10
**firm** [1] - 3:1
**first** [25] - 5:22; 8:21; 10:8; 13:13; 15:19; 17:15; 18:3; 22:18; 25:2; 30:2; 33:25; 35:8; 36:21; 39:10; 40:13; 47:1; 65:12; 66:24; 69:7; 77:23, 25; 84:1; 90:5; 94:8; 101:2
**five** [1] - 16:7

**five-minute** [1] - 16:7
**fix** [1] - 14:1
**flavor** [1] - 103:17
**Florida** [1] - 69:6
**Floyd** [1] - 3:12
**flushing** [1] - 68:12
**focus** [7] - 25:7; 42:8; 44:2; 91:7; 106:10, 24
**focused** [3] - 25:3; 29:7; 41:23
**focusing** [3] - 27:1, 24; 55:12
**folks** [1] - 27:21
**follow** [1] - 105:19
**followed** [3] - 14:11; 19:12; 69:9
**following** [2] - 9:4; 66:23
**forensically** [1] - 33:14
**forever** [2] - 43:8, 10
**forgot** [2] - 9:12; 33:24
**formation** [1] - 30:13
**formatting** [1] - 58:19
**formed** [2] - 38:23; 39:2
**forth** [9] - 5:4; 11:4, 7; 12:10; 13:13; 17:19; 60:13; 67:18; 72:8
**forward** [7] - 13:9; 17:19; 39:3; 81:23; 83:16, 20
**four** [2] - 16:15; 79:5
**frames** [1] - 57:6
**frankly** [6] - 26:15; 27:8; 28:1; 44:18; 73:11; 102:4
**free** [1] - 86:1
**Friday** [2] - 87:5, 8
**friend** [1] - 57:23
**front** [48] - 4:12, 14, 18; 5:24; 13:11; 16:1, 5, 8; 24:24; 25:23; 27:25; 28:5; 29:2; 32:7, 24;

36:8; 48:7; 54:21; 61:4, 9; 62:25; 64:23; 69:20; 70:3, 12, 14, 19, 21; 71:2, 8; 72:1, 6, 13; 73:3, 14; 74:20, 23; 76:9, 13; 81:21; 87:6; 89:14; 92:18; 94:4; 95:15, 20; 107:10
**fruitful** [1] - 76:22
**frustrating** [1] - 15:11
**full** [3] - 20:1; 30:2; 89:10
**fully** [5] - 78:9; 79:5; 89:8; 90:3; 101:8
**fundamental** [1] - 25:10
**fundamentally** [3] - 39:5; 41:11; 64:2
**funds** [1] - 36:17
**future** [4] - 13:2; 29:10; 68:5
**gained** [1] - 37:2
**Galasso** [1] - 69:5
**GALASSO** [1] - 69:5
**Gambino** [7] - 26:19; 27:13; 61:17; 62:18; 68:19; 71:24
**gap** [2] - 61:18; 70:6
**gather** [3] - 34:16; 107:8, 13
**general** [1] - 28:6
**generally** [2] - 57:14; 68:11
**generated** [2] - 43:25; 82:11
**generates** [1] - 42:19
**generic** [3] - 62:25; 63:12; 68:12
**GitHub** [18] - 28:24; 30:23; 32:4, 18; 33:6; 41:12, 18; 46:23; 47:1, 14, 16; 49:11; 62:6
**given** [10] - 9:22; 55:21; 72:13; 82:18; 92:16; 100:7-9, 13, 21

global [1] - 34:20
gotcha [2] - 47:17, 20
Government [1] - 71:25
grade [1] - 57:9
granting [1] - 86:10
graph [3] - 55:12, 14
great [3] - 78:11; 99:24; 100:20
greatly [1] - 85:24
Grimm [2] - 99:16
grounds [4] - 98:17; 99:1, 21; 100:3
group [1] - 57:24
guess [8] - 13:24; 16:14; 17:2; 27:19; 48:3; 57:1, 5; 66:17
guys [1] - 12:10
half [3] - 59:19; 80:14, 19
hand [1] - 25:7
handled [1] - 97:1
hang [2] - 52:3; 91:4
hang-up [1] - 52:3
happy [5] - 83:20; 97:13; 99:3; 100:14, 24
hard [2] - 31:7; 32:11
hardware [2] - 30:23; 32:21
Harp [1] - 2:21
headed [6] - 28:21; 73:1; 84:1, 19; 86:9; 92:7
heading [1] - 86:10
hear [8] - 5:2; 77:2; 83:7; 91:18; 97:14; 100:17, 24; 104:10
heard [18] - 19:6; 38:10; 39:13; 42:10, 13; 43:16; 44:4; 45:18; 50:20; 81:7; 91:23; 95:1; 101:21; 103:9; 104:8; 105:4; 107:1
hearing [9] - 2:10; 28:11; 60:7;

69:11; 75:16; 77:18, 23; 83:25; 91:4
help [6] - 15:10; 20:17; 24:20; 27:18, 25; 71:8
helpful [2] - 38:4; 50:4
Hershberger [1] - 68:19
high [1] - 57:23
history [3] - 29:14; 41:10, 20
hit [4] - 15:13; 60:9, 18
hits [1] - 98:2
hmm [3] - 99:8; 103:24; 108:17
hold [5] - 7:12; 18:7; 73:23; 108:11
holding [1] - 14:15
honestly [3] - 17:11; 59:17; 85:2
honesty [1] - 100:12
Honor [267] - 2:5, 7, 18, 25; 3:9, 15, 19, 22; 4:3; 5:11, 19, 21; 6:3, 8, 11, 14, 23; 7:5, 19, 24; 8:7, 16, 23; 9:8, 10, 12-13, 16, 23-24; 10:7, 13, 23; 11:6, 22; 12:25; 13:21; 14:7, 21; 15:2, 12, 15; 16:25; 17:10, 17, 25; 18:1, 6, 14, 18, 23, 25; 19:4, 9, 22; 20:3, 8, 12, 23; 21:2, 8, 15, 18, 21, 25; 22:4, 7, 10, 18; 23:6, 9, 14, 20; 24:2, 19; 25:1; 29:5, 23; 31:15, 19, 24; 32:2, 6, 13, 20, 23; 34:7, 13, 19; 35:3, 5, 7, 13, 22; 36:3, 23-24; 37:5, 11, 13, 19; 38:1, 13, 16; 40:1, 18; 41:15, 21; 42:17; 43:20;

44:11; 45:5, 15; 46:1, 10, 14, 25; 47:1, 7, 15, 25; 48:14, 16, 19, 23; 49:14, 18; 50:8, 15, 18, 22; 51:2, 10, 14, 19; 52:2; 53:15; 54:3, 17, 22; 55:2, 7, 18, 21; 56:7, 20, 25; 57:4; 58:14, 16; 59:18; 60:1, 3; 61:9, 14, 20, 22; 63:19; 64:2, 17; 74:4, 11, 18, 21, 24; 75:4, 8, 22-23; 76:14, 25; 77:6, 8; 78:4, 8-9; 79:10, 24; 80:8, 18, 23; 81:4, 12, 16, 22; 82:2, 13, 15; 83:1, 19; 84:13, 16; 85:4, 15, 23; 86:21; 87:3, 19; 88:1, 6, 9, 19, 23; 89:22; 90:4, 6, 10, 16, 23; 91:10, 14; 92:10; 93:18, 21; 94:9, 11; 95:8, 11, 23, 25; 96:10, 16, 23; 97:10, 15, 22; 98:19; 99:4, 7; 100:10, 12, 18-19; 101:1, 17, 22; 102:22; 103:10, 19, 25; 104:14, 16; 105:2, 9, 14, 17; 106:17, 20; 107:5, 23; 108:4, 14, 16, 21; 109:1, 7-8, 13
Honor's [3] - 25:11; 44:1; 61:21
hour [2] - 60:7, 16
hours [2] - 51:23; 67:21
hung [1] - 53:17
hypothetical [2] - 93:8; 94:15
ID [3] - 59:7; 90:12
idea [1] - 80:16

identified [13] - 11:23; 19:22; 53:13; 54:6; 55:9, 15; 56:5; 67:8; 97:4, 16; 100:23; 102:25; 103:10
identify [6] - 2:11; 4:20; 55:20; 60:2; 68:2; 101:4
IDs [1] - 59:2
illogical [1] - 40:11
illustrates [1] - 60:17
imaged [1] - 33:17
immediately [1] - 84:13
important [1] - 44:11
impossible [1] - 68:5
in-person [1] - 66:25
inaccessible [6] - 22:14; 65:13; 66:9; 69:19; 70:14; 84:22
Inc [1] - 68:23
include [3] - 51:7; 70:1, 7
included [2] - 70:3; 99:25
including [3] - 38:24; 63:21; 96:25
inconsistent [1] - 86:16
indefinitely [3] - 42:25; 43:8; 44:2
independently [1] - 59:5
index [1] - 70:2
indicated [1] - 25:8
indication [2] - 21:2; 50:6
indirectly [3] - 75:2; 77:24; 88:17
indiscernible [14] - 3:20; 11:17, 19; 12:4; 26:14; 55:25; 58:12; 62:23; 87:25; 94:13; 95:16; 100:22; 103:5,

22
indiscernible] [3] - 14:3; 16:21; 59:3
individual [1] - 97:19
inefficient [1] - 60:20
infer [3] - 23:25; 71:14; 73:4
inference [1] - 27:19
inferring [1] - 51:2
information [28] - 11:13; 22:1; 27:16; 30:9; 33:15, 18; 42:17, 21-22; 43:13, 24; 44:9; 46:8, 16, 23; 48:2, 7, 9, 25; 58:16; 59:4; 64:12; 80:21; 90:12; 91:22; 105:24
informed [1] - 102:23
initial [5] - 19:10; 41:24; 42:2; 71:19; 105:11
initiated [2] - 21:20; 69:11
inspection [1] - 14:9
instance [2] - 38:24; 40:13
instances [2] - 40:21; 68:4
instructions [2] - 82:18, 21
insufficient [2] - 52:11; 76:6
intend [1] - 19:13
intention [1] - 37:7
inter [2] - 65:7, 9
interact [1] - 13:6
interconnected [1] - 87:20
international [1] - 99:14
interplay [1] - 78:20
interpret [1] - 52:4
interpreting [1] - 49:24
interrupt [2] - 24:4; 83:17

intervals [1] - 101:7
intervention [2] - 65:19; 67:6
introduce [2] - 3:7; 5:14
invited [1] - 102:19
invoices [2] - 97:2
involved [1] - 26:16
irrelevant [2] - 67:20; 101:13
irrespective [1] - 61:16
issue [23] - 25:2, 7; 26:10; 44:10, 22; 65:16; 68:19; 69:15, 17; 76:1; 77:10; 78:12; 82:9; 90:5; 92:12; 96:13; 101:21; 102:4, 15; 104:5, 8
issued [8] - 26:8; 27:9; 40:24; 54:19; 56:16; 71:12; 75:18; 79:23
issues [34] - 6:15, 21; 11:25; 19:22; 25:5; 43:20; 60:2; 75:5; 78:2, 9-11, 17; 80:2, 16; 85:10; 89:4; 90:15, 22, 24; 91:19; 94:22; 97:10; 103:6; 105:9, 12, 14; 106:11, 25
Item [8] - 50:19, 24; 98:15; 101:23; 102:21; 103:12, 17; 104:12
item [5] - 63:8, 13; 96:12; 97:14; 102:3
Items [6] - 87:16; 89:1; 96:7; 105:20; 106:13, 24
items [6] - 88:3, 16; 97:7; 104:23; 106:7
itself [1] - 49:7
January [8] - 19:18; 34:21;

50:7; 78:8;
97:11; 104:5, 7
**Japanese** [1] -
57:18
**Jido** [6] - 17:8-10,
14; 26:14
**Jito** [5] - 7:7;
49:17; 58:3;
67:23
**job** [2] - 27:25;
73:20
**Joe's** [1] - 62:13
**joined** [2] - 2:14;
53:20
**joint** [6] - 70:1;
94:5; 104:15;
106:5, 12, 23
**Josh** [2] - 3:21;
18:5
**Joshua** [2] - 3:11;
4:3
**JSR** [2] - 94:17;
95:5
**judge** [1] - 61:21
**Judge** [10] - 2:3;
12:21; 13:1, 7;
68:20, 24; 72:1;
99:16; 108:7
**judged** [1] - 64:4
**July** [10] - 53:25;
55:3, 5, 15, 17;
56:1, 11; 68:15;
71:22
**jump** [1] - 17:19
**jumping** [2] -
8:14; 16:10
**June** [6] - 26:12,
16; 54:19; 55:1;
68:20; 71:12
**Justin** [3] - 3:9;
4:4; 8:23
**keep** [9] - 5:13;
8:14; 11:15;
15:14; 23:24;
35:2; 43:9;
56:22; 73:19
**keeps** [1] - 45:12
**KENNEDY** [2] -
2:18, 23
**Kennedy** [2] -
2:18, 22
**Kevin** [3] - 2:21;
3:2, 11
**key** [2] - 22:14;
69:22
**kid** [1] - 45:3
**kind** [4] - 5:9;
17:14; 84:19;
103:13
**knowing** [2] -

78:16; 92:6
**knows** [1] - 107:9
**lack** [2] - 24:18;
25:15
**Laguna** [1] - 69:2
**Lamoureux** [1] -
3:12
**landscape** [3] -
61:6; 73:19;
91:21
**language** [2] -
5:25; 6:2
**large** [4] - 15:5;
34:23; 98:16;
101:6
**last** [4] - 46:2;
95:14; 97:2;
101:19
**late** [2] - 72:24;
109:18
**latest** [1] - 12:17
**law** [19] - 4:8;
16:13; 25:1, 14;
26:20; 27:10;
43:14; 47:18;
63:12; 68:18;
76:9, 15, 17;
83:14; 94:25;
99:2; 100:4;
105:6
**laws** [1] - 47:19
**lawsuit** [1] - 21:20
**lead** [3] - 37:8;
65:4; 105:20
**learned** [1] - 50:7
**least** [6] - 32:8;
37:4; 45:19;
57:16; 60:21;
71:24
**leave** [2] - 2:17;
83:19
**Ledyard** [2] -
2:13, 15
**left** [1] - 92:10
**legal** [1] - 47:15
**legitimate** [1] -
82:7
**less** [1] - 13:10
**letter** [13] - 17:4;
18:4; 26:17;
45:5; 59:12, 19,
21; 75:11;
80:19; 101:10;
102:24; 103:3
**letters** [1] - 58:16
**letting** [1] - 83:6
**Levy** [8] - 3:7,
10-11, 16, 25;
4:1, 4; 18:5
**LEVY** [1] - 4:3

**Li** [3] - 2:13;
20:24; 70:5
**liability** [1] - 35:24
**lieu** [1] - 92:21
**light** [1] - 104:11
**likely** [1] - 29:17
**limit** [4] - 51:15;
55:21; 94:17
**limited** [9] - 8:1,
24; 15:20; 47:2;
49:8, 16; 51:4;
63:22
**line** [5] - 2:4; 3:3,
5, 11; 86:3
**LinkedIn** [5] -
48:4, 12, 15;
49:11; 71:7
**list** [2] - 3:4; 31:12
**listed** [1] - 74:22;
97:19
**listing** [1] - 88:2
**lists** [1] - 77:25
**literally** [6] - 5:10;
9:3; 63:23; 93:8;
109:16
**litigation** [7] -
33:23; 36:8, 19;
56:9, 23; 101:9;
102:9
**litigation's** [1] -
71:21
**litigators** [1] -
83:9
**live** [1] - 61:8
**LLC** [1] - 35:19
**Local** [5] - 5:24;
10:9; 66:24;
69:9; 78:21;
79:3; 80:7;
86:16; 91:16
**location** [1] -
41:11
**log** [4] - 103:14,
16; 104:1, 21
**logjam** [1] - 60:18
**logs** [2] - 104:1,
17
**look** [33] - 8:2;
14:25; 25:20,
23; 26:19;
27:12, 14;
39:17; 47:3;
48:10; 50:11,
24; 55:16; 62:4,
6, 10, 23; 64:10,
22; 68:18; 70:4,
8; 74:2; 77:11,
14; 81:10;
87:17; 88:12;
91:5, 7; 100:8

**looked** [2] -
68:24; 69:4
**looking** [26] -
9:19; 18:8; 21:7,
14; 30:2; 36:6,
19; 55:4; 56:2;
61:2, 5, 12-13;
62:8; 63:18;
76:9; 81:20;
82:21; 85:13,
22; 94:14; 95:1;
96:17; 102:5;
104:12, 25
**looks** [5] - 9:13;
18:20; 22:3;
96:2
**lost** [8] - 26:4;
64:19; 67:8;
70:13, 25; 71:3;
72:17
**low** [1] - 62:16
**luck** [1] - 109:4
**Madelyn** [6] -
2:16; 16:4;
30:10, 19; 31:9
**magnitude** [1] -
48:25
**mail** [13] - 9:16,
18-19; 11:4, 7;
13:13; 16:5;
17:20; 21:5;
60:13; 76:18;
79:22
**mailed** [2] - 58:22;
95:16
**mails** [20] - 10:12,
18; 12:10, 15;
52:12; 60:12;
63:22; 72:9;
96:21, 24;
97:19, 21;
98:2-4, 7, 11,
14
**maintain** [1] -
41:7
**majority** [1] - 78:1
**Malyshev** [1] -
2:15
**Manga** [2] - 57:18,
21
**manga** [1] - 57:20
**March** [12] - 6:14,
19-20; 11:9, 25;
26:8; 42:2, 4;
68:24; 69:12;
79:25
**Marriott** [1] -
99:14
**Maryland** [2] -
44:25; 99:3

**Maryland's** [1] -
28:12
**match** [1] -
101:20
**material** [1] -
101:13
**matter** [13] - 2:7,
9; 37:8; 56:12;
57:15; 61:18;
62:16; 65:4;
71:19; 78:5;
95:18; 102:8
**matters** [1] -
44:17
**mean** [32] - 9:3;
11:16; 24:1;
27:6, 10; 28:14;
33:8; 36:10;
40:4, 21; 43:11;
47:18; 49:9;
51:8; 52:9;
53:22; 54:8;
60:6, 10; 62:18,
20-21; 63:3;
64:1; 72:25;
73:7; 84:15;
90:16; 92:14;
105:19, 22
**means** [4] - 23:16;
24:8; 33:15;
96:11
**meant** [2] - 12:5;
52:11
**medical** [1] -
68:25
**meet** [88] - 5:25;
6:1, 5, 12; 7:1,
15, 17-18, 23,
25; 8:5; 11:2, 8,
22, 24-25; 12:9,
14; 13:3; 26:3,
22; 34:22;
41:23; 42:6;
43:23; 52:11;
59:20; 60:1, 3,
9, 12, 14; 62:22;
67:4; 69:12;
73:13, 17, 21,
25; 74:2, 5, 7-8;
75:9, 12; 76:1,
6, 21; 78:7-9,
11, 14, 16; 79:5,
16, 25; 80:1;
81:11, 25; 82:6,
20; 83:23; 84:5;
85:21, 24; 86:2,
19, 25; 88:14;
89:16; 90:4, 7,
9, 23, 25; 92:18;
93:23; 94:3;

97:12; 101:3;
104:19; 105:12,
23, 25; 107:9
**meet-and-confer**
[41] - 11:8, 25;
12:9; 41:23;
42:6; 43:23;
52:11; 59:20;
60:1, 3, 9, 12;
73:17; 74:7;
76:1, 6; 78:14,
16; 79:25;
81:11, 25; 82:6;
84:5; 85:21, 24;
86:19, 25;
88:14; 90:4, 7,
9, 23, 25; 92:18;
93:23; 97:12;
101:3; 104:19;
105:25
**meet-and-
confers** [6] -
34:22; 78:7, 11;
80:1; 94:3
**meeting** [9] - 6:9;
12:20; 69:9;
77:16; 83:8;
86:13; 89:2, 11;
91:20
**member** [1] - 65:5
**members** [2] -
21:14, 25
**memo** [2] - 72:4,
7
**memory** [1] -
19:18
**mentioned** [8] -
16:24; 24:7;
40:21; 45:5;
58:15; 90:1, 11;
99:22
**merely** [2] - 10:12;
47:13
**message** [16] -
20:24; 21:9, 12,
15, 17; 24:5;
7-8, 10; 59:2, 7;
70:5; 75:19;
77:19; 98:21
**messages** [60] -
7:7; 14:12;
17:13; 21:3;
22:15; 23:10;
24:3, 23; 26:11,
14, 24-25; 27:8;
45:12; 49:17,
19; 50:6; 52:25;
53:1, 8, 12, 21,
25; 54:5; 56:14,
23; 57:12; 58:1,

6, 24; 59:4, 8; 65:13, 23-24; 66:1, 6, 16; 67:11, 17, 20, 23; 70:18; 71:9, 12, 16; 97:1; 98:16, 20; 99:24; 100:1; 101:6, 14

**messaging** [1] - 24:18

**met** [18] - 6:14, 16, 20; 7:7; 8:18; 12:22; 27:13; 60:24; 61:16; 69:17; 70:10, 23; 71:1, 3; 76:7; 80:14; 87:15; 105:10

**methodical** [1] - 92:19

**middle** [4] - 52:9; 98:21, 23; 100:3

**might** [2] - 41:14; 88:15

**Milburn** [2] - 2:13, 15

**mind** [1] - 19:13

**mine** [1] - 60:21

**minute** [12] - 4:19; 16:7; 18:4; 31:6; 33:25; 52:1; 81:6, 8; 82:18; 96:5; 107:20

**minutes** [9] - 16:15; 53:17; 60:7, 17, 24; 107:8, 12, 17, 20

**mishear** [2] - 50:14, 21

**mispronouncing** [1] - 68:22

**missed** [2] - 21:6; 48:13

**misspoke** [1] - 88:4

**mistake** [1] - 79:14

**misunderstood** [1] - 56:5

**mix** [1] - 96:8

**moment** [6] - 9:8, 12; 19:24; 20:7; 21:13, 15

**moment's** [1] - 16:12

**momentarily** [1] - 15:7

**money** [4] - 37:2;

42:14; 43:2; 44:4

**month** [6] - 19:25; 50:5; 55:8, 24; 56:2; 57:2

**months** [5] - 21:19; 30:14; 50:10; 56:5

**moot** [3] - 104:24; 105:16

**mooted** [1] - 12:1

**morning** [3] - 2:3, 14; 13:18

**most** [5] - 57:16; 71:18; 78:6, 11; 80:17

**mother** [2] - 20:24; 21:6

**motion** [44] - 6:11; 12:1, 8, 13; 13:2; 15:23; 25:2; 64:24; 65:3, 11, 21; 67:2; 70:7; 73:18; 75:5, 7, 10, 24; 76:4; 77:14, 21, 25; 78:6, 13-14, 19; 79:3, 8; 80:3; 89:3, 12; 90:2, 5, 8, 10, 12, 17, 21, 24; 91:15; 92:15; 108:9; 109:11

**Moto** [2] - 51:4

**move** [5] - 23:19, 21; 83:16, 21; 89:20

**moved** [2] - 3:1; 20:3

**moving** [6] - 8:8, 15; 10:5; 15:14; 61:7; 83:20

**MR** [274] - 2:12, 18, 23, 25; 3:9, 15, 19, 21; 4:3; 5:19, 21; 6:3, 8, 14, 22; 7:5, 11, 17, 21, 24; 8:4, 7, 12, 16, 23; 9:8, 12, 16, 23; 10:1, 7, 13, 17, 23; 11:6, 18, 22; 13:21; 14:7, 21; 15:2, 4, 11, 15, 22, 25; 16:4, 18, 25; 17:6, 10, 17, 24; 18:6, 14, 18, 23, 25; 19:3, 9, 21; 20:8, 12, 14,

23; 21:8, 13, 17, 21, 24; 22:3, 7, 17; 23:6, 9, 14, 20; 24:2, 19; 25:1, 18; 26:1; 27:22; 29:4; 30:5, 10, 18; 31:1, 9, 22; 33:7, 11, 13; 34:7; 35:3, 7, 11, 13, 21; 36:2, 22; 37:11, 18, 25; 38:13, 16; 40:1, 8, 11; 41:2, 17; 43:5, 19, 22; 44:15, 17; 45:2, 11, 15; 46:1, 10, 14, 25; 47:18, 21; 48:14, 22; 49:14; 50:15, 18, 22; 51:2, 10, 19; 52:2; 53:15, 23; 54:3, 8, 10, 13, 17, 21; 55:2, 7, 18; 56:7, 20, 25; 57:21, 23; 58:1, 5, 10, 13, 21; 59:1, 11, 18, 23, 25; 61:9, 13, 20; 63:15; 64:1, 8, 10, 14, 16; 74:4, 11, 17, 21, 24; 75:4, 22; 76:4, 13, 16, 25; 77:6; 78:4, 19; 79:10, 24; 80:12, 23; 81:4, 9, 12, 16, 22; 82:2, 13; 83:1, 19; 84:10, 12, 16; 85:4, 15, 22; 86:5, 21; 87:3, 7, 9, 19; 88:1, 6, 8, 19, 23; 89:22; 90:1, 21; 91:10, 14; 93:18, 21; 94:9, 11; 95:8, 11, 13, 23, 25; 96:10, 14, 16, 23; 97:15; 98:13, 19; 99:6, 10, 12, 14, 18, 20; 100:10, 18-19; 101:1; 102:2, 14, 22; 103:19, 25; 104:4, 14; 105:1, 9, 17, 22; 106:16, 20; 107:4, 23;

108:4, 14, 16, 18, 21; 109:1, 7-8, 10, 13, 20

**MS** [10] - 31:15, 18, 24; 32:2, 6, 13, 15, 20, 23; 33:2

**multiple** [3] - 47:5; 93:25; 94:1

**Muse** [1] - 3:10

**must** [1] - 65:16

**mute** [8] - 4:8; 5:13; 17:5; 53:14, 17; 75:21, 23; 107:14

**name** [4] - 3:16; 5:15; 8:21; 99:10

**named** [1] - 2:20

**narrative** [1] - 27:7

**narrow** [2] - 67:13; 98:10

**narrowly** [1] - 49:24

**Nathan** [1] - 2:21

**nature** [1] - 36:10

**necessary** [9] - 25:8, 24; 42:12; 61:23; 62:9, 18, 21; 63:11; 73:5

**need** [83] - 4:20; 5:2, 5; 8:18; 10:5; 11:2; 13:7; 14:11; 20:15; 25:23; 26:20; 27:1, 17; 31:4, 9; 32:10; 40:14; 41:9; 42:23; 45:22; 46:15; 52:20; 59:16; 60:25; 61:1, 4; 63:4; 64:20; 73:13-15, 25; 75:19; 77:1, 19-20; 79:15; 81:18; 83:22; 84:4, 9, 24; 85:2, 8, 18-19; 86:13; 89:5, 18, 21; 91:8; 92:6, 17; 93:23; 94:5, 14; 95:19; 97:5; 100:20; 103:16; 104:23; 106:5, 9; 107:7, 20-21, 23; 108:1-3, 7; 109:3

**needed** [8] - 25:23; 35:25; 49:16; 74:23; 75:8; 83:18; 87:1; 101:14

**needing** [1] - 84:8

**needs** [8] - 16:8, 19; 41:7; 43:6; 62:11; 92:5; 93:10; 97:8

**never** [5] - 19:6, 13; 34:19; 103:5; 105:10

**new** [4] - 24:11; 43:25; 70:8; 91:22

**next** [20] - 4:19; 7:1; 14:10, 14; 23:19; 61:1; 67:25; 68:7; 74:16; 83:24; 84:15; 85:1, 6, 13, 17, 20; 86:24; 89:17, 20; 94:2

**nick** [1] - 3:1

**nobody** [2] - 39:24; 70:1

**nobody's** [1] - 27:24

**nomenclature** [1] - 14:2

**nonparty** [1] - 15:20

**nonresponsive** [1] - 101:13

**NOT** [1] - 5:16

**notch** [2] - 83:10, 16

**note** [2] - 34:19; 35:8

**notes** [1] - 107:15

**nothing** [4] - 13:25; 22:20; 70:3; 108:4

**nothing's** [1] - 14:3

**notice** [3] - 16:13; 72:7

**notified** [2] - 4:9; 17:12

**notifying** [1] - 66:13

**novel** [1] - 57:18

**November** [10] - 9:1; 17:19-21; 18:3, 17; 22:21; 32:3; 45:20, 25

**Number** [17] - 2:8; 4:10, 17; 6:18;

12:17; 53:22; 61:2; 63:8, 14; 64:23; 75:1; 87:12; 95:7; 100:8; 108:7; 109:15

**number** [13] - 8:20; 12:15; 21:14; 24:6; 58:18; 60:11, 22; 61:11; 88:11; 97:21; 98:19; 99:24

**numbers** [7] - 7:14; 8:25; 10:19, 25; 16:2; 101:15, 19

**O'Malley** [1] - 62:13

**object** [1] - 52:5

**objected** [1] - 14:13

**objecting** [1] - 94:24

**objection** [1] - 14:15

**objections** [1] - 83:15

**obligation** [2] - 80:19; 98:5

**obviously** [9] - 21:1; 29:8, 24; 61:20; 66:10; 74:12; 96:11; 98:24; 102:8

**occurred** [2] - 36:14; 67:1

**October** [15] - 17:4; 21:18; 24:8, 11; 26:13; 55:4, 16-17; 56:1, 11; 71:22; 104:17

**oddly** [1] - 38:20

**off-the-record** [1] - 97:11

**olden** [1] - 16:11

**omission** [1] - 101:24

**once** [3] - 33:15; 58:10; 59:7

**one** [45] - 3:24; 9:8, 12; 12:15; 18:8, 11-12; 21:13, 25; 22:11; 24:3; 25:3; 29:5; 31:20; 32:3, 6-8; 34:7; 36:23; 37:18;

40:18; 41:11;
55:9, 18, 21-22;
58:15; 59:19;
60:11, 22;
61:11; 62:2;
69:3; 74:22;
78:22; 79:1;
80:19, 23; 85:5;
97:16, 22; 99:7;
100:6
**one-and-a-half-
page** [2] - 59:19;
80:19
**ones** [3] - 93:25;
94:1; 101:4
**ongoing** [6] -
36:24; 46:5, 7,
17; 71:21;
104:19
**oop** [1] - 27:9
**oops** [1] - 87:17
**open** [1] - 15:5
**opinion** [2] - 52:6;
68:20
**opportunity** [2] -
38:17; 59:15
**opposed** [1] -
25:6
**opposing** [29] -
7:7, 25; 8:25;
9:10; 17:5; 19:7,
21; 22:20; 26:9,
22; 34:8; 47:2;
49:15, 22;
51:14; 52:3;
59:20; 70:25;
75:9; 77:7; 78:5,
12, 15; 80:2;
97:3; 104:5;
105:13
**opposition** [2] -
29:20; 94:19
**order** [59] - 9:6;
10:11, 14; 11:7,
11, 14; 12:1;
14:11; 25:3, 6,
8, 21-22, 24;
26:8; 29:8, 10,
21; 46:17;
48:11; 49:2;
54:15; 61:18;
64:25; 65:16;
66:21; 67:25;
68:6, 9; 71:11;
72:16; 73:16;
75:11, 15, 19;
76:1, 3, 8;
77:15; 79:23;
81:14; 83:25;
86:10; 88:11,

21; 92:7, 9, 11;
99:25; 104:2,
16, 24; 106:23;
108:11, 19, 22;
109:10
**order's** [3] -
56:15; 68:9;
87:11
**orders** [3] - 10:21;
11:23
**original** [3] -
56:13; 89:12;
108:18
**originally** [1] -
90:6
**otherwise** [3] -
39:11; 40:6;
90:25
**OtterSec** [21] -
20:25; 21:3;
34:10, 18;
37:23; 38:22;
39:2, 6, 8, 18;
47:23; 57:9;
62:3; 65:5, 9,
11; 67:14;
68:14; 97:1
**OtterSec's** [2] -
37:21; 65:8
**OtterSec-related**
[1] - 20:25
**OttSec** [1] - 47:24
**ought** [1] - 8:14
**outlined** [1] - 82:1
**outright** [4] -
12:7, 13; 73:18;
76:2
**outset** [1] - 74:23
**outside** [2] -
48:20; 67:18
**outweighs** [1] -
97:6
**overbroad** [2] -
68:10, 14
**overly** [1] - 96:20
**overview** [1] -
57:6
**own** [6] - 33:18;
34:12; 39:7;
40:9; 47:22;
52:6
**owned** [5] - 34:17;
39:10, 24;
40:13; 47:13
**owner** [1] - 63:17
**ownership** [9] -
38:22; 39:4, 6,
8; 40:15; 41:19;
47:14; 63:17
**owns** [3] - 34:9;

37:20; 47:24
**p.m** [1] - 109:21
**Page** [21] - 10:6;
14:25; 15:3, 18;
16:2, 21; 17:20;
18:8, 10; 30:2;
50:11, 15, 19;
56:3; 95:14;
96:4, 7, 12;
104:13
**page** [12] - 8:7;
9:9; 18:9; 33:24;
36:12; 47:16;
52:15; 55:21;
59:19; 80:14,
19; 94:17
**Pages** [23] - 4:16;
6:6; 7:2, 10, 15,
22; 8:6, 19;
9:21; 10:25;
11:1; 17:4,
23-25; 18:12,
21; 55:14, 16;
95:20
**pages** [9] - 7:13;
16:10; 55:12;
94:20; 95:4, 10;
106:6
**paper** [5] - 16:12;
41:8; 42:24;
43:12; 68:17
**papers** [1] - 25:9
**Paragraph** [13] -
14:18, 25; 15:3;
16:21, 24;
36:16; 50:11,
19; 61:12;
62:24; 63:9, 23
**paragraph** [8] -
15:19; 30:3;
52:15; 61:3;
63:19; 77:23, 25
**paralegal** [1] -
3:12
**pardon** [1] - 14:3
**parenthetically**
[1] - 28:7
**part** [6] - 42:6, 8;
61:18; 79:25;
90:5, 12
**partially** [2] -
19:9; 46:10
**particular** [9] -
4:23; 5:4; 48:8;
62:23, 25;
69:25; 78:5, 12;
82:9
**parties** [2] -
40:25; 90:18
**parts** [2] - 68:5;

73:16
**party** [3] - 70:25;
89:14
**passing** [1] - 4:17
**passwords** [1] -
65:9
**past** [16] - 12:11,
15, 19; 27:23;
31:1; 41:22;
44:5; 52:12;
60:17; 61:6;
63:5; 69:13;
77:13; 79:16;
93:6
**patience** [1] -
64:20
**pattern** [1] - 14:15
**Pause** [5] - 10:3;
15:8; 21:16;
22:2; 107:18
**pause** [2] - 16:7,
17
**PDF** [1] - 16:9
**PDFs** [1] - 15:5
**pending** [3] - 2:7;
13:11; 64:23
**people** [12] - 4:21;
8:13; 16:11;
26:17; 27:8;
47:23; 60:18;
72:3; 81:25;
95:3
**per** [1] - 14:10
**perfectly** [1] -
12:13
**performed** [1] -
14:8
**perhaps** [2] -
40:20; 66:11
**period** [26] - 30:8,
17, 25; 31:7, 10,
12, 17, 25; 32:5,
11, 22; 33:23;
34:11, 20, 23;
35:2, 15; 36:18;
37:7, 22; 46:18;
51:16, 21;
67:19; 68:3;
93:12
**periods** [1] -
103:2
**persist** [1] - 61:25
**person** [14] - 3:24;
6:1, 5; 7:2;
10:11, 16; 13:4,
12; 37:2; 47:19;
60:15; 66:25;
69:10; 78:23
**personal** [2] -
99:24; 100:1

**perspective** [1] -
70:17
**persuade** [2] -
62:2; 72:16
**persuaded** [2] -
62:8; 84:23
**phone** [71] - 6:1,
6; 7:2; 10:11,
14; 13:4, 12,
16-18, 25; 14:7,
9, 12, 19, 22;
20:6, 9-10, 16,
18-20, 22; 21:1,
3-4; 22:12, 14,
18, 21-22;
23:11, 18;
24:9-12; 26:21,
23; 49:16;
51:24; 60:14;
65:13; 66:8, 12,
14, 25; 67:15;
69:8, 10, 18-20,
23; 70:8, 12-14,
22; 71:1, 3;
78:23; 79:20;
84:20; 90:14
**phrase** [3] -
24:18; 39:21;
69:22
**picture** [2] - 26:6;
106:4
**piece** [4] - 22:18;
42:24; 43:12;
68:17
**piggybacking** [1]
- 87:1
**place** [4] - 11:9;
39:11; 56:15;
71:11
**plain** [2] - 5:25;
6:2
**plainly** [1] - 67:20
**plaintiff** [7] - 2:10;
4:6; 51:14; 67:4;
72:15; 96:24;
100:22
**plaintiff's** [4] -
21:19; 35:23;
66:24; 101:10
**plaintiffs** [2] -
2:19; 65:11
**plaintiffs'** [2] -
102:19, 23
**platform** [1] - 66:3
**platforms** [3] -
48:6, 8; 51:7
**pleadings** [1] -
73:9
**plenty** [1] - 63:12
**PLOTNICK** [127] -

2:12, 25; 3:15;
5:19; 8:7, 12,
16; 9:16, 23;
10:1, 7, 13, 17,
23; 11:6, 18;
13:21; 14:7, 21;
15:2, 4, 11, 15,
22, 25; 16:4, 18,
25; 18:23, 25;
19:3, 9; 24:2,
19; 25:1, 18;
26:1; 27:22;
29:4; 30:5, 10,
18; 31:1, 9, 22;
33:7, 11, 13;
38:13, 16; 40:8,
11; 41:2, 17;
43:5, 19, 22;
44:15, 17; 45:2,
15; 53:15, 23;
54:3, 8, 10, 13,
17, 21; 56:20,
25; 57:23; 58:1,
5, 10, 13, 21;
59:1, 11; 61:20;
63:15; 64:1, 8,
10, 14, 16;
76:25; 80:23;
81:4, 9; 83:19;
85:22; 86:5, 21;
87:7, 9; 90:1,
21; 93:21;
94:11; 95:11,
13, 25; 96:10,
14; 97:15;
98:13, 19; 99:6,
10, 12, 14, 18,
20; 100:10, 19;
102:2, 14;
103:19; 104:14;
105:1, 22;
106:16, 20;
107:4, 23; 109:7
**Plotnick** [90] -
2:12, 25; 3:13;
4:23; 5:18; 8:3,
5; 9:6, 14, 22;
10:6, 21; 11:2,
21; 13:16, 23;
14:6, 16, 23;
15:1; 17:2;
18:21, 24; 19:6;
23:3, 22; 24:21;
28:20; 29:2;
31:8; 33:3, 21;
38:5; 39:22;
40:3; 43:18;
45:18; 46:22;
47:8, 10; 53:10,
14; 56:13;
61:15; 62:1;

63:9, 14; 64:19;
70:8; 71:15, 19,
23; 72:18, 23;
81:5; 82:4, 23;
83:3, 17; 84:2,
17; 85:16, 21;
86:4; 87:2; 89:5,
23; 91:3, 19;
92:16; 93:19;
94:10; 95:9, 22;
96:4, 7, 12;
97:13; 98:15;
101:23; 102:1;
103:15; 104:9,
22; 105:6, 18;
106:18; 107:12,
19
**Plotnick's** [2] -
8:18; 15:9
**Point** [1] - 95:6
**point** [32] - 29:5,
13, 20; 33:2;
38:1; 40:17;
41:4, 15; 42:16,
22-23; 43:22;
44:1, 5, 11;
55:11; 56:8;
61:22; 64:3;
70:10, 20;
75:15; 77:15;
79:6, 15; 80:23;
82:10; 90:15;
91:15; 99:3;
101:2
**pointed** [2] - 8:25;
67:7
**Points** [1] - 105:7
**poke** [1] - 107:2
**posed** [1] - 5:2
**position** [17] -
25:10; 38:1;
40:12; 41:8, 25;
42:2; 47:24;
49:15; 50:2;
78:15; 91:11;
94:16; 96:8;
98:22; 101:12,
17
**positions** [4] -
79:6; 80:17;
82:10; 91:23
**possessed** [2] -
46:19
**possession** [1] -
20:6
**possibility** [1] -
39:19
**possible** [4] -
39:9; 47:22;
108:16, 18

**possibly** [1] -
42:9
**postdate** [1] -
57:11
**posturing** [1] -
93:7
**potentially** [13] -
27:17; 28:10;
43:12; 48:24;
49:4, 24; 51:11;
52:7; 65:1; 67:9;
68:1; 86:12;
92:8
**powered** [1] -
65:7
**pre** [1] - 108:23
**precipice** [1] -
92:25
**precisely** [1] -
99:22
**precluded** [1] -
72:22
**precluding** [2] -
108:8; 109:3
**predate** [2] - 57:8,
10
**predicting** [1] -
75:16
**preliminary** [2] -
81:14; 87:13
**premature** [11] -
75:12, 14; 76:7,
12; 77:1, 3-4,
10; 104:6;
108:24
**present** [7] - 13:5,
12; 34:4; 37:12;
45:23; 46:17;
60:16
**preservation** [26]
- 10:14; 11:10,
14; 12:1; 25:3,
6, 8, 22; 27:6;
29:7, 10, 21;
48:11; 49:20;
50:25; 51:11,
13, 24; 67:25;
68:6, 9; 88:21;
92:7
**preserve** [15] -
26:18; 27:15;
42:23; 61:19;
64:25; 65:17;
68:16; 71:21,
25; 72:3, 8, 10,
12; 86:11
**preserved** [12] -
24:23; 27:7;
28:16, 23;
29:22; 31:18;

33:4; 41:9, 18;
44:21; 45:21;
65:24
**preserving** [1] -
41:13
**pretty** [1] - 20:4;
62:16; 75:16
**previous** [1] -
76:3
**previously** [1] -
90:3
**primarily** [2] -
48:16; 102:14
**primary** [1] -
22:18; 102:3;
106:24
**print** [2] - 15:13
**printed** [1] - 16:9
**printing** [1] -
15:14
**Prisons** [1] - 72:2
**privilege** [14] -
74:5, 9, 14;
82:6; 89:9;
93:11; 103:13,
16; 104:1, 10,
17, 20
**privileged** [4] -
62:10; 80:20;
83:13; 92:4
**problem** [8] -
12:6; 24:15;
72:21; 73:2;
85:2; 106:1, 12,
19
**problematic** [1] -
50:2
**procedural** [2] -
67:2; 69:15
**Procedure** [3] -
51:8; 86:7, 16
**proceed** [3] -
19:13, 16, 19
**proceeded** [1] -
49:7
**proceeding** [1] -
14:14
**proceedings** [1] -
109:21
**Proceedings** [6] -
10:3; 15:8;
16:17; 21:16;
22:2; 107:18
**process** [11] -
12:9; 42:6; 60:9;
79:8; 81:11;
82:1; 89:25;
90:23, 25;
104:19; 105:25
**produced** [9] -

21:9, 23; 22:3,
5; 96:24; 97:2;
98:20; 101:6
**producing** [1] -
103:16
**production** [3] -
99:23; 102:6;
104:20
**productive** [6] -
75:25; 78:6, 8,
16; 86:20; 93:24
**profits** [5] - 42:14;
43:2, 24; 44:22;
63:17
**progeny** [1] -
27:14
**pronounce** [4] -
17:9; 28:25;
30:24; 32:4
**pronounced** [1] -
17:8
**proper** [3] - 59:7;
99:2; 100:5
**properly** [1] -
91:15
**proportional** [4] -
63:10; 92:5;
93:10; 97:8
**proportionality**
[8] - 40:19; 41:5;
42:16, 22;
43:20; 61:23;
64:5; 83:14
**proportionate** [2]
- 62:10; 96:21
**proposal** [6] -
17:22, 24-25;
18:3, 22; 19:7
**proposed** [8] -
7:25; 9:6; 10:14,
22; 11:10;
15:19; 19:18;
109:11
**prospectively** [1]
- 29:8
**protect** [1] - 49:3
**protocol** [3] -
97:19; 102:5;
103:1
**prove** [1] - 46:16
**provide** [12] -
11:13; 36:3;
44:7; 65:1; 66:4,
17, 19; 86:11;
92:8; 99:3;
104:6; 105:25
**provided** [25] -
9:18; 14:8;
42:20; 55:19;
57:3, 14; 58:7,

16, 18; 59:1,
11-12; 65:22,
25; 66:11; 90:8;
95:3; 99:2;
103:5; 105:24
**provides** [1] -
104:17
**providing** [1] -
57:4
**publicly** [5] -
42:17, 21, 25;
43:1; 44:6
**Pueblo** [1] - 69:1
**pull** [5] - 8:9;
15:17; 24:6;
62:25; 74:19
**pulling** [3] -
76:14; 77:4;
88:8
**punch** [1] - 59:6
**purely** [1] - 83:13
**purposes** [6] -
14:20; 20:20;
23:25; 24:17;
45:4; 69:24
**pursue** [1] - 46:7
**pursuing** [1] -
46:4
**pushed** [1] - 50:8
**put** [27] - 4:8; 5:1;
38:9, 11, 14;
39:3; 40:20;
58:8; 63:8, 13;
65:20; 69:4;
70:19, 21; 71:2,
4; 72:5, 13;
89:13; 91:11;
96:19, 22;
106:22, 25;
107:10, 14
**putting** [1] -
27:25; 73:3
**Quarles** [1] -
68:24
**quarrel** [1] - 66:10
**questions** [25] -
5:4, 10, 18, 20;
11:11; 25:11,
14; 40:19;
56:18; 66:8;
73:23; 74:3, 17;
79:19; 82:23;
83:2; 89:20;
93:17, 19; 95:6,
9, 11; 108:1
**quite** [4] - 40:21;
44:18; 83:13;
102:3
**quote** [4] - 65:25;
66:5, 20; 68:1

16, 18; 59:1,
11-12; 65:22,
25; 66:11; 90:8;
95:3; 99:2;
103:5; 105:24
**Rachel** [1] - 3:11
**raise** [2] - 80:23;
107:24
**raised** [3] - 78:2,
17; 94:15
**raises** [1] - 43:20
**raising** [1] - 17:15
**range** [3] - 57:10,
13; 98:4
**rant** [1] - 53:20
**rather** [3] - 52:7;
85:1; 103:2
**re** [1] - 99:14
**reach** [3] - 78:25;
79:2; 106:7
**reaches** [1] -
26:13
**reacting** [1] - 15:6
**read** [25] - 5:2;
16:20; 21:22;
22:24; 23:3;
33:20; 36:9;
38:5; 39:16;
44:13; 45:1;
52:15; 62:19;
67:12; 68:19,
21; 71:23;
75:15; 76:1;
96:18; 109:16
**reading** [2] -
25:14; 63:20
**ready** [12] - 4:12,
15, 18; 16:12,
16, 20; 52:21;
84:4; 85:1; 99:5;
107:19; 108:2
**reality** [1] - 41:24
**really** [27] - 11:16;
25:7; 27:6; 29:3;
41:11; 43:13,
22; 45:3; 52:16;
61:22; 67:8, 11;
68:12; 69:14;
70:3; 71:9, 18;
79:7; 79:16;
87:16; 88:16;
92:2; 108:23
**reason** [7] - 9:17;
12:16; 61:15;
71:14; 74:25;
77:8; 105:19
**reasonable** [11] -
34:11, 15; 38:7,
19; 63:4; 72:2;
76:23; 77:19;
83:11; 86:15;
103:8
**reasonably** [1] -
73:4
**reasons** [5] -

50:1; 76:20;
87:12; 99:22;
108:24
**receipt** [2] - 72:3,
7
**receive** [1] - 45:11
**received** [2] -
90:11; 97:18
**receives** [1] -
102:7
**recent** [1] - 57:1
**recently** [4] -
6:16; 32:8;
40:21; 57:1
**reciting** [1] -
11:16
**recollection** [1] -
22:9
**recommended** [1]
- 14:10
**record** [18] - 2:11;
4:20; 13:6; 38:9,
11, 15; 63:8, 13;
69:8; 74:15;
78:10; 81:21;
82:9; 87:13;
94:3; 96:20, 22;
97:11
**records** [3] -
63:21; 65:9
**recover** [3] - 14:9,
11; 21:4
**recoverable** [1] -
22:20
**redact** [3] - 98:22;
99:1, 21
**redacting** [1] -
100:3
**redaction** [2] -
101:12, 21
**redactions** [3] -
98:16; 100:23;
101:14
**refer** [2] - 4:17;
7:12
**reference** [1] -
69:25
**referenced** [1] -
47:1
**referencing** [1] -
100:4
**referred** [1] - 47:8
**referring** [8] -
9:24; 15:15;
24:4; 63:19-21;
98:4
**refused** [5] -
66:17, 19;
75:24; 78:5, 13
**regard** [1] - 99:21

**regarding** [4] -
8:24; 15:19;
35:24
**regardless** [4] -
29:15, 18, 22;
37:20
**regular** [1] - 44:12
**rein** [1] - 43:9
**reinstall** [1] - 14:1
**rejoining** [1] -
53:15
**relate** [2] - 11:10;
88:17
**related** [21] - 4:11,
14; 11:11; 13:2;
20:25; 34:21;
35:4, 17; 42:12;
45:8; 46:14;
49:18; 60:23;
71:17; 78:1;
87:16; 102:7,
11, 15
**relatedly** [2] -
66:2; 67:16
**relates** [7] - 9:9;
40:18; 46:25;
96:23; 102:2;
103:13
**relating** [1] -
43:24
**relation** [4] -
34:14; 46:1;
47:9; 104:4
**relevance** [16] -
29:22; 49:25;
52:3; 62:10, 12,
15, 17; 64:4;
67:17; 83:12;
84:24; 97:5;
98:17; 99:1, 22;
100:4
**relevancy** [1] -
43:14
**relevant** [48] -
20:18, 22; 26:5,
24; 27:2, 17, 24;
29:18; 34:20,
23; 35:23;
37:22; 42:10;
43:12; 44:5, 20;
49:4, 20, 23-24;
50:25; 51:6, 12,
16, 25; 52:6;
56:23; 64:11;
65:1, 17; 66:21;
67:9; 68:2; 70:9;
72:17, 19;
86:12; 88:20;
92:4, 8; 93:9;
94:24; 97:9

**relied** [1] - 22:21
**remember** [2] -
36:11
**remote** [1] - 33:15
**removed** [2] -
40:15; 101:15
**removes** [1] -
98:24
**render** [2] - 70:14;
84:21
**rendered** [4] -
22:14; 65:13;
66:9; 69:19
**repeat** [3] - 5:8;
74:21; 81:25
**repeatedly** [1] -
98:1
**repeating** [1] -
81:24
**report** [6] - 93:15;
94:5; 104:15;
106:5, 23
**reportedly** [1] -
66:4
**reporter** [11] -
5:16; 13:5, 12;
60:16; 73:14;
82:11; 92:18;
93:15, 25; 94:4
**representation**
[3] - 10:10;
28:15; 70:15
**represented** [1] -
14:18
**reproduced** [1] -
101:18
**request** [8] -
10:11; 35:1, 3,
16; 51:22;
100:23; 103:1;
104:6
**requested** [2] -
101:3, 20
**requests** [5] -
34:21, 23;
35:18; 41:2, 24
**require** [2] -
47:12; 80:7
**required** [3] -
65:20; 68:16;
80:10
**requires** [2] -
25:16; 27:10
**requiring** [1] -
65:16
**reread** [1] - 85:8
**reset** [1] - 60:9
**resisting** [1] -
86:15
**resolve** [7] -

69:14; 73:22;
79:7; 89:16;
104:23; 108:7,
12
**resolved** [6] -
49:7; 78:12;
90:22, 25; 109:5
**respect** [14] -
11:7; 13:10;
25:11; 38:10;
42:11; 61:21,
23; 63:2; 66:20;
68:10; 69:7;
71:1; 81:14
**respectfully** [3] -
75:22, 24; 91:15
**respond** [14] -
4:25; 18:22;
75:24; 78:5, 13;
79:4; 80:4, 6-7,
10, 12; 89:5;
91:2; 92:6
**responded** [2] -
89:8, 15
**responding** [3] -
25:4; 29:7;
82:19
**responds** [1] -
93:13
**response** [15] -
4:2; 5:12; 19:1,
10, 12; 25:6;
45:11; 58:7;
80:12, 14; 89:7;
93:3; 101:10;
102:18
**responses** [1] -
89:10
**result** [1] - 14:15
**results** [1] - 98:8
**retrieved** [1] -
24:23
**returns** [1] - 44:8
**revenue** [2] -
42:19
**review** [6] - 57:2;
59:15, 19; 97:7;
98:7; 103:5
**reviewed** [2] -
22:15; 103:8
**rights** [2] - 12:13;
39:21
**ripe** [3] - 75:5;
77:14; 92:12;
105:14; 107:10
**risk** [4] - 27:3;
66:20; 67:5;
72:16
**road** [2] - 5:17;
50:10

**Robert** [11] - 2:24;
3:18; 26:2, 13;
35:19; 62:3;
65:5, 11; 67:14,
21
**rolling** [1] - 106:1
**room** [1] - 76:11
**rule** [1] - 95:4
**Rule** [10] - 5:24;
10:9; 51:8; 62:9;
66:25; 69:9;
78:21; 79:3;
91:16
**Rules** [4] - 80:7;
86:7, 16
**rules** [2] - 5:17;
28:12
**ruling** [22] -
12:24; 13:10,
14; 24:14;
27:18; 28:1;
52:20; 73:24;
74:10, 15, 25;
81:14; 82:8, 12;
84:19; 85:12;
87:12, 14;
94:25; 105:5, 13
**rulings** [2] - 74:1;
87:13
**run** [3] - 98:1, 7;
102:6
**running** [1] - 47:4
**runs** [1] - 42:17
**runway** [1] -
89:18
**sabotaged** [1] -
65:9
**saliently** [1] -
69:10
**satisfied** [3] -
84:20; 98:5;
103:1
**satisfies** [1] -
80:19
**saw** [5] - 44:13;
45:1; 48:21;
58:20
**schedule** [3] -
6:9; 19:24;
106:4
**schedule's** [1] -
20:3
**scheduled** [2] -
90:7, 9
**scheduling** [9] -
26:7; 54:15;
56:15; 71:11,
20; 104:2, 16,
24; 105:23
**school** [3] - 45:3;

57:23; 71:16
**schoolwork** [1] -
44:25
**scope** [1] - 98:11
**scrap** [1] - 41:8
**search** [8] -
97:18, 22; 98:8;
102:5, 19, 25;
103:6
**searched** [3] -
41:9; 97:20;
103:2
**searches** [11] -
68:1; 97:24;
98:1, 7; 101:24;
102:10, 18;
103:1, 3
**Second** [3] - 36:7;
39:16; 65:6
**second** [16] -
18:8; 21:24;
30:2; 34:25;
40:6; 51:21;
63:3; 65:13;
67:4; 92:2; 93:7;
94:17; 99:7;
101:4; 103:12,
15
**seconds** [3] -
16:15; 107:21;
108:1
**see** [27] - 7:6;
10:1; 13:6; 18:7,
19; 26:7, 9, 11,
13, 19; 28:15;
31:4; 36:8;
42:21; 48:7;
51:14; 52:23;
70:4; 78:25;
84:1; 94:3, 23;
100:20; 106:3;
107:15; 108:12;
109:5
**seek** [1] - 81:14
**seeking** [2] -
43:24; 46:8
**seem** [3] - 38:19;
69:13; 78:1
**send** [6] - 12:14;
19:5; 45:9;
60:25; 75:19;
77:18
**sense** [4] - 6:25;
79:23; 106:6, 10
**sensitive** [1] -
100:1
**sent** [15] - 19:21;
26:17; 38:25;
45:6; 59:4, 8-9;
67:18, 21;

76:10; 80:18;
101:9
**sentence** [1] -
52:16
**separate** [2] -
33:19; 106:12
**separately** [1] -
40:17
**September** [2] -
69:1; 99:18
**sequencing** [1] -
17:3
**serial** [1] - 45:6
**series** [1] - 57:19
**seriously** [1] -
60:8
**serve** [2] - 79:2;
93:23
**served** [10] -
26:12; 78:19;
80:3; 89:3; 90:8,
10; 91:15, 20;
93:16, 23
**server** [10] -
17:14; 26:14;
31:4, 7; 32:11;
33:5, 9, 19;
58:3; 67:23
**servers** [1] -
67:19
**serves** [1] - 19:19
**service** [1] - 33:17
**seven** [2] - 21:19;
94:6
**several** [1] -
102:25
**shall** [3] - 13:3,
11; 87:15
**shifted** [1] - 61:6
**shifting** [2] - 35:2;
73:19
**short** [2] - 10:4;
104:14
**shorthand** [2] -
14:13; 25:13
**show** [8] - 41:19;
43:1; 44:3, 8,
21; 70:24; 98:6
**showed** [1] -
102:25
**showing** [2] -
26:3, 22
**shown** [3] - 67:10,
12, 14
**shut** [1] - 25:20
**shy** [2] - 5:7;
107:20
**sic** [1] - 89:1
**side** [14] - 17:5,
13, 16; 26:10;

73:13; 79:4;
81:19; 83:9;
89:4; 91:12;
92:3; 93:1, 13;
96:12
**sides** [2] - 41:2;
52:14
**Signal** [5] - 48:2,
12; 49:10; 71:6
**significance** [1] -
34:6
**significant** [6] -
27:3; 56:9;
66:20; 67:5;
71:6; 72:16
**significantly** [1] -
20:4
**silence** [1] - 83:20
**similar** [2] - 49:5;
99:20
**similarly** [3] -
38:12; 42:9;
66:5
**Simms** [1] - 2:3
**simple** [1] - 45:7
**simply** [1] - 98:13
**Simpson** [2] -
2:21; 3:2
**single** [6] - 41:8,
14; 42:24; 55:9,
21
**sit** [11] - 13:17;
20:5, 10; 23:1;
28:22; 61:5;
77:20; 79:15;
85:8; 91:5;
92:18
**sitting** [6] - 20:6;
33:5, 8; 69:21;
76:10; 89:11
**six** [1] - 61:6
**slightly** [1] -
30:12
**slowly** [2] - 8:9;
15:6
**slowness** [1] -
15:4
**Smith** [1] - 68:23
**smoke** [1] - 73:2
**snipe** [1] - 72:9
**software** [2] -
14:2, 5
**someone** [2] -
2:20; 45:2
**somewhat** [2] -
40:11, 18
**son** [1] - 21:6
**sooner** [2] -
19:25; 86:2
**sorry** [21] - 3:21;

31:3; 34:2;
35:13; 53:15;
64:16; 70:2;
75:22; 76:16;
82:19; 87:5, 18,
21; 88:3; 92:24;
95:17; 96:1, 5;
100:16; 101:10
**sort** [22] - 27:19;
29:15, 18;
33:14; 39:4;
40:18; 42:8;
44:19; 45:7;
57:2, 12, 14, 18;
68:11; 70:5;
85:8, 10; 89:7;
98:10; 100:1;
103:13; 107:8
**sought** [2] -
35:18; 97:18
**sound** [1] -
106:14
**sounds** [7] -
22:25; 28:3, 22;
89:6; 103:15;
106:17
**sources** [2] -
48:24; 64:11
**Southern** [1] -
69:6
**speaking** [10] -
2:12; 3:1, 14,
17; 4:5, 20;
5:13, 16; 81:3;
83:5
**speaks** [1] - 3:24
**specific** [18] - 6:4;
8:10; 24:5;
28:19; 34:22;
35:15, 17;
36:15, 22;
41:24; 42:8;
73:12; 82:18;
100:9, 13, 23;
103:2
**specifically** [4] -
11:10, 23;
88:15; 102:2
**spell** [1] - 68:21
**spend** [1] -
108:15
**spending** [2] -
5:6; 93:5
**spent** [2] - 52:13;
72:18
**spirit** [1] - 83:20
**spoliation** [4] -
15:20; 25:5;
27:6; 88:21
**spreadsheet** [1] -

58:17
**stable** [1] - 52:14
**stand** [3] - 78:16;
109:4, 19
**start** [29] - 5:22;
13:17; 15:13;
30:7-9; 31:23;
32:2, 10, 14,
16-17; 36:20;
37:13; 38:7, 18,
25; 40:23, 25;
43:17; 46:21,
24; 47:11;
68:10; 84:1;
94:8; 106:15
**started** [4] -
35:14; 41:25;
46:2; 73:1
**starting** [4] - 2:10;
4:21; 32:24;
63:5
**starts** [1] - 36:16
**state** [1] - 41:7
**statement** [4] -
9:17; 12:25;
28:6; 42:5
**statements** [3] -
101:15, 18
**States** [1] - 48:20
**states** [1] - 98:23
**stating** [4] -
65:23; 66:18;
86:18
**status** [10] -
13:23; 14:5, 7;
94:5; 103:14;
104:15; 106:5,
13, 23
**statute** [1] - 36:25
**staying** [1] -
109:18
**Step** [1] - 78:21
**step** [8] - 14:14;
63:4; 78:25;
79:2, 4-5; 92:2,
25
**Stephen** [2] -
2:12, 25
**stepping** [1] -
93:7
**Steps** [1] - 79:13
**steps** [4] - 14:11;
70:13; 72:2;
84:21
**Steve** [1] - 81:4
**stick** [1] - 103:11
**still** [20] - 12:23;
13:19; 16:23;
17:5; 24:14;
35:6; 37:16;

45:23; 53:14;
61:7, 11, 13;
73:16; 75:9, 20;
84:24; 96:13;
104:19
**stipulation** [4] -
15:19; 18:11;
19:22; 50:2
**stole** [2] - 40:14;
65:9
**stolen** [1] - 65:7
**stop** [1] - 65:20
**stopped** [4] -
49:2; 65:25;
66:18; 75:25
**storing** [2] -
33:16, 18
**strikes** [3] -
40:11; 41:6;
43:5
**struggle** [1] -
39:12
**struggling** [1] -
39:4
**student** [1] -
44:23
**stuff** [3] - 28:25;
75:15; 82:25
**stymied** [1] -
79:22
**subcategories** [3]
- 53:1
**subject** [4] -
13:19; 57:15;
88:14; 102:8
**submission** [1] -
59:15
**submissions** [1] -
60:19
**submitted** [1] -
5:3
**Subpart** [1] -
50:12
**subpoena** [12] -
26:12; 27:9;
38:24; 39:1;
45:9, 11; 54:19;
55:1; 56:16;
71:12, 20
**subpoenas** [3] -
40:24; 45:6;
48:24
**subsequent** [1] -
84:8
**subsequently** [1]
- 104:15
**substance** [3] -
13:14; 29:3;
80:15
**substantive** [3] -

46:16; 78:17;
80:16
**successor** [1] -
35:24
**sudden** [1] -
53:16
**sufficient** [10] -
41:19; 43:1;
44:3, 21; 45:25;
46:4; 59:18;
73:17; 86:19
**sufficiently** [1] -
12:22; 59:15;
69:17
**suggest** [2] -
66:12; 102:19
**suing** [1] - 65:6
**sum** [2] - 29:3;
108:24
**supplement** [1] -
92:20
**supply** [1] - 68:25
**support** [4] -
22:16; 40:14;
63:12; 65:21
**suppose** [3] -
22:8; 40:8; 58:7
**suspicion** [1] -
23:2
**suspicious** [5] -
22:17; 66:14;
70:16; 71:10
**swaths** [1] - 98:16
**switch** [1] - 52:23
**tangent** [1] - 5:8
**target** [1] - 61:7
**task** [1] - 73:12
**tax** [1] - 44:8
**TDC-23-889** [1] -
2:8
**team** [10] - 8:18;
9:1, 6; 15:9;
21:14, 25;
59:14; 84:18;
87:2; 89:5
**Tech** [5] - 13:20;
14:8, 10; 22:23;
69:21
**Tech's** [2] - 20:6,
16
**technically** [1] -
42:5
**technician** [1] -
14:10
**technological** [1]
- 14:2
**technology** [3] -
16:14; 33:5;
69:4
**Teel** [7] - 13:19;

14:8, 10; 20:6,
16; 22:22; 69:21
**Telegram** [16] -
23:22, 24;
24:17, 22;
26:25; 28:24;
30:16; 31:16,
18; 48:5, 20;
49:10; 66:3, 6;
71:4
**telephonic** [2] -
2:10; 6:9
**ten** [4] - 78:24;
94:1, 22
**terabytes** [1] -
30:3
**term** [4] - 23:16;
25:15; 102:19;
103:6
**terminology** [1] -
33:9
**terms** [11] - 11:10;
17:22; 19:7;
23:15; 38:18;
41:5; 47:14;
69:9; 72:10;
97:15, 22;
102:20; 103:8
**test** [5] - 34:12,
17; 39:4; 40:14;
47:3
**text** [13] - 14:12;
20:23; 21:3, 9,
12, 15, 17;
22:15; 24:3, 7;
65:14; 70:5;
85:4
**THE** [280] - 2:3,
5-7, 20; 3:4, 13,
16, 23; 4:7;
5:20, 22; 6:4,
12, 18, 24; 7:9,
12, 20, 22; 8:3,
5, 11, 13, 17;
9:2, 11, 14, 21,
25; 10:4, 8, 16,
19, 24; 11:15,
19; 12:3, 5;
13:22; 14:16,
23; 15:3, 9, 13,
18, 24; 16:2, 6,
19; 17:1, 7, 12,
18; 18:2, 7, 15,
19, 24; 19:1, 5,
14; 20:5, 9, 13,
15; 21:5, 11, 19,
23; 22:5, 11, 24;
23:8, 11, 15, 21;
24:13, 20;
25:17, 19; 26:2;

27:23; 30:1, 6,
14, 22; 31:3, 11,
16, 21, 23, 25;
32:4, 10, 14, 17,
21; 33:1, 3, 8,
12, 20; 34:24;
35:6, 10, 12, 20;
36:1, 5; 37:6,
15, 24; 38:3, 14;
39:13; 40:2, 10;
41:1, 16; 43:4,
7, 21; 44:13, 16;
45:1, 10, 13, 16;
46:6, 13, 21;
47:17, 20; 48:1,
21; 49:6; 50:11,
17, 19, 24; 51:4,
18, 20; 52:8;
53:19, 24; 54:4,
9, 12, 14, 18,
25; 55:3, 11, 23;
56:1, 10, 21;
57:20, 22, 25;
58:4, 9, 20, 25;
59:10, 14, 22,
24; 60:4; 61:11,
15, 25; 63:23;
64:6, 9, 13, 15,
18; 74:8, 12, 19,
22, 25; 75:11;
76:3, 5, 15, 17;
77:1, 11; 78:18,
20; 79:11;
80:11, 22, 25;
81:6, 10, 13, 17,
23; 82:3, 17;
83:3, 22; 84:11,
14, 17; 85:7, 16;
86:4, 6, 22;
87:4, 8, 10, 21;
88:3, 7, 10, 20,
24; 89:23;
90:20; 91:1, 11,
17; 93:19, 22;
94:10, 12; 95:9,
12, 14, 24; 96:2,
11, 15, 17;
97:13; 98:12,
15; 99:5, 8, 11,
13, 17, 19;
100:6, 16, 20;
101:23; 102:13,
17; 103:11, 21,
23; 104:3, 9, 22;
105:3, 15, 18;
106:3, 18, 21;
107:6, 19, 25;
108:6, 15, 17,
20, 22; 109:2, 9,
12, 14
**theft** [2] - 36:13,

17
**themselves** [2] -
81:25; 99:1
**theories** [2] -
47:3; 72:19
**theory** [11] - 23:2,
5, 17; 34:12;
43:14; 62:2, 13,
15, 20
**there've** [1] - 73:7
**thereby** [1] -
65:13
**therefore** [1] -
29:10
**thereto** [3] - 4:11,
14; 64:24
**they've** [7] - 27:8;
54:7, 10; 61:16;
67:10; 101:1;
103:5
**thingy** [1] - 55:14
**thinking** [2] -
73:15; 91:13
**third** [1] - 40:25
**thoughts** [2] -
107:8, 13
**thousands** [1] -
65:12
**threads** [2] -
101:7
**three** [5] - 79:4;
80:14; 92:10;
101:19; 106:7
**three-and-a-half-**
**page** [1] - 80:14
**threshold** [1] -
62:16
**throw** [1] - 94:25
**tied** [1] - 38:19
**tight** [1] - 43:9
**timeout** [1] -
64:20
**timing** [7] - 19:23;
22:17; 70:18;
71:18; 90:6;
104:18
**today** [19] - 4:6,
10; 5:6; 12:23;
13:17; 20:6, 10;
23:1; 28:22;
37:5; 39:18;
40:5; 60:5; 75:3;
77:18; 78:3;
95:17; 107:7;
108:24
**today's** [2] -
77:22; 83:25
**together** [4] -
63:6; 89:15;
101:16; 107:16

**tone** [1] - 76:22
**took** [1] - 11:8
**top** [4] - 7:13;
8:20; 16:3; 44:8
**topic** [3] - 17:15;
52:1; 100:25
**topics** [4] - 75:1;
77:22; 78:1;
89:13
**tort** [2] - 36:23;
37:3
**torts** [1] - 36:23
**total** [1] - 97:21
**totally** [1] - 94:2
**touch** [1] - 75:1
**touched** [1] - 14:1
**touches** [1] - 89:4
**toward** [1] - 86:10
**town** [1] - 85:5
**Trader** [1] - 62:13
**trading** [1] - 65:8
**traditionally** [2] -
48:22
**transcribed** [1] -
5:15
**transcript** [11] -
60:25; 74:1, 9;
82:8, 11, 14-15;
83:25; 85:11;
94:18, 23
**transcripts** [1] -
94:13
**transfer** [1] -
39:23
**transferred** [8] -
34:9, 18; 38:22;
39:6, 8, 17;
40:15; 47:14
**true** [5] - 10:12;
40:5; 41:22
**truly** [1] - 62:20
**trust** [1] - 70:19
**try** [5] - 9:3;
10:24; 14:11;
28:20; 63:6
**trying** [10] - 8:9;
11:5; 55:19;
56:8; 77:18;
82:22; 89:15;
92:1; 93:16
**turn** [9] - 9:9;
10:6; 17:2;
33:24; 43:18;
71:9; 82:4;
100:6; 103:14
**turned** [1] - 7:6
**tweak** [1] - 91:23
**Twitter** [1] - 48:3
**two** [24] - 6:17;
12:16; 13:24;

19:25; 30:14;
36:23; 40:24;
46:2; 50:5;
53:17; 79:2;
85:23; 86:5, 18,
24; 89:17, 21,
24; 107:17, 20,
25
**U.S** [2] - 68:25;
69:2
**ultimately** [3] -
19:15; 25:5, 15
**um-hmm** [3] -
99:8; 103:24;
108:17
**unable** [1] - 7:21
**unanswered** [1] -
66:7
**unbelievable** [1] -
21:11
**unclear** [2] - 5:7;
90:1
**under** [18] - 17:22;
27:13; 36:25;
51:8, 12; 61:17;
62:9, 21; 65:4;
69:16; 71:21;
72:8; 73:5; 80:1,
5, 9; 89:16;
91:16
**underlying** [1] -
6:15
**underst** [1] -
64:16
**understood** [9] -
11:6; 15:16;
36:5; 48:1;
74:11; 83:1;
86:21; 95:13
**undo** [2] - 29:9;
68:7
**undue** [1] - 97:6
**unduly** [1] - 25:25
**unilaterally** [1] -
49:23
**United** [2] - 48:20;
68:25
**University** [1] -
44:25
**unjust** [4] - 36:24;
37:3; 46:11
**unless** [1] - 4:21
**unlimited** [1] -
46:11
**unnecessary** [2] -
68:1, 6
**unrelated** [1] -
44:17; 45:4
**up** [26] - 4:21; 8:2,
9; 9:13; 13:1;

15:17; 17:8;
24:6; 43:13, 23;
52:3; 61:9;
62:25; 76:13;
77:4; 78:22;
80:2; 81:19;
88:8; 91:4; 94:1;
96:9; 101:20;
102:4, 15
**updated** [2] -
57:4; 59:1
**user** [1] - 44:12
**uses** [5] - 37:23;
44:12, 24;
48:15; 66:2
**various** [3] - 3:17;
55:6; 69:11
**vendor** [5] -
29:24; 33:14
**verifiable** [1] -
59:5
**version** [4] -
19:22; 50:20;
57:4; 59:1
**versus** [18] - 2:8;
4:5; 35:8; 36:7,
19; 37:8, 16;
38:8, 20; 62:13;
68:19, 23, 25;
69:2, 4; 102:8
**vetted** [1] - 90:17
**via** [10] - 6:5; 7:1;
11:4, 7; 13:3,
12; 65:6; 69:9;
79:22; 90:22
**video** [11] - 6:1, 5;
7:1; 10:11, 16;
13:4, 12; 60:15;
66:25; 69:10;
78:23
**view** [7] - 25:4;
26:20; 78:20;
79:8; 81:11;
83:12; 86:8
**views** [2] - 83:14
**voice** [1] - 4:1
**volume** [2] -
97:24; 98:2
**wait** [4] - 18:4;
33:24; 83:4;
96:5
**waiting** [1] - 93:3
**waiving** [1] - 80:6
**wallet** [5] - 30:23;
32:21; 42:18, 20
**wants** [7] - 12:12;
27:16; 39:15,
18; 40:5; 47:2;
90:4
**ways** [1] - 98:10

Telephonic Discovery Dispute Hearing 4/29/25

**week** [15] - 46:2;
83:24; 84:14-16;
85:1, 5-6, 13,
17, 20; 86:1;
97:2
**weeks** [10] - 46:2;
61:6; 85:23;
86:5, 18, 25;
89:18; 107:1
**weird** [1] - 58:23
**welcome** [1] -
28:2
**Westlaw** [4] -
68:19, 23; 69:5;
99:15
**what'd** [1] - 79:19
**whatnot** [1] - 59:2
**whatsoever** [2] -
29:22; 102:10
**White** [6] - 2:16;
31:6, 11-12;
32:1; 68:4
**WHITE** [10] -
31:15, 18, 24;
32:2, 6, 13, 15,
20, 23; 33:2
**whoa** [2] - 3:23
**whole** [4] - 8:11;
52:13; 75:15;
79:15
**wholly** [2] - 44:17;
45:3
**willing** [2] - 97:25;
101:11
**wiser** [1] - 85:7
**withdrawn** [2] -
3:2; 51:22
**witness** [1] -
28:10
**word** [4] - 22:14;
39:21; 40:2;
52:3
**works** [1] - 62:7
**worries** [3] -
16:19; 53:19;
103:23
**worth** [2] - 37:21;
86:17
**writing** [5] - 89:5,
14; 91:11; 93:15
**written** [4] - 38:6,
9; 52:21; 89:7
**wrongfully** [3] -
40:15; 46:19
**Wyoming** [1] -
36:25
**Xara** [3] - 76:10,
19
**Yao** [14] - 2:8, 14;
3:14; 4:5; 20:24;

35:11; 37:12,
16; 47:9, 11;
70:5; 94:19;
96:25; 102:7
**yardstick** [1] -
64:5
**year** [1] - 34:10
**Yeo** [2] - 96:25;
97:16
**Yeo's** [2] - 96:24;
97:1
**Yining** [1] - 2:16
**yourself** [5] -
2:11; 3:7; 4:20;
5:14; 28:10
**yourselves** [2] -
4:8; 5:13