## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LI FEN YAO, as Administrator of the Estate of Sam Mingsan Chen, <br><br>                       Plaintiff, <br><br>       v. <br><br> ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC, <br><br>                    Defendants. | Case No. 8:23-cv-00889-TDC |
| ROBERT CHEN and OTTERSEC LLC, <br><br>                     Plaintiffs, <br><br>       v. <br><br> DAVID CHEN, <br><br>                    Defendant. | Case No. 8:24-cv-03628-TDC |

## DECLARATION OF DAVID CHEN

DAVID CHEN, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am 20 years old, and I will be entering my sophomore year at the University of Maryland this fall.  I am a non-party witness in the lead case referenced above, *Yao v. Chen, et al.*, Case No. 8:23-cv-00889, and the defendant in the consolidated member case referenced above, *Chen et. al. v. Chen*, Case No. 8:24-cv-03628.

2.      I am humbly, and respectfully, submitting this declaration to inform the Court of my inadvertent violation of the Court's Order directing me to preserve evidence in the above-referenced matters, entered on May 29, 2025 (ECF 141) (the "Preservation Order"). I deeply regret my failure to comply with the Preservation Order and I take full responsibility for my actions, which are detailed below.

3.      On February 14, 2025, I began renting a computer server through OVHcloud US ("OVH") in their Vint Hill, Virginia datacenter. I rented the server for the purpose of downloading and running a "full node" for the Sui blockchain, which first launched in May 2023. Sui full nodes are subsets of Sui's "validator," which is computer code used to execute and confirm transactions and add them to the Sui blockchain. Sui full nodes track and verify the state of the Sui blockchain and enable other computer code to interact with the Sui blockchain. Sui's validator and full nodes are "open sourced" on GitHub by the company behind Sui, Mysten Labs, meaning that the underlying code is made publicly available.

4.      My initial efforts to run the Sui full node were unsuccessful because the server I was renting from OVH had insufficient storage space. I therefore canceled the original contract with OVH and upgraded to a new annual contract with OVH for a server with sufficient storage space on February 27, 2025, following which I was able to run the full node.

5.      I downloaded the Sui full node to run a "liquidator bot" to interact with Suilend, a decentralized finance lending and borrowing protocol built on the Sui blockchain. Suilend was launched in 2024, and it enables users of the protocol to deposit cryptocurrency assets and take out loans using the deposited cryptocurrency as collateral. Users' borrowing limits are established by Suilend based on the assets they deposit as collateral, and "liquidator bots" operate to identify overexposed debt and auction off collateral assets based upon parameters established by Suilend.

6.      Suilend open sources the code for its own version of a liquidator bot, and the code is written in the programming language Typescript. Suilend invites developers to use and improve upon its code, or to develop their own liquidator code, and developers are paid fees if their liquidators are the first to successfully liquidate borrowers' collateral assets when the parameters established by Suilend are triggered.

7.    I had previously downloaded Suilend's liquidator bot to my personal computer, made modifications to the code in an effort to improve upon it, and then uploaded my liquidator code to GitHiub. I then downloaded a copy of my liquidator code from GitHub to the OVH server and ran it against Suilend utilizing the Sui full node.

8.    Suilend's open sourced liquidator bot is written to run on the Sui blockchain in the programming language Typescript, and I also used Typescript to modify Suilend's code for my liquidator bot.  My Suilend liquidator bot performed several liquidations over the course of a few weeks, but the liquidations were for small amounts and generated less than $10 in fees. I made some changes to the code between February and April 2025, but after making my last changes in April, I decided not to do any further work on the code because it did not seem worthwhile.  I did not make any further use of the OVH server.

9.    I am aware that the attorneys for the parties to *Yao v. Chen* and *Chen v. Chen*, including my attorneys, met and conferred on May 12 and May 15, 2025, for the purpose of discussing (among other things) discovery related to messages I deleted from Discord and a motion filed by the plaintiffs in the *Chen v. Chen* action seeking an Order directing me to preserve evidence (ECF 121). I agreed to the Preservation Order, as reflected in the Joint Status Report filed with the Court on May 23, 2025 (ECF 139). I am also aware that the Court entered the Preservation Order on May 29, 2025 (ECF 141), and that it covers the period of February 1, 2021 through April 17, 2025.

10.    Although some categories of documents and other materials covered by the Preservation Order had already been collected from me by the discovery vendor we have been using for purposes of discovery as of the date of the Preservation Order, the collections generally had taken place prior to April 17, 2025 and, therefore, did not capture documents and other materials for the entire period encompassed by the Preservation Order. Further, some categories of documents and materials covered by the Preservation Order had not been

collected by our discovery vendor. I therefore took steps, even before the entry of the Preservation Order, to preserve these materials.

11.     On May 23, 2025, I used Backblaze, a cloud-based back-up and storage service, to back-up the OVH server. I had previously used Backblaze to back-up another server I rented from a different company, Serve the World AS ("STW"). I used the STW server beginning on April 3, 2025, but cancelled the agreement with STW on May 6, 2025, because of the costs associated with their service and because the server was insufficient for my use. I backed up the STW server using Backblaze on May 5, 2025, before cancelling the agreement with STW.

12.     As I did when I backed up the STW server, I spot-checked the Backblaze back-up of the OVH server when it was completed. I did not notice anything missing from the Backblaze back-up (in either case).

13.     On June 28, 2025, while I was in Taipei, Taiwan, I met with one of the founders of Suilend, whose Discord username is "nojob." He and his team also founded Solend (which rebranded itself as "Save" in July 2024). Solend is similar to Suilend in that it is a protocol for lending and borrowing, and uses "liquidator bots" to identify overexposed debt and liquidate borrowers' collateral.  Solend also open sources the code for its own version of a liquidator bot, and its open sourced code is written in the programming language Typescript.  Solend, like Suilend, invites developers to use and improve upon its code or to develop their own code.

14.     However, Solend liquidator bots are written to interact specifically with Solend and the Solana blockchain, whereas Suilend liquidator bots are written to interact specifically with Suilend and the Sui blockchain.  Moreover, although Solend's open sourced liquidator bot is written in the programming Typescript, it is not necessary that developers use Typescript for their own liquidator bots to interact with Solend and the Solana blockchain.

15.     The computer code at issue in these consolidated actions, described in the *Chen v. Chen* complaint as the "Solend Liquidator Code" and "mSOL Market Maker Code," were

written specifically to interact with the Solana blockchain, and both are written in the programming language Rust (not Typescript). The Solend Liquidator Code is a liquidation bot that interacts with the Solend protocol, and the mSOL Market Maker Code was written to buy and sell tokens (mSOL) that are awarded to users participating in certain activity (known as "staking") on the Solana blockchain. mSOL tokens are redeemable for SOL, the native token of the Solana blockchain.

16.     In other words, the liquidator code I wrote for the Suilend protocol (and ran on the OVH server) and the code at issue in these consolidated actions are different; they were written in different programming languages, and they interact with different borrowing and lending protocols that run on different blockchains. The liquidator code I wrote for the Suilend protocol would not work with the Solana blockchain or Solend protocol, and the Solend Liquidator Code and mSOL Market Maker Code would not work with the Sui blockchain or the Suilend protocol.

17.     I never used the OVH server for any purpose associated with Solana, Solend, the Solend Liquidator Code or the mSOL Market Maker Code.  I used it exclusively to run the Sui full node and Suilend liquidator bot, and the server never contained any code or other material associated with the Solend Liquidator Code or mSOL Market Maker Code.

18.     When I met in Taipei with the co-founder of Suilend and Solend (nojob) on June 28, 2025, I expressed my interest in working with Solend on their Solana "validator." Generally stated, Solana validators (there are many besides Solend's) execute and confirm transactions on Solana and add them to the blockchain, and are awarded SOL tokens for doing so. "nojob" turned me down and indicated that he was satisfied with his existing team.

19.     On July 3, 2025, I noticed a message in a Solend Discord channel from an individual with the Discord username "_ganyuwu", whom I know to be a member of the team at Solend and Suilend who runs their validators. He directed his message to "nojob" (the co-

founder I had met with in Taipei) and stated that he was in immediate need of a server with certain specifications. The co-founder (nojob) responded that it was unlikely he would be able to obtain the server for "_ganyuwu" on such short notice, and I observed that I had access to servers that would likely satisfy his needs. Following our conversation in Taipei, I was eager to seize the opportunity to earn goodwill with "nojob", and I offered to let "_ganyuwu" use the OVH server, which I had not used since performing the Backblaze backup on May 23, 2025. They accepted my offer.

20.    In order to effectuate the transfer of the OVH server to "_ganyuwu" quickly, I proceeded to wipe the server and grant "_ganyuwu" access to it using secure credentials (known as an "SSH key") "_ganyuwu" supplied to me. I should have, but did not, consult with my attorneys before doing so, double-checked the Backblaze back-up I performed in May, and/or backed it up again before wiping the server.

21.    On July 16, 2025, in connection with the ongoing process of having our discovery vendor collect additional documents and other materials from me for the period covered by the Preservation Order, I realized for the first time that the backup I performed of the OVH server on May 23, 2025, is not complete. Although the backup captured various files, logs, and scripts, it did not capture the Sui validator code and data directory, the Suilend liquidator code and liquidator code logs, and my Suilend liquidator bot private key. I do not know why these materials were not backed up, as I followed the same process I used to back up the STW server using Backblaze, and I have confirmed that the STW backup was successful.

22.    Regardless of the reason why the materials were not backed up, I understand that Court Orders are binding and must be followed without exception or excuse. I am responsible for not having properly backed up the OVH server, and I am taking corrective action.

3

23.     I immediately contacted OVH support on July 16, 2025. I asked them to shut down the server and send me the physical drive so that I may have an expert examine the drive and pursue a potential forensic recovery of the material that was not backed up, and I agreed to pay OVH for its charges. OVH's representative advised that they have done this in the past, but that my request needed to be reviewed by OVH's "Management and Leadership Team" and that it would "take some time in entirety." I last heard from OVH on July 22, 2025, and will continue to follow up.

24.     I have also confirmed that the open sourced Sui validator code I downloaded to the OVH server remains publicly available on GitHub by Mysten Labs, and that the Suilend liquidator bot code I wrote (including the history of any changes I made) was preserved in my GitHub account.  I also have a password manager that contains the private key I used for my Suilend liquidator bot, and the validator data directory's contents are publicly available on the Sui blockchain. I do not know of another location that would have the Suilend liquidator code logs, which show "debugging" information (generally, information useful to programmers such as speed statistics and potential problems or errors in the code).

25.     While I respectfully request the Court's understanding and consideration, I am fully aware that my failure to abide by the Preservation Order will be considered by the Court in the context of my deletion of the Discord messages.  However, I wish to make clear that I take this matter very seriously and that I am committed to taking all necessary steps to recover the data from the OVH server that was not backed up and ensuring full compliance with the Preservation Order moving forward. I will fully cooperate with any directions provided by the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 25, 2025

_____
David Chen