**Alexander M. Giles**

| | |
|---|---|
| **From:** | Alexander M. Giles |
| **Sent:** | Tuesday, September 16, 2025 12:51 PM |
| **To:** | 'Rachel Clattenburg'; Michael Lentz; Stephen M. Plotnick; Madelyn K. White; Alexander G. Malyshev; Kevin M. Simpson; Fernando Kirkman; Rachel DeCaluwe |
| **Cc:** | Josh Levy; Justin DiCharia; Kevin Crenny; Emma Floyd; Christina Lamoureux |
| **Subject:** | RE: Chen v. Chen and Yao v. Chen - ECF 162 & Signal & other issues |

Rachel-

September 22 anytime between 10 a.m. and 1 p.m. works for my schedule.

As for your description of what is meant by Item #5, that, quite frankly, does not strike me as a bona fide reason to request a Meet and Confer session.  Let me be as direct as I can with this, the two sides have talked ad nauseum about David's alleged spoliation issues, you have taken his deposition regarding those specific issues (and, yes, I agree that the deposition itself is NOT a Meet and Confer "discussion"), we (Stephen Plotnick of CLM) have corrected various previous representations to the Court to now match the recent testimony of David, and we have participated in multiple Meet and Confers for every single little difference of opinion, to the point (as I mentioned previously) that yours and Kevin's insistence on scheduling Meet and Confer after Meet and Confer after Meet and Confer on ANY issue has become somewhat of a joke….no offense, though I am sure you will claim offense.

As a result of David's deposition testimony, you/Plaintiffs have decided (evidently) that you want to move forward with preparing and filing a Motion for Sanctions pursuant to FRCP 37.  That's fine.  How is a Meet and Confer going to help "resolve" any of those issues.  It's not.  You/Plaintiffs are going to file your Motion for Sanctions regardless of anything that I may or may not say in response….so why waste our collective time on that.  If you feel that you NEED to check the proverbial box (like Stephen mentioned to you and Kevin back in late June during another Meet and Confer), then go ahead and add it to the Agenda of the Meet and Confer on Monday.  So be it.

One final question that I presume is self-evident, but just to make sure so that it doesn't get lost in translation…..I presume that you will arrange for the Planet Depos court reporter for the Meet and Confer?  Please confirm.  Thanks.

-Alex



| | |
|---|---|
| Alexander M. Giles | One East Pratt Street Suite 901 Baltimore, MD 21202 |
| agiles@tydings.com | Main: 410.752.9700 |
| Office: 410.752.9747 | Fax: 410.727.5460 |

MERITAS LAW FIRMS WORLDWIDE                www.tydings.com

---

**From:** Rachel Clattenburg <rmc@levyfirestone.com>
**Sent:** Tuesday, September 16, 2025 11:15 AM
**To:** Alexander M. Giles <agiles@tydings.com>; Michael Lentz <mlentz@tydings.com>; Stephen M. Plotnick <plotnick@clm.com>; Madelyn K. White <white@clm.com>; Alexander G. Malyshev <malyshev@clm.com>; Kevin M.

Simpson <simpson@clm.com>; Fernando Kirkman <FKirkman@tydings.com>; Rachel DeCaluwe <RDeCaluwe@tydings.com>
**Cc:** Josh Levy <jal@levyfirestone.com>; Justin DiCharia <JDiCharia@levyfirestone.com>; Kevin Crenny <kcrenny@levyfirestone.com>; Emma Floyd <efloyd@levyfirestone.com>; Christina Lamoureux <Christinal@levyfirestone.com>
**Subject:** Re: Chen v. Chen and Yao v. Chen - ECF 162 & Signal & other issues

Counsel,

In that case, let's schedule a meet and confer on Monday, September 22. Please let us know your availability to meet and confer before 1pm on Monday.

Regarding item 5, we are seeking to meet and confer on the <u>motion</u> for spoliation sanctions, which we have not discussed with you previously. Rule 37 of the FRCP, the basis for spoliation sanctions, requires "a certification that the movant has in good faith conferred or attempted to confer." The limited deposition was not a meet and confer. If you are declining to meet and confer on this topic, let us know. Otherwise, we will start with the spoliation motion at the meet and confer and then move on to the other issues.

We are concerned that you have not verified that your client has disabled disappearing messages. You have been on notice that his Signal conversations with Philip were apparently not in compliance with the Preservation Order since at least his deposition.

Thanks,
Rachel

---

**From:** Alexander M. Giles <agiles@tydings.com>
**Date:** Monday, September 15, 2025 at 9:45 PM
**To:** Rachel Clattenburg <rmc@levyfirestone.com>, Michael Lentz <mlentz@tydings.com>, Stephen M. Plotnick <plotnick@clm.com>, Madelyn K. White <white@clm.com>, Alexander G. Malyshev <malyshev@clm.com>, Kevin M. Simpson <simpson@clm.com>, Fernando Kirkman <FKirkman@tydings.com>, Rachel DeCaluwe <RDeCaluwe@tydings.com>
**Cc:** Josh Levy <jal@levyfirestone.com>, Justin DiCharia <JDiCharia@levyfirestone.com>, Kevin Crenny <kcrenny@levyfirestone.com>, Emma Floyd <efloyd@levyfirestone.com>, Christina Lamoureux <Christinal@levyfirestone.com>
**Subject:** RE: Chen v. Chen and Yao v. Chen - ECF 162 & Signal & other issues

> **Caution:** This is an external email and may be malicious. Please take care when clicking links or opening attachments.

Rachel-

We disagree with your perspectives on all of the points that you have raised in your below email this afternoon.  While I have already stated to you in my previous email response that we believe that none of the issues that you have recently raised are significant enough to merit yet another Meet and Confer session, I will nonetheless state that I do NOT currently have any availability on the three dates that you have identified in your below email (i.e., Tuesday, Wednesday, or Thursday).  If you were to find available time on Friday of this week (September 19, 2025), then we might be able to find time that afternoon to conduct the Meet and Confer session that you are so insistent on scheduling this week.  I am currently available any time after 1:00 p.m. on Friday, September 19, 2025.

I would add that the issue that has been identified in your below paragraph #5 is one that you have already explored through your limited deposition of David on July 30, 2025, which then resulted in our series of corrections issued on July 25, 2025 (ECF No. 155) and August 19, 2025 (ECF No. 157), so those items do not need to be included in any possible further Meet and Confer session.

We will refrain from commenting further and substantively in response to the remainder of your below email.  Thank you.

-Alex



| Alexander M. Giles | One East Pratt Street Suite 901 |
| --- | --- |
| agiles@tydings.com | Baltimore, MD 21202 |
| Office: 410.752.9747 | Main: 410.752.9700 |
| | Fax: 410.727.5460 |

MERITAS LAW FIRMS WORLDWIDE                    www.tydings.com

---

**From:** Rachel Clattenburg <rmc@levyfirestone.com>
**Sent:** Monday, September 15, 2025 4:10 PM
**To:** Alexander M. Giles <agiles@tydings.com>; Michael Lentz <mlentz@tydings.com>; Stephen M. Plotnick <plotnick@clm.com>; Madelyn K. White <white@clm.com>; Alexander G. Malyshev <malyshev@clm.com>; Kevin M.

Simpson <simpson@clm.com>; Fernando Kirkman <FKirkman@tydings.com>; Rachel DeCaluwe <RDeCaluwe@tydings.com>
**Cc:** Josh Levy <jal@levyfirestone.com>; Justin DiCharia <JDiCharia@levyfirestone.com>; Kevin Crenny <kcrenny@levyfirestone.com>; Emma Floyd <efloyd@levyfirestone.com>; Christina Lamoureux <Christinal@levyfirestone.com>
**Subject:** Re: Chen v. Chen and Yao v. Chen - ECF 162 & Signal & other issues

Counsel,

Please provide your availability to meet and confer Tuesday, Wednesday, or Thursday this week on the following issues.

1. Your email misunderstands how Signal works. If one person enables the auto-delete function (known as "disappearing messages"), all messages in the conversation (regardless of who sent them) are deleted from everyone's devices. At the same time, anyone can disable disappearing messages for the whole conversation. To comply with his preservation duties, David could have, and should have, disabled that disappearing messages in his conversation with Philip. David surely knows how to do this. Are we to understand that you have not confirmed with your client whether he has disabled disappearing messages from his Philip Papurt chat and your response below is solely based on your misreading of the transcript? Please confirm that David Chen has preserved all his Signal chat messages to and from Philip Papurt.
2. And you have not responded to this request: "Please confirm that he does not have auto-delete enabled on any other Signal chats with potential witnesses. If he has turned off auto-delete for his Signal communications with any other potential witnesses, please identify those individuals and the date when he turned off auto-delete for those communications." His failure to disable disappearing messages on Signal chats with potential witnesses is a violation of the Preservation Order.
3. Your clients must fulfill their discovery obligations. If your discovery vendor is not up to the task, and you have elected the most time-consuming process to get David's Discord data, then you will need to find someone who can do the process by the deadlines in this case. You have had many months to get these Discord messages. As a reminder, you agreed to produce all of David and Li Fen's responsive Discord and Telegram communications by September 19, 2025, including those requested in the Subpoena served on David, for which he withdrew all objections. See ECF 139 (May 23, 2025).
4. Our requests, in Kevin's August 25, 2025 email, that you file corrected versions of filings and provide a corrected analysis of how you assessed relevance of deleted Discord messages. We already asked for a meet and confer on this; at the time, you declined to agree to a timely meet and confer.
5. We will be moving for sanctions for spoliation, under FRCP 37(e). The basis for the motion is David and Li Fen's spoliation of thousands of Discord messages, including: channels from the OtterSec Discord Server (April 27, 2022); messages from the Jito Developers server; and messages from the "new clickbait" server.

Thanks,
Rachel

---

**From:** Alexander M. Giles <agiles@tydings.com>
**Date:** Monday, September 15, 2025 at 2:53 PM

**To:** Rachel Clattenburg <rmc@levyfirestone.com>, Michael Lentz <mlentz@tydings.com>, Stephen M. Plotnick <plotnick@clm.com>, Madelyn K. White <white@clm.com>, Alexander G. Malyshev <malyshev@clm.com>, Kevin M. Simpson <simpson@clm.com>, Fernando Kirkman <FKirkman@tydings.com>, Rachel DeCaluwe <RDeCaluwe@tydings.com>
**Cc:** Josh Levy <jal@levyfirestone.com>, Justin DiCharia <JDiCharia@levyfirestone.com>, Kevin Crenny <kcrenny@levyfirestone.com>, Emma Floyd <efloyd@levyfirestone.com>, Christina Lamoureux <Christinal@levyfirestone.com>
**Subject:** RE: Chen v. Chen and Yao v. Chen - ECF 162 & Signal

> **Caution:** This is an external email and may be malicious. Please take care when clicking links or opening attachments.

Rachel, et al.-

My apologies on the delay in responding to your below email from September 5. I wanted to get you our Memorandum in Opposition first before responding to the issues that you raise herein, and now that I have served on all of you, as of earlier this morning, David's Memorandum in Opposition to Plaintiffs' Motion to Compel David's Discovery Responses, I am writing to you in response to your below requests.

Generally speaking, Plaintiffs and you (as their counsel) have a really bad habit of suggesting that EVERY LITTLE PERCEIVED DISCOVERY DISPUTE somehow merits a Meet and Confer session. Quite candidly, it is laughable at times. Regardless, just so there is no uncertainty as to our position on your requests, we loudly and wholeheartedly disagree with your approach in this regard. It is wasteful in terms of time and resources, and, quite candidly, just continues to prove your collective motivations in this litigation. And with each and every instance where your transparent motivations continue to play out, the closer and closer Plaintiffs get to being subjected to repeated claims from us that you are NOT operating in good faith in this litigation and that sanctions (or some sort) are warranted.

Specific to your two requests in your below email, while David did testify that he did not disable the auto-delete function in his discussions with Philip Papurt, he did make it abundantly clear that he himself did not select the auto-delete function ON HIS SIDE. Rather, he merely did not disable that function ON PHILIP'S SIDE, which he believes he may have had the ability to do. As he testified, he just assumed that Philip had some reason why Philip wanted the auto-delete function in place. David's actions in this regard are NOT in violation of the Preservation Order, as you incorrectly suggest. Moreover, there is nothing for David to confirm because he never engaged the auto-delete function ON HIS SIDE of the discussion. As such, this is clearly not an issue that merits a Meet and Confer session where you can take the opportunity to lecture us/David on what you perceive to be his obligations regarding this matter, and to require us to spend the time and the resources dealing with your obvious attempts to have us waste such time and resources.

Regarding your second request, we have several responses. First and foremost, the inordinate amount of time that is required for TransPerfect to undertake the downloading, processing, uploading into their database (Relativity), and then

analysis of such data to provide Document Hits reports is a matter of YOUR choosing….you have stated very clearly that you want to and need to see EVERYTHING and that you will not be satisfied unless we can accurately state to you and to the Court that any end-analysis is the product of a comprehensive collection of ALL of David's documents, information, etc.  That's what we are doing through the assistance of TransPerfect.

For you to state in your below email, and elsewhere, that the time estimate of 3 and ½ months to complete the full lifecycle of this process is somehow "not believable," we take issue with your position in that regard, and would suggest that you are speaking from a basis of "emotion" rather than one of "knowledge."  The fact that YOU do not understand how so much time needed can be possible, quite frankly, does not concern me.  All that matters is that this is the time estimate that has been provided to me by our contacts at TransPerfect in response to YOUR request for the analysis of the documents to be based on a full/comprehensive collection of such potentially relevant documents, data, information, etc.

Furthermore, the fact that you have casually sought the opinion of "another discovery vendor" does not concern me either, because they are NOT the ones actively faced with the logistics of David's digital footprint and the handling of the downloading, processing, uploading (into Relativity), and analysis of such documents, data, information, etc.  The uneducated opinions of this "other" discovery vendor amounts to some other entity essentially saying to you "we can do a better job so consider hiring us to critique the efforts of TransPerfect."  As a result, I will give the other discovery vendor's opinion the importance that it deserves….which is absolutely no importance.

Like the first request made, and discussed above, this second request also does NOT merit a Meet and Confer session to discuss things that are objectively out of our collective hands and that are being handled by our third-party discovery vendor TransPerfect.  Moreover, we would note that you have already publicly requested a conference with Judge Simms to discuss these very issues.  So rather than have duplicative discussions about this issue, we will merely await the scheduling of the conference/hearing by Judge Simms to take up these "alleged" issues.

-Alex



Alexander M. Giles

agiles@tydings.com
Office: 410.752.9747

One East Pratt Street
Suite 901
Baltimore, MD 21202
Main: 410.752.9700
Fax: 410.727.5460

                    www.tydings.com

**From:** Rachel Clattenburg <rmc@levyfirestone.com>
**Sent:** Friday, September 5, 2025 3:20 PM
**To:** Alexander M. Giles <agiles@tydings.com>; Michael Lentz <mlentz@tydings.com>; Stephen M. Plotnick <plotnick@clm.com>; Madelyn K. White <white@clm.com>; Alexander G. Malyshev <malyshev@clm.com>; Kevin M. Simpson <simpson@clm.com>; Fernando Kirkman <FKirkman@tydings.com>
**Cc:** Josh Levy <jal@levyfirestone.com>; Justin DiCharia <JDiCharia@levyfirestone.com>; Kevin Crenny <kcrenny@levyfirestone.com>; Emma Floyd <efloyd@levyfirestone.com>; Christina Lamoureux <Christinal@levyfirestone.com>
**Subject:** Chen v. Chen and Yao v. Chen - ECF 162 & Signal

Counsel,

We write with two issues. We would also like to schedule a meet and confer on these issues next week. Please let us know your availability.

**First**, David testified that he has Signal conversations with Philip Papurt and that he did not disable auto-delete on these. Tr. Depo. of David Chen at 77-82. This is a violation of the Preservation Order. Please confirm that he has now turned off auto-delete and the date on which he did so. Please confirm that he does not have auto-delete enabled on any other Signal chats with potential witnesses. If he has turned off auto-delete for his Signal communications with any other potential witnesses, please identify those individuals and the date when he turned off auto-delete for those communications.

**Second**, your representation to the Court in ECF 162 that you don't intend to have David's 2021 Discord messages until December 2025 is unacceptable. Your representation that we will not "agree to discuss any different relevance/discovery start date" until you have that data is false. ECF 162 at 3.
- We've had *many* discussions with you on the relevant start date for discovery in Chen v. Chen. It is not acceptable to delay resolution of this issue, let alone document discovery, by three months.
- To the extent you wanted to argue in meet and confers last month that February 1, 2021 was too early of a start date because there may not be documents about the Solend Liquidator Code at that time, we offered: "if it turns out that we can be satisfied that there is nothing relevant prior to[,] or responsive prior to[,] a specific date, then we are willing to discuss that. We haven't heard that and it doesn't sound like there has been any kind of document review of 2021 that would allow that kind of argument at this point." Tr. Meet & Confer (Aug. 13, 2025) at 36:22 - 37:7. Then you revealed that you had not actually collected David's 2021 Discord. *See* Tr. Meet & Confer (Aug. 20, 2025) at 16-19; Email from A. Giles (Aug. 21, 2025). Now you say you won't know anything about 2021 Discord until this December. Since you have no factual basis for arguing that February 1, 2021 is too early based on proportionality, that objection fails. We explained why the relevant time period should begin on Feb. 1, 2021; it is now your burden to demonstrate why the discovery should not be permitted, and you are unable to meet that burden. *O'Malley v. Trader Joe's East, Inc.*, Civ. Case No. RDB 19-3273, 2020 WL 6118841, at *2 (D. Md. Oct. 15, 2020). Your only remaining objection is relevance, which we have discussed ad nauseam, and we have explained why your arguments on that fail.
- 
- We also find this suggestion that it will take until December 2025 to have David's Discord data not believable. As you repeatedly told the Court, "Plaintiff has collected and preserved more than eight terabytes of data including…David's entire Discord history through the end of 2024…" *See* ECF Nos. 117, 122. *See also* Hrg. Tr. (Feb. 13, 2025) at 17:10-

12 ("We have done multiple collections over the course of the case that have sort of expanded over time and the point is that by this point we have everything.")
- o Will you be correcting these statements about having already "collected" "David's entire Discord history"?
- o Are you saying that you will not even have Discord messages from the later years (2022, 2023, 2024, 2025) ready for production by the deadline for document discovery?
- o Why does this collection take so long compared to this prior collection of 8 terabytes of data?
- o How do your clients intend to meet their discovery obligations and deadlines if they are unable to collect and produce Discord messages — the main source of ESI in this case — in an efficient manner? Note that it was *David* who moved for consolidation of the cases in part because he claimed it would be "an efficient way to proceed." ECF 111-2.
- o What are you using to export Discord data and what is the speed of that export? What aspect of this process is so time consuming? How many people at your vendor are working on this?

We do not understand how it can take another three months for you just to be able to search Discord documents, if you started this on May 29, 2025, as you contend in ECF 162, and you previously collected David's "entire Discord history." You previously blamed Transperfect for the significant errors in Li Fen Yao's Fifth Production, back in December 2024, and it took you and Transperfect until July 2025 merely to produce what you allege are corrected versions of the same set of documents produced back in December. We do not know what is causing the glacial pace of Discord processing on your side, but it is not consistent with the discovery schedule that your clients agreed to.

We asked another discovery vendor and it seems that Transperfect's estimate is much longer than what it should take. Please explain why your vendor says this will take so much longer for them.

Thanks,
Rachel


**Rachel M. Clattenburg**

**Levy | Firestone | Muse**
900 17th St NW, Suite 605, Washington, DC 20006
T 202-845-3215 • C 914-714-1676 • F 202-595-8253 • levyfirestone.com

. . .

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Levy Firestone Muse LLP. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 261-6580, and immediately destroy this communication and all copies thereof, including all attachments.

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1)

avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.
--



Alexander M. Giles

agiles@tydings.com
Office: 410.752.9747

One East Pratt Street
Suite 901
Baltimore, MD 21202
Main: 410.752.9700
Fax: 410.727.5460



This message contains information that may be privileged, confidential, or otherwise protected from disclosure. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message. If you have received this message in error, please notify the sender by replying to this message, and then delete it from your system. Thank you very much.



Alexander M. Giles

agiles@tydings.com
Office: 410.752.9747

One East Pratt Street
Suite 901
Baltimore, MD 21202
Main: 410.752.9700
Fax: 410.727.5460

This message contains information that may be privileged, confidential, or otherwise protected from disclosure. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message. If you have received this message in error, please notify the sender by replying to this message, and then delete it from your system. Thank you very much.