# Exhibit A

*to Notice of Intent to File Motion for Spoliation Sanctions Pursuant to Rule 37(e), ECF 171*



# Transcript of Meet and Confer

**Date:** September 22, 2025
**Case:** Yao/Estate of Chen -v- Chen, et al.

**Planet Depos**

**Phone:** 888.433.3767 **| Email:** transcripts@planetdepos.com

www.planetdepos.com

Michigan #8598 | Nevada #089F | New Mexico #566

**WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY**

Case 8:23-cv-00889-TDC    Document 172    Filed 09/24/25    Page 3 of 73
Transcript of Meet and Confer                    1 (1 to 4)
Conducted on September 22, 2025

**Page 1**

```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

LI FEN YAO, as administrator   )
Of the Estate of Sam Mingsan   )
Chen,                          )
                               )
            Plaintiff          ) Case No.
                               ) 23-cv-889
        Vs.                    )
                               )
ROBERT CHEN, OTTER AUDITS, LLC.)
and RC SECURITY, LLC,          )
                               )
            Defendants         )
-------------------------------------------

    ---------------------------------

            MEET AND CONFER

        Via Zoom Videoconference

          September 22, 2025

    ---------------------------------
```

Job No.: 601093

    Pages: 1 - 142

Reported STENOGRAPHICALLY By:

    Annette Peltier, CSR, CRR

**Page 2**

Proceedings were taken in the
above-styled and numbered cause on September
22, 2025, from 9:06 a.m. Central time to
11:15 a.m., before Annette Peltier, CSR,
Texas Certified Realtime Reporter, in and for
the State of Texas, reported by machine
shorthand pursuant to the Federal Rules of
Civil Procedure and the provisions stated on
the record or attached hereto.

**Page 3**

```
                A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

        STEPHEN M. PLOTNICK, ESQUIRE
        Carter Ledyard
        28 Liberty Street
        41st Floor
        New York, New York 10005
        212.238.8772
            - and -
        ALEXANDER M. GILES, ESQUIRE
        MICHAEL LENTZ, ESQUIRE
        Tydings & Rosenberg LLP
        One East Pratt Street
        Suite 901
        Baltimore, MD 21202
        410.752.9747

ON BEHALF OF THE DEFENDANTS:

        KEVIN P. CRENNY, ESQUIRE
        RACHEL CLATTENBURG, ESQUIRE
        JUSTIN A. DICHARIA, ESQUIRE
        Levy Firestone Muse LLP
        900 17th Street NW
        Suite 1200
        Washington, DC 20006
        202.261.6564

ALSO PRESENT:

        Emma Floyd, Paralegal
        Levy Firestone Muse LLP
```

**Page 4**

                Index

                                      Page

Appearances..........................    3

Proceedings..........................    5

Adjournment..........................  140

Court Reporter's Certificate.........  141

            * * No Exhibits * *

5

1    MS. CLATTENBURG:  This is
2 Rachel.  We have scheduled this meet and
3 confer to discuss a number of issues in both
4 cases, and I thought it would be helpful to
5 just first go through the list for the agenda
6 and then we can get into each one.
7    So we first want to discuss the
8 motion for sanctions for David and Li Fen's
9 spoliation of evidence, and Kevin is going to
10 handle that.
11    We then want to discuss your
12 failure to comply with the deadline for the
13 substantial completion of document
14 production.
15    In both cases, we've never
16 gotten a single production in Chen v. Chen.
17 We haven't gotten a production of anything
18 new in Yao v. Chen since at least April, and
19 the many missing documents from those cases.
20    In addition, we want to discuss
21 David Chen's responses to the second set of
22 interrogatories, the second set for request

6

1    for production of documents in Chen v. Chen.
2 We have not received any responses nor a
3 request for an extension, nor any mention of
4 those, and those were due a week ago, on
5 September 15th.
6    We want to discuss Li Fen Yao's
7 responses to Otter Audits' second request for
8 production, RC Security's second request for
9 production, and her responses to Robert
10 Chen's second request for production.
11    Those were due to be amended
12 after our January meet and confers, and we
13 have not gotten those.
14    We will discuss David's
15 apparent ongoing violation of the
16 preservation order because he has
17 disappearing messages enabled on his Signal
18 messaging app in his chat with a fact witness
19 in this case, in both cases, by the name of
20 Philip Papurt; and we've also not gotten
21 confirmation of whether he has that enabled
22 for any other chats with any other potential

7

1    witnesses in either case.
2    We want to discuss the false
3 statements and your representations to the
4 Court and to us and how that now means that a
5 motion to compel that we served on April 4th,
6 2025, and that we thought we had resolved
7 through meet and confers with you is now
8 reopened and not resolved because your
9 responses now are not accurate.
10    We want to discuss the list of
11 Discord and Telegram channels and servers and
12 direct messages that you are searching, or we
13 hope have searched already in Chen v. Chen,
14 which you agreed to disclose in the August
15 20th meet and confer, and we have not
16 received.
17    We have questions about your
18 source list in Chen v. Chen, and you declined
19 to respond to those questions in your e-mail
20 dated August 27th, 2025.
21    And lastly, we want to discuss
22 the next steps with Teel Tech, which is the

8

1    forensic examiner that is handling the
2 recovery of data from David Chen's phone and
3 who recently sent us an e-mail in which she
4 opined that David's explanation of what
5 happened to the phone is, quote, "highly
6 unlikely" and, quote, "implausible."
7    So we'll want to discuss what
8 to do next with that.
9    So the first issue is the
10 spoliation motion we anticipate filing soon.
11 I'm going to have Kevin handle that.
12    MR. CRENNY:  Hi, this is Kevin,
13 speaking on this issue.
14    So this is regarding a motion
15 for sanctions for spoliation of
16 electronically stored evidence under Rule
17 37(e).
18    You had said in your e-mails to
19 us that -- where you were, you know, saying
20 you didn't want to meet and confer, that this
21 was not a bona fide reason for a meet and
22 confer, that a meet and confer couldn't

Case 8:23-cv-00889-TDC     Document 172     Filed 09/24/25     Page 5 of 73
Transcript of Meet and Confer
Conducted on September 22, 2025

3 (9 to 12)

**9**

1  resolve this, and that it would be a waste of
2  time.  That was your September 16th e-mail to
3  us.
4          We would again refer you to the
5  meet and confer transcripts that we had with
6  Steve from earlier in the year where we
7  resolved many issues and would suggest you
8  review those if you're not sure how these
9  meet and confers could work.
10          In addition, we -- you know, I
11 -- we understand you might not agree to the
12 imposition of sanctions in a meet and confer.
13 We don't -- I don't think -- we don't think
14 that's likely, but we do think we might be
15 able to make sure we're agree -- in agreement
16 on the scope of what the dispute is, to make
17 it a little simpler for the Court if we can
18 say, "Hey, look, the parties don't -- don't
19 disagree on this or that element," then we
20 might be able to simplify the motion, which I
21 think the Court would appreciate; and I think
22 that's the point of meeting and conferring on

**10**

1  a motion like this.
2          Even if it's not going to be
3  resolved, it could be limited in scope; so I
4  wanted to go through -- it's not like
5  elements -- I guess they're elements, they're
6  elements that are, you know, things we need
7  to establish in this motion and see if we
8  could reach any agreement on them or at least
9  get your position, which might simplify the
10 briefing and the issues presented to the
11 Court.
12          So I have just a pretty small
13 list of these.  First thing, do you -- is
14 there any dispute -- do you agree that the
15 material David deleted is lost and cannot be
16 recovered?
17          And I'll be more specific than
18 "the material David deleted."  There's a few
19 different categories here; so the first is,
20 there are at least three Discord channels
21 that he deleted on April 27th, 2022.  These
22 were channels where people at OtterSec were

**11**

1  discussing the codes that he took, and those
2  are called -- the -- they start with a
3  hashtag, each of them, so it's "hashtag
4  spl-token-lending liquidator"; the second one
5  is "hashtag market maker"; and the third one
6  is "hashtag solend-liquidations" --
7  S-O-L-E-N-D, hyphen, liquidations.
8          So do you dispute that those
9  are lost and cannot be recovered or...
10          MR. GILES:  So you want us to
11 answer back and forth on these things?
12          MR. CRENNY:  Yeah.  Well, I was
13 going to go one-by-one.  I can tell you the
14 other two categories, but I thought you might
15 have a different answer --
16          MR. GILES:  No, that's fine --
17          MR. CRENNY:  -- for different
18 things that he deleted.
19          MR. GILES:  Kevin, that's fine.
20 I will -- I will respond, and I think Steve
21 might want to respond, as well, since, again,
22 I've said ad nauseam that we only came into

**12**

1  this case June 20th of 2025, so there's
2  certain institutional knowledge that Stephen
3  Plotnick and his colleagues at Carter Ledyard
4  have that we have gathered along the way in
5  terms of getting up to speed and whatnot.
6          From our perspective -- and you
7  guys know this because this is in e-mails
8  that I've sent you -- we are in the process
9  of downloading, processing, and uploading
10 into Relativity all of David's Discord
11 messages from February 1, 2021, through
12 April 17th, 2025.  That is what is going on
13 right now.
14          And while Rachel disagrees with
15 it -- and I don't know how Rachel has the
16 authority to disagree with it or the
17 knowledge to disagree with it -- she
18 disagrees with it and thinks it's
19 unreasonable and that TransPerfect is a
20 horrible third-party vendor that obviously
21 isn't doing what they should be doing; but
22 again, I'll give her opinions the importance

Transcript of Meet and Confer
Conducted on September 22, 2025

13

1  that they deserve, which is nothing.
2          That is happening, and that
3  will conclude, we hope, by the middle of
4  December of 2025.
5          I am in constant communication
6  with TransPerfect.  Every week I ask them for
7  an update as to whether the prognostication
8  estimate for that process has changed and, if
9  so, how it has changed.  It hasn't changed as
10 of yet.  If it changes at any point, I will
11 immediately let all of you guys know.
12         So, to your question, I don't
13 think I or Stephen or anyone else on our side
14 can answer that question because the process
15 is still ongoing.
16         Are we aware of any -- are we
17 aware of the deletions to which David has
18 acknowledged in his deposition testimony and
19 some of the declarations that have been
20 provided to the Court?  Yes, we're aware of
21 those.
22         But that being said, you know,

14

1  IT works in a very unique way; and sometimes
2  when you think things are gone for good, they
3  show up.  And we won't know the answer to
4  that until December of 2025.
5          That's our response.
6          MR. CRENNY:  Okay.
7          MR. GILES:  That's going to be
8  our response to a lot of these things, Kevin,
9  just so you're aware.
10         MR. CRENNY:  Okay.  So
11 that's -- even though this is not stuff I'm
12 asking about from 2021, this is stuff he
13 deleted in 2022, and they were OtterSec
14 server channels that would have only existed
15 from 2022 on; and the only new thing you're
16 collecting now should be 2021, and Steve
17 previously had told the Court that -- and
18 this is ECF-117 -- that plaintiff has
19 collected and preserved more than eight
20 terabytes of data, including David Chen's --
21 David's entire Discord history through the
22 end of 2022 -- 2020 -- this is cut off in the

15

1  -- 2024, sorry, what I was reading.
2          So even though, at that point
3  at least -- this was back in the spring --
4  Steve said you had collected David's entire
5  Discord history, your -- your position is you
6  don't know whether these were preserved at
7  this time.
8          MR. GILES:  Kevin, that's
9  absolutely our position, and I would point
10 out -- and Stephen can point this out better
11 than I can because of his institutional
12 knowledge, but I will point out the fact that
13 there were new Clickbait messages, albeit
14 they were 2021, but we thought that they were
15 totally lost; and then we determined that,
16 oh, no, they weren't totally lost, that they
17 are there, and we have affirmed to that in
18 declarations and -- and at the deposition
19 testimony that David participated in on
20 July 30th.
21         So yes, I think that some of
22 those things that you're identifying have, in

16

1  fact, been deleted, and that they no longer
2  exist; however, we won't know for a fact
3  until TransPerfect completes the process that
4  they're currently involved with that's going
5  to take three and a half months.
6          MR. CRENNY:  Okay.  That's --
7  that -- you know, I think you and Rachel will
8  discuss that process in a minute; but as far
9  as this spoliation issue, that makes sense to
10 me.
11         MR. GILES:  Okay.
12         MR. CRENNY:  The next category
13 is -- and I think you might say the same
14 thing, but I'm just going to ask -- so that
15 was the first of the three categories.
16         I'm asking, did he -- do you
17 agree he deleted this, it's lost, it cannot
18 be recovered?  The 1,927 messages deleted
19 from the new Clickbait server on July 29th to
20 30th, 2024.
21         MR. GILES:  I'm sorry, what --
22 in 2024?  I think this was part of his

17
1  deposition testimony.
2        MR. CRENNY:  Yes -- no.
3        MR. GILES:  Yeah, I think his
4  testimony speaks for itself.  I don't think
5  that you need to be asking me what I think
6  when his deposition testimony is very clear
7  on its face.
8        And if you are -- if you're
9  trying to challenge his deposition testimony
10 now, that seems like overkill to me, which I
11 think has been your modus operandi throughout
12 this entire case.
13       I don't know why this is part
14 of a meet and confer.  I'm not sure why any
15 of this is part of a meet and confer.  This
16 is ridiculous to me.
17       MR. CRENNY:  All right.  I can
18 explain it again.
19       MR. GILES:  No, you don't need
20 to.  Kevin, you don't need to.  It's
21 ridiculous.  Your representation of your
22 client -- and I don't know whether it's your

18
1  motivation or your client's motivation --
2  it's reprehensible throughout this case.  You
3  guys need to become professionals, and you're
4  obviously not doing that.
5        Next issue.
6        MR. CRENNY:  So your answer is
7  his deposition testimony speaks for itself on
8  whether or not it's lost and cannot be
9  recovered?  That's your answer?
10       MR. GILES:  Absolutely.  And I
11 -- absolutely.
12       MR. CRENNY:  Okay.
13       MR. GILES:  And, in fact,
14 that's --
15       (Talking over each other.)
16       MR. GILES:  Kevin, back up.
17       In conjunction with what I said
18 in response to your first message -- or your
19 first issue.
20       MR. CRENNY:  Are you finished?
21 Is that -- I thought that was --
22       MR. GILES:  Sure.

19
1        MR. CRENNY:  Okay.
2        MR. GILES:  Go ahead.
3        MR. CRENNY:  Okay.  I'm going
4  to ask you the next one.  I would ask you to
5  please not raise your voice at me.  It --
6  sometimes you accidentally interrupt
7  somebody -- not you -- sometimes somebody
8  accidentally interrupts somebody on Zoom
9  because there's a little delay and a hiccup.
10 And I appreciate you not raising your voice
11 at me if that happens.
12       The next thing is do you --
13 it's basically the same question.  Do you
14 agree that David deleted -- sorry, not
15 deleted -- that it's lost and cannot be
16 recovered, the 768 messages deleted from the
17 Gui.do server on July 29th, 2024?
18       MR. GILES:  Kevin, did Josh ask
19 these questions during the deposition?
20       MR. CRENNY:  Okay.  But we're
21 trying to get your position now for the --
22       MR. GILES:  I asked you a

20
1  question, Kevin.  Did Josh ask these
2  questions during the deposition?
3        MR. CRENNY:  Josh asked similar
4  questions.
5        MR. GILES:  Did he ask about
6  the Gui.do messages during the deposition?
7        MR. CRENNY:  Yes, he did, but
8  that's not --
9        MR. GILES:  What was -- what
10 was David's response?
11       MR. CRENNY:  Alex, I'm trying
12 to meet and confer on the motion --
13       MR. GILES:  No, you're not.
14 You're trying to waste time.
15       MR. CRENNY:  Why would I be
16 trying to waste time?  I'm trying --
17       MR. GILES:  Because that's your
18 MO.
19       (Talking over each other.)
20       MR. CRENNY:  -- to see if we
21 can limit the issues for the Court.
22       MR. GILES:  Kevin, that's your

Transcript of Meet and Confer
Conducted on September 22, 2025

21

1 entire MO in this case, is to waste our time.
2 That's what all this is, that's why I --
3 that's why I'm responding the way I am to
4 your dumb messages asking to meet and confer
5 about every issue. Every e-mail from you and
6 from Rachel says, "We need to meet and
7 confer."
8         It's like you have an automatic
9 filter that adds in "We need to meet and
10 confer," in every damned e-mail you send.
11 It's childish on your part. It's ridiculous.
12 You guys are practicing law in a manner that
13 is not acceptable and not condoned by the
14 U.S. District Court of Maryland, and I think
15 the judges are going to agree with this.
16         I have given you ample
17 opportunity to become a professional, to
18 become collegial, to become cooperative, and
19 you and Rachel, primarily, have not taken up
20 that offer. You dig your heels in, and you
21 act like completely unprofessional attorneys.
22         You might be smart, you might

22

1 have the greatest credentials in the world,
2 you might bill your clients shitloads of
3 money, but you are operating this case in a
4 bad faith way, period.
5         My answer to the -- your
6 question is the same as before. We won't
7 know for sure until December of 2025.
8         Yes, there's deposition
9 testimony that you can look at and you can
10 lift and you can copy the page of where Josh
11 asked the question and where David answers
12 the question, and it doesn't need to be part
13 of a motion -- a meet and confer. This is
14 overkill. Your entire case is overkill.
15 Next issue.
16         MR. CRENNY: Okay. Well, I'll
17 just -- I'll -- are you -- are you refusing
18 to meet and confer on the spoliation motion?
19 Because I have several other questions about
20 the spoliation motion, but if -- I don't want
21 to be --
22         MR. GILES: Kevin, I'm -- I'm

23

1 not -- I'm not --
2         (Talking over each other.)
3         MR. CRENNY: Can I please
4 finish what I'm saying --
5         MR. GILES: Sure, go ahead.
6         MR. CRENNY: -- before you
7 interrupt me?
8         I have several other questions
9 on the spoliation motion. It seems like you
10 are not interested in meeting and conferring
11 on it.
12         If you're refusing to meet and
13 confer on it, we can move on to the next
14 thing; but if you are willing to meet and
15 confer on it, like we are supposed to under
16 the rules, I will ask the next few questions.
17         MR. GILES: Are you done?
18         MR. CRENNY: Yes.
19         MR. GILES: Kevin, in my e-mail
20 exchanges with Rachel, I told her point blank
21 what I thought of the various issues and
22 whether meet and confers were needed. We are

24

1 still, here today, meeting and conferring.
2         So you can go through your
3 issues. I know you want to build a record,
4 you want to establish a record. Go ahead and
5 do it. We will respond. You may not like my
6 response, but we will respond.
7         I am not walking away from the
8 meet and confer, if that's your question. If
9 you want to get some sort of sound byte where
10 I said this is ridiculous and we're off here
11 and we're out of here, no, I'm not going to
12 say that.
13         We're participating. I've got
14 Stephen on the line. I've got Michael on the
15 line. There's three of us. Go ahead. Go
16 through all your issues.
17         MR. CRENNY: Okay. The next
18 question which I was trying to resolve to
19 limit the scope of the motion for the Court
20 and scope of the dispute, if we can, is
21 whether we have agreement that David deleted
22 the electronically stored information at

25

1  issue intentionally, meaning on purpose, not
2  out of negligence or recklessness; he chose
3  to delete them. So this would be the same
4  three categories that the material from
5  April 27th, the new Clickbait material and
6  the Gui.do material.
7          So that's -- you know, if you
8  have different answers for the three of them,
9  you could -- we can go one-by-one, or if you
10 have the same answer for all three, you could
11 just tell me that.
12         MR. GILES: So, Kevin, I'm
13 going to do something here. I'm going to
14 show you how ridiculous what you're doing is.
15         And I haven't already flagged
16 this stuff, but I'm going to try to do it and
17 I'm going to waste your time now.
18         Clickbait -- let's see here.
19 Unless you have the page numbers where it's
20 talked about in the deposition...
21         MR. CRENNY: I think there's
22 a -- can I explain why I'm not just looking

26

1  at the deposition?
2          MR. GILES: Sure.
3          MR. CRENNY: I can write a
4  brief where I cite the deposition. That's --
5  that's fine; but if we agree to it, then
6  that's simpler for the Court, that I can say,
7  "Look, there's no disagreement, you don't
8  even have to flip to the deposition. I'm
9  saving you time as the Court on this issue by
10 -- I can point to the transcript where
11 Mr. Giles and Mr. Crenny agreed that this one
12 is not disputed."
13         So that's what I'm trying to do
14 for the Court and simplify the issues. I
15 understand I could look at the deposition.
16         MR. GILES: Well -- are you
17 done?
18         MR. CRENNY: Yes.
19         MR. GILES: Okay. So in a
20 normal court, people take depositions of
21 opposing parties. They have deposition
22 transcripts which have their testimony.

27

1          We have that with David from
2  July 30th. You can cite to that, and that
3  would be proof of what his testimony is.
4          Since that July 30th
5  deposition, Stephen prepared a corrective
6  submission to the Court, which Judge Simms
7  acknowledged.
8          We have not done anything other
9  to say David's testimony at Page 28 is
10 inaccurate and it shouldn't be trusted. Our
11 own client's testimony shouldn't be trusted
12 because what he says about new Clickbait is
13 wrong.
14         Had we considered that that was
15 necessary, we would have done it, and we --
16 and we haven't; so you can conclude safely,
17 you can presume, you can assume, whatever you
18 want to say, you can take it to the bank,
19 that what is in the motion -- what is in the
20 deposition transcript and which has -- and
21 which hasn't been corrected, other than what
22 Stephen submitted to the Court subsequent to

28

1  the deposition, that what's in there is what
2  the case is.
3          We don't need to be doing this
4  in a meet and confer, period, full stop.
5  This is just so you can paper it upon paper
6  upon paper upon paper and can say, "See, we
7  have the deposition testimony, and then we
8  had the meet and confer and we talked about
9  it again, and Mr. Giles agreed that his
10 client did X, Y, and Z."
11         That's ridiculous; and if you
12 don't see that it's ridiculous, then
13 something's really wrong with you guys that I
14 can't help.
15         MR. CRENNY: I would recommend
16 you look at Judge Simms' order from last week
17 that said the Court will not entertain these
18 disputes unless the party comply with the
19 orders, provide the transcripts to the meet
20 and confer sessions that reflect good faith
21 efforts to resolve all discovery disputes. I
22 believe the word "all" was in bold.

Transcript of Meet and Confer
Conducted on September 22, 2025

---

29

1    We are supposed to meet and
2 confer on all of these issues.  I am trying
3 to narrow them down.
4    You said you would answer my
5 question if I asked it because you said --
6    MR. GILES:  I will --
7    MR. CRENNY:  You said you're
8 not refusing to meet and confer on this --
9    MR. GILES:  I'm not.
10    MR. CRENNY:  You said you were
11 willing to meet and -- could you please stop
12 interrupting?
13    It's difficult for the court
14 reporter.
15    You said you were -- when I
16 said, "Are you refusing to meet and confer on
17 this?"  You said, "No, I'm not."
18    I've asked you, "Do you agree
19 or not that David made these deletions
20 intentionally?"  You have not answered.
21    You've lectured me about the
22 deposition transcript and how you think the

---

30

1 brief should be written.
2    I'm just asking you if you
3 agree, he deleted it intentionally or not, or
4 if you're refusing to say.  If you're
5 refusing to meet and confer on the topic,
6 that's fine, too, we'll move on, and we'll
7 just note that we weren't able to meet and
8 confer on it.
9    MR. GILES:  Well, no, if you
10 note that we were not able to meet and confer
11 on it, that would be incorrect, and that
12 would be disingenuous on your part.
13    MR. CRENNY:  Okay.  Well, the
14 transcript is going to be filed with the
15 Court, so...
16    MR. GILES:  Well, see, now
17 you're cutting me off.  I was still talking.
18    MR. CRENNY:  Okay.
19    MR. GILES:  So be quiet.
20    Did Josh ask David at any point
21 in the deposition whether he intentionally
22 deleted any Discord messages?

---

31

1    MR. CRENNY:  Alex, if you're
2 not going to answer the questions
3 productively, we'll just move on to the next
4 issue.
5    MR. GILES:  Kevin, I'm asking
6 you a question.
7    What's your answer?
8    MR. CRENNY:  You're not
9 deposing me.  That's the point.
10    MR. GILES:  I'm not deposing
11 you, but this is --
12    MR. CRENNY:  I asked you a
13 question.
14    MR. GILES:  This is a meet and
15 confer -- time out, Kevin.  This is a meet
16 and confer.
17    The purpose of a meet and
18 confer, which you guys can't seem to
19 understand, is to resolve issues.  You guys
20 don't want to resolve issues, you want to
21 litigate issues.
22    So I'm asking you, did Josh ask

---

32

1 David what -- in the deposition of July 30th,
2 2025, whether he intentionally deleted any
3 Discord messages?
4    MR. CRENNY:  I'm aware that
5 these issues were covered at the deposition.
6    You know, it's a long-running
7 case.  We're going to talk about the same
8 issues in a few different contexts at
9 different times.
10    If you don't want to answer
11 these questions productively, we'll move on
12 to the next issue because I know we have a
13 lot of stuff to cover today, and --
14    MR. GILES:  I'm answering these
15 things productively.
16    MR. CRENNY:  Okay.
17    MR. GILES:  What was David's --
18 Kevin, calm down, I'm talking.
19    What was David's response to
20 Josh's question about intentionally deleting
21 messages?
22    MR. CRENNY:  We're going to

---

33

1  move on from the spoliation issue.
2        MR. GILES:  So -- hold on, hold
3  on, so now you're refusing --
4        (Talking over each other.)
5        MR. CRENNY:  No, no, no.
6  You --
7        MR. GILES:  So now you're
8  refusing to meet and confer --
9        MR. CRENNY:  No, no, no.
10        MR. GILES:  You're refusing to
11 meet and confer.
12        MR. CRENNY:  You -- you have
13 yelled at me multiple times for interrupting
14 you, and you're now interrupting me, I will
15 point out.
16        MR. GILES:  You're refusing to
17 meet and confer, Kevin.
18        MR. CRENNY:  No, I'm declining
19 to continue to engage in this unproductive
20 meet and confer on this issue that you are
21 not participating in in good faith and --
22        MR. GILES:  I'm participating

34

1  in good faith.  You're the one that's not.
2  You're talking about issues that don't need
3  to be meet and conferred with.
4        MS. CLATTENBURG:  Okay.  Alex,
5  we have your -- we have your position on
6  that.
7        MR. CRENNY:  Yeah.
8        MS. CLATTENBURG:  Okay.  This
9  is Rachel, and I'm moving on to the next
10 issue.
11        MR. GILES:  Which is what?
12        MS. CLATTENBURG:  We're moving
13 on to document production issues, and I'm
14 going to talk for a little bit now.  Please
15 don't interrupt me.  Thank you.
16        The first issue, which is a big
17 issue, was that Friday, this past Friday,
18 September 19th, 2025, was the deadline for
19 substantial completion of document discovery
20 in both cases.  That's per the scheduling
21 order that we jointly proposed and was
22 entered on April 17th, 2025, at ECF-129.

35

1        You didn't produce anything on
2  behalf of any of your clients on Friday,
3  September 19th, at the deadline.  You still
4  owe us most of the documents in both Yao v.
5  Chen and Chen v. Chen, and you don't seem to
6  be disputing that you've not produced
7  substantially all the documents for either
8  case responsive to the multiple requests for
9  production of documents in both cases and the
10 subpoena on David that was served June 6th,
11 2024, for which he withdrew all objections
12 and agreed to produce all responsive
13 documents.
14        I'm going to start with Yao v.
15 Chen.
16        This is -- I mean, this is your
17 client's case.  She's the plaintiff, and she
18 didn't -- she's so far behind in document
19 production, we haven't gotten a new
20 production -- a production of new documents,
21 as -- which I'm distinguishing from her
22 productions of corrected versions of

36

1  documents, that has taken a very long time,
2  but she hasn't produced any new documents
3  since at least April of this year.  And she's
4  had years to get these documents ready, and
5  as Kevin said, you know, Mr. Plotnick,
6  earlier this year, represented to the Court
7  in a hearing on February 13th and then in
8  ECF-117 and then to us that he had collected,
9  not just preserved, but also collected
10 David's entire Discord history and Telegram,
11 and his e-mails and everything else.
12        So we don't understand the
13 delay in that respect.
14        We already moved to compel, per
15 David's production of responsive, authentic,
16 complete Discord and Telegram communications
17 responsive to the subpoena on David and all
18 the document requests on her in Yao v. Chen.
19        And that was by a motion to
20 compel served on April 4th, 2025.
21        We had a series of meet and
22 confers, during which David's counsel and Li

Transcript of Meet and Confer
Conducted on September 22, 2025

---

**37**

1  Fen Yao's counsel agreed -- and this is in
2  ECF-139, the joint status -- sorry, excuse
3  me -- the joint status report, they agreed to
4  resolve that motion to compel dated
5  April 4th, 2025, by producing true, correct,
6  and complete versions of all responsive
7  Discord and Telegram communications, as
8  requested in the subpoena on David and the
9  requests for production on Li Fen Yao and
10 served in Yao v. Chen, and to do so by
11 September 19th, 2025, the deadline for
12 document discovery in this case.  We never
13 received those productions.
14        So not only is this a violation
15 of a court order, but you-all have also
16 reneged on an agreement that was supposed to
17 resolve our April 4th, 2025, motion to compel
18 that is now not resolved because we haven't
19 gotten those documents.
20        Among the many documents you've
21 not produced in both cases are the following:
22 The documents that David Chen referred to in

**38**

1  his deposition of July 30, 2025, which dealt
2  with his spoliation of evidence; and during
3  the August 20th, 2025, meet and confer, you
4  claimed -- and this is at Page 41 of that
5  transcript -- that you were trying to get it
6  to us before the document discovery deadline,
7  but at the very least, you would get it to us
8  by September 19th.
9        And in that respect, you quote,
10 said, "We're in compliance with the
11 scheduling order."
12        But you didn't produce those.
13 And we just learned on Friday, not only when
14 you said you were Bates-stamping those and
15 getting them ready for production, you hadn't
16 actually even sent them to your vendor.
17        But, in addition, plaintiff Yao
18 did not object to producing relevant
19 communications concerning, among other
20 issues, OtterSec -- David's role at OtterSec,
21 any of the Yao defendants, John Crypto
22 (phonetics), David's removal of Robert's and

**39**

1  OtterSec's access to the personal code and
2  other property that he admits taking,
3  nonprivileged communications concerning Yao
4  v. Chen, communications concerning any claims
5  for damages, communications that reflect,
6  refer to, substantiate, or support each and
7  every allegation in her complaint.
8        And these were the first set of
9  RFPs on her, 2 through 7, 11 and 13.
10        David Chen, as I mentioned,
11 waived and then later withdrew all objections
12 to the subpoena served on him in Yao v. Chen,
13 and that withdrawal of objections is in the
14 transcript for a meet and confer dated
15 January 10th, 2025, and is at pages 62 to 65;
16 and we filed that transcript on the docket.
17 It's at ECF Number 106-3, and that subpoena
18 requests among other things, documents and
19 communications concerning OtterSec,
20 OtterSec's assets, David's role at OtterSec,
21 Jump, David's use of and his revenue and
22 income from the personal code and other

**40**

1  properties referenced in the complaint, the
2  lawsuit, the execution of Sam Chen's estate,
3  and the deletion or loss of any data from his
4  phone or other device.
5        In addition, plaintiff Yao owes
6  us the documents responsive to the second set
7  of requests for production served on her on
8  October 4th, 2024.
9        And to remind you, plaintiff
10 Yao initially objected to those on the basis
11 of the number of requests, and then in
12 January we reached a resolution with
13 Mr. Plotnick, as counsel for Li Fen Yao, and
14 she agreed to respond to all of those except
15 for two from RC Security.
16        We have never gotten those
17 responses, and we certainly haven't gotten
18 the documents, which were documents
19 sufficient to show any loss suffered by the
20 plaintiff Sam Chen or his estate that you
21 allege was caused by any of the defendants in
22 Yao v. Chen, communications and documents

Transcript of Meet and Confer
Conducted on September 22, 2025

41

1 related to the alleged bricking or
2 malfunction of any communication device in
3 David Chen's possession, custody, or control,
4 documents sufficient to show the
5 circumstances when David Chen's allegedly --
6 his phone allegedly bricked, documents and
7 communications showing any and all efforts to
8 recover data from his phone, documents and
9 communications concerning the deletion or
10 removal of data from his phone, documents and
11 communications from the computer server in
12 David Chen's declaration at ECF-28-5.
13       He has not produced -- David
14 Chen has not produced any documents in Chen
15 v. Chen after we served him with document
16 requests.
17       He has not, as I mentioned,
18 even served his responses to the second set
19 of discovery served on him or asked for an
20 extension, and those were due September 15th,
21 a week ago.  He has not produced any
22 documents or communications concerning, for

42

1 instance -- and these are requests we have
2 made in Chen v. Chen.  They're concerning the
3 codes he claims he -- I mean, we claim he
4 stole, the Solend liquidator code and the
5 MSOL market maker code, documents showing any
6 income he obtained from running the codes,
7 documents showing development of the codes,
8 documents showing accounts and transfers of
9 funds, messages from the rubber duck
10 debugging and New Hell New Year channels in
11 the new Clickbait Discord server, all of
12 David's correspondence with Discord, David's
13 GitHub history, documents and communications
14 relating to his editing and changing and
15 revising his GitHub history, documents and
16 communications concerning Robert Chen, and
17 those are just some of them.
18       And Yao v. Chen, the agreed
19 start date between the parties in Yao v. Chen
20 is February 1, 2022, and then onward through
21 part of 2024, at least.
22       And, you know, you-all have

43

1 represented that you have David Chen's entire
2 Discord history and the plaintiffs' documents
3 and 8 terabytes of data.
4       So the fact that there hasn't
5 been any productions in this case is, you
6 know, astounding, since -- I mean, we haven't
7 gotten anything new since, as I said, at
8 least April of this year and just her -- the
9 lack of anything in that case kind of
10 suggests that, you know, she hasn't -- isn't
11 even prosecuting that case anymore, it's been
12 so little on that side.
13       And then for Chen v. Chen, the
14 only -- the only documents you had
15 represented to us that you didn't have were
16 2021, which again, we had a lot of issues
17 with, considering what representations have
18 been made about what was collected and
19 preserved.
20       But you should -- and you've
21 told us you have 2022, you have 2023, you
22 have 2024, you have everything after, so we

44

1 don't know what's happening in that case or
2 why we don't have those.
3       And these are court orders.
4 They're discovery deadlines that -- there are
5 -- there are rules that apply here, and these
6 are also -- some of these are to, as I said,
7 resolve motions to compel that we met and
8 conferred about many times earlier this year.
9       And now it seems we actually
10 have to now go back and, re -- I guess ask
11 the Court if we can file this motion to
12 compel because we thought it had been
13 resolved, but actually hasn't.
14       So I don't know what your plan
15 is, but we haven't seen any -- any documents,
16 and the deadline was Friday.
17       MR. GILES:  Are you done?
18       MS. CLATTENBURG:  For the
19 moment, yes.
20       MR. GILES:  Okay.  So just to
21 make sure we're on the same page, the things
22 that you have been talking about for the past

Transcript of Meet and Confer
Conducted on September 22, 2025

45

1 five or so minutes are the first three bullet
2 points in your e-mail from this morning at
3 9:34?
4         MS. CLATTENBURG:  Can you
5 repeat that question?  I'm not sure I
6 understand your question.
7         MR. GILES:  So you sent -- I
8 asked for -- so we're on the same page, an
9 understanding of what issues we were dealing
10 with today, and you came back with [as read]:
11 In addition to the items listed in my e-mail
12 below of September 15th, we will want to
13 discuss the following.
14         And I'm asking whether what you
15 just talked about for the last five to ten
16 minutes is represented by the first three
17 bullet points.
18         MS. CLATTENBURG:  Yes.  The
19 first bullet point is the missing document
20 productions in Yao v. Chen and Chen v. Chen
21 and the missed deadline, David Chen's
22 responses to the second set of discovery, and

46

1 Li Fen Yao's responses to second set of
2 document productions --
3         MR. GILES:  Okay.
4         MS. CLATTENBURG:  -- in Yao v.
5 Chen.
6         MR. GILES:  So we're on the
7 same page then that that's -- that's what
8 we're talking about now, right?
9         MS. CLATTENBURG:  I think my
10 discussion of this was clear, but yes,
11 that -- if you want a topic headline, that is
12 the topic headline.
13         MR. GILES:  Okay.  I just want
14 to make sure that we're not seeping into
15 four, five, six, or seven on this morning's
16 e-mail; and I don't think we are, based on
17 what you said, but I want to make sure.
18 That's all I'm trying to do, Rachel.
19         So a lot of the things that you
20 just raised -- there was the June 6, 2024,
21 subpoena.  There was the October 4, 2024,
22 document request for Li Fen Yao and her

47

1 objections.  There were lots of references to
2 January meet and confers.  There was the ECF
3 Number 139, which is dated May 23rd, 2025.
4         So, in light of that, Stephen
5 is going to take the lead on this, responding
6 to your various points; and I might chime in
7 a little bit, but Stephen -- I did text with
8 Stephen while you were talking, and he says
9 that he has an 11 o'clock hard stop.  So if
10 you can please give him the courtesy of just
11 listening to what he has to say, because then
12 he's going to have to drop off.  Thank you.
13         MR. PLOTNICK:  Sure.  Thanks,
14 Alex.
15         Yeah, Rachel, you had mentioned
16 a lot, but just in terms of the Yao versus
17 Chen production, it sounds as though you're
18 making a lot of assumptions based on items
19 that you believe were not produced, but I
20 think the short answer to your question is
21 that the document production in Yao v. Chen
22 is substantially complete.

48

1         Is it entirely complete?  No, I
2 can't say that it's entirely complete; and,
3 in fact, I've been in the process of sort of
4 working with Alex Giles and his team
5 to essentially double back and ensure that
6 the additional items that may be owed to you
7 are covered and that we are sort of dotting
8 the Is and crossing the Ts when it comes to
9 that production.
10         But in terms of the scheduling
11 order that's in place, the order does provide
12 for substantial completion, not the entirety
13 of the completion of the documents, and we
14 are substantially complete with that
15 production.
16         You had mentioned that other
17 productions haven't been made since -- I
18 forget what other date it is; but again, that
19 seem -- you seem to be proceeding under the
20 assumption that that is because -- or that
21 that necessarily means that there are lots of
22 additional documents that are set to be

**49**

1  produced, but that's not, in fact, the case.
2          So we are substantially
3  complete with that production.  I'm not going
4  to sit here and tell you that we are entirely
5  complete with that production, but -- but
6  we're in the process of, as I said, going
7  back through, making sure what else there is
8  that may need to be produced that we still
9  have to produce, and that's an ongoing
10 process right now; but we are substantially
11 complete with the Yao v. Chen production.
12         MS. CLATTENBURG:  Steve, that
13 just -- that doesn't -- this is Rachel.  This
14 doesn't sound right to me, because on
15 April 25th, I e-mailed you-all and I said,
16 "You haven't produced anything in response to
17 the subpoena on David."
18         MR. PLOTNICK:  And I believe --
19         MS. CLATTENBURG:  And we
20 haven't gotten any --
21         MR. PLOTNICK:  No --
22         MS. CLATTENBURG:  Yeah.

**50**

1          MR. PLOTNICK:  -- but --
2          MS. CLATTENBURG:  And --
3          MR. PLOTNICK:  -- I believe I
4  responded to you, and that's incorrect.
5          Rachel, from the beginning of
6  the case, we have made clear that, even
7  though the plaintiff in the case is Li Fen
8  Yao, that documents were coming from David.
9          So you have said that more than
10 once before in the past, that you haven't
11 received documents from David.  You've been
12 receiving documents from David since the very
13 beginning of the case, from -- since the very
14 first production in the case, and I think
15 that we've made that clear; so that's
16 incorrect.
17         MS. CLATTENBURG:  So where is
18 his financial data?
19         MR. PLOTNICK:  What --
20         MS. CLATTENBURG:  Where are the
21 documents we agreed that you would produce in
22 January and that were the subject of the

**51**

1  April 4th motion to compel and that you
2  agreed you would be producing by September
3  19th?
4          MR. PLOTNICK:  Which --
5          (Talking over each other.)
6          MS. CLATTENBURG:  Was there --
7  was there nothing you were going to produce
8  by September 19th?
9          MR. PLOTNICK:  No.  Which
10 financial data are you referring to
11 specifically?  That's a very broad term.
12         MS. CLATTENBURG:  It was
13 everything about income he has made from his
14 codes, his tax returns, the revenues he's
15 obtained from the codes --
16         MR. PLOTNICK:  Well --
17         MS. CLATTENBURG:  -- the
18 transfers --
19         MR. PLOTNICK:  -- well --
20         MS. CLATTENBURG:  -- between
21 his accounts.
22         MR. PLOTNICK:  -- well, number

**52**

1  one, as I said to you before, if there are
2  specific items that you believe that you're
3  missing, we're aware of --
4          MS. CLATTENBURG:  No, I don't
5  think that's honest, Steve.
6          MR. PLOTNICK:  But --
7          MS. CLATTENBURG:  You are --
8  it's your job to produce what's responsive.
9          MR. PLOTNICK:  Well, I -- I
10 don't know what -- I don't know what -- I
11 don't know how I'm supposed to respond to the
12 accusation that I'm not being honest.  I
13 think that's incorrect.  I know that that's
14 incorrect, actually, as a matter of fact.
15         I just said to you a moment ago
16 that we're in the process of making sure that
17 we have provided everything to you.  I heard
18 a couple of odds and ends that you've
19 mentioned, and that is exactly what we're
20 trying to do, is -- is ensure that the
21 remainder of whatever additional items we may
22 owe you are being provided.  That's the -- I

Case 8:23-cv-00889-TDC    Document 172    Filed 09/24/25    Page 16 of 73
Transcript of Meet and Confer
Conducted on September 22, 2025

14 (53 to 56)

53

1 think that's exactly what I said, so I didn't
2 say that we're done, we're done; I said we're
3 substantially done, which is what the
4 deadline was, and I believe that's the case.
5          MS. CLATTENBURG:  Can you
6 please provide us with the amended responses
7 to discovery, which we discussed about in
8 January, explaining what it is you're
9 producing and not producing, because we don't
10 have that in your responses, which is part of
11 what's making this difficult.
12          MR. PLOTNICK:  Yeah,
13 understood.  I'll talk with Alex about that.
14          I think I noticed -- I did
15 recall -- we never established a deadline for
16 doing that, but I remember discussing that,
17 but it's something that I'll talk about with
18 Alex after this call.
19          MS. CLATTENBURG:  Okay.  Well,
20 can we get that?  I mean, I -- I don't --
21          MR. PLOTNICK:  As I said -- as
22 I said, I'll talk about Alex -- with -- about

54

1 that after this call.
2          MS. CLATTENBURG:  What does
3 that mean?
4          MR. PLOTNICK:  That means that
5 I will talk about it with Alex after this
6 call.
7          MS. CLATTENBURG:  So you may
8 not do it or you -- I mean --
9          MR. PLOTNICK:  I didn't -- no,
10 I didn't --
11          (Talking over each other.)
12          MS. CLATTENBURG:  I don't know
13 what that means.
14          Steve --
15          MR. PLOTNICK:  I said that I'm
16 not --
17          MS. CLATTENBURG:  -- it should
18 be simple.  Are you guys going to --
19          THE COURT REPORTER:  Guys,
20 guys, if you want a record, you're going to
21 have to talk one at a time.  Okay?  I'm
22 sorry, but I can't take two people at once.

55

1          MR. PLOTNICK:  Okay.  Then I --
2 I -- I'll say what I was going to say.
3          It doesn't mean that I'm not
4 going to provide it to you, it means I'm
5 going to speak to Alex about it after this
6 call.
7          MS. CLATTENBURG:  Okay.  What
8 that means in --
9          MR. PLOTNICK:  We never
10 established a deadline for doing that, and
11 it's something that I will speak with Alex
12 about after this call; but I'm -- but I'm not
13 prepared to give you an answer, like I'm
14 going to give it to you on -- you know, a
15 week from today or whatever the date is.
16 I'll talk about it with Alex after this call.
17          MS. CLATTENBURG:  I'd like
18 confirmation you're going to do it, though.
19          MR. PLOTNICK:  Oh, okay.  I'll
20 speak with Alex about it after this call.
21          MS. CLATTENBURG:  Wow, okay.
22          So at -- there are also the --

56

1 Steve, the responses to the second round of
2 the document requests that we've never gotten
3 amended responses to, and that's different
4 than what we were talking about just now, not
5 just what you claim you've produced in the
6 parameters of what you've produced, but also
7 we've never gotten any substantive responses
8 to that second set of requests for document
9 productions.
10          MR. PLOTNICK:  Which -- which
11 ones are those?
12          MS. CLATTENBURG:  They were
13 served October 4th.  They were the subject of
14 a motion to compel that I think was served
15 November 11th, and then we resolved them by
16 saying we would -- we agreed you didn't have
17 to respond to RC Security's 3rd and 7th
18 request for production, but then the rest of
19 them you said you would respond to.
20          MR. PLOTNICK:  Okay.  So this
21 is in Yao versus Chen, you're referring to
22 discovery?

57

1          MS. CLATTENBURG:  Yeah.  This
2  is Yao v. Chen.
3          MR. PLOTNICK:  Okay.  Yeah,
4  I'll speak to Alex about that after this
5  call, as well.
6          MS. CLATTENBURG:  Okay.  Is
7  that your -- so your position on Yao v. Chen
8  is you substantially produced everything, and
9  you're going to -- whatever that means --
10 talk to Alex about amending the responses
11 which are due.  Okay.
12         MR. GILES:  Rachel --
13         MS. CLATTENBURG:  I --
14         MR. GILES:  -- what -- what
15 answer do you want from Stephen in this
16 regard?  Do you want him --
17         MS. CLATTENBURG:  I want
18 him saying that, yeah --
19         (Talking over each other.)
20         MR. GILES:  Time out, time out,
21 time out, Rachel.  Calm down.  Do you want
22 him to say --

58

1          MS. CLATTENBURG:  Don't speak
2  to me that way, Alex.
3          MR. GILES:  -- that he's going
4  to call me at 2 o'clock today, and we're
5  going to talk about it for 45 minutes --
6          MS. CLATTENBURG:  No.
7          MR. GILES:  -- and that we're
8  going to have a response to you by tomorrow
9  as to when we can produce?  Because you're
10 not going to get that --
11         MS. CLATTENBURG:  Alex, I
12 think --
13         MR. GILES:  -- because we don't
14 even know that.
15         (Talking over each other.)
16         MS. CLATTENBURG:  Alex, I --
17         MR. GILES:  Don't -- don't sit
18 there and go, "wow."
19         I mean, that's -- that is
20 disingenuous, and that is -- that's poor
21 attorney behavior and it's not acceptable, so
22 stop it.

59

1          MS. CLATTENBURG:  Alex, I
2  really don't think you should be lecturing me
3  on attorney behavior and the types of
4  names --
5          MR. GILES:  No, I -- I think I
6  said --
7          MS. CLATTENBURG:  -- and
8  name-calling you have made --
9          (Talking over each other.)
10         MS. CLATTENBURG:  -- the types
11 of name-calling and the e-mails you send and
12 the things you say about our firm and about
13 me personally are unbelievable and incredibly
14 unprofessional.
15         And we haven't responded to it
16 directly because it doesn't seem productive;
17 but I will say, I do not think you should
18 lecture me on being professional, Alex.  It's
19 really, really unbelievable what you put in
20 these e-mails and what you said at the
21 beginning of this call about me personally.
22 It's amazing.

60

1          MR. GILES:  Yes, and so I'm
2  lecturing --
3          (Talking over each other.)
4          MS. CLATTENBURG:  And I can't
5  get over it.
6          MR. GILES:  Yes, I'm lecturing
7  you because you need it, and Kevin needs it.
8          MS. CLATTENBURG:  Okay.  Okay.
9  Well, we don't want to be lectured by you; so
10 let's drop that from the meet and confer
11 and just try to solve the issues that are before
12 us, which is what I think the purpose was.
13         And all I was asking Steve, was
14 I wanted a commitment.  I didn't ask for a
15 date.  I didn't ask for when you were going
16 to talk to each other.  I just wanted a
17 commitment that we were actually going to get
18 substantive amended responses to all the
19 document discovery in Yao v. Chen.  That's
20 all I was asking.
21         MR. PLOTNICK:  Sure, sure.
22         MS. CLATTENBURG:  But to me

Transcript of Meet and Confer
Conducted on September 22, 2025

---

61

1  that's --
2          MR. PLOTNICK:  -- Rachel --
3          (Talking over each other.)
4          MR. PLOTNICK:  -- if -- could I
5  just get a word -- could I just get a word in
6  edgewise?
7          MR. GILES:  Sure.
8          MR. PLOTNICK:  No, I just want
9  to say:  Rachel, look I appreciate it, I
10 mean; but isn't the purpose of the meet
11 and confer?  I mean, I don't think you can
12 necessarily expect an answer to every
13 question that you're raising.  Sometimes it
14 takes more than one meet and confer to have
15 this discussion.
16         I appreciate you raising it.
17 You're raising it on the call.  I'll talk to
18 Alex about it.
19         I mean, there have been many
20 times in the past where we've had a meet and
21 confer and either you or I have had to say,
22 "Okay, let me go back and check, and we'll

---

62

1  come back to you."
2          That's all I'm saying right
3  now.  I'm not saying -- I'm not saying yes,
4  I'm not saying -- I'm certainly not saying
5  no.  I'm saying, I appreciate your raising
6  it, thank you, and we'll discuss it; but that
7  doesn't necessarily mean that just because
8  we've convened this meet and confer that all
9  issues are going to be resolved through one
10 meet and confer, that's all.
11         MS. CLATTENBURG:  Yeah, but
12 Steve, I think the issue is we did already
13 agree to this and you did already agree, so
14 we're not asking for something new.  This is
15 something you agreed to in January --
16         MR. PLOTNICK:  I understand,
17 and --
18         MS. CLATTENBURG:  -- and I'm
19 asking when are --
20         MR. PLOTNICK:  And you --
21         MS. CLATTENBURG:  So what --
22 what do you mean you need to ask him about

---

63

1  it?  There's an agreement on it.
2          MR. PLOTNICK:  What I -- what I
3  mean to say is that you're raising it on the
4  call today for the first time, so I need to
5  speak with Alex about that.  We're co-counsel
6  on the case, and I want to speak to him about
7  that offline without you on it.
8          MS. CLATTENBURG:  I'm going to
9  move on to Chen v. Chen because it seems you
10 guys are splitting this up somehow that way.
11         But Chen v. Chen, again, we
12 don't have any document production on, as I
13 said.
14         The February -- the February 1,
15 2021, issue, which I will recap briefly,
16 there's a disagreement.  We think the
17 discovery period for Chen v. Chen starts
18 February 1, 2021.  We discussed this at
19 length on the August 13th and August 20th
20 meet and confers.
21         We offered to let you --
22 because it seemed like you were trying to say

---

64

1  there wasn't enough from early in 2021 to
2  make it worth it; so we said, okay, tell us
3  how many hits there are for the code terms
4  that we'd agreed to from February 1, 2021,
5  onward, so we can discuss a later start date.
6          But you were unable to do so
7  because we learned after the August 20th meet
8  and confer that you, Alex, had not collected
9  2021 documents from David or his Discord
10 about which you'd been making representation,
11 and that you were unable to search those
12 documents.
13         So our position currently is
14 not that we are delayed forever while you get
15 those documents, it's that since you cannot
16 explain why the start date should be after
17 February 1, 2021 -- and we have raised many
18 arguments as to why such documents are
19 relevant, but you also have not, we think,
20 convincingly responded to that the period is
21 February 1, 2021, because you don't have
22 arguments on burden or proportionality

---

Transcript of Meet and Confer
Conducted on September 22, 2025

65

1 because you don't even have the documents
2 yet. You've also now missed the production
3 deadline.
4        So as we've told you, we do
5 think that claiming another three and a half
6 months to merely collect documents that we
7 believe you've represented to the Court and
8 us you had already collected is not
9 acceptable, and we don't think that is a
10 reason just to -- we're not going to wait for
11 that amount of time to -- for you to just
12 collect documents that should have already
13 been collected.
14        And it's our understanding that
15 you already have most of the years of the
16 documents.
17        You also, I want to remind you,
18 failed to oppose the motion to compel served
19 on April 4th, 2025; and in that motion to
20 compel we moved for an order that the
21 discovery period started on February 1, 2021.
22        So we also have an argument

66

1 that you waived any arguments that are in
2 opposition to that discovery period, and
3 we've repeatedly explained many times that we
4 don't think you've raised a meritful argument
5 as to why 2021 documents are not relevant.
6        And to move on -- so that's --
7 I just wanted to bring us up to speed on
8 where we are on that. It's not our position
9 that we're waiting until December for you to
10 tell us what you have from 2021.
11        It's our position that your
12 time to do that was earlier; and you made a
13 lot of representations about it, apparently
14 without actually having the documents.
15        And so, at this point, we don't
16 know how you can, you know, meet your burden
17 of showing why February 2021 is not a
18 appropriate start date, after we've already
19 explained why it's relevant and why we think
20 it is proportional to the needs of this case.
21        MR. GILES: But, Rachel, let
22 us -- let us respond before you move on to

67

1 another entirely different area.
2        Several things: As Stephen and
3 I have both told you, there was -- and I
4 can -- I can walk through -- though I wasn't
5 part of the case, I can walk through, sort
6 of, the development of the case as to the
7 rationale why we were at a particular point
8 and why we did certain things.
9        There was a Yao v. Chen
10 relevant period which started February 1,
11 2022, and ran through -- at some date in 2023
12 and it kept getting extended, as I understand
13 it, from Stephen, until finally there was a
14 date in 2024 where it sort of ended.
15        And as part of the initial
16 earlier actions and assistance that was
17 provided by TransPerfect, they collected
18 everything, and the focus was on that
19 relevant time period. There were things that
20 were collected beyond that time period, so
21 there are things that are dated 2021;
22 however, we got to the point of the

68

1 preservation order, which I'm going to blank
2 on the date, but I want to say that Judge
3 Simms entered that on May 23rd, 2025, and as
4 part of that, it was preservation of
5 documents and information for Chen v. Chen
6 and Yao v. Chen dating from February 1, 2021,
7 through April 17th of 2025.
8        And you and Kevin and Josh and
9 your colleagues seem to conflate preservation
10 with collection. They are two separate
11 actions, two separate verbs, or -- and we
12 were complying with the preservation order
13 and preserving everything post the
14 preservation order.
15        We were trying to -- after my
16 involvement in this case, starting June 20th,
17 2025, we were trying to reach agreement with
18 you so that a meet and confer would not be
19 necessary to set a more reasonable scope of
20 discovery for Chen v. Chen, based on our
21 representations that he only created the code
22 at issue on October 31st, 2021, and Kevin

Transcript of Meet and Confer
Conducted on September 22, 2025

69

1 came forward with -- or Kevin or Justin, I
2 apologize, one of the two, came forward with
3 these e-mails dating back to October 5th.
4          That was part of one of our
5 previous meet and confers; so we said, okay,
6 we'll -- we'll make it October 1. And we had
7 searched, at that point, all the data that we
8 had in Relativity, in TransPerfect's
9 Relativity database.
10          And your response to us at the
11 time -- your response, Rachel, was that
12 "That's not good enough. We want to know
13 everything, and we're not going to reach an
14 agreement on dates earlier than October 1,
15 2021, until we have confirmation that we have
16 searched everything."
17          So you have asked us to make
18 sure that we have everything. We're in the
19 process of making sure that we have
20 everything; and once we have everything, we
21 are going to do exactly what it is that
22 you're requesting. We will then rerun the

70

1 document hit list, and we'll provide you with
2 the analysis of the pre-October 1, 2021,
3 items that match up with the search terms,
4 and the post-October 1, 2021, document hit
5 list on those terms, and we will make the
6 case at that time.
7          I suspect, though, I'll wait to
8 see the data. I'm not going to make
9 arguments now on data that I don't know what
10 the answer is, but I suspect that the
11 argument that we're going to make or may make
12 is that there really isn't any relevance
13 prior to October 1, 2021, and proportionality
14 doesn't justify producing things dating back
15 to February 1, 2021, which is a date that you
16 guys plucked out of the air as being one year
17 before February 1, 2022, which was the start
18 of the relevant period in the Yao v. Chen
19 case.
20          My understanding -- and again,
21 I wasn't part of the case at the time -- my
22 understanding is that you told Judge Simms --

71

1 and by "you," I mean, your side -- told Judge
2 Simms that it should be at least a year
3 before, just to be safe, to cover everything.
4          That is not relevance, that is
5 not the definition of proportionality, and
6 for you to argue that you think that that's
7 the date and that you guys aren't budging off
8 that, well, that -- that's maybe just as bad
9 as our current argument about October 1,
10 which we will figure out who's more right
11 when we get to the point of having the full
12 set of data that you want from David that's
13 being collected by TransPerfect that we won't
14 have downloaded, processed, and uploaded into
15 Relativity and then analyzed until sometime
16 in the middle of December.
17          And I know that you can stand
18 on your soapbox and say that "That's
19 unacceptable, and we're not going to wait."
20 Well, that's the predicament we're in.
21 That's where we are.
22          I tried to reach an agreement

72

1 with you. It wasn't an agreement that you
2 wanted to reach. You feel that there's
3 something else out there. And if you're
4 going to demand that there's something else
5 out there and that you need to review
6 everything, well, then, we're reviewing
7 everything. That's what we're going through.
8 That's why it's taking as long as it is.
9 This is a creation of your own doing.
10          MS. CLATTENBURG: Well, I
11 disagree on the last point. You're the ones
12 who are -- have the burden of sharing that.
13 You know, we've raised why it's relevant and
14 we've raised why it's proportional and not
15 burdensome; and we've discussed this a lot in
16 the prior meet and confers, August 13th,
17 August 20th, and in our e-mails and in our
18 filings before the Court, so I refer you to
19 those.
20          And it's now on you to explain
21 why that is either not relevant or overly
22 burdensome and not proportional to the needs

Transcript of Meet and Confer
Conducted on September 22, 2025

73

1  of the case, which you seem unable to do
2  because you don't have the documents.
3          So I'm not going to go repeat
4  all those arguments. They're all out there
5  in the transcripts already and in our
6  writings.
7          MR. GILES:  They are -- they
8  are out there.
9          MS. CLATTENBURG:  I am going to
10 say that putting aside -- putting aside 2021,
11 where are the 2022, 2023, 2024, 2025 document
12 productions that David owes us?
13         MR. GILES:  What document
14 productions are you referring to?
15         MS. CLATTENBURG:  All of the
16 document productions that he owes us in Chen
17 v. Chen.  He's not made a single production
18 of documents in response to the discovery
19 served in Chen v. Chen.
20         MR. GILES:  Okay.  Are we --
21         MS. CLATTENBURG:  Where are
22 they?  Why do you not have them?

74

1          MR. GILES:  We're waiting for
2  all the documents.
3          MS. CLATTENBURG:  Why -- why do
4  you --
5      (Talking over each other.)
6          MS. CLATTENBURG:  Okay, but,
7  Alex, that's not acceptable, right?
8          MR. GILES:  Sure it is --
9          MS. CLATTENBURG:  Because
10 you've --
11         MR. GILES:  -- it's --
12         MS. CLATTENBURG:  --
13 already collected them --
14         MR. GILES:  -- acceptable --
15     (Talking over each other.)
16         MR. GILES:  No.
17         MS. CLATTENBURG:  That's what
18 you said, but that's why we're going to go to
19 the Court.  We will go to the Court on this
20 because that is not acceptable to say you
21 decided most of the way through these cases
22 to suddenly re-export all of his Discord data

75

1  and reprocess it for a process that you have
2  found someone who will take three and a half
3  months to do; and you don't ask the Court to
4  extend the deadline, you don't ask us to
5  extend the deadline until ten minutes,
6  basically, before the deadline and you don't
7  give any reason why you're doing it this way
8  and why you can't produce the stuff that's --
9  Mr. Plotnick's already collected for 2022,
10 2023, 2024, that is responsive in Chen v.
11 Chen.
12         MR. GILES:  So Stephen can
13 discuss the 2022, 2023, 2024 things that --
14 that may have been previously collected and
15 probably, presumably, have been produced
16 under the Yao v. Chen case, which I know that
17 there's a lot of back-and-forth about Yao v.
18 Chen document productions also complying or
19 not complying with Chen v. Chen documents.
20 So he can speak to that issue.
21         In terms of your commentary
22 prior to that, we're -- we're at the point

76

1  that we are, we're at the crossroads that we
2  are, because of your request that everything
3  needs to be dealt with.  So that -- we're
4  dealing with that, and --
5          MS. CLATTENBURG:  Sorry,
6  just --
7          MR. GILES:  I'm not --
8          MS. CLATTENBURG:  -- can you
9  just --
10         MR. GILES:  -- I'm not -- I'm
11 not --
12         MS. CLATTENBURG:  -- what does
13 that mean, what does that mean --
14     (Talking over each other.)
15         MR. GILES:  Rachel, Rachel --
16         MS. CLATTENBURG:  Please
17 clarify.
18         MR. GILES:  -- Rachel --
19         MS. CLATTENBURG:  Please
20 clarify.
21         MR. GILES:  -- Rachel, Rachel,
22 do not interrupt me.  You asked me not to

Transcript of Meet and Confer
Conducted on September 22, 2025

77

1  interrupt you, I didn't.  Don't interrupt me.
2         We are in the process of
3  getting a full collection and full upload of
4  everything; and to your point about the
5  request for an extension, Judge Simms raised
6  it in her order of last Wednesday.  We are
7  planning to take her up on that; and I
8  reached out to you, even knowing that -- your
9  position, I still reached out to you, all of
10 you, and asked whether you'd be willing to do
11 a joint request.
12        You responded that you did not.
13 I heard you.  I read it.  We weren't talking
14 past each other.  We can deal with things
15 outside of meet and confers and e-mails.
16        So we will move forward with
17 our own motion to modify the scheduling order
18 so that the dates when it is estimated that
19 these documents will be ready will be
20 included within the substantial completion
21 deadline.
22        You're going to oppose it, I

78

1  know it.  Take it to the bank.  You guys are
2  going to oppose it.  But we're going to ask
3  for it; and, hopefully, Judge Simms sides
4  with us.
5         She may not.  She may split the
6  baby.  She may agree with you 100 percent;
7  and if that's the case, then we'll have to
8  figure something out in terms of figuring how
9  we get you all the Discord messages before we
10 have them all processed, but we'll cross that
11 bridge when we got there.
12        MS. CLATTENBURG:  Okay.  A
13 couple of things:  First of all, David is the
14 one who moved for consolidation of these
15 cases based, in part, on efficiency; and what
16 I'm hearing is you're not actually sharing
17 documents across the cases in terms of what
18 was collected because, I mean, I don't -- I
19 still haven't gotten a clear answer why we've
20 gotten no productions in Chen v. Chen after
21 we served request for production in that
22 case.

79

1         For instance, what about his
2  GitHub history?  That doesn't seem
3  particularly hard to get from him.  What
4  about his financial documents that we asked
5  for?  What about the communications that are
6  not on Discord?  What about communications on
7  Discord that are from after 2021, everything
8  after 2021?
9         I still -- I still don't have
10 any sense of what is going on and why we
11 don't have productions from you, timely
12 productions from David from everything that
13 isn't what you say you didn't have from 2021.
14        So I still -- that's --
15 that's -- I don't -- still haven't heard an
16 answer to that.
17        I mean, I would also say that
18 -- I mean, this will be between, I guess, you
19 and the Court, but like, moving for extension
20 of a deadline after the deadline has passed
21 is not appropriate.  The time to deal with
22 this was back when you first realized the

80

1  issue.
2         But, at any rate, I still don't
3  understand why we don't have the documents we
4  need and have asked for from later periods
5  even if the 2021 issue is unresolved as to
6  when that start date is.  There's all of
7  2022, 2023, 2024, up through April 17th of
8  this year, that we don't have documents for
9  from Chen v. Chen and responsive to the
10 document.
11        We served now two sets of
12 document requests, and we haven't gotten
13 those.
14        But to keep things moving, I
15 sent you an e-mail on, let's see,
16 August 26th, 2025.
17        MR. GILES:  Hold on, Rachel,
18 back up, back up.
19        You can't just move on from --
20 you can't make statements for about five
21 minutes and then just say, okay, we're just
22 going to move on.  We get to respond.  That's

81

1  part of the meet and confer. You've got to
2  listen to what our response is.
3           To your last point about you --
4  that proper timing for your request, it --
5  for you to say that, one, it's a substantial
6  completion of document discovery, which was
7  September 19th -- the fact discovery
8  deadline's November 14th; so for us to at
9  this point take up the judge's invitation,
10 which was only made on Wednesday, the 17th of
11 September, to request a modification based on
12 our current predicament, I don't think the
13 judge -- if the judge is in agreement with
14 us -- I don't think the judge is going to
15 say, "Well, you know what, you really should
16 have raised this on the 18th, before the
17 deadline, not on the 22nd, a day after the
18 deadline, a business day after the deadline."
19 So I wholeheartedly disagree with you.
20          If the judge feels that there's
21 merit to extending the deadlines, as we are
22 going to request on our own without you

82

1  consenting or agreeing with, then she will do
2  it, or Judge Swan will do it, and that will
3  be in an argument that you can oppose if you
4  want and that's fine; but for you to say here
5  that it's improper for us to ask for an
6  extension, I wholeheartedly disagree with you
7  in that regard.
8           As to the 22nd -- 2022, 2023,
9  and 2024 documents, unless Stephen wants to
10 specifically address them now -- and he has
11 gratefully extended his deadline on his call
12 that was supposed to start at 11, to 11:15,
13 so he's got four minutes, but, if not, this
14 will be one of the things that he and I talk
15 about whenever we talk about it, probably
16 today or tomorrow, because I'm leaving for
17 Oregon first thing -- at 4:30 in the morning,
18 on Wednesday.
19          With that, Stephen, if you want
20 to address anything specifically, fine; if
21 you don't, that's fine, as well.
22          MR. PLOTNICK: Yes. Thanks,

83

1  Alex.
2           Yeah, no, I don't think I have
3  anything specific to add right now. I think
4  you and I can speak to one another; either
5  later today or tomorrow is fine with me.
6           MR. GILES: Okay. All right.
7  Thank you, Rachel.
8           Go ahead. What's your next
9  topic?
10          MS. CLATTENBURG: I think
11 Justin is going to discuss the next one.
12          Go ahead, Justin.
13          MR. GILES: Okay. All right.
14          MR. DICHARIA: Hi everyone.
15 This is Justin, for Annette.
16          This is about the Signal
17 disappearing messages.
18          So David testified in his
19 deposition that he had Signal conversations
20 with Philip Papurt and that he did not
21 disable auto delete on those. He said that
22 at the transcript for the deposition at 77

84

1  through -- to 82, page numbers.
2           We think that's a violation of
3  the preservation order, and we asked for
4  confirmation that he had turned off auto
5  delete and the date on which he did so.
6           You guys responded via e-mail,
7  I think, on September 15th; and it appeared
8  that you guys did not fully understand how
9  disappearing messages worked on Signal
10 because it only takes one side to turn
11 disappearing messages on or off; and when
12 that happens, it, you know, deletes all the
13 messages, not just one side's messages.
14          This suggests that you guys
15 have not spoken to the client about Signal or
16 its preservation regarding
17 Signal, or if you did, that your client
18 misled you regarding how Signal works.
19          When we pointed this out to
20 you, you guys responded, quote, "We will
21 refrain from commenting further and
22 substantively."

Transcript of Meet and Confer
Conducted on September 22, 2025

---

**85**

1     We're still looking for answers
2 on the Signal issues because it concerns the
3 preservation order and the preservation of
4 evidence that is potentially responsive.
5     It's not reassuring, in terms
6 of David's preservation duties, so we're
7 looking for confirmation of whether you have
8 now, since our e-mail correspondence,
9 confirmed that David has disabled
10 disappearing messages in his Signal chat with
11 Philip Papurt and on which date.  We're
12 looking for confirmation whether he has auto
13 delete enabled on any other Signal chats with
14 potential witnesses, you know, or if he's
15 just turned off auto delete for all of the
16 Signal communications with any other
17 potential witnesses now, and we're looking
18 for the identity of any individuals in which
19 he did have auto delete on and when he turned
20 that off.
21     That's it.
22     MR. PLOTNICK:  Could I just --

---

**86**

1 could I just interject one second, Alex?
2     MR. GILES:  Sure.
3     MR. PLOTNICK:  Because there's
4 one thing that I'm not sure of here, and I do
5 have to, you know, get off shortly.
6     Yeah, Justin, thank you, but --
7 well, I'm a bit confused because there's an
8 assumption about the Signal messages being
9 lost, whatever it is, being a violation of
10 the preservation order.
11     Do you have or can you point to
12 testimony in the transcript that refers to
13 the date in which this happened, because I
14 don't recall it; and Alex had said that the
15 preservation order was entered, I believe it
16 was, going off the top of my head right
17 now -- I don't have it in front of me -- I
18 think it was late May.
19     MR. DICHARIA:  I don't have
20 that, Steve.
21     MR. PLOTNICK:  Okay.
22     MR. DICHARIA:  And if we don't

---

**87**

1 have that, then I think it would be helpful
2 to get, you know, further information.
3     MR. PLOTNICK:  I say that
4 because you seem to be making an assumption
5 that the preservation order was entered when
6 this took place, and I'm not aware of a
7 record that establishes that to be the case
8 and that's why I was just asking.
9     MR. DICHARIA:  Okay.  Thanks,
10 thanks for that.
11     MR. PLOTNICK:  Yep.  That's all
12 I had to add on to that.
13     MR. GILES:  And so I would -- I
14 would add on to what Stephen said.
15     Just by looking at the
16 transcript -- and Justin, I don't know the
17 last time you looked at the transcript
18 between pages 77 and 82, but I looked at it
19 this morning, and it -- first and foremost,
20 Stephen's absolutely right.  There's nothing
21 in the testimony that says these
22 conversations took place after the

---

**88**

1 preservation order was entered; but be that
2 as it may, there are six pages of question
3 and answer between Josh and David on
4 July 30th, 2025, and some of the things that
5 you just stated and that Rachel has stated in
6 her e-mails are dealt with specifically and
7 clearly in the deposition testimony.
8     Your one question about --
9 about David's use of the auto delete function
10 is disingenuous and inaccurate -- an
11 inaccurate reading of the deposition
12 transcript.
13     On Page 77, from lines 10
14 through 13, Josh asked [as read]:  And do you
15 use the auto delete ephemeral mode on Signal?
16     And David's response is [as
17 read]:  I have not turned on the ephemeral
18 mode myself.
19     So David doesn't use the auto
20 delete mode.
21     There's later testimony about
22 Philip Papurt using auto delete and David's

Transcript of Meet and Confer
Conducted on September 22, 2025

89

1 knowledge of Philip Papurt using the auto
2 delete.
3        And there's a question on
4 Page 80 from Josh that says [as read]: And
5 you did that because you didn't want those
6 communications with Papurt to be part of this
7 case, right?
8        And Steve objects to the form,
9 instructs David to go ahead and answer the
10 question.
11       And David's response on lines
12 17 and 18 on Page 80 is [as read]: I believe
13 it was to respect whatever reason Philip had
14 to be turning on auto delete.
15       So -- and there's more
16 testimony, and I'm not going to read all of
17 it; you guys can do that.
18       As I say, it's a straight
19 conversation starting on 77, the top of 77,
20 and running through the middle of 82.
21       And it clearly says the
22 parameters and the scope of who did what,

90

1 that Philip used auto delete, David did not,
2 David did not turn off Philip's auto delete
3 function because he figured there's some
4 reason why Philip wants it on, but I don't
5 know what that reason is, but that's not a
6 violation of -- even if it took place after
7 May 23rd, 2025, that's not a violation of the
8 preservation order because David's not taking
9 any affirmative actions to delete and, you
10 know, obscure evidence.
11       You know, if -- if Philip
12 Papurt was under a preservation order --
13 which he's not, but if he were, certainly it
14 would -- it would be a pretty good argument
15 as to the fact that he's doing that, but it's
16 not David's violation of the preservation
17 order.
18       And that's assuming that this
19 is a conversation that took place after
20 May 23rd, 2025, which I don't think it did;
21 but again, I -- I agree with Stephen's
22 comments specifically, that you're making a

91

1 lot of assumptions here, so...
2        So that's our response,
3 collectively, between Stephen and myself.
4        MR. DICHARIA:  Thanks, Alex.
5        MR. GILES:  You're welcome.
6        MR. DICHARIA:  I think our
7 position is that if he -- if the messages are
8 during the period in time that -- that
9 matters, which -- we would need more
10 information from that, because as you pointed
11 out, it seems like the deposition isn't clear
12 on that point, that if a person doesn't turn
13 off auto delete when it's on in the Signal
14 chat, that would violate the preservation
15 order; and that's because when auto delete is
16 on, it deletes everyone's messages,
17 including -- like, including David's.  So
18 that would be our position there -- unless,
19 of course, David is screenshotting the
20 messages, right, to keep -- to preserve them,
21 which we, you know, have no clue about.
22       So because David has the

92

1 ability to turn them off, if the messages do
2 fall within a period that the preservation
3 order covers and he's not turning them off,
4 we would think that is a violation of the
5 preservation order, and that's our position.
6        MR. GILES:  And I understand
7 that's your position.  I disagree with that
8 position, and we would oppose that position.
9        But, again, I think the
10 deposition testimony speaks for itself; so I
11 disagree with your comment about, you know,
12 that the deposition testimony is vague,
13 because it's not, it's very clear.  The only
14 thing it's not clear about is there isn't any
15 discussion or question by Josh as to when
16 those discussions were taking place, so
17 that's the only vagity [sic] -- vagary that
18 is involved here.
19       So, again, we -- we think it's
20 very clear that -- that this is not a
21 preservation order violation, that David
22 didn't do anything to destroy -- to

Transcript of Meet and Confer
Conducted on September 22, 2025

**93**

1 affirmatively try to destroy or obscure,
2 abscond, or delete information; and that is
3 our clear position and response.
4      MR. DICHARIA: Thanks, Alex. I
5 think the only information we need, I think,
6 are both -- both parties -- you know, your
7 position is clear, and we've stated our
8 position, as well -- is to determine, like,
9 the dates of the -- of the messages. Like,
10 we need that information in order to perfect
11 our position.
12      So if you guys could provide
13 that information, we would appreciate it.
14      MR. GILES: To the extent that
15 there is something that suggests when that
16 discussion took place, we will provide it;
17 and to the extent that you find something
18 that suggests when that discussion took
19 place, if, you know, you're -- I know you
20 guys are subpoenaing basically everyone,
21 so -- and there may be a deposition of Philip
22 Papurt at some point; might be a question

**94**

1 that both of us ask of Mr. Papurt.
2      MR. DICHARIA: Well, I think we
3 need to know also whether auto delete is off
4 currently. So that is information your
5 client would have, and your client would also
6 have information on when auto delete was
7 turned off, if ever.
8      MR. GILES: So I will refer you
9 back to the deposition, which is extremely
10 clear, and answers this question. Page 77,
11 lines 10 through 13, Josh's question [as
12 read]: And do you use the auto delete
13 ephemeral mode on Signal?
14      David's response [as read]: I
15 have not turned on the ephemeral mode myself.
16      That's the answer, very clear.
17      MR. CRENNY: Annette, this is
18 Kevin jumping in here.
19      Alex, that's -- that's not
20 responsive to Josh's question because -- can
21 I -- I'll explain. I see you're taken aback.
22      MR. GILES: Yes, I am.

**95**

1      MR. CRENNY: I see your
2 reaction to that. Let me explain.
3      MR. GILES: Go ahead.
4      MR. CRENNY: Are you familiar
5 with using Signal?
6      MR. GILES: Yes.
7      MR. CRENNY: Okay. So if -- if
8 one person -- so it's a two-person
9 conversation, right, between David and
10 Philip, right?
11      MR. GILES: Correct.
12      MR. CRENNY: So if -- I'm
13 looking -- I'm trying to look at the thing --
14 says [as read]: "Do you use the auto delete
15 mode?"
16      If it is turned on in the
17 conversation by Philip, right -- David says
18 [as read]: I have not turned it on myself.
19      But if Philip turned it on and
20 David did not turn it off, then David is --
21 you know, if he's having messages with
22 Philip, he's having messages that he is not

**96**

1 preserving. He is not -- he has an
2 affirmative duty to preserve under the
3 preservation order.
4      So I -- if it is -- regardless
5 of who turned it on, he is using it if it is
6 being -- you know, if Philip turned it on and
7 David's conversations are being deleted. So
8 I don't think David's answer here resolves
9 the question that we're trying to ask, which
10 is, today, in his chat with Philip Papurt, is
11 auto delete turned on.
12      The transcript does not answer
13 that, and that's why we've been trying to
14 follow up on it.
15      Do you understand the question?
16 I understand if you have a different position
17 on the preservation order -- so it's not
18 clear to me that you've understood the
19 question to this point.
20      MR. GILES: Kevin, I've
21 understood your question. I understand your
22 argument.

97

1    I disagree with it.  It's a bad
2 argument.  If you guys want to make that
3 argument, go ahead and make it.  That's fine.
4    The other thing to consider
5 here is we are in a relevancy scope of --
6 we're going to say -- we're going to say a
7 preservation scope of February 1, 2021,
8 through April 17th, 2025.
9    So what it is that he is doing
10 now has no relevance to discoverable
11 information, none whatsoever, by everybody's
12 account, by the Court's account, by your
13 account, by our account.
14    I don't know that he's having
15 ongoing discussions with Philip Papurt; but
16 if he is, it doesn't matter because it's not
17 discoverable.  It's after April 17th, 2025,
18 end of story, period, full stop.
19    So you can ask that question.
20 You can ask us, "Is it now turned off?"  It
21 doesn't matter, because that's not part of
22 the case.  We stop at April 17th, 2025.

98

1    And he says, July 30th, "I have
2 not turned on the ephemeral myself."
3    He acknowledges that in the
4 conversations he had with -- or at least some
5 of the conversations he had with Philip
6 Papurt, that he knew, and he says this.  You
7 can read it yourself.
8    He knew that Philip Papurt had
9 it on, and he just assumed -- and he says
10 here at Page 80, lines 17, 18 [as read]:  I
11 believe it was to respect whatever reason
12 Philip had to be turning on auto delete.
13    The fact that he didn't go back
14 and forth with Philip turning it off, Philip
15 turning it on, him turning it off, Philip
16 turning it off, that's not a violation.
17    We would argue that that is not
18 a violation of the preservation order which
19 postdates any discovery that runs through
20 April 17th.  Preservation order started
21 May 23rd, so this is a nonissue.  This is an
22 issue that should not be part of a meet and

99

1 confer, as I said previously, as I've said ad
2 nauseam; but you guys aren't listening.
3    That's it.
4    MR. CRENNY:  Okay.  We can move
5 on from the Signal discussion following that.
6    The next topic is one that
7 I'm -- I have, which is the false statements
8 made in representations to the Court and in
9 other documents which I sent an e-mail about
10 back in August.  I don't have the date in
11 front of me.
12    You responded, disagreeing with
13 a number of these points, which you're -- you
14 know, you're entitled to disagree; but our
15 position, we would like these false
16 statements corrected still.  We think you
17 have an obligation to correct each of these
18 that I'm going to go through.  We wanted to
19 discuss them with you at a meet and confer
20 because if we don't resolve these, this could
21 become part of a sanctions motion; but if we
22 resolve any of them, then it might not have

100

1 to go to a sanctions motion.
2    So we're going to go through
3 one-by-one and give you a chance to respond,
4 and we'll discuss why we feel they are false
5 and require correction.
6    One of these, as we'll get to,
7 was served -- was -- is about -- well, I'll
8 get to that when we get to it.
9    So the -- this is the same --
10 from the same list from my e-mail, whatever
11 date that was, so they should all be
12 familiar.  The first is in ECF-157, which was
13 filed to notify the Court of some false
14 statements by David, and --
15    MR. GILES:  For the record --
16    MR. CRENNY:  -- Counsel --
17    MR. GILES:  -- Kevin, for the
18 record, can I just point out this is in your
19 August 25th -- I just found it --
20 August 25th e-mail to all of our side.  I
21 just -- that's all I wanted to do.
22    MR. CRENNY:  Okay.  Thank you.

101
1    MR. GILES:  You're welcome.
2    MR. CRENNY:  So the first one,
3  as you see there, is the -- the -- okay.
4  Annette, I'm going to go very carefully here.
5  This is about a dispute about the word
6  "commits," C-O-M-M-I-T-S, versus "comments,"
7  C-O-M-M-E-N-T-S; so I'm just taking a moment
8  to clarify that before I start saying these
9  words because -- just for clarity.
10    So ECF-157 is -- you're quoting
11 there -- the document that you filed with the
12 Court is quoting a portion of David's
13 deposition transcript where there was a
14 transcription error.
15    So in the quote in -- at the
16 deposition, David was saying "commits,"
17 C-O-M-M-I-T-S, but the transcript says
18 "comments," C-O-M-M-E-N-T-S.  Commits,
19 C-O-M-M-I-T-S, are changes on GitHub; and we
20 were talking about changes on GitHub here.
21 It's a significant -- as a term of art in,
22 you know, GitHub, in this case, and the -- at

102
1  the actual deposition, you know, on the next
2  page that's not quoted in ECF-157, Steve
3  jumped in and he helped David correct the
4  record, that he had been saying "comments,"
5  C-O-M-M-E-N-T-S -- no, sorry, sorry -- Steve
6  jumped in to clarify with David that he was
7  saying C-O-M-M-I-T-S.
8    But the quote from the
9  transcript that you have in ECF-157 reflects
10 that David is saying "comments," E-N-T-S,
11 which is not what he was saying.  So we think
12 that's a false statement to the Court that he
13 was saying that.  It's very misleading.  It's
14 very confusing, so we think that should be
15 corrected because there's no way for the
16 Court to know that David's language was
17 corrected, you know, and clarified on the
18 next page of the transcript, which the Court
19 hasn't seen.
20    So that's the first of these
21 issues, so I think we should --
22    MR. GILES:  Do you want to deal

103
1  with that one first, or do you want to go
2  through all --
3    MR. CRENNY:  Yes, because I
4  think they're not all necessarily the same,
5  so I think we should do that one first.
6    MR. GILES:  Sure.
7    So with regard to the
8  "commits," C-O-M-M-I-T-S, verse "comments"
9  C-O-M-M-E-N-T-S, that is effectively dealt
10 with on pages 126 and 127 of the deposition
11 transcript.
12    There is -- it is clear that
13 there is a disagreement as to whether someone
14 was saying -- whether David was saying
15 "comments" or "commits" initially; and as you
16 correctly point out, Stephen stopped the
17 testimony and said, are we -- "Are you
18 saying" -- he goes, [as read]:  I think that
19 you're -- I don't know if you're saying
20 "comments."  I think he's saying -- right --
21 "commits," right?
22    And the witness says [as read]:

104
1  Yeah.
2    And that's on Page 127, lines 6
3  through 10.
4    And then Josh asked the
5  question, [as read]:  Git commits, and then
6  Git commits relate to upgrades on the code?
7    Line 13 [as read]:  Yes.
8    [As read]  And the Git commits,
9  the upgrades on the code were created or made
10 by people at OtterSec?
11    Line 17, David [as read]:  They
12 were made by me.
13    Line 18 [as read]:  Made by
14 you?
15    Line 19 [as read]:  Yes.
16    [As read]  And you deleted the
17 commits?
18    And on line 21 [as read]:  Yes.
19    So I think that the deposition
20 transcript correctly resolves and fully
21 resolves this issue such that this issue is
22 not deserving to be a meet and confer or a

Transcript of Meet and Confer

Conducted on September 22, 2025

105

1 disagreement. It has already been resolved.
2 It's in the deposition transcript; and
3 because it got resolved within the framework
4 of the deposition, this is not a situation
5 where we would use, you know, the ability to
6 change that testimony.
7          If it had been "comments,"
8 E-N-T, the whole way through and we got to
9 the transcript and it was sent to us a day
10 later and we looked at it and we go, Hold on,
11 I wasn't saying "comments," I was saying
12 "commits," then we would use that function to
13 say that the -- the court reporter got this
14 wrong, but it's dealt with.
15          And to your point that the
16 judge won't understand this, all you need to
17 do is attach these two pages and make it a
18 part of your argument that -- if you want to,
19 but I think it's foolish for you guys to do
20 that because this is going to be an easy one.
21 The judge is going to be like, "it's already
22 dealt with," if I were the judge.

106

1          Will the judge do that? I
2 don't know. But I think it's dealt with. I
3 disagree with this being an issue for a meet
4 and confer. I disagree with this as being a
5 discovery dispute. It's already resolved.
6 It's very clear in the deposition transcript,
7 though, at first -- I will acknowledge, at
8 first it was a little unclear, but it got
9 resolved during the deposition through the
10 actions of Josh and -- and Stephen and David.
11          So I don't think this is --
12 this is a nonissue. That's all I have.
13          MR. CRENNY: Okay. I mean,
14 I -- I agree it's resolved on the deposition
15 transcript. The point is that the -- the --
16 the ECF-157 filing is not clear, and that's
17 what the Court actually has; that's what you
18 gave to the Court. It's a filing meant to
19 correct misrepresentations which itself
20 contains a misrepresentation of what David
21 was saying, and I don't think it's our job to
22 have to attach the transcript and explain

107

1 this all to the Court. I think, you know,
2 you could refile it with the correct word in
3 brackets or something. It's not our
4 responsibility to fix this.
5          MR. GILES: And if you --
6          MR. CRENNY: It's an incorrect
7 representation to the Court to say that he
8 said the word "comments" there, E-N-T-S.
9          MR. GILES: I don't know that I
10 could put my hands on 157 to see exactly what
11 it was that's said that you think needs to be
12 corrected; but if you think it needs to be
13 corrected, then you can correct it, you can
14 raise it.
15          Again, I don't think it's
16 necessary, but this is my perspective.
17 Again, I can't put my finger on 157 -- hold
18 on a second. That's 155. That one... is
19 that the case. No, no, no, no.
20          Again, I can't put my finger
21 quickly on 157 in terms of a printout.
22          Okay. If you guys have 157 up

108

1 and you can read from it, what does it say
2 that is objectionable to you guys?
3          MR. CRENNY: It says at
4 Page 2 -- it quoting David's testimony. It's
5 quoting Page 125 to 126, and it says [as
6 read]: Regarding preservation of my GitHub
7 account between April 27th and May 21st, I
8 believe I made "comments," E-N-T-S, on top of
9 the code I took from OtterSec on GitHub.
10 Then on or before May 21st, I believe that I
11 deleted those "comments," E-N-T-S, from
12 GitHub.
13          It is an accurate quote of the
14 transcript, but, in isolation, that line from
15 the transcript is misleading to the Court and
16 the Court is not going to understand.
17          We -- you're -- you're the ones
18 who can correct your filing. We can't file a
19 correction of somebody else's filing. We
20 can't raise it directly with the Court. We
21 have to have a meet and confer, and, you
22 know, that's what we're trying to do.

109

1         It would be much more efficient
2 if it were corrected on your end so the Court
3 is not misled and confused by this.
4         MR. GILES:  All right.  I don't
5 think that a correction is necessary;
6 however, I will add this to the list of
7 things that Stephen and I need to talk about.
8 I will get back to you in that regard once we
9 have the call with each other and discuss all
10 the issues that have been raised today.
11        And he's no longer on the call,
12 so you guys are aware, and we will try to
13 tick off those things that you're waiting for
14 responses from us on -- I will try to tick
15 off that whether we agree to make the change
16 to say "commits" -- that that should have
17 said "commits" as opposed to "comments," even
18 though the deposition testimony goes through
19 that, but I will do that.  We will do that.
20        MR. CRENNY:  Okay.  Yeah.
21        MR. GILES:  I can't put my
22 finger on it, sorry.

110

1         MR. CRENNY:  The next issue is
2 the -- the -- I mean, you might still want to
3 find ECF-157 because this one's basically
4 about that, as well.  So EC-157 is correcting
5 some inaccuracies in prior filings.  I have
6 all the numbers in my e-mail, which I know
7 you have in front of you because you were
8 just looking at it.  I'm going to skip over
9 reading it, not to be difficult, but because
10 I know you have it in front of you.
11        MR. GILES:  Okay.
12        MR. CRENNY:  So the underlying
13 filings, most importantly David's declaration
14 at 120 -- ECF-122-6 -- if you can see, I'm
15 saying the numbers, but also the statements
16 to the Court in documents 117 and 122.
17        We believe you should correct
18 the versions of these on the -- on the docket
19 rather than simply saying it here, especially
20 with the declaration.  We need to be able to
21 cite to a declaration from David in a motion
22 for summary judgment or something like that;

111

1 and right now, 122-6 is still sitting there
2 on the docket as a sworn statement from David
3 that you have said is -- contains information
4 that is not true.
5         So we think you're obligated to
6 file a corrected version of that, as well as
7 117 and 122, which are statements by counsel,
8 not by David, but we still think you are
9 responsible for correcting those and not just
10 filing the notice saying that they're
11 correct -- they're incorrect.
12        MR. GILES:  So the best I can
13 do in terms of a response here is to read
14 from my e-mail response -- okay.  Let me back
15 up.
16        Earlier, I -- I chimed in and
17 said that you raised this issue in an
18 August 25th e-mail to us, and my response was
19 sent on Wednesday, August 27th, at 2:55 a.m.
20        And so with regard to the issue
21 that you're talking about now -- and I got to
22 see where I have to stop, but it's -- our

112

1 position is contained in this e-mail.
2         And I can read this for the
3 record, which I think probably I should,
4 though I think it's going to be a waste of
5 time, but I will do it.
6         So with regard to ECFs 117,
7 122, and 122-6, this is what we said [as
8 read]:  In response to the comments contained
9 in paragraph 2 of your below e-mail, we
10 disagree with the suggestion that we need to
11 file, quote/unquote, corrected versions of
12 ECF numbers 117, 122, and 122-6.  Pursuant to
13 ECF-157, we corrected the statements we now
14 know to have been inaccurate, and that is all
15 that is required.
16        While it is correct of you to
17 suggest that those pleadings/filings may
18 still contain inaccurate information, those
19 inaccuracies have already been corrected by
20 subsequent pleadings, discovery responses,
21 letters, and by David's recent deposition
22 testimony, and they will continue to be

Transcript of Meet and Confer
Conducted on September 22, 2025

113

1 corrected as it pertains to any discovery
2 responses in light of the affirmative duty by
3 all parties to supplement their respective
4 discovery responses; however, there is no
5 requirement, at least that we are aware of,
6 that says that we need to keep preparing and
7 filing new documents if/when we ever find any
8 other further inaccuracies in any other
9 pleadings or in letters/e-mails not filed
10 with the Court.
11          As I have mentioned above, that
12 process has already largely taken place and
13 is expected with the anticipated corrected
14 answers of Li Fen Yao to defendant's
15 interrogatories and David Chen's amended
16 answers to plaintiffs' interrogatories that
17 we hope to complete and serve on you
18 by/before Friday, August 29th, that we will
19 have completed that process with regard to
20 our client's discovery responses, as well.
21          So that's our response.
22          MR. CRENNY:  Okay.  I mean, we

114

1 were -- we -- we read that response.  I
2 said I -- yeah, I understood it.  We were
3 trying to meet and confer to see if we can
4 move the ball forward at all.
5          MR. GILES:  So that's still our
6 position.  That's still our position.
7          MR. CRENNY:  Okay.  So that's
8 where we're just sticking with that one.
9          MR. GILES:  Yeah.
10          MR. CRENNY:  Okay.  The next
11 one, I think, will potentially go quickly,
12 because we might be in the same impasse here.
13          But regarding David's same
14 declaration at ECF-122-6, paragraphs 12 and
15 13, the statements about GitHub, I do not
16 believe those to be accurate.  We do not
17 believe those to be accurate.
18          You know, we wrote a long piece
19 about GitHub in a motion to compel that we
20 filed -- served over the summer, pointing
21 out, you know, reasons that we believe this
22 to not be an accurate description of GitHub

115

1 and the ability to change information on
2 GitHub retroactively and whether GitHub is
3 like a -- an authoritative record of
4 everything that cannot be changed after the
5 fact.
6          We don't believe that to be the
7 case, and that is what David is saying, more
8 or less, him summarizing in ECF-122-6,
9 paragraphs 12 and 13.
10          I understand your position from
11 your e-mail was that -- your position is
12 those are not accurate, those statements that
13 he's making in paragraphs 12 and 13, and that
14 you were refusing to correct or amend that
15 filing in that regard.
16          If that is still your position
17 and that I can read your whole position from
18 your e-mail, I won't make you read it all
19 into the record again because we have the
20 e-mail as part of the record.
21          So I'll just ask:  Is --
22 anything to add from your e-mail that you

116

1 sent on August 27th?
2          MR. GILES:  So, as you
3 correctly point out, I'll just -- for the
4 record, to make it as clear as possible, it
5 is paragraph 4 of my August 27th e-mail to
6 you.  It is still our position with --
7          MR. CRENNY:  Okay.
8          MR. GILES:  And paragraph 4
9 talks specifically about paragraphs 12 and 13
10 of David's declaration.
11          MR. CRENNY:  Okay.  Then I --
12 same -- similar for the next issue I'm going
13 to raise, which is I think the next paragraph
14 of your e-mail.
15          In ECF-127, footnote 1, we
16 explained that that footnote in that filing
17 with the Court misrepresents whether there
18 was an agreement, a global agreement, as to
19 the time period for discovery; and it also
20 implies that nothing that was deleted was
21 relevant, which is not correct and which is
22 the false statement that ECF-157 was

Transcript of Meet and Confer
Conducted on September 22, 2025

117

1 correcting in some other filings.
2　　　　We think that ECF-127, footnote
3 1, is carefully worded but has -- implies the
4 same thing, implies very strongly that
5 nothing deleted was relevant.
6　　　　So we believe that should be
7 corrected, along with the other things that
8 ECF-157 was correcting, I believe paragraph 5
9 in your August 27th e-mail response to that;
10 and if that is still your full position -- I
11 see you're nodding, but I'll let you respond
12 for the record when I -- if that's still your
13 position, then I think we can go on to the
14 next one.
15　　　　I'll let you respond.
16　　　　MR. GILES:  Yes.
17　　　　And paragraph 5 of my
18 August 27th e-mail still accurately reflects
19 our position as to this issue that you have
20 raised, yes.
21　　　　MR. CRENNY:  Okay.  I'm trying
22 to keep these ones simple for us.

118

1　　　　MR. GILES:  Understood.
2　　　　MR. CRENNY:  Okay.  So the next
3 one is a little bit more significant, maybe,
4 or maybe we need to discuss a little more:
5 The false statements made in letters to us on
6 April 1st, 2025, which was a letter that
7 counsel sent to us purporting to analyze all
8 the deletions and reaching the conclusion
9 that nothing relevant was deleted, and
10 another letter served on us on June 13th,
11 2025, with information about the deletions;
12 and that June 13th letter is particularly
13 important.
14　　　　It was supposed to resolve one
15 portion of the motion to compel that we
16 served on April 4th, 2025.  If you look at
17 the joint status report at ECF-139, that's
18 where we are letting the Court know that
19 there's going to be a letter coming on or
20 before June 13th that's going to answer
21 questions about these deletions, which is
22 going to resolve the motion to compel that we

119

1 had served.
2　　　　And we've learned since
3 June 13th that David did, in fact, delete
4 relevant evidence, and the assessment from --
5 sorry, the assessment from April 1st was
6 incomplete and inaccurate.
7　　　　He also testified at his
8 deposition that he did not even look at what
9 channels were deleted until days before his
10 deposition, what channels he had deleted
11 messages from -- excuse me -- until days
12 before his deposition.
13　　　　So we don't know how you can --
14 representations in the June 13th letter
15 are -- therefore appear inaccurate.
16　　　　The June 13th letter says that
17 your assessment of the relevance of messages
18 that were not preserved included looking at,
19 one, information discerned from counsel's
20 communications with David concerning the
21 subject matter of the messages, the nature or
22 subject matter of the channels and servers in

120

1 which the messages were sent, the context of
2 the messages, and the identities of other
3 participants involved in the messages,
4 channels, or servers in which the messages
5 have been sent, but that either is not
6 accurate and you either didn't communicate to
7 this -- you know, didn't have these
8 communications with David, or you didn't
9 undertake a good faith effort to do this
10 because David's own testimony was that --
11 and -- that the messages in many of these
12 deleted channels were likely to have relevant
13 evidence.
14　　　　So it doesn't seem like that
15 was a thing you could have relied on at that
16 point, or if you did, it was incorrect.
17　　　　Another thing you say you
18 relied on in this June 13th letter was a
19 review of other messages from channels or
20 servers in which the deleted messages had
21 been sent; but when we subpoenaed other
22 messages from these channels and found

Transcript of Meet and Confer
Conducted on September 22, 2025

121

1 relevant content and context and David agreed
2 they contained relevant evidence, that --
3 that appeared to be news to your side.
4          You also stated that an
5 analysis was conducted on messages that were
6 sent in or after February 21, and the
7 relevance of messages not preserved was
8 assessed following the same approach
9 preserved -- described above, but you've
10 recently disclosed that you didn't collect
11 documents from February 21 on, including
12 David's Discord.
13          So how -- how could that be
14 accurate? How could you have assessed the
15 content and messages from 2021 from channels
16 that had deleted messages if you didn't even
17 have the Discord data?
18          So I know this is a lot of
19 specific questions, which I don't expect to
20 get an answer to right now, but the -- the
21 broad question is that information has come
22 out since the June 13th letter which makes

122

1 the June 13th letter inaccurate, and the
2 agreement for resolving the motion to compel
3 was that we'll get a letter on June 13th that
4 is accurate.
5          So if we have a letter that is
6 now not accurate, then David and Li Fen are
7 not holding up their end of the agreement to
8 resolve that motion.
9          So that's why it's particularly
10 important that the June 13th letter be
11 corrected.
12          I think that is -- I think
13 that's at the end of my spiel on this, so
14 I'll let you respond.
15          MR. GILES: Okay. So as I note
16 in paragraph 6 of my August 27th e-mail to
17 you, we disagree with the fact that the
18 April 1, 2025, and the June -- and/or the
19 June 13th, 2025, letters require any
20 corrections; and we conclude that paragraph
21 by saying [as read]: Counsel's analysis, as
22 described in the June 13th, 2025, letter is

123

1 accurate.
2          That's our position, and it's
3 still our position.
4          MR. CRENNY: Fair enough. I'm
5 pulling up the letter. Excuse me.
6          MR. GILES: Sure.
7          MR. CRENNY: I mean, our point
8 is that that's -- that's not possible based
9 on what we've found out, like we -- you know,
10 we found those October 21 messages that you
11 agreed earlier at this meet and confer you
12 hadn't known about prior to us raising them
13 well after June 13th; but this letter implies
14 that that's the kind of thing you would have
15 seen, but doesn't seem like you would have or
16 you wouldn't have heard about them from
17 David.
18          MR. GILES: So I will
19 reiterate: Counsel's analysis, as described
20 in the June 13th, 2025, letter, is accurate.
21 That is our position. That was our position
22 on August 27th, which was after David's

124

1 deposition. It's our position today. It's
2 going to be our position going forward.
3          MR. CRENNY: So -- but -- you
4 say an analysis was conducted on messages
5 that were sent on or after February 2021 in
6 the letter of June 13th, but you're not
7 telling -- you've been telling us now for the
8 past month or so you haven't collected those.
9 You haven't collected 2021 messages.
10          MR. GILES: Kevin, that's
11 wrong. You're not listening.
12          MR. CRENNY: I know you said
13 you collected some random ones that happened
14 to get collected while you were checking
15 2022, correct?
16          MR. GILES: That is correct,
17 yes.
18          MR. CRENNY: Okay. So what you
19 meant when you said an analysis was conducted
20 on messages that were sent in or after
21 February 2021, you're saying that's accurate
22 because you conducted an analysis on "some"

125

1 messages that were sent in or after
2 February 2021.
3          MR. GILES:  Yeah, I think that
4 would be an accurate statement, yes.
5          MR. CRENNY:  Okay.  Even
6 though --
7          MR. GILES:  We're not going to
8 -- we're not going to correct what's in the
9 June 23rd to say what you want that to say.
10 We don't think that's necessary.  What we
11 said in the June 13th letter -- and mind you,
12 I'm not in the case at that point.  This is
13 Stephen.
14          MR. CRENNY:  Your clients --
15 your clients were.
16          MR. GILES:  No, I know, but
17 it's coming from counsel.  Stephen wrote --
18 and Stephen, unfortunately, is not on here to
19 sort of stand either with me or say, well,
20 you know, whatever, but I think I feel pretty
21 confident because we talked about this
22 August 27th response before it was sent to

126

1 you, that the June 13th letter, in its
2 entirety, is accurate.
3          There was Discord messages,
4 there were a lot of other things that they --
5 that date back to February 1, 2021, that were
6 part of the initial preservation collection;
7 but when we got to dealing with the
8 preservation order and the expansion of the
9 range to include February 1, 2021, through
10 April 17th, and after our attempts to try to
11 get you to agree with a more reasonable
12 range, that still ended on April 17th, 2025,
13 but started after February 1, 2021, because
14 there was no basis in fact as to why that
15 date was picked.
16          We then had to make a step, as
17 I've already discussed ad nauseam, that we
18 had to re-collect everything because that's
19 what you guys want and that's what you guys
20 are going to demand; and if we don't do it,
21 that's all we're going to hear -- that's all
22 we're going to hear in this case is that

127

1 "they didn't collect."
2          So we're collecting everything
3 from February 1, 2021, through April 17th,
4 2025, and it's in process.
5          Were certain things from
6 February 1, 2021 previously collected when we
7 were under the Yao v. Chen more constricted
8 scope?  Yes, things were collected, and
9 things were analyzed; and that's what is
10 referred to in the June 13th, 2025, letter
11 that was authored by Stephen Plotnick.
12 That's the answer I can give you, and all
13 that's accurate.
14          MR. CRENNY:  Again, you know --
15 Rachel, do you have anything to add on this
16 one?
17          MS. CLATTENBURG:  I mean, I
18 think our position is that the letter is not
19 giving us the right information about how
20 relevance was assessed because we've now
21 learned that there were just some stray
22 messages from 2021 that happened to have been

128

1 reviewed.
2          If that's all that was
3 reviewed, then I don't think the letter is
4 correct in how it describes how relevance was
5 assessed, and the same with the other points.
6          But I think we should take a
7 break for the court reporter and keep moving
8 so that we can finish in not too long.
9          MR. GILES:  And before we take
10 a break, I'll just say I take issue with one
11 of your comments, Rachel; and that is you
12 said "stray messages."  No one has suggested
13 that there are just stray messages, but I
14 agree that we should take a break for the
15 court reporter.
16          MR. CRENNY:  Want to do five
17 minutes?
18          MR. GILES:  That's fine.  That
19 works.
20          MR. CRENNY:  So coming back at
21 12 noon?
22          (Break taken from 10:56 a.m. to

129

1      11:03 a.m.)
2          MR. DICHARIA:  So this is
3  Justin, hi.
4          Alex, the next thing is just
5  the list of Discord channels.
6          I know we -- you had agreed on
7  August 20th, 2025, in the meet and confer, to
8  get us the list.  We're just checking in back
9  on that, since it's been over a month, and
10 just looking to see if you -- if you have an
11 update on that.
12         MR. GILES:  Not necessarily a
13 new update, but I've -- just wrote it down,
14 and I've added it to the list of things that
15 Stephen and I will talk about.
16         My understanding is that in the
17 Yao v. Chen, Li Fen Yao answers to
18 interrogatories, amended answers to
19 interrogatories, and I want to say it's
20 second amended, maybe it's third amended --
21 the most recent one, that -- I think it's
22 answer number 1 or answer number 2 or maybe a

130

1  combination of the two -- that they provide
2  this very information in there, but I'm -- I
3  don't have that document in front of me; and
4  to be candid, that's something that Stephen
5  and his folks were handling.
6          So -- and Stephen's not on the
7  call anymore, but I have written it down.  I
8  will check with Stephen when we talk either
9  later today or tomorrow and try to figure out
10 where we are with that, and we'll get back to
11 you -- affirmatively get back to you to let
12 you know where we believe we are at with that
13 in terms of we've produced it, we haven't
14 produced it, we're going to produce it.
15 Whatever the case may be, we'll do that.
16         MR. DICHARIA:  Thanks.  And
17 just to be clear, so this is the -- this is
18 the Chen v. Chen list of --
19         MR. GILES:  Yeah.
20         MR. DICHARIA:  -- channels,
21 Alex?  Okay.  Thanks.
22         The second thing I'm going over

131

1  is just we sent -- we discussed on
2  August 20th, 2025, I think, some questions
3  about the source list, and then we agreed to
4  send you an e-mail about that, which we did.
5  I think you -- you provided some answers,
6  which caused us to have filed the questions.
7          When we asked for those filed
8  questions, you declined to provide answers in
9  your e-mail.  That was August 27th, 2025.
10 And we are just asking again if you could
11 provide answers to our follow-up questions.
12         MR. GILES:  You'll have to
13 remind me, where are -- your follow-up
14 questions are located, but --
15         MR. DICHARIA:  Yes, sir.  Let
16 me -- I think they would be in the chain for
17 the August 27th e-mail; so if you were able
18 to find your August 27th e-mail --
19         MR. GILES:  That's fine.
20         MR. DICHARIA:  -- I think it
21 would be below that.
22         MR. GILES:  I still have that

132

1  up, I have that up.
2          And would it be Kevin's e-mail
3  of August 25th?
4          MR. CRENNY:  I don't think this
5  one was me.
6          MR. DICHARIA:  This may be
7  Christina, Alex.
8          MR. GILES:  So hold on, let
9  me -- let me pull up Christina.  And remind
10 me of Christina's last name again.
11         MR. DICHARIA:  It is Lamoureux.
12 So L-A-M-O-U-R --
13         MR. GILES:  Yeah.  I apologize
14 with the noise there; someone's calling me.
15         All right.  So I have two
16 e-mails from her.  I have one that's dated
17 August 22nd and then a second one that's
18 dated November -- September 5th.
19         MR. DICHARIA:  I think it's the
20 August 22nd e-mail that has the follow-up
21 questions, I believe.
22         MR. GILES:  Okay.  All right.

Transcript of Meet and Confer
Conducted on September 22, 2025

133

1 Well, let me -- let me open up the September
2 5th because I think they were connected.
3         Yeah, so there's a -- yeah,
4 there's a August 27th e-mail from me at
5 2:29 a.m., which is different than the other
6 August 27th 2:55 a.m. e-mail; but okay. So I
7 have -- I have our responses -- or my
8 responses in that, sort of, lengthy e-mail.
9         So I apologize, Justin;
10 reiterate your question, please, or
11 restate --
12        MR. DICHARIA: Yeah, no
13 worries, Alex. It's just, I think we didn't
14 get substantive answers to the -- to the
15 questions; and, you know, we've -- I think
16 we've provided our -- the authority, and I
17 think Christina did in one e-mail, why -- you
18 know, why we're allowed to get those answers
19 and why we think we need those answers; and
20 so I'm just checking in to see if your
21 position is changed and if you're willing to
22 provide us the answers to those questions.

134

1         MR. GILES: If you give me
2 about a minute, I'll try to skim my response
3 from August 27th to make sure that this is
4 still our accurate position.
5         MR. DICHARIA: Of course.
6         And just to give you an
7 example, Alex, it's -- there's a few -- in
8 the August 22nd e-mail, it's a few
9 paragraphs, but the follow-up questions, it
10 says -- we also had a few follow-up
11 questions, and then it's -- like, one of
12 the -- it starts with [as read] miscellaneous
13 Digital Ocean hosts, and then it goes down --
14 goes down from there.
15        MR. GILES: And that's in
16 Christina's August 22nd --
17        MR. DICHARIA: Yes, yep.
18        MR. GILES: Yeah, right,
19 exactly. Okay. So give me a second here
20 just to sort of quickly -- it's a lengthy
21 e-mail response that I sent.
22        So, again, this is just based

135

1 on a very quick reference. I think we -- in
2 my e-mail, I walked you through, sort of,
3 what we presumed to be or believed to be
4 the -- the development of this litigation
5 between the Yao v. Chen relevant period and
6 the -- and the Chen v. Chen relevant period
7 and how it changed and when it changed and so
8 that's -- I think that's a lot of what answer
9 2 is; and it's got many subparts, 2A, B, C,
10 D, E, F, G, and H.
11        In terms of the questions about
12 the -- you had the follow-up questions and --
13 regarding the -- the miscellaneous Digital
14 Ocean host source, the Samsung 980 Pro; and
15 it says, "What was this drive used for?"
16        And then there's the question
17 about the Samsung 980 Pro as characterized as
18 "mystery Samsung 980 Pro."
19        And I think a lot of that can
20 be dealt with in terms of my response in
21 paragraph 12, which reads [as read]: All of
22 the remaining questions that you have

136

1 included in your August 22nd, 2025, e-mail
2 represent new areas of inquiry and basically
3 amount to additional discovery that you're
4 now seeking from us outside the confines of
5 plaintiffs' interrogatories to David Chen.
6         As a result, we are not
7 inclined to respond to such new inquiries and
8 questions; rather, feel free to include these
9 areas of inquiry as part of your eventual
10 deposition of David, whenever that deposition
11 may get scheduled in this litigation.
12        And by "eventual," we're
13 talking about the substantive deposition, not
14 the one that was held July 20th -- or July
15 30th, sorry.
16        I want to see if there's
17 anything else that I -- that -- I'm just
18 going to keep to the substance of it.
19        I think that's our substantive
20 response to those questions.
21        MR. DICHARIA: Okay. So we
22 won't be getting answers to those questions,

Case 8:23-cv-00889-TDC    Document 172    Filed 09/24/25    Page 37 of 73
Transcript of Meet and Confer
Conducted on September 22, 2025
35 (137 to 140)

137
1  then, from you guys, at least, before the
2  deposition?
3          MR. GILES:  No.
4          MR. DICHARIA:  Okay.  I mean,
5  these -- we -- I think just the issue, from
6  our standpoint, is that the source list just
7  caused questions, I guess, instead of
8  answering some of them, just because of the
9  use of -- for example, "mystery" being as a
10 part of -- you know, part of the -- the
11 description of some of the sources, but --
12 and so, therefore, we don't actually know
13 what the sources are, but we've got your
14 position.  So I can move on to the next thing
15 if --
16         MR. GILES:  Okay.  Yeah, that's
17 fine.
18         MR. DICHARIA:  Yeah, so the --
19 the next thing, Alex, is just the Teel Tech
20 stuff.  So we suggest that we'll send -- we
21 can send you a draft e-mail for -- to be sent
22 to the Teel Tech person on how we propose

138
1  proceeding, given the options that Maggie
2  sent.
3          MR. GILES:  And that's fine.  I
4  would just say that -- that this, again, is
5  not a proper meet and confer subject because
6  I'm not sure what the dispute is.  I don't
7  think there is a dispute.
8          I mean, we agreed for you to
9  send it to Maggie, she prepared her analysis,
10 she sent it, and that's where we are; and so
11 if -- if the only reason you added this to
12 the list was to say, we're going to send you
13 a proposed e-mail that we would like to send
14 back to Maggie, I look forward to receiving
15 it.  When we receive it, we'll review it, and
16 we'll let you know if we have any changes.
17         MR. DICHARIA:  Well, yeah,
18 that's -- that's the only reason why we added
19 it, Alex --
20         MR. GILES:  Okay.
21         MR. DICHARIA:  -- just so --
22         MR. GILES:  Okay.

139
1          MR. DICHARIA:  -- we could run
2  by the process with you.
3          MR. GILES:  Okay.  Understood,
4  that's fine.
5          MR. DICHARIA:  That is it from
6  our side.
7          MR. GILES:  We do not have
8  anything from our side.
9          MR. DICHARIA:  Okay.  Kevin,
10 Rachel?  I think that's it.
11         MS. CLATTENBURG:  Yeah, I think
12 that's it.
13         I do think -- just one thing --
14 that maybe reading ECF-132, which is one of
15 Judge Simms' orders in this case, would be
16 helpful before future meet and confers, Alex,
17 but that's all we have from our side.
18         Thank you very much, Annette.
19         MR. GILES:  And I would just
20 add -- Rachel, I would just add that I think
21 you guys should read the deposition
22 transcript of David because I think that

140
1  would be helpful to this process.
2          MR. CRENNY:  We've read it.
3          MR. GILES:  Okay.
4          THE COURT REPORTER:  Anything
5  else for the record?
6          MR. GILES:  Thank you, Madam
7  Court Reporter, thank you.
8          (Meet and Confer concluded.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22

141

```
 1       IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
 2
    LI FEN YAO, as administrator  )
 3  Of the Estate of Sim Mingsan  )
    Chen,                         )
 4                                )
          Plaintiff    ) Case No.
 5                     ) 23-cv-889
          Vs.          )
 6                     )
    ROBERT CHEN, OTTER AUDITS, LLC.)
 7  and RC SECURITY, LLC,         )
                                  )
 8        Defendants    )
 9
            REPORTER'S CERTIFICATION
10           MEET AND CONFER
             SEPTEMBER 22, 2025
11
12      I, Annette Peltier, Certified Shorthand
13  Reporter in and for the State of Texas,
14  hereby certify to the following:
15      That the transcript of the proceedings
16  is a true record of the proceedings had;
17      That the original transcript was
18  delivered to Rachel Clattenburg, Custodial
19  Attorney.
20      That a copy of this certificate was
21  served on all parties shown herein on
22           .
```

142

```
 1       I further certify that I am neither
 2  counsel for, related to, nor employed by any
 3  of the parties or attorneys in the action in
 4  which this testimony was taken.  Further, I
 5  am not a relative or employee of any attorney
 6  of record in this cause, nor am I financially
 7  or otherwise interested in the outcome of the
 8  action.
 9      Certified to by me this 23rd day of
10  September, 2025.
11
12  _____
        Annette Peltier, Texas CSR 3253
13      Expiration Date:  10/31/27
        Firm Registration No. 686
14      451 Hungerford Drive
        Suite 400
15      Rockville, MD 20850
        Phone: 888.433.3767
16      Fax: 888.503.3767
17
18
19
20
21
22
```

Transcript of Meet and Confer
Conducted on September 22, 2025

37

| A |
|---|

**aback**
94:21
**ability**
92:1, 105:5,
115:1
**able**
9:15, 9:20,
30:7, 30:10,
110:20, 131:17
**about**
7:17, 14:12,
20:5, 21:5,
22:19, 25:20,
27:12, 28:8,
29:21, 32:7,
32:20, 34:2,
43:18, 44:8,
44:22, 45:15,
46:8, 51:13,
53:7, 53:13,
53:17, 53:22,
54:5, 55:5,
55:12, 55:16,
55:20, 56:4,
57:4, 57:10,
58:5, 59:12,
59:21, 61:18,
62:22, 63:5,
63:6, 64:10,
66:13, 71:9,
75:17, 77:4,
79:1, 79:4,
79:5, 79:6,
80:20, 81:3,
82:15, 83:16,
84:15, 86:8,
88:8, 88:9,
88:21, 91:21,
92:11, 92:14,
99:9, 100:7,
101:5, 101:20,
109:7, 110:4,
111:21, 114:15,
114:19, 116:9,
118:11, 118:21,
123:12, 123:16,

125:21, 127:19,
129:15, 131:3,
131:4, 134:2,
135:11, 135:17,
136:13
**above**
113:11, 121:9
**above-styled**
2:2
**abscond**
93:2
**absolutely**
15:9, 18:10,
18:11, 87:20
**acceptable**
21:13, 58:21,
65:9, 74:7,
74:14, 74:20
**access**
39:1
**accidentally**
19:6, 19:8
**account**
97:12, 97:13,
108:7
**accounts**
42:8, 51:21
**accurate**
7:9, 108:13,
114:16, 114:17,
114:22, 115:12,
120:6, 121:14,
122:4, 122:6,
123:1, 123:20,
124:21, 125:4,
126:2, 127:13,
134:4
**accurately**
117:18
**accusation**
52:12
**acknowledge**
106:7
**acknowledged**
13:18, 27:7
**acknowledges**
98:3
**across**
78:17

**act**
21:21
**action**
142:3, 142:8
**actions**
67:16, 68:11,
90:9, 106:10
**actual**
102:1
**actually**
38:16, 44:9,
44:13, 52:14,
60:17, 66:14,
78:16, 106:17,
137:12
**ad**
11:22, 99:1,
126:17
**add**
83:3, 87:12,
87:14, 109:6,
115:22, 127:15,
139:20
**added**
129:14, 138:11,
138:18
**addition**
5:20, 9:10,
38:17, 40:5,
45:11
**additional**
48:6, 48:22,
52:21, 136:3
**address**
82:10, 82:20
**adds**
21:9
**adjournment**
4:5
**administrator**
1:4, 141:4
**admits**
39:2
**affirmative**
90:9, 96:2,
113:2
**affirmatively**
93:1, 130:11

**affirmed**
15:17
**after**
6:12, 41:15,
43:22, 53:18,
54:1, 54:5,
55:5, 55:12,
55:16, 55:20,
57:4, 64:7,
64:16, 66:18,
68:15, 78:20,
79:7, 79:8,
79:20, 81:17,
81:18, 87:22,
90:6, 90:19,
97:17, 115:4,
121:6, 123:13,
123:22, 124:5,
124:20, 125:1,
126:10, 126:13
**again**
9:4, 11:21,
12:22, 17:18,
28:9, 43:16,
48:18, 63:11,
70:20, 90:21,
92:9, 92:19,
107:15, 107:17,
107:20, 115:19,
127:14, 131:10,
132:10, 134:22,
138:4
**agenda**
5:5
**ago**
6:4, 41:21,
52:15
**agree**
9:11, 9:15,
10:14, 16:17,
19:14, 21:15,
26:5, 29:18,
30:3, 62:13,
78:6, 90:21,
106:14, 109:15,
126:11, 128:14
**agreed**
7:14, 26:11,

Transcript of Meet and Confer
Conducted on September 22, 2025

28:9, 35:12,
37:1, 37:3,
40:14, 42:18,
50:21, 51:2,
56:16, 62:15,
64:4, 121:1,
123:11, 129:6,
131:3, 138:8
**agreeing**
82:1
**agreement**
9:15, 10:8,
24:21, 37:16,
63:1, 68:17,
69:14, 71:22,
72:1, 81:13,
116:18, 122:2,
122:7
**ahead**
19:2, 23:5,
24:4, 24:15,
83:8, 83:12,
89:9, 95:3, 97:3
**air**
70:16
**albeit**
15:13
**alex**
20:11, 31:1,
34:4, 47:14,
48:4, 53:13,
53:18, 53:22,
54:5, 55:5,
55:11, 55:16,
55:20, 57:4,
57:10, 58:2,
58:11, 58:16,
59:1, 59:18,
61:18, 63:5,
64:8, 74:7,
83:1, 86:1,
86:14, 91:4,
93:4, 94:19,
129:4, 130:21,
132:7, 133:13,
134:7, 137:19,
138:19, 139:16
**alexander**
3:12

**all**
12:10, 13:11,
17:17, 21:2,
24:16, 25:10,
28:21, 28:22,
29:2, 35:7,
35:11, 35:12,
36:17, 37:6,
39:11, 40:14,
41:7, 42:11,
46:18, 60:13,
60:18, 60:20,
62:2, 62:8,
62:10, 69:7,
73:4, 73:15,
74:2, 74:22,
77:9, 78:9,
78:10, 78:13,
80:6, 83:6,
83:13, 84:12,
85:15, 87:11,
89:16, 100:11,
100:20, 100:21,
103:2, 103:4,
105:16, 106:12,
107:1, 109:4,
109:9, 110:6,
112:14, 113:3,
114:4, 115:18,
118:7, 126:21,
127:12, 128:2,
132:15, 132:22,
135:21, 139:17,
141:31
**allegation**
39:7
**allege**
40:21
**alleged**
41:1
**allegedly**
41:5, 41:6
**allowed**
133:18
**along**
12:4, 117:7
**already**
7:13, 25:15,

36:14, 62:12,
62:13, 65:8,
65:12, 65:15,
66:18, 73:5,
74:13, 75:9,
105:1, 105:21,
106:5, 112:19,
113:12, 126:17
**also**
3:31, 6:20,
36:9, 37:15,
44:6, 55:22,
56:6, 64:19,
65:2, 65:17,
65:22, 75:18,
79:17, 94:3,
94:5, 110:15,
116:19, 119:7,
121:4, 134:10
**amazing**
59:22
**amend**
115:14
**amended**
6:11, 53:6,
56:3, 60:18,
113:15, 129:18,
129:20
**amending**
57:10
**among**
37:20, 38:19,
39:18
**amount**
65:11, 136:3
**ample**
21:16
**analysis**
70:2, 121:5,
122:21, 123:19,
124:4, 124:19,
124:22, 138:9
**analyze**
118:7
**analyzed**
71:15, 127:9
**annette**
1:30, 2:4,

83:15, 94:17,
101:4, 139:18,
141:22, 142:13
**another**
65:5, 67:1,
83:4, 118:10,
120:17
**answer**
11:11, 11:15,
13:14, 14:3,
18:6, 18:9,
22:5, 25:10,
29:4, 31:2,
31:7, 32:10,
47:20, 55:13,
57:15, 61:12,
70:10, 78:19,
79:16, 88:3,
89:9, 94:16,
96:8, 96:12,
118:20, 121:20,
127:12, 129:22,
135:8
**answered**
29:20
**answering**
32:14, 137:8
**answers**
22:11, 25:8,
85:1, 94:10,
113:14, 113:16,
129:17, 129:18,
131:5, 131:8,
131:11, 133:14,
133:18, 133:19,
133:22, 136:22
**anticipate**
8:10
**anticipated**
113:13
**any**
6:2, 6:3, 6:22,
10:8, 10:14,
13:10, 13:16,
17:14, 30:20,
30:22, 32:2,
35:2, 36:2,
38:21, 39:4,

40:3, 40:19,
40:21, 41:2,
41:7, 41:14,
41:21, 42:5,
43:5, 44:15,
49:20, 56:7,
63:12, 66:1,
70:12, 75:7,
79:10, 80:2,
85:13, 85:16,
85:18, 90:9,
92:14, 98:19,
99:22, 113:1,
113:7, 113:8,
122:19, 138:16,
142:2, 142:5
**anymore**
43:11, 130:7
**anyone**
13:13
**anything**
5:17, 27:8,
35:1, 43:7,
43:9, 49:16,
82:20, 83:3,
92:22, 115:22,
127:15, 136:17,
139:8, 140:4
**apologize**
69:2, 132:13,
133:9
**app**
6:18
**apparent**
6:15
**apparently**
66:13
**appear**
119:15
**appearances**
4:3
**appeared**
84:7, 121:3
**apply**
44:5
**appreciate**
9:21, 19:10,
61:9, 61:16,

62:5, 93:13
**approach**
121:8
**appropriate**
66:18, 79:21
**april**
5:18, 7:5,
10:21, 12:12,
25:5, 34:22,
36:3, 36:20,
37:5, 37:17,
43:8, 49:15,
51:1, 65:19,
68:7, 80:7,
97:8, 97:17,
97:22, 98:20,
108:7, 118:6,
118:16, 119:5,
122:18, 126:10,
126:12, 127:3
**area**
67:1
**areas**
136:2, 136:9
**aren't**
71:7, 99:2
**argue**
71:6, 98:17
**argument**
65:22, 66:4,
70:11, 71:9,
82:3, 90:14,
96:22, 97:2,
97:3, 105:18
**arguments**
64:18, 64:22,
66:1, 70:9, 73:4
**art**
101:21
**aside**
73:10
**asked**
19:22, 20:3,
22:11, 29:5,
29:18, 31:12,
41:19, 45:8,
69:17, 76:22,
77:10, 79:4,

80:4, 84:3,
88:14, 104:4,
131:7
**asking**
14:12, 16:16,
17:5, 21:4,
30:2, 31:5,
31:22, 45:14,
60:13, 60:20,
62:14, 62:19,
87:8, 131:10
**assessed**
121:8, 121:14,
127:20, 128:5
**assessment**
119:4, 119:5,
119:17
**assets**
39:20
**assistance**
67:16
**assume**
27:17
**assumed**
98:9
**assuming**
90:18
**assumption**
48:20, 86:8,
87:4
**assumptions**
47:18, 91:1
**astounding**
43:6
**attach**
105:17, 106:22
**attached**
2:9
**attempts**
126:10
**attorney**
58:21, 59:3,
141:29, 142:5
**attorneys**
21:21, 142:3
**audits**
1:12, 6:7,
141:12

**august**
7:14, 7:20,
38:3, 63:19,
64:7, 72:16,
72:17, 80:16,
99:10, 100:19,
100:20, 111:18,
111:19, 113:18,
116:1, 116:5,
117:9, 117:18,
122:16, 123:22,
125:22, 129:7,
131:2, 131:9,
131:17, 131:18,
132:3, 132:17,
132:20, 133:4,
133:6, 134:3,
134:8, 134:16,
136:1
**authentic**
36:15
**authored**
127:11
**authoritative**
115:3
**authority**
12:16, 133:16
**auto**
83:21, 84:4,
85:12, 85:15,
85:19, 88:9,
88:15, 88:19,
88:22, 89:1,
89:14, 90:1,
90:2, 91:13,
91:15, 94:3,
94:6, 94:12,
95:14, 96:11,
98:12
**automatic**
21:8
**aware**
13:16, 13:17,
13:20, 14:9,
32:4, 52:3,
87:6, 109:12,
113:5
**away**
24:7

**B**

**baby**
78:6
**back**
11:11, 15:3,
18:16, 44:10,
45:10, 48:5,
49:7, 61:22,
62:1, 69:3,
70:14, 79:22,
80:18, 94:9,
98:13, 99:10,
109:8, 111:14,
126:5, 128:20,
129:8, 130:10,
130:11, 138:14
**back-and-forth**
75:17
**bad**
22:4, 71:8,
97:1
**ball**
114:4
**baltimore**
3:17
**bank**
27:18, 78:1
**based**
46:16, 47:18,
68:20, 78:15,
81:11, 123:8,
134:22
**basically**
19:13, 75:6,
93:20, 110:3,
136:2
**basis**
40:10, 126:14
**bates-stamping**
38:14
**because**
6:16, 7:8,
12:7, 13:14,
15:11, 19:9,
20:17, 22:19,
27:12, 29:5,
32:12, 37:18,

44:12, 47:11,
48:20, 49:14,
53:9, 58:9,
58:13, 59:16,
60:7, 62:7,
63:9, 63:22,
64:7, 64:21,
65:1, 73:2,
74:9, 74:20,
76:2, 78:18,
82:16, 84:10,
85:2, 86:3,
86:7, 86:13,
87:4, 89:5,
90:3, 90:8,
91:10, 91:15,
91:22, 92:13,
94:20, 97:16,
97:21, 99:20,
101:9, 102:15,
103:3, 105:3,
105:20, 110:3,
110:7, 110:9,
114:12, 115:19,
120:10, 124:22,
125:21, 126:13,
126:18, 127:20,
133:2, 137:8,
138:5, 139:22
**become**
18:3, 21:17,
21:18, 99:21
**been**
13:19, 16:1,
17:11, 27:21,
43:5, 43:11,
43:18, 44:12,
44:22, 48:3,
48:17, 50:11,
61:19, 64:10,
65:13, 75:14,
75:15, 96:13,
102:4, 105:1,
105:7, 109:10,
112:14, 112:19,
120:5, 120:21,
124:7, 127:22,
129:9

**before**
2:4, 22:6,
23:6, 38:6,
50:10, 52:1,
60:11, 66:22,
70:17, 71:3,
72:18, 75:6,
78:9, 81:16,
101:8, 108:10,
113:18, 118:20,
119:9, 119:12,
125:22, 128:9,
137:1, 139:16
**beginning**
50:5, 50:13,
59:21
**behalf**
3:3, 3:20, 35:2
**behavior**
58:21, 59:3
**behind**
35:18
**being**
13:22, 52:12,
52:22, 59:18,
70:16, 71:13,
86:8, 86:9,
96:6, 96:7,
106:3, 106:4,
137:9
**believe**
28:22, 47:19,
49:18, 50:3,
52:2, 53:4,
65:7, 86:15,
89:12, 98:11,
108:8, 108:10,
110:17, 114:16,
114:17, 114:21,
115:6, 117:6,
117:8, 130:12,
132:21
**believed**
135:3
**below**
45:12, 112:9,
131:21
**best**
111:12

**better**
15:10
**between**
42:19, 51:20,
79:18, 87:18,
88:3, 91:3,
95:9, 108:7,
135:5
**beyond**
67:20
**big**
34:16
**bill**
22:2
**bit**
34:14, 47:7,
86:7, 118:3
**blank**
23:20, 68:1
**bold**
28:22
**bona**
8:21
**both**
5:3, 5:15,
6:19, 34:20,
35:4, 35:9,
37:21, 67:3,
93:6, 94:1
**brackets**
107:3
**break**
128:7, 128:10,
128:14, 128:22
**bricked**
41:6
**bricking**
41:1
**bridge**
78:11
**brief**
26:4, 30:1
**briefing**
10:10
**briefly**
63:15
**bring**
66:7

Transcript of Meet and Confer
Conducted on September 22, 2025

41

**broad**
51:11, 121:21
**budging**
71:7
**build**
24:3
**bullet**
45:1, 45:17,
45:19
**burden**
64:22, 66:16,
72:12
**burdensome**
72:15, 72:22
**business**
81:18
**byte**
24:9

**C**

**c-o-m-m-e-n-t-s**
101:7, 101:18,
102:5, 103:9
**c-o-m-m-i-t-s**
101:6, 101:17,
101:19, 102:7,
103:8
**call**
53:18, 54:1,
54:6, 55:6,
55:12, 55:16,
55:20, 57:5,
58:4, 59:21,
61:17, 63:4,
82:11, 109:9,
109:11, 130:7
**called**
11:2
**calling**
132:14
**calm**
32:18, 57:21
**came**
11:22, 45:10,
69:1, 69:2
**can't**
28:14, 31:18,
48:2, 54:22,

60:4, 75:8,
80:19, 80:20,
107:17, 107:20,
108:18, 108:20,
109:21
**candid**
130:4
**cannot**
10:15, 11:9,
16:17, 18:8,
19:15, 64:15,
115:4
**carefully**
101:4, 117:3
**carter**
3:6, 12:3
**case**
1:8, 6:19, 7:1,
12:1, 17:12,
18:2, 21:1,
22:3, 22:14,
28:2, 32:7,
35:8, 35:17,
37:12, 43:5,
43:9, 43:11,
44:1, 49:1,
50:6, 50:7,
50:13, 50:14,
53:4, 63:6,
66:20, 67:5,
67:6, 68:16,
70:6, 70:19,
70:21, 73:1,
75:16, 78:7,
78:22, 87:7,
89:7, 97:22,
101:22, 107:19,
115:7, 125:12,
126:22, 130:15,
139:15, 141:8
**cases**
5:4, 5:15,
5:19, 6:19,
34:20, 35:9,
37:21, 74:21,
78:15, 78:17
**categories**
10:19, 11:14,

16:15, 25:4
**category**
16:12
**cause**
2:2, 142:6
**caused**
40:21, 131:6,
137:7
**central**
2:3
**certain**
12:2, 67:8,
127:5
**certainly**
40:17, 62:4,
90:13
**certificate**
4:6, 141:30
**certification**
141:18
**certified**
2:5, 141:22,
142:9
**certify**
141:24, 142:1
**chain**
131:16
**challenge**
17:9
**chance**
100:3
**change**
105:6, 109:15,
115:1
**changed**
13:8, 13:9,
115:4, 133:21,
135:7
**changes**
13:10, 101:19,
101:20, 138:16
**changing**
42:14
**channels**
7:11, 10:20,
10:22, 14:14,
42:10, 119:9,
119:10, 119:22,

120:4, 120:12,
120:19, 120:22,
121:15, 129:5,
130:20
**characterized**
135:17
**chat**
6:18, 85:10,
91:14, 96:10
**chats**
6:22, 85:13
**check**
61:22, 130:8
**checking**
124:14, 129:8,
133:20
**chen**
1:6, 1:12,
5:16, 5:18, 6:1,
7:13, 7:18,
35:5, 35:15,
36:18, 37:10,
37:22, 39:4,
39:10, 39:12,
40:20, 40:22,
41:14, 41:15,
42:18, 42:19,
43:13, 45:20,
46:5, 47:17,
47:21, 49:11,
56:21, 57:2,
57:7, 60:19,
63:9, 63:11,
63:17, 67:9,
68:5, 68:6,
68:20, 70:18,
73:16, 73:17,
73:19, 75:10,
75:11, 75:16,
75:18, 75:19,
78:20, 80:9,
127:7, 129:17,
130:18, 135:5,
135:6, 136:5,
141:6, 141:12
**chen's**
5:21, 6:10,

8:2, 14:20,
40:2, 41:3,
41:5, 41:12,
43:1, 45:21,
113:15
**childish**
21:11
**chime**
47:6
**chimed**
111:16
**chose**
25:2
**christina**
132:7, 132:9,
133:17
**christina's**
132:10, 134:16
**circumstances**
41:5
**cite**
26:4, 27:2,
110:21
**civil**
2:8
**claim**
42:3, 56:5
**claimed**
38:4
**claiming**
65:5
**claims**
39:4, 42:3
**clarified**
102:17
**clarify**
76:17, 76:20,
101:8, 102:6
**clarity**
101:9
**clattenburg**
3:23, 5:1,
34:4, 34:8,
34:12, 44:18,
45:4, 45:18,
46:4, 46:9,
49:12, 49:19,
49:22, 50:2,

50:17, 50:20,
51:6, 51:12,
51:17, 51:20,
52:4, 52:7,
53:5, 53:19,
54:2, 54:7,
54:12, 54:17,
55:7, 55:17,
55:21, 56:12,
57:1, 57:6,
57:13, 57:17,
58:1, 58:6,
58:11, 58:16,
59:1, 59:7,
59:10, 60:4,
60:8, 60:22,
62:11, 62:18,
62:21, 63:8,
72:10, 73:9,
73:15, 73:21,
74:3, 74:6,
74:9, 74:12,
74:17, 76:5,
76:8, 76:12,
76:16, 76:19,
78:12, 83:10,
127:17, 139:11,
141:28
**clear**
17:6, 46:10,
50:6, 50:15,
78:19, 91:11,
92:13, 92:14,
92:20, 93:3,
93:7, 94:10,
94:16, 96:18,
103:12, 106:6,
106:16, 116:4,
130:17
**clearly**
88:7, 89:21
**clickbait**
15:13, 16:19,
25:5, 25:18,
27:12, 42:11
**client**
17:22, 28:10,
84:15, 84:17,

94:5
**client's**
18:1, 27:11,
35:17, 113:20
**clients**
22:2, 35:2,
125:14, 125:15
**clue**
91:21
**co-counsel**
63:5
**code**
39:1, 39:22,
42:4, 42:5,
64:3, 68:21,
104:6, 104:9,
108:9
**codes**
11:1, 42:3,
42:6, 42:7,
51:14, 51:15
**colleagues**
12:3, 68:9
**collect**
65:6, 65:12,
121:10, 127:1
**collected**
14:19, 15:4,
36:8, 36:9,
43:18, 64:8,
65:8, 65:13,
67:17, 67:20,
71:13, 74:13,
75:9, 75:14,
78:18, 124:8,
124:9, 124:13,
124:14, 127:6,
127:8
**collecting**
14:16, 127:2
**collection**
68:10, 77:3,
126:6
**collectively**
91:3
**collegial**
21:18
**combination**
130:1

**come**
62:1, 121:21
**comes**
48:8
**coming**
50:8, 118:19,
125:17, 128:20
**comment**
92:11
**commentary**
75:21
**commenting**
84:21
**comments**
90:22, 101:6,
101:18, 102:4,
102:10, 103:8,
103:15, 103:20,
105:7, 105:11,
107:8, 108:8,
108:11, 109:17,
112:8, 128:11
**commitment**
60:14, 60:17
**commits**
101:6, 101:16,
101:18, 103:8,
103:15, 103:21,
104:5, 104:6,
104:8, 104:17,
105:12, 109:16,
109:17
**communicate**
120:6
**communication**
13:5, 41:2
**communications**
36:16, 37:7,
38:19, 39:3,
39:4, 39:5,
39:19, 40:22,
41:7, 41:9,
41:11, 41:22,
42:13, 42:16,
79:5, 79:6,
85:16, 89:6,
119:20, 120:8
**compel**
7:5, 36:14,

36:20, 37:4,
37:17, 44:7,
44:12, 51:1,
56:14, 65:18,
65:20, 114:19,
118:15, 118:22,
122:2
**complaint**
39:7, 40:1
**complete**
36:16, 37:6,
47:22, 48:1,
48:2, 48:14,
49:3, 49:5,
49:11, 113:17
**completed**
113:19
**completely**
21:21
**completes**
16:3
**completion**
5:13, 34:19,
48:12, 48:13,
77:20, 81:6
**compliance**
38:10
**comply**
5:12, 28:18
**complying**
68:12, 75:18,
75:19
**computer**
41:11
**concerning**
38:19, 39:3,
39:4, 39:19,
41:9, 41:22,
42:2, 42:16,
119:20
**concerns**
85:2
**conclude**
13:3, 27:16,
122:20
**concluded**
140:8
**conclusion**
118:8

**condoned**
21:13
**conducted**
121:5, 124:4,
124:19, 124:22
**confer**
1:19, 5:3,
7:15, 8:20,
8:22, 9:5, 9:12,
17:14, 17:15,
20:12, 21:4,
21:7, 21:10,
22:13, 22:18,
23:13, 23:15,
24:8, 28:4,
28:8, 28:20,
29:2, 29:8,
29:16, 30:5,
30:8, 30:10,
31:15, 31:16,
31:18, 33:8,
33:11, 33:17,
33:20, 38:3,
39:14, 60:10,
61:11, 61:14,
61:21, 62:8,
62:10, 64:8,
68:18, 81:1,
99:1, 99:19,
104:22, 106:4,
108:21, 114:3,
123:11, 129:7,
138:5, 140:8,
141:19
**conferred**
34:3, 44:8
**conferring**
9:22, 23:10,
24:1
**confers**
6:12, 7:7, 9:9,
23:22, 36:22,
47:2, 63:20,
69:5, 72:16,
77:15, 139:16
**confident**
125:21
**confines**
136:4

**confirmation**
6:21, 55:18,
69:15, 84:4,
85:7, 85:12
**confirmed**
85:9
**conflate**
68:9
**confused**
86:7, 109:3
**confusing**
102:14
**conjunction**
18:17
**connected**
133:2
**consenting**
82:1
**consider**
97:4
**considered**
27:14
**considering**
43:17
**consolidation**
78:14
**constant**
13:5
**constricted**
127:7
**contain**
112:18
**contained**
112:1, 112:8,
121:2
**contains**
106:20, 111:3
**content**
121:1, 121:15
**context**
120:1, 121:1
**contexts**
32:8
**continue**
33:19, 112:22
**control**
41:3
**convened**
62:8

**conversation**
89:19, 90:19,
95:9, 95:17
**conversations**
83:19, 87:22,
96:7, 98:4, 98:5
**convincingly**
64:20
**cooperative**
21:18
**copy**
22:10, 141:30
**correct**
37:5, 95:11,
99:17, 102:3,
106:19, 107:2,
107:13, 108:18,
110:17, 111:11,
112:16, 115:14,
116:21, 124:15,
124:16, 125:8,
128:4
**corrected**
27:21, 35:22,
99:16, 102:15,
102:17, 107:12,
107:13, 109:2,
111:6, 112:11,
112:13, 112:19,
113:1, 113:13,
117:7, 122:11
**correcting**
110:4, 111:9,
117:1, 117:8
**correction**
100:5, 108:19,
109:5
**corrections**
122:20
**corrective**
27:5
**correctly**
103:16, 104:20,
116:3
**correspondence**
42:12, 85:8
**could**
9:9, 10:3,

10:8, 25:9,
25:10, 26:15,
29:11, 61:4,
61:5, 85:22,
86:1, 93:12,
99:20, 107:2,
107:10, 120:15,
121:13, 121:14,
131:10, 139:1
**couldn't**
8:22
**counsel**
36:22, 37:1,
40:13, 100:16,
111:7, 118:7,
125:17, 142:2
**counsel's**
119:19, 122:21,
123:19
**couple**
52:18, 78:13
**course**
91:19, 134:5
**court**
1:1, 4:6, 7:4,
9:17, 9:21,
10:11, 13:20,
14:17, 20:21,
21:14, 24:19,
26:6, 26:9,
26:14, 26:20,
27:6, 27:22,
28:17, 29:13,
30:15, 36:6,
37:15, 44:3,
44:11, 54:19,
65:7, 72:18,
74:19, 75:3,
79:19, 99:8,
100:13, 101:12,
102:12, 102:16,
102:18, 105:13,
106:17, 106:18,
107:1, 107:7,
108:15, 108:16,
108:20, 109:2,
110:16, 113:10,
116:17, 118:18,

128:7, 128:15,
140:4, 140:7,
141:1
**court's**
97:12
**courtesy**
47:10
**cover**
32:13, 71:3
**covered**
32:5, 48:7
**covers**
92:3
**created**
68:21, 104:9
**creation**
72:9
**credentials**
22:1
**crenny**
3:22, 8:12,
11:12, 11:17,
14:6, 14:10,
16:6, 16:12,
17:2, 17:17,
18:6, 18:12,
18:20, 19:1,
19:3, 19:20,
20:3, 20:7,
20:11, 20:15,
20:20, 22:16,
23:3, 23:6,
23:18, 24:17,
25:21, 26:3,
26:11, 26:18,
28:15, 29:7,
29:10, 30:13,
30:18, 31:1,
31:8, 31:12,
32:4, 32:16,
32:22, 33:5,
33:9, 33:12,
33:18, 34:7,
94:17, 95:1,
95:4, 95:7,
95:12, 99:4,
100:16, 100:22,
101:2, 103:3,

106:13, 107:6,
108:3, 109:20,
110:1, 110:12,
113:22, 114:7,
114:10, 116:7,
116:11, 117:21,
118:2, 123:4,
123:7, 124:3,
124:12, 124:18,
125:5, 125:14,
127:14, 128:16,
128:20, 132:4,
140:2
**cross**
78:10
**crossing**
48:8
**crossroads**
76:1
**crr**
1:30
**crypto**
38:21
**csr**
1:30, 2:4,
142:13
**current**
71:9, 81:12
**currently**
16:4, 64:13,
94:4
**custodial**
141:28
**custody**
41:3
**cut**
14:22
**cutting**
30:17
**cv**
1:9, 141:9

**D**

**damages**
39:5
**damned**
21:10
**data**
8:2, 14:20,

40:3, 41:8,
41:10, 43:3,
50:18, 51:10,
69:7, 70:8,
70:9, 71:12,
74:22, 121:17
**database**
69:9
**date**
42:19, 48:18,
55:15, 60:15,
64:5, 64:16,
66:18, 67:11,
67:14, 68:2,
70:15, 71:7,
80:6, 84:5,
85:11, 86:13,
99:10, 100:11,
126:5, 126:15,
142:14
**dated**
7:20, 37:4,
39:14, 47:3,
67:21, 132:16,
132:18
**dates**
69:14, 77:18,
93:9
**dating**
68:6, 69:3,
70:14
**david**
5:8, 5:21, 8:2,
10:15, 10:18,
13:17, 14:20,
15:19, 19:14,
22:11, 24:21,
27:1, 29:19,
30:20, 32:1,
35:10, 36:17,
37:8, 37:22,
39:10, 41:3,
41:5, 41:12,
41:13, 43:1,
45:21, 49:17,
50:8, 50:11,
50:12, 64:9,
71:12, 73:12,

78:13, 79:12,
83:18, 85:9,
88:3, 88:19,
89:9, 90:1,
90:2, 91:19,
91:22, 92:21,
95:9, 95:17,
95:20, 100:14,
101:16, 102:3,
102:6, 102:10,
103:14, 104:11,
106:10, 106:20,
110:21, 111:2,
111:8, 113:15,
115:7, 119:3,
119:20, 120:8,
121:1, 122:6,
123:17, 136:5,
136:10, 139:22
**david's**
6:14, 8:4,
12:10, 14:21,
15:4, 20:10,
27:9, 32:17,
32:19, 36:10,
36:15, 36:22,
38:20, 38:22,
39:20, 39:21,
42:12, 85:6,
88:9, 88:16,
88:22, 89:11,
90:8, 90:16,
91:17, 94:14,
96:7, 96:8,
101:12, 102:16,
108:4, 110:13,
112:21, 114:13,
116:10, 120:10,
121:12, 123:22
**day**
81:17, 81:18,
105:9, 142:9
**days**
119:9, 119:11
**dc**
3:28
**deadline**
5:12, 34:18,

35:3, 37:11,
38:6, 44:16,
45:21, 53:4,
53:15, 55:10,
65:3, 75:4,
75:5, 75:6,
77:21, 79:20,
81:17, 81:18,
82:11
**deadline's**
81:8
**deadlines**
44:4, 81:21
**deal**
77:14, 79:21,
102:22
**dealing**
45:9, 76:4,
126:7
**dealt**
38:1, 76:3,
88:6, 103:9,
105:14, 105:22,
106:2, 135:20
**debugging**
42:10
**december**
13:4, 14:4,
22:7, 66:9,
71:16
**decided**
74:21
**declaration**
41:12, 110:13,
110:20, 110:21,
114:14, 116:10
**declarations**
13:19, 15:18
**declined**
7:18, 131:8
**declining**
33:18
**defendant's**
113:14
**defendants**
1:15, 3:20,
38:21, 40:21,
141:15

**definition**
71:5
**delay**
19:9, 36:13
**delayed**
64:14
**delete**
25:3, 83:21,
84:5, 85:13,
85:15, 85:19,
88:20, 88:22,
89:2, 89:14,
90:1, 90:2,
90:9, 91:13,
91:15, 93:2,
94:3, 94:6,
94:12, 95:14,
96:11, 98:12,
119:3
**deleted**
10:15, 10:18,
10:21, 11:18,
14:13, 16:1,
16:17, 16:18,
19:14, 19:15,
19:16, 24:21,
30:3, 30:22,
32:2, 96:7,
104:16, 108:11,
116:20, 117:5,
118:9, 119:9,
119:10, 120:12,
120:20, 121:16
**deletes**
84:12, 91:16
**deleting**
32:20
**deletion**
40:3, 41:9
**deletions**
13:17, 29:19,
118:8, 118:11,
118:21
**delivered**
141:28
**demand**
72:4, 126:20

**deposing**
31:9, 31:10
**deposition**
13:18, 15:18,
17:1, 17:6,
17:9, 18:7,
19:19, 20:2,
20:6, 22:8,
25:20, 26:1,
26:4, 26:8,
26:15, 26:21,
27:5, 27:20,
28:1, 28:7,
29:22, 30:21,
32:1, 32:5,
38:1, 83:19,
83:22, 88:7,
88:11, 91:11,
92:10, 92:12,
93:21, 94:9,
101:13, 101:16,
102:1, 103:10,
104:19, 105:2,
105:4, 106:6,
106:9, 106:14,
109:18, 112:21,
119:8, 119:10,
119:12, 124:1,
136:10, 136:13,
137:2, 139:21
**depositions**
26:20
**described**
121:9, 122:22,
123:19
**describes**
128:4
**description**
114:22, 137:11
**deserve**
13:1
**deserving**
104:22
**destroy**
92:22, 93:1
**determine**
93:8
**determined**
15:15

development
42:7, 67:6,
135:4
device
40:4, 41:2
dicharia
3:24, 83:14,
86:19, 86:22,
87:9, 91:4,
91:6, 93:4,
94:2, 129:2,
130:16, 130:20,
131:15, 131:20,
132:6, 132:11,
132:19, 133:12,
134:5, 134:17,
136:21, 137:4,
137:18, 138:17,
138:21, 139:1,
139:5, 139:9
different
10:19, 11:15,
11:17, 25:8,
32:8, 32:9,
56:3, 67:1,
96:16, 133:5
difficult
29:13, 53:11,
110:9
dig
21:20
digital
134:13, 135:13
direct
7:12
directly
59:16, 108:20
disable
83:21
disabled
85:9
disagree
9:19, 12:16,
12:17, 72:11,
81:19, 82:6,
92:7, 92:11,
97:1, 99:14,
106:3, 106:4,

112:10, 122:17
disagreeing
99:12
disagreement
26:7, 63:16,
103:13, 105:1
disagrees
12:14, 12:18
disappearing
6:17, 83:17,
84:9, 84:11,
85:10
discerned
119:19
disclose
7:14
disclosed
121:10
discord
7:11, 10:20,
12:10, 14:21,
15:5, 30:22,
32:3, 36:10,
36:16, 37:7,
42:11, 42:12,
43:2, 64:9,
74:22, 78:9,
79:6, 79:7,
121:12, 121:17,
126:3, 129:5
discoverable
97:10, 97:17
discovery
28:21, 34:19,
37:12, 38:6,
41:19, 44:4,
45:22, 53:7,
56:22, 60:19,
63:17, 65:21,
66:2, 68:20,
73:18, 81:6,
81:7, 98:19,
106:5, 112:20,
113:1, 113:4,
113:20, 116:19,
136:3
discuss
5:3, 5:7, 5:11,

5:20, 6:6, 6:14,
7:2, 7:10, 7:21,
8:7, 16:8,
45:13, 62:6,
64:5, 75:13,
83:11, 99:19,
100:4, 109:9,
118:4
discussed
53:7, 63:18,
72:15, 126:17,
131:1
discussing
11:1, 53:16
discussion
46:10, 61:15,
92:15, 93:16,
93:18, 99:5
discussions
92:16, 97:15
disingenuous
30:12, 58:20,
88:10
dispute
9:16, 10:14,
11:8, 24:20,
101:5, 106:5,
138:6, 138:7
disputed
26:12
disputes
28:18, 28:21
disputing
35:6
distinguishing
35:21
district
1:1, 1:2,
21:14, 141:1,
141:2
docket
39:16, 110:18,
111:2
document
5:13, 34:13,
34:19, 35:18,
36:18, 37:12,
38:6, 41:15,

45:19, 46:2,
46:22, 47:21,
56:2, 56:8,
60:19, 63:12,
70:1, 70:4,
73:11, 73:13,
73:16, 75:18,
80:10, 80:12,
81:6, 101:11,
130:3
documents
5:19, 6:1,
35:4, 35:7,
35:9, 35:13,
35:20, 36:1,
36:2, 36:4,
37:19, 37:20,
37:22, 39:18,
40:6, 40:18,
40:22, 41:4,
41:6, 41:8,
41:10, 41:14,
41:22, 42:5,
42:7, 42:8,
42:13, 42:15,
43:2, 43:14,
44:15, 48:13,
48:22, 50:8,
50:11, 50:12,
50:21, 64:9,
64:12, 64:15,
64:18, 65:1,
65:6, 65:12,
65:16, 66:5,
66:14, 68:5,
73:2, 73:18,
74:2, 75:19,
77:19, 78:17,
79:4, 80:3,
80:8, 82:9,
99:9, 110:16,
113:7, 121:11
doing
12:21, 18:4,
25:14, 28:3,
53:16, 55:10,
72:9, 75:7,
90:15, 97:9

Transcript of Meet and Confer
Conducted on September 22, 2025

47

done
23:17, 26:17,
27:8, 27:15,
44:17, 53:2,
53:3
dotting
48:7
double
48:5
down
29:3, 32:18,
57:21, 129:13,
130:7, 134:13,
134:14
downloaded
71:14
downloading
12:9
draft
137:21
drive
135:15, 142:16
drop
47:12, 60:10
duck
42:9
due
6:4, 6:11,
41:20, 57:11
dumb
21:4
during
19:19, 20:2,
20:6, 36:22,
38:2, 91:8,
106:9
duties
85:6
duty
96:2, 113:2

**E**

e
8:17
e-mail
7:19, 8:3, 9:2,
21:5, 21:10,
23:19, 45:2,

45:11, 46:16,
80:15, 84:6,
85:8, 99:9,
100:10, 100:20,
110:6, 111:14,
111:18, 112:1,
112:9, 115:11,
115:18, 115:20,
115:22, 116:5,
116:14, 117:9,
117:18, 122:16,
131:4, 131:9,
131:17, 131:18,
132:2, 132:20,
133:4, 133:6,
133:8, 133:17,
134:8, 134:21,
135:2, 136:1,
137:21, 138:13
e-mailed
49:15
e-mails
8:18, 12:7,
36:11, 59:11,
59:20, 69:3,
72:17, 77:15,
88:6, 113:9,
132:16
e-n-t
105:8
e-n-t-s
102:10, 107:8,
108:8, 108:11
each
5:6, 11:3,
18:15, 20:19,
23:2, 33:4,
39:6, 51:5,
54:11, 57:19,
58:15, 59:9,
60:3, 60:16,
61:3, 74:5,
74:15, 76:14,
77:14, 99:17,
109:9
earlier
9:6, 36:6,
44:8, 66:12,

67:16, 69:14,
111:16, 123:11
early
64:1
east
3:15
easy
105:20
ec
110:4
ecf
14:18, 34:22,
36:8, 37:2,
39:17, 47:2,
100:12, 101:10,
102:2, 102:9,
106:16, 110:3,
112:12, 112:13,
116:15, 116:22,
117:2, 117:8,
118:17, 139:14
ecf--5
41:12
ecf--6
110:14, 114:14,
115:8
ecfs
112:6
edgewise
61:6
editing
42:14
effectively
103:9
efficiency
78:15
efficient
109:1
effort
120:9
efforts
28:21, 41:7
eight
14:19
either
7:1, 35:7,
61:21, 72:21,
83:4, 120:5,

120:6, 125:19,
130:8
electronically
8:16, 24:22
element
9:19
elements
10:5, 10:6
else
13:13, 36:11,
49:7, 72:3,
72:4, 136:17,
140:5
else's
108:19
emma
3:33
employed
142:2
employee
142:5
enabled
6:17, 6:21,
85:13
end
14:22, 97:18,
109:2, 122:7,
122:13
ended
67:14, 126:12
ends
52:18
engage
33:19
enough
64:1, 69:12,
123:4
ensure
48:5, 52:20
entered
34:22, 68:3,
86:15, 87:5,
88:1
entertain
28:17
entire
14:21, 15:4,
17:12, 21:1,

Transcript of Meet and Confer
Conducted on September 22, 2025

48

22:14, 36:10,
43:1
**entirely**
48:1, 48:2,
49:4, 67:1
**entirety**
48:12, 126:2
**entitled**
99:14
**ephemeral**
88:15, 88:17,
94:13, 94:15,
98:2
**error**
101:14
**especially**
110:19
**esquire**
3:5, 3:12,
3:13, 3:22,
3:23, 3:24
**essentially**
48:5
**establish**
10:7, 24:4
**established**
53:15, 55:10
**establishes**
87:7
**estate**
1:5, 40:2,
40:20, 141:5
**estimate**
13:8
**estimated**
77:18
**even**
10:2, 14:11,
15:2, 26:8,
38:16, 41:18,
43:11, 50:6,
58:14, 65:1,
77:8, 80:5,
90:6, 109:17,
119:8, 121:16,
125:5
**eventual**
136:9, 136:12

**ever**
94:7, 113:7
**every**
13:6, 21:5,
21:10, 39:7,
61:12
**everybody's**
97:11
**everyone**
83:14, 93:20
**everyone's**
91:16
**everything**
36:11, 43:22,
51:13, 52:17,
57:8, 67:18,
68:13, 69:13,
69:16, 69:18,
69:20, 71:3,
72:6, 72:7,
76:2, 77:4,
79:7, 79:12,
115:4, 126:18,
127:2
**evidence**
5:9, 8:16,
38:2, 85:4,
90:10, 119:4,
120:13, 121:2
**exactly**
52:19, 53:1,
69:21, 107:10,
134:19
**examiner**
8:1
**example**
134:7, 137:9
**except**
40:14
**exchanges**
23:20
**excuse**
37:2, 119:11,
123:5
**execution**
40:2
**exhibits**
4:7

**exist**
16:2
**existed**
14:14
**expansion**
126:8
**expect**
61:12, 121:19
**expected**
113:13
**expiration**
142:14
**explain**
17:18, 25:22,
64:16, 72:20,
94:21, 95:2,
106:22
**explained**
66:3, 66:19,
116:16
**explaining**
53:8
**explanation**
8:4
**extend**
75:4, 75:5
**extended**
67:12, 82:11
**extending**
81:21
**extension**
6:3, 41:20,
77:5, 79:19,
82:6
**extent**
93:14, 93:17
**extremely**
94:9

**F**

**face**
17:7
**fact**
6:18, 15:12,
16:1, 16:2,
18:13, 43:4,
48:3, 49:1,
52:14, 81:7,

**fen**
1:4, 6:6, 37:1,

90:15, 98:13,
115:5, 119:3,
122:17, 126:14
**failed**
65:18
**failure**
5:12
**fair**
123:4
**faith**
22:4, 28:20,
33:21, 34:1,
120:9
**fall**
92:2
**false**
7:2, 99:7,
99:15, 100:4,
100:13, 102:12,
116:22, 118:5
**familiar**
95:4, 100:12
**far**
16:8, 35:18
**fax**
142:20
**february**
12:11, 36:7,
42:20, 63:14,
63:18, 64:4,
64:17, 64:21,
65:21, 66:17,
67:10, 68:6,
70:15, 70:17,
97:7, 121:6,
121:11, 124:5,
124:21, 125:2,
126:5, 126:9,
126:13, 127:3,
127:6
**federal**
2:7
**feel**
72:2, 100:4,
125:20, 136:8
**feels**
81:20

37:9, 40:13,
46:1, 46:22,
50:7, 113:14,
122:6, 129:17,
141:4
**fen's**
5:8
**few**
10:18, 23:16,
32:8, 134:7,
134:8, 134:10
**fide**
8:21
**figure**
71:10, 78:8,
130:9
**figured**
90:3
**figuring**
78:8
**file**
44:11, 108:18,
111:6, 112:11
**filed**
30:14, 39:16,
100:13, 101:11,
113:9, 114:20,
131:6, 131:7
**filing**
8:10, 106:16,
106:18, 108:18,
108:19, 111:10,
113:7, 115:15,
116:16
**filings**
72:18, 110:5,
110:13, 112:17,
117:1
**filter**
21:9
**finally**
67:13
**financial**
50:18, 51:10,
79:4
**financially**
142:6
**find**
93:17, 110:3,

113:7, 131:18
**fine**
11:16, 11:19,
26:5, 30:6,
82:4, 82:20,
82:21, 83:5,
97:3, 128:18,
131:19, 137:17,
138:3, 139:4
**finger**
107:17, 107:20,
109:22
**finish**
23:4, 128:8
**finished**
18:20
**firestone**
3:25, 3:34
**firm**
59:12, 142:15
**first**
5:5, 5:7, 8:9,
10:13, 10:19,
16:15, 18:18,
18:19, 34:16,
39:8, 45:1,
45:16, 45:19,
50:14, 63:4,
78:13, 79:22,
82:17, 87:19,
100:12, 101:2,
102:20, 103:1,
103:5, 106:7,
106:8
**five**
45:1, 45:15,
46:15, 80:20,
128:16
**fix**
107:4
**flagged**
25:15
**flip**
26:8
**floor**
3:8
**floyd**
3:33

**focus**
67:18
**folks**
130:5
**follow**
96:14
**follow-up**
131:11, 131:13,
132:20, 134:9,
134:10, 135:12
**following**
37:21, 45:13,
99:5, 121:8,
141:24
**foolish**
105:19
**footnote**
116:15, 116:16,
117:2
**foremost**
87:19
**forensic**
8:1
**forever**
64:14
**forget**
48:18
**form**
89:8
**forth**
11:11, 98:14
**forward**
69:1, 69:2,
77:16, 114:4,
124:2, 138:14
**found**
75:2, 100:19,
120:22, 123:9,
123:10
**four**
46:15, 82:13
**framework**
105:3
**free**
136:8
**friday**
34:17, 35:2,
38:13, 44:16,

113:18
**front**
86:17, 99:11,
110:7, 110:10,
130:3
**full**
28:4, 71:11,
77:3, 97:18,
117:10
**fully**
84:8, 104:20
**function**
88:9, 90:3,
105:12
**funds**
42:9
**further**
84:21, 87:2,
113:8, 142:1,
142:4
**future**
139:16

**G**

**gathered**
12:4
**gave**
106:18
**getting**
12:5, 38:15,
67:12, 77:3,
136:22
**git**
104:5, 104:6,
104:8
**github**
42:13, 42:15,
79:2, 101:19,
101:20, 101:22,
108:6, 108:9,
108:12, 114:15,
114:19, 114:22,
115:2
**give**
12:22, 47:10,
55:13, 55:14,
75:7, 100:3,
127:12, 134:1,

**134:6, 134:19**
**given**
21:16, 138:1
**giving**
127:19
**global**
116:18
**go**
5:5, 10:4,
11:13, 19:2,
23:5, 24:2,
24:4, 24:15,
25:9, 44:10,
58:18, 61:22,
73:3, 74:18,
74:19, 83:8,
83:12, 89:9,
95:3, 97:3,
98:13, 99:18,
100:1, 100:2,
101:4, 103:1,
105:10, 114:11,
117:13
**goes**
103:18, 109:18,
134:13, 134:14
**going**
5:9, 8:11,
10:2, 11:13,
12:12, 14:7,
16:4, 16:14,
19:3, 21:15,
24:11, 25:13,
25:16, 25:17,
30:14, 31:2,
32:7, 32:22,
34:14, 35:14,
47:5, 47:12,
49:3, 49:6,
51:7, 54:18,
54:20, 55:2,
55:4, 55:5,
55:14, 55:18,
57:9, 58:3,
58:5, 58:8,
58:10, 60:15,
60:17, 62:9,
63:8, 65:10,

68:1, 69:13,
69:21, 70:8,
70:11, 71:19,
72:4, 72:7,
73:3, 73:9,
74:18, 77:22,
78:2, 79:10,
80:22, 81:14,
81:22, 83:11,
86:16, 89:16,
97:6, 99:18,
100:2, 101:4,
105:20, 105:21,
108:16, 110:8,
112:4, 116:12,
118:19, 118:20,
118:22, 124:2,
125:7, 125:8,
126:20, 126:21,
126:22, 130:14,
130:22, 136:18,
138:12
**gone**
14:2
**good**
14:2, 28:20,
33:21, 34:1,
69:12, 90:14,
120:9
**gotten**
5:16, 5:17,
6:13, 6:20,
35:19, 37:19,
40:16, 40:17,
43:7, 49:20,
56:2, 56:7,
78:19, 78:20,
80:12
**gratefully**
82:11
**greatest**
22:1
**guess**
10:5, 44:10,
79:18, 137:7
**gui**
19:17, 20:6,
25:6

**guys**
12:7, 13:11,
18:3, 21:12,
28:13, 31:18,
31:19, 54:18,
54:19, 54:20,
63:10, 70:16,
71:7, 78:1,
84:6, 84:8,
84:14, 84:20,
89:17, 93:12,
93:20, 97:2,
99:2, 105:19,
107:22, 108:2,
109:12, 126:19,
137:1, 139:21

**H**

**half**
16:5, 65:5,
75:2
**handle**
5:10, 8:11
**handling**
8:1, 130:5
**hands**
107:10
**happened**
8:5, 86:13,
124:13, 127:22
**happening**
13:2, 44:1
**happens**
19:11, 84:12
**hard**
47:9, 79:3
**hashtag**
11:3, 11:5,
11:6
**head**
86:16
**headline**
46:11, 46:12
**hear**
126:21, 126:22
**heard**
52:17, 77:13,
79:15, 123:16

**hearing**
36:7, 78:16
**heels**
21:20
**held**
136:14
**hell**
42:10
**help**
28:14
**helped**
102:3
**helpful**
5:4, 87:1,
139:16, 140:1
**here**
10:19, 24:1,
24:10, 24:11,
25:13, 25:18,
44:5, 49:4,
82:4, 86:4,
91:1, 92:18,
94:18, 96:8,
97:5, 98:10,
101:4, 101:20,
110:19, 111:13,
114:12, 125:18,
134:19
**hereby**
141:24
**herein**
141:31
**hereto**
2:9
**hey**
9:18
**hi**
8:12, 83:14,
129:3
**hiccup**
19:9
**highly**
8:5
**history**
14:21, 15:5,
36:10, 42:13,
42:15, 43:2,
79:2

**hit**
70:1, 70:4
**hits**
64:3
**hold**
33:2, 80:17,
105:10, 107:17,
132:8
**holding**
122:7
**honest**
52:5, 52:12
**hope**
7:13, 13:3,
113:17
**hopefully**
78:3
**horrible**
12:20
**host**
135:14
**hosts**
134:13
**however**
16:2, 67:22,
109:6, 113:4
**hungerford**
142:16
**hyphen**
11:7

**I**

**identifying**
15:22
**identities**
120:2
**identity**
85:18
**immediately**
13:11
**impasse**
114:12
**implausible**
8:6
**implies**
116:20, 117:3,
117:4, 123:13
**importance**
12:22

**important**
118:13, 122:10
**importantly**
110:13
**imposition**
9:12
**improper**
82:5
**inaccuracies**
110:5, 112:19,
113:8
**inaccurate**
27:10, 88:10,
88:11, 112:14,
112:18, 119:6,
119:15, 122:1
**inclined**
136:7
**include**
126:9, 136:8
**included**
77:20, 119:18,
136:1
**including**
14:20, 91:17,
121:11
**income**
39:22, 42:6,
51:13
**incomplete**
119:6
**incorrect**
30:11, 50:4,
50:16, 52:13,
52:14, 107:6,
111:11, 120:16
**incredibly**
59:13
**index**
4:1
**individuals**
85:18
**information**
24:22, 68:5,
87:2, 91:10,
93:2, 93:5,
93:10, 93:13,
94:4, 94:6,

97:11, 111:3,
112:18, 115:1,
118:11, 119:19,
121:21, 127:19,
130:2
**initial**
67:15, 126:6
**initially**
40:10, 103:15
**inquiries**
136:7
**inquiry**
136:2, 136:9
**instance**
42:1, 79:1
**instead**
137:7
**institutional**
12:2, 15:11
**instructs**
89:9
**intentionally**
25:1, 29:20,
30:3, 30:21,
32:2, 32:20
**interested**
23:10, 142:7
**interject**
86:1
**interrogatories**
5:22, 113:15,
113:16, 129:18,
129:19, 136:5
**interrupt**
19:6, 23:7,
34:15, 76:22,
77:1
**interrupting**
29:12, 33:13,
33:14
**interrupts**
19:8
**invitation**
81:9
**involved**
16:4, 92:18,
120:3
**involvement**
68:16

**isolation**
108:14
**issue**
8:9, 8:13,
16:9, 18:5,
18:19, 21:5,
22:15, 25:1,
26:9, 31:4,
32:12, 33:1,
33:20, 34:10,
34:16, 34:17,
62:12, 63:15,
68:22, 75:20,
80:1, 80:5,
98:22, 104:21,
106:3, 110:1,
111:17, 111:20,
116:12, 117:19,
128:10, 137:5
**issues**
5:3, 9:7,
10:10, 20:21,
23:21, 24:3,
24:16, 26:14,
29:2, 31:19,
31:20, 31:21,
32:5, 32:8,
34:2, 34:13,
38:20, 43:16,
45:9, 60:11,
62:9, 85:2,
102:21, 109:10
**items**
45:11, 47:18,
48:6, 52:2,
52:21, 70:3
**itself**
17:4, 18:7,
92:10, 106:19

**J**

**january**
6:12, 39:15,
40:12, 47:2,
50:22, 53:8,
62:15
**job**
1:27, 52:8,

106:21
**john**
38:21
**joint**
37:2, 37:3,
77:11, 118:17
**jointly**
34:21
**josh**
19:18, 20:1,
20:3, 22:10,
30:20, 31:22,
68:8, 88:3,
88:14, 89:4,
92:15, 104:4,
106:10
**josh's**
32:20, 94:11,
94:20
**judge**
27:6, 28:16,
68:2, 70:22,
71:1, 77:5,
78:3, 81:13,
81:14, 81:20,
82:2, 105:16,
105:21, 105:22,
106:1, 139:15
**judge's**
81:9
**judges**
21:15
**judgment**
110:22
**july**
15:20, 16:19,
19:17, 27:2,
27:4, 32:1,
38:1, 88:4,
98:1, 136:14
**jump**
39:21
**jumped**
102:3, 102:6
**jumping**
94:18
**june**
12:1, 35:10,

46:20, 68:16,
118:10, 118:12,
118:20, 119:3,
119:14, 119:16,
120:18, 121:22,
122:1, 122:3,
122:10, 122:18,
122:19, 122:22,
123:13, 123:20,
124:6, 125:9,
125:11, 126:1,
127:10
**justify**
70:14
**justin**
3:24, 69:1,
83:11, 83:12,
83:15, 86:6,
87:16, 129:3,
133:9

---

### K

**keep**
80:14, 91:20,
113:6, 117:22,
128:7, 136:18
**kept**
67:12
**kevin**
3:22, 5:9,
8:11, 8:12,
11:19, 14:8,
15:8, 17:20,
18:16, 19:18,
20:1, 20:22,
22:22, 23:19,
25:12, 31:5,
31:15, 32:18,
33:17, 36:5,
60:7, 68:8,
68:22, 69:1,
94:18, 96:20,
100:17, 124:10,
139:9
**kevin's**
132:2
**kind**
43:9, 123:14

**knew**
98:6, 98:8
**know**
8:19, 9:10,
10:6, 12:7,
12:15, 13:11,
13:22, 14:3,
15:6, 16:2,
16:7, 17:13,
17:22, 22:7,
24:3, 25:7,
32:6, 32:12,
36:5, 42:22,
43:6, 43:10,
44:1, 44:14,
52:10, 52:11,
52:13, 54:12,
55:14, 58:14,
66:16, 69:12,
70:9, 71:17,
72:13, 75:16,
78:1, 81:15,
84:12, 85:14,
86:5, 87:2,
87:16, 90:5,
90:10, 90:11,
91:21, 92:11,
93:6, 93:19,
94:3, 95:21,
96:6, 97:14,
99:14, 101:22,
102:1, 102:16,
102:17, 103:19,
105:5, 106:2,
107:1, 107:9,
108:22, 110:6,
110:10, 112:14,
114:18, 114:21,
118:18, 119:13,
120:7, 121:18,
123:9, 124:12,
125:16, 125:20,
127:14, 129:6,
130:12, 133:15,
133:18, 137:10,
137:12, 138:16
**knowing**
77:8

**knowledge**
12:2, 12:17,
15:12, 89:1
**known**
123:12

---

### L

**l-a-m-o-u-r**
132:12
**lack**
43:9
**lamoureux**
132:11
**language**
102:16
**largely**
113:12
**last**
28:16, 45:15,
72:11, 77:6,
81:3, 87:17,
132:10
**lastly**
7:21
**late**
86:18
**later**
39:11, 64:5,
80:4, 83:5,
88:21, 105:10,
130:9
**law**
21:12
**lawsuit**
40:2
**lead**
47:5
**learned**
38:13, 64:7,
119:2, 127:21
**least**
5:18, 10:8,
10:20, 15:3,
36:3, 38:7,
42:21, 43:8,
71:2, 98:4,
113:5, 137:1
**leaving**
82:16

lecture
59:18
lectured
29:21, 60:9
lecturing
59:2, 60:2,
60:6
ledyard
3:6, 12:3
length
63:19
lengthy
133:8, 134:20
lentz
3:13
less
115:8
let's
25:18, 60:10,
80:15
letter
118:6, 118:10,
118:12, 118:19,
119:14, 119:16,
120:18, 121:22,
122:1, 122:3,
122:5, 122:10,
122:22, 123:5,
123:13, 123:20,
124:6, 125:11,
126:1, 127:10,
127:18, 128:3
letters
112:21, 113:9,
118:5, 122:19
letting
118:18
levy
3:25, 3:34
li
1:4, 5:8, 6:6,
36:22, 37:9,
40:13, 46:1,
46:22, 50:7,
113:14, 122:6,
129:17, 141:4
liberty
3:7

lift
22:10
light
47:4, 113:2
likely
9:14, 120:12
limit
20:21, 24:19
limited
10:3
line
24:14, 24:15,
104:7, 104:11,
104:13, 104:15,
104:18, 108:14
lines
88:13, 89:11,
94:11, 98:10,
104:2
liquidations
11:7
liquidator
42:4
liquidator"
11:4
list
5:5, 7:10,
7:18, 10:13,
70:1, 70:5,
100:10, 109:6,
129:5, 129:8,
129:14, 130:18,
131:3, 137:6,
138:12
listed
45:11
listen
81:2
listening
47:11, 99:2,
124:11
litigate
31:21
litigation
135:4, 136:11
little
9:17, 19:9,
34:14, 43:12,

47:7, 106:8,
118:3, 118:4
llc
1:12, 1:13,
141:12, 141:13
llp
3:14, 3:25,
3:34
located
131:14
long
36:1, 72:8,
114:18, 128:8
long-running
32:6
longer
16:1, 109:11
look
9:18, 22:9,
26:7, 26:15,
28:16, 61:9,
95:13, 118:16,
119:8, 138:14
looked
87:1, 87:18,
105:10
looking
25:22, 85:1,
85:7, 85:12,
85:17, 87:15,
95:13, 110:8,
119:18, 129:10
loss
40:3, 40:19
lost
10:15, 11:9,
15:15, 15:16,
16:17, 18:8,
19:15, 86:9
lot
14:8, 32:13,
43:16, 46:19,
47:16, 47:18,
66:13, 72:15,
75:17, 91:1,
121:18, 126:4,
135:8, 135:19
lots
47:1, 48:21

| M |
| --- |

machine
2:6
madam
140:6
made
29:19, 42:2,
43:18, 48:17,
50:6, 50:15,
51:13, 59:8,
66:12, 73:17,
81:10, 99:8,
104:9, 104:12,
104:13, 108:8,
118:5
maggie
138:1, 138:9,
138:14
make
9:15, 9:16,
44:21, 46:14,
46:17, 64:2,
69:6, 69:17,
70:5, 70:8,
70:11, 80:20,
97:2, 97:3,
105:17, 109:15,
115:18, 116:4,
126:16, 134:3
maker
42:5
maker"
11:5
makes
16:9, 121:22
making
47:18, 49:7,
52:16, 53:11,
64:10, 69:19,
87:4, 90:22,
115:13
malfunction
41:2
manner
21:12
many
5:19, 9:7,

Transcript of Meet and Confer
Conducted on September 22, 2025

54

37:20, 44:8,
61:19, 64:3,
64:17, 66:3,
120:11, 135:9
**market**
11:5, 42:5
**maryland**
1:2, 21:14,
141:2
**match**
70:3
**material**
10:15, 10:18,
25:4, 25:5, 25:6
**matter**
52:14, 97:16,
97:21, 119:21,
119:22
**matters**
91:9
**maybe**
71:8, 118:3,
118:4, 129:20,
129:22, 139:14
**md**
3:17, 142:18
**mean**
35:16, 42:3,
43:6, 53:20,
54:3, 54:8,
55:3, 58:19,
61:10, 61:11,
61:19, 62:7,
62:22, 63:3,
71:1, 76:13,
78:18, 79:17,
79:18, 106:13,
110:2, 113:22,
123:7, 127:17,
137:4, 138:8
**meaning**
25:1
**means**
7:4, 48:21,
54:4, 54:13,
55:4, 55:8, 57:9
**meant**
106:18, 124:19

**meet**
1:19, 5:2,
6:12, 7:7, 7:15,
8:20, 8:21,
8:22, 9:5, 9:9,
9:12, 17:14,
17:15, 20:12,
21:4, 21:6,
21:9, 22:13,
22:18, 23:12,
23:14, 23:22,
24:8, 28:4,
28:8, 28:19,
29:1, 29:8,
29:11, 29:16,
30:5, 30:7,
30:10, 31:14,
31:15, 31:17,
33:8, 33:11,
33:17, 33:20,
34:3, 36:21,
38:3, 39:14,
47:2, 60:10,
61:10, 61:14,
61:20, 62:8,
62:10, 63:20,
64:7, 66:16,
68:18, 69:5,
72:16, 77:15,
81:1, 98:22,
99:19, 104:22,
106:3, 108:21,
114:3, 123:11,
129:7, 138:5,
139:16, 140:8,
141:19
**meeting**
9:22, 23:10,
24:1
**mention**
6:3
**mentioned**
39:10, 41:17,
47:15, 48:16,
52:19, 113:11
**merely**
65:6
**merit**
81:21

**meritful**
66:4
**message**
18:18
**messages**
6:17, 7:12,
12:11, 15:13,
16:18, 19:16,
20:6, 21:4,
30:22, 32:3,
32:21, 42:9,
78:9, 83:17,
84:9, 84:11,
84:13, 85:10,
86:8, 91:7,
91:16, 91:20,
92:1, 93:9,
95:21, 95:22,
119:11, 119:17,
119:21, 120:1,
120:2, 120:3,
120:4, 120:11,
120:19, 120:20,
120:22, 121:5,
121:7, 121:15,
121:16, 123:10,
124:4, 124:9,
124:20, 125:1,
126:3, 127:22,
128:12, 128:13
**messaging**
6:18
**met**
44:7
**michael**
3:13, 24:14
**middle**
13:3, 71:16,
89:20
**might**
9:11, 9:14,
9:20, 10:9,
11:14, 11:21,
16:13, 21:22,
22:2, 47:6,
93:22, 99:22,
110:2, 114:12
**mind**
125:11

**mingsan**
1:5, 141:5
**minute**
16:8, 134:2
**minutes**
45:1, 45:16,
58:5, 75:5,
80:21, 82:13,
128:17
**miscellaneous**
134:12, 135:13
**misleading**
102:13, 108:15
**misled**
84:18, 109:3
**misrepresentation**
106:20
**misrepresentatio-
ns**
106:19
**misrepresents**
116:17
**missed**
45:21, 65:2
**missing**
5:19, 45:19,
52:3
**mo**
20:18, 21:1
**mode**
88:15, 88:18,
88:20, 94:13,
94:15, 95:15
**modification**
81:11
**modify**
77:17
**modus**
17:11
**moment**
44:19, 52:15,
101:7
**money**
22:3
**month**
124:8, 129:9
**months**
16:5, 65:6,

Transcript of Meet and Confer
Conducted on September 22, 2025

55

75:3
**more**
10:17, 14:19,
50:9, 61:14,
68:19, 71:10,
89:15, 91:9,
109:1, 115:7,
118:3, 118:4,
126:11, 127:7
**morning**
45:2, 82:17,
87:19
**morning's**
46:15
**most**
35:4, 65:15,
74:21, 110:13,
129:21
**motion**
5:8, 7:5, 8:10,
8:14, 9:20,
10:1, 10:7,
20:12, 22:13,
22:18, 22:20,
23:9, 24:19,
27:19, 36:19,
37:4, 37:17,
44:11, 51:1,
56:14, 65:18,
65:19, 77:17,
99:21, 100:1,
110:21, 114:19,
118:15, 118:22,
122:2, 122:8
**motions**
44:7
**motivation**
18:1
**move**
23:13, 30:6,
31:3, 32:11,
33:1, 63:9,
66:6, 66:22,
77:16, 80:19,
80:22, 99:4,
114:4, 137:14
**moved**
36:14, 65:20,

78:14
**moving**
34:9, 34:12,
79:19, 80:14,
128:7
**msol**
42:5
**much**
109:1, 139:18
**multiple**
33:13, 35:8
**muse**
3:25, 3:34
**myself**
88:18, 91:3,
94:15, 95:18,
98:2
**mystery**
135:18, 137:9

**N**

**name**
6:19, 132:10
**name-calling**
59:8, 59:11
**names**
59:4
**narrow**
29:3
**nature**
119:21
**nauseam**
11:22, 99:2,
126:17
**nd**
81:17, 82:8,
132:17, 132:20,
134:8, 134:16,
136:1
**necessarily**
48:21, 61:12,
62:7, 103:4,
129:12
**necessary**
27:15, 68:19,
107:16, 109:5,
125:10
**need**
10:6, 17:5,

17:19, 17:20,
18:3, 21:6,
21:9, 22:12,
28:3, 34:2,
49:8, 60:7,
62:22, 63:4,
72:5, 80:4,
91:9, 93:5,
93:10, 94:3,
105:16, 109:7,
110:20, 112:10,
113:6, 118:4,
133:19
**needed**
23:22
**needs**
60:7, 66:20,
72:22, 76:3,
107:11, 107:12
**negligence**
25:2
**neither**
142:1
**never**
5:15, 37:12,
40:16, 53:15,
55:9, 56:2, 56:7
**new**
3:9, 5:18,
14:15, 15:13,
16:19, 25:5,
27:12, 35:19,
35:20, 36:2,
42:10, 42:11,
43:7, 62:14,
113:7, 129:13,
136:2, 136:7
**news**
121:3
**next**
7:22, 8:8,
16:12, 18:5,
19:4, 19:12,
22:15, 23:13,
23:16, 24:17,
31:3, 32:12,
34:9, 83:8,
83:11, 99:6,

102:1, 102:18,
110:1, 114:10,
116:12, 116:13,
117:14, 118:2,
129:4, 137:14,
137:19
**nodding**
117:11
**noise**
132:14
**none**
97:11
**nonissue**
98:21, 106:12
**nonprivileged**
39:3
**noon**
128:21
**normal**
26:20
**note**
30:7, 30:10,
122:15
**nothing**
13:1, 51:7,
87:20, 116:20,
117:5, 118:9
**notice**
111:10
**noticed**
53:14
**notify**
100:13
**november**
56:15, 81:8,
132:18
**number**
5:3, 39:17,
40:11, 47:3,
51:22, 99:13,
129:22
**numbered**
2:2
**numbers**
25:19, 84:1,
110:6, 110:15,
112:12
**nw**
3:26

## O

**o'clock**
47:9, 58:4
**object**
38:18
**objected**
40:10
**objectionable**
108:2
**objections**
35:11, 39:11,
39:13, 47:1
**objects**
89:8
**obligated**
111:5
**obligation**
99:17
**obligations**
84:16
**obscure**
90:10, 93:1
**obtained**
42:6, 51:15
**obviously**
12:20, 18:4
**ocean**
134:13, 135:14
**october**
40:8, 46:21,
56:13, 68:22,
69:3, 69:6,
69:14, 70:13,
71:9, 123:10
**odds**
52:18
**offer**
21:20
**offered**
63:21
**offline**
63:7
**oh**
15:16, 55:19
**okay**
14:6, 14:10,
16:6, 16:11,

18:12, 19:1,
19:3, 19:20,
22:16, 24:17,
26:19, 30:13,
30:18, 32:16,
34:4, 34:8,
44:20, 46:3,
46:13, 53:19,
54:21, 55:1,
55:7, 55:19,
55:21, 56:20,
57:3, 57:6,
57:11, 60:8,
61:22, 64:2,
69:5, 73:20,
74:6, 78:12,
80:21, 83:6,
83:13, 86:21,
87:9, 95:7,
99:4, 100:22,
101:3, 106:13,
107:22, 109:20,
110:11, 111:14,
113:22, 114:7,
114:10, 116:7,
116:11, 117:21,
118:2, 122:15,
124:18, 125:5,
130:21, 132:22,
133:6, 134:19,
136:21, 137:4,
137:16, 138:20,
138:22, 139:3,
139:9, 140:3
**once**
50:10, 54:22,
69:20, 109:8
**one**
3:15, 5:6,
11:4, 11:5,
19:4, 26:11,
34:1, 52:1,
54:21, 61:14,
62:9, 69:2,
69:4, 70:16,
78:14, 81:5,
82:14, 83:4,
83:11, 84:10,

84:13, 86:1,
86:4, 88:8,
95:8, 99:6,
100:6, 101:2,
103:1, 103:5,
105:20, 107:18,
114:8, 114:11,
117:14, 118:3,
118:14, 119:19,
127:16, 128:10,
128:12, 129:21,
132:5, 132:16,
132:17, 133:17,
134:11, 136:14,
139:13, 139:14
**one's**
110:3
**one-by-one**
11:13, 25:9,
100:3
**ones**
56:11, 72:11,
108:17, 117:22,
124:13
**ongoing**
6:15, 13:15,
49:9, 97:15
**only**
11:22, 14:14,
14:15, 37:14,
38:13, 43:14,
68:21, 81:10,
84:10, 92:13,
92:17, 93:5,
138:11, 138:18
**onward**
42:20, 64:5
**open**
133:1
**operandi**
17:11
**operating**
22:3
**opined**
8:4
**opinions**
12:22
**opportunity**
21:17

**oppose**
65:18, 77:22,
78:2, 82:3, 92:8
**opposed**
109:17
**opposing**
26:21
**opposition**
66:2
**options**
138:1
**order**
6:16, 28:16,
34:21, 37:15,
38:11, 48:11,
65:20, 68:1,
68:12, 68:14,
77:6, 77:17,
84:3, 85:3,
86:10, 86:15,
87:5, 88:1,
90:8, 90:12,
90:17, 91:15,
92:3, 92:5,
92:21, 93:10,
96:3, 96:17,
98:18, 98:20,
126:8
**orders**
28:19, 44:3,
139:15
**oregon**
82:17
**original**
141:27
**other**
6:22, 11:14,
18:15, 20:19,
22:19, 23:2,
23:8, 27:8,
27:21, 33:4,
38:19, 39:2,
39:18, 39:22,
40:4, 48:16,
48:18, 51:5,
54:11, 57:19,
58:15, 59:9,
60:3, 60:16,

61:3, 74:5,
74:15, 76:14,
77:14, 85:13,
85:16, 97:4,
99:9, 109:9,
113:8, 117:1,
117:7, 120:2,
120:19, 120:21,
126:4, 128:5,
133:5
**otherwise**
142:7
**otter**
1:12, 6:7,
141:12
**ottersec**
10:22, 14:13,
38:20, 39:19,
39:20, 104:10,
108:9
**ottersec's**
39:1, 39:20
**out**
15:10, 15:12,
24:11, 25:2,
31:15, 33:15,
57:20, 57:21,
70:16, 71:10,
72:3, 72:5,
73:4, 73:8,
77:8, 77:9,
78:8, 84:19,
91:11, 100:18,
103:16, 114:21,
116:3, 121:22,
123:9, 130:9
**outcome**
142:7
**outside**
77:15, 136:4
**over**
18:15, 20:19,
23:2, 33:4,
51:5, 54:11,
57:19, 58:15,
59:9, 60:3,
60:5, 61:3,
74:5, 74:15,

76:14, 110:8,
114:20, 129:9,
130:22
**overkill**
17:10, 22:14
**overly**
72:21
**owe**
35:4, 52:22
**owed**
48:6
**owes**
40:5, 73:12,
73:16
**own**
27:11, 72:9,
77:17, 81:22,
120:10

---
**P**
---

**page**
4:2, 22:10,
25:19, 27:9,
38:4, 44:21,
45:8, 46:7,
84:1, 88:13,
89:4, 89:12,
94:10, 98:10,
102:2, 102:18,
104:2, 108:4,
108:5
**pages**
1:28, 39:15,
87:18, 88:2,
103:10, 105:17
**paper**
28:5, 28:6
**papurt**
6:20, 83:20,
85:11, 88:22,
89:1, 89:6,
90:12, 93:22,
94:1, 96:10,
97:15, 98:6,
98:8
**paragraph**
112:9, 116:5,
116:8, 116:13,

117:8, 117:17,
122:16, 122:20,
135:21
**paragraphs**
114:14, 115:9,
115:13, 116:9,
134:9
**paralegal**
3:33
**parameters**
56:6, 89:22
**part**
16:22, 17:13,
17:15, 21:11,
22:12, 30:12,
42:21, 53:10,
67:5, 67:15,
68:4, 69:4,
70:21, 78:15,
81:1, 89:6,
97:21, 98:22,
99:21, 105:18,
115:20, 126:6,
136:9, 137:10
**participants**
120:3
**participated**
15:19
**participating**
24:13, 33:21,
33:22
**particular**
67:7
**particularly**
79:3, 118:12,
122:9
**parties**
9:18, 26:21,
42:19, 93:6,
113:3, 141:31,
142:3
**party**
28:18
**passed**
79:20
**past**
34:17, 44:22,
50:10, 61:20,

77:14, 124:8
**peltier**
1:30, 2:4,
141:22, 142:13
**people**
10:22, 26:20,
54:22, 104:10
**percent**
78:6
**perfect**
93:10
**period**
22:4, 28:4,
63:17, 64:20,
65:21, 66:2,
67:10, 67:19,
67:20, 70:18,
91:8, 92:2,
97:18, 116:19,
135:5, 135:6
**periods**
80:4
**person**
91:12, 95:8,
137:22
**personal**
39:1, 39:22
**personally**
59:13, 59:21
**perspective**
12:6, 107:16
**pertains**
113:1
**philip**
6:20, 83:20,
85:11, 88:22,
89:1, 89:13,
90:1, 90:4,
90:11, 93:21,
95:10, 95:17,
95:19, 95:22,
96:6, 96:10,
97:15, 96:5,
98:8, 98:12,
98:14, 98:15
**philip's**
90:2
**phone**
8:2, 8:5, 40:4,

41:6, 41:8,
41:10, 142:19
**phonetics**
38:22
**picked**
126:15
**piece**
114:18
**place**
48:11, 87:6,
87:22, 90:6,
90:19, 92:16,
93:16, 93:19,
113:12
**plaintiff**
1:8, 14:18,
35:17, 38:17,
40:5, 40:9,
40:20, 50:7,
141:8
**plaintiffs**
3:3, 43:2,
113:16, 136:5
**plan**
44:14
**planning**
77:7
**pleadings**
112:17, 112:20,
113:9
**please**
19:5, 23:3,
29:11, 34:14,
47:10, 53:6,
76:16, 76:19,
133:10
**plotnick**
3:5, 12:3,
36:5, 40:13,
47:13, 49:18,
49:21, 50:1,
50:3, 50:19,
51:4, 51:9,
51:16, 51:19,
51:22, 52:6,
52:9, 53:12,
53:21, 54:4,
54:9, 54:15,

55:1, 55:9,
55:19, 56:10,
56:20, 57:3,
60:21, 61:2,
61:4, 61:8,
62:16, 62:20,
63:2, 82:22,
85:22, 86:3,
86:21, 87:3,
87:11, 127:11
**plotnick's**
75:9
**plucked**
70:16
**point**
9:22, 13:10,
15:2, 15:9,
15:10, 15:12,
23:20, 26:10,
30:20, 31:9,
33:15, 45:19,
66:15, 67:7,
67:22, 69:7,
71:11, 72:11,
75:22, 77:4,
81:3, 81:9,
86:11, 91:12,
93:22, 96:19,
100:18, 103:16,
105:15, 106:15,
116:3, 120:16,
123:7, 125:12
**pointed**
84:19, 91:10
**pointing**
114:20
**points**
45:2, 45:17,
47:6, 99:13,
128:5
**poor**
58:20
**portion**
101:12, 118:15
**position**
10:9, 15:5,
15:9, 19:21,
34:5, 57:7,

64:13, 66:8,
66:11, 77:9,
91:7, 91:18,
92:5, 92:7,
92:8, 93:3,
93:7, 93:8,
93:11, 96:16,
99:15, 112:1,
114:6, 115:10,
115:11, 115:16,
115:17, 116:6,
117:10, 117:13,
117:19, 123:2,
123:3, 123:21,
124:1, 124:2,
127:18, 133:21,
134:4, 137:14
**possession**
41:3
**possible**
116:4, 123:8
**post**
68:13
**post-october**
70:4
**postdates**
98:19
**potential**
6:22, 85:14,
85:17
**potentially**
85:4, 114:11
**practicing**
21:12
**pratt**
3:15
**pre-october**
70:2
**predicament**
71:20, 81:12
**prepared**
27:5, 55:13,
138:9
**preparing**
113:6
**present**
3:31
**presented**
10:10

**preservation**
6:16, 68:1,
68:4, 68:9,
68:12, 68:14,
84:3, 84:16,
85:3, 85:6,
86:10, 86:15,
87:5, 88:1,
90:8, 90:12,
90:16, 91:14,
92:2, 92:5,
92:21, 96:3,
96:17, 97:7,
98:18, 98:20,
108:6, 126:6,
126:8
**preserve**
91:20, 96:2
**preserved**
14:19, 15:6,
36:9, 43:19,
119:18, 121:7,
121:9
**preserving**
68:13, 96:1
**presumably**
75:15
**presume**
27:17
**presumed**
135:3
**pretty**
10:12, 90:14,
125:20
**previous**
69:5
**previously**
14:17, 75:14,
99:1, 127:6
**primarily**
21:19
**printout**
107:21
**prior**
70:13, 72:16,
75:22, 110:5,
123:12
**pro**
135:14, 135:17,

135:18
**probably**
75:15, 82:15,
112:3
**procedure**
2:8
**proceeding**
48:19, 138:1
**proceedings**
2:1, 4:4,
141:25, 141:26
**process**
12:8, 13:8,
13:14, 16:3,
16:8, 48:3,
49:6, 49:10,
52:16, 69:19,
75:1, 77:2,
113:12, 113:19,
127:4, 139:2,
140:1
**processed**
71:14, 78:10
**processing**
12:9
**produce**
35:1, 35:12,
38:12, 49:9,
50:21, 51:7,
52:8, 58:9,
75:8, 130:14
**produced**
35:6, 36:2,
37:21, 41:13,
41:14, 41:21,
47:19, 49:1,
49:8, 49:16,
56:5, 56:6,
57:8, 75:15,
130:13, 130:14
**producing**
37:5, 38:18,
51:2, 53:9,
70:14
**production**
5:14, 5:16,
5:17, 6:1, 6:8,
6:9, 6:10,

34:13, 35:9,
35:19, 35:20,
36:15, 37:9,
38:15, 40:7,
47:17, 47:21,
48:9, 48:15,
49:3, 49:5,
49:11, 50:14,
56:18, 63:12,
65:2, 73:17,
78:21
**productions**
35:22, 37:13,
43:5, 45:20,
46:2, 48:17,
56:9, 73:12,
73:14, 73:16,
75:18, 78:20,
79:11, 79:12
**productive**
59:16
**productively**
31:3, 32:11,
32:15
**professional**
21:17, 59:18
**professionals**
18:3
**prognostication**
13:7
**proof**
27:3
**proper**
81:4, 138:5
**properties**
40:1
**property**
39:2
**proportional**
66:20, 72:14,
72:22
**proportionality**
64:22, 70:13,
71:5
**propose**
137:22
**proposed**
34:21, 138:13

**prosecuting**
43:11
**provide**
28:19, 48:11,
53:6, 55:4,
70:1, 93:12,
93:16, 130:1,
131:8, 131:11,
133:22
**provided**
13:20, 52:17,
52:22, 67:17,
131:5, 133:16
**provisions**
2:8
**pull**
132:9
**pulling**
123:5
**purporting**
118:7
**purpose**
25:1, 31:17,
60:12, 61:10
**pursuant**
2:7, 112:12
**put**
59:19, 107:10,
107:17, 107:20,
109:21
**putting**
73:10

---
**Q**
---

**question**
13:12, 13:14,
19:13, 20:1,
22:6, 22:11,
22:12, 24:8,
24:18, 29:5,
31:6, 31:13,
32:20, 45:5,
45:6, 47:20,
61:13, 88:2,
88:8, 89:3,
89:10, 92:15,
93:22, 94:10,
94:11, 94:20,

96:9, 96:15,
96:19, 96:21,
97:19, 104:5,
121:21, 133:10,
135:16
**questions**
7:17, 7:19,
19:19, 20:2,
20:4, 22:19,
23:8, 23:16,
31:2, 32:11,
118:21, 121:19,
131:2, 131:6,
131:8, 131:11,
131:14, 132:21,
133:15, 133:22,
134:9, 134:11,
135:11, 135:12,
135:22, 136:8,
136:20, 136:22,
137:7
**quick**
135:1
**quickly**
107:21, 114:11,
134:20
**quiet**
30:19
**quote**
8:5, 8:6, 38:9,
84:20, 101:15,
102:8, 108:13,
112:11
**quoted**
102:2
**quoting**
101:10, 101:12,
108:4, 108:5

---
**R**
---

**rachel**
3:23, 5:2,
12:14, 12:15,
16:7, 21:6,
21:19, 23:20,
34:9, 46:18,
47:15, 49:13,
50:5, 57:12,

Transcript of Meet and Confer
Conducted on September 22, 2025

60

57:21, 61:2,
61:9, 66:21,
69:11, 76:15,
76:18, 76:21,
80:17, 83:7,
88:5, 127:15,
128:11, 139:10,
139:20, 141:28
**raise**
19:5, 107:14,
108:20, 116:13
**raised**
46:20, 64:17,
66:4, 72:13,
72:14, 77:5,
81:16, 109:10,
111:17, 117:20
**raising**
19:10, 61:13,
61:16, 61:17,
62:5, 63:3,
123:12
**ran**
67:11
**random**
124:13
**range**
126:9, 126:12
**rate**
80:2
**rather**
110:19, 136:8
**rationale**
67:7
**rc**
1:13, 6:8,
40:15, 56:17,
141:13
**rd**
47:3, 68:3,
90:7, 90:20,
98:21, 125:9,
142:9
**re-collect**
126:18
**re-export**
74:22
**reach**
10:8, 68:17,

69:13, 71:22,
72:2
**reached**
40:12, 77:8,
77:9
**reaching**
118:8
**reaction**
95:2
**read**
45:10, 77:13,
88:14, 88:17,
89:4, 89:12,
89:16, 94:12,
94:14, 95:14,
95:18, 98:7,
98:10, 103:18,
103:22, 104:5,
104:7, 104:8,
104:11, 104:13,
104:15, 104:16,
104:18, 108:1,
108:6, 111:13,
112:2, 112:8,
114:1, 115:17,
115:18, 122:21,
134:12, 135:21,
139:21, 140:2
**reading**
15:1, 88:11,
110:9, 139:14
**reads**
135:21
**ready**
36:4, 38:15,
77:19
**realized**
79:22
**really**
28:13, 59:2,
59:19, 70:12,
81:15
**realtime**
2:5
**reason**
8:21, 65:10,
75:7, 89:13,
90:4, 90:5,

98:11, 138:11,
138:18
**reasonable**
68:19, 126:11
**reasons**
114:21
**reassuring**
85:5
**recall**
53:15, 86:14
**recap**
63:15
**receive**
138:15
**received**
6:2, 7:16,
37:13, 50:11
**receiving**
50:12, 138:14
**recent**
112:21, 129:21
**recently**
8:3, 121:10
**recklessness**
25:2
**recommend**
28:15
**record**
2:9, 24:3,
24:4, 54:20,
87:7, 100:15,
100:18, 102:4,
112:3, 115:3,
115:19, 115:20,
116:4, 117:12,
140:5, 141:26,
142:6
**recover**
41:8
**recovered**
10:16, 11:9,
16:18, 18:9,
19:16
**recovery**
8:2
**refer**
9:4, 39:6,
72:18, 94:8

**reference**
135:1
**referenced**
40:1
**references**
47:1
**referred**
37:22, 127:10
**referring**
51:10, 56:21,
73:14
**refers**
86:12
**refile**
107:2
**reflect**
28:20, 39:5
**reflects**
102:9, 117:18
**refrain**
84:21
**refusing**
22:17, 23:12,
29:8, 29:16,
30:4, 30:5,
33:3, 33:8,
33:10, 33:16,
115:14
**regard**
57:16, 82:7,
103:7, 109:8,
111:20, 112:6,
113:19, 115:15
**regarding**
8:14, 84:16,
84:18, 108:6,
114:13, 135:13
**regardless**
96:4
**registration**
142:15
**reiterate**
123:19, 133:10
**relate**
104:6
**related**
41:1, 142:2
**relating**
42:14

**relative**
142:5
**relativity**
12:10, 69:8,
69:9, 71:15
**relevance**
70:12, 71:4,
97:10, 119:17,
121:7, 127:20,
128:4
**relevancy**
97:5
**relevant**
38:18, 64:19,
66:5, 66:19,
67:10, 67:19,
70:18, 72:13,
72:21, 116:21,
117:5, 118:9,
119:4, 120:12,
121:1, 121:2,
135:5, 135:6
**relied**
120:15, 120:18
**remainder**
52:21
**remaining**
135:22
**remember**
53:16
**remind**
40:9, 65:17,
131:13, 132:9
**removal**
38:22, 41:10
**reneged**
37:16
**reopened**
7:8
**repeat**
45:5, 73:3
**repeatedly**
66:3
**report**
37:3, 118:17
**reported**
1:29, 2:6
**reporter**
2:5, 29:14,

54:19, 105:13,
128:7, 128:15,
140:4, 140:7,
141:23
**reporter's**
4:6, 141:18
**reprehensible**
18:2
**represent**
136:2
**representation**
17:21, 64:10,
107:7
**representations**
7:3, 43:17,
66:13, 68:21,
99:8, 119:14
**represented**
36:6, 43:1,
43:15, 45:16,
65:7
**reprocess**
75:1
**request**
5:22, 6:3, 6:7,
6:8, 6:10,
46:22, 56:18,
76:2, 77:5,
77:11, 78:21,
81:4, 81:11,
81:22
**requested**
37:8
**requesting**
69:22
**requests**
35:8, 36:18,
37:9, 39:18,
40:7, 40:11,
41:16, 42:1,
56:2, 56:8,
80:12
**require**
100:5, 122:19
**required**
112:15
**requirement**
113:5

**rerun**
69:22
**resolution**
40:12
**resolve**
9:1, 24:18,
28:21, 31:19,
31:20, 37:4,
37:17, 44:7,
99:20, 99:22,
118:14, 118:22,
122:8
**resolved**
7:6, 7:8, 9:7,
10:3, 37:18,
44:13, 56:15,
62:9, 105:1,
105:3, 106:5,
106:9, 106:14
**resolves**
96:8, 104:20,
104:21
**resolving**
122:2
**respect**
36:13, 38:9,
89:13, 98:11
**respective**
113:3
**respond**
7:19, 11:20,
11:21, 24:5,
24:6, 40:14,
52:11, 56:17,
56:19, 66:22,
80:22, 100:3,
117:11, 117:15,
122:14, 136:7
**responded**
50:4, 59:15,
64:20, 77:12,
84:6, 84:20,
99:12
**responding**
21:3, 47:5
**response**
14:5, 14:8,
18:18, 20:10,

24:6, 32:19,
49:16, 58:8,
69:10, 69:11,
73:18, 81:2,
88:16, 89:11,
91:2, 93:3,
94:14, 111:13,
111:14, 111:18,
112:8, 113:21,
114:1, 117:9,
125:22, 134:2,
134:21, 135:20,
136:20
**responses**
5:21, 6:2, 6:7,
6:9, 7:9, 40:17,
41:18, 45:22,
46:1, 53:6,
53:10, 56:1,
56:3, 56:7,
57:10, 60:18,
109:14, 112:20,
113:2, 113:4,
113:20, 133:7,
133:8
**responsibility**
107:4
**responsible**
111:9
**responsive**
35:8, 35:12,
36:15, 36:17,
37:6, 40:6,
52:8, 75:10,
80:9, 85:4,
94:20
**rest**
56:18
**restate**
133:11
**result**
136:6
**retroactively**
115:2
**returns**
51:14
**revenue**
39:21

revenues
51:14
review
9:8, 72:5,
120:19, 138:15
reviewed
128:1, 128:3
reviewing
72:6
revising
42:15
rfps
39:9
ridiculous
17:16, 17:21,
21:11, 24:10,
25:14, 28:11,
28:12
right
12:13, 17:17,
46:8, 49:10,
49:14, 62:2,
71:10, 74:7,
83:3, 83:6,
83:13, 86:16,
87:20, 89:7,
91:20, 95:9,
95:10, 95:17,
103:20, 103:21,
109:4, 111:1,
121:20, 127:19,
132:15, 132:22,
134:18
robert
1:12, 6:9,
42:16, 141:12
robert's
38:22
rockville
142:18
role
38:20, 39:20
rosenberg
3:14
round
56:1
rubber
42:9

rule
8:16
rules
2:7, 23:16,
44:5
run
139:1
running
42:6, 89:20
runs
98:19

**S**

s-o-l-e-n-d
11:7
safe
71:3
safely
27:16
said
8:18, 11:22,
13:22, 15:4,
18:17, 24:10,
28:17, 29:4,
29:5, 29:7,
29:10, 29:15,
29:16, 29:17,
36:5, 38:10,
38:14, 43:7,
44:6, 46:17,
49:6, 49:15,
50:9, 52:1,
52:15, 53:1,
53:2, 53:21,
53:22, 54:15,
56:19, 59:6,
59:20, 63:13,
64:2, 69:5,
74:18, 83:21,
86:14, 87:14,
99:1, 103:17,
107:8, 107:11,
109:17, 111:3,
111:17, 112:7,
114:2, 124:12,
124:19, 125:11,
128:12
sam
1:5, 40:2,

40:20, 141:5
same
16:13, 19:13,
22:6, 25:3,
25:10, 32:7,
44:21, 45:8,
46:7, 100:9,
100:10, 103:4,
114:12, 114:13,
116:12, 117:4,
121:8, 128:5
samsung
135:14, 135:17,
135:18
sanctions
5:8, 8:15,
9:12, 99:21,
100:1
saving
26:9
say
9:18, 16:13,
24:12, 26:6,
27:9, 27:18,
28:6, 30:4,
47:11, 48:2,
53:2, 55:2,
57:22, 59:12,
59:17, 61:9,
61:21, 63:3,
63:22, 68:2,
71:18, 73:10,
74:20, 79:13,
79:17, 80:21,
81:5, 81:15,
82:4, 87:3,
89:18, 97:6,
105:13, 107:7,
108:1, 109:16,
120:17, 124:4,
125:9, 125:19,
128:10, 129:19,
138:4, 138:12
saying
8:19, 23:4,
56:16, 57:18,
62:2, 62:3,
62:4, 62:5,

101:8, 101:16,
102:4, 102:7,
102:10, 102:11,
102:13, 103:14,
103:18, 103:19,
103:20, 105:11,
106:21, 110:15,
110:19, 111:10,
115:7, 122:21,
124:21
says
21:6, 27:12,
47:8, 87:21,
89:4, 89:21,
95:14, 95:17,
98:1, 98:6,
98:9, 101:17,
103:22, 108:3,
108:5, 113:6,
119:16, 134:10,
135:15
scheduled
5:2, 136:11
scheduling
34:20, 38:11,
48:10, 77:17
scope
9:16, 10:3,
24:19, 24:20,
68:19, 89:22,
97:5, 97:7,
127:8
screenshotting
91:19
search
64:11, 70:3
searched
7:13, 69:7,
69:16
searching
7:12
second
5:21, 5:22,
6:7, 6:8, 6:10,
11:4, 40:6,
41:18, 45:22,
46:1, 56:1,
56:8, 86:1,

107:18, 129:20,
130:22, 132:17,
134:19
**security**
1:13, 40:15,
141:13
**security's**
6:8, 56:17
**see**
10:7, 20:20,
25:18, 28:6,
28:12, 30:16,
70:8, 80:15,
94:21, 95:1,
101:3, 107:10,
110:14, 111:22,
114:3, 117:11,
129:10, 133:20,
136:16
**seeking**
136:4
**seem**
31:18, 35:5,
48:19, 59:16,
68:9, 73:1,
79:2, 87:4,
120:14, 123:15
**seemed**
63:22
**seems**
17:10, 23:9,
44:9, 63:9,
91:11
**seen**
44:15, 102:19,
123:15
**seeping**
46:14
**send**
21:10, 59:11,
131:4, 137:20,
137:21, 138:9,
138:12, 138:13
**sense**
16:9, 79:10
**sent**
8:3, 12:8,
38:16, 45:7,

80:15, 99:9,
105:9, 111:19,
116:1, 118:7,
120:1, 120:5,
120:21, 121:6,
124:5, 124:20,
125:1, 125:22,
131:1, 134:21,
137:21, 138:2,
138:10
**separate**
68:10, 68:11
**september**
1:21, 2:2, 6:5,
9:2, 34:18,
35:3, 37:11,
38:8, 41:20,
45:12, 51:2,
51:8, 81:7,
81:11, 84:7,
132:18, 133:1,
141:20, 142:10
**series**
36:21
**serve**
113:17
**served**
7:5, 35:10,
36:20, 37:10,
39:12, 40:7,
41:15, 41:18,
41:19, 56:13,
56:14, 65:18,
73:19, 78:21,
80:11, 100:7,
114:20, 118:10,
118:16, 119:1,
141:31
**server**
14:14, 16:19,
19:17, 41:11,
42:11
**servers**
7:11, 119:22,
120:4, 120:20
**sessions**
28:20
**set**
5:21, 5:22,

39:8, 40:6,
41:18, 45:22,
46:1, 48:22,
56:8, 68:19,
71:12
**sets**
80:11
**seven**
46:15
**several**
22:19, 23:8,
67:2
**sharing**
72:12, 78:16
**shitloads**
22:2
**short**
47:20
**shorthand**
2:7, 141:22
**shortly**
86:5
**should**
12:21, 14:16,
30:1, 43:20,
54:17, 59:2,
59:17, 64:16,
65:12, 71:2,
81:15, 98:22,
100:11, 102:14,
102:21, 103:5,
109:16, 110:17,
112:3, 117:6,
128:6, 128:14,
139:21
**shouldn't**
27:10, 27:11
**show**
14:3, 25:14,
40:19, 41:4
**showing**
41:7, 42:5,
42:7, 42:8,
66:17
**shown**
141:31
**sic**
92:17

**side**
13:13, 43:12,
71:1, 84:10,
100:20, 121:3,
139:6, 139:8,
139:17
**side's**
84:13
**sides**
78:3
**signal**
6:17, 83:16,
83:19, 84:9,
84:15, 84:17,
84:18, 85:2,
85:10, 85:13,
85:16, 86:8,
88:15, 91:13,
94:13, 95:5,
99:5
**signature-mig2k**
142:11
**significant**
101:21, 118:3
**similar**
20:3, 116:12
**simms**
27:6, 28:16,
68:3, 70:22,
71:2, 77:5,
78:3, 139:15
**simple**
54:18, 117:22
**simpler**
9:17, 26:6
**simplify**
9:20, 10:9,
26:14
**simply**
110:19
**since**
5:18, 11:21,
27:4, 36:3,
43:6, 43:7,
48:17, 50:12,
50:13, 64:15,
85:8, 119:2,
121:22, 129:9

Transcript of Meet and Confer
Conducted on September 22, 2025

64

**single**
5:16, 73:17
**sir**
131:15
**sit**
49:4, 58:17
**sitting**
111:1
**situation**
105:4
**six**
46:15, 88:2
**skim**
134:2
**skip**
110:8
**small**
10:12
**smart**
21:22
**soapbox**
71:18
**solend**
42:4
**solend-liquidati-
ons**
11:6
**solve**
60:11
**some**
13:19, 15:21,
24:9, 42:17,
44:6, 67:11,
88:4, 90:3,
93:22, 98:4,
100:13, 110:5,
117:1, 124:13,
124:22, 127:21,
131:2, 131:5,
137:8, 137:11
**somebody**
19:7, 19:8,
108:19
**somehow**
63:10
**someone**
75:2, 103:13
**someone's**
132:14

**something**
25:13, 53:17,
55:11, 62:14,
62:15, 72:3,
72:4, 78:8,
93:15, 93:17,
107:3, 110:22,
130:4
**something's**
28:13
**sometime**
71:15
**sometimes**
14:1, 19:6,
19:7, 61:13
**soon**
8:10
**sorry**
15:1, 16:21,
19:14, 37:2,
54:22, 76:5,
102:5, 109:22,
119:5, 136:15
**sort**
24:9, 48:3,
48:7, 67:5,
67:14, 125:19,
133:8, 134:20,
135:2
**sound**
24:9, 49:14
**sounds**
47:17
**source**
7:18, 131:3,
135:14, 137:6
**sources**
137:11, 137:13
**speak**
55:5, 55:11,
55:20, 57:4,
58:1, 63:5,
63:6, 75:20,
83:4
**speaking**
8:13
**speaks**
17:4, 18:7,

92:10
**specific**
10:17, 52:2,
83:3, 121:19
**specifically**
51:11, 82:10,
82:20, 88:6,
90:22, 116:9
**speed**
12:5, 66:7
**spiel**
122:13
**spl-token-lending**
11:4
**split**
78:5
**splitting**
63:10
**spoken**
84:15
**spoliation**
5:9, 8:10,
8:15, 16:9,
22:18, 22:20,
23:9, 33:1, 38:2
**spring**
15:3
**st**
3:8, 68:22,
108:7, 108:10
**stand**
71:17, 125:19
**standpoint**
137:6
**start**
11:2, 35:14,
42:19, 64:5,
64:16, 66:18,
70:17, 80:6,
82:12, 101:8
**started**
65:21, 67:10,
98:20, 126:13
**starting**
68:16, 89:19
**starts**
63:17, 134:12
**state**
2:6, 141:23

**stated**
2:8, 88:5,
93:7, 121:4
**statement**
102:12, 111:2,
116:22, 125:4
**statements**
7:3, 80:20,
99:7, 99:16,
100:14, 110:15,
111:7, 112:13,
114:15, 115:12,
118:5
**states**
1:1, 141:1
**status**
37:2, 37:3,
118:17
**stenographically**
1:29
**step**
126:16
**stephen**
3:5, 12:2,
13:13, 15:10,
24:14, 27:5,
27:22, 47:4,
47:7, 47:8,
57:15, 67:2,
67:13, 75:12,
82:9, 82:19,
87:20, 91:3,
103:16, 106:10,
109:7, 125:13,
125:17, 125:18,
127:11, 129:15,
130:4, 130:8
**stephen's**
87:20, 90:21,
130:6
**steps**
7:22
**steve**
9:6, 11:20,
14:16, 15:4,
49:12, 52:5,
54:14, 56:1,
60:13, 62:12,

86:20, 89:8,
102:2, 102:5
**sticking**
114:8
**still**
13:15, 24:1,
30:17, 35:3,
49:8, 77:9,
78:19, 79:9,
79:14, 79:15,
80:2, 85:1,
99:16, 110:2,
111:1, 111:8,
112:18, 114:5,
114:6, 115:16,
116:6, 117:10,
117:12, 117:18,
123:3, 126:12,
131:22, 134:4
**stole**
42:4
**stop**
28:4, 29:11,
47:9, 58:22,
97:18, 97:22,
111:22
**stopped**
103:16
**stored**
8:16, 24:22
**story**
97:18
**straight**
89:18
**stray**
127:21, 128:12,
128:13
**street**
3:7, 3:15, 3:26
**strongly**
117:4
**stuff**
14:11, 14:12,
25:16, 32:13,
75:8, 137:20
**subject**
50:22, 56:13,
119:21, 119:22,

138:5
**submission**
27:6
**submitted**
27:22
**subparts**
135:9
**subpoena**
35:10, 36:17,
37:8, 39:12,
39:17, 46:21,
49:17
**subpoenaed**
120:21
**subpoenaing**
93:20
**subsequent**
27:22, 112:20
**substance**
136:18
**substantial**
5:13, 34:19,
48:12, 77:20,
81:5
**substantially**
35:7, 47:22,
48:14, 49:2,
49:10, 53:3,
57:8
**substantiate**
39:6
**substantive**
56:7, 60:18,
133:14, 136:13,
136:19
**substantively**
84:22
**suddenly**
74:22
**suffered**
40:19
**sufficient**
40:19, 41:4
**suggest**
9:7, 112:17,
137:20
**suggested**
128:12

**suggestion**
112:10
**suggests**
43:10, 84:14,
93:15, 93:18
**suite**
3:16, 3:27,
142:17
**summarizing**
115:8
**summary**
110:22
**summer**
114:20
**supplement**
113:3
**support**
39:6
**supposed**
23:15, 29:1,
37:16, 52:11,
82:12, 118:14
**sure**
9:8, 9:15,
17:14, 18:22,
22:7, 23:5,
26:2, 44:21,
45:5, 46:14,
46:17, 47:13,
49:7, 52:16,
60:21, 61:7,
69:18, 69:19,
74:8, 86:2,
86:4, 103:6,
123:6, 134:3,
138:6
**suspect**
70:7, 70:10
**swan**
82:2
**sworn**
111:2

| T |

**take**
16:5, 26:20,
27:18, 47:5,
54:22, 75:2,

77:7, 78:1,
81:9, 128:6,
128:9, 128:10,
128:14
**taken**
2:1, 21:19,
36:1, 94:21,
113:12, 128:22,
142:4
**takes**
61:14, 84:10
**taking**
39:2, 72:8,
90:8, 92:16,
101:7
**talk**
32:7, 34:14,
53:13, 53:17,
53:22, 54:5,
54:21, 55:16,
57:10, 58:5,
60:16, 61:17,
82:14, 82:15,
109:7, 129:15,
130:8
**talked**
25:20, 28:8,
45:15, 125:21
**talking**
18:15, 20:19,
23:2, 30:17,
32:18, 33:4,
34:2, 44:22,
46:8, 47:8,
51:5, 54:11,
56:4, 57:19,
58:15, 59:9,
60:3, 61:3,
74:5, 74:15,
76:14, 77:13,
101:20, 111:21,
136:13
**talks**
116:9
**tax**
51:14
**team**
48:4

**tech**
7:22, 137:19, 137:22
**teel**
7:22, 137:19, 137:22
**telegram**
7:11, 36:10, 36:16, 37:7
**tell**
11:13, 25:11, 49:4, 64:2, 66:10
**telling**
124:7
**ten**
45:15, 75:5
**terabytes**
14:20, 43:3
**term**
51:11, 101:21
**terms**
12:5, 47:16, 48:10, 64:3, 70:3, 70:5, 75:21, 78:8, 78:17, 85:5, 107:21, 111:13, 130:13, 135:11, 135:20
**testified**
83:18, 119:7
**testimony**
13:18, 15:19, 17:1, 17:4, 17:6, 17:9, 18:7, 22:9, 26:22, 27:3, 27:9, 27:11, 28:7, 86:12, 87:21, 88:7, 88:21, 89:16, 92:10, 92:12, 103:17, 105:6, 108:4, 109:18, 112:22, 120:10, 142:4
**texas**
2:5, 2:6,

141:23, 142:13
**text**
47:7
**th**
3:26, 6:5, 7:15, 7:20, 9:2, 10:21, 12:1, 12:12, 15:20, 16:19, 16:20, 19:17, 25:5, 27:2, 27:4, 32:1, 34:18, 34:22, 35:3, 36:7, 37:11, 38:3, 38:8, 39:15, 41:20, 45:12, 49:15, 51:3, 51:8, 56:15, 63:19, 64:7, 68:7, 68:16, 72:16, 72:17, 80:7, 80:16, 81:7, 81:8, 81:10, 81:16, 84:7, 88:4, 97:8, 97:17, 97:22, 98:1, 98:20, 100:19, 100:20, 108:7, 111:18, 111:19, 113:18, 116:1, 116:5, 117:9, 117:18, 118:10, 118:12, 118:20, 119:3, 119:14, 119:16, 120:18, 121:22, 122:1, 122:3, 122:10, 122:16, 122:19, 122:22, 123:13, 123:20, 123:22, 124:6, 125:11, 125:22, 126:1, 126:10, 126:12, 127:3, 127:10, 129:7, 131:2, 131:9, 131:17, 131:18,

132:3, 133:4, 133:6, 134:3, 136:14, 136:15
**thank**
34:15, 47:12, 62:6, 83:7, 86:6, 100:22, 139:18, 140:6, 140:7
**thanks**
47:13, 82:22, 87:9, 87:10, 91:4, 93:4, 130:16, 130:21
**therefore**
119:15, 137:12
**thing**
10:13, 14:15, 16:14, 19:12, 23:14, 82:17, 86:4, 92:14, 95:13, 97:4, 117:4, 120:15, 120:17, 123:14, 129:4, 130:22, 137:14, 137:19, 139:13
**things**
10:6, 11:11, 11:18, 14:2, 14:8, 15:22, 32:15, 39:18, 44:21, 46:19, 59:12, 67:2, 67:8, 67:19, 67:21, 70:14, 75:13, 77:14, 78:13, 80:14, 82:14, 88:4, 109:7, 109:13, 117:7, 126:4, 127:5, 127:8, 127:9, 129:14
**thinks**
12:18
**third**
11:5, 129:20
**third-party**
12:20

**thought**
5:4, 7:6, 11:14, 15:14, 18:21, 23:21, 44:12
**three**
10:20, 16:5, 16:15, 24:15, 25:4, 25:8, 25:10, 45:1, 45:16, 65:5, 75:2
**through**
5:5, 7:7, 10:4, 12:11, 14:21, 24:2, 24:16, 39:9, 42:20, 49:7, 62:9, 67:4, 67:5, 67:11, 68:7, 72:7, 74:21, 80:7, 84:1, 88:14, 89:20, 94:11, 97:8, 98:19, 99:18, 100:2, 103:2, 104:3, 105:8, 106:9, 109:18, 126:9, 127:3, 135:2
**throughout**
17:11, 18:2
**tick**
109:13, 109:14
**time**
2:3, 9:2, 15:7, 20:14, 20:16, 21:1, 25:17, 26:9, 31:15, 36:1, 54:21, 57:20, 57:21, 63:4, 65:11, 66:12, 67:19, 67:20, 69:11, 70:6, 70:21, 79:21, 87:17, 91:8, 112:5, 116:19

Transcript of Meet and Confer
Conducted on September 22, 2025

67

**timely**
79:11
**times**
32:9, 33:13,
44:8, 61:20,
66:3
**timing**
81:4
**today**
24:1, 32:13,
45:10, 55:15,
58:4, 63:4,
82:16, 83:5,
96:10, 109:10,
124:1, 130:9
**told**
14:17, 23:20,
43:21, 65:4,
67:3, 70:22,
71:1
**tomorrow**
58:8, 82:16,
83:5, 130:9
**took**
11:1, 87:6,
87:22, 90:6,
90:19, 93:16,
93:18, 108:9
**top**
86:16, 89:19,
108:8
**topic**
30:5, 46:11,
46:12, 83:9,
99:6
**totally**
15:15, 15:16
**transcript**
26:10, 27:20,
29:22, 30:14,
38:5, 39:14,
39:16, 83:22,
86:12, 87:16,
87:17, 88:12,
96:12, 101:13,
101:17, 102:9,
102:18, 103:11,
104:20, 105:2,

105:9, 106:6,
106:15, 106:22,
108:14, 108:15,
139:22, 141:25,
141:27
**transcription**
101:14
**transcripts**
9:5, 26:22,
28:19, 73:5
**transfers**
42:8, 51:18
**transperfect**
12:19, 13:6,
16:3, 67:17,
71:13
**transperfect's**
69:8
**tried**
71:22
**true**
37:5, 111:4,
141:26
**trusted**
27:10, 27:11
**try**
25:16, 60:11,
93:1, 109:12,
109:14, 126:10,
130:9, 134:2
**trying**
17:9, 19:21,
20:11, 20:14,
20:16, 24:18,
26:13, 29:2,
38:5, 46:18,
52:20, 63:22,
68:15, 68:17,
95:13, 96:9,
96:13, 108:22,
114:3, 117:21
**ts**
48:8
**turn**
84:10, 90:2,
91:12, 92:1,
95:20
**turned**
84:4, 85:15,

85:19, 88:17,
94:7, 94:15,
95:16, 95:18,
95:19, 96:5,
96:6, 96:11,
97:20, 98:2
**turning**
89:14, 92:3,
98:12, 98:14,
98:15, 98:16
**two**
11:14, 40:15,
54:22, 68:10,
68:11, 69:2,
80:11, 105:17,
130:1, 132:15
**two-person**
95:8
**tydings**
3:14
**types**
59:3, 59:10

**U**

**unable**
64:6, 64:11,
73:1
**unacceptable**
71:19
**unbelievable**
59:13, 59:19
**unclear**
106:8
**under**
8:16, 23:15,
48:19, 75:16,
90:12, 96:2,
127:7
**underlying**
110:12
**understand**
9:11, 26:15,
31:19, 36:12,
45:6, 62:16,
67:12, 80:3,
84:8, 92:6,
96:15, 96:16,
96:21, 105:16,

108:16, 115:10
**understanding**
45:9, 65:14,
70:20, 70:22,
129:16
**understood**
53:13, 96:18,
96:21, 114:2,
118:1, 139:3
**undertake**
120:9
**unfortunately**
125:18
**unique**
14:1
**united**
1:1, 141:1
**unless**
25:19, 28:18,
82:9, 91:18
**unlikely**
8:6
**unproductive**
33:19
**unprofessional**
21:21, 59:14
**unquote**
112:11
**unreasonable**
12:19
**unresolved**
80:5
**until**
14:4, 16:3,
22:7, 66:9,
67:13, 69:15,
71:15, 75:5,
119:9, 119:11
**update**
13:7, 129:11,
129:13
**upgrades**
104:6, 104:9
**upload**
77:3
**uploaded**
71:14
**uploading**
12:9

Transcript of Meet and Confer
Conducted on September 22, 2025

68

**use**
39:21, 88:9,
88:15, 88:19,
94:12, 95:14,
105:5, 105:12,
137:9
**using**
88:22, 89:1,
95:5, 96:5

**V**

**vagary**
92:17
**vagity**
92:17
**vague**
92:12
**various**
23:21, 47:6
**vendor**
12:20, 38:16
**verbs**
68:11
**verse**
103:8
**version**
111:6
**versions**
35:22, 37:6,
110:18, 112:11
**versus**
47:16, 56:21,
101:6
**via**
1:20, 84:6
**videoconference**
1:20
**violate**
91:14
**violation**
6:15, 37:14,
84:2, 86:9,
90:6, 90:7,
90:16, 92:4,
92:21, 98:16,
98:18
**voice**
19:5, 19:10

**vs**
1:10, 141:10

**W**

**wait**
65:10, 70:7,
71:19
**waiting**
66:9, 74:1,
109:13
**waived**
39:11, 66:1
**walk**
67:4, 67:5
**walked**
135:2
**walking**
24:7
**want**
5:7, 5:11,
5:20, 6:6, 7:2,
7:10, 7:21, 8:7,
8:20, 11:10,
11:21, 22:20,
24:3, 24:4,
24:9, 27:18,
31:20, 32:10,
45:12, 46:11,
46:13, 46:17,
54:20, 57:15,
57:16, 57:17,
57:21, 60:9,
61:8, 63:6,
65:17, 68:2,
69:12, 71:12,
82:4, 82:19,
89:5, 97:2,
102:22, 103:1,
105:18, 110:2,
125:9, 126:19,
128:16, 129:19,
136:16
**wanted**
10:4, 60:14,
60:16, 66:7,
72:2, 99:18,
100:21
**wants**
82:9, 90:4

**washington**
3:28
**waste**
9:1, 20:14,
20:16, 21:1,
25:17, 112:4
**way**
12:4, 14:1,
21:3, 22:4,
58:2, 63:10,
74:21, 75:7,
102:15, 105:8
**we'll**
8:7, 30:6,
31:3, 32:11,
61:22, 62:6,
69:6, 70:1,
78:7, 78:10,
100:4, 100:6,
122:3, 130:10,
130:15, 137:20,
138:15, 138:16
**we're**
9:15, 13:20,
19:20, 24:10,
24:11, 24:13,
32:7, 32:22,
34:12, 38:10,
44:21, 45:8,
46:6, 46:8,
46:14, 49:6,
52:3, 52:16,
52:19, 53:2,
58:4, 58:7,
62:14, 63:5,
65:10, 66:9,
69:13, 69:18,
70:11, 71:19,
71:20, 72:6,
72:7, 74:1,
74:18, 75:22,
76:1, 76:3,
78:2, 80:21,
85:1, 85:6,
85:11, 85:17,
96:9, 97:6,
100:2, 108:22,
114:8, 125:7,

**washington** (right col start)
125:8, 126:21,
126:22, 127:2,
129:8, 130:14,
133:18, 136:12,
138:12
**we've**
5:15, 6:20,
50:15, 56:2,
56:7, 61:20,
62:8, 65:4,
66:3, 66:18,
72:13, 72:14,
72:15, 78:19,
93:7, 96:13,
119:2, 123:9,
127:20, 130:13,
133:15, 133:16,
137:13, 140:2
**wednesday**
77:6, 81:10,
82:18, 111:19
**week**
6:4, 13:6,
28:16, 41:21,
55:15
**welcome**
91:5, 101:1
**weren't**
15:16, 30:7,
77:13
**whatever**
27:17, 52:21,
55:15, 57:9,
86:9, 89:13,
98:11, 100:10,
125:20, 130:15
**whatnot**
12:5
**whatsoever**
97:11
**whenever**
82:15, 136:10
**whether**
6:21, 13:7,
15:6, 17:22,
18:8, 23:22,
24:21, 30:21,
32:2, 45:14,

Transcript of Meet and Confer
Conducted on September 22, 2025

69

77:10, 85:7,
85:12, 94:3,
103:13, 103:14,
109:15, 115:2,
116:17
**whole**
105:8, 115:17
**wholeheartedly**
81:19, 82:6
**willing**
23:14, 29:11,
77:10, 133:21
**withdrawal**
39:13
**withdrew**
35:11, 39:11
**within**
77:20, 92:2,
105:3
**without**
63:7, 66:14,
81:22
**witness**
6:18, 103:22
**witnesses**
7:1, 85:14,
85:17
**word**
28:22, 61:5,
101:5, 107:2,
107:8
**worded**
117:3
**words**
101:9
**work**
9:9
**worked**
84:9
**working**
48:4
**works**
14:1, 84:18,
128:19
**world**
22:1
**worries**
133:13

**worth**
64:2
**wouldn't**
123:16
**wow**
55:21, 58:18
**write**
26:3
**writings**
73:6
**written**
30:1, 130:7
**wrong**
27:13, 28:13,
105:14, 124:11
**wrote**
114:18, 125:17,
129:13

---

**Y**

**yao**
1:4, 5:18,
35:4, 35:14,
36:18, 37:9,
37:10, 38:17,
38:21, 39:3,
39:12, 40:5,
40:10, 40:13,
40:22, 42:18,
42:19, 45:20,
46:4, 46:22,
47:16, 47:21,
49:11, 50:8,
56:21, 57:2,
57:7, 60:19,
67:9, 68:6,
70:18, 75:16,
75:17, 113:14,
127:7, 129:17,
135:5, 141:4
**yao's**
6:6, 37:1, 46:1
**yeah**
11:12, 17:3,
34:7, 47:15,
49:22, 53:12,
57:1, 57:3,
57:18, 62:11,

83:2, 86:6,
104:1, 109:20,
114:2, 114:9,
125:3, 130:19,
132:13, 133:3,
133:12, 134:18,
137:16, 137:18,
138:17, 139:11
**year**
9:6, 36:3,
36:6, 42:10,
43:8, 44:8,
70:16, 71:2,
80:8
**years**
36:4, 65:15
**yelled**
33:13
**yep**
87:11, 134:17
**york**
3:9
**you-all**
37:15, 42:22,
49:15
**yourself**
98:7

---

**Z**

**zoom**
1:20, 19:8

---

**.**

**.3767**
142:19, 142:20
**.6564**
3:29
**.8772**
3:10
**.9747**
3:18

---

**0**

**03**
129:1
**06**
2:3

---

**1**

**1,927**
16:18

**10**
39:15, 88:13,
94:11, 104:3,
128:22, 142:14
**100**
78:6
**10005**
3:9
**106**
39:17
**11**
2:4, 39:9,
47:9, 56:15,
82:12, 129:1
**117**
14:18, 36:8,
110:16, 111:7,
112:6, 112:12
**12**
114:14, 115:9,
115:13, 116:9,
128:21, 135:21
**120**
110:14
**1200**
3:27
**122**
110:14, 110:16,
111:1, 111:7,
112:7, 112:12,
114:14, 115:8
**125**
108:5
**126**
103:10, 108:5
**127**
103:10, 104:2,
116:15, 117:2
**129**
34:22
**13**
36:7, 39:9,
63:19, 72:16,
88:14, 94:11,
104:7, 114:15,
115:9, 115:13,
116:9, 118:10,
118:12, 118:20,

119:3, 119:14,
119:16, 120:18,
121:22, 122:1,
122:3, 122:10,
122:19, 122:22,
123:13, 123:20,
124:6, 125:11,
126:1, 127:10
**132**
139:14
**139**
37:2, 47:3,
118:17
**14**
81:8
**140**
4:5
**141**
4:6
**142**
1:28
**15**
2:4, 6:5,
41:20, 45:12,
82:12, 84:7
**155**
107:18
**157**
100:12, 101:10,
102:2, 102:9,
106:16, 107:10,
107:17, 107:21,
107:22, 110:3,
110:4, 112:13,
116:22, 117:8
**16**
9:2
**17**
3:26, 12:12,
34:22, 68:7,
80:7, 81:10,
89:12, 97:8,
97:17, 97:22,
98:10, 98:20,
104:11, 126:10,
126:12, 127:3
**18**
81:16, 89:12,

98:10, 104:13
**19**
34:18, 35:3,
37:11, 38:8,
51:3, 51:8,
81:7, 104:15
**1st**
118:6, 119:5

**2**

**2**
111:19, 133:5,
133:6
**20**
7:15, 12:1,
38:3, 63:19,
64:7, 68:16,
72:17, 82:8,
129:7, 131:2,
136:14
**20006**
3:28
**202.261**
3:29
**2020**
14:22
**2021**
12:11, 14:12,
14:16, 15:14,
43:16, 63:15,
63:18, 64:1,
64:4, 64:9,
64:17, 64:21,
65:21, 66:5,
66:10, 66:17,
67:21, 68:6,
68:22, 69:15,
70:2, 70:4,
70:13, 70:15,
73:10, 79:7,
79:8, 79:13,
80:5, 97:7,
121:15, 124:5,
124:9, 124:21,
125:2, 126:5,
126:9, 126:13,
127:3, 127:6,
127:22

**2022**
10:21, 14:13,
14:15, 14:22,
42:20, 43:21,
67:11, 70:17,
73:11, 75:9,
75:13, 80:7,
82:8, 124:15
**2023**
43:21, 67:11,
73:11, 75:10,
75:13, 80:7,
82:8
**2024**
15:1, 16:20,
16:22, 19:17,
35:11, 40:8,
42:21, 43:22,
46:20, 46:21,
67:14, 73:11,
75:10, 75:13,
80:7, 82:9
**2025**
1:21, 2:3, 7:6,
7:20, 12:1,
12:12, 13:4,
14:4, 22:7,
32:2, 34:18,
34:22, 36:20,
37:5, 37:11,
37:17, 38:1,
38:3, 39:15,
47:3, 65:19,
68:3, 68:7,
68:17, 73:11,
80:16, 88:4,
90:7, 90:20,
97:8, 97:17,
97:22, 118:6,
118:11, 118:16,
122:18, 122:19,
122:22, 123:20,
126:12, 127:4,
127:10, 129:7,
131:2, 131:9,
136:1, 141:20,
142:10
**20850**
142:18

**21**
104:18, 108:7,
108:10, 121:6,
121:11, 123:10
**212.238**
3:10
**21202**
3:17
**22**
1:21, 2:3,
81:17, 82:8,
132:17, 132:20,
134:8, 134:16,
136:1, 141:20
**23**
1:9, 47:3,
68:3, 90:7,
90:20, 98:21,
125:9, 141:9,
142:9
**25**
12:1, 38:3,
49:15, 100:19,
100:20, 111:18,
129:7, 131:2,
132:3
**26**
80:16
**27**
7:20, 10:21,
25:5, 108:7,
111:19, 116:1,
116:5, 117:9,
117:18, 122:16,
123:22, 125:22,
131:9, 131:17,
131:18, 133:4,
133:6, 134:3,
142:14
**28**
3:7, 27:9,
41:12
**29**
16:19, 19:17,
113:18, 133:5
**2a**
135:9

**3**

**3**
39:17

**30**
15:20, 16:20,
27:2, 27:4,
32:1, 38:1,
82:17, 88:4,
98:1, 136:15
**31**
68:22, 142:14
**3253**
142:13
**34**
45:3
**37**
8:17
**3rd**
56:17

**4**

**4**
82:17
**400**
142:17
**41**
3:8, 38:4
**410.752**
3:18
**45**
58:5
**451**
142:16
**4th**
7:5, 36:20,
37:5, 37:17,
40:8, 51:1,
56:13, 65:19,
118:16

**5**

**55**
111:19, 133:6
**56**
128:22
**5th**
69:3, 132:18,
133:2

**6**

**6**
111:1, 112:7,

112:12
**601093**
1:27
**62**
39:15
**65**
39:15
**686**
142:15
**6th**
35:10

**7**

**768**
19:16
**77**
83:22, 87:18,
88:13, 89:19,
94:10
**7th**
56:17

**8**

**80**
89:4, 89:12,
98:10
**82**
84:1, 87:18,
89:20
**888.433**
142:19
**888.503**
142:20
**889**
1:9, 141:9

**9**

**9**
2:3, 45:3
**900**
3:26
**901**
3:16
**980**
135:14, 135:17,
135:18