UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LI FEN YAO, as administrator of the Estate of Sam Mingsan Chen,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC,<br><br>    Defendants. | Case No. 8:23-cv-00889-TDC |
| ROBERT CHEN and OTTERSEC LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVID CHEN,<br><br>    Defendant. | Case No. 8:24-cv-03628-TDC |

**MEMORANDUM IN OPPOSITION TO THE MOTION TO MODIFY THE SCHEDULING ORDER**

Counsel for David Chen and Li Fen Yao ("David") previously told this Court that they had collected all of David Chen's ESI, including his emails, Telegram messages, X account, server, hard drives, computers, Github account, hardware wallets and authentication devices, and, notably, "David [Chen]'s entire Discord history through the end of 2024." Ex. 1, ECF 117 at 1.

At meet and confers in August 2025, David's counsel revealed that the "entire Discord history" they had collected did not include all material from 2021, Ex. 2, Tr. Meet and Confer ("M&C") at 19:3-4 (Aug. 20, 2025), even though David's counsel had known for months that

1

Robert Chen, OtterSec LLC, Otter Audits LLC, and RC Security LLC ("Robert"[1]) considered February 1, 2021, to be the start date for discovery in *Chen v. Chen*. *Id.* In these August meet and confers, David's counsel characterized David's uncollected Discord messages from 2021 as a "gap" in what they had collected, and the parties agreed that David would fill in that "gap" and collect David's 2021 Discord messages. *Id.* Based on their experience collecting Robert's Discord messages, Robert's counsel expected David's counsel would need less than two weeks to collect David's uncollected 2021 Discord messages.

But that did not happen. Even though they merely need to collect some of David's Discord messages from 2021, David's counsel now claims that they are being "forced" to also "re-collect" every shred of potential discovery from David, including all of his Discord, Telegram, servers, computer data, authentication codes, and social media accounts, that they have *already* collected for all of 2022, 2023, 2024, and up through April 17, 2025. Mot. at 8.

This desire to "re-collect" everything did not come about until the last minute: David's counsel never mentioned this process until late August 2025, three weeks prior to the document discovery deadline of September 19, 2025. *See* Am. Scheduling Order, ECF 129.

David has never explained why he cannot simply collect the missing 2021 Discord messages, or even re-collect all 2021 material and remove duplicates. Given David's history of spoliation of evidence in this case, this undertaking also seems fraught — a re-collection will necessarily not be as complete as the first collection if David has deleted any of his ESI since his counsel claimed to have collected and preserved everything in February 2025.

---

[1] For the sake of brevity and clarity, this filing refers to Robert, his co-Defendants Otter Audits LLP and RC Security LLC in *Yao v. Chen*, and his co-Plaintiff OtterSec LLC in *Chen v. Chen* collectively as "Robert." Likewise, *Chen v. Chen* Defendant David Chen and *Yao v. Chen* Plaintiff Li Fen Yao, David's mother, are collectively referred to as "David."

It also remains a mystery why David's counsel did not request an extension of the document discovery deadline as soon as they first learned of this alleged delay, when they decided, inexplicably, to start a 3.5-month re-collection of every piece of data they had allegedly already collected (not including time to review and produce the collected documents).

By September 19, 2025, Robert had, meanwhile, produced 17,659 documents in both cases, completing his document discovery obligations. This including all the documents he had agreed to produce by that deadline in meet and confer sessions in January, May, June, and July 2025, which resolved disputes without necessitating court involvement. Therefore, Robert needs no extension of the schedule to respond to discovery requests served on him.

David has not shown good cause for an extension of six months for the deadlines in the Scheduling Order. While Robert's counsel would have been willing to agree to a reasonable extension of a few weeks so that David's counsel could collect the missing Discord data from 2021, had David's counsel requested it in a timely manner, they are not willing to consent to such a massive delay, requested after the fact, and designed only to undertake an almost entirely duplicative collection of ESI.

## **FACTUAL BACKGROUND**

1. On January 31, 2025, Robert's counsel learned, through a third-party production, that David had deleted more than 17,000 Discord messages after discovery opened in *Yao v. Chen*.

2. At a hearing on February 13, 2025, David's counsel stated:

> We have done multiple collections over the course of the case that have sort of expanded over time and the point is that ***by this point we have everything***. And if David Chen were to go back in time during this relevant period and say through his own user account delete messages that have not already been deleted, it would not result in any sort of destruction or spoliation of evidence because ***we have it all***.

Ex. 3, Tr. Hrg. at 17:10-16 (Feb. 13, 2025) (emphasis added).

3. In a filing dated February 28, 2025, David's counsel expanded on this claim of having collected all of David's ESI, Ex. 1, ECF 117 at 1:

> Plaintiff [Li Fen Yao] has collected and preserved more than eight terabytes of data, including Plaintiff's, Sam Chen's, and David Chen's emails; David's Telegram message and X account; Plaintiff's, Sam's, and David's mobile phones; David's entire Discord history through the end of 2024; David's server and other hard drives; David's hardware wallets and authentication devices; David's GitHub account; and images of David's computers.

4. In his Opposition to the Motion for Entry of a Preservation Order, ECF 122, filed on March 13, 2025, David again reiterated that he had collected "eight terabytes of data":

> [Yao and David] have collected and preserved more than eight terabytes of data covering the relevant discovery period the parties agreed upon in the Yao Action (and more), including the following: Yao's, Sam's, and David's emails; David's Telegram messages and X account; Yao's, Sam's, and David's mobile phones; David's entire Discord history through the end of 2024; David's server and other hard drives; David's hardware wallets and authentication devices; and David's GitHub account.

5. In support of ECF 122, Mr. Plotnick submitted a declaration, ECF 122-1, that states: "Yao and David have taken substantial steps to collect and preserve documents and information from all known sources likely to have potentially relevant evidence[.]"

6. On April 17, 2025, the Court issued an Amended Scheduling Order that set substantial completion of document discovery for September 19, 2025. ECF 129.

7. On May 29, 2025, the Court entered an Order Directing David Chen to Preserve Evidence. ECF 141.

8. The Parties have a long-running dispute as to the appropriate start date for discovery in *Chen v. Chen*, with Robert contending that February 1, 2021, should be the start date for discovery in that case, and David having contended at various points that it should be February 1, 2022, January 1, 2022, or October 1, 2021. David's positions have not been based on any analysis of proportionality, burden, or the facts of the case, but only on unsupported assertions by counsel

4

of what evidence they believe will be sufficient to establish disputed claims about the ownership of the OtterSec Codes. *See*, *e.g.* ECF 161-4 at 6 (Email from A. Giles (Aug. 19, 2025)).

9. Robert's position that the relevant discovery period begins on February 1, 2021, has been explicit since February 14, 2025, *see* ECF 121-10 at 11–17, and was no surprise to David. Robert's counsel has reiterated this position for months, including on the following dates:

   a. February 21, 2025 (ECF 121-10 at 7, via email)

   b. February 26, 2025 (ECF 121-10 at 2, via email)

   c. March 13, 2025 (ECF 121-1 at 22–23, via brief)

   d. April 29, 2025 (ECF 134, Hearing Tr. 37:6–14)[2]

   e. May 12, 2025 (ECF 168-1 at 302, Tr. M&C at 16:20–17:11)

   f. May 15, 2025 (ECF 167-1 at 273, Tr. M&C at 9:6–17)

   g. July 18, 2025 (ECF 167-1 at 141, Tr. M&C at 6:3–16:11)

   h. August 13, 2025 (ECF 167-1 at 116, Tr. M&C at 16:16–23:10)

   i. August 20, 2025 (ECF 167-1 at 16:9–21)

10. Despite having known for six months that Robert believed the relevant discovery period for *Chen v. Chen* began on February 1, 2021, it was not until the meet and confer on August 20, 2025, that David's counsel disclosed that they had not collected David's Discord messages for 2021. *See* Ex. 2, Tr. M&C at 12:1-4 (Aug. 20, 2025) (David's collection of documents did not include "2021 Discord messages"). On August 20, 2025, counsel for the parties met and conferred to discuss the issue of the relevant discovery period. Robert's counsel explained that if David's

---

[2] When asked by the Court if it was Robert's intention for "the period of discovery for . . . the *Chen versus Chen* matter . . . [to begin on] February 1st, 2021," Robert's counsel stated, "Yes, Your Honor. So *Chen v. Chen* it's February 2021 through the present." ECF 134, Hearing Tr. 37:6–14.

5

counsel was arguing against discovery of evidence from before 2022, David's counsel would need to assess how many potentially relevant documents David had from 2021 and the dates of those documents, by running search terms on the 2021 Discord documents and seeing how many hits there were. Ex. 2, Tr. M&C at 6–7 (Aug. 20, 2025).

11. David's counsel was unable to provide accurate information about when and how often David discussed the Solend Liquidator Code on Discord in 2021 because they did not have all of David's 2021 Discord messages. David's counsel, Stephen Plotnick, who was lead counsel but has now moved to withdraw, stated that before they could run search terms, they would need to have their vendor perform a "collection of 2021 and then that last month in 2025,[3] and it would be added to what has already been collected and what is already a part of the database, so the Discord and Telegram messages, and all the other things from 2022 through, I think it was March of 2025." Ex. 2, Tr. M&C at 13:12-18 (Aug. 20, 2025). David's new counsel then made the following ambiguous statement, which appears inconsistent with his co-counsel's representation: "Unfortunately, so the chicken or egg sort of analysis that I provided you, obviously we're picking one of them, and we're going to have to take the responsibility, it seems like, to collect it all regardless, and we'll probably just have them, you know, do it with a whole fresh transfer of the data from February 1, 2021 through April 17, 2025." Ex. 2, Tr. 22:10-17.

12. The meet and confer ended with Robert's counsel asking for "more information from [David] on this Discord issue from 2021." Ex. 2, Tr. 22:3-4. Therefore, at the end of the August 20, 2025 meet and confer, the understanding was that: David's counsel had not collected all of his 2021 Discord messages, and his counsel were in the process of having their vendor collect

---

[3] David's Discord had last been collected around a month prior to the April 17, 2025 close of the discovery period.

6

the rest, and they would supplement their database with the 2021 Discord messages and then run searches to see how many responsive documents came up for early 2021. This proposal — to collect the rest of David's Discord messages from 2021 before discussing when in 2021 the relevant time period for *Chen v. Chen* should start — seemed acceptable to Robert's counsel.

13. When David's counsel followed up the next day, August 21, 2025, by email, they did not mention Mr. Plotnick's stated plan of collecting the missing 2021 Discord material, and instead stated they would be conducting a "re-collection of all of David's Discord messages" – not just a collection of previously uncollected Discord from 2021, but re-collecting everything they had already collected for 2022 through 2025, claiming it would take "potentially . . . over a month to re-collect all of the data in full." *See* ECF 161-4 at 1–2, Email from A. Giles (Aug. 21, 2025).

14. In response, Robert's counsel asked for the "current status" of the 2021 collections — "What has been collected from 2021 already, and how did you determine which messages from 2021 to collect already versus what has not yet been collected?" Ex. 4 at 3, Email from C. Lamoureux (Aug. 22, 2025).

15. With the clock ticking on the September 19 deadline, David's counsel responded five days later, on August 27, 2025, and, for the first time stated they would actually be "re-collect[ing]" all Discord *and Telegram* for the entire relevant period — not just the missing 2021 Discord messages (what they had said on August 20), or David's Discord for 2022-2025 (what they had said on August 21). David's counsel did not explain this decision except to say that:

> [W]e (CLM [Carter Ledyard & Milburn, LLP] and TR [Tydings & Rosenberg LLP], with the input and expertise of TransPerfect [discovery vendor]) determined that it would be simpler, more efficient, more timely, and possibly less expensive to just re-collect ALL of the Discord and Telegram messages from a start date of February 1, 2021 to an end date of April 17, 2025….rather than attempting to supplement previous collections with new collections.

7

Ex. 4 at 2, Email from A. Giles (Aug. 27, 2025). In that same email, David's counsel stated that they had "made the affirmative decision to simply re-collect all of David's Discord and Telegram messages" "in the past six (6) days," *i.e.*, not until the last week of August 2025 – three weeks before the document discovery deadline. *Id.*

16. A few days later, on September 3, 2025, David's counsel changed plans again, stating that they were now also going to conduct a "complete re-collection of all such documents, data, and information," not just Discord and Telegram, from February 1, 2021 through April 17, 2025, that had already been collected, because "the comprehensive re-collection of all such items made the most sense on many fronts, including, but not limited to, time, cost, concern for duplication, and related logistical issues." Ex. 5, ECF 162 at 3. In other words, 16 days before the substantial completion of document discovery, David's counsel decided that they would be re-collecting all discovery in both cases from David.

17. In that same filing, David's counsel also announced, for the first time, that they did not anticipate even having data that could be searched until "mid-December" of 2025. *See* Ex. 5, ECF 162 at 3. This was despite the fact that they also claimed to have started "making the necessary arrangements" to collect this data following the entry of the Preservation Order on May 29, 2025, and despite their inexplicable position that re-collecting "made the most sense" with respect to "time." *Id.*

18. On September 5, 2025, Robert's counsel asked David's counsel, by email:

> How do your clients intend to meet their discovery obligations and deadlines if they are unable to collect and produce Discord messages — the main source of ESI in this case — in an efficient manner? . . . We do not understand how it can take another three months for you just to be able to search Discord documents, if you started this on May 29, 2025, as you contend in ECF 162, and you previously collected David's "entire Discord history."

Ex. 6 at 2, Email from R. Clattenburg (Sept. 5, 2025).

8

19. David's counsel did not respond for ten days. On September 15, 2025, four days before the deadline, he finally responded:

> For you to state in your below email, and elsewhere, that the time estimate of 3 and ½ months to complete the full lifecycle of this process is somehow "not believable," we take issue with your position in that regard, and would suggest that you are speaking from a basis of "emotion" rather than one of "knowledge." The fact that YOU do not understand how so much time needed can be possible, quite frankly, does not concern me. All that matters is that this is the time estimate that has been provided to me by our contacts at TransPerfect in response to YOUR request for the analysis of the documents to be based on a full/comprehensive collection of such potentially relevant documents, data, information, etc.'

Ex. 7 at 4, Email from A. Giles (Sept. 15, 2025).

20. This suggestion that a "full/comprehensive collection" was necessitated by a question about when David's relevant communications about the code began in 2021 is false and unsupported. Robert's counsel only asked about Discord messages from 2021, and David's counsel only represented that they were missing some of David's Discord messages from 2021 (plus a limited amount of 2025 messages). They have never said they were missing any other years or data. Their claim that they must re-collect everything in order to collect and run searches on 2021 Discord data makes no sense.

21. Thus, later on September 15, 2025, Robert's counsel responded:

> Your clients must fulfill their discovery obligations. If your discovery vendor is not up to the task, and you have elected the most time-consuming process to get David's Discord data, then you will need to find someone who can do the process by the deadlines in this case. You have had many months to get these Discord messages. As a reminder, you agreed to produce all of David and Li Fen's responsive Discord and Telegram communications by September 19, 2025, including those requested in the Subpoena served on David, for which he withdrew all objections. See ECF 139 (May 23, 2025).

Ex. 8 at 1, Email from R. Clattenburg (Sept. 15, 2025).

22. David's counsel responded that they would "refrain from commenting further and substantively" on these issues. Ex. 7 at 1, Email from A. Giles (Sept. 15, 2025).

9

23. The Court entered an order on September 17, 2025 (ECF 167) which stated in part:

> Finally, the parties are reminded that the operative Amended Scheduling Order (ECF No. 129) provides that "substantial completion of document discovery" shall occur by September 19, 2025. If the parties are unable to meet that deadline, they shall file a joint motion seeking an extension of time by which to complete that discovery.

24. On September 19, 2025, Robert timely produced his remaining responsive documents, including documents that were part of negotiated resolutions to motions compel during meet and confers regarding their document productions. *See* Joint Status Reports, ECFs 106, 139 & 151. Robert also timely served, as the Parties had also agreed, amended responses to discovery to clarify the parameters of their productions and the resolutions to motions to compel. Robert, therefore, met his discovery obligations under the Amended Scheduling Order.

25. David and Li Fen Yao, on the other hand, produced no documents on September 19, 2025. In fact, David and Li Fen Yao have not produced a single document—other than corrected versions of previously produced documents—since April 24, 2025.

26. David Chen has not made a single production in response to the discovery requests served in *Chen v. Chen*. The claims in *Chen v. Chen* are different than those in *Yao v. Chen* and cover a longer period of time than does *Yao v. Chen*. While some documents may be responsive in both cases, many of the discovery requests in *Chen v. Chen* ask for documents that are specific to the development of the codes that David stole from OtterSec.

27. In the May 23, 2025 Joint Status Report, David informed the Court that his counsel "agreed that, by the close of document discovery per the Amended Scheduling Order on September 19, 2025, they will produce all responsive Discord and Telegram communications for Yao and David." ECF 139 at 3. That did not occur, not even for the 2022–2024 range that they say they had collected.

28.     David Chen has not served his responses to the Second Set of Requests for the Production of Documents and Second Set of Interrogatories in *Chen v. Chen*, which were due on September 15, 2025. *See* Ex. 10 at 1, Email from R. Clattenburg (Sept. 16, 2025).

29.     Li Fen Yao's productions are also not substantially complete. Plaintiff Yao, who is producing documents she obtains from David in response to document requests served on her, has not produced, among other categories: David's tax returns; David's documents concerning his use of the codes and other property he took from OtterSec; documents and communications concerning revenues or income from the codes and other property David took from OtterSec; documents identifying all of David's work and sources of income; documents identifying David's blockchain or digital wallets; documents concerning David's deletion or loss of data on any mobile phone; documents showing any loss suffered by Plaintiff Yao, Sam Chen, or the Estate that Yao contends was caused by any of the Defendants; documents related to the alleged "bricking" of David's phone; and communications between David and any of OtterSec's clients after David stopped working for OtterSec. Plaintiff Yao's counsel represented that her document production was substantially complete during the September 22, 2025, meet and confer (ECF 168-1 at 14, Tr. 47:19–22), which seems improbable given the extensive categories of missing documents, and is likewise questionable given that she is now also requesting a six-month delay to substantially produce all responsive documents. *See* Motion at 1.

30.     Nor has Li Fen Yao served her amended, substantive responses to the Second Set of Document Requests in *Yao v. Chen*, served on October 4, 2024, and to which she agreed to respond in meet and confers in January 2025. (She previously had only served objections.)

31. On the deadline for the substantial competition of discovery, September 19, 2025, at 4:43 PM, David and Li Fen's counsel, for the first time, requested an unspecified extension of the document discovery deadline without any rationale for the request. *See* ECF 168-2 at 5–6.

32. David and Li Fen also never requested to meet and confer on the motion. Their counsel only sent an email, which is violative of L. Civ. R. 104.7. The Motion is in direct violation of this Court's Orders at ECF 135 ¶ 6 and ECF 167 at 1 and the Local Rules.

## **LEGAL STANDARDS**

"A court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,'" *CBX Techs., Inc. v. GCC Techs., LLC*, No. CIV. JKB-10-2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012) (quoting *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 376 (D.Md.1999). "Good cause" under Rule 16(b)(4) of the Federal Rules of Civil Procedure means that scheduling deadlines cannot be met despite a party's diligent efforts.' . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013) (quoting *CBX Techs., Inc.*, 2012 WL 3038639, at *4).

## **ARGUMENT**

David has not shown good cause for modifying the Scheduling Order by extending it for six months, so that he and his counsel can re-collect all of the data they have already collected. *See* ECF 129. All David should need to do is collect his uncollected 2021 Discord messages so that his counsel can run search terms and participate in a discussion of the appropriate start date for discovery in *Chen v. Chen*. There is no reason they should have to re-collect *all discovery*. David should have been working on collecting his 2021 Discord messages since at least February 2025, when Robert first made clear that it was his position that 2021 was part of the relevant period in

*Chen v. Chen*. Yet, it was not until August 2025 that David decided to collect the 2021 material he would need before his counsel could run search terms and discuss the start date in a meaningful way. This decision has now inexplicably snowballed to the need to re-collect everything.

David's counsel is using a simple request by Robert's counsel for information on how many of David's 2021 Discord messages are responsive to discovery requests to manufacture a huge delay in these cases by claiming that they are being "forced" to "re-collect" every bit of electronic data they have already collected – "documents, servers, data, equipment, information," and all Discord and Telegram, for a four-year period, not only for 2021. Mot. at 8. They have never explained *why* they have to re-collect all of this data for every year, despite having already collected it. The most they have said is in ECF 162, where they say re-collection of everything "made the most sense on many fronts, including, but not limited to, time, cost, concern for duplication, and related logistical issues." They have explained none of this, and none of it sounds remotely plausible: It is not faster or cheaper to conduct an unnecessary re-collection. It makes no sense to say that re-collecting duplicate versions of already-collected material is less likely to result in duplication. No "logistical issues" have been identified — and the proposed re-collection has already imposed its own major logistical issues on this case. This is not good cause. This is a deliberate attempt to delay the cases to make Robert spend more money and time. David's re-collection may be related to the huge amount of data David deleted while under a duty to preserve in both cases; perhaps his counsel cannot match up collections because of David's massive deletions. If so, David's counsel has not articulated it as a reason for this dilatory re-collection, and, in fact, it would be a reason *not* to re-collect, since the new collection would necessarily be missing anything David had deleted, even if it had been collected the first time.

David wants to delay *Chen v. Chen* in the hope that Robert will drop it, and David and Li Fen Yao want to delay *Yao v. Chen* at the same time because they have effectively stopped prosecuting that case since the revelation that David Chen permanently destroyed massive amounts of Discord evidence with the intention of concealing it from this litigation. Li Fen Yao's lead counsel has moved to withdraw. He has handed the reins for discussions between the parties over to substitute local counsel, who continuously asserts his lack of knowledge of earlier happenings in this case, which simply serves to further delay and frustrate any progress in these cases. David also wants to significantly delay these cases to cause higher fees for Robert. David has accused Robert of attempting to drive up the costs of this litigation through "an outright cavalcade of discovery . . . practice," Letter, ECF No. 170 at 3, but David is the one belatedly seeking to extend the discovery schedule by six months rather than producing his documents and moving the case along. David seems to be trying to avoid exiting the document discovery phase and having his theories tested in depositions and dispositive motions practice.

David's counsel have never provided details on why this full re-collection is necessary, because they cannot justify it. They have not provided any declarations to support this need to re-collect data. They have provided no support for the assertion that their discovery vendor requires this re-collection. They have provided no support for the length of the delay they claim to need.

The Motion vaguely states that: "Documents and discoverable information have been produced that relate to the claims and defenses presented in *Chen v. Chen*," but it identifies no such documents, *see* Motion at 10, and neither did David's counsel point to any such documents in the meet and confers. Regardless, the point is that with respect to the discovery requests *specific to Chen v. Chen claims and the discovery in that case*, David Chen has produced no documents. He has made no productions (except for replacement versions of already produced documents)

since before service of the First Set of Requests for the Production of Documents in *Chen v. Chen* on May 23, 2025. His counsel does not dispute this. So even if documents responsive to *Chen v. Chen* requests have been produced, it is only because David and Li Fen got lucky and had already produced some documents Robert requested in the second case. It is not because they made any effort to collect, locate, review, and produce material that was specific to *Chen v. Chen.*

Furthermore, Robert would have agreed to a reasonable extension of a few weeks to collect David's missing 2021 Discord data. That is not in dispute—Robert believes that data is relevant, but agrees that the date range is still disputed, and would have been very willing to negotiate a modified Scheduling Order to accommodate collection of *just the missing 2021 Discord data* so that counsel could have a productive conversation about the date range.

But David's counsel never asked for that, because they do not want to just collect the only data that they say is missing. They want to collect and re-collect as much data as possible, so they can improperly delay the cases as long as possible, causing more interference with Robert's work and forcing him to spend more on litigation fees.

David has not shown good cause for an extension of six months merely so he and his counsel can collect the data they have already collected, under the guise that they have to do so simply to get the missing data from 2021. They have at best shown carelessness, and at worst are making a deliberate attempt to impose unnecessary delay and its accompanying excess costs on Robert.

## **CONCLUSION**

Robert respectfully request that the Motion to Modify be denied and that David be sanctioned for violating the Amended Scheduling Order, *see* Rule 16(f).

Dated: September 29, 2025                                            Respectfully submitted,

15

        /s/ Rachel M. Clattenburg
Rachel M. Clattenburg
Kevin P. Crenny
Joshua A. Levy
Justin A. DiCharia
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 1200
Washington DC 20006
Tel: 202-845-3215
Fax: 202-595-8253
rmc@levyfirestone.com
kcrenny@levyfirestone.com
jal@levyfirestone.com
jdicharia@levyfirestone.com

*Attorneys for Defendants Robert Chen, Otter Audits LLC, and RC Security LLC and for Plaintiffs Robert Chen and OtterSec LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2025, I caused the foregoing Opposition and attached exhibits to be filed with the Court using CM/ECF which serves a copy on all counsel of record.

/sRachel Clattenburg
Rachel Clattenburg