## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LI FEN YAO, as administrator of the Estate of Sam Mingsan Chen, | |
| Plaintiff, | Case No. 8:23-cv-00889-TDC-GLS |
| v. | |
| ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC, | |
| Defendants. | |
| ROBERT CHEN and OTTERSEC LLC, | |
| Plaintiffs, | Case No. 8:24-cv-03628-TDC-GLS |
| v. | |
| DAVID CHEN, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DAVID CHEN, LI FEN YAO, AND THEIR COUNSEL

## TABLE OF CONTENTS

**LEGAL STANDARDS** ................................................................................................ 1

**FACTUAL BACKGROUND AND ARGUMENT** ................................................... 3

**I.    DAVID AND LI FEN'S COUNSEL'S PERVASIVE BAD FAITH CONDUCT.** ................. 3

   A.  David's Counsel Are Not Prepared or Courteous ......................................... 3

   B.  David's Counsel Do Not Meet and Confer in Good Faith ............................. 3

**II.   BAD FAITH CONDUCT IN DOCUMENT DISCOVERY: DAVID, LI FEN, AND THEIR COUNSEL ARE ONLY SEARCHING AN INCOMPLETE SET OF DOCUMENTS AND ARE ENGAGING IN ABUSIVE DOCUMENT DISCOVERY CONDUCT AIMED AT RUNNING UP ROBERT'S COSTS AND HIDING MATERIAL EVIDENCE FROM ROBERT.** ................................................................................ 4

   A.  David, Li Fen, and Their Counsel Are Searching the Least Complete Set of Documents and Data in Response to Discovery Requests. They Also Misled the Court in the Motion to Modify (ECF 169) and Violated the Scheduling Order (ECF 129). ............................ 5

   B.  David, Li Fen, and Their Counsel Are Not Reviewing or De-Duplicating Documents, or Running Adequate Search Terms, and Have Thus Failed to Produce all Responsive Documents as Agreed and as Ordered; Refused to Provide an Accurate Source List; and Knowingly Produced Inauthentic Documents .................................................... 8

   C.  David, Li Fen's, and Their Counsel's Document Discovery Abuses Materially Prejudice Robert. ......................................................................................... 12

**III.  BAD FAITH CONDUCT IN WRITTEN DISCOVERY: DAVID, LI FEN, AND THEIR COUNSEL VIOLATED COURT ORDERS, RENEGED ON THEIR AGREEMENTS, AND SERVED DEFICIENT AND FALSE DISCOVERY RESPONSES, REQUIRING SANCTIONS.** ................................................................................. 14

   A.  First & Second Set of RFPDs and Subpoena in *Yao v. Chen*: David, Li Fen, and their counsel violated Court Orders (ECFs 95, 135, 167 & 183) by failing to amend their responses to these RFPDs and the Subpoena ................................................ 15

   B.  *Yao v. Chen* – First Set of ROGs: Li Fen and her counsel violated Court Orders (ECFs 95 & 183) by failing to amend her answers to the First Set of ROGs. ....................... 16

   C.  *Yao v. Chen* – Second Set of ROGs: David, Li Fen, and their counsel served four sets of deficient answers to the Second Set of ROGs, unnecessarily protracting the litigation, driving up costs, and evading clear responses about David's spoliation. ...................... 17

   D.  *Chen v. Chen* – First and Second Sets of ROGS and RFPDs: David and his counsel served late and deficient responses to discovery. ......................................... 20

**IV.   DAVID, LI FEN, AND THEIR COUNSEL MUST BE SANCTIONED FOR THIS ABUSIVE, VEXATIOUS, BAD FAITH CONDUCT** ......................................................... 25

**CONCLUSION** ................................................................................................................. 29

## **TABLE OF AUTHORITIES**

**Cases**

*Aerodyne Systems Eng'g v. Heritage Int'l Bank*,
    115 F.R.D. 281 (D. Md. 1987) .................................................................................27

*Baptiste v. Nat'l R.R. Passenger Corp.*,
    No. 14-cv-3279, 2015 WL 5714103 (D. Md. Sept. 28, 2015) .........................................21

*Branhaven, LLC v. BeefTek, Inc.*,
    288 F.R.D. 386 (D. Md. 2013) ...........................................................................2, 24, 27

*Brito v. New Life Healthy Living, LLC*,
    No. CV CJC-24-1124, 2025 WL 2638030 (D. Md. Sept. 9, 2025).....................13, 16, 26

*Case v. French Quarter III LLC*,
    No. 9:12-cv-02804-DCN, 2014 WL 6971019 (D.S.C. Dec. 9, 2014).............................29

*Davis v. Walmart, Inc.*,
    No. CV TJS-24-2163, 2025 WL 2521196 (D. Md. Aug. 29, 2025)...................................1

*Mey v. Phillips*,
    71 F.4th 203, 222 (4th Cir. 2023) ..................................................................*passim*

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*,
    872 F.2d 88 (4th Cir. 1989) ..........................................................................*passim*

*Paradyme Mgmt., Inc. v. Curto*,
    No. PWG-17-3687, 2018 WL 9989656 (D. Md. 2018) ....................................................4

*Proctor v. Charlestown Cmty. Inc.*,
    No. GLR-22-1365, 2023 WL 8478903 (D. Md. 2023) ....................................................1

*Projects Mgmt. Co. v. Dyncorp Int'l LLC*,
    734 F.3d 366 (4th Cir. 2013)......................................................................................1, 28

*PVD Plast Mould Industries, Ltd. v. Polymer Grp., Inc*,
    31 F. App'x 210 (4th Cir. 2002)..............................................................................2, 27

*Six v. Generations Fed. Credit Union*,
    891 F.3d 508 (4th Cir. 2018)........................................................................*passim*

*Smith v. Devine*,
    126 F.4th 331 (4th Cir. 2025)........................................................................................28

*Sol v. Longang*,
    No. 8:22-CV-02999-AAQ, 2025 WL 1257995 (D. Md. Apr. 30, 2025) ..........................28

*Sweetland v. Bank of Am. Corp.*,
    241 F. App'x 92 (4th Cir. 2007)....................................................................2

*U.S. v. Shaffer Equip. Co.*,
    11 F.3d 450 (4th Cir. 1993)........................................................................28

*Wilson v. Volkswagen of America, Inc.*,
    561 F.2d 494 (4th Cir. 1977).......................................................................25

**Statutes**

Fed. R. Civ. P. 16(f).......................................................................................*passim*

Fed. R. Civ. P. 26(e).....................................................................................2, 24

Fed. R. Civ. P. 26(g)......................................................................................*passim*

Fed. R. Civ. P. 34........................................................................................10, 13

Fed. R. Civ. P. 37..........................................................................................*passim*

28 U.S.C. § 1927..........................................................................................*passim*

Robert Chen, RC Security LLC, Otter Audits LLC (as defendants in *Yao v. Chen*) and OtterSec LLC and Robert Chen (as plaintiffs in *Chen v. Chen*)[1] respectfully move this Court, pursuant to Federal Rules of Civil Procedure 16(f), 26(g), 37(a)(4), 37(b)(2)(A), 37(c)(1)(C), 37(d)(1)(A)(ii), 28 U.S.C. § 1927, and the Court's inherent authority, for an award of sanctions against David Chen (the defendant in *Chen v. Chen* and the primary source of relevant information in *Yao v. Chen*), Li Fen Yao (the plaintiff in *Yao v. Chen*) and their counsel for their ***ongoing*** bad faith, vexatious, and unreasonable misconduct. The Court should: dismiss *Yao v. Chen* (or, at a minimum, dismiss Counts III and IV), enter a default judgment in Robert's favor in *Chen v. Chen*, award fees and expenses, and, if any claims remain, appoint a special master to oversee David and Li Fen's document productions.

## LEGAL STANDARDS

"[S]ystemic discovery abuse" and "persistent discovery violations" permit a court to dismiss a case in whole or in part or enter default judgment. *See Mey v. Phillips*, 71 F.4th 203, 222 (4th Cir. 2023); *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 374 (4th Cir. 2013) (dismissal); Fed. R. Civ. P. 37(b)(2)(A)(v) (dismissal in whole or in part), 37(b)(2)(A)(vi) (default judgment). Courts have "wide discretion" to, and in some cases must, impose sanctions for violations of the discovery rules and the court's orders under **Federal Rule of Civil Procedure 37**, *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989), and **Rule 16(f)**. *See Davis v. Walmart, Inc.*, No. CV TJS-24-2163, 2025 WL 2521196, at *2 (D. Md. Aug. 29, 2025) (dismissing case with prejudice, under Rule 37(b) and 37(d), because plaintiff failed to meaningfully participate in discovery). **Rule 37(a)(4)** provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or

---

[1] Collectively, movants are referred to as "Robert" or the "Robert Parties," for ease of reference.

respond," for which the Court may order sanctions under Rule 37(c). *See Mey*, 71 F.4th at 214–25 (affirming the striking of defenses and entering default judgment under Rule 37(b) for concealing discovery in violation of Rule 37(a) and (c) and the scheduling order); *see also* **Rule 37(d)(1)(A)(ii)** (permitting sanctions, including dismissal and default judgment, for failing to serve answers, objections, or written responses to interrogatories); **Rule 37(c)** (allowing sanctions where a party fails to comply with its ongoing duty, under Rule 26(e), to supplement or correct discovery responses); *PVD Plast Mould Industries, Ltd. v. Polymer Grp., Inc*, 31 F. App'x 210, 211 (4th Cir. 2002) (affirming dismissal and fees under Rule 37).

**Rule 26(g)(3)** mandates that courts sanction attorneys, parties, or both for violations of Rule 26(g)(1), which requires certification by an attorney of record that, to the best of the signer's "knowledge, information, and belief formed after a reasonable inquiry," the discovery response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 26(g)(1) & 26(g)(1)(B)(ii) & 26(g)(3); *see also Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 393 (D. Md. 2013) (granting fees and costs under Rule 26(g) for document dump).

Additionally, **28 U.S.C. § 1927** provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This statute "permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018) (awarding sanctions under § 1927 against counsel who misled the court); *see also Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 97 (4th Cir. 2007) (affirming Section 1927 sanctions where attorney took steps to "stall the discovery process through evasive and nonresponsive answers"). "[F]ederal

courts have **inherent authority** to sanction" and "are empowered 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Six*, 891 F.3d at 519, 522 (citation omitted) (emphasis added). Finally, Guideline 1.d in the Local Rules provides that "[a]ttorneys are expected to behave professionally and with courtesy" and, under Guideline 1.c, the Court will consider compliance with the Guidelines in determining whether sanctions should be awarded.

<strong><u>FACTUAL BACKGROUND AND ARGUMENT</u></strong>

**I.    DAVID AND LI FEN'S COUNSEL'S PERVASIVE BAD FAITH CONDUCT.**

The abusive discovery violations described in this brief took place against a backdrop of pervasive bad faith and unprofessional conduct by David and Li Fen's counsel. *See* Decl. of R. Clattenburg ("Decl.") at ¶¶ 2–22; Appendices 1 & 2. That conduct includes the following:

**A.    David's Counsel Are Not Prepared or Courteous:** David's counsel: (a) are rude and unprepared in meet and confers, (b) repeatedly miss deadlines, (c) are allegedly oblivious to prior commitments they have made, relying on Robert's counsel to reeducate them each time, and (d) are unfamiliar with their client's documents and responses. *See* Decl. ¶¶ 2–25, 70–83, 88–95, 96–104; Appendix 2 (missed deadlines). At the November 20, 2025, hearing, the Court specifically called out Mr. Giles' treatment of one of Robert's counsel as "appalling. Appalling. Appalling," ECF 184 at 11:4–6, but Mr. Giles's rude communications to her continue to this day.[2]

**B.    David's Counsel Do Not Meet and Confer in Good Faith:** David's counsel have repeatedly complained about Robert's counsel's meet and confer requests, despite Local Rule 104.7 and this Court's orders requiring good faith meet and confers. *See* ECFs 95 & 135. David's

---

[2] Recently, David's counsel began his response to a request for a meet and confer with: "Once again, though, you [Robert's counsel] have conveniently (and purposefully) misstated a fair amount of the facts, which I would have thought would have been difficult to do in essentially a two-paragraph email from you….but, evidently, you must just be an over-achiever and a wonderkin [sic] in that regard. Congratulations." Ex. 1, J.R.006.

3

counsel[3] accused Robert's counsel of misusing the process, suggesting it "[s]eems pretty comical, and possibly hypocritical to me. . ." ECF 169-2 at 6. They have also disparaged the process. *See, e.g.*, ECF 164-1 at 2 ("Plaintiffs and you (as their counsel) have a really bad habit of suggesting that EVERY LITTLE PERCEIVED DISCOVERY DISPUTE somehow merits a Meet and Confer session. Quite candidly it is laughable at times. . ."); ECF 168-1 at 8 (21:3–11) (Tr. M&C Sept. 22, 2025) ("That's why I'm responding the way I am to your dumb messages asking to meet and confer about every issue. Every e-mail from you and from Rachel says, 'We need to meet and confer.' It's like you have an automatic filter that adds in 'We need to meet and confer' in every damned e-mail you send. It's childish on your part. It's ridiculous."). *See* Decl. ¶¶ 2–22.

District courts have the inherent authority to "enforce respect and decorum in their presence," which includes "the authority to enforce it with respect to the papers that the parties file in court proceedings, and in their communications with each other relating to the litigation." *Paradyme Mgmt., Inc. v. Curto*, No. PWG-17-3687, 2018 WL 9989656, at *5 (D. Md. 2018). David's counsel's lack of preparation, disregard of the rules and orders, and disrespectful language and conduct constitute bad faith conduct that merits sanctions.

## II.    BAD FAITH CONDUCT IN DOCUMENT DISCOVERY: DAVID, LI FEN AND THEIR COUNSEL ARE ONLY SEARCHING AN INCOMPLETE SET OF DOCUMENTS AND ARE ENGAGING IN ABUSIVE DOCUMENT DISCOVERY CONDUCT AIMED AT RUNNING UP ROBERT'S COSTS AND HIDING MATERIAL EVIDENCE FROM ROBERT.

David, Li Fen, and their counsel have violated at least five court orders, misled the Court, failed to collect all potentially relevant documents, failed to use adequate search terms, failed to

---

[3] This brief often refers to David and Li Fen's counsel as "David's counsel" for brevity.

produce all responsive and relevant documents and instead engaged in a classic "document dump," and otherwise acted in bad faith.[4]

This conduct has prejudiced Robert because it has denied him material evidence essential to both cases. In *Yao v. Chen*, Li Fen claims, *inter alia*, that Robert breached a fiduciary duty owed to Sam Chen by allegedly failing to disclose negotiations with Jump before Sam transferred 10% of his interest in OtterSec (Count III), and that Robert allegedly made material omissions in April 2022 about the discussions with Jump prior to the 10% transfer (Count IV).[5] These claims depend on what David, Li Fen, and Sam knew in April 2022, and what they should have known, evidence that is almost exclusively in Li Fen and David's possession. Through their discovery abuses, David and Li Fen have denied Robert this evidence. In *Chen v. Chen*, only David knows what liquidator bots he has run and on what platforms, and where he has put the money that he made from those bots. David has deprived Robert of this essential evidence. Under Rules 16(f), 26(g), 37(a), (b), (c), and (d), Section 1927, and its inherent authority, the Court should, and under certain rules must, sanction David, Li Fen, and their counsel.

> **A. David, Li Fen, and Their Counsel Are Searching the Least Complete Set of Documents and Data in Response to Discovery Requests. They Also Misled the Court in the Motion to Modify (ECF 169) and Violated the Scheduling Order (ECF 129).**

**1.** *Seventeen months into discovery, in late 2025, David's counsel insisted on re-collecting **all** of David's and Li Fen's documents and data, knowing that the collection would be the least complete set of documents.* The deadline for substantial completion of document discovery was September 19, 2025 (ECF 129). On September 17, 2025, the Court ordered that substantial

---

[4] That is all in addition to a concerted effort by David to mass-delete thousands of relevant Discord messages and to, along with his lawyers, minimize and cover up that destruction of relevant evidence – the subject of which will be a separate motion on spoliation, to be filed March 19, 2026.
[5] The Court held that these are the only remaining claims in Counts III (Breach of Fiduciary Duty) and IV (Fraud.) ECF 100 at 29–31; 32–37.

completion "shall occur by September 19" and stated that "[i]f the parties are unable to meet that deadline, they shall file a joint motion seeking an extension of time by which to complete that discovery." ECF 167. David missed the deadline and did not move for an extension until September 23, 2025, the alleged basis for which was to "re-collect" all of their documents and data. ECF 169 ¶ 22.

2. David and Li Fen claim they were "effectively forced" in August 2025 "to re-collect all documents, servers, data, equipment, information, etc., including all of David's Discord messages, from February 1, 2021 to April 17, 2025," ECF 169 ¶ 22. *See* Decl. ¶ 28.

3. Their "re-collection" position contradicted their prior representations to the Court, at a February 2025 hearing, that they had, at that point in time, collected and preserved all of David's non-deleted documents and data. ECF 176-3 at 5 (17:10–16) (David's counsel said: "by this point we have everything" and "we have it all."). On February 28, 2025, David's counsel told this Court that they had ***already*** "collected and preserved more than eight terabytes of data, including Plaintiff's, Sam Chen's, and David Chen's emails; David's Telegram messages and X account; Plaintiff's, Sam's, and David's mobile phones; David's entire Discord history through the end of 2024…" ECF 117 at 1; *see also* ECF 134 at 30:1–33:19 (again describing the scope of their collection) (Hg. Tr. Apr. 29, 2025). *See* Decl. ¶ 29–32.

4. Then, 16 days before the September 19, 2025, deadline, David's counsel inexplicably told the Court that, rather than search the eight terabytes of data already collected, they would be performing a "comprehensive re-collection of all such items"—all of the Discord and Telegram and other data for 2021, 2022, 2023, 2024, and part of 2025. ECF 162 at 3. David's counsel has never explained why they are not reviewing or searching ***any*** of the "eight terabytes of data" collected earlier in time (2024 and early 2025). ECF 168-1 at 21–23 (74:17–83:7) (Tr. M&C Sept.

6

22, 2025); *see* Decl. ¶¶ 33–37. Nor have they explained why they misled the Court and the Robert parties about their prior collection efforts.

**5.**   It is undisputed that David deleted massive amounts of data during this litigation, especially in 2024, meaning that his counsel's "re-collection" of data in the fall of 2025 is the **least complete** set of data—it lacks any of the data that had been collected in early 2024 and preserved, prior to David's mass deletions. It is also missing an unknown amount of documents and data that David deleted *after* the collections of his documents in 2024 and early 2025. *See* Decl. ¶¶ 33–37, 57.

**6.**   To be clear: David's counsel did not collect some new documents and add them to the prior collections; they did not fill in gaps of missing documents; and they did not combine their "re-collection" with the prior collections—all of which may have made sense. Instead, David's counsel is not searching or reviewing the prior collections *at all* and is, instead, relying ***solely*** on this late 2025 "re-collection" of data David has chosen not to delete, *i.e.*, the least complete set of documents and data for David and Li Fen's discovery. Decl. ¶ 37.

**7.**   David's counsel admitted in a February 2026 meet and confer that the re-collection is missing data that existed in the earlier collections, and that David deleted documents after those 2024 and early 2025 collections, including relevant emails. *See* Ex. 4, J.R.171–72 (16:11–22; 18:9–14) (Tr. M&C Feb. 18, 2026).

**8.**   Robert's counsel does not know the full extent of David's deletions, because all of David's testimony and discovery responses about deletions relied on the fact that his counsel had preserved some documents through the 2024 and early 2025 collections, and was using those documents for discovery responses. David's counsel, however, is no longer using those earlier collections.

**9.**   This deliberate "re-collection" of a smaller set of documents, missing unknown quantities of relevant evidence, deprives Robert of unknown amounts of material evidence about the fraud

and breach of fiduciary claims, and about David's theft of codes from OtterSec. It is vexatious misconduct aimed at depriving Robert of relevant evidence, or an extreme level of incompetence by David's counsel amounting to bad faith. It is unequivocally dilatory and costly for Robert.

**10.** _David, Li Fen, and their counsel misled Robert and the Court about their "substantial completion" of document discovery in September 2025._ In their September 23, 2025 Motion to Modify Scheduling Order, David and Li Fen represented that they "believe[d] for purposes of Plaintiff Yao's case we have already reached the point of 'Substantial Completion of Document Discovery,' and for Defendant David Chen's case that we are close to reaching the point of 'Substantial Completion of Document Discovery[.]'" ECF 169 at 11. According to David's counsel, at that time not many documents remained to be produced. *See* Decl. ¶ 26.

**11.** But as subsequent productions demonstrated, at the time they made these representations, they had produced under **_two percent_** of what would be their allegedly completed document production.[6] *See* Decl. ¶ 27.

**B. David, Li Fen, and Their Counsel Are Not Reviewing or De-Duplicating Documents, or Running Adequate Search Terms, and Have Thus Failed to Produce all Responsive Documents as Agreed and as Ordered; Refused to Provide an Accurate Source List; and Knowingly Produced Inauthentic Documents.**

**12.** Document Dumps: David, Li Fen, and their counsel's sanctionable document production process has been to (1) run two incomplete sets of search terms across a knowingly incomplete set of data; (2) produce everything that hits on a search term, with no review, no de-duplication, and no quality control; and (3) leave it to Robert's counsel to review the hundreds of thousands of documents—largely junk—and to identify issues. When this conduct is combined with their failure

---

[6] Most of what David and Li Fen produced is non-responsive junk, produced only to force Robert's counsel to wade through hundreds of thousands of pages of irrelevant information.

to amend their RFPD responses to certify what they are withholding, *see infra at* III.A., it is impossible for Robert to determine what evidence exists to support his claims and defenses.

**13.** In **May 2025**, David and Li Fen had agreed to produce all responsive Discord and Telegram documents by **September 19, 2025**, which they did not do. *See* ECF 139 at 13. The Court ordered David and Li Fen to produce all documents responsive to Robert's discovery requests from all non-Discord sources by **December 12, 2025**, and to produce all responsive Discord documents by **January 20, 2026**. *See* ECF 183; *see also* ECF 184 at 69:25–79:1, 82:8–9 (Tr. Hg. Nov. 20, 2025).

**14.** In a December 5, 2025, meet and confer, David's counsel defiantly stated that they would not be de-duplicating documents or reviewing them, falsely claiming, as they did in the Motion to Modify the Scheduling Order (ECF 169), that it was because Robert had asked for "everything," Ex. 2, J.R.051 (33:15) (Tr. M&C Dec. 5, 2025). They reiterated this false assertion in a February 2026 meet and confer, Ex. 4, J.R.172 (20:12–14) (Tr. M&C Feb. 18, 2026)—an assertion David's prior counsel did not support because it is untrue. *See* ECF 179 at 9 ¶ 20, at 12–15. Robert requested documents responsive to his RFPDs—not "everything"—and they largely agreed to produce responsive documents. Asked whether they would be de-duplicating documents, David's counsel said: "we're not doing that. … And if you don't like that, then you can go to Judge Simms and you can say, hey, this isn't fair." Ex. 2, J.R.051 (33:12–34:1) (Tr. M&C Dec. 5, 2025). *See also* Decl. ¶ 45.

**15.** David's counsel told Robert's counsel to "simply disregard the previous productions," on which Robert relied for over a year, and "treat the upcoming productions to be made on December 12, 2025, and by January 20, 2026, as the full set OR the 'Master' documents." Ex. 24, J.R.611.

**16.** David's counsel stated that they would not review the documents—they were "producing everything that hits on a search term." Ex. 3, J.R.116 (21:16–17) (Tr. M&C Dec. 17, 2025).

Between December 12, 2025, and February 20, 2026, David and Li Fen made seven productions totaling 363,859 documents. Most of the documents are not responsive or relevant, and many have been produced in an unusable format. *See* Decl. ¶¶ 45–56.

**17.** The mostly useless 300,000-plus documents include:

- 5,048 documents that *Robert produced in this case*, with Robert's Bates numbers.

- More than 10,000 marketing emails, such as for HelloFresh.

- More than 900 documents that are blank or nearly blank.

- 1,637 documents noting an error in the production process: "Image Not Rendered."

- More than 100,000 documents from publicly available online coding manuals and textbooks. They are not grouped in the form in which they were "ordinarily maintained" or "in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E). David's counsel has not explained the responsiveness or relevance of these, and, in fact, is not familiar with them. *See* Ex. 4, J.R.174 (25:5–26:22) (Tr. M&C Feb. 18, 2026);

- 38 copies of an irrelevant Discord conversation, which David is not even on, and does not appear related to either case. Ex. 29, J.R.637–39.

- More than 22,000 ".json" files, many of which appear to be communications that are not in a reasonably usable format. These appear like so:

```
[
 {"ID": 654129569065861140, "Timestamp": "2019-12-11 01:17:22", "Contents": "basic", "Attachments":
""},
 {"ID": 654129554679529480, "Timestamp": "2019-12-11 01:17:18", "Contents": "just go r710",
"Attachments": ""},
 {"ID": 654129498438238208, "Timestamp": "2019-12-11 01:17:05", "Contents": "um", "Attachments": ""},
 {"ID": 654129205482618902, "Timestamp": "2019-12-11 01:15:55", "Contents": "lmao", "Attachments": ""},
 {"ID": 654129200567025724, "Timestamp": "2019-12-11 01:15:54", "Contents": "no shit!", "Attachments":
""},
 {"ID": 654129167302000640, "Timestamp": "2019-12-11 01:15:46", "Contents": "u rich", "Attachments":
""},
 {"ID": 654128400767909898, "Timestamp": "2019-12-11 01:12:43", "Contents": "wait", "Attachments": ""},
 {"ID": 654128309793456154, "Timestamp": "2019-12-11 01:12:22", "Contents": "usually it takes literally
years", "Attachments": ""},
 {"ID": 654128274217369631, "Timestamp": "2019-12-11 01:12:13", "Contents": "damn", "Attachments":
""},
 {"ID": 654128244580155414, "Timestamp": "2019-12-11 01:12:06", "Contents": "that is a much faster
install", "Attachments": ""},
 {"ID": 654127757566935050, "Timestamp": "2019-12-11 01:10:10", "Contents": "i read the tomshardware
thingy", "Attachments": ""},
 {"ID": 654127731826753536, "Timestamp": "2019-12-11 01:10:04", "Contents": "seems really cool",
"Attachments": ""},
 {"ID": 654127714428780584, "Timestamp": "2019-12-11 01:10:00", "Contents": "i should tho",
"Attachments": ""},
 {"ID": 654127704186028053, "Timestamp": "2019-12-11 01:09:57", "Contents": "nope", "Attachments":
""},
 {"ID": 654126820823924738, "Timestamp": "2019-12-11 01:06:27", "Contents": "me", "Attachments": ""},
 {"ID": 653779426760327178, "Timestamp": "2019-12-10 02:06:01", "Contents": "and it said something
about sponge", "Attachments": ""},
```

*Portion of YAO00896405*

**18.** Inadequate search terms: David's counsel acknowledged, *see* Decl. ¶¶ 58–69, that they have only applied (1) search terms used to identify documents relating to the codes at issue in the litigation ("Code Terms") and (2) search terms related to document requests in *Yao v. Chen* ("*Yao* Terms"). *See* Ex. 3, J.R.112 (7:2–10) (Tr. M&C Dec. 17, 2025). *See* Decl. ¶ 59–63.

**19.** Among others, such terms are not sufficient to locate documents responsive to *Chen v. Chen* RFPD Nos. 1, 3, 9, 10, 11–16, 19, and 25 because those requests seek information that would not be identified by the existing *Yao* Terms and Code Terms (for example, non-privileged communications about this action, the taking of property from a former co-owner, and communications about traditional or decentralized monetary accounts). Robert's counsel detailed these issues in a December 17, 2025, meet and confer. Ex. 3, J.R.112–15. David's counsel has refused to adjust the terms. *See, e.g.*, ECF 190 at 8; *see also* Decl. ¶ 68. By not running adequate search terms, David and Li Fen deprive Robert of material evidence. *See* Decl. ¶¶ 57–68.

**20.** *David and Li Fen's counsel have, in bad faith, refused to comply with their agreement to provide the list of Discord and Telegram sources being searched*. Their counsel have failed to provide a complete and accurate list of the Discord and Telegram channels and servers searched for documents responsive to requests in *Chen v. Chen*, despite having agreed to provide these on August 1, 2025 (*see* Ex. 27, J.R.624; ECF 168-1 at 85 (42:16–44:9) (Tr. M&C Aug. 20, 2025)), despite a ROG asking David to identify these (*see* Ex. 17, J.R.552, ROG 24), and despite this Court's Order (ECF 183 at item 10). *See* Decl. ¶¶ 70–94. David's counsel admitted that they have never provided the information for Telegram. Ex. 3, J.R.116 (21:2–4) (Tr. M&C Dec. 17, 2025). Their list for Discord is incomplete: David's counsel have produced Discord messages from conversations on channels *not listed in* what they claim as the final list of Discord sources they searched (which they call "Exhibit A"). *See* Decl. ¶ 94.

**21.** *David, Li Fen, and their counsel, in bad faith, made an entire production of inauthentic documents and waited for Robert's counsel to identify the issue before even trying to correct it.* David and Li Fen's fifth production of documents contained hundreds of incomplete and inauthentic documents. *See* Decl. ¶¶ 95–101. Their counsel knew they had made this faulty production and still waited until Robert's counsel spent significant effort identifying the issues before acknowledging, in piecemeal fashion, that the production was not trustworthy. They knowingly produced Discord conversations that only contained David's messages and left it to Robert's counsel to raise this issue. *See* Ex. 30, J.R.640–52; ECF 106-2 at 43 (162–63) (Tr. M&C Jan. 8, 2025). Their counsel did not tell Robert's counsel that they produced message chains omitting relevant messages from the conversations. *See* Decl. ¶ 98–101. Months later, Robert's counsel discovered these omissions. *See* Decl. ¶ 97, 101. Robert had to serve a motion to compel and hold three meet and confers to secure an agreement that Li Fen would produce corrected documents. ECF 139 at 3, 13–14. The months of delay in obtaining these documents increased Robert's expenses and, since the corrected documents do not replace the inauthentic documents (as they have different Bates numbers and different numbers of pages), it has created a messy mix of inauthentic and corrected documents in Li Fen's productions.

### C. David, Li Fen, and Their Counsel's Document Discovery Abuses Materially Prejudice Robert.

**22.** David, Li Fen, and their counsel's bad faith process of using knowingly inadequate search terms to search a knowingly incomplete set of documents and dumping the resulting documents without review on Robert's counsel has deprived Robert of material evidence for his claims and defenses. David and Li Fen have the most relevant evidence that David and Sam knew about the Jump discussions before the 10% transfer. David is also the only one who has evidence for what code was running when, and the changes he and others made to that code, as well as identification

of the decentralized financial accounts where he diverted the income from those codes. David and his counsel's document production process is insufficient to locate this evidence.

**23.** In addition, David's document dumps are designed to waste Robert's counsel's time and drive-up Robert's legal bills. The productions are replete with documents that have no relevance, but that does not reduce the time Robert's counsel has to spend reviewing documents. Robert's counsel still must review each document—some of which are Discord conversations that are more than 100 pages long and do not list David or Robert as participants[7]—only to then determine that David's counsel produced the document because it was a false hit, and not because it was responsive.

***To summarize David, Li Fen, and their counsel's pervasive and systematic bad faith conduct in document discovery*** **(Appendix 1):**

| **Discovery Violations** | **Basis for Sanctions (Document Discovery)** |
|---|---|
| • Violations of this Court's Scheduling Order (ECF 129);<br><br>• Delaying discovery to "re-collect" David and Li Fen's documents, admittedly the least complete set of documents able to be collected due to David's deletions; only searching this re-collection; | **Orders and Rules violated**:<br><br>**ECF 129** (failing to substantially complete document discovery by Sept. 19, 2025)<br><br>**ECF 167** (failing to timely request a joint motion for extension of time)<br><br>**ECF 183 at items 3, 10, 11** (failing to produce all responsive documents; failing to disclose all Discord and Telegram sources being searched)<br><br>**Fed. R. Civ. P. 34** (failing to produce responsive documents, and failing to produce documents in a proper format)<br><br>**Sanctions warranted under:**<br><br>**Rules 16(f)(1)(C)** and **37(b)(2)(A)** for violating ECF 129; failing to timely meet and confer about, and request, a modification to the scheduling order, under ECF 167; and failing to produce all responsive discovery by January 20, 2026, as required by ECF 183. *See Brito v. New Life Healthy Living, LLC*, No. CV CJC-24-1124, 2025 WL 2638030, at *5 (D. Md. Sept. 9, 2025) (sanctions imposed for not being |

---

[7] For example, one conversation, YAO01442719, is 113 pages.

| | |
|---|---|
| • Production of document "dumps" of nonresponsive, irrelevant, documents; | "diligent in locating and producing responsive records"); *see also Hare v. Opryland Hospitality, LLC*, No. DKC 09–0599, 2010 WL 3719915, at *3 (D. Md. Sept. 17, 2010) ("A court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril[.]") (quotation omitted). Their failure to run proper search terms should be treated as a failure to respond to requests for the production of documents, and a violation of the Court's Order (ECF 183) to produce all responsive documents by the corresponding deadlines. |
| • Production of documents in a format that was not the form in which the documents are ordinarily maintained or reasonably usable; | **28 U.S.C. § 1927** for "[n]eedless [p]rolonging of [l]itigation for an [i]mproper [p]urpose," *Shank v. Eagle Techs., Inc.*, No. CIV.A. RWT-10-2231, 2013 WL 4442033, at *8 (D. Md. Aug. 15, 2013), *report and recommendation adopted sub nom. Shank v. Eagle Techs.*, No. CIV.A. RWT 10-2231, 2013 WL 5487865 (D. Md. Sept. 30, 2013), specifically: by insisting on re-collecting all of the (undeleted) data previously collected, insisting on searching only this least complete set of data, and thus knowingly not producing all responsive documents, and misleading the Court and Robert on the status of their discovery productions. |
| • Knowingly producing inauthentic, incomplete documents (Fifth Production); and | **Rule 26(g)** for document dumps, a "tactic" that "can bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents in order to glean information which may be relevant," as this is exactly what Robert's counsel is having to do. *See John W. Daniel & Co., Inc. v. Durham Public Schools Bd. of Educ.*, No. 1:07CV61, 2008 WL 2781164, at *1 (M.D.N.C. March 7, 2008) ("It makes no sense for Plaintiff to argue, as it does in giving 40,000 documents to Defendants, that 'going through the documents is too burdensome for us, therefore you do it.'"). In addition, David's counsel improperly and falsely certified that they had produced all responsive documents, *see* ECF 190 at ¶¶ 3, 7, 9 (all contain improper certifications under Fed. R. Civ. P. 26(g)), and purport to state that David and Li Fen produced all responsive documents, which was false at the time and continues to be false). |
| • Failure to run adequate search terms, and to disclose sources being searched. | |

III.   **BAD FAITH CONDUCT IN WRITTEN DISCOVERY: DAVID, LI FEN, AND THEIR COUNSEL VIOLATED COURT ORDERS, RENEGED ON THEIR AGREEMENTS, AND SERVED DEFICIENT AND FALSE DISCOVERY RESPONSES, REQUIRING SANCTIONS.**

David, Li Fen, and their counsel have not served *one* single set of sufficient responses to the Robert Parties' RFPDs or ROGs. **All** remain deficient.

**A.** **First & Second Set of RFPDs and Subpoena in _Yao v. Chen_: David, Li Fen, and their counsel violated Court Orders (ECFs 95, 135, 167 & 183) by failing to amend their responses to these RFPDs and the Subpoena.**

**24.** Robert's counsel served motions to compel responses to the First and Second Set of RFPDs on **October 7, 2024,** and **November 11, 2024,** and a Notice of Intent to File a motion to compel David's compliance with the Subpoena on November 18, 2024 (ECF 81)**.**

**25.** In December 2024, the Court ordered the parties to meet and confer in good faith to resolve discovery disputes concerning the First and Second Set of RFPDs and the Subpoena on David in _Yao v. Chen_, _inter alia_. ECF 95. In the January 2025 Court-ordered meet and confers, David and Li Fen agreed

- For the First Set of RFPDs (_Yao v. Chen_): to produce documents responsive to RFPDs 7, 8, and 9, _see_ 106-1 at 35–36, 45 (131–135, 171) (Tr. M&C Jan. 3, 2025).

- For the Second Set of RFPDs (_Yao v. Chen_): to serve substantive responses to every request except two requests withdrawn by RC Security, _see_ 106-1 at 45 (171) (Tr. M&C Jan. 3, 2025).

- For all RFPDs (including the Subpoena on David) (_Yao v. Chen_): to serve amended responses and objections to clarify whether they were withholding any responsive documents and, if so, on what grounds, 106-3 at 18 (64) (Tr. M&C Jan. 10, 2025). David withdrew all of his objections to the Subpoena. _Id._

**26.** To this day, David and Li Fen have not complied with any of these agreements, showing that their counsel did not meet and confer in good faith as _required_ by ECF 95.

**27.** At a hearing on November 20, 2025, and by a written Order (ECF 183), the Court ordered Li Fen to serve amended responses to the First and Second Set of RFPDs by November 24, 2025. ECF 183 at Item 2. **She did not**. With respect to the Subpoena on David, the Court ordered David to "identify documents already produced and provide written certification under Fed. R. Civ. P. 26(g)" by November 24, 2025. _Id._ at Item 7. **He did not**. Compliance with ECF 183 and the ECF 95 meet and confer agreements is **_still_** outstanding.

**28.** ECF 183 also required that, by November 24, 2025, David's counsel identify documents already produced in response to the Subpoena's RFPDs and provide written certification under Rule 26(g). David's counsel **did not do so**. Decl. at ¶ 103; Appendix 2.

**29. Severe Prejudice:** Much of the most relevant discovery in both cases is in David's possession only, such as his Discord communications about Robert, OtterSec, the Codes, Jump, the dissolution, and the OtterSec asset sale. Because David and Li Fen have not properly responded to RFPDs, Robert is left with "no straightforward way to track the documents produced to their corresponding requests." *Brito v. New Life Healthy Living, LLC*, No. CV CJC-24-1124, 2025 WL 2638030, at *3 (D. Md. Sept. 9, 2025) (awarding sanctions for deficient discovery responses). This seriously hinders Robert's defense. For instance, David frequently chatted with Philip Papurt on Discord, and they may have discussed the 10% transfer of Sam's interest in OtterSec and the Jump negotiations. However, it appears Li Fen has failed to produce many communications with Philip Papurt (including most of those in 2024 and 2025), depriving Robert of this evidence. Because David and Li Fen did not properly respond to RFPDs, Robert does not know if this is because David is improperly withholding those, failed to search the correct Discord channels, or has spoliated more evidence. David and Li Fen's responses simply state that they will "make a good faith effort to locate and produce" responsive documents, a meaningless response at this stage. *See* Ex.13, J.R.498–99, 502 (Responses to RFPDs 2–5, 11); Ex. 14, J.R.511–19 (Responses to Subpoena RFPDs 1–7, 15, 17, 19–20). Decl. at ¶¶ 79, 103; Appendix 2.

**B.** *Yao v. Chen* **– First Set of ROGs: Li Fen and her counsel violated Court Orders (ECFs 95 & 183) by failing to amend her answers to the First Set of ROGs.**

**30.** In January 2025, for the First Set of ROGs (Ex. 21, J.R.583–88), pursuant to ECF 95, Li Fen agreed to amend her responses to ROGs 2, 5, 9, 10, 11, 12, 13, and 16. *See* ECF 106-1 at 37–42 (137–59) (Tr. M&C Jan. 3, 2025). **She never amended her answers**. Appendix 2.

**31.** At a hearing on November 20, 2025, and <u>by Order (ECF 183, item 4), the Court directed Li Fen to serve her amended answers to the First Set of ROGs by November 24, 2025</u>. **She did not**. In their letter to the Court, David's counsel states, incomprehensibly: "Arguably, any current objections should be in relation to this most recent iteration of these discovery responses, from August 29, 2025 [Li Fen's Answers to the <u>*Second* Set of ROGs</u>], and not in relation to Defendant's First Set of Interrogatories to Li Fen Yao dating way back to April of 2024." ECF 190 at item 4.

**32.** Robert's counsel has repeatedly educated Li Fen's counsel about what the amended responses are required to address, *see* ECF 106-1 at 16–17 (53–57) (Tr. M&C Jan. 3, 2025), including by pointing them to Meet and Confer transcripts and motion to compel briefing.

**33. Severe Prejudice:** Li Fen has not provided all the instances in which Robert referenced Jump in conversations with David or Sam Chen, as Robert sought in ROG 2 (Ex. 21, J.R.586), information that is essential to Robert's defense that Sam (and David) knew about the Jump discussions *before* David offered to transfer 10% of his father's interest in OtterSec to Robert. She has also not fully answered, among others: ROG No. 5, about the "code", "other property," and "information" that David Chen claims he "took with him" from OtterSec; ROG No. 12, about the specific misrepresentations and/or omissions on which Li Fen alleges Sam Chen relied; and ROG No. 16, about valuation of the litigation claims. Ex. 22, J.R.597–98, 600, 602. She has denied Robert this material evidence for his defenses.

**C.** <u>***Yao v. Chen* – Second Set of ROGs**</u>**: David, Li Fen, and their counsel served four sets of deficient answers to the Second Set of ROGs, unnecessarily protracting the litigation, driving up costs, and evading clear responses about David's spoliation.**

**34.** Robert's Second Set of ROGs on Li Fen (Ex. 8, J.R.385–90) focus on David and Li Fen's document preservation, collection, and deletion of relevant evidence in light of Robert's discovery

that David had deleted more than *17,000* Discord messages during this litigation. This information is essential for determining what relevant evidence David has destroyed.

**35.** On **April 10, 2025**, Li Fen served responses to the Second Set of ROGs. *See* Ex. 9, J.R.391–409. Li Fen's responses stated that her counsel's 1.5-page "analysis," served on April 1, 2025, and which (falsely) concluded that "no relevant Discord messages have been deleted or destroyed," *see* Ex. 23, J.R.608, was sufficient and that other information was privileged. Her response to ROG No. 17 was patently false. In it she stated that, "to the best of her knowledge and after making reasonable inquiry, she is unaware of any relevant documents that were destroyed, lost or transferred on or after September 20, 2022." Ex. 9, J.R.405. She made this statement, also signed by her attorneys, with full awareness at that time that David Chen had deleted 17,222 Discord messages since February 2023, and that they had not and could not review copies of most of those messages, as they were deleted for all participants on the chat, forever. (David recently acknowledged at his second spoliation deposition on February 3, 2026, that her statement was false. Ex. 7, J.R.339–40 (136:17–137:2)).

**36.** On **April 30, 2025**, the Court ordered that all disputes required on-the-record good faith meet and confers. ECF 135. The parties met and conferred on **May 9, 2025**. ECF 168-1 at 344. On **May 16, 2025**, Robert served a Motion to Compel identifying the same deficiencies.[8]

**37.** On **May 30, 2025**, Li Fen and David (who also verified the answers) served first amended answers, which withdrew all privilege objections. *See* Am. Responses, Ex. 10, J.R.410–30. These answers continued to evade straightforward responses. On **June 26, 2025**, Robert's counsel again held a meet and confer, and, on **June 30, 2025**, Robert's counsel served another motion to compel.

---

[8] The parties agreed under Local Rule 104.8(a) to extend the deadline for service of a Motion to Compel from May 12 to May 16. Email from S. Plotnick (May 12, 2025).

**38.** On **July 17, 2025**, David and Li Fen *again* served responses—the Second Amended Answers (the third iteration). Ex. 11, J.R.431–61. Incredibly, on **July 30, 2025**, David Chen testified that his and his mother's July 17 responses were *still* inaccurate. *See* Ex. 5, J.R.194 (7:20–21). David also testified that the first time he looked at documents to understand what he had deleted in a server with relevant conversations was the "Thursday or Friday" before his deposition. *Id.* at 48:18–49:11. In other words, on April 1, 2025, when David's counsel had represented that David had not deleted any relevant Discord messages, David had not actually analyzed what was deleted. Yet David, Li Fen, and their counsel signed three sets of Answers to the Second Set of ROGs stating that "after making reasonable inquiry" no "responsive documents" were lost, destroyed, or transferred after September 20, 2022, when none of them had, in fact, made a reasonable inquiry and when, in fact, David *had* deleted responsive and relevant documents. Ex. 9–11, J.R.405, 426, 456–57.

**39.** On **August 30, 2025**, David and Li Fen served another (Third) amended version of her answers to ROGs (the fourth iteration). The deficiencies persisted, indicating that the four meet and confers concerning these ROGs were not conducted in good faith, in violation of ECF 135.

**40.** In late August 2025, David and Li Fen's counsel insisted on "re-collecting" all documents, and only searching the re-collection, not the prior collection of documents. *See supra* at Section II.A. This has created many issues, *see id.*, including that Li Fen and David's answers to these ROGs are now incomplete and incorrect as they relate to collections of data, because the answers only discuss the earlier collections of data, which Li Fen and David are no longer using. None of the answers have addressed what data has now allegedly been "re-collected," or when they were re-collected.

**41.** At the **November 20, 2025,** hearing, and <u>by written Order (ECF 183, item 5), the Court ordered Li Fen's counsel to meet and confer regarding the remaining deficiencies</u>. Counsel did so and submitted a spreadsheet to Chambers identifying issues on January 14, 2026. *See* ECF 191.

**42. Severe Prejudice:** David and Li Fen have persistently refused to answer in a straightforward manner what David collected and preserved and when, and the subject matter of what he deleted. David's counsel has now admitted that the re-collection of data (not addressed at all in these ROGs) is missing even more relevant data, including emails, that David has deleted since the first collections. The extent of David's spoliation has been the topic of two depositions, more than a year of discovery, and is the subject of a forthcoming motion for sanctions. His persistent destruction of relevant evidence—combined with his counsel's malfeasance in determining and reporting on what has been collected and deleted—has deprived Robert of an unknowable amount of material evidence, including evidence of David's knowledge of Jump discussions and his stolen codes.

**D.** ***Chen v. Chen* – First and Second Sets of ROGS and RFPDs: David and his counsel served late and deficient responses to discovery.**

**43.** On **May 23, 2025**, Robert served his **first sets of ROGs and RFPDs** in *Chen v. Chen*. David's responses, on June 23, 2025, were woefully deficient. Ex. 15–16, J.R.522–48. For instance, in response to ROG No. 5 asking him to "[e]xplain with specificity the creation, development, and use of" the Codes at the heart of the action, he responded that "[s]ubject to the foregoing objections, and without waiving any of these objections, David states that all of the requested specificity regarding the creation, development, and use of [the Codes] can be found on Github." Ex. 15, J.R.529. David has since admitted at depositions to deleting the Github history for the Codes, thereby making this statement erroneous, in addition to being improper. *See, e.g.*,

Ex. 5, J.R.224 (125:20–126:3); Ex. 6, J.R.266–67 (32:22–33:4) (confirming prior testimony as to deletions).

**44.** The parties met and conferred on **July 18, 2025**, and on **July 22, 2025**, Robert's counsel served a motion to compel with respect to both the ROGs and the RFPDs. With a one-week extension, David's opposition was due on August 12, 2025. **David missed the extended deadline** and did not serve his Opposition until **a month later, on September 15, 2025**, waiving the arguments raised in that Opposition. *Baptiste v. Nat'l R.R. Passenger Corp.*, No. 14-cv-3279, 2015 WL 5714103, at *2 (D. Md. Sept. 28, 2015). *See* Decl. ¶ 103; Appendix 2.

**45.** In the meantime, on **August 29, 2025**, David served Amended Answers to the First Set of ROGs. David did not amend his Responses to the RFPDs. Both responses remain deficient. As set forth in the spreadsheet submitted to this Court (*see* ECF 191), David agreed to amend most of the disputed responses but still has not done so, continuing his pattern of recalcitrance, and denying Robert access to information.

**46.** On **August 15, 2025**, Robert **served second sets of ROGs and RFPDs** on David. Ex. 17, 19, J.R.549–53, 567–72. David **served no responses by the deadline** (September 15, 2025). Thereafter, the Court ordered David to respond—without objections—by no later than November 24, 2025 (ECF 183, Item 6), and to produce responsive documents.[9] David **was late again**, responding to the ROGs on November 25, 2025 (in responses dated November 24), and did not respond to the RFPDs until December 5, 2025. David's responses to both sets of discovery improperly included new objections. Ex. 18, 20, J.R.554–66, 573–82; *see also* Spreadsheet (Jan. 14, 2026), ECF 191.

---

[9] The Court ruled that David had waived the opportunity to assert objections. ECF 184 at 110 ("the time has long come and pas[sed] to object to these requests . . . you just need to be producing the materials . . . you just need to get them to them").

**47. Severe Prejudice**: David and his counsel's misconduct deprives Robert of material evidence about what David stole, where he is running the stolen codes, and the damage this caused Robert and OtterSec. For example, RFPD 21 requests documents "sufficient to identify all liquidator bots You [David] are running and the platforms on which You are running such liquidator bots." Ex. 19, J.R.570. David has never identified the documents responsive to this request. Despite earlier representing to the Court that "we have now produced all of the non-Discord and Discord related documents that are responsive to all of the pending issues in both proceedings of this consolidated litigation," ECF 190 at ¶ 7, David's counsel confirmed that he does not actually know whether he produced the documents "sufficient to show" the bots and platforms, and **did nothing to verify he had done so *before* claiming to have produced "all" of the responsive documents**. Ex. 4, J.R.175 (29:3–14) (Tr. M&C Feb. 18, 2026).

***To summarize Li Fen, David, and their counsel's persistent and systemic bad faith conduct with respect to written discovery*** (Appendix 1):

| **Discovery Violations** | **Basis for Sanctions (Written Discovery)** |
|---|---|
| | **Efforts to secure compliance include:** |
| • Failing to amend responses to First Set of RFPDs on Li Fen Yao in *Yao v. Chen* (served April 22, 2024); <br><br> • Failing to respond substantively to Second Set of RFPDs on Li Fen Yao in *Yao v. Chen* (served Oct. 4, 2024); <br><br> • Failing to amend responses to First | - **First Set of ROGs, First & Second Set of RFPDs, and Subpoena in *Yao v. Chen***: two motions to compel (10/7/24, 11/11/24); five meet and confers (1/3/25, 1/8/25, 1/10/25, 5/12/25, 9/22/25); correspondence from Robert's counsel; Court Hearing; and Court Orders. <br><br> - **Second Set of ROGs in *Yao v. Chen***: two motions to compel (5/16/25, 6/30/25); five meet and confers (5/12/25, 5/15/25, 6/26/25, 8/13/25, 8/20/25); correspondence from Robert's counsel; Court Hearing; and pending Spreadsheet (1/14/26). <br><br> - **First Set of ROGs and RFPDs in *Chen v. Chen***: one motion to compel (7/22/25); three meet and confers (7/18/25, 8/20/25, 9/22/25); correspondence from Robert's counsel; Court Hearing; and pending Spreadsheet (1/14/26). <br><br> - **Second Set of ROGs and RFPDs in *Chen v. Chen***: three meet |

| | |
|---|---|
| Set of ROGs on Li Fen Yao in *Yao v. Chen* (served April 22, 2024);<br><br>• Failing to amend responses to Subpoena on David in *Yao v. Chen* (served June 6, 2024) after David withdrew objections on Jan. 10, 2025;<br><br>• Failing to fully and accurately respond to Second Set of ROGs on Li Fen Yao in *Yao v. Chen* (served March 11, 2025);<br><br>• Failing to amend responses to First Set of RFPDs and ROGs on David in *Chen v. Chen* (served May 23, 2025); and<br><br>• Failing to amend responses to Second Set of RFPDs and ROGs on David in *Chen v. Chen* (served Aug. 15, 2025) | and confers (9/22/25, 12/5/25, 12/17/25); correspondence from Robert's counsel; Court Hearing; Court Order; and pending Spreadsheet (1/14/26).<br><br>- **Subpoena on David:** Notice of Intent to File Motion to Compel (ECF 81); three meet and confers (1/3/25, 1/10/25, 5/12/25).<br><br>**<u>Orders and Rules violated:</u>**<br><br>**ECF 95** (engaging in bad faith meet and confers on 1/3/25, 1/8/25, 1/10/25, as evidenced by failure to amend responses to First Set of ROGs and First and Second Set of RFPDs in *Yao v. Chen*, as agreed);<br><br>**ECF 135 & 167** (engaging in bad faith meet and confer on 9/22/25 by representing that they had produced documents responsive to the Subpoena on David in *Yao v. Chen* when that was not true, as evidenced by persistent failure to identify documents already produced; and failing to commit to amending ROGs and RFPDs, despite their January 2025 agreement to do so, *see* Decl. at ¶ 15);<br><br>**ECF 135** (engaging in bad faith meet and confers on 5/12/25, 5/15/25, 6/26/25, 8/13/25, and 8/20/25, as evidenced by persistent failure to provide accurate responses to Second Set of ROGs in *Yao v. Chen* despite two motions to compel).<br><br>**ECF 135** (engaging in bad faith meet and confer about first set of ROGs and RFPDs in *Chen v. Chen* on 7/18/25, as evidenced by the issues persisting in amended responses following this meet and confer).<br><br>**ECF 183 at items 2 (First and Second Set of RFPDs in *Yao v. Chen*) & 9 (responsive Discord messages)** (failing to amend by Nov. 24, 2025, and failing to identify documents already produced and provide written certification under Rule 26(g) by Nov. 24, 2025);<br><br>**ECF 183 at item 4 (First Set of ROGs in *Yao v. Chen*)** (failing to provide amended responses by Nov. 24, 2025)<br><br>**ECF 183 at item 6 (Second Set of ROGs and RFPDs in *Chen v. Chen*)** (failing to timely and fully respond, and failing to produce responsive documents by Nov. 24, 2025, and, given their document dumps since then, it is unclear whether all responsive documents have been produced, including documents sufficient to identify any Solend Liquidator Codes David has run (RFPD 21) and communications about Robert Chen (RFPD 24));<br><br>**ECF 183 at item 7 (Subpoena on David in *Yao v. Chen*)** (failing to identify documents already produced and provide written certification under Rule 26(g) by 11/24/25; David's counsel's later response (ECF 190) also did not identify or certify *any* specific RFPDs; failing to |

produce all responsive documents, as ordered in ECF 183).

**Rule 26(e)** for failing to "supplement or correct" ROG and RFPD responses that are "incomplete or incorrect," and to do so "in a timely manner";

**Rule 26(e)** for failing to supplement or correct interrogatory and RFPD responses "as ordered by the Court." *See* ECF 183, items 2, 4, 7 & 9.

**Rule 26(g)** for certifying responses to Second Set of ROGs in *Yao v. Chen* without conducting a reasonable inquiry, as evidenced by the false statements about the deletions of relevant evidence.

**Rule 26(g)** for certifying evasive and incorrect discovery responses, *see* First and Second Set of ROGs in *Yao v. Chen*; First and Second Set of RFPDs in *Yao v. Chen*; First and Second Set of ROGs and RFPDs in *Chen v. Chen*. *See Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 389-91 (D. Md. 2013).

**Rule 37(a)(4)** for providing "evasive or incomplete" responses and answers to discovery.

**Sanctions warranted under:**

**Rules 16(f)** and **37(b)(2)** for violating ECFs 95, 135, 167 & 183. In addition to violating this Court's Orders, David and Li Fen repeatedly served deficient discovery responses, and their document responses (which have not been amended as they agreed to do in January 2025), do not provide any meaningful information about what they are producing and what they are withholding. *See Branhaven*, 288 F.R.D. at 389 (awarding costs and fees against plaintiff and their counsel, whose misconduct included serving "essentially meaningless" responses to document requests when "plaintiff's counsel had done little, or nothing, in terms of a reasonable inquiry and indeed had no knowledge of the number and identity of responsive documents.")

**Rule 26(g) for:**

Failing to certify productions as ordered, ECF 183. *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-01585 (LJL), 2023 WL 3495091, at *14 (S.D.N.Y. May 17, 2023) (Rule 26(g) "carries with it the obligation on the responding party's counsel to monitor compliance so that all sources of discoverable information are identified and searched."), *aff'd,* 143 F.4th 51 (2d Cir. 2025) (quotation omitted); and

Repeatedly signing and serving false, evasive, or incomplete discovery responses. *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 506 (D. Md. 2000) ("Rule 26(g) is designed to curb discovery abuse by explicitly encouraging imposition of sanctions.") (quoting Advisory

| | Committee Notes to 1983 Amendments to Fed. R. Civ. P. 26.) |
| | **Rule 37(c)(1)(C)** for failing to supplement or correct discovery responses. |
| | **Rule 37(d)(1)(A)(ii)** for violating Rule 37(a)(4) with evasive, incorrect, and incomplete answers and thus failing to disclose, answer, or respond to the requests. |
| | **28 U.S.C. § 1927** for multiplying proceedings in bad faith by stalling the discovery process. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 511 (4th Cir. 2018). |
| | **The Court's inherent authority** to punish this bad conduct. *See Six*, 891 F.3d 508. |

## IV.    DAVID, LI FEN, AND THEIR COUNSEL MUST BE SANCTIONED FOR THIS ABUSIVE, VEXATIOUS, BAD FAITH CONDUCT.[10]

David, Li Fen, and their counsel's persistent practice of "ignor[ing] outright the court's orders or [ ] submit[ting] chaotically and defectively to them" justifies as sanctions: (1) an award of fees and expenses against David, Li Fen, and their counsel, (2) dismissal with prejudice of *Yao v. Chen*, or at a minimum Li Fen's Counts III and IV, and (3) a default judgment against David Chen in *Chen v. Chen*. *See Mut. Fed. Sav.*, 872 F.2d at 94; *see also Mey*, 71 F.4th at 218.

In evaluating the appropriateness of a sanction, including a default judgment, courts in the Fourth Circuit evaluate the *Wilson* factors: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mey*, 71 F.4th at 218 (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977)).

---

[10] David and Li Fen and their counsel's conduct is summarized in tables at **Appendices 1** and **2**.

All four factors support these sanctions: **(1) As Detailed Above, David, Li Fen, and Their Counsel Acted in Bad Faith.** David, Li Fen, and their counsel have pervasively and systematically failed to engage in the discovery process in earnest, showing they have "acted in bad faith and abandoned [their] duty to prosecute [their] case." *See Proctor v. Charlestown Cmty. Inc.*, No. GLR-22-1365, 2023 WL 8478903, at *4 (D. Md. 2023) (granting Rule 37(d) dismissal sanction); *see also Mut. Fed. Sav.*, 872 F.2d at 93 ("noncompliance and . . . haphazard compliance … [with] specific discovery orders" showed "a pattern of indifference and disrespect to the authority of the court" amounting to bad faith) (affirming sanction of default judgment).

**(2) David, Li Fen, and Their Counsel's Conduct Severely Prejudiced Robert.** David, Li Fen, and their counsel have refused to provide evidence—much of it that is only in their possession—about, among other issues: David and Sam's knowledge of the Jump negotiations and the specific representations which Li Fen claims as the basis for her fraud and breach of fiduciary counts (critical evidence for Robert's defenses of Counts III and IV in *Yao v. Chen*); David's taking of the codes and other property from OtterSec, what code was running when, and what changes were made to the code (necessary for Robert's defenses in *Yao* and his claims in *Chen v. Chen*); David's income generated from the codes and where it was diverted (necessary for the defense in *Yao* that David caused any alleged injury to the Estate, and for damages in *Chen*), David's and Li Fen's knowledge of the OtterSec asset sale (defense in *Yao*); David's theft of the JUP tokens (claim in *Chen*), and David's role at OtterSec (necessary for claims in *Chen* and defenses in *Yao*). David, Li Fen, and their counsel's conduct has undermined the purpose of discovery and denied Robert "basic information that strikes at the heart" of his defenses to Counts III and IV in *Yao v. Chen*. *Brito*, 2025 WL 2638030, at *6; *see also Mut. Fed. Sav* , 872 F.2d at 93 (plaintiff "suffered great prejudice as a result of the defendants' misconduct because [plaintiff] could not prove its case"

without records in defendants' possession); *Aerodyne Systems Eng'g v. Heritage Int'l Bank*, 115 F.R.D. 281, 288 (D. Md. 1987) (dismissing complaint with prejudice as a sanction where discovery misconduct prevented party from adequately preparing defenses).

As a result, Robert's counsel have spent approximately 47 hours meeting and conferring on these issues; 119 hours preparing for and attempting to facilitate meet and confers capable of resulting in compromise; more than 200 hours drafting motions to compel; more than 100 hours preparing for and attending hearings concerning some of these discovery issues; and well over 100 hours sorting through David and Li Fen's document dump and Fifth Production issues. David, Li Fen, and their counsel's conduct has been persistent for over a year.

**(3) There is a Significant Need to Deter this Conduct.** This conduct must be deterred. "If all counsel operated at this level of disinterest as to discovery obligations, chaos would ensue and the orderliness of the discovery process among counsel in federal courts, which is exquisitely dependent on honorable attorney self-regulation, would be lost." *Branhaven*, 288 F.R.D. at 392–93; *see also Mut. Fed. Sav.*, 872 F.2d at 93–94 (affirming sanctions based on "egregious conduct" including "stalling and ignoring the direct orders of the court with impunity"); *PVD Plast Mould Industries*, 31 F. App'x at 211 (affirming dismissal and award of fees under Rule 37 where plaintiff failed to comply with discovery requests and discovery orders).

**(4) Less Drastic Sanctions Would Not Be Effective**. David, Li Fen, and their counsel are unfazed by Court orders, Court deadlines, and the Federal Rules. Such abuse merits the sanctions sought herein. *See Mey*, 71 F.4th at 222 (finding no less drastic sanction appropriate in the face of "systemic discovery abuse" and "flagrant discovery violations"). Their counsel's conduct "form[ed] a mosaic of half-truths, inconsistencies, mischaracterizations, exaggerations, omissions,

27

evasions, and failures to correct known misimpressions" showing "disrespect for the judicial process." *Six*, 891 F.3d at 511.

In addition, in determining the appropriateness of dismissal of a complaint as a sanction, the Court considers the six *Shaffer* factors, *see Smith v. Devine*, 126 F.4th 331, 342 (4th Cir. 2025), which support dismissal of *Yao v. Chen*, or at least of Counts III and IV:[11]

**First**, David and Li Fen's persistent bad faith conduct and callous disregard for the Rules and Court's Orders, as outlined in this Memorandum, evidence their culpability, *see Sol v. Longang*, No. 8:22-CV-02999-AAQ, 2025 WL 1257995, at *4–5 (D. Md. Apr. 30, 2025). **Second**, both David and Li Fen carry at least as much blame as their counsel here. David spoliated evidence, and both he and Li Fen have persistently defied the Court's Orders. They have repeatedly answered discovery with incomplete and inaccurate information and failed to timely amend those responses. **Third**, David and Li Fen's defiance of this Court's authority and their disregard for their discovery obligations seriously prejudices the judicial process and the administration of justice. **Fourth**, as described *supra* at pp. 5, 7–8, 12–13, 15–17, 19, and 21, Robert, OtterSec LLC, RC Security LLC, and Otter Audits LLC are severely prejudiced by David and Li Fen's bad faith conduct. **Fifth**, fees and costs alone are not sufficient to rectify the prejudice to Robert, especially when it comes to Counts III and IV in *Yao v. Chen*, which rely on evidence in David and Li Fen's possession. These Counts, at a minimum, must be dismissed. If they are not dismissed, Robert requests that the Court appoint a special master, at David and Li Fen's expense, to oversee their document productions, because their counsel has shown a complete disregard for proper document discovery processes.

---

[11] These are: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney. . . (3) the prejudice to the judicial process and administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong. . . ; and (6) the public interest." *Projects Mgmt.*, 734 F.3d at 373–74 (quoting *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993)).

*See Case v. French Quarter III LLC*, No. 9:12-cv-02804-DCN, 2014 WL 6971019, at *1 (D.S.C. Dec. 9, 2014) ("[D]istrict courts have the inherent power to appoint a special master for the administration of justice when deemed by it essential.") **Sixth**, the public interest in deterring bad faith conduct in discovery and in the administration of justice supports the sanction of dismissal of Counts III and IV in *Yao v. Chen*.

## <u>CONCLUSION</u>

The Court should grant this Motion, and award sanctions as outlined in the Proposed Order.

Dated: March 5, 2026                    Respectfully submitted,

<u>/s/ Rachel Clattenburg</u>
Rachel M. Clattenburg
Christina M. Lamoureux
Justin A. DiCharia
Joshua A. Levy
Kevin P. Crenny
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington DC 20006
Tel: 202-845-3215
Fax: 202-595-8253
rmc@levyfirestone.com
christinal@levyfirestone.com
jdicharia@levyfirestone.com
jal@levyfirestone.com
kcrenny@levyfirestone.com

*Attorneys for Defendants Robert Chen,*
*Otter Audits LLC, and RC Security LLC,*
*and Plaintiffs Robert Chen and OtterSec*
*LLC*

29