## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LI FEN YAO, as administrator of the Estate of
Sam Mingsan Chen,

        Plaintiff,

    v.

ROBERT CHEN, OTTER AUDITS LLC, and RC
SECURITY LLC,

        Defendants.

Case No. 8:23-cv-00889-TDC

ROBERT CHEN and OTTERSEC LLC,

        Plaintiffs,

    v.

DAVID CHEN,

        Defendant.

Case No. 8:24-cv-03628-TDC

## DECLARATION OF RACHEL CLATTENBURG
## IN SUPPORT OF MOTION FOR SANCTIONS

1.      I am counsel for Defendants Robert Chen, Otter Audits LLC, and RC Security LLC in *Yao v. Chen* and Plaintiffs Robert Chen and OtterSec LLC in *Chen v. Chen* (collectively, "Robert" or "Robert Parties"). I submit this declaration in support of Robert Chen's Motion for Sanctions and the accompanying Memorandum in Support. The facts set forth in this declaration are based upon my personal knowledge and my review of relevant documents.

### David and Li Fen's Counsel's Bad Faith Conduct

2.      For months, David's counsel[1] has met and conferred with Robert's counsel in bad faith. They have made the meet and confer process more difficult through their conduct. They have

_____

[1] This declaration often refers to David and Li Fen's counsel as "David's counsel" for brevity.

1

belittled the meet and confer process, failed to prepare for meet and confers, and generally interacted unprofessionally with Robert's counsel.

3.      In addition to emails that have already been filed on the docket (including at ECFs 166, 168-2, 169-2, 176-4, 176-7), a representative sampling of emails between Robert's counsel and David's counsel concerning meet and confers is attached as Exhibit 1, J.R.001–40, and a true and correct copy of each is included in that Exhibit.

4.      For example, on August 19, 2025, David's counsel accused Robert's counsel of misusing the meet and confer process, suggesting Robert's counsel's request for a meet and confer was "pretty comical, and possibly hypocritical to me, but maybe that's just me and my current cynical views on the Robert Chen/Levy Firestone approach to this ongoing litigation." ECF 169-2 at 6[2] (Email from A. Giles (Aug. 19, 2025)).

5.      In an August 27, 2025, email concerning discovery disputes, David's counsel stated: "It is clear (at least to us) that you and your colleagues are motivated by some warped desire to waste our time and resources on every little nit-picking issue." David's counsel then stated that they would "not be responding to ANY of your emails over the coming days" while they worked on overdue discovery responses and, "then, and only then, will we resume answering your numerous, and repeated, email inquiries regarding every discovery issue imaginable, and only then will we consider scheduling further Meet and Confer sessions with you on pending, legitimate discovery issues." ECF 176-4 at 3 (Email from A. Giles (Aug. 27, 2025)).

6.      In a September 15, 2025, email, David's counsel responded to Robert's counsel's request for another meet and confer with: "Plaintiffs and you (as their counsel) have a really bad habit of suggesting that EVERY LITTLE PERCEIVED DISCOVERY DISPUTE somehow merits

---

[2] Cites to page numbers for electronic filings are to ECF numbers rather than internal pagination.

a Meet and Confer session. Quite candidly it is laughable at times. . ." David's counsel also characterized requests to meet and confer as "wasteful in terms of time and resources" and suggested it "just continue[d] to prove your [Robert's counsel's] collective motivations in this litigation." ECF 176-7 at 4 (Email from A. Giles (Sept. 15, 2025)).

7.      In a separate email that same day concerning an opposition brief that David served a month late, David's counsel's stated: "As we discussed before, and I believe it was during the actual Meet and Confer session, you [Robert's counsel] have not been elevated to become a Judge, at least as far as I am aware, and in any regard certainly not for this case. So while you certainly can wax poetic about what you think a COURT might do in terms of considering the merits of the arguments of both sides, that's about the extent of what you are able to say." Ex. 1, J.R.002 (Email from A. Giles (Sept. 15, 2025)).

8.      In a September 16, 2025, email, David's counsel said Robert's counsel's "insistence on scheduling Meet and Confer after Meet and Confer after Meet and Confer on ANY issue has become somewhat of a joke….no offense, though I am sure you will claim offense" (ellipsis in original). ECF 166 at 1 (Email from A. Giles (Sept. 16, 2025)); *see also id.* ("How is a Meet and Confer going to help 'resolve' any of those issues. It's not.").

9.      David's counsel began a September 20, 2025, email to Robert's counsel, responding to an email in which Robert's counsel indicated they would not consent to their late and unjustified request for a modification of the scheduling order (ECF 129), with: "As usual, you definitely give everyone a good chuckle with your word choice and laughable messaging." ECF 168-2 at 2–4. David's counsel went on to make comments such as: "You [Robert's counsel] really want to tell Judge Simms that you think that is timely document production. I dare you to say that to her, but I certainly hope you do, because I cannot wait to hear her response to you on that one. Should be

3

fun, or maybe more appropriately…..funny.") (*id.* at 2); "But hey, that's great lawyering, right? Pat yourselves on the back for such great strategy!" (*id.* at 3);  and "Facts matter, and accurate facts matter even more. Why don't you guys try working on that." (*id.* at 3).

10.    On October 8, 2025, David's counsel called Robert's counsel's requests to meet and confer a "sophomoric game of serial meet and confer requests" and said "we are not going to participate in another Meet and Confer on this issue." ECF 177-1 at 1 (Email from A. Giles (Oct. 8, 2025)).

11.    Recently, on February 20, 2026, David's counsel responded to Robert's counsel's request for a meet and confer in relevant part: "Once again, though, you have conveniently (and purposefully) misstated a fair amount of the facts, which I would have thought would have been difficult to do in essentially a two-paragraph email from you….but, evidently, you must just be an over-achiever and a wonderkin [sic] in that regard. Congratulations." Ex. 1, J.R.006 (Email from A. Giles (Feb. 20, 2026)).

12.    David's counsel's bad faith is also evident from their conduct during meet and confers. True and correct copies of the transcripts of the parties' December 5, 2025; December 17, 2025, and February 18, 2026, meet and confers are attached as Exhibits 2–4, J.R.041–190. (The transcripts for meet and confers on September 22, 2025; August 20, 2025; August 13, 2025; July 18, 2025; July 1, 2025; June 26, 2025; May 15, 2025; May 12, 2025; and May 9, 2025, are docketed at ECF 168-1, in reverse chronological order.)

13.    For example, in an August 20, 2025, meet and confer, *see* ECF 168-1 at 83 (35:13–19), Robert's counsel asserted that David waived arguments in opposition to Robert's motion to compel by not timely filing an opposition. David's counsel responded: "[F]or you [Robert's counsel] to play judge for a day and suggest that, you know, that you're the one that gets to

determine whether our memorandum in opposition -- **albeit late, I acknowledge that**, I can't walk away from that -- is no longer permitted and we have waived things, I think you're giving yourself too much of a pay grade increase.") (emphasis added).

14. On September 22, 2025, Robert's counsel met and conferred with David's counsel to discuss a list of missing discovery from David and Li Fen, and to discuss Robert's intention to move for spoliation. Robert's counsel requested a meet and confer on the spoliation sanctions motion both because it was required by the Court and Local Rules and because Robert's counsel wanted to limit the dispute for the Court by determining whether David's counsel agreed that David had destroyed and could not recover certain categories of documents. ECF 168-1 at 2.

15. From the outset, David's counsel did not meet and confer in good faith. Instead of discussing the issue, which David's counsel had known would be a topic of the September 22 meet and confer since September 15 (when Robert's counsel requested the meeting), David's counsel repeatedly questioned why he had to discuss the spoliation motion, saying: "I don't know why this is part of a meet and confer. I'm not sure why any of this is part of a meet and confer. This is ridiculous to me," ECF 168-1 at 7 (17:13–16), and "You guys need to become professionals, and you're obviously not doing that." *Id.* at 7 (18:2–4). David's counsel repeatedly asked whether Robert's counsel had asked questions about deletions in David's deposition, *id.* at 7 (19:18–20:21), improperly concluding that if the topic had been discussed in a deposition by the client, then it could not be discussed by counsel in a meet and confer. David's counsel also alleged that Robert's counsel's:

> entire MO in this case, is to waste our time. That's what all this is, that's why I — that's why I'm responding the way I am to your dumb messages asking to meet and confer about every issue. Every e-mail from you and from Rachel says, "We need to meet and confer." It's like you have an automatic filter that adds in "We need to meet and confer," in every damned e-mail you sent. It's childish on your part. It's ridiculous. You guys are

> practicing law in a manner that is not acceptable and not condoned by the U.S. District Court of Maryland, and I think the judges are going to agree with this. I have given you ample opportunity to become a professional, to become collegial, to become cooperative, and you and Rachel, primarily, have not taken up that offer. You dig your heels in, and you act like completely unprofessional attorneys. You might be smart, you might have the greatest credentials in the world, you might bill your clients shitloads of money, but you are operating this case in a bad faith way, period.

*Id.* at 7–8 (20:22–22:4). The meet and confer continued in this vein, with David's counsel stating:

> We don't need to be doing this in a meet and confer, period, full stop. This is just so you can paper it upon paper upon paper upon paper and can say, "See, we have the deposition testimony, and then we had the meet and confer and we talked about it again, and Mr. Giles agreed that his client did X, Y, and Z." That's ridiculous; and if you don't see that it's ridiculous, then something's really wrong with you guys that I can't help.

*Id.* at 9 (28:3–14). David's counsel then said about Robert's counsel: "I'll give her opinions the importance that they deserve, which is nothing." *Id.* at 5–6 (12:14–13:1).

16.    David's counsel also tried to back out of agreements they had made to resolve discovery disputes in prior meet and confers. In the September 22, 2025, meet and confer, Li Fen's counsel was unable to confirm that they would provide Robert with amended responses to the First and Second sets of discovery served on her in *Yao v. Chen*, despite having agreed, <u>back in January 2025, to provide those amended responses.</u> That agreement had, at the time, resolved many of the issues in Robert's First and Second Motions to Compel. *See* ECF 168-1 at 16–18 (53–63); *id.* at 17–18 (60:13–20, 62:11–15) (Robert's counsel: "And all I was asking Steve, was I wanted a commitment. I didn't ask for a date. I didn't ask for when you were going to talk to each other. I just wanted a commitment that we were actually going to get substantive amended responses to all the document discovery in *Yao v. Chen*. That's all I was asking," and "I think the issue is we did already agree to this and you did already agree…This is something you agreed to in January,"); *id.* at 18 (62:3–10) (David and Li Fen's counsel: "I'm not saying – I'm not saying yes, I'm not saying – I'm certainly not saying no. I'm saying, I appreciate your raising it, thank you, and we'll discuss

it; but that doesn't necessarily mean that just because we've convened this meet and confer that all issues are going to be resolved through one meet and confer, that's all.").

17.    Additionally, David's counsel have often been unprepared to discuss the noticed topics in meet and confers.

18.    For example, at the August 20, 2025, meet and confer, David's counsel stated they were not "prepared to talk about substantive issues to either of those motions to compel," ECF 168-1 at 81 (27:19–21), despite Robert's counsel having notified them of the topic a week prior on August 13, 2025.

19.    Additionally, as noted *infra* (at paragraphs 63–66), during the parties' December 5, 2025, meet and confer—which occurred one week before David's non-Discord productions were due on December 12, 2025—David's counsel was unaware of what, if any, search terms they were running to identify documents responsive to RFPDs in *Yao v. Chen*. (It turned out they were not running *Yao v. Chen* search terms.)

20.    As another example, David's counsel was unprepared for the parties' December 17, 2025, meet and confer. During this meet and confer:

    a.    Robert's counsel had to remind David's counsel of the commitments they had made in a July 18, 2025, meet and confer to amend their responses to the First Set of RFPDs in *Chen v. Chen*. Ex. 3, J.R.123 (49:2–18).

    a.    David's counsel did not know the status of their own third-party discovery and wrongly indicated that David's prior counsel had produced all third-party documents. Ex. 3, J.R.124 (55:8–14). They ultimately produced, on January 21, 2026, a third-party production from Jump that they had been holding onto since

March 11, 2025. They also re-produced to Robert's counsel *all of the third-party productions Robert had produced to them*.

b.  David's counsel did not know the meaning of his own client's language in discovery responses. Ex. 3, J.R.134 (93:1–7). David also did not know the meaning of his counsel's vocabulary in his own discovery responses. A true and correct copy of the transcript of David's July 30, 2025, deposition is attached as Exhibit 5, J.R.191–256. *See id.* at J.R.206 (53:10) (Robert's counsel: "[They're] salacious, right, David? I'm using your word is that right?" David: "Sorry, what does salacious mean again?" Robert's counsel: "It's your word, David. This is an interrogatory that you verified.").

c.  David's counsel did not reasonably inquire of his client about the existence of certain documents before serving discovery responses falsely claiming that certain Discord messages did not "exist." *See* Ex. 20, J.R.579 (Response to RFPD 14). At the meet and confer, David's counsel did not know how Discord, the primary platform his client used to communicate, "works," Ex. 3, J.R.134 (94:8–95:18)—information that is essential to collecting and producing responsive documents in these cases. That information is also readily available from his own client. At the meet and confer, David's counsel still had not discussed the existence of these particular Discord channels with his client and could not explain the RFPD response. Ex. 3, J.R.133–34 (90:12 –95:18).

d.  David's counsel represented that, for RFPD 16 (which asked for "David Chen's Github history for the Relevant Period") from the Second Set of RFPDs in *Chen v. Chen*, he still had not determined whether the response needed to be amended

or supplemented. Ex. 3, J.R.134 (96:5-10). Robert's counsel served these RFPDs on August 15, 2025—three months prior to this meet and confer. *See* Ex. 19, J.R.571.

     e.  David's counsel did not know what his client meant when he stated that there were no known documents responsive to RFPD 17 (which asked for "All documents and communications related to editing, changing, or revising Github History"). This is despite counsel having signed the responses. Ex. 3, J.R.135 (97:10-98:9); Ex. 20, J.R.579–580, 582.

21.     On January 23, 2026, Robert's counsel sent David's counsel an email with a list of issues and questions about David and Li Fen's document productions and requested a meet and confer. Ex. 1, J.R.015–17 (Email from R. Clattenburg (Jan. 23, 2026)). On February 5, 2026, Robert's counsel asked: "[W]e'd like to proceed with [the meet and confer] only when you have answers to the questions we raised below in my January 23, 2026, email, and are prepared to discuss those. . . If you are not prepared to discuss those issues—all related to document productions—on February 11 or 12, 2026, let's wait to schedule a meet and confer until you are prepared to do so." Ex. 1, J.R.027 (Email from R. Clattenburg (Feb. 5, 2026)). Robert's counsel also added to the meet and confer (A) two issues about David's document productions that the parties had discussed in the December 17, 2025, meet and confer and that remained unresolved, and (B) Robert's counsel's questions about David and Li Fen's privilege logs, raised in a January 12, 2026, email. *Id.* David's counsel proposed that the meet and confer be pushed back by a week "when we are mutually available to schedule the meet and confer and can have a thorough discussion about the outstanding issues after we answer and/or respond to your questions/requests/concerns." Ex. 1, J.R.026 (Email from A. Giles (Feb. 10, 2026)). The meet and

confer was scheduled for February 18, 2026, and David's counsel confirmed: "We will get you answers/responses to your questions/requests raised in your January 23 email before February 18." Ex. 1, J.R.025 (Email from A. Giles (Feb. 11, 2026)).

22.     On February 18, 2026, David's counsel emailed Robert's counsel **14 minutes** before the start of the meet and confer with purported responses to some of the issues Robert's counsel had noticed for the meet and confer. Ex. 1, J.R.020–21. David's counsel did not respond at all to the privilege questions or the outstanding issues from the December 17, 2025, meet and confer. As to the issues raised in the January 23, 2026, email, David's counsel said the following: (1) for several issues, that he had asked their document vendor and a colleague to look into the issues the week of the meet and confer, but had no substantive answers at that time; (2) for the format of text messages, he claimed he did not have to produce these as part of a conversation (David produced individual text messages without any surrounding text messages, removing any context that would allow Robert or his counsel to understand the text message); (3) for questions about missing documents, he said that "[f]or obvious reasons"—i.e., David's spoliation—those documents no longer existed; and (4) for questions about what documents David and Li Fen had produced in response to RFPDs requesting documents "sufficient to" show certain facts, he did not cite to any documents, and instead claimed it was not his "responsibility" to do so, but that he may "attempt" to do so at some unidentified later date. *Id*. David's counsel was not prepared with any additional information during the meet and confer, and largely read verbatim from the email counsel had sent just before the start of the meet and confer. *See, e.g.*, Ex. 4, J.R.171 (14:7–16:3). David's counsel indicated he was not available for another meet and confer until the afternoon of March 2, and that no one else on his team was available for the next ten days either. Ex. 4, J.R.176 (34:13–17, 36:12–13); *see also* Ex. 1, J.R.007–8 (Email from A. Giles (Feb. 20, 2026)).

**David's Counsel's Failure to Obey the Scheduling Order (ECF 129) and
Meet the Deadline for Substantial Completion**

23.     In an email sent from David's counsel to Robert's counsel on September 19, 2025,

(the deadline for the substantial completion of discovery, ECF 129) at 4:43 pm ET, David's counsel

stated that they were "going to take [Judge Simms] up on the invitation to request modification of

the Scheduling Order deadlines," without suggesting a timeline for the extension. ECF 168-2 at 6.

At that time, David had not produced a single new document (as opposed to a corrected version of

a previously produced document) since April 24, 2025. Robert first served document requests in

*Chen v. Chen* on April 23, 2025. This means that, as of September 19, 2025, David had made no

productions responsive to RFPDs served in *Chen v. Chen*.

24.     Robert's counsel did not consent to this late, unjustified request for a modification

to the Scheduling Order. *See* ECF 168-2 at 5–6 (Email from A. Giles (Sept. 20, 2025)).

25.     David's counsel did not file a motion to modify the scheduling order until

September 23, four days after the scheduled deadline for the substantial production of documents.

*See* ECF 169.

26.     In that Motion to Modify, David claimed to be "close to reaching the point of"

substantial completion of document productions, and Li Fen claimed she had substantially

completed document production. *See* ECF 169 at ¶ 28.

27.     At that time, they had, collectively produced 4,967 documents. Between December

12, 2025, and February 20, 2026, David and Li Fen produced an additional 363,859 documents.

28.     David's counsel's claimed reason for requesting the modification of the Scheduling

Order was that David was "effectively forced" in August 2025 "to re-collect all documents, servers,

data, equipment, information, etc., including all of David's Discord messages, from February 1,

2021 to April 17, 2025," ECF 169 ¶ 22.

29.    This position contradicted David's counsel's prior representations about document collection, namely that they had already collected "more than eight terabytes of data, including Plaintiff's, Sam Chen's, and David Chen's emails; David's Telegram messages and X account; Plaintiff's, Sam's, and David's mobile phones; David's entire Discord history through the end of 2024; David's server and other hard drives; David's hardware wallets and authentication devices; David's GitHub account; and images of David's computers". ECF 117 at 1; *see also* ECF 176-3 at 17:10–16 (Tr. Hg. Feb. 13, 2025); ECF 134 at 30:1–33:19 (Tr. Hg. Apr. 29, 2025).

30.    Since the parties had only disputed the start date for discovery in *Chen v. Chen*—whether it would be Feb. 1, 2021 (Robert's position), or a later date (David's position)—the only documents David's counsel should have had to collect were from 2021 (the disputed time period) and from 2025.

31.    However, on August 27, 2025, David's counsel, for the first time stated they would actually be "re-collect[ing]" all Discord and Telegram for the entire 4-year period of 2021 through April 2025—not just the missing 2021 Discord messages and the few months missing from 2025. ECF 176-4 at 2 (Email from A. Giles (Aug. 27, 2025)).

32.    In that email, David's counsel acknowledged that they had decided to "just re-collect ALL of the Discord and Telegram messages from a start date of February 1, 2021 to an end date of April 17, 2025" because they had determined "it would be simpler, more efficient, more timely, and possibly less expensive." ECF 176-4 at 2 (Email from A. Giles (Aug. 27, 2025)). They also said they had chosen to re-collect everything "rather than attempting to supplement previous collections with new collections, piecing the entirety of those collections together like a jigsaw puzzle, while also spending the time (and the money) to de-dupe the entire document collection of any repetitive documents or information." *Id.*

33.     Robert's counsel asked David's counsel to confirm whether they had, in fact, collected all of David's data from 2021 at the time of the Preservation Order. ECF 176-4 at 4 (Email from C. Lamoureux (Aug. 22, 2025)). If they had not, and data from 2021 had remained in David's possession without being collected, then David would have had the opportunity to delete additional Discord messages from the time of their first collection until the present day—making it impossible for David's counsel's recent re-collection efforts to be comprehensive, and impossible for Robert's counsel to obtain other relevant evidence that David could have permanently deleted. David's counsel refused to answer this question, only stating generally that "[d]espite the few violations that have already been acknowledged and dealt with directly by David via the recent letter authored by CLM correcting the noted inaccuracies and via his July 30, 2025 deposition testimony, our clients, our counsel, and our vendors have complied with the intent and the requirements as stated in the Court's Preservation Order." ECF 176-4 at 2 (Email from A. Giles (Aug. 27, 2025)).

34.     Because of this risk of spoliation, Robert's counsel also asked: "What steps are you taking to ensure [David] did not delete any Discord messages since the prior 2021 collections and your 're-collection'? Please request the data from Discord of his deletions from February 1, 2025 through the present and provide it to us, to assure us that he has complied with his preservation duties here." ECF 176-4 at 4 (Email from C. Lamoureux (Aug. 22, 2025)). David's counsel did not address whether they were taking any steps to ensure such deletions had not occurred. ECF 176-4 at 2 (Email from A. Giles (Aug. 27, 2025)). They also refused to request data from Discord to verify David had not made any further deletions, stating: "[W]e will not be requesting such data from Discord as to any potential deletions from February 1, 2025 through April 17, 2025 (and certainly not through "present" day as you suggest in your email)." *Id.* David's counsel's

evasiveness about what was being done to ensure their re-collection was complete, and what they had done or were doing to prevent their client from making further deletions, called into question the comprehensiveness and integrity of their data re-collection, particularly given that the purpose of the re-collection was ostensibly to have a complete set of David's data.

35.     In the parties' September 22, 2025, meet and confer, when Robert's counsel had specifically asked why they had to re-collect data from any years other than 2021, David's counsel had no answer. ECF 168-1 at 21–23 (74:17–83:7).

36.     In his Opposition to the Motion to Modify the Scheduling Order (filed September 29, 2025), Robert raised this very concern about the re-collection being less complete than earlier collections because of David's deletions: "Given David's history of spoliation of evidence in this case, this undertaking also seems fraught — a re-collection will necessarily not be as complete as the first collection if David has deleted any of his ESI since his counsel claimed to have collected and preserved everything in February 2025." ECF 176 at 2.

37.     Sure enough, David's counsel has recently admitted that their re-collection—the only set of documents they are searching—is the least complete set of documents because of David's spoliation of evidence. David's counsel stated during the parties' February 18, 2026, meet and confer that documents that had been previously collected "no longer exist" and that "the documents that were re-collected, the entire digital footprint that existed at that time, do not necessarily include all the same documents that were collected several years ago." Ex. 4, J.R.172 (18:9–12); *id.* at J.R.171 (15:13–16:15). David's counsel also confirmed that they were only searching this incomplete "re-collection." *See* Ex. 1, J.R.021 (Email from A. Giles (Feb. 18, 2026)) ("[T]hat re-collection, while using both the November 2024 and August 2025 combined search

14

terms, resulted in the more recent document productions that have occurred during the Fall of 2025 up through late January 2026.").

### David and Li Fen's Deficient Responses to the Second Set of ROGs in *Yao v. Chen*

38.     True and correct copies of discovery requests and responses described below and in the Memorandum for Sanctions are attached as Exhibits 8–22, J.R.385–605. These include: (1) Robert Chen's Second Set of Interrogatories on Li Fen Yao, *Yao v. Chen*; (2) Li Fen's original, and Li Fen and David's three sets of amended, responses to the Second Set of Interrogatories on Li Fen Yao, *Yao v. Chen*; (3) Li Fen Yao's Responses to Defendants' First Set of Requests for Production of Documents on Li Fen Yao, *Yao v. Chen*; (4) David Chen's Responses to the Subpoena served on David Chen in *Yao v. Chen*; (5) David Chen's Responses to Robert Chen and OtterSec LLC's First Set of Interrogatories, *Chen v. Chen*; (6) David Chen's Responses to Robert Chen and OtterSec LLC's First Set of Requests for the Production of Documents, *Chen v. Chen*; (7) Robert Chen and OtterSec LLC's Second Set of Interrogatories, *Chen v. Chen*; (8) David Chen's Responses to Robert Chen and OtterSec LLC's Second Set of Interrogatories, *Chen v. Chen*; (9) Robert Chen and OtterSec LLC's Second Set of Requests for the Production of Documents, *Chen v. Chen*; (10) David Chen's Responses to Robert Chen and OtterSec LLC's Second Set of Requests for the Production of Documents, *Chen v. Chen*; (11) Defendants' First Set of Interrogatories on Li Fen Yao, *Yao v. Chen*; and (12) Li Fen Yao's Responses to Defendants' First Set of Interrogatories, *Yao v. Chen*.

39.     Robert served the Second Set of Interrogatories in *Yao v. Chen* on Li Fen on March 11, 2025. Ex. 8, J.R.385–90. These interrogatories focused on David and Li Fen's document collections, preservation, and scope of David's deletions of potentially relevant documents.

40.     Li Fen served four sets of deficient responses to the Second Set of ROGs. Exs. 9–12, J.R.391–492. David also verified all of the answers for the sets of amended responses served on May 30, 2025, July 17, 2025, and August 30, 2025. Exs. 10–12, J.R.410–92. After Li Fen's original responses were served, David's prior counsel also served a 1.5 page "analysis" of David's deletions which concluded that "no relevant Discord messages have been deleted or destroyed." A true and correct copy of this April 1, 2025 letter is attached as Exhibit 23, J.R.606–08.

41.     After Li Fen and David served the second set of deficient responses on July 17, 2025, David Chen testified at his first limited deposition (July 30, 2025) that his responses remained inaccurate. *See* Ex. 5, J.R.194 (7:20–21).

42.     Robert's counsel emailed David's counsel asking when David and Li Fen would correct these inaccuracies in their responses on August 7, 2025 (Email from R. Clattenburg) and did not receive a response. Robert's counsel followed up again on August 11, 2025 (Email from R. Clattenburg).

43.     Robert's counsel also asked when David and Li Fen would amend their responses during a meet and confer on August 13, 2025, *see* ECF 168-1 at 122 (38:7–20). David's counsel did not have a response. During another meet and confer, on August 20, 2025, when Robert's counsel again asked about the amended responses, David's counsel said: "Next week is what (sic) we're trying to get you those amended answers." *Id.* at 82 (29:18–30:1). They finally committed to August 29 as a deadline. *Id.* at 82 (30:14–15).

44.     David's counsel ultimately served the third set of amended responses on August 30, 2025, which remained deficient. Ex. 12, J.R.462–92.

<u>**David's Counsel's Abusive Discovery Practices<br>with Respect to Their Document Productions**</u>

45.     David's counsel represented in correspondence and in meet and confers that they have not de-duplicated or even reviewed their document productions from December 12, 2025, onward—the vast majority of their produced documents. True and correct copies of counsel's December 2, 2025, and December 5, 2025, emails concerning these productions are attached as Exhibit 24, J.R.609–16. *See, e.g.*, Ex. 24, J.R.615 (describing total number of documents "that have hits in line with the agreed upon [sic] search terms" and stating "[W]e are simply planning to produce everything to you by our deadline to do so"); Ex. 24, J.R.611 ("[W]e will NOT be comparing the upcoming document productions with previous document productions, particularly as it relates to Discord messages. So, yes, you will be receiving Discord messages that you may previously already have received."); *see also* Ex. 2, J.R.051 (33:12–15) (Tr. M&C Dec. 5, 2025) ("In terms of going through the documents and making sure that we're not reproducing something that was previously produced, we're not doing that."), Ex. 3, J.R. 116 (21:13–17; 23:1–3; 24:16–17, 24:15–22) (Tr. M&C Dec. 17, 2025) ("We are producing everything that hits on a search term") (Robert's counsel: "So is that for all documents you are not de-duplicating?" David's counsel: "All documents.").

46.     This is also evident from the quality of these productions, as they are mostly junk, non-responsive, not relevant, and include many versions of the same messages.

47.     It is not sufficient that the documents are text-searchable: this is because they contain a huge number of false hits.

48.     For example, many of the allegations in the *Yao v. Chen* complaint concern an entity called Jump (also referred to as Jump Crypto or Jump Trading). As such, "Jump" was a search term Li Fen's counsel disclosed in November 2024, as part of their search and collection protocol.

A true and correct copy of David's prior counsel's November 27, 2024, letter to Robert's counsel disclosing these search terms is attached as Exhibit 25, J.R.617–20. *See, e.g.*, *id.* at J.R.619.

49.     Because David's counsel did not review for responsiveness or relevance, running a text search for the term "jump" across their six productions (numbers 17–22) made between December 12, 2025, and January 22, 2026, yields 7,353 hits (293,382 pages; with family, a total of 52,713 documents). Among those are at least 1,354 false hits that appear to hit upon, for example: "jump right in" OR "jump-start" OR "get a jump on college" OR "jump between programs" OR "jump right to" OR "jump in" OR "jump into" OR "jump back" OR "jump to" OR "jump-start"—none of which are responsive, let alone relevant to the litigation.

50.     Robert's counsel also identified the following discrepancies by running searches through David and Li Fen's December 12, 2025, through January 22, 2026, productions: David and Li Fen produced (a) approximately 5,048 documents that *Robert produced to them in these Actions*, which still have Robert's Bates numbers; (b) more than 10,000 marketing emails, such as for HelloFresh; (c) more than 900 documents that are blank or nearly blank; (d) approximately 1,637 documents with an error message in the production process: "Image Not Rendered"; and (e) more than 22,000 ".json" files, many of which appear to be communications that are not in a reasonably usable format. Robert's counsel further identified 38 copies of the same Discord conversation, on which David is not listed as a participant. A true and accurate copy of the conversation is attached as Exhibit 29, J.R.637–39.

51.     Robert's counsel additionally identified more than 100,000 documents that, together, comprise publicly-available online coding manuals and other textbooks. David's counsel did not know what these were, or know that they had been produced at all. *See* Ex. 4, J.R.174

(26:6–20) (Tr. M&C Feb. 18, 2026) (David's counsel: "Publicly available online code names (sic).

What do you mean by 'publicly available online code names'? What does that mean?").

52.     During the parties' December 17 meet and confer, David's counsel confirmed these

practices:

> Rachel, I'll make this easy for you. **We are not de-duplicating anything
> from the recollection.** The recollection should be a full recollection of
> everything from September 5th, 2021, through April 17th, 2025, and **we are
> not going through and saying: Was this previously produced? If it was,
> let's pull it out. We are not doing that.**

Ex. 3, J.R.116 (24:15–22) (emphasis added).

53.     Yet, even as their productions are replete with duplicates (and triplicates), they are

also missing many documents produced earlier. If David's counsel were truly not de-duplicating,

and were running adequate search terms across the entire re-collection, as they contend, then there

should be duplicates of the documents produced in the first 16 productions.

54.     For example, David had previously produced conversations with Parth Shastri

(Discord username: cppio), such as YAO00016168, and conversations with William Wang

(Discord user "defund"), such as YAO00004545, which were not included in their December 12–

January 22 productions. Ex. 4, J.R.170–71 (12:21–13:19) (Tr. M&C Feb. 18, 2026). Robert's

counsel recently learned that these, and many other, documents were missing because David had,

in fact, continued to make even more deletions after his counsel's prior collection of his data. *Id.*

at J.R.171 (15:13–16:15), J.R.172 (18:9–12).

55.     This contradicted David's counsel's prior statement in a December 5, 2025, email

that "[t]his production will be a complete production covering the Relevant Period of September

5, 2021 through April 17, 2025." Ex. 24, J.R.611. It also means that Robert's counsel cannot

"disregard" the earlier productions and treat the latest productions as a "master" set, as David's counsel suggested. *Id.*

56.     The fact that the December 12–February 20 productions do not contain a complete set of David's earlier productions shows the significant deficiencies in David's production process. In August 2025, David, Li Fen, and their counsel chose to "re-collect" a less complete set of documents (documents that David had culled, removing an unknown amount of relevant data) and search only that incomplete set of documents.

<u>**David's Counsel's Use of Inadequate Search Terms**</u>

57.     David's counsel has failed to use adequate search terms throughout this litigation. The search terms David's counsel are using are insufficient to locate documents responsive to discovery requests in both *Yao v. Chen* and *Chen v. Chen*.

58.     With respect to *Chen v. Chen*, the parties agreed on search terms for code-related searches *only* (the "Code Terms"). *See* ECF 151 ("[T]he Parties have now agreed to exchange search terms **related to the codes at issue in *Chen v Chen*** on July 14, 2025. . .") (emphasis added).

59.     The Code Terms originated with and were proposed by David's counsel: David's counsel had initially proposed code-related search terms for *Robert* to run, contending that Robert had not adequately searched for a copy of the code in his own documents. Then, following a June 26, 2025, meet and confer, the parties agreed to exchange search terms related to the codes (ECF 151) and agreed that both parties would run the same Code Terms.

60.     Robert's counsel never agreed to narrow the search for responsive documents in *Chen v. Chen* to *only* the Code Terms. That was never even discussed between counsel. The understanding was that—because the code-related terms could pull up a number of false hits or miss responsive documents if not crafted carefully—the parties would agree on what code-related terms to run in searches.

61.    For *Yao v. Chen*, as part of an exchange of search terms in *Yao v. Chen*, on November 27, 2024, David's prior counsel proposed search terms to help identify documents responsive to *certain* discovery requests in *Yao v. Chen* (the "*Yao* Terms"). *See* Ex. 25, J.R.619.

62.    However, in early December 2025, David's counsel indicated that they were *only* running the Code Terms to locate documents responsive to all discovery requests in both *Yao v. Chen* and *Chen v. Chen*. Ex. 24, J.R.610–11, 614–15 (Emails from A. Giles (Dec. 2 and 5, 2025)).

63.    When Robert's counsel learned that David's counsel appeared to be *only* using the Code Terms, Robert's counsel explained the background on the development of those search terms and why the Code Terms were insufficient to address other discovery requests, providing specific examples. *See* Ex. 24, J.R.612–14 (Email from R. Clattenburg (Dec. 3, 2025)).

64.    During the December 5, 2025, meet and confer, David's counsel confirmed that the Code Terms were the only search terms they were using. Ex. 2, J.R.045 (9:7–16).

65.    During that meet and confer, when Robert's counsel asked if David's counsel had run the *Yao* Terms from November 27, 2024, David's counsel stated: "I don't know the answer to that question." *Id.* at J.R.046 (14:3–4). David's counsel could not say how they were searching for "documents responsive to other requests that are not code specific documents[.]" *Id.* at J.R.046 (14:13–15).

66.    Thus, one week before David and Li Fen's non-Discord document productions were due, their counsel did not know whether any search terms for *Yao v. Chen* RFPDs were being used or how they were locating documents responsive to RFPDs that requested documents not related to specific codes.

67. On December 15, 2025, Robert's counsel learned that David's counsel had indeed *not* run the *Yao* Terms and did not do so until December 11–12, 2025. Email from A. Giles (Dec. 15, 2025).

68. During a subsequent December 17 meet and confer, Robert's counsel asked David's counsel about their search terms and their general process for locating responsive documents. Ex. 3, J.R.112 (6:8–7:7). David's counsel confirmed they were only using the narrow Code Terms and *Yao* Terms and had not developed search terms to locate documents responsive to *Chen v. Chen* RFPDs that were not code-related or covered by the *Yao* Terms. *Id.* at J.R.112–13 (7:2–10). David's counsel claimed the Code Terms and *Yao* Terms would cover "everything that we could ever, ever imagine in terms of this case as being relevant to this case." *Id.* at J.R.112–14 (7:8–8:16, 12:14–16). David's counsel took the position that it was Robert's counsel's job to develop the search terms for his client's documents. *Id.* at J.R.113 (10:10–11) (David's counsel: "I mean, have you guys proposed search terms in *Chen v. Chen*?"). When Robert's counsel asked if David's counsel had actually gone through the requests in *Chen v. Chen* to confirm they were using search terms that would locate all responsive documents, David's counsel had no answer, and insisted, "If you believe or your side believes that there are other search terms that should be used, propose them"— again foisting the burden of their discovery obligations onto Robert. *Id.* at J.R.114 (13:2–15:19). Robert's counsel provided potential search terms to David's counsel two days later, on December 19, 2025, as part of a discovery dispute spreadsheet that was submitted to the Court via email on January 14, 2026 (ECF 191).

### David and Li Fen's Failure to Provide Discord and Telegram Sources

69. Attached as Exhibit 26, J.R.621–22, is a true and correct copy of a July 21, 2025, email in which Robert's counsel proposed that the parties exchange document sources they were respectively searching in response to RFPDs served in *Chen v. Chen*, to include "not only all the

custodians, but all sources of documents, including **specifying the names of Discord channels and servers** that have been collected and are being searched; **Telegram channels searched**; and the date range being searched for each document source." *Id.* (emphasis added). The purpose of exchanging these source lists was to cut down on potential discovery disputes and "work through any potential issues sooner rather than later." *Id.* True and correct copies of additional correspondence from David's counsel concerning the Discord and Telegram sources are attached as Exhibit 27, J.R.623–31 (Email from A. Giles (Aug. 1, 2025); Email and Attachment from M. Lentz (Aug. 7, 2025); Email from A. Giles (Aug. 11, 2025)).

70.     On August 1, 2025, David's counsel agreed to this proposal. They stated over email: "I would propose an initial deadline of exchanging the document sources on which each side is running the search terms of Wednesday, August 6." Ex. 27, J.R.624. The parties ultimately agreed to exchange sources on August 7, 2025, due to travel plans. Email from R. Clattenburg (Aug. 2, 2025); Email from A. Giles (Aug. 2, 2025).

71.     By emails dated August 7, 2025, David's counsel sent a PDF attachment containing a list of sources that did not include the list of Discord and Telegram channels and servers being searched by David in *Chen v. Chen*. It merely listed "discord" and "telegram" in separate bullet points. *See* Ex. 27, J.R.630.

72.     On August 8, 2025, Robert's counsel responded: "As part of this exchange of sources, we agreed to exchange the list of channels being searched from Discord and Telegram – see the attached correspondence. Please send those." Email from R. Clattenburg (Aug. 8, 2025).

73.     By email dated August 11, 2025, in which David's counsel devoted many lines to complaining about Robert's counsel's "following up" about discovery that David's counsel had agreed to provide, but had not, David's counsel claimed they were "not personally aware of anyone

on [their] side" agreeing to produce a list of Discord and Telegram channels and servers. David's counsel said they were "in the process of following up with our co-counsel at CLM to see if they have any knowledge of such an obligation[.]" Ex. 1, J.R.035.

74.    Thus, David's counsel claimed not to know about the agreement he had made a mere ten days earlier. Robert's counsel thus had to spend time pulling the email threads and explaining to David's counsel what he had agreed to concerning the exchange of sources.

75.    By email dated August 11, 2025, Robert's counsel re-educated David's counsel on their agreement to disclose the list of Discord and Telegram channels being searched in *Chen v. Chen*. Email from R. Clattenburg (Aug. 11, 2025). Robert's counsel stated: "If you are declining to disclose the channels you are searching, <u>please explain the basis for not disclosing these, and we will plan to meet and confer on this issue</u>." (Emphasis in original.)

76.    David's counsel did not promptly respond to this request.

77.    At an earlier-scheduled meet and confer, on August 13, 2025, Robert's counsel asked again for a basis for not disclosing the list of Discord and Telegram channels that David's counsel had already agreed to provide, and then inexplicably refused to provide. ECF 168-1 at 122 (38–39). Robert's counsel requested a meet and confer about this issue. *Id.*

78.    On the day of the scheduled meet and confer—in an email sent at midnight, with the meet and confer scheduled for 9:30 AM that same day—David's counsel stated that they had "recently inquired with TransPerfect [their document vendor] as to whether it is able to provide the information that has been requested by opposing counsel, rather than simply stating that Defendant and his counsel will merely search 'all' of David's Discord and Telegram messages. Once we get a response from TransPerfect in that regard, we will certainly share it with all counsel." Email from A. Giles (Aug. 20, 2025).

79. This email demonstrated an ongoing lack of understanding of the document systems that David's counsel needed to collect and search in *Chen v. Chen*. Only those Discord and Telegram servers and channels with potentially relevant communications should have been searched. This is because, as David's counsel has confirmed, David is a member of many large Discord channels and servers that have no potentially relevant communications. ECF 184 at 19–22 (157:5–12) (Tr. Hg. Nov. 20, 2025). Running search terms across these communications and producing everything that hit on a search term would necessarily produce a large number of irrelevant and nonresponsive documents. At the same time, it has become clear that David's counsel did *not* prioritize searching the Discord messages most likely to be relevant. David and Li Fen did not produce relevant Discord conversations between David and Philip Papurt, and David and Ally Guo, until February 20, 2026, a month after their production deadline. Their production remains incomplete.

80. At the August 20, 2025, meet and confer, David's counsel said they were "agreeing" to give Robert's counsel the list of Discord and Telegram and they were searching in response to document requests in *Chen v. Chen*, bringing the discussions back to the point where they had been nearly three weeks earlier, when David's counsel first agreed to provide this information. *See* ECF 168-1 at 85 (42:16–43:18).

81. Separately, on August 15, 2025, Robert and OtterSec LLC served the Second Set of Interrogatories on David Chen in *Chen v. Chen*. Ex. 17, J.R.549–53. The Second Set of Interrogatories included a request for the same information: ROG No. 24 asked David to: "Identify, by Server Name, Server ID, Channel Name, and Channel ID, each Discord and Telegram channel, server, and/or direct messages You are searching in response to discovery requests in this Action." *Id.* at J.R.552.

82.     David did not serve responses to the Second Set of Interrogatories when they were due on September 15, 2025.

83.     Robert's counsel followed up on this issue on September 22, 2025. Email from R. Clattenburg (Sept. 22, 2025). David's counsel represented during a subsequent meet and confer that day that he needed to discuss the issue with David and Li Fen's prior counsel, but that his impression was that the information had been included in Li Fen Yao's amended responses to the interrogatories. ECF 168-1 at 35 (129:4–130:21). That was incorrect.

84.     On November 24, 2025, David served responses to the Second Set of Interrogatories. Ex. 18, J.R.554–66. David's response to ROG No. 24 again contended: "[T]his information was previously produced as Exhibit A to Plaintiff Li Fen Yao's Third Amended Answers to Defendant's Second Amended Interrogatories, which were collectively produced to opposing counsel on August 29, 2025." *Id.* at J.R.563.

85.     However, Li Fen Yao's Third Amended Answers identified Exhibit A as containing a "list of servers, channels, and direct message groups collected" from *Discord only*—there are no Telegram sources included. Ex. 12, J.R.473 (described as "Export of Discord messages"). Exhibit A also only contains messages from *one* Discord server, as all messages are attributed to the same Server ID. Given that it contains no Telegram sources, and only contains messages from one server when David belonged to dozens, Exhibit A cannot be a comprehensive list of Discord and Telegram sources David's counsel is searching in response to discovery requests in *Chen v. Chen*.

86.     Further, Exhibit A lists channels, DMs, and servers collected in April 2024, even though the *Chen v. Chen* lawsuit was not filed until September 30, 2024, and even though the relevant time period in *Chen v. Chen* goes through April 17, 2025.

87. Counsel for the parties discussed the missing lists of Discord and Telegram being searched by David at the November 20 hearing. ECF 184 at 163:14–164:24 (Tr. Hg. Nov. 20, 2025).

88. Following the November 20 Hearing, Judge Simms ordered David and Li Fen to provide this information in their November 24 letter to counsel. ECF 183 at item 10.

89. Attached as Exhibit 28, J.R.632–36, is a true and correct copy of David's counsel's November 24, 2025, letter to Robert's counsel. In the letter (dated November 24, but which David's counsel sent on November 25, 2025), David's counsel reiterated their position that Exhibit A was a comprehensive list of Discord and Telegram sources, despite the fact that it contained no Telegram sources. *Id.* at J.R.635, item 10.

90. Robert's counsel pointed this out in advance of the parties' December 5 meet and confer. Email from R. Clattenburg (Dec. 3, 2025); Email from K. Crenny (Dec. 4, 2025). In response, David's counsel *agreed*: "[Y]ou are absolutely correct. Exhibits A-F all only deal with Discord messages." Email from A. Giles (Dec. 5, 2025). They agreed to amend Exhibit A to address Telegram sources, but did not concede any deficiencies with the Discord sources included on Exhibit A. *Id.* (To date, they have not amended Exhibit A.)

91. During the parties' December 5, 2025, meet and confer, Robert's counsel explained why Exhibit A could not be a comprehensive list. Ex. 2, J.R.047–49 (20:7–21:21, 24:8–27:7). David's counsel indicated he would again have to follow up with David and Li Fen's prior counsel and David's e-discovery vendor. *Id.* at J.R.050 (31:5–8).

92. In a subsequent meet and confer, David's counsel refused to back down from their position regarding Exhibit A, even while also having to admit (again) that Exhibit A listed no Telegram sources. Ex. 2, J.R.116 (21:2–5) (Tr. M&C Dec. 17, 2025), *see also id.* at J.R.131 (83:8–

9) ("For Discord, we are standing on Exhibit A"); *id.* at J.R.116 (21:6–8) (agreeing to provide the list for Telegram shortly).

93.     Yet David's counsel again reiterated this unreasonable position in their January 22, 2026, Letter to the Court. *See* ECF 190 at item 10. In that letter, for the first time, they also represented they had "collected, preserved, and searched **all of the Telegram channels**" (emphasis added). Robert's counsel does not know what this means or what it encompasses. To comply with their prior agreement and ROG No. 24 on David Chen, David must serve the specific list of Telegram channels searched.

94.     David and Li Fen's December 12, 2025, through January 21, 2026, productions of Discord messages confirm that Exhibit A is not comprehensive even for Discord alone, as the productions contain messages from Discord servers not listed in Exhibit A. For example, they produced direct messages with friendlyuser2224585 (*see* YAO01443296, YAO01443450, YAO01443651); bot notifications from Github and Solend APY Bot (*see* YAO01440850 and YAO01445605); and direct messages and group chats with 0xsoju (*see* YAO01460655 and YAO01460183), all of which came from conversations on channels that were not included in Exhibit A. Email from R. Clattenburg (Jan. 23, 2026) (providing these examples for counsel).

### Issues with David and Li Fen's Fifth Production

95.     On December 24, 2024, David and Li Fen produced their Fifth Production, totaling 1,606 documents. Robert's counsel realized, after many hours of document review, that for hundreds of Discord documents contained in this production, Li Fen and David had produced versions that only contained David's messages and were missing the messages from other participants in the conversation. True and correct copies of correspondence between Robert's counsel and David's counsel concerning the Fifth Production are attached as Exhibit 30, J.R.640–

52 (Email from R. Clattenburg (Jan. 7, 2025); Ltr. from LFM (Jan. 22, 2025); Email from M. White (Apr. 1, 2025)); *see also* ECF 106-2 at 43 (162-63).

96.    After Robert's counsel alerted David's counsel to the issues, David's counsel said that they had known since the time they made the production that they had not exported the documents properly from Discord. *See* Ex. 30, J.R.644–49 (discussing statements David and Li Fen's counsel made during January 7 and 8, 2025, meet and confers).

97.    Robert's counsel, in spending more time reviewing the Fifth Production, also realized that Li Fen had produced message chains with relevant messages omitted from within the conversation.

98.    For example, Li Fen produced two versions of one conversation with third-party Ally Guo ("closetduck"). The screenshot below is one version of the conversation (produced at YAO00004289). The first message in the image (circled in black for purposes of this Declaration) is followed by thirty-three relevant messages about OtterSec, Robert, David's "taking [of] intellectual property" from OtterSec, and a potential lawsuit regarding the same (circled in red):



99.     The screenshot below is another version of this same conversation, also produced by Li Fen (at YAO00004308), that contains only the two messages circled in black above, with no indication of the missing relevant messages (circled in red above):



100.     David's counsel did not alert Robert's counsel to having produced conversations with dozens of missing relevant messages. Instead, when Robert's counsel alerted them to the problem, they stated, four months after their production: "Our understanding is that the issues in the threads you have attached to your email stem from problems with the deduplication and

batching process." Ex. 30, J.R.650 (Email from M. White (Apr. 1, 2025)); *see also* Emails from R.

Clattenburg (Mar. 28, 2025 & Apr. 1, 2025).

101.    It took David's counsel until July 3, 2025, to serve corrected versions of the Fifth

Production. They did not produce replacement documents, claiming that was not possible, and

instead served a spreadsheet purporting to indicate which Bates numbers from the December

production correspond to which Bates numbers in subsequent productions. They have never

responded to questions about how they had collected David's documents, including which servers

and channels they had preserved in "takeout" form, "export" form, both, or neither (as they had

agreed to provide in ECF 139), or channels or servers that David had left, resulting in the

production of one-sided conversations. Email from R. Clattenburg (Aug. 26, 2025).

**David's Counsel's Repeatedly Missed Deadlines**

102.    As set forth in Appendix 2 to the Memorandum in Support of Motion for Sanctions,

David's counsel has never served:

> a.    Amended Responses to the First Set of Interrogatories on Li Fen Yao, *Yao v.*
> *Chen*;
>
> b.    Amended Responses and Objections to the First Set of Requests for Production
> of Documents on Li Fen Yao, *Yao v. Chen*;
>
> c.    Responses and Amended Objections to Otter Audits' Second Set of Requests
> for Production of Documents on Li Fen Yao, *Yao v. Chen*;
>
> d.    Responses and Amended Objections to RC Security's Second Set of Requests
> for Production of Documents on Li Fen Yao, *Yao v. Chen*;
>
> e.    Responses and Amended Objections to Robert Chen's Second Set of Requests
> for Production of Documents on Li Fen Yao, *Yao v. Chen*;

103.    As set forth in Appendix 2 to the Memorandum in Support of Motion for Sanctions, David's counsel missed the deadline for timely serving:

    f.  Responses to the Second Set of Interrogatories on David Chen, *Chen v. Chen*;

    g.  Responses to the Second Set of Requests for Production of Documents on David Chen, *Chen v. Chen*;

    h.  Li Fen Yao's privilege logs;

    i.  David Chen's Opposition to Robert's July 22, 2025, Motion to Compel regarding the First Set of ROGs and First Set of RFPDs in *Chen v. Chen*; and

    j.  With respect to the Subpoena for Documents on David Chen, *Yao v. Chen*, David's counsel missed the deadlines to timely serve, provide, or produce:

        i.  Responses and Objections to the Subpoena

        ii.  Amended Responses with objections withdrawn

        iii.  Identification of documents produced in response to the Subpoena

        iv.  Written certification under FRCP 26(g)

        v.  Additional documents responsive to subpoena

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on March 5, 2026

                By: /s/ Rachel Clattenburg
                    Rachel Clattenburg