**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LI FEN YAO, as administrator of the Estate of Sam Mingsan Chen, <br><br>      Plaintiff, <br><br>        v. <br><br> ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC, <br><br>      Defendants. | Case No. 8:23-cv-00889-TDC-GLS |
| ROBERT CHEN and OTTERSEC LLC, <br><br>      Plaintiffs, <br><br>        v. <br><br> DAVID CHEN, <br><br>      Defendant. | Case No. 8:24-cv-03628-TDC-GLS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SPOLIATION**
**SANCTIONS PURSUANT TO RULE 37(e)**

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ..................................................................................................1

   **A.** David and Others at OtterSec Used Discord to Communicate ...........................................1

   **B.** David Is the Central Custodian in *Yao v. Chen* and Is the Defendant in *Chen v. Chen* ......2

   **C.** During Discovery in *Yao v. Chen*, Robert and His Counsel Noticed That Messages David Sent on the Jito Server Were No Longer Visible on Discord. ...........................................2

   **D.** The Deletions Spreadsheet: Discord's Response to a Subpoena Showed That David Had Deleted 17,222 Discord Messages in 2023 and 2024. .......................................................3

   **E.** Simplified Timeline of Deletions..................................................................................4

   **F.** David Lied about the Relevance of the ESI He Destroyed in 2024....................................5

LEGAL STANDARDS ......................................................................................................7

ARGUMENT ................................................................................................................8

  **I.** LI FEN AND DAVID'S CONDUCT MERITS SANCTIONS UNDER RULE 37(e)(2) ...8

   **A.** **Li Fen and David Had a Duty to Preserve ESI Since at Least April 27, 2022** .............8

   **B.** **David Destroyed Relevant Evidence That Should Have Been Preserved**.....................9

     1. On April 27, 2022, David deleted relevant OtterSec records. ..................................10

     2. On May 21, 2022, David claims to have destroyed a version of the stolen Code. ...10

     3. David deleted relevant messages from the "AltTank," "Save Team," and "Save (formerly Solend)" servers beginning in 2022............................................................10

     4. David deleted relevant messages from the "new clickbait" server...........................11

     5. David deleted relevant ESI from the Jito server ......................................................12

     6. David deleted relevant messages that he sent to his friend Ally Guo.......................13

     7. David deleted relevant messages on Signal with Philip Papurt, a key witness ........14

     8. David and Li Fen never backed up David's phone, and a forensic expert called his explanations for it becoming inoperable "highly unlikely" and "improbable." .......14

   **C.** **The Material That David Deleted Is Lost and Cannot Be Retrieved**..........................16

   **D.** **David Destroyed ESI to Prevent Robert from Using It in Litigation**..........................17

     1. David and his parents intentionally destroyed potentially relevant ESI. ..................17

     2. David destroyed ESI to prevent Robert from using that ESI in litigation ................18

       a. David deleted OtterSec records on April 27, 2022, to impede Robert's claims...18

       b. David deleted Discord messages to stop Robert from discovering them ........19

i. *David admits he deleted ESI from the "new clickbait" server because it was relevant to this litigation and to deny Robert's ability to discover it.* ........20

ii. *David admits deleting ESI from the Jito server "to annoy Robert."* .........21

iii. *David deleted messages he sent to Ally Guo for the same improper reasons* 22

c. David lost his phone data and Signal messages for the same reasons .............23

**E. Robert Was Prejudiced by the Loss of ESI** ....................................................23

**II. HARSH SANCTIONS ARE WARRANTED** ....................................................26

**A. Li Fen Yao Should Be Sanctioned for David's Spoliation Because She Controlled David's Documents, Used Them in Her Case, and Cannot Do So Selectively** ............27

**B. David's Egregious Conduct Warrants Sanctions Under Rule 37(e)(2).** .......................28

**CONCLUSION** ....................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Brittney Gobble Photography LLC v. Sinclair Broadcast Group, Inc.*,
No. 18-cv-3403, 2020 WL 1809191 (Apr. 9, 2020) ..........................................................23

*Burris v. JPMorgan Chase & Co.*,
566 F. Supp. 3d 995 (D. Ariz. 2021) ..............................................................................18

*Collins v. Tri-State Zoological Park of Western Maryland, Inc.*,
No. 20-cv-1225, 2021 WL 5416533 (D. Md. Nov. 19, 2021)..........................................27

*Cooper v. Baltimore Gas & Elec. Co.*,
No. 23-CV-03116, 2025 WL 1416943 (D. Md. May 16, 2025)............................23, 24, 27

*Doe v. Vanderpool*,
No. 22-cv-1915, 2024 WL 4881928 (D. Md. Nov. 25, 2024)................................8, 10, 24

*First Mariner Bank v. Resolution Law Group, P.C.*,
No. 12-cv-1133, 2014 WL 1652550 (D. Md. Apr. 22, 2014)................................... *passim*

*Fowler v. Tenth Planet, Inc.*,
673 F. Supp. 3d 763 (D. Md. 2023) ..............................................................................9, 18

*Goodman v. Praxair Services, Inc.*,
632 F. Supp. 2d 494 (D. Md. 2009) ..................................................................................8

*Jones v. Riot Hospitality Grp. LLC*,
95 F. 4th 730 (9th Cir. 2024) ........................................................................................19

*Membreno v. Atlanta Rest. Partners, LLC*,
338 F.R.D. 66 (D. Md. 2021).........................................................................................13

*Model Remodeling, Inc. v. Tripod Holdings, LLC*,
No. 19-cv-1397, 2021 WL 3852323 (D. Md. Aug. 27, 2021).................................. *passim*

*Silvestri v. Gen. Motors Corp.*,
271 F.3d 583 (4th Cir. 2001) .......................................................................................9, 28

*Sines v. Kessler*,
No. 17-cv-72, 2021 WL 4943742 (W.D. Va. Oct. 22, 2021) ...........................................15

*Turner v. United States*,
736 F.3d 274 (4th Cir. 2013) ..........................................................................................8

*Twins Special Co. v. Twins Special, LLC*,
No. 21-cv-221, 2025 WL 1292528 (S.D. Cal. May 5, 2025) .............................................9

*U.S. EEOC v. MVM, Inc.*,
No. 17-2881, 2020 WL 6482193 (D. Md. Nov. 2, 2020) ...........................................27, 28

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010).................................................................................24

*Vodusek v. Bayliner Marine Corp.*,
    71 F.3d 148 (4th Cir. 1995) ...................................................................................30

*Wolfe v. Columbia College*,
    No. 20-cv-1246, 2025 WL 2443552 (D. Md. Aug. 25, 2025).............................27

**Rules**

Fed. R. Civ. P. 37(e) ................................................................................... *passim*

Defendants Robert Chen, RC Security LLC, and Otter Audits LLC, and Plaintiffs Robert Chen and OtterSec LLC (together, "Robert") move for sanctions under Rule 37(e) based on David Chen and Li Fen Yao's spoliation of electronically stored information (ESI).

## FACTUAL BACKGROUND

While under a duty to preserve evidence, David Chen mass-destroyed *over 17,000* Discord messages; deleted edits to the OtterSec Codes he stole; wiped an OtterSec server; made his phone data inaccessible; failed to preserve Signal messages; and deleted an unknown amount of other data. His mother Li Fen Yao, Plaintiff in *Yao v. Chen*, whose entire case relies on his documents, knew that he was destroying evidence and did nothing to stop this deletion spree. David has admitted that much of what he destroyed was relevant, but only after lying about it for months.

### A. David and Others at OtterSec Used Discord to Communicate.

When Li Fen's counsel disclosed the loss of David's phone data, he minimized it by stating that David "utilized Telegram and Discord for any substantive communications related to OtterSec." Ex. 1, J.R.0002, Email from S. Plotnick (May 17, 2024). Discord is a chat application where users can directly message each other or participate in public or private "servers." Servers may be organized into narrower "channels."[1] An *ordinary* user can only delete individual messages manually; there is no auto-delete function; however, a sophisticated user like David can download software to mass-delete messages. Once a message is deleted, it cannot be accessed on any of the user's devices, or anyone else's. It is gone forever. And David knew this.

Before and after founding OtterSec, Robert and David communicated over Discord. ECF 27-2, Decl. of R. Chen ¶ 9; Decl. ¶¶ 3-4. Discord became the primary means of company

---

[1] *See* Beginner's Guide to Discord, https://support.discord.com/hc/en-us/articles/360045138571-Beginner-s-Guide-to-Discord ("What Is A Server?" and "Text Channels").

communications and the primary repository of company records. Decl. ¶ 4. David belonged to several relevant Discord servers: (1) "**AltTank**" (where David discussed the Solend Liquidator Code), Ex. 2, J.R.0017, D. Chen Feb. Tr. at 47:14-48:6 (Feb. 3, 2026) ("D. Chen Feb. Tr."); Ex. 3, J.R.0092-93, 0099 D. Chen Dec. Tr. at 24:19-28:14, 52:10-18 (Dec. 5, 2025) ("D. Chen Dec. Tr."); (2) the "**Save Team**" and "**Save (formerly Solend)**" servers (where David discussed the Solend protocol (later rebranded as "Save"), where the Solend Liquidator Code at issue in these cases operated), *see* Ex. 2, J.R.0017-18, D. Chen Feb. Tr. at 48:19-49-13; (3) the "**New Clickbait**" server (where David had discussions with friends from high school), Ex. 4, J.R.0162, D. Chen July Tr. at 115:3-20 (July 30, 2025) ("D. Chen July Tr."); and (4) the "**Jito**" server (where he discussed cryptocurrency trading bots, liquidations, the Solana blockchain ecosystem, and related topics), *see* Ex. 2, J.R.0019, D. Chen Feb. Tr. at 53:10-55:12; *see also id.* at J.R.0022 (65:3-6).

### B. David Is the Central Custodian in *Yao v. Chen* and Is the Defendant in *Chen v. Chen*.

David knew, as early as April 27, 2022 (when he quit OtterSec), he would be central to any litigation involving OtterSec. Decl. ¶¶ 10-14. On that day, he sent messages about litigation with Robert and OtterSec and acknowledged that Discord messages would be evidence. *Id.* ¶ 11; *infra* Section I.A. He retained counsel in May 2022. Decl. ¶ 15. In *Yao v. Chen*, Li Fen relied entirely on his documents and information to craft her case and responded to discovery almost exclusively with his documents and information. *Id.* ¶¶ 8-9, 128, 133. Li Fen's counsel made sure David— nominally not a party, but responsible for all the evidence for *Yao v. Chen*—would have access to confidential documents produced in *Yao. Id.* ¶ 6. David is the defendant in *Chen v. Chen.*

### C. During Discovery in *Yao v. Chen*, Robert and His Counsel Noticed That Messages David Sent on the Jito Server Were No Longer Visible on Discord.

In the fall of 2024, Robert and his counsel discovered that David had deleted two years' worth of Discord messages he had sent on the Jito server—hundreds of messages. Decl. ¶ 19. This

was the tip of the iceberg. Robert's counsel notified Li Fen and David's counsel, Ex. 5, J.R.0199-200, Ltr. from R. Clattenburg (Oct. 28, 2024), but David continued to delete ESI from Discord. His counsel did not respond until January 15, 2025, and provided no information about the deletions in that response. Ex. 6, J.R.0203-08, Ltr. from A. Malyshev at 4 (Jan. 15, 2025).

**D. The Deletions Spreadsheet: Discord's Response to a Subpoena Showed That David Had Deleted 17,222 Discord Messages in 2023 and 2024.**

After discovering David's Jito server deletions, Robert's counsel served a subpoena on Discord, on November 27, 2024, to discover "any and all edits or deletions by David Chen's Discord accounts of messages originally sent by David Chen's Discord accounts between February 1, 2022, and the present[.]" Ex. 7, J.R.0215.[2]

From the spreadsheet Discord produced on January 29, 2025, Robert learned that David had deleted *17,222* messages across many servers and channels. *See* ECF 121-3, Decl. of J. Levy at ¶¶ 8-9 (citing ECF 121-8, Ex. 4 to Decl. of J. Levy at 8-809). David deleted 17,141 of these in 2024. *Id.* at ¶ 10. David and Li Fen have produced spreadsheets listing David's deleted messages; Exhibit 9 (J.R.0255-1099) is the most detailed such spreadsheet (the "Discord Spreadsheet"). For each deleted message, it shows both when David originally sent the message and when he later deleted it. *Id.* Column F of the spreadsheet shows David's own notes reflecting his view on whether the deleted messages were "relevant." *Id.*; Ex. 2, J.R.0011, D. Chen Feb. Tr. at 21:10-22:6. Column G shows the text of some deleted messages Robert had preserved. Ex. 2, J.R.0011, D. Chen Feb. Tr. at 22:7-16; *see id.* at J.R.0013 (32:5-10) (discussing preserved messages).

David's notes, in Column F, state that over fifty of the messages he deleted were "relevant."

---

[2] The subpoena on Discord also requested copies of the deleted messages, *id.*, but Discord objected to producing these, stating that the Federal Stored Communications Act prevented them from doing so. Ex. 8, J.R.0252, Discord_0000615. Accordingly, Robert has no way of reviewing or obtaining the Discord messages deliberately destroyed by David, if Discord even has such records.

Ex. 9, J.R.0258, 0337-40, 0433, Discord Spreadsheet at rows 101, 2590, 2622-50, 2664-75, 2709-10, 6783. The number of relevant messages he deleted was much higher, as his analysis was not thorough because he performed only a cursory review and applied an extremely narrow view of relevance.[3] In Column F, he noted that dozens more deleted messages were "maybe" or "possibly relevant," *see e.g.*, *id.* at J.R.0256,-58, 0346-47, 0433, or that he could not assess them, *see, e.g.*, *id.* at J.R.0328-44. For example, for all 1,927 messages he deleted from the "new clickbait" server, all he wrote was "Mass deletion high school chat - I have no context to work with so unable to comment on contents." *Id.* at J.R.0348. This was incorrect. *See infra* Section I.B.4.

## F. Simplified Timeline of Deletions

| | |
|---|---|
| **April 27, 2022** | David quits OtterSec; steals the OtterSec Codes; deletes channels relating to the Codes from OtterSec's Discord server; and wipes an OtterSec computer server and virtual machines. |
| **May 8, 2022** | David claims to have destroyed records of edits he had made to the Solend Liquidator Code since taking it from OtterSec. |
| **June 23, 2022** | OtterSec's lawyer informs counsel for Sam and David that David destroyed evidence relevant to their ongoing dispute. |
| **November 2, 2022, to March 28, 2023** | David deletes 37 Discord messages, including over a dozen from the AltTank server, three from a channel related to the Solana ecosystem ("sol-ecosystem-chat") and at least eight that he says related to "liquidation parameter changes on Solend." |
| **March 31, 2023** | Li Fen Yao files *Yao v. Chen.* |
| **April 2, 2023** | David claims the phone that he used in 2022 "ceased working" and "bricked" on or around this date. |
| **April 3, 2023, to April 9, 2024** | David deletes another 71 Discord messages, including 12 more from the AltTank server and 19 related to Solend. |
| **April 9, 2024** | Discovery opens in *Yao v. Chen.* |
| **June 6, 2024** | Robert's counsel serves David with a subpoena requesting communications concerning Jump; OtterSec; Robert; his revenues or income from the OtterSec Codes and his "use of" of those Codes, among other topics. |

---

[3] David testified that, when assessing whether a deleted message was "relevant," he considered only whether he thought the message had "mentioned . . . [t]he [C]ode and/or OtterSec" and not the claims or defenses in either case. Ex. 2, J.R.0009, D. Chen Feb. Tr. at 13:21-15:14.

| June 25, 2024 | The parties enter mediation and move to stay discovery shortly thereafter. |
|---|---|
| July 28, 2024 | David downloads and installs a program called "undiscord" which can be used to "[d]elete **_all_** messages in a Discord channel or DM" (emphasis added). Beginning on this date and continuing into the next day, David deletes 2,050 messages from a Discord server called "Kusuriya no Hitorigoto." |
| July 29-30, 2024 | David deletes (a) 768 messages from the Jito server; (b) 1,927 messages from the "new clickbait" server, including 156 messages sent in the "rubber-duck-debugger" channel; and (c) 1,899 messages from a server called "dead meme." |
| July 30-31, 2024 | David sends a "personal data request" to Discord and obtains a copy of his messages, which he knew would not include the messages he had just deleted. He would not share the messages received from Discord with his lawyers until **October 29, 2024**. |
| Sept. 30, 2024 | Robert files *Chen v. Chen*. |
| Oct. 10 to 28, 2024 | David deletes *another 10,430 Discord messages*, all of which he had sent to his friend Ally Guo ("closetduck") prior to 2022. |
| October 28, 2024 | Robert's counsel asks Li Fen and David's counsel about David's deletions from the Jito server. David deletes 614 Discord messages on this same day. |
| October 29, 2024 | David finally sends the copy of his Discord ESI he obtained **three months prior,** on July 31, 2024, to his and Li Fen's discovery vendor. |
| October 29 to November 27, 2024 | David deletes 14 more Discord messages. On November 27, Robert's counsel serves Discord with a subpoena in order to investigate David's deletions. |
| November 18, 2024, to April 8, 2025 | David deletes 43 more Discord messages, including 3 more from the Jito server, 16 more from a "Solana Tech" server, and 22 more messages from the Save Team server. |
| December 5, 2024 | Philip Papurt receives a subpoena. Thereafter, David and Philip communicate over Signal, and David does not preserve their messages. |

A full and annotated timeline of David's deletions is attached to this Brief as Appendix A.

**F. David Lied about the Relevance of the ESI He Destroyed in 2024.**

Li Fen and David's counsel dismissed Robert's concerns about the deleted messages, responding that, for example, "the listed messages and channels variously include middle school and high school friend groups, college course-work groups, and relate to topics such as manga comics, games, memes, travel, and food." Ex. 10, J.R.1102, Ltr. from S. Plotnick (Feb. 3, 2025).

5

David also opposed Robert's Motion for a Preservation Order to guard against additional loss of ESI, ECF 122, Opp'n to Mot. for Order to Preserve Evid. ("D. Chen Opp'n"), and in so doing, David, Li Fen, and their counsel lied to the Court about the deletions. *See* Decl. ¶ 120. For example, Li Fen and David's counsel falsely told the Court that every single deleted message from within the "discovery range"[4] was irrelevant. ECF 117, Ltr. from S. Plotnick at 2 (Feb. 28, 2025) ("The Discord IDs associated with 1,722 messages that are within the discovery range correspond to servers or channels that are irrelevant"), *and* ECF 122, D. Chen Opp'n at 10 (same). In his own declaration, David also falsely told the Court that he had not "delete[d], alter[ed] or destroy[ed] records showing the history of changes to" the Solend Liquidator Code after leaving OtterSec. ECF 122-6, Decl. of D. Chen ¶ 11. Ultimately, when confronted about these misrepresentations at his deposition, David conceded they were false (as his lawyers had *already* admitted). *See* ECF 157, Ltr. Re: Corrections to Filings (Aug. 19, 2025) ("some of the 1,722 deleted Discord messages referenced . . . are potentially relevant."); Ex. 2, J.R.0030, D. Chen Feb. Tr. at 99:7-16 (confirming this); ECF 157 at 2 ("paragraphs ten and eleven . . . of ECF No. 122-6 are not correct[.]").

But David, Li Fen and their counsel did not tell the Court about *all* of the false statements they made about David's deleted evidence, and they have never told the Court that they *knowingly* lied about the relevance of the deleted messages, *at the time they made those misrepresentations*. Decl. ¶¶ 116-27. At his second deposition on spoliation, David testified that, *before* filing an opposition to Robert's Motion for a Preservation Order, David's lawyers had taken notes indicating that David had deleted messages from channels that contained relevant or potentially relevant evidence. *Id.* ¶ 117 (citing Ex. 2, J.R.0031, D. Chen Feb. Tr. at 101:11-102:5). David

---

[4] The "discovery range" counsel used to limit the messages at issue was an artificially limited one to which Robert had never agreed. *See* Ex. 11, J.R.1104, Email from R. Clattenburg (Apr. 3, 2025).

conceded that after telling his lawyers that relevant ESI had been destroyed, he "let them continue to tell the Court"—falsely—"that they didn't have any evidence of documents [he] destroyed that were relevant." *Id.* ¶ 119 (quoting Ex. 2, J.R.0040, D. Chen Feb. Tr. at 137:21-138:7). For months, David, Li Fen, and their counsel continued making false statements to the Court and opposing counsel, and in discovery responses. *Id.* ¶ 116-27.

## LEGAL STANDARDS

**Rule 37(e)** provides, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may award sanctions against the spoliating party. Fed. R. Civ. P. 37(e). There are "four threshold requirements[:] . . . [T]he movant must show that '(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.'" *Model Remodeling, Inc. v. Tripod Holdings, LLC*, No. 19-cv-1397, 2021 WL 3852323, at *5 (D. Md. Aug. 27, 2021).

With those requirements met, two sets of sanctions are available, under **Rule 37(e)(1)** and **(e)(2)**: Under Rule 37(e)(1), if the court finds another party was prejudiced by the loss of information, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e) Under Rule 37(e)(2), if the court finds the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," the court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." *Id.*

Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information" before awarding sanctions because "the finding of intent required by

the subdivision can support . . . an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e)(2) advisory comm. note to 2015 amendments. "Additionally, '[w]hen the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit.'" *Model Remodeling*, 2021 WL 3852323, at *8 n.7.

**ARGUMENT**

**I.   LI FEN AND DAVID'S CONDUCT MERITS SANCTIONS UNDER RULE 37(e)(2).**

**A.   Li Fen and David Had a Duty to Preserve ESI Since at Least April 27, 2022.**

A duty to preserve evidence arises "before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). A party anticipating litigation must preserve "information that is relevant to the claims or defenses of any party" or "to the subject matter involved in the action." *Doe v. Vanderpool*, No. 22-cv-1915, 2024 WL 4881928, at *2 (D. Md. Nov. 25, 2024).

David, acting as a proxy for Sam Chen, whose estate is the plaintiff in *Yao v. Chen*, anticipated litigation at least as early as April 27, 2022, when he started destroying evidence related to OtterSec's work on the Codes. Decl. ¶¶ 10-13 (citing, *e.g.*, Ex. 4, J.R.0149, D. Chen July Tr. at 61:2-62:22). On that day, Robert threatened litigation, and David said he anticipated litigation. For example, on April 27, 2022, David told Robert and Philip Papurt that he was "transferring any IP I own back to me." Ex. 12, J.R.1115, LFM-DMD-00053304 at 1. Robert responded, "I'd argue you don't own all the ip . . . we can litigate over it later." *Id.* at 3. Written communications that "openly threaten[] litigation" put "the recipient on notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009) ("[P]re-filing communications between the litigants can . . . provide constructive notice that litigation is likely."). The same day, David discussed

8

Robert's litigation threat, agreeing that Robert would probably "lawyer up," and that "anything [David] sa[id] . . . could be used as evidence." *See* Decl. ¶ 11. David told another friend that Robert was "serious" about suing him, "probably [for] taking intellectual property." *Id.* at ¶ 13.

As soon as Sam and Li Fen anticipated litigation, they, too, had a duty to preserve. This was no later than early May 2022, when David told a friend that his parents were "insistent" they involve counsel to "kick [Robert's] ass." Decl. ¶ 73. The duty to preserve continued through 2022 and early 2023: David and his family had retained counsel and were preparing for litigation against Robert. *Id.* ¶ 15. Li Fen filed *Yao v. Chen* on March 31, 2023. ECF 1, Compl. A duty to preserve evidence exists "during litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). David also received a subpoena on June 6, 2024. ECF 121-6, Ex. 2 to Decl. of J. Levy.

**B.  David Destroyed Relevant Evidence That Should Have Been Preserved.**

All of David's deletions of evidence came on or after April 27, 2022, and every deletion was intentional. A party that "actively chose to delete ESI" that should be preserved has necessarily failed to take reasonable steps to preserve it. *Twins Special Co. v. Twins Special, LLC*, No. 21-cv-221, 2025 WL 1292528, at *14 (S.D. Cal. May 5, 2025). The same goes for a party that takes "no steps" at all to preserve ESI. *Fowler v. Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 774 (D. Md. 2023). David's *intentional* destruction of ESI supports an inference that the destroyed ESI was relevant. *First Mariner Bank v. Resol. L. Grp., P.C.*, No. 12-cv-1133, 2014 WL 1652550, at *12 & n.4 (D. Md. Apr. 22, 2014) (presuming spoliated ESI was relevant where it was "willfully" destroyed).

When asked in an interrogatory, Li Fen could not describe any steps she or Sam took to preserve ESI by preventing David from destroying potentially relevant ESI (much of which he ultimately did destroy), even after they knew that he had deleted company records when leaving OtterSec. Decl. ¶ 131 (citing Ex. 13, J.R.1125-29, *Yao* Aug. 29 Resps. at 5-9 (ROG #1)).

9

**1. On April 27, 2022, David deleted relevant OtterSec records.**

On April 27, 2022, any "objectively reasonable person" in David's position would have understood that ESI related to the OtterSec Codes was potentially relevant to Robert's threatened claims. *Doe*, 2024 WL 4881928, at *5. David set about deleting such records anyway. He "wipe[d]" OtterSec's computer server (a piece of computer hardware, as opposed to OtterSec's *Discord* server), and "deleted the OtterSec 'virtual machines'" from that server. Ex. 13, J.R.1145, *Yao* Aug. 29 Resps. at 25 (ROG #15). Sometime thereafter, David says, "the original disks" for this server "burned out." *Id.* at 25-26. He admits that he also deleted Discord channels called **#spl-token-lending-liquidator, #market-maker, and #solend-liquidations**. Decl. ¶ 24 (citing Ex. 36, J.R.1528-31, RFA Resps). David knew that he, Robert, and other OtterSec personnel had used these channels to discuss work on the Codes over the previous months. *Id.* David should have preserved these as containing ESI related to the Codes and his work at OtterSec.

**2. On May 21, 2022, David claims to have destroyed a version of the stolen Code.**

David has also said that in May 2022, having taken the Solend Liquidator Code from OtterSec, he made edits to it, used it to profit, and then deleted those edits on May 21, 2022, thereby destroying a version of the Code. Decl. ¶ 45; *see also* Ex. 14, J.R.1159, *Chen* Aug. 29 Resps. at 8 (ROG #5); Ex. 4, J.R.0165, D. Chen July Tr. at 125:15-128:20 (testifying to the same). David testified that he spoke to his father about using or building on the OtterSec Codes prior to deleting this ESI, Ex. 4, J.R.0165-66, D. Chen July Tr. at 128:1-129:1, but Sam did not take any steps to stop his son from destroying this evidence.

**3. David deleted relevant messages from the "AltTank," "Save Team," and "Save (formerly Solend)" servers beginning in 2022.**

Between November 2, 2022, and July 27, 2024, David deleted 137 Discord messages, including 25 messages from the "AltTank" server, 17 messages from the "Save Team" server, and

10

three messages from the "Save (formerly Solend)" server. Decl. ¶ 27. David knew he had discussed the Solend Liquidator Code in these servers. *Id.* ¶ 29; Ex. 15, J.R.1174-75, *Chen* Nov. 25 Resps. at 5-6 (ROG #15). David also admitted that he knew many of the messages he deleted concerned the Solana blockchain or Solend lending protocol (on which the Solend Liquidator Code operates) or were otherwise potentially relevant. Decl. ¶¶ 29, 32-33, 35, 38-41. Also in this time period, he deleted 8 of his direct messages concerning Solend liquidations, 2 others from a conversation in which he says he discussed *Yao v. Chen*, and 14 messages he sent in channels that he says, in the Discord Spreadsheet, did not "exist anymore." *Id.* ¶¶ 33, 37, 108. David did not assess relevance for messages from channels that no longer existed. Given his willful deletion of other relevant messages, these and other messages that he deleted on purpose should be deemed relevant.

### 4. David deleted relevant messages from the "new clickbait" server.

David deleted *all* his "messages [sent] after December 20, 2021" from the "new clickbait" server. Ex. 4, J.R.0138, D. Chen July Tr. at 17:12-14; *see also* Ex. 9, J.R.0348-80, Discord Spreadsheet (rows 2957-4883, showing deleted messages sent from December 22, 2021, to January 9, 2024). David sent messages regularly in this server, often multiple times a day. Decl. ¶ 43. Between February and April 2022, when he worked for OtterSec, the days when David sent the most messages in the "new clickbait" server were all days central to this litigation: the day OtterSec was founded, the day he and Robert discussed investment by Sino Global Capital (relevant to the tortious interference claim in *Chen v. Chen*), the day he and Robert met with Jump Crypto (relevant to breach of fiduciary duty and fraud claims in *Yao v. Chen*), and the day he quit OtterSec and destroyed its records. *Id.* ¶ 45-50. Given David's comprehensive deletions, it is impossible to know all the relevant messages that he sent in "new clickbait," but it is implausible that messages sent on these days—and others—were not relevant. In addition, since David posted in "new clickbait" regarding a falling out with a business partner in the fall of 2021, it stands to

11

reason that he also discussed his falling out with Robert in 2022 there, in messages that he later deleted.

After initially denying that *any* deleted messages were relevant, David now concedes that he did delete relevant messages from the "new clickbait" server, including some from May 2022 that discussed both OtterSec and his use of the Solend Liquidator Code. Decl. ¶¶ 51-53. Third-party discovery revealed that David sent many more relevant messages on this server,[5] including messages about Robert, about creating and valuing the Solend Liquidator Code, about a 2021 business dispute involving the Solend Liquidator Code, and about his parents' views on that dispute. *Id.* ¶¶ 51, 56-62. He even created a new channel in the server, called "rubber-duck-debugger," that he used to discuss the Solend Liquidator Code. *Id.* ¶¶ 56-58. He deleted 41 "new clickbait" messages that he had sent in the time period when his mother alleges Robert was negotiating with Jump behind David's back and from the days when David transferred 10% of the company to Robert. *Id.* ¶ 44. Those deleted messages might have undermined Li Fen's allegations in *Yao v. Chen*. Other intentionally deleted messages, whose content is unknown, should be presumed relevant. *See First Mariner Bank*, 2014 WL 1652550, at *12 & n.4.

### 5. David deleted relevant ESI from the Jito server.

David described the Jito server as "a gathering place," Ex. 2, J.R.0019, D. Chen Feb. Tr. at 54:8-10, for "people who like to talk about" liquidations and other forms of MEV (maximum extractable value) trading. *Id.* at 65:3-6. Because the OtterSec Codes were designed to carry out MEV trading on the Solana blockchain, David's discussions related to MEV trading are relevant to the claims and defenses in these actions. The Jito server therefore contained "potentially relevant

---

[5] Robert's counsel obtained messages David sent on the "new clickbait" server and never deleted from third parties and they show that the server was a place he had relevant conversations. *See* Decl. ¶¶ 54-63.

evidence," which David was obligated to preserve. *Membreno v. Atlanta Rest. Partners, LLC*, 338 F.R.D. 66, 72 (D. Md. 2021).

David confirmed he discussed MEV trading and bots on the Jito server. Decl. ¶ 17. David knew, when he deleted messages in the Jito server, that these messages related to the Codes he took from OtterSec. Ex. 2, J.R.0037, D. Chen Feb. Tr. at 127:4-19. David admitted that *at least* 48 messages he deleted from the Jito server were "relevant," Decl. ¶ 65, a fact confirmed because these messages were among those Robert happened to have preserved. Ex. 2, J.R.0013, D. Chen Feb. Tr. at 31:17-32:19. Given that David sent relevant messages on the Jito server and given that the entire subject matter of the server was potentially relevant to this litigation, he should not have deleted anything from it.

### 6. David deleted relevant messages that he sent to his friend Ally Guo.

David deleted 10,430 Discord messages he sent to Ally Guo in 2020 and 2021. Ex. 13, J.R.1137, *Yao* Aug. 29 Resps. at 17 (ROG #5). In 2022 messages to Ally, David discussed his finances (including profits from the Solend Liquidator Code), and his parents' involvement in his business dealings ("My parents dont really like the amount of yolo risk I'm taking lmao" and "they fuckin hate [Robert's] guts"). Decl. ¶¶ 72-74. It stands to reason that his 2021 deleted messages to her, from the time period when he says he was developing the Solend Liquidator Code, concerned similar topics and are relevant to the origins of the Code that he says he owned. Ally's testimony supports this inference: She testified that she recalled David saying, in Discord messages, "something about taking code" from someone in the fall of 2021. Ex. 16, J.R.1206, Guo Tr. at 94:18-19 (Oct. 14, 2025). Also in 2021 messages with Ally, David discussed a 2021 business relationship related to developing the Solend Liquidator Code. Decl. ¶ 75 (citing Ex. 17, J.R.1251-54, GUO2_00172 at 180-83). David's willful deletion of his messages to Ally supports the

13

inference that they were relevant. *First Mariner Bank*, 2014 WL 1652550, at *12 & n.4. As does the fact that David and Li Fen have **never** produced any of the 10,430 deleted messages, despite representing that they had been preserved. Decl. ¶¶ 76-78, 146-50.

### 7. David deleted relevant messages on Signal with Philip Papurt, a key witness.

Philip Papurt worked for OtterSec, and David communicated extensively with him about OtterSec, his (David's) quitting OtterSec, the Solend Liquidator Code, and this litigation. Decl. ¶¶ 79-85. Robert's counsel served Papurt with a subpoena on December 5, 2024; after receiving it, Philip messaged David on Signal, an encrypted messaging platform. Ex. 2, J.R.0045-46, D. Chen Feb. Tr. at 160:20-161:1; *see also* Decl. ¶¶ 86, 135. David says Philip enabled Signal's "disappearing messages" feature, which automatically deletes messages after a predetermined period of time. Ex. 2, J.R.0046, D. Chen Feb. Tr at 161:2-10; *see also* Decl. ¶ 87. David concedes he could have disabled "disappearing messages" on his Signal chat with Philip but never did. Ex. 2, J.R.0046, D. Chen Feb. Tr. at 161:11-163:1; Ex. 4, J.R.0153, D. Chen July Tr. at 78:7-9, 80:7-11. By keeping "disappearing messages" on and by failing to otherwise preserve the messages before they disappeared, David knowingly failed to preserve any of his Signal chat with Philip. Ex. 2, J.R.0046, 0052, D. Chen Feb. Tr. at 161:11-18, 186:11-188:6; *see also* Decl. ¶¶ 87-89. Given the relevant conversations between David and Philip on Discord and the timing of when Philip contacted David over Signal, their "disappeared" Signal chats must have been relevant.

### 8. David and Li Fen never backed up David's phone, and a forensic expert called his explanations for it becoming inoperable "highly unlikely" and "improbable."

David says his phone "bricked" and "stopped working" suddenly around April 2, 2023, days after his mother filed *Yao v. Chen*. Decl. ¶¶ 90-91, 100. David confirmed he used "text messages" to discuss the relevant topics. Ex. 14, J.R.1161, *Chen* Aug. 29 Resps. at 10 (ROG #8). No one backed up his phone, despite anticipating litigation. Ex. 4, J.R.0159, D. Chen July Tr. at

103:20-104:10. This alone shows that Li Fen and David failed to take reasonable steps to preserve potentially responsive ESI from his phone. *See Sines v. Kessler*, No. 17-cv-72, 2021 WL 4943742, at *9 (W.D. Va. Oct. 22, 2021) ("[W]hether one believes [his] story about how the Android phone was lost . . . his admitted failure to take any . . . measures to protect the phone's contents . . . show[s] that he acted unreasonably").

David, who made a series of false statements to this Court about his destruction of relevant evidence, implausibly claims that his phone malfunctioned just as his mother filed her case because he had tried to change the phone's operating system *a year prior* (around when he left OtterSec and anticipated lawsuits, in late April or May 2022). Ex. 69, J.R.2025, Decl. of D. Chen ¶ 5 (June 13, 2025); Ex. 4, J.R.0160, D. Chen July Tr. at 107:14-19 *see also* Decl. ¶ 100. A digital forensics firm jointly selected by the parties determined: (1) it is "highly unlikely that the Motorola failed in the way" David claimed because "phones do not 'brick' themselves for no apparent reason;" (2) "[t]echnically, the phone did not cease to work as previously described by David Chen," it is simply "unable to boot normally" and is stuck in "Fastboot" mode; and (3) "it is improbable that the Motorola just stopped its normal functioning." Ex. 18, J.R.1268-69, Email from M. Gaffney (Sept. 17, 2025). Li Fen refuses to explain how she learned the phone had broken, except to say she "learned [of it] from David[.]". *See* Ex. 13, J.R.1143, *Yao* Aug. 29 Resps. at 23 (ROG #12).

The amount of data that was only on David's phone and never backed up is unknown. David and Li Fen's counsel represented in November 2024 that their "understanding is that the only data on the phone which we have not be[en] able to collect through other means are David's text messages." Ex. 19, J.R.1295, Email from S. Plotnick (Nov. 11, 2024). David used his phone to communicate with his mother about this action and the Solend Liquidator Code through text and picture messages, *see* Decl. ¶ 106, but Li Fen has produced no messages with David from

15

before April 2023 (when the phone "bricked"). *Id.* ¶ 107. David, his mother, and their counsel have delayed efforts to recover data from the phone for months, including by surreptitiously emailing the forensics team without copying Robert's counsel and instructing them not to proceed with agreed-upon recovery efforts. *Id.* ¶¶103-05.

### C. <u>The Material That David Deleted Is Lost and Cannot Be Retrieved.</u>

David agrees that messages deleted from Discord are "gone" and no one can see them. Ex. 4, J.R.0152, D. Chen July Tr. at 75:17-22; *see also* Ex. 2, J.R.0018, D. Chen Feb. Tr. at 49:20-50:22 (same). A digital forensics firm his family engaged was unable to recover them. *See id.* at 74:6-75:7. The OtterSec server he wiped on April 27, 2022, was not preserved. Nor were the channels he deleted that same day. None of the ESI David deliberately deleted from the "AltTank," "Save (formerly Solend)," "Save Team," or "new clickbait" Discord servers was preserved; obviously not by David, or by his parents who did nothing to preserve his Discord ESI. Decl. ¶ 131. Nor was Robert able to obtain copies of the deleted messages through third-party discovery, <u>despite efforts to do so</u>. Decl. ¶¶ 134-45. With respect to the Jito server, while Robert had preserved some of the messages that David deleted, many others are gone forever.[6] Decl. ¶ 66. The 143 unpreserved Jito server messages, along with 25 messages David deleted from the AltTank server, 20 messages he deleted from the "Save (formerly Solend)" or "Save Team" Servers, 1,927 messages he deleted from the "new clickbait" server, and all the messages from the three OtterSec channels he deleted in their entirety on April 27, 2022, have all been lost and cannot be retrieved (along with thousands more not directly at issue in this motion). The 10,430 messages to Ally Guo

---

[6] Specifically, David deleted 768 messages from the Jito server on July 29, 2024—everything he had "sent after August 5, 2022." Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6). Robert had earlier exported a copy of all messages to which he had access on the Jito server prior to April 2023, including ones David later deleted. But Robert did not have copies of 143 deleted messages that David had sent on the Jito server after March 31, 2023. Decl. ¶ 66.

that David deleted are also lost forever, as are the GitHub records that David says he deleted. Decl. ¶¶ 76-78, 115. David and Li Fen have also forever destroyed an unknown volume of ESI from Signal and David's phone, from the OtterSec server David wiped, from the virtual machines he deleted, and from the disks that he allowed to burn out.

**D. Davidの Destroyed ESI to Prevent Robert from Using It in Litigation.**

**1.    David and his parents intentionally destroyed potentially relevant ESI.**

The intentionality of David's deletions is undisputed and supports sanctions under Rule 37(e)(2). *See Model Remodeling*, 2021 WL 3852323, at \*13 ("Merely negligent or even grossly negligent conduct is not a sufficient basis to impose sanctions under Rule 37(e)(2)."). He affirmatively deleted Discord channels and company records on April 27, 2022, and thousands of his own messages thereafter. *See supra* Section I.B; Ex. 4, J.R.0167, D. Chen July Tr. at 134:20-135:7 (admitting his deletions were intentional). He mass-deleted messages just before collecting them. Ex.13, J.R.1136-37, *Yao* Aug. 29 Resps. at 16-17 (ROG #5). He counted on the fact that deleted messages would be gone forever and undiscoverable. Ex. 4, J.R.0137, 0155, D. Chen July Tr. at 13:10-12, 87:15-88:11. He intentionally deleted records of edits to the Solend Liquidator Code in May 2022. *Supra* Section I.B.3. He allowed his Signal chats with Philip Papurt to delete, and those messages are gone forever. Decl. ¶¶ 86-89. Last, given David's history of deleting ESI to keep it out of the litigation and the length of time his phone has remained inaccessible with no retrieval of any ESI, his multiple lies in this case, and the forensic examiner's determination that his account of what happened to his phone was "improbable" at best, *see supra* Section I.B.8, it is highly likely David "bricked" his phone intentionally.

David was his father's agent with respect to OtterSec and has been his mother's (and the Estate's) with respect to *Yao v. Chen*. David has described his parents' animosity toward Robert, and their desire to litigate aggressively against him. Decl. ¶ 73. All of his conduct and motivation

17

with respect to deletion of ESI can be imputed to his parents in that they knowingly failed to take any steps to prevent their minor son, and agent, from destroying evidence and permitted him to do so even after they knew he had destroyed ESI that should have been preserved. *See id.* ¶ 16.

### 2.  David destroyed ESI to prevent Robert from using that ESI in litigation.

David admits that: (1) depriving Robert of the use of ESI for purposes of this litigation "may have been one of the reasons" why he deleted ESI, Ex. 4, J.R.0138, D. Chen July Tr. at 20:10-19; (2) he deleted ESI to "annoy Robert," while engaged in litigation with him, *id.* at 45:17-46:3; and (3) he deleted ESI because he knew that no one (including Robert) would be able to see it once it was deleted, *id.* at 75:17-22. Beyond these concessions, the circumstances under which David deleted ESI show that he hoped to undermine Robert's case. Circumstantial evidence can establish an intent to deprive another party of the use of ESI in litigation. *Fowler*, 673 F. Supp. 3d at 768 ("[A] court 'has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives . . . and other factors."). Here, the lengths to which David, Li Fen, and their counsel went to avoid giving straight and accurate answers about what David deleted also shows bad faith and desire to harm Robert's case. They continue to give shifting and implausible reasons for David's destruction of ESI, in an effort to obfuscate his real reason, which was to hurt Robert's case. *See supra* Background Section F (citing Decl. ¶¶ 116-27); *see Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1017 (D. Ariz. 2021 ("[T]he sheer number of obfuscatory actions undertaken . . . evince an unusually clear level of intent to deprive Defendants of potentially relevant ESI.").

### a.  David deleted OtterSec records on April 27, 2022, to impede Robert's claims.

David's Discord chats show that as he was deleting Discord channels relating to the OtterSec Codes and wiping the OtterSec server and virtual machines on April 27, 2022, he was thinking about how to gain an advantage over Robert in litigation. *See supra* Section I.A; Decl.

18

¶¶ 10-15. His comments about Robert from this date demonstrate an unmistakable animosity and desire to hurt Robert. Decl. ¶¶ 11-13, 81. Other messages from this date show that David was thinking about needing evidence to "pro[ve]" his work for OtterSec. Decl. ¶ 14. David knew that the OtterSec Codes would be the focus of any lawsuit. Decl. ¶ 13. Given that he was trying to hurt Robert, anticipated intellectual property claims, knew the value of the ESI he was deleting to Robert's case, and was even thinking explicitly about Discord messages as litigation evidence, *see id.* ¶ 11, it is evident that David's deletions were motivated by a desire to deprive Robert of ESI in litigation—the code-related channels, the OtterSec server, and virtual machines.

b.  David deleted Discord messages to stop Robert from discovering them.

The timing of David's 2024 deletions, including from the "new clickbait" and Jito servers, confirm that he intended to keep Robert from using of the deleted messages in litigation. After retaining his messages for years, on July 28, 2024, David downloaded a program and mass-deleted over 6,600 messages just before requesting his ESI from Discord for his lawyers, so they could respond to the subpoena and party discovery, Decl. ¶ 25 (citing Ex. 13, J.R.1136-37, *Yao* Aug. 29 Resps. at 16-17 (ROG #5); Ex. 4, J.R.0136, D. Chen July Tr. at 10:6-11:10). David requested his messages from Discord on July 30 and obtained them on July 31. *Id.* (citing Ex. 4, J.R.0144, D. Chen July Tr. at 41:1-42:6). David stated, in verified answers to interrogatories, that the messages were collected "for purposes of discovery in this case," Ex. 13, J.R.1130, *Yao* Aug. 29 Resps. at 10 (ROG #2). The timing thus reflects that he deleted his Discord messages to ensure that the ESI he sent to counsel would not include those messages.[7] Just recently, he implausibly claimed for the first time that he requested the data not "for [his] lawyers" but "for [his] own personal

---

[7] *See Jones v. Riot Hospitality Grp. LLC*, 95 F. 4th 730, 735 (9th Cir. 2024) (calling "the timing of destruction" a "[r]elevant consideration[]" for a district court assessing intent under Rule 37(e), along with "affirmative steps taken to delete evidence, and selective preservation).

19

enjoyment," Ex. 2, J.R.0038, D. Chen Feb. Tr. at 130:9-13; *see* Decl. ¶ 26. This latest unbelievable excuse shows that David continues to lie about his motives and lacks credibility.

David repeated the same pattern later in the year: From October 10-28, 2024, he deleted 10,430 messages he had sent to Ally Guo, Ex. 13, J.R.1137, *Yao* Aug. 29 Resps. at 17 (ROG #5)at 17, just before his discovery vendor collected, on October 29, the data he had obtained in July. *Id.* at J.R.1132 & n.6 (ROG #2). Based on this pattern of willful misconduct, the Court can infer that David deleted ESI from the "AltTank," "Save Team" and "Save (formerly Solend)" servers for the same reasons. He has lost the benefit of the doubt.

> i.  *David admits he deleted ESI from the "new clickbait" server because it was relevant to this litigation and to deny Robert's ability to discover it.*

David acknowledged that, in deleting messages from the "new clickbait" server, he "may have been" "trying to get rid of those messages for purposes of this litigation," so that they "wouldn't be part of this litigation," Ex. 4, J.R.0138, D. Chen July Tr. at 20:2-18, and that he was hoping Robert would not be able to see them, *id.* at 88:7-11. David testified that he knew his credibility would be at issue in this litigation and agreed that the material he deleted would embarrass him and would not look good in litigation. *Id.* at 26:7-27:1 ("Q. And it would look terrible in your litigation, right? A. I would argue that's not the only thing on my mind but, yes."). He also admitted that the presence of messages relating to the Solend Liquidator Code on the "new clickbait" server "likely also factored into his decision to delete [those] messages." Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6).

David's alternative explanations have shifted over time, which suggests they are pretextual. He first said that his reason for all his July 2024 deletions was that "he was embarrassed by" the messages. Ex. 20, J.R.1312, *Yao* May 30 Resps. at 12 (ROG #6). Later, he said he deleted messages from the "new clickbait" server because they "frequently included highly personal, and sometimes

20

raw or salacious, discussions" and "enhanced" his "personal difficulties . . . following the death of his father." Ex. 21, J.R.1338-39, *Yao* July 17 Resps. at 17-18 (ROG #6). Later still, he tied the "new clickbait" deletions to a falling out with Ally Guo. Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6). In addition to being inconsistent, each of these explanations is implausible on its own: David did not in fact delete nearly all his messages that were "salacious" or embarrassing. Decl. ¶ 55 (describing sexually explicit and otherwise salacious messages that David never deleted). He did not delete *everything* he sent on the "new clickbait" server, leaving most of his posts from 2021 in place, and instead started his deletions around the time he started working with Robert. Decl. ¶ 43. He claims to have deleted "new clickbait" messages in order to "move on from Ally," but he did not delete messages he sent directly to her until months later.[8] *See supra* Background Section E and Section I.B.6. Furthermore, deleting messages that caused him "personal difficulties" and harmed his "well-being" is entirely consistent with deleting messages he did not want Robert to obtain in litigation because they "would make [David] look bad." *See* Ex. 4, J.R.0146-47, D. Chen July Tr. at 52:22-54:15.

    ii. *David admits deleting ESI from the Jito server "to annoy Robert."*

David deleted messages from the Jito server just before collecting them because he wanted to prevent their production. After first saying only that the messages were "embarrass[ing]," David later specified that the deleted Jito messages reflected an "immature past" that "he wished to put behind him," in that they discussed "his success playing the game SVBonk" and "a denial of service [("DOS")] attack" that he launched.[9] Ex. 20, J.R.1312, *Yao* May 30 Resps. at 12 (ROG

---

[8] David said Ally was "not really active" in "new clickbait," so deleting messages there would be an odd way to "move on from" her. Ex. 4, J.R.0164, D. Chen July Tr. at 123:13-14.

[9] David's DOS attack explanation is pretextual. He left messages about the attack in place, and deleted messages from the server that were not about the attack or SVBonk. Decl. ¶ 69 He and his mother never mentioned the DOS attack until nearly nine months after Robert's counsel first asked

#6); Ex. 4, J.R.0139, D. Chen July Tr. at 21:3-17; Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6). After that, he stated at his deposition and in amended interrogatory responses that he deleted messages from the Jito server "to annoy Robert." Ex. 4, J.R.0145, D. Chen July Tr. at 45:17-46:3; Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6). Deleting Jito messages "to annoy Robert" must mean deleting the messages to deny Robert their use in litigation. David's testimony that he believed "that [Robert] had seen" the deleted messages, Ex. 4, J.R.0145, D. Chen July Tr. at 45:6-10, does not undo the spoliation: having seen the messages at one point in time is much different from having access to them *during the lawsuit*, something David prevented by deleting them.

      *iii.  David deleted messages he sent to Ally Guo for the same improper reasons.*

David deleted 10,430 messages he had sent to Ally Guo in October 2024, just after Robert filed *Chen v. Chen*, and just before David's discovery vendor collected his Discord ESI. *See supra* Background Section E. The timing again shows David's intent of preventing Robert from discovering relevant ESI, *see supra* Section I.A., this time prompted by the *Chen v. Chen* Complaint. *See* Ex. 4, J.R.0141, D. Chen July Tr. at 32:9-20 (testifying to receipt of the Complaint). David says he was concerned Ally would "betray[]" him, Ex. 13, J.R.1139, *Yao* Aug. 29 Resps. at 19 (ROG #6), but this excuse does not make sense and should not be credited. For one thing, he did not delete *all* his messages to Ally—only messages from 2020 and 2021. *Id.* at 17. For another, after deleting messages to Ally, David continued deleting messages into November 2024, after Robert's counsel tried to confirm that David understood his preservation duties. Ex. 9, J.R.1095, Discord Spreadsheet at 840. These facts show bad faith around the same time he deleted his messages to Ally. Finally, this explanation came alongside David's not credible

---

about Jito deletions. *Compare* Ex. 21, J.R.1338, *Yao* July 17 Resps. at 17 (ROG #6) (Second Am. Resps.), *with* Ex. 20, J.R.1312, *Yao* May 30 Resps. at 12 (ROG #6) (First Am. Resps.).

explanations of other deletions, discussed *supra*. He also falsely claimed he had preserved and produced these messages, which also shows bad faith. Decl. ¶¶ 76-78, 146-50.

### c. David lost his phone data and Signal messages for the same reasons.

The timing of David's phone "bricking"—just after the case commenced—combined with TeelTech's conclusion that David's explanation was not credible, and Li Fen and David's counsel's efforts to stall data recovery from the phone, Decl. ¶¶ 103-05, are evidence that the "bricking" was not an accident, but an effort to deprive Robert from obtaining ESI from the phone.[10] Likewise, David's failure to preserve Signal messages with Philip, not long after he deleted Discord ESI, suggests he did so for the same reason: to deprive Robert from using them. Unlike the defendant in *Brittney Gobble Photography LLC v. Sinclair Broadcast Group, Inc.*, David knew there was relevant evidence in his messages with Philip and did not simply "allow[] [a] routine . . . deletion to proceed in accordance with . . . procedures established before [he] received [a] [s]ubpoena," No. 18-cv-3403, 2020 WL 1809191 at *10 (Apr. 9, 2020); he allowed automatic deletions in a new chat that started after he and Philip had both received subpoenas.

### E. Robert Was Prejudiced by the Loss of ESI.

Under Rule 37, Robert is prejudiced because David (and by extension, Li Fen) deleted ESI with the intent of depriving Robert of its use in litigation. *See supra* Legal Background (quoting Fed. R. Civ. P. 37 advisory committee note to 2015 amendment). David's desire to stop Robert from seeing the ESI he destroyed indicates it would have been favorable to Robert. David conceded that the deleted messages "would look terrible in [his] litigation". Ex. 4, J.R.0140, D. Chen July Tr. at 26:20-27:22; *see also* Ex. 13, J.R.1137-38, *Yao* Aug. 29 Resps. at 17-18 (ROG #6)

---

[10] This case is the inverse of *Cooper v. Baltimore Gas & Elec. Co.*, No. 23-CV-03116, 2025 WL 1416943 (D. Md. May 16, 2025), where "counsel ha[d] actively cooperated in the forensic process" for lost phone data. *Id.* at *6 ("Such efforts are inconsistent with an intent to deprive.").

(describing the messages as "crude, unfiltered or boastful" and "part of an immature past").

Although the deleted ESI is gone forever and its specific contents are unknown, it is clear that its deletion prejudiced Robert. "The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs 'when, as a result of the spoliation, the party claiming spoliation cannot present "evidence essential to its underlying claim."'" *Cooper*, 2025 WL 1416943, at \*4. The OtterSec server and channels David wiped and deleted on April 27, 2022, for example, see *supra* Section I.B.1, would have been some of the best evidence for Robert's argument that "OtterSec authored [an] improved, derivative code" based on work that OtterSec personnel discussed in these channels and then performed on the Codes. ECF 126, 2d Am. Compl. ¶ 133. Such evidence would have been "particularly probative to [Robert's] type of claim." *Doe*, 2024 WL 4881928, at \*7 (finding that "Plaintiff is prejudiced" where "exactly the type of evidence Plaintiff could use to establish" relevant facts has been spoliated). Likewise for *Yao v. Chen*—the deleted evidence was relevant to Robert's defense, as it would show how David usurped OtterSec's opportunity to use the Codes. With the best evidence on these issues deleted, Robert must rely on lesser evidence which may be confusing or less persuasive to a jury. *See Model Remodeling*, 2021 WL 3852323, at \*11-12. Even if Robert finds equally strong alternative evidence, his arguments will be "weaker when [he] cannot present the overwhelming quantity of evidence [he] otherwise would have had to support [his] case." *Id.* at \*12 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)). Without the deleted ESI, Robert will have a harder time proving OtterSec's contributions and/or changes to the Solend Liquidator Code, and that OtterSec created a derivative work or—in the alternative—is entitled to a share any profits gained from running the Code.

The same goes for the 17,000+ Discord messages David deleted, including those from servers where he had discussed OtterSec, the Solend Liquidator Code, or MEV trading more

24

generally. *See supra* Sections I.B.3-5. Robert is prejudiced by not being able to obtain these relevant messages in discovery or use them at trial. The Court can presume that willfully deleted messages were relevant. *First Mariner Bank*, 2014 WL 1652550, at *12 & n.4. Specifically, too, the messages David sent on the "new clickbait" server while working with Robert (and later deleted) also likely reflected his thoughts and motivations during that time, *supra* Section I.B.4, and may have harmed David's credibility as a witness or been inconsistent with his mother's claims, or his defenses. The 41 messages he deleted from the period of alleged negotiations with Jump and of the 10% transfer, *see supra* Section I.B.4, may have shown that David knew about OtterSec's discussions with Jump and might have revealed his true reasons for proposing and agreeing to the transfer. David also deleted 413 messages he had sent in September 2022, the month when Robert was selling OtterSec's assets. Decl. ¶ 26; *see* ECF 1, Compl. ¶¶ 101-02. In so doing he likely deleted ESI reflecting his and his family's contemporaneous commentary on a dissolution process that they allege was improper. David's willful deletion of the messages suggests they would have undermined his and his mother's positions.

The deletion of messages from the "new clickbait" server related to David's use of the Solend Liquidator Code also prejudiced Robert. *Supra* Section I.B.4. These deleted messages, sent just days after he took the Code, would have shed light on what version of the Code David was using in May 2022. This is otherwise unknowable since David says he deleted edits he made to the Code after taking it. *Supra* Section I.B.2. Robert is prejudiced both by the deletion of these edits from GitHub and by the loss of "new clickbait" messages that might have shed light on what code he was running in May 2022 (and who had worked on it). ESI that David deleted from the Jito server also related to the Solend Liquidator Code, *supra* Section I.B.5, and would have been relevant to understanding what code David was running, when he was running it, and how much

25

Robert and OtterSec were damaged in the form of usurped profits. Willfully deleted messages that David sent to Ally, at least some of which related to the Code, are also presumptively relevant. *Supra* Section I.B.6. Without these messages, Robert cannot learn what relevant conversations they had in 2021, especially any related to the development of the Solend Liquidator Code.

The Court can also presume prejudice from the loss of relevant Signal ESI that David chose not to preserve and from the loss of phone data that David caused and that he and Li Fen chose not to preserve. *First Mariner Bank*, 2014 WL 1652550, at \*12 & n.4; *supra* Section I.B.7-8.

David also prejudiced Robert by forcing him and his counsel to spend over a year exploring David's intentional deletion of ESI and responding to false representations, *see supra* Background Section F, rather than litigating the merits of these cases. All assessment of the evidence that Davud deleted has been conducted by Robert and his counsel. David and his mother made no efforts to recover deleted ESI and did not serve a single third-party subpoena seeking discovery from, for example, other members of the servers from which David deleted evidence, forcing Robert's counsel to serve numerous subpoenas seeking this information. Li Fen and David's counsel actively undermined efforts to recover data from his phone. *See supra* Section I.B.8. All this has been prejudicial to Robert's ability to litigate these cases.

## II.  HARSH SANCTIONS ARE WARRANTED.

Because David intentionally destroyed relevant ESI with the intention of depriving Robert of its use in litigation while acting on his parents' behalf, and because his parents did nothing to preserve this ESI or to stop him from destroying it, and because they tried to cover it up, sanctions under Rule 37(e)(2) are warranted. The scale of the spoliation is vast—17,222 Discord messages, plus additional full channels, many of them highly relevant to this litigation; an OtterSec server; records of edits to the Codes; Signal messages; and David's phone data. *See Collins v. Tri-State*

*Zoological Park of W. Md., Inc.*, No. 20-cv-1225, 2021 WL 5416533, at *3 (D. Md. Nov. 19, 2021) (declining to apply the harshest sanctions where "the nature and extent of the evidence likely lost" was unknown). When evidence of spoliation is "clear and convincing," as it is here, the Court can impose "relatively harsh sanctions." *Cooper*, 2025 WL 1416943, at *4. "Clear and convincing evidence" is "more than a mere preponderance but not beyond a reasonable doubt." *Wolfe v. Columbia Coll.*, No. 20-cv-1246, 2025 WL 2443552, at *15 (D. Md. Aug. 25, 2025).

A. **Li Fen Yao Should Be Sanctioned for David's Spoliation Because She Controlled David's Documents, Used Them in Her Case, and Cannot Do So Selectively.**

Plaintiff Li Fen Yao has "control" over David's documents, is responsible for failing to take *any* steps to preserve the ESI that David destroyed and should be sanctioned for its spoliation. *U.S. EEOC v. MVM, Inc.*, No. 17-2881, 2020 WL 6482193, at *1 (D. Md. Nov. 2, 2020) (Chuang, J.) ("documents are . . . under a party's control when that party has 'the right, authority, or practical ability to obtain the documents'"). Li Fen had unfettered access to her son's documents and information throughout this litigation. As David's mother and the owner of his home, she was able to obtain David's documents, *see* Decl. ¶ 129, and has obtained, used, and produced *some* of them, selectively—those that David did not delete. As early as May 2022, Sam and David identified *David's documents* as potentially relevant to the claims they were going to pursue. *See* Ex. 13, J.R.1125-26, *Yao* Aug. 29. Resps. at 5-6 (ROG #1). Li Fen became the representative of Sam's estate after his death, sued on its behalf, and took over the lawsuit. *Id.* at 7-9 (ROG #1). She has built her case on *David's ESI*. Of the 370,127 documents produced by David and Li Fen, 354,849 list David Chen as the custodian. Decl. ¶ 133. In discovery, she has mostly produced documents (those that remain) and information from David. *See* Decl. ¶¶ 8, 133. Her Complaint relies almost exclusively on documents from David. In May 2024, before *Chen v. Chen* was filed, her counsel said they "did not withhold information solely because David has it, and not Li Fen." Ex. 22,

27

J.R.1353, Email from S. Plotnick (May 29, 2024) (emphasis added). Where, as here, a party has "control" over ESI and fails to take reasonable steps to preserve it, courts can apply spoliation sanctions—even if the party only had "access" to the ESI but was not its owner. *Silvestri*, 271 F.3d at 591-92 (affirming sanctions against a plaintiff who failed to "discharge[] his duty to prevent the spoliation of evidence" that he "had access to" during "months" when he anticipated litigation); *U.S. EEOC*, 2020 WL 6482193, at *1-2 (overruling objections to spoliation sanctions against a defendant that failed to preserve evidence over which it had "control" but not ownership).

B. **David's Egregious Conduct Warrants Sanctions Under Rule 37(e)(2).**

*1. Dismissal of* Yao v. Chen *under Rule 37(e)(2)(C)*: It is difficult to imagine a more sanction-worthy example of spoliation. As soon as he anticipated litigation on intellectual property claims in April 2022, David—then acting as proxy for Sam, whose estate brought *Yao v. Chen*—deleted company records that would have been highly relevant to Robert's claims and defenses, and GitHub records of edits to the Solend Liquidator Code. (David claims to have made at least $1.5 million from this Code; Robert has no way to verify that it was not more.). Ex. 14, J.R.1161, *Chen* Aug. 29 Resps. at 10 (ROG #9). Then, well into discovery, David, who was under a duty to preserve evidence, and whom his counsel had identified as the source of most of the relevant documents for *Yao v. Chen*, and who had already received a subpoena, intentionally deleted over 17,000 more Discord messages, with the aim of preventing Robert from obtaining that ESI in discovery. His mother, who knew since 2022 that she would need *David's ESI* to pursue any claims on behalf of the Estate, and who had access to and control over the ESI in question, did nothing to prevent or stop this intentional destruction.

Dismissal of *Yao v. Chen* with prejudice is warranted to deter misconduct of this kind. A lesser sanction would fail to adequately deter David's misconduct because only David knows what he deleted. This motion highlights certain categories of deleted ESI, about which Robert's counsel

28

has obtained some information, but David deleted even more ESI that has been lost forever—including messages from Discord servers like "Kusuriya no Hitorigoto" (from which David deleted 2,050 messages), direct messages over Discord and Signal, and data from his phone. Robert has no idea whether David also deleted ESI from Telegram, since Telegram is based abroad and does not respond to subpoenas. Decl. ¶ 143. David's claim that he spared Telegram messages cannot be trusted, in light of his lies about his deletions and relevance, *see* Decl. ¶¶ 116-27.

On top of all this, just last month, David's counsel admitted that the ESI they re-collected in the fall of 2025 is missing an unknown amount of data, and that David must have deleted *even more ESI* after his lawyers collected material in 2024 and early 2025 collections, including relevant emails. *See* Decl. ¶ 147 (citing (Ex. 23, J.R.1363-64, Tr. M&C Feb. 18, 2026, 15:13-22; 18:9-14)). Counsel's latest correspondence confirms they allowed David to delete even more responsive ESI in 2025 and that they have no system for identifying what he deleted and whether they preserved it. Decl. ¶ 149. They again falsely represented that they had produced the 10,430 messages to Ally Guo that David had deleted. *Id.* Any attempt to tailor a ruling to specific issues risks rewarding David's conduct—and his counsel's deliberate refusal to take his clients' spoliation seriously or to comply with his own discovery obligations as counsel—by overlooking some unknown category of deleted ESI and allowing him to introduce evidence and argument on issues where he destroyed relevant evidence that would have been favorable to Robert.

If the Court does not dismiss *Yao v. Chen* in its entirety, it should dismiss with prejudice Counts III and IV since those rely on evidence from David about his knowledge of Jump conversations, *see supra* Section I.B.4, and his deletions date to the time period of these alleged conversations. *See* ECF 194-1, Mem. in Supp. Mot. for Sanctions at 5 & n.5.

*2. Default Judgment in* Chen v. Chen *is also warranted*: The server and channels that David

29

deleted on April 27, 2022, were the best evidence OtterSec's work on the Codes. Then he deleted much of the next best evidence, including GitHub records that would show how he changed the Solend Liquidator Code (if at all) before using it to profit in May 2022, Decl. ¶¶ 111-15, and "new clickbait" messages about using the Code from May 2022, *id.* ¶ 53. A lesser sanction will fail to deter future misconduct by other litigants (or by David himself) for the reasons stated above.

*3. Adverse Instruction*: If the Court finds lesser sanctions under Rule 37(e)(2) are appropriate, these should include a jury instruction to presume any material David destroyed was unfavorable to him and his family. *Model Remodeling*, 2021 WL 3852323, at *15 (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Otherwise, David's spoliation would continue to benefit him, even if the jury is told about it.

*4. Presumption of Unfavorability*: The Court should presume that the destroyed evidence was unfavorable to David and Li Fen, as permitted under Rule 37(e)(2)(A).

### C. Sanctions Under Rule 37(e)(1) Are Also Justified.

*1. Jury Argument on Spoliation*: If the cases continue, then Robert must be permitted to "present evidence and argument to the jury regarding the loss of information." Fed. R. Civ. P. 37 advisory comm. note to 2015 amendments. The jury should know, and Robert should be permitted to argue, that David's and Li Fen's testimony is not credible because they destroyed and failed to preserve potentially relevant ESI, and then lied to the Court about it.

*2. Bar on Second-Best Evidence*: Sanctions under Rule 37(e)(1) should include barring Li Fen and David from introducing evidence on topics on which David destroyed evidence.

*3. Costs and Fees*: Li Fen and/or David should be ordered to pay Robert's related legal fees. *See* Proposed Order at 7-8.

### CONCLUSION

For all of these reasons, the Motion should be granted.

Dated: March 19, 2026

Respectfully submitted,

 /s/ Kevin P. Crenny
Kevin P. Crenny
Rachel M. Clattenburg
Joshua A. Levy
Justin A. DiCharia
Christina Lamoureux
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington DC 20006
Tel: 202-845-3215
Fax: 202-595-8253
kcrenny@levyfirestone.com
rmc@levyfirestone.com
jal@levyfirestone.com
jdicharia@levyfirestone.com
christinal@levyfirestone.com

*Attorneys for Plaintiffs Robert Chen and*
*OtterSec LLC and Defendants Robert Chen,*
*Otter Audits LLC, and RC Security LLC*