**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| LI FEN YAO, as administrator of the Estate of Sam Mingsan Chen, | |
| Plaintiff, | Case No. 8:23-cv-00889-TDC-GLS |
| v. | |
| ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC, | |
| Defendants. | |
| ROBERT CHEN and OTTERSEC LLC, | |
| Plaintiffs, | Case No. 8:24-cv-03628-TDC-GLS |
| v. | |
| DAVID CHEN, | |
| Defendant. | |

**DECLARATION OF JOSHUA A. LEVY IN SUPPORT OF MOTION FOR
SPOLIATION SANCTIONS PURSUANT TO RULE 37(e)**

1.      I am counsel for Defendants Robert Chen, Otter Audits LLC, and RC Security LLC in *Yao v. Chen* and Plaintiffs Robert Chen and OtterSec LLC in *Chen v. Chen* (collectively, "Robert"). I submit this declaration to authenticate certain documents and to describe events referenced in the accompanying Memorandum in Support of Motion for Spoliation Sanctions Pursuant to Rule 37(e). This declaration is based on my personal knowledge and my review of documents.

**I.      Discord as a Source of Evidence in These Cases.**

2.      David's own statements show that Discord, a chat application, is a key source of evidence in these cases.

1

3.      Robert and David built a relationship and ultimately decided to form a company (OtterSec), through conversations on Discord. In a declaration, David stated, "Robert and I first started discussing the business idea that became OtterSec over Discord on February 4, 2022." ECF 28-5 at ¶ 8. In a separate declaration, David stated he sent 8,088 messages to Robert over Discord from February 8, 2022, through October 6, 2022. Decl. of David Chen in Opp. to Defs.' Mot. to Dismiss (Ex. 6 to Defendant David Chen's Mot. to Transfer), *Chen v. Chen*, No. 2:24-cv-00198 ECF 9-7 ¶ 31 (D. Wyo. Nov. 12, 2024). David's username on Discord appears as either "radiantaeon" or "ra."

4.      Robert and David also discussed creating channels in the OtterSec Discord Server where they could organize, discuss, and assign tasks to OtterSec personnel. True and correct copies of these conversations are attached as Exhibits 24-25, J.R.1383-1389. *See, e.g.*, Ex. 24, J.R.1385, YAO01064854 at -5381 (Robert: "having a list [of projects] is prob a good idea[;] like just dump them in that discord channel"), Ex. 24, J.R.1386, YAO01064854 at -5393 (Robert: "discord todo channel is not bad"), Ex. 25, J.R.1389, YAO01064854 at -5671 (David: "going to make a standup channel").

II.     **David Had the Most Responsive and Relevant Evidence in Both Cases, and Knew He Had a Duty to Preserve It Since at Least April 27, 2022.**

5.      David, Li Fen, and their counsel[1] have represented that David has most of the responsive and relevant evidence for *Yao v. Chen.* He is also the defendant in *Chen v. Chen* and admits to having taken the OtterSec Codes at issue in that case.

6.      On a May 6, 2024, meet and confer phone call, counsel for Li Fen Yao and David stated that David had "the most" responsive documents, and that his mother, the Plaintiff in *Yao v. Chen*, had "basically nothing" in terms of relevant material. On the same call, David's counsel

---

[1] This Declaration generally refers to their counsel as "David's counsel" for brevity.

also requested that the protective order include an exception to allow David Chen review documents designated as confidential. The Protective Order ultimately did include this provision. *See* ECF 54 § 10(c).

7.      In discovery motions, discovery material, and correspondence between counsel, David is described as a "custodian of records for this case" and as having the "most responsive" and "relevant information and documents." True and correct copies of Plaintiff's Response to Defendants' Motion to Compel (served Oct. 22, 2024) and relevant correspondence between counsel are attached as Exhibits 1, 22, 26-27, J.R.0001-0003, 1352-1357, 1390-1417. *See, e.g.*, Ex. 26, J.R.1397, Pl.'s Resp. to Defs.' Mot. to Compel at 4 (served Oct. 22, 2024); Ex. 1, J.R.0001-0003, Email from S. Plotnick (May 17, 2024); Ex. 27, J.R.1413-1417, Email from S. Plotnick (May 24, 2024); Ex. 22, J.R.1352-1357, Email from S. Plotnick (May 29, 2024).

8.      In addition, Li Fen agreed in her responses to discovery to "search for and produce responsive documents that are within the possession, custody or control of **David Chen**," and to respond to interrogatories "based on knowledge or information possessed by **David Chen**" (emphases added). A true and correct copy of Plaintiff's Responses to Defendants' First Set of Interrogatories (*Yao v. Chen*) is attached as Exhibits 28-29, J.R. 1417-1446. Ex. 28, J.R.1417-1429, *Yao* 1st RFPD Resps. (May 22, 2024), Ex. 29, J.R.1433, *Yao* 1st ROG Responses at 3 (May 22, 2024). David also signed several sets of discovery responses for discovery directed to Li Fen, reflecting that the responses were also based on his knowledge. True and correct copies of these sets of responses are attached as Exhibits 13, 20, and 21, J.R. 1120-1150, 1300-1351, *Yao* Aug. 29, May 30, and July 17 Resps. (Second Set of ROGS, 1st-3d Am. Resps).

9.      The *Yao v. Chen* complaint relies heavily on, and cites throughout to, David's documents. *See, e.g.*, ECF 1, Compl. at ¶¶ 36-38, 47, 53, 69-70.

10. Additionally, documents produced by Li Fen and David show that David anticipated being a part of the litigation and a source of evidence since at least April 27, 2022. True and correct copies of examples of these messages are attached as Exhibits 12, 31-34, J.R.1114-1119, 1468-1517.

11. For example, on April 27, 2022, David began discussing Robert's threat of a lawsuit with friends and associates. In a conversation with Philip Papurt, a key third party described in more detail *infra* at Section V.E., David criticized Robert, writing that Robert "didn't even fucking know solana yet" and "idk wtf he's doing." Ex. 31, J.R. 1472, YAO02492967 at -70. Philip messaged David that "he's [Robert] probably gonna lawyer up," to which David responded, "yeah." Ex. 31, J.R.1472-1473, YAO02492967 at -70-71. David later commented, "o I got kicked from the [OtterSec] discord . . . [shrugging emoji] makes the lawsuits easier." Ex. 31, J.R.1476, YAO02492967 at -74. When Philip shared a screenshot of a comment Robert had made to him about suing David, David responded, "im not going to comment bc i think anything i say at this point could be used as evidence." Ex. 31, J.R.1478, YAO02492967 at -76; Ex. 32, J.R.1485, YAO02492983 (attached screenshot).

12. Also on April 27, 2022, David told Robert and Philip in a separate conversation that he was "transferring any IP I own back to me." Ex. 12, J.R.1115, LFM-DMD-00053304. Robert responded, "i'd argue you don't own all the ip . . . we can litigate over it later." *Id.* at J.R.1117.

13. The same day, David also discussed the prospect of a lawsuit with his friend Ally Guo (another key third party described *infra* at Section V.D.). In this conversation, David told Ally, "oooh he's sueing [*sic*] me for $500k spicy," immediately after Philip showed David screenshots from Robert indicating that Robert planned to sue David. Ex. 33, J.R.1489,

YAO02492985 at -87. The conversation shows that Ally asked, "What would he even sue you for that would involve that much money," and David responded, "uhhhh probably taking intellectual property." Ex. 33, J.R.1490, YAO02492985 at -88; David also said to Ally: "so basically, usually when you work for a company, the company owns the intellectual property . . . like anything you make or whatever[.]" Ex. 33, J.R.1491, YAO02492985 at -89. In this conversation, when Ally asked whether Robert might be "just trying to scare [David]," David responded "no . . . he didn't tell me" (because he had told Philip, not David). Ex. 33, J.R.1491-1492, YAO02492985 at -89-90, leading David to conclude: "he's serious." Ex. 33, J.R.1492, YAO02492985 at -90. David later testified at his July 30, 2025, deposition that "on April 27, 2022 [he] thought Robert was going to be suing [him]." Ex. 4, J.R.0149, D. Chen July Tr. at 61:2-62:22. True and correct copies of transcripts of David's December 10, 2025; July 30, 2025; and February 3, 2026, depositions are attached as Exhibits 2-4, J.R.0004-0197.

14.     David's messages from this time show that David was also thinking of Discord messages as a source of potentially relevant evidence in the anticipated litigation. For example, David explained to Philip that he asked about backing up Discord logs because he wanted to "have proof that [he] did the audits." Ex. 31, J.R.1471, YAO02492967 at -69. A few days later, David's messages show that he suggested to Philip that the two of them should "yeet msgs," meaning delete messages,[2] before Robert could see them. Ex. 34, J.R.1507, YAO02493013 at -17.

15.     Li Fen's discovery responses reflect that David and Sam Chen retained counsel in connection with the matter in May 2022. Ex. 13, J.R.1125. *Yao* Aug. 29 Resps. at 5.

---

[2]   *See* YEET Definition & Meaning, Merriam-Webster, https://www.merriam-webster.com/dictionary/yeet ("to throw especially with force and without regard for the thing being thrown").

16.     On June 23, 2022, OtterSec's counsel sent David a preservation letter. A true and correct copy of that letter is attached as Exhibit 35, J.R.1518-1527. YAO00000226-34. OtterSec's counsel noted that David had "unilaterally shut down a server used by the Company to perform MEV searching" and "[u]nilaterally exported and deleted from the Company's Discord server the communication channels relating to the Company's MEV searching, and revoked Robert Chen's access to those channels at the same time." Ex. 35, J.R.1521-1522, YAO00000226 at -228-29.

### III.    Robert's Counsel's Discovery of David's Deletions of Discord

17.     The "Jito Developers" server (the "Jito server") is a Discord server of which David was a member. David testified that he discussed cryptocurrency trading bots, liquidations, the Solana blockchain ecosystem, and related topics on the Jito server. *See* Ex. 2, J.R.0019, D. Chen Feb. Tr. at 53:10-55:12. The name "Jito" refers to a set of MEV trading tools for the Solana blockchain. *See* Jito Foundation, www.jito.network.

18.     In May 2024, Robert exported and preserved a copy of all of the messages to which he had access on the Jito server sent (by any user) before April 2023.

19.     In the Fall of 2024, Robert's counsel discovered that messages David had sent on the Jito server were missing. It appeared that David had deleted **two years'** worth of messages: no messages from "ra" or "radiantaeon" appeared on the Jito server between August 2022 and August 2024. Robert's May 2024 export had fortunately preserved copies of some now-deleted messages that David had sent on the server, but only those sent before April 2023.

20.     Robert's counsel promptly notified David's counsel of this discovery and requested an explanation. A true and correct copy of that October 28, 2024 letter is attached as Exhibit 5, J.R.0198-0202, Ltr. from R. Clattenburg (Oct. 28, 2024). David's counsel did not respond, and David continued to make deletions after that letter was sent, as described *infra*. Two weeks later,

6

during a November 12, 2024, meet and confer, Li Fen and David's counsel still had not provided any information on the deletions, stating that they were still trying to "get a handle" on what was deleted.

21.    On January 15, 2025, **79** days after Robert's counsel first asked about the deletions made to the Jito server, David's counsel finally responded to the October 28th letter. A true and correct copy of their response is attached as Exhibit 6, J.R.0203-0207. Ltr. from A. Malyshev (Jan. 15, 2025). The response provided no information about the deleted messages: instead, David's counsel only asked if Robert's export of the Jito server that contained David's messages in the server before his deletions had been produced. *Id*, at J.R.0207. It had been, on December 19, 2024.

22.    In the meantime, Robert's counsel had served a subpoena on Discord on November 27, 2024. A true and correct copy of that subpoena is attached as Exhibit 7, J.R.0209-0250.

23.    Discord produced a spreadsheet on January 29, 2025, showing that David had deleted **17,222** total messages. David and Li Fen subsequently obtained deletion data from Discord and produced spreadsheets David created of his deletions, listing complete ID numbers for the deleted messages. A true and correct copy of the most detailed version of this spreadsheet is attached as Exhibit 9, J.R.0255-1099 (the "Discord Spreadsheet").[3] David referenced this version at his deposition, and later produced it at YAO00020726. *See* Ex. 4, J.R.0157, D. Chen July Tr. at 96:15-22.

---

[3] This version David produced not only shows the time when each message was deleted, but also includes a column identifying when each deleted message was originally sent. *Id.* Column B, which shows when messages were sent, is written in Coordinated Universal Time (UTC) while Column B, which shows when messages were deleted, is written in Eastern Standard Time, which is four or five hours behind UTC, depending on the time of year.

## IV.    David's Deletions When He Quit OtterSec.

24.    David admitted in discovery responses that, on April 27, 2022, (when he also anticipated litigation, as discussed *supra* at ¶¶10-14), he deleted from the OtterSec Discord server three channels (including all of their messages): (1) #spl-token-lendingliquidator, (2) #market-maker, and (3) #solend-liquidations. A true and correct copy of David's Responses to Robert Chen and OtterSec LLC's First Set of RFAs ("RFA Resps.") is attached as Exhibit 36, J.R.1528-1531. RFA Resps. at 2-3. He acknowledges that the channel #spl-token-lending-liquidator contained conversations relating to the Solend Liquidator Code, that #market-maker contained conversations relating to the market-maker code, and that #solend-liquidations contained records of liquidations on the blockchain (*i.e.* the kind of work performed by the Solend Liquidator Code). Ex. 36, J.R.1530-1531, RFA Resps. at 2-3.

## V.    David's Mass-Deletions of Discord Messages.

25.    On June 6, 2024, Robert's counsel served David with a subpoena for documents, including his Discord messages, in *Yao v. Chen.* ECF 121-6, Ex. 2 to Decl. of J. Levy. David confirmed, at depositions and in discovery responses, that on July 28, 2024, he downloaded a program that would allow him to delete many Discord messages at once. Ex. 13, J.R.1136-1137, *Yao* Aug. 29 ROG Resps. at 16-17; Ex. 4, J.R.0136, D. Chen July Tr. at 10:6-11:10; *see also* Ex. 9, J.R.0259-0432, Discord Spreadsheet at 4-177 (reflecting messages deleted using this program). The program, called "Undiscord," can be used to "[d]elete all messages in a Discord channel or DM," which is not a function native to Discord—messages can only be deleted individually. A true and correct copy of a public GitHub page from the creator of the program explaining Undiscord is attached as Exhibit 37, J.R.1532-1536, https://github.com/victornpb/undiscord.

8

David proceeded to use Undiscord to make thousands of deletions, as described *infra* at section VI.

26.     David mass-deleted his Discord messages just *before* he requested a full copy of his data from Discord. David admitted that he requested a complete copy of all of his messages from Discord on July 30, 2024 (two days *after* his mass deletions began) and obtained them the next day, on July 31, 2024. Ex. 4, J.R.0144, D. Chen July Tr. at 41:1-42:6; Ex. 13, J.R.1132, *Yao* Aug. 29 Resps. at 12 n.6 (ROG #2). After in verified answers to interrogatories, that the messages were collected "for purposes of discovery in this case," Ex. 13, J.R.1130*, Yao* Aug. 29 Resps. at 10 (ROG #2), David later claimed he had requested this merely for his "own personal enjoyment," Ex. 2, J.R.0038, D. Chen Feb. Tr. at 130:8-13 (David: "No, I don't think for my lawyers." Robert's counsel: "What are you collecting that for. . . just for your own personal enjoyment?" David: "I think so, at the time, actually. Yeah."). At his deposition on July 30, 2025, David had been asked at least four times why he requested his data from Discord on July 30, 2024. Each time he said he did not recall. He never said that he requested the data for any personal reasons unrelated to the lawsuit. See Ex. 4, J.R.0137, 0144, 0155, D. Chen July Tr. at 14:12-17, 43:19-44:1, 85:18-86:2, 86:12-16. Among other things, he had deleted 413 messages that he had originally sent in September 2022, the month when Robert was selling OtterSec's assets. Ex. 9, J.R.0276-0278, 0281, 0343-0346, 0350-0355, Discord Spreadsheet at 21-23, 26, 88-91, 95-100 (rows 660, 663, 664-675, 677-678, 680-689, 691, 693-702, 730, 810, 2790-2791, 2793, 2796-2803, 2805-2825, 2827-2889, 3087-3366).

**VI.     David's 17,000+ Discord Deletions During Discovery in *Yao v. Chen***

    **A. Deletions From the "AltTank", "Save Team", and "Save (formerly Solend)" Servers.**

27.    The Discord Spreadsheet shows that, between November 2, 2022, and July 27, 2024, before David's mass deletions, he had already deleted 137 Discord messages, including 25 messages from the "AltTank" server, 17 messages from the "Save Team" server, and three messages from the "Save (formerly Solend)" server. Ex. 9, J.R.0256-0259, Discord Spreadsheet at 1-4 (rows 2-138).

28.    David has testified that he discussed matters relevant to the claims and defenses in these cases on these Discord servers.

29.    For example, David testified that when he started working on the Solend Liquidator Code in 2021, he was discussing the Solend Liquidator Code "in the AltTank [Discord server] and in the Solend public [D]iscord [server]." Ex. 3, J.R.0093, D. Chen Dec. Tr. at 28:10-29. He testified that he had "talked to people in AltTank" about the Solend Liquidator Code, and "knew that [he] talked to them about the code" when he deleted the messages in November of 2022. Ex. 2, J.R.0017, D. Chen Feb. Tr. at 48:5-6. He also testified that messages from the "Save (formerly Solend)" and "Save Team" servers may have concerned the Solend Liquidator code and were therefore potentially relevant. Ex. 2, J.R.0017-0018, 0021, 0029-0030, D. Chen Feb. Tr. at 48:19-49:13; 61:18-62:19; 95:15-97:3.

30.    David also confirmed the potential relevance of these servers in discovery responses. A true and correct copy of David's Responses to Robert Chen and OtterSec LLC's Second Set of Interrogatories (*Chen v. Chen*) is attached as Exhibit 15, J.R.1169-1180. *Chen* Nov. 25 ROG Resps. at 5-6 (ROG #15).

31. In his comments on the Discord Spreadsheet, and in his testimony regarding his comments on that spreadsheet, David described deletions of his own messages between November 2022 and July 27, 2024 as follows:

32. In November 2022, David deleted at least three messages from the AltTank server. Ex. 9, J.R.0256, Discord Spreadsheet at 1 (rows 2-4). He said that one of these deleted messages was "possibly relevant," *Id.* at J.R.0256 (row 2), and that another, from a channel relating to solend ("sol-ecosystem-chat") concerned liquidations. *Id.* at J.R.0256 (row 4).

33. On February 21, 2023, David deleted 8 direct messages that he had sent that he said concerned "liquidation parameter changes on Solend." *Id.* at J.R. 0256 (rows 26-33); *see* Ex. 2, J.R.0011, D. Chen Feb. Tr. at 23-24 (David's testimony that, in the "notes" column he populated in the Discord Spreadsheet, a caret (^) indicates that his comments on a particular row are the same as what he wrote for the previous row).

34. On October 12, 2023, David deleted a message in which, he said, he was "talking shit about Jump." Ex. 9, J.R.0257, Discord Spreadsheet at 2 (row 73). David agreed at his deposition that "Robert's communications with Jump" are at issue in this lawsuit, and, when asked how the deleted message would "not" be "related to the lawsuit," said, "I don't know." Ex. 2, J.R.0018, D. Chen Feb. Tr. at 51:8-19.

35. On October 17, 2023, David deleted two direct messages in which he was "asking about a bug in solana." Ex. 9, J.R.0257, Discord Spreadsheet at 2 (rows 74-75).

36. On November 1, 2023, David deleted a direct message to Ally ("closetduck") that concerned Solana. *Id.* at J.R.0257 (row 76).

37. On November 29, 2023, David deleted two direct messages that he had sent that he said concerned "possible employment at Save [Solend]," and which he had sent in the course of a

conversation in which he said he discussed *Yao v. Chen*. Ex. 9, J.R.0258, Discord Spreadsheet at 3 (rows 87-88).

38.     On December 27, 2023, David deleted two messages he had sent in the "Save Team" server that he said were "possibly relevant" because they related to "Marginfi liquidation parameters." *Id*. at J.R.0258 (rows 93-94). On April 8, 2024 he deleted two more messages that he sent in the "Save Team" server that he said were "possibly relevant" for the same reason. *Id.* at J.R.0258 (rows 108-09).

39.     On January 7, 2024, he deleted a message that he had sent in the channel "vip" in the "Save Team" server that he said was possibly relevant because the "vip" channel "was for coordinating around VIP users on Solend." *Id.* at J.R.0258 (row 96).

40.     On March 27, 2024, David deleted two messages from the channel "large-money-motifs" in the "Save Team" server, which related to Solend liquidations and to the Solend Liquidator Code, which David referred to as "my bot." *Id*. at J.R.0258 (rows 101-102); Ex. 2, J.R.0011-0012, D. Chen Feb. Tr. at 23:4-25:11 (testifying that these deleted messages concerned the cofounder of Solend and related to a liquidator bot belonging to the Solend team having competed with the liquidator bot that David took from OtterSec).

41.     On March 6, 2024, David deleted a message from the AltTank server that concerned Solana. Ex. 9, J.R.0258, Discord Spreadsheet at 3 (row 103). On March 9, 2024, he deleted another message concerning Solana from the AltTank server. *Id.* at J.R. 0258 (row 104).

**B.   Deletions from the "new clickbait" Server and "rubber-duck-debugger" Channel.**

42.     David was active and sent relevant messages in a Discord server titled, "new-clickbait." One of the channels within this server was titled "rubber-duck-debugger."

43.     **New Clickbait Server:** David sent (and later deleted) **1,336** messages in this Discord server, between December 12, 2021, and May 31, 2022, on various channels, including

the "rubber-duck-debugger" channel. He often sent multiple messages in a single day. Ex. 9, J.R.0358-0380, Discord Spreadsheet at 103-25 (rows 3548-4883).

44.     Included in the 1,336 messages David sent and later deleted were 41 messages he sent on the "new clickbait" server between April 1-17, 2022. Ex. 9, J.R.0361-0362, Discord Spreadsheet at 106-07 (rows 3779-3819).

45.     During the December 12, 2021 to May 31, 2022 timeframe, as Robert alleges in the *Chen v. Chen* Second Amended Complaint (ECF 126 at ¶¶ 28-31, 61-74, 86-93, 97, and 104-09), David: (1) formed OtterSec with Robert, (2) discussed the Solend Liquidator Code with Robert, (3) left OtterSec and took the Code with him, (4) deleted Discord channels and other records from OtterSec, (5) used the Code for his own profit, and (6) deleted records of edits he had made to the Code. In discovery responses, David described this timeframe as well as his edits to the code, his subsequent deletion of those edits, and his use of the code for profit in May 2022. A true and correct copy of David's Amended Responses to Robert and OtterSec LLC's First Set of ROGs (*Chen v. Chen*) is attached as Exhibit 14, J.R.1151-1168. *Chen* Aug. 29 Resps. at 8 (ROG #5). David also testified in December 2025 about his conversations with Robert about Solend liquidations in December of 2021. *See* Ex. 3, J.R.0096-0097, D. Chen Dec. Tr. at 38:11-44:11.

46.     The Discord Spreadsheet also shows that between February and April 2022, David sent the highest number of messages in the "new clickbait" server (all of which he later deleted) on: February 7 (49 messages), March 28 (33 messages), April 21 (39 messages), and April 27 (36 messages). Produced Discord and Telegram messages between David and Robert show that they discussed topics relevant to this litigation on each of these dates.

47.      For example, on February 7, 2022, they discussed, on Discord, forming OtterSec as a Wyoming LLC, David's status as a minor, and how ownership of the company would be allocated. Ex. 38, J.R.1538-1544, YAO01064854 at -5273-5278.

48.      On March 28, 2022, they discussed, on Discord, the possibility of Sino Global Capital investing in OtterSec's MEV trading operations. Ex. 39, J.R.1547-1548, YAO01064854 at -5902-5903.

49.      On April 21, 2022, David and Robert had a call with Jump Crypto, during which David sent messages to Robert over both Discord and Telegram. *See* ECF 59 at 3 (citing messages). After the call, Robert asked David, on Discord, to speak on the phone "[about] acquihire structuring," and they did so. Ex. 40, J.R.1551, YAO00014234 at -35 (Robert asking "call?" over Discord); Ex. 41, J.R.1558, YAO01057955 (Robert stating, in a Telegram message, "[you're] cutting out").

50.      On April 27, 2022, David quit working for OtterSec and destroyed company records, as discussed *supra* Section IV.

51.      David has admitted, in testimony, and in discovery responses, that he discussed topics relevant to this litigation on the "new clickbait" server, including the Solend Liquidator Code, Robert, and OtterSec.

52.      For example, on October 5, 2021, the day David stated in discovery responses that he created the Solend Liquidator Code, he posted about it on the "new clickbait" server. Ex. 42, J.R.1569, Deng_0001088 at -3303; Ex. 14, J.R.1159, *Chen* Aug. 29 Resps. at 8 (ROG #5).

53.      David admitted in discovery responses and testimony that he discussed his use of the Solend Liquidator Code in the "new clickbait" server, and that he later deleted these messages. Ex. 13, J.R.1138*, Yao* Aug. 29 Resps. at 18 (ROG #6); Ex. 4, J.R.0155-0156, D. Chen July Tr. at

14

88:21-89:18, 19:3-20:1. David also admitted at his July 2025 deposition that he discussed OtterSec in the "new clickbait" server, in messages he later deleted. Ex. 4, J.R.0146, D. Chen July Tr. at 51:7-22.

54.    As part of the third party discovery Robert was forced to pursue, described *infra* at Section IX, Robert served a subpoena on Claire Deng, a friend of David's who was also a member of the "new clickbait" server. Documents she produced in response to the subpoena show that on October 1, 2021, David sent messages about Robert in the "new clickbait" server. A true and correct copy of one such conversation is attached as Exhibit 42, J.R.1567-1568. Deng_0001088 at -3224-25.

55.    David's explanation for deleting messages from the "new clickbait" server was that "the conversation frequently included highly personal, and sometimes raw or salacious, discussions among his adolescent high school friends." Ex. 13, J.R.1138, *See Yao* Aug. 29 ROG Resps. at 18 (ROG #6). However, Discord messages Robert obtained via third-party discovery show that David did not delete all such Discord messages. True and correct copies of example Discord messages that David did not delete are attached (excerpts of the full produced documents) as Exhibits 42-44, J.R. 1559-1578, including messages about a sexually explicit podcast that he overheard his mother listening to, as well as other explicit topics. Ex. 43, J.R.1572, Zhang_0000264 at -332 (David: "[M]y mom is listening to a Chinese trad medicine podcast and the dude is going like 'bitches need dick you know' and I'm actually laughing my ass off rn"). *See also, e.g.*, Ex. 42, J.R.1565, Deng_0001088 at -2013 (David describing his genitalia as "beautiful and art"); Ex. 44, J.R.1577, Deng_0003847 at -3862 (David discussing bdsm); Ex. 44, J.R.1578, Deng_0003847 at -3868 (David: "i was doing mouth asmr right next to my mic . . . was not moaning . . . its up to your interpretation of whether wet mouth noises are lewd or not"); *see also,*

*e.g.*, Ex. 42, J.R.1561-1564, Deng_0001088 at -1896-99 (never-deleted messages containing a fifteen-minute sexually explicit conversation among David and his friends); Ex. 42, J.R.1566, Deng_0001088 at -2568 (never deleted messages in which David discusses his sex drive).

56.    **Rubber-Duck-Debugger Channel:** On October 13, 2021, David created a new channel within the "new clickbait" server called "rubber-duck-debugger," which he used to discuss his cryptocurrency-related coding work. A true and correct copy of the conversation showing the creation of this channel is attached as Exhibit 45, J.R.1579-1637. LIU_0000002. The first-ever post in the "rubber-duck-debugger" channel was an extensive one, written by David, concerning a Solend liquidator bot. Ex. 45, J.R.1580, LIU_0000002. In this channel, he also discussed the valuation of the Solend Liquidator Code. *See, e.g.*, Ex. 45, J.R.1601, LIU_0000002 at -23.

57.    David deleted messages from this channel. Documents and document metadata produced by third party Claire Deng revealed the Channel ID of the "rubber-duck-debugger" channel. A true and correct copy of this document is attached as Exhibit 46, J.R.1638-1639. The Discord Spreadsheet indicates that there were 156 messages deleted from a channel with a corresponding ID number. Ex. 9, J.R.0348-50, 354, 359, 364-68, 371, 373-75, 377-39, Discord Spreadsheet (rows 2985-2987, 2996-3001, 3017-3033, 3036-3054, 3346, 3603-3604, 3608-3626, 3648, 3654, 3938-3940, 3944-3947, 4015-4017, 4053-4054, 4086-4087, 4089-4097, 4140, 4153, 4173-4174, 4347, 4354-4356, 4460-4461, 4463, 4474-4476, 4480-4483, 4523-4526, 4573-4577, 4584-4586, 4590, 4599, 4620, 4717-4718, 4743, 4755, 4762, 4766, 4769, 4791, 4798, 4800, 4805-4806, 4815, 4820, 4840-4841, 4855-4856, 4875).

58.    Discovery responses verified by David further confirm that potentially responsive Discord messages he sent and later deleted included "messages from 2022 in the 'rubber-duck-debugging' channel that mentioned liquidations performed by the code and potentially contained

monologues about the development of the code." Ex. 13, J.R.1146, *Yao* Aug. 29 ROG Resps. at 26 (ROG #17).

59.    **Business Dispute Messages:** In the "rubber-duck-debugger" channel, David also sent messages concerning a dispute with Alexander Karavaltchev, a business partner. True and correct copies of these messages are attached as Exhibit 45, J.R.1614-1615, 1619-1628 LIU_0000002 at -36-37, 41-50. David also identified Mr. Karavaltchev, whose Discord username appeared as "friendlyuser222" or "friendlyuser2224585," as a former business partner in discovery responses. Ex. 13, J.R.1148, *Yao* Aug. 29 Resps. at 28 (ROG #19). David has said that he entered into a Partnership Agreement, for work pertaining to the Solend Liquidator Code, with Mr. Karavaltchev on October 15, 2021. Ex. 15, J.R.1175, *Chen* Nov. 25 ROG Resps at 6 (ROG #17).

60.    David posted messages about Mr. Karavaltchev, with screenshots of their conversations, in the "rubber-duck-debugger" channel beginning on October 13 and 14, 2021, stating he was "talking to some dude" who was "down to work with [him] on [the Solend Liquidator Code]." Ex. 45, J.R.1581, LIU_0000002 at -03.

61.    By November 11, 2021, the relationship had soured, and David was sending messages in the "rubber-duck-debugger" channel concerning the terms on which their business relationship would end, calling it a "breakup." *E.g.*, Ex. 45, J.R.1620, LIU_0000002 at -42.

62.    He posted in the same channel about his parents' views of this dispute. Ex. 45, J.R.1626-1627, LIU_0000002 at -48-49. Later, David reflected that his departure from OtterSec was similar to his "breakup" with Mr. Karavaltchev, writing, "[I] really . . . do not want to go through this shit again lol . . . twice is enough . . . starting a business with someone is like getting married." A true and correct copy of this message is attached as Exhibit 33, J.R.1495-1497. YAO02492985 at -93-95.

63.     David testified that he knew the messages he deleted from the "AltTank," "Save (formerly Solend)," "Save Team," and "new clickbait" Discord servers were not preserved. Ex. 4, J.R.0142, 0146, D. Chen July Tr. at 36:12-14, 52:1-21. He also testified that he knew that when he deleted material from Discord, it would be gone forever. *Id.* at 75:17-22.

**C.  The Jito Server.**

64.     The Jito server is described *supra* at ¶17.

65.     The Discord Spreadsheet reflects that David thought at least 48 of the messages he deleted from the Jito server were "relevant." Ex. 9, J.R.0337-0341, Discord Spreadsheet at 82-86 (rows 2590, 2622-50, 2664-68, 2671-72, 2674-75, 2709-10, 2712, 2714, 2716, 2720, 2721, 2724, 2728).

66.     Of the 768 messages that David mass-deleted from the Jito server on July 29, 2024, 140 of them (all of which had been sent after March 31, 2023) are gone forever, as David agreed at his deposition. Ex. 2, J.R.0019, D. Chen Feb. Tr. at 53:1-6. The content of the remaining 628 messages is only available because Robert happened to preserve deleted messages David had originally sent before March 31, 2023. *See* Ex. 9, J.R.256, 327-30, 1096, Discord Spreadsheet at rows 47, 2189-2325, 17213-14, 17219. Three messages that David sent in the Jito server in December 2024 and deleted that same month have also not been preserved and are gone forever, Ex. 9, J.R.1096 (rows 17213-14, 17219), bringing the total number of unpreserved Jito messages to 143.

67.     David testified that column G of the Discord Spreadsheet, which is titled "message content (if known)" is populated with the text of the deleted message at issue where David had "actually seen and [could] record its content." Ex. 2, J.R.0011, D. Chen Feb Tr. at 22:8-13. David

18

was only able to identify this content for certain messages "because Robert preserved them." *Id.* at J.R.0013, 0018-19 (31:3-32:10; 52:15-53:6).

68.    We know from messages that David deleted, but which Robert had preserved, that David discussed MEV trading and bots on the Jito server. True and correct copies of conversations in which David discussed these topics are available as Exhibits 47-50, J.R. 1640-1773. David discussed, for example, liquidations (May 10, 2022 Discord Messages at Ex. 47, J.R.1641, LFM-DMD-00014683 at -83); rate differences when a bot was "interacting with multiple different lending markets" (March 2, 2022 Discord message at Ex. 48, J.R.1649, LFM-DMD-00014521 at -24); an "msol/sol market maker" bot that David claims to have written (May 10, 2022 Discord Messages at Ex. 47, J.R.1643, LFM-DMD-00014683 at -85); and other topics involving bots (August 3, 2022 Discord Message at Ex. 49, J.R.1695, LFM-DMD-00041433 at -75; March 12, 2023 Discord messages at Ex. 50, J.R.1771, LFM-DMD-00014128 at -80).

69.    David's explanations for deleting messages from the Jito server was they were "immature" in that they discussed "a denial of service attack" that he launched and "his success playing the game SVBonk." Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6); s*ee also* Ex. 4, J.R.0139, D. Chen July Tr. at 21:3-17. However, other messages David produced show that he did not delete all such messages. On August 3, 2022, for example, David posted about the attack in the Jito Developers server when he launched it, saying he had "always wanted" to do it, and David did not delete those messages. *See, e.g.*, Ex. 49, J.R.1677, 1688, 1690-1691, LFM-DMD-00041433 at -41457, -41468, -41470-71. Discovery responses David verified state, "He deleted all of his messages sent after August 5, 2022, in Jito"—which was after he sent foregoing messages. Ex. 13, J.R.1138, *Yao* Aug. 29 Resps. at 18 (ROG #6). The Discord Spreadsheet shows that these deletions spanned ten different channels within the Jito server: "searchers," "validator-general,"

"random," "data," "MEV," "validator-operations," "latitude-partnership," "jito-programs," "runtime," and "jedis." Ex. 9, J.R.0327-0348, Discord Spreadsheet at 72-93.

70.    David's own spreadsheet analysis shows that he also deleted many messages from the Jito server from long after the attack about different topics, such as messages that contained "comments on preferred coding language," messages that related to a "bug in Solana core," and messages that related to a "mango hack." *See, e.g.*, Ex. 9, J.R.327, 330-31, 342, Discord Spreadsheet at 72 (rows 2194-95); 75-76 (rows 2341-42, 2344-49); 87 (rows 2751, 2753-2765, 2768, 2770-79).

### D.  Discord Conversations with Ally Guo.

71.    Ally Guo was David's friend. He frequently discussed matters relevant to these cases with her. Ally's username on Discord was "closetduck." After discovering David's deletions, counsel for Robert sought third-party discovery from her, in an attempt to retrieve deleted messages. True and correct copies of Robert's February 3, 2025, and July 2, 2025, subpoenas to Ally and the transcript of Ally's October 14, 2025, deposition are attached as Exhibits 16, 51, and 52, J.R.1181-1241, 1771-1825.

72.    Documents produced by David show that, in 2022, David discussed with Ally topics including OtterSec, Robert, David's departure from OtterSec, David's parents' views on OtterSec and Robert, and his finances. True and correct copies of representative conversations between David and Ally are attached as Exhibits 17, 53-60, J.R.1242-1266, 1826-1884.

73.    With respect to OtterSec, on March 13, 2022, David told Ally, "Rob wants me to adjust my sleep schedule." Ex. 53, J.R.1827, GUO_0000036. On March 16, 2022, David discussed potential venture capital funding for OtterSec with Ally. Ex. 54, J.R.1829-1830, GUO_0000044 at -44-45. On April 3, 2022, he told her that "[b]eing the younger less experienced founder sucks"

and said, "My parents dont really like the amount of yolo risk I'm taking lmao." Ex. 55, J.R.1832, GUO_0000060. On April 5, 2022, he told her that he had been unable to join certain OtterSec-related calls, which Robert had handled alone. Ex. 56, J.R.1838, GUO_0000068. On April 15, 2022, David told her that he had "just made a compromise plan that [his] mom was convinced by." Ex. 57, J.R.1840, GUO_0000072. This was the same day that David proposed to Robert that Sam transfer 10% of Sam's interest in OtterSec to Robert, as described in the *Yao v. Chen* Complaint, ¶ 47. On May 7, 2022, having ceased working with Robert and OtterSec, David told Ally, "i kinda want to just not deal with him, idk why my parents are so insistent . . . or like i do . . . because they fuckin hate his guts" and, "they're saying to hand it all off to the lawyer to handle . . . let the lawyer kick his ass." Ex. 58, J.R.1852-1853, GUO_0000106 at -115-16.

74.     With respect to David's finances, on April 3, 2022, for example, David told Ally that he was "financially way overexposed to crypto shit in general," Ex. 55, J.R.1833, GUO_0000060 at -61. On May 12, 2022, he was telling her about how much money he had made in "the past few days," Ex. 59, J.R.1858, GUO_000127. This comment was made just days after, per David's discovery responses, he was using the Solend Liquidator Code to make money for himself on "May 8-10, 2022," *see* Ex. 14, J.R.1159, *Chen* Aug. 29 Resps. at 8 (ROG #5).

75.     David also discussed the deterioration of his business relationship with Mr. Karavaltchev with Ally. Ally's production included direct messages that she sent David on November 11, 2021, the day David sent messages in the "rubber-duck-debugger" channel about the relationship souring (see *supra* at ¶ 61). Although she has produced only half the conversation (since David deleted all the messages that he sent to her), her messages to him make clear that they were discussing Mr. Karavaltchev. Ally told David, "sell yourself well to justify the fifty fifty split but not at the expense of the other person;" she asked David, "what does this person want you to

do that would justify splitting fifty fifty;" and she observed to David, "sounds like you need him less than he needs you." *See* Ex. 17, J.R.1251-1254, GUO2_00172 at -180-83.

76.     As discussed below, David and his counsel represented that David had preserved copies of the 10,430 messages with Ally that he deleted in October 2024, *see* Ex. 13, J.R.1137*, Yao* Aug. 29 Resps. at 17 (ROG #5), but they have never produced those messages.

77.     On June 13, 2025, David's counsel sent Robert's counsel a letter, a true and correct copy of which is attached as Exhibit 61, J.R.1885-1889, in which they stated that "deleted messages exchanged via direct message with the username 'closetduck' have been preserved." *Id.* at J.R.1888. David also testified that he thought messages with Ally had been produced. Ex. 2, J.R.0024, D. Chen Feb Tr. at 73:6-20. David's notes in the Discord Spreadsheet describe deleted messages sent to "closetduck" as "Ally mass deletions that we have." Ex. 9, J.R.0433, Discord Spreadsheet at 178 (row 6791).

78.     On January 23, 2026, Robert's counsel reminded David's counsel over email, a true and correct copy of which is attached as Exhibit 62, J.R.1890-1895, of their representations that David had "preserved all of his Discord conversations with Ally Guo before deleting them" and had provided these "preserved" Discord conversations to their discovery vendor. Robert's counsel asked David's counsel to identify where they had produced these messages—*i.e.*, in which of David and/or Li Fen's productions did they produce these messages. Ex. 62, J.R.1893, Email from A. Giles at 3 (Feb. 18, 2026). As of February 18, 2026, David's counsel was unable to provide an answer. *Id.* at J.R.1891. During a meet and confer that same day, David's counsel said they "haven't found" these documents. Ex. 23, J.R.1361-1362, Tr. M&C at 6:5-11 (Feb. 18, 2026). On February 20, 2026, David's counsel sent another email indicating that they still could not locate the messages with Ally. Ex. 63, J.R.1897, Email from A. Giles at 1 (Feb. 20, 2026).

22

**E. Discord and Signal Conversations with Philip Papurt, Including Disappearing Messages**

79.    Philip Papurt worked at OtterSec and David communicated with him extensively about his (David's) quitting OtterSec and his subsequent actions. David used at least two platforms, Discord and Signal, to communicate with Philip. Ex. 4, J.R.0153, D. Chen July Dep. at 79:15-20. Philip's username on Discord was "ginkoid." *Id.* at J.R.0147 (56:8-9).

80.    On Discord, prior to his departure from OtterSec, David complained to Philip about Robert. On April 23, 2022, for example, David told Philip: "[Robert] just screwed me over in negotiations with jump." A true and correct copy of this conversation is attached as Exhibit 64, J.R.1913. YAO02492899 at -900 (Apr. 23, 2022)

81.    On April 27, 2022, David discussed his departure from OtterSec on a group thread on Discord that included both Robert ("NotDeGhost") and Philip. A true and correct copy of this conversation is attached as Exhibit 65, J.R.1938-1943, LFM-DMD-00053304. Simultaneously, David was having a private Discord conversation with Philip in which David discussed his departure from OtterSec and his taking the Solend Liquidator Code, and how he hoped his conduct would negatively impact OtterSec's business, as Robert would "[have] to explain to sino global capital the next time they talk . . . why osec doesn't have bots anymore." A true and correct copy of David's April 27, 2022 conversation with Philip is attached as Exhibit 31, J.R.1474. YAO02492967 at -72. David acknowledged these messages in his discovery responses and explained that they related to the Solend Liquidator Code. Ex. 14, J.R.1160-1161*, Chen* Aug. 29 ROG Resps. at 9-10 (ROG #7).

82.    In June of 2022, David told Philip that OtterSec's lawyer was demanding he (David) return the Code he took and the profits he made from using it. A true and correct copy of this conversation is attached as Exhibit 66, J.R.1947-1948. YAO02493249 at -51-52.

23

83.     Due to the scope of David's deletions, and because David had not produced many conversations with Philip on Discord, Robert's counsel pursued third-party discovery from Philip. He was served with a subpoena for documents on December 5, 2024. A true and correct copy of the subpoena is attached as Exhibit 67, J.R.2012-2018.

84.     David and Philip's Discord conversations show that David continued discussing the issues in this litigation, and the litigation itself, with Philip throughout 2022 and subsequently.

85.     For example, on September 21, 2022, David told Philip: "rob dissolved ottersec." YAO2493731 at -31. On March 31, 2023, David told Philip, about *Yao v. Chen*: ""complaint got filed today." YAO02493873 at -73.

86.     At his deposition on July 30, 2025, David testified that he had also been communicating with Philip on Signal.

87.     Signal is an encrypted messaging platform. One feature of Signal is the ability to turn on "disappearing messages," which makes messages sent over Signal automatically delete after a predetermined period of time, with a maximum retention period of four weeks: however, if the auto-delete function is disabled or turned off, messages can be retained permanently. A true and correct copy of a support article entitled "Set and manage disappearing messages" from Signal's website (last accessed March 17, 2026) is attached as Exhibit 68, J.R.2019-2022. *See* https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages. Disappearing messages can be enabled or disabled by any participant in a conversation. *Id*. at J.R.2020. Even when disappearing messages are enabled, they can still be preserved, such as by "us[ing] another camera to take a picture of the screen before it disappears." *Id*. at J.R.2020.

88.     David testified that "Philip Papurt reached out to [him] and turned on auto delete after he was subpoenaed." Ex. 4, J.R.0153, D. Chen July Dep. at 78:3-4. David also testified that

he had not turned off the auto-delete function on Signal after Philip turned it on. *Id.* at J.R.0153, 78:7-9. This means that from the time Philip turned on auto-delete after he was subpoenaed, David and Philip's Signal messages were deleted, forever.

89.     David confirmed these facts at his deposition on February 3, 2026, where he testified that (1) he had Signal communications with Philip after Philip was served with the subpoena; (2) Philip had turned on the disappearing messages function, and David had not turned it off; (3) as a result, Philip and David's messages had been auto-deleted; (4) David knew how to turn off the disappearing messages function, but had not done so; (5) David knew that he could have preserved the messages before they were automatically deleted, but had not done so; and (6) David still had not turned off the disappearing messages function as of the day of the deposition. Ex. 2, J.R.0045-0046, D. Chen Feb. Tr. at 160:20-163:1.

**F.  David's Phone Data**

90.     From approximately August 2021-April 2023, when many of the events relevant to this litigation occurred, David used a Motorola Moto E phone ("David's phone"). In May 2024, as described below, David's counsel told Robert's counsel for the first time that David's phone had "bricked" (became inoperable) in April 2023. Robert's counsel has struggled to obtain information from David's counsel about the phone and the data that was (or is) contained on it, and David's counsel has unreasonably delayed efforts to recover data from the phone. A collection of correspondence related to the "bricked" phone has been previously filed at ECF 121-5. True and correct copies of additional correspondence related to David's phone referenced below is attached as Exhibits 70-78, J.R.2026-2273.

91.     On May 17, 2024, in an exchange of document sources in preparation for discovery, Li Fen's counsel identified David as a custodian. ECF 121-5 at 5. Under the header "Text

messages," Plaintiff Li Fen's counsel listed the following: "Custodians: Li Fen Yao, Sam Chen, David Chen**." *Id.* The two asterisks referred to a note at the bottom of Plaintiff's counsel's email, which stated:

> **David Chen's personal phone from approximately August 2021 to April 2023 (a Motorola "Moto E") "bricked" in April 2023, following which he purchased a new Google Pixel 7 Pro. The text messages on the Moto E did not migrate over to the Pixel 7 Pro. We are exploring options for recovering the text messages that were on the Moto E, but understand as a general matter that he utilized Telegram and Discord for any substantive communications related to OtterSec.

92.     This was the first time Robert's counsel learned that David's phone had purportedly "bricked" more than a year earlier and had not been backed up.

93.     David's counsel confirmed via email to Robert's counsel on May 29, 2024, that "the text messages were not backed up" and stated that their "current plan [wa]s to explore having it repaired." ECF 121-5 at 2.

94.     On November 6, 2024—four months after they had said their "current plan" was to explore having the phone repaired and 18 months after the phone "bricked"—David and Li Fen's counsel represented that they had switched to a new vendor, and that "the repair process is underway and ongoing." ECF 121-5 at 15.

95.     David's counsel again claimed on November 11, 2024, that David's relevant conversations would be on Discord and Telegram, not text messages from David's "bricked" phone. ECF 121-5 at 8. They also provided the following explanation of the "bricking" (ECF 121-5 at 8):

> [O]ur understanding is that the issues with David's phone stem from his attempt to switch operating systems in or around April or May of 2022. When it did not work, he reset the phone to its original operating system. The reset was successful in that the phone worked for a period of time – until it eventually ceased working in 2023. Although we are not certain at this point, it is probable that the phone's memory was unable to handle the multiple re-writes and, as a result, gave out after a period of time. The phone is currently unable to boot into the normal operating system, which is needed to retrieve the data.

96.     After a meet and confer on November 22, 2024, and additional correspondence, the parties agreed to use a mutually-agreed upon forensic examiner (ultimately agreeing on a company called TeelTech) to inspect the phone and try to recover its data. ECF 121-5 at 19-21.

97.     Robert's counsel requested an affidavit from David describing the circumstances of the alleged "bricking" to provide the TeelTech examiner. David's counsel refused to provide one, claiming, in opposition to Robert's motion for entry of a preservation order, that the TeelTech examiner "made clear . . . that she would not find that information helpful" and did not request an affidavit. ECF 122 at 8.

98.     Robert's counsel served a motion to compel on April 4, 2025, seeking, among other things, an order requiring David to produce the requested affidavit.

99.     After meet and confers on May 12 and 15, 2025, David's counsel agreed to produce such an affidavit, which David provided on June 13, 2025. A true and correct copy of that declaration is attached as Exhibit 69, J.R.2023-2025, Decl. of D. Chen (June 13, 2025).

100.     During his July 30, 2025, deposition concerning spoliation, David said that his phone "bricked" around when *Yao v. Chen* was filed because he had tried to update the phone's operating system *a year prior*. Ex. 4, J.R.0158-0159, D. Chen July Tr. at 100:8-102:1. He also stated in the June 13 Declaration that he had "'flashed' the phone in an effort to replace the factory-installed Android operating system [with] a new operating system" "[i]n or around late April or May 2022[.]" Ex. 69, J.R.2025, Decl. of D. Chen ¶ 4 (June 13, 2025). When I asked, "David, why did your phone brick?", he responded: "I'm not sure. It's possibly related to the flashing because it's a cheap phone . . . ." Ex. 4, J.R.0160, D. Chen July Tr. at 107:14-19.

101.    On September 10, 2025, after conferring with David's counsel, Robert's counsel provided David's June 13 Declaration and the relevant portions of David's testimony about his phone to TeelTech. Ex. 70, J.R.2027. Email from R. Clattenburg at 1 (Sept. 10, 2025).

102.    On September 17, 2025, the TeelTech examiner responded. Ex. 71, J.R.2054-2056, Email from M. Gaffney at 1-3 (Sept. 17, 2025). The examiner responded to questions posed by counsel, in relevant part:

1. What is the likelihood that the phone failed in the way as described by David Chen?

Nothing is impossible, but it is highly unlikely that the Motorola failed in the way as previously described by David Chen.

[. . .]

David Chen stated that in late April or May 2022 he unsuccessfully flashed Graphene OS to his Motorola.  It should be noted that this Graphene OS is designed for selected Google Pixel devices and not Motorola making the firmware incompatible.

The flashing process as outlined in the attached documents is extremely vague.

[. . .]

If the device was successfully "reset" to its stock OS and it boots as expected, then the changes should be permanent and stable without corruption.  Especially if the device was working without incident for approximately one year after the flashing and reset occurred in 2022.

It has been my experience that stock Android operating systems are quite stable, and phones do not "brick" themselves for no apparent reason. . .  Bricking a device is usually the result of human error during a flashing event.

Technically, the phone did not cease to work as previously described by David Chen.  The phone is trying to boot but is unable to boot normally and is stuck in Fastboot.  Therefore, it is improbable that the Motorola just stopped its normal functioning.

2.  Is the current state of the phone consistent with David Chen's description of events?

Based on the Motorola attempting to boot and displaying a Fastboot menu on the screen, it does not appear that there is board level physical damage or internal

28

device faults as a properly functioning CPU is required to complete a Fastboot display on a smartphone.

Since the device is currently stuck in Fastboot, it is implausible to believe that the Motorola device went from a fully operational Android OS device to being stuck in Fastboot with no intervening actions. Motorola, while a less expensive smartphone option for users, is a reputable company and a stable device using a stable platform.

Oftentimes, bricking a device is the result of interrupting a device during the flashing, upgrading, or updating processes. This interruption, which needs to be completed, may corrupt the existing firmware.

103. TeelTech suggested that a "chip swap" could be an option to potentially retrieve data from the phone. Ex. 71, J.R.2055, Email from M. Gaffney at 2 (Sept. 17, 2025). David and Robert's counsel agreed to have TeelTech perform an exemplar chip swap, followed by the actual chip swap for David's phone. On November 4, 2025, after obtaining David's counsel's approval of the email, Robert's counsel emailed TeelTech to ask them to proceed. Ex. 72, J.R.2082, Email from R. Clattenburg at 1 (Nov. 4, 2025). On December 10, 2025, the examiner responded that they needed confirmation from David's counsel directly to proceed, and they had emailed David's counsel but were awaiting a response. Ex. 73, J.R.2113, Email from M. Gaffney at 1 (December 10, 2025).

104. Robert's counsel emailed David's counsel the next day to ask that they promptly respond to TeelTech to authorize the work. Ex. 74, J.R.2145, Email from R. Clattenburg at 1 (Dec. 11, 2025). Robert's counsel again asked David's counsel to respond to TeelTech during the parties' December 17, 2025, meet and confer (a true and correct copy of the transcript of which is attached as Exhibit 75, J.R.2178-2233), and David's counsel stated: "I will take a look at that, as soon as we get off this call." Ex. 75, J.R.2188, Tr. M&C at 37 (Dec. 17, 2025). Robert's counsel again followed up with David's counsel the following day, on December 18, 2025; they did not respond. Ex. 76, J.R.2235-2236. Email from R. Clattenburg at 1-2 (Dec. 18, 2025).

105.    David's counsel did not provide their correspondence with TeelTech until January 28, 2026. Ex. 77, J.R.2238, Email from A. Giles at 1 (Jan. 28, 2026). The chain revealed that David's counsel had separately asked TeelTech on November 4, 2025, for time to "discuss amongst ourselves" before giving the "approval" requested by TeelTech, even while acknowledging that he had "authorized" Robert's counsel to ask TeelTech to proceed with the chip swap. Ex. 78, J.R.2244-2245, Email from A. Giles at 2-3 (Nov. 4, 2025). They evidently did not respond, and TeelTech emailed them to follow up on December 4, 2025. Ex. 78, J.R.2244, Email from M. Gaffney at 2 (Dec. 4, 2025). It was not until **January 21, 2026**, that David's counsel finally responded and authorized TeelTech to proceed. Ex. 78, J.R.2243, Email from A. Giles at 1 (Jan. 21, 2026). Note, that January 21, 2026, was same day David's counsel was required to file with the Court a response to Robert's counsel's January 5, 2026, letter regarding the deficiencies with Li Fen's and David's discovery responses and document productions. *See* Paperless Order, ECF 189.

106.    Documents produced by David and Li Fen show that David used his phone to communicate with his mother about Robert and the Solend Liquidator Code, through both text and picture messages. For example, Li Fen texted David on October 31, 2023 (via text message): "Both You and Robert got $60000 from OtterSec to pay tax," in a message produced as Ex. 79, J.R.2275, YAO00980231. On December 21, 2023, Li Fen sent David a photo of a computer screen showing the operations of the Solend Liquidator Code, in a message produced as Ex. 80, J.R.2277-2278, YAO00024500-01.

107.    Neither David nor Li Fen has produced David's text messages with his mother from before April 2023. Robert's counsel does not know whether these messages have been preserved.

**G. David's Deletions from Channels that "No Longer Exist"**

108.    David deleted 14 messages from between November 11, 2022 and August 6, 2023 from channels that he says did not "exist anymore" as of the date when he was filling in the Discord Spreadsheet. Ex. 9, J.R.0256, Discord Spreadsheet at 1 (rows 5-8, 11-13, 15, 22-23, 34-35, and 45-46).

109.    In the Discord Spreadsheet, for over 400 messages that he deleted from the Jito server, David did not assess whether the deleted message was relevant, instead stating in the Spreadsheet that the channel in which the message was sent "no longer exists." *See* Ex. 9, J.R.0327-0347, Discord Spreadsheet at 72-92 (stating, in Column F, that the "channel no longer exists" for over 400 entries).

110.    In addition to his other deletions from the AltTank server in November 2022, described *supra* at Section VI.A., David also deleted three other messages during the same month from channels that no longer exist. Ex. 9, J.R.0256, Discord Spreadsheet at 1 (rows 5-7). David and his counsel have not provided further information about these messages or channels.

**H. David's Deletions of <u>GitHub</u> Commits**

111.    GitHub is a web platform that allows software developers to share, store, and collaborate on code, where the Solend Liquidator Code operated. Records of changes made to a code on GitHub are called "commits."

112.    David inaccurately represented in a declaration to the Court submitted on March 13, 2025, that after leaving OtterSec, he "made changes from a version of the 'Solend Liquidator Code' that existed <u>before</u> the formation of OtterSec and applied my changes only on top of <u>that</u> version," (emphasis in original) and that he "did not delete, alter or destroy records showing the history of changes to the computer code in GitHub," ECF 122-6 ¶ 10-11.

113.    David later testified that he "deleted commits on top of the Code" on GitHub. Ex. 4, J.R.0165, David Chen July Dep. at 126:8-9. His testimony caused his counsel to file a correction with the Court indicating that the statements in the declaration were "not correct." ECF 157 at 2.[4]

114.    When asked about the representations in his March 13 Declaration at his deposition, David confirmed they were not true. Ex. 2, J.R.0035-0036, D. Chen Feb. Tr. at 120:18-121:12, 121:17-122:2.

115.    David acknowledged that he was unable to see or review the GitHub commits he deleted, because they were gone. *See Id.* at J.R.0036 (123:1-6).

## VII.    David, Li Fen, and Their Counsel's False and Inaccurate Statements about David's Deletions

116.    David, Li Fen, and their counsel have made numerous false and inaccurate statements to the Court regarding David's deletions and their relevance and have refused to correct them. As described below, David conceded at his depositions, which the Court authorized specifically concerning David's spoliation of evidence, ECF 154; ECF 183, at item 4, that he knew these statements were false *at the time they were made*. Several of these false statements were made to support David's opposition to Robert's motion for entry of a preservation order, and all of them were made while Robert and the Court were trying to understand the full extent of David's spoliation.

117.    **False and Inaccurate Representations by Counsel**: In a February 28, 2025, filing with the Court (opposing Robert's forthcoming Motion for a Preservation Order), David's counsel represented that "the Discord IDs associated with 1,722 messages that are within the discovery range correspond to servers that are irrelevant." ECF 117. This was false, as David's lawyers later

---

[4] His counsel, though, did not correct a number of other false statements in the March 13 Declaration, as described *infra* at Section VII.

admitted (in ECF 157) and as David confirmed, Ex. 2, J.R.0030, D. Chen Feb. Tr. at 99:7-16.

David confirmed at his February 3, 2026, deposition that on or before February 27, 2025 (the day

before filing ECF 117), David's counsel had taken notes indicating that David had deleted

messages from channels that contained relevant or potentially relevant evidence. Ex. 2, J.R.0031,

D. Chen Feb. Tr. at 101:11-102:5. These notes were contained in one sheet of an Excel file that

was produced by Li Fen and David in native form, as YAO00095239, and was introduced as

Exhibit 5 at David's deposition. *See* Ex. 81, J.R.2279-2281, D. Chen Ex. 5 at 493-94.

118.    In the same filing, David's counsel also said that there was "no evidence . . . that

any relevant evidence has been deleted or destroyed." ECF 117. David agreed, at his February 3,

2026, deposition that this was false. Ex. 2, J.R.0030, D. Chen Feb. Tr. at 100:11-22. David had

also admitted at his July 30, 2025, deposition that there were false statements in the February 28

Letter and that he knew they were false before the letter was filed with the Court, that he did not

tell his lawyers, and that he let his lawyers file the letter with false statements in it. Ex. 4, J.R.0164-

65, D. Chen July Tr. at 122:2-125:12, 125:15-126:3.

119.    Regarding the Jito server, David's lawyers wrote that they could "discern nothing

about [the messages sent in that server] that is even arguably relevant." ECF 117 at 3. David

confirmed at his deposition that this statement was untrue. Ex. 2, J.R.0031, D. Chen Feb. Tr. at

102:21-103:7. David did not dispute that, after having told his lawyers that relevant ESI *had* been

destroyed, he "let them continue to tell the Court . . . that they didn't have any evidence of

documents [he] destroyed that were relevant." Ex. 2, J.R.0040, D. Chen Feb. Tr. at 137:21-138:7.

120.    In another filing from March 13, 2025, David's counsel said that Robert had

"presented no facts showing that any [material and relevant] evidence has been deleted or

destroyed and David is aware of none." ECF 122 at 3. David agreed at his deposition that this

33

statement was false because the spreadsheet of his counsel's notes showed that he had told his lawyers (prior to March 13, 2025) that he had deleted relevant messages. Ex. 2, J.R.0033, D. Chen Feb. Tr. at 110:9-112:2.

121. On April 1, 2025, David's counsel sent a 1.5-page "analysis" of David's Discord deletions to Robert's counsel that purported to be a thorough analysis concluding that none of the 17,222 deleted messages were relevant. A true and correct copy of this letter is attached as Exhibit 82, J.R.2282-2284. This could not have been accurate; David later testified that he had not even looked at the names of the channels on the "new clickbait" server from which he had deleted messages until days before his deposition. Ex. 4, J.R.0145, D. Chen July Tr. at 48:18-49:11. Furthermore, David's counsel stated to Robert's counsel in this letter that they "could discern nothing about" the deleted Jito server messages that Robert had identified that was "even arguably relevant." David confirmed this was not true. *See* Ex. 2, J.R.0037, D. Chen Feb. Tr. at 125:20-126:16 (quoting Ex. 82, J.R.2284, Apr. 1 Ltr. at 2), 127:4-129:10.

122. David's counsel reiterated this position in a filing on April 14, 2025, ECF 127 at 2 n.1, and David agreed, at his deposition, that this statement was also not correct. Ex. 2, J.R.0039, D. Chen Feb. Tr. at 133:13-14. The statement before the Court has not been corrected.

123. David's counsel also stated in the April 1 letter that "it is clear that no relevant Discord messages have been deleted or destroyed." Ex. 82, J.R.2284, Apr. 1 Ltr. at 2. David confirmed, at his February 3, 2026, deposition, that this was untrue. Ex. 2, J.R.0038, D. Chen Feb. Tr. at 132:4-15 (quoting Ex. 82, J.R.2284, Apr. 1 Ltr. at 2). David had also admitted at his July 30, 2025, deposition that there were false statements in this letter. Ex. 4, J.R.0162-63, D. Chen July Tr. at 115:10-17, 118:6-119:21.

124.    At a hearing on April 29, 2025, the Court asked David's counsel whether his position was that the deleted messages were not relevant to the litigation. ECF 134, Hearing Tr. at 56:21-24 (Apr. 29 2025). David's counsel responded, "That is correct, your Honor." *Id.* at 56:25. David later confirmed this was not true. Ex. 2, J.R.0039, D. Chen Feb. Tr. at 135:14-17 (quoting ECF 134, Hearing Tr. at 56 (Apr. 29 2025)). David had told his counsel that there were relevant messages in what he had deleted. Ex. 2, J.R.0039, D. Chen Feb. Tr. at 135:18-136:2. This statement before the Court has not been corrected.

125.    **False and Inaccurate Representations by David and Li Fen**: In the March 13 Declaration, David said that he had "made all of [his] documents and communications, including electronically stored documents and communications available for collection to [his] attorneys." ECF 122-6 ¶ 4. This sworn statement to the Court was untrue, as David admitted, and he and his lawyers have not corrected it. Ex. 2, J.R.0034, D. Chen Feb. Tr. at 114:3-116:9.

126.    In the March 13 Declaration, David further swore that "[t]o the best of [his] knowledge, all potentially relevant documents and communications that existed at the time of collection have been collected and preserved." ECF 122-6 ¶ 4. David conceded that this was "a false statement," that he "would have known that it was false" when he said it, and that he has never corrected it. Ex. 2, J.R.0034-0035, D. Chen Feb. Tr. at 116:16-117:12; *see* also *Id.* at J.R.0035 (119:1) (David testifying he "should have known [these statements] were false.").

127.    As described more fully in Robert's Memorandum in Support of his Motion for Sanctions, Li Fen also repeatedly represented, in four separate versions of responses to the Second Set of Interrogatories, that she was "unaware of any relevant documents that were destroyed, lost or transferred on or after September 20, 2022." ECF 194-1 at 23. This statement could not have been true, as David had already told his lawyers that relevant ESI had been destroyed. Ex. 2,

35

J.R.0040, David Chen Feb. Dep. at 137:12-20. David verified three of the four sets of responses that contained this false statement, and testified that he "guess[ed] he should have stopped" this false statement from going out in a discovery response, but that he did not do so. Ex. 2, J.R.0040-0041, David Chen Feb. Dep. at 140:14-141:13; *see also* Ex. 2, J.R.0041, David Chen Feb. Dep. at 143:8-13, 144:13-145:16. Even the fourth iteration of the responses still did not state that the deleted messages were, in fact, relevant, and David could not explain why this fact was omitted. Ex. 2, J.R.0042, David Chen Feb. Dep. at 145:17-21.

## VIII.    Li Fen Yao's Control of David's Documents.

128.    Li Fen has produced documents from David and used information provided by him to build her case.

129.    On November 6, 2023, Li Fen filed a declaration from David to support her Opposition to the motion to dismiss. ECF 28-5. In that declaration, David stated that he "maintained OtterSec's hardware Ledger wallet in my home in Rockville, Maryland" and also maintained a "hardware security key" for access to an OtterSec account "in my home in Rockville, Maryland"—*i.e.*, Plaintiff's home. ECF 28-5 ¶¶ 18, 19. He also stated that "OtterSec utilized a computer server . . . located in my home in Rockville, Maryland." ECF 28-5 ¶ 27.

130.    In May 2024, Li Fen's counsel stated that they "did not withhold information *solely because David has it, and not Li Fen*." Ex. 22, J.R.1353, Email from S. Plotnick at 1 (May 29, 2024) (emphasis added).

131.    One of Defendants' Interrogatories to Li Fen Yao asked her to "[i]dentify what steps You took, and when You took each step, to preserve evidence potentially relevant to this case." Ex. 83, J.R.2287, Defs' Second Set of ROGs at 2 (ROG #1). As described *supra* at ¶ 127, Li Fen served four versions of responses to these interrogatories. No version of her response to

ROG 1 identifies any steps she or her husband took to prevent their then-minor son from destroying potentially relevant ESI. *See, e.g.*, Ex. 13, J.R.1125-1129, *Yao* Aug. 29 Resps. at 5-9.

132.    David testified that, as of July 30, 2025—when he was sitting for a deposition regarding spoliation of evidence—his mother had never even asked why he deleted Discord messages. Ex. 4, J.R.0152, D. Chen July Tr. at 76:5-13.

133.    354,849 of the 370,127 documents produced by David and Li Fen to date in this litigation list David as the custodian.

## IX.    Robert's Counsel's Efforts to Retrieve Deleted Data.

134.    Robert's counsel has undertaken significant efforts to obtain copies of the messages and other ESI David deleted through third-party discovery. Unfortunately, none has been retrievable.

135.    **Philip Papurt:** We served a subpoena for documents on Philip on December 5, 2024. After negotiations with his counsel, he produced some documents on December 27, 2025, and on May 4, 2025, but they did not include any of the messages David deleted for which no copies had been preserved.

136.    **Discord:** As described *supra* at ¶¶ 22-23, we served a subpoena on Discord on November 27, 2024, after which Discord produced a spreadsheet 2025, showing that David had deleted **17,222** total messages. On April 8, 2025, we served an additional subpoena on Discord, seeking records of David's deletions from his Discord accounts for the period November 18, 2024 through the date of service of the subpoena. On June 11, 2025, Discord produced an additional spreadsheet showing deletions by David Chen of his Discord messages sent between December 8, 2024, and January 23, 2025.

137.    **"New Clickbait":** We served third-party subpoenas on four other members of the "new clickbait" server in an effort to recover any preserved copies of the messages that David deleted from that server: Ally Guo (served February 3, 2025), Angela Zhang (served July 3, 2025), Claire Deng ( served July 3, 2025), and Marissa Liu (served July 2, 2025). We attempted subpoena service on two other members: Iris Guo (service attempted on July 2, 2025), and Olivia Shi (dated July 2, 2025). None produced copies of any messages David had deleted.

138.    **Darren Chen:** On August 28, 2025, we served a subpoena on David Chen's brother, Darren Chen, seeking documents and communications concerning OtterSec, Jump, Robert, the Codes, JUP tokens in David's possession, David's spoliation of evidence, and this Action. We are continuing to meet and confer with Darren Chen about his responses to the subpoena.

139.    **Alexander Karavaltchev:** On September 3, 2025, we served a subpoena on Alexander Karavaltchev (discussed *supra* at Section VI.B). His production did not include any of the missing, deleted Discord messages from David (or any other deleted data).

140.    **Ally Guo**: We served Ally with subpoenas for documents on February 3, 2025, and on July 2, 2025, seeking her conversations with David. Her production did not include any of the missing, deleted Discord messages from David (or any other deleted data). We served Ally with a subpoena for testimony on September 5, 2025, and took her deposition, concerning David's deletions of messages to her and in the "new clickbait" server, on October 14, 2025.

141.    **June Hao**: On December 5, 2025, we served a subpoena on Junying ("June") Hao, Li Fen Yao's niece with whom she said she "discussed this action" and "many aspects of the case generally." Yao Aug. 29 Resps. at 27-28. Based on documents Li Fen has produced, it appears she

frequently communicated with Ms. Hao about the subject matter of these actions. Ms. Hao has refused to produce documents and refused to meet and confer with Robert's counsel.

142.    There are some sources of evidence that Robert's counsel has been unable to pursue through third-party discovery, despite our best efforts to do so. **For example:**

143.    **Telegram**: Telegram is a highly encrypted platform. Its privacy policy states that "[a]ll data is stored heavily encrypted and the encryption keys in each case are stored in several other data centers in different jurisdictions." Section 3.3.1, Telegram Privacy Policy, https://telegram.org/privacy?setln=fa. Per Telegram's FAQ page, Telegram is headquartered in Dubai. Telegram FAQ, "Where is Telegram headquartered?", https://telegram.org/faq. As a result, we were unable to serve a subpoena on Telegram for David's data.

144.    **AltTank:** We were unable to serve subpoenas on other members of the "AltTank" server (described *supra* at Section VI.A) because David and Li Fen did not identify other members of the server with sufficient detail when asked to do so in an interrogatory. Ex. 13, J.R.1141-1142, *Yao* Aug. 29 Resps. at 21-22 (ROG #9).

145.    **David's Phone**: Additionally, as described *supra* at Section VI.F, Robert's counsel's efforts has not been able to obtain information about what was on David's phone that "bricked," due in part to David's counsel's obstruction.

### X.    Recent Representations by David and Li Fen's Counsel.

146.    In a meet-and-confer session between counsel held on February 18, 2026, Robert's counsel asked David's counsel for an update regarding the "Ally Guo messages" that "David and his counsel [had] represented that he preserved . . . before deleting them." Ex. 23, J.R.1360, Tr. M&C at 4:16-19 (Feb. 18, 2026). David's counsel did not have a substantive update but

represented that he "need[ed] to keep searching . . . to try to find if those documents exist." *Id.* at J.R.1361 (6:14-15).

147. During the same February 18, 2026, meet and confer, David's counsel stated that documents that had been previously collected "no longer exist" and that "the documents that were re-collected, the entire digital footprint that existed at that time, do not necessarily include all the same documents that were collected several years ago." Ex. 23, J.R.1363-64, Tr. M&C at 15:13-22; 18:9-14 (Feb. 18, 2026).

148. On February 20, 2026, David's counsel produced a set of documents. This was the only set of documents that David or Li Fen produced in February 2026. It included eight documents identified as Discord conversations between David ("radiantaeon") and Ally Guo ("closetduck") from 2021. Each of these documents contained only messages sent by Ally, and not any of the messages David had sent and later deleted. For example, a true and correct copy of one of these documents, YAO02492353, is attached as Exhibit 84, J.R.2291-2302, and reflects only Ally's side of a Discord conversation between her and David on November 11, 2021.

149. On March 16, 2026, David's counsel sent an email to Robert's counsel, a true and correct copy of which is attached as Exhibit 85, J.R.2303-2306, in which he represented that after Robert's counsel had "asked whether [David] had produced the Ally Guo . . . documents" David's discovery vendor had "searched again for the Ally Guo . . . documents in the previous, archived collection from 2024, and subsequently found them and produced them to you in February 2026." Exhibit 85, J.R.2304-2305, Email from A. Giles (March 16, 2026).

150. Contrary to this representation in the March 16, 2026, letter, David's counsel has not yet produced the David-Ally Guo messages that Robert's counsel requested. David did not produce his 2021 conversations with Ally Guo that he had allegedly preserved. David has only

40

produced some conversations from 2021 with his deleted messages missing, and some conversations from 2022 or later. David has yet to produce the Discord messages that he sent to Ally in 2021 and that he deleted in October 2024.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 19, 2026

By: /s/ Joshua A. Levy
Joshua A. Levy