**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

|  |  |
|---|---|
| **LI FEN YAO, as Administrator of the Estate of Sam Mingsan Chen,**<br><br>                    **Plaintiff,**<br><br>          v.<br><br>**ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC,**<br><br>                    **Defendants.** | **Case No. 8:23-cv-00889-TDC** |
| **ROBERT CHEN and OTTERSEC LLC,**<br><br>                    **Plaintiffs,**<br><br>          v.<br><br>**DAVID CHEN,**<br><br>                    **Defendant** | **Case No. 8:24-cv-03628-TDC** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ROBERT
<u>CHEN'S MOTION FOR SANCTIONS</u>**

6542722.1

1

**Table of Contents**

I.    INTRODUCTION ................................................................................................. 3

II.   LEGAL STANDARDS ........................................................................................ 4

  A.   The Standard for Imposing Sanctions Under Rule 16(f) ..................................... 4

  B.   The Standard for Imposing Sanctions Under Rule 26(g) .................................... 4

  C.   The Standard for Imposing Sanctions Under Rule 37 ........................................ 4

  D.   The Standard for Imposing Sanctions Under 28 U.S.C. §1927 .......................... 5

  E.   The Standard for Imposing Sanctions Under the Court's Inherent Authority ................... 5

III.  ARGUMENT ...................................................................................................... 6

  A.   Rule 16 is Inapplicable to This Dispute. ............................................................ 8

  B.   28 U.S.C. §1927 Does Not Authorize Sanctions Against David or Li Fen and Robert Has Failed To Establish § 1927 Sanctions Against David and Li Fen's Counsel By Clear And Convincing Evidence. .................................................................................................. 8

  C.   Discourteous Language or Tone, While Regrettable, Does Not Provide a Basis for Sanctions. ............................................................................................................... 10

  D.   Robert Has Failed to Demonstrate by Clear and Convincing Evidence That He is Entitled to Sanctions Based on David and Li Fen's Document Production. ........................................ 13

     1.   *David's Collection and Identification of Responsive Documents Complied With Applicable Law and Was Performed in Good Faith.* ............................................. 13

     2.   *Robert Has Cited No Legal Authority or Binding ESI Protocol Requiring David and Li Fen to individually review and/or de-duplicate documents.* .................................. 17

     3.   *David and Li Fen Corrected and Withdrew Their Fifth Production of Documents (YAO005) and Explained Why the Bates Numbers and Pages Were Different.* ................... 18

     4.   *The Re-Collection of Data Was Justified and Necessary.* ............................... 19

  E.   Robert Has Failed to Demonstrate by Clear and Convincing Evidence That He is Entitled to Sanctions Based on David and Li Fen's Discovery Responses. .......................................... 21

     1.   *Robert Cannot Establish Severe Prejudice with Respect to the First & Second Set of Document Requests or the Subpoena to David in Yao v. Chen* ................................. 22

     2.   *Robert Cannot Establish Severe Prejudice with Respect to the First Set of Interrogatories in Yao v. Chen.* ....................................................................... 24

     3.   *Robert Cannot Establish Severe Prejudice with Respect to the Second Set of Interrogatories in Yao v. Chen.* ....................................................................... 25

     4.   *Robert Cannot Establish Severe Prejudice with Respect to the First and Second Sets of Interrogatories and Document Requests in Chen v. Chen.* ................................. 28

  F.   The Sanctions Requested By Robert In The Discovery Motion Are Not Warranted In This Case 29

IV.   CONCLUSION ................................................................................................. 30

Plaintiff (in *Yao v. Chen)* Li Fen Yao ("Li Fen"), and Defendant (in *Chen v. Chen*) David Chen ("David"), by their undersigned counsel and pursuant to, *inter alia*, Fed. R. Civ. P. 26 and 37, and Local Rules 105.1 and 105.2, submit the following memorandum in opposition to the motion of Robert Chen, Otter Audits LLC, RC Security LLC, and OtterSec LLC (collectively, "Robert") for discovery sanctions (Dkt. No. 194, the "Discovery Motion").  In opposition to the Discovery Motion, David and Li Fen state as follows.

## I.     INTRODUCTION

As the Court is well aware, this case arises out of the parties' disputes as to whom should be deemed the owner of certain computer code, and their dueling allegations of misconduct in connection with their formerly jointly-owned enterprise.  David and Li Fen will refrain from burdening the Court with a recitation of the extensive procedural history of the case.

At a hearing on November 20, 2025, the Court granted Robert leave to file the Discovery Motion and a related motion for spoliation sanctions (Dkt. No. 197, the "Spoliation Motion"). David's and Li Fen's response to the Spoliation Motion is currently due on April 2, 2026.[1]

Robert now seeks (1) the ultimate sanctions of dismissal of the claims against him in *Yao v. Chen* and a default judgment in his favor on his affirmative claims in *Chen v. Chen,* (2) an award of attorneys' fees against David, Li Fen, and their counsel, and (3) the appointment of a special master to "oversee" the continuing discovery process.  Discovery Motion, p. 3.

Robert seeks sanctions under (1) Federal Rules of Civil Procedure 16(f), 26(g), 37(b)(2)(A), 37(c), and 37(d), as well as (2) 28 U.S.C. §1927, and (3) this Court's inherent authority.

---

[1] A consent motion to extend both the response deadline and the reply deadline is pending (Dkt. No. 198).

6542722.1

3

As set forth more fully below, the relief that Robert seeks is unwarranted.  To the extent that any sanction is warranted, such sanction should possibly only relate to the admitted deletion of potentially relevant data, which should be addressed in the context of the Spoliation Motion.

## II.    LEGAL STANDARDS

### A.    The Standard for Imposing Sanctions Under Rule 16(f)

This Court may "…issue any just orders…if a party or its attorney (A) fails to appear at a scheduling or other pre-trial conference; (B) is substantially unprepared to participate – or does not participate in good faith – in the conference...." Fed. R. Civ. P. 16(f).

### B.    The Standard for Imposing Sanctions Under Rule 26(g)

Rule 26(g) requires an attorney, by signing a "…discovery response, request, or objection," to certify to the best of the attorney's "…knowledge, information, and belief formed after a reasonable inquiry" *inter alia* that (1) discovery responses comply with the Federal Rules, and (2) discovery requests are "…neither unreasonable nor unduly burdensome or expensive…." Fed. R. Civ. P. 26(g).

### C.    The Standard for Imposing Sanctions Under Rule 37

"If a party …fails to obey an order to provide or permit discovery… the court … may issue further just orders," as more fully described in the rule.  Fed. R. Civ. P. 37(b)(2)(A). Subpart (c) of the same rule allows a court to sanction a party for failing to "…provide information or identify a witness as required by Rule 26(a) or (e), … unless the failure was substantially justified or is harmless."  The permissible sanctions under subpart (c) of Rule 37 <u>do not</u> include dismissal, in whole or in part, default judgment, or contempt.  *See* Fed. R. Civ. P. 37(c)(1)(C) (authorizing sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(iv), but not (v)-(vii)).

D.      The Standard for Imposing Sanctions Under 28 U.S.C. §1927

A court may sanction an attorney who "…multiplies the proceedings unreasonably and vexatiously…." 28 U.S.C. §1927.  The authority granted by this statute may be directed only at attorneys, and is concerned only with abuse of the court process, not with the merits of particular positions.  *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).

No reported authority in this Circuit establishes a test for the imposition of sanctions under 28 U.S.C. §1927; some decisions have required subjective bad faith, while others have held objective recklessness sufficient.  *Branhaven, LLC v. Beeftek, Inc.*, 288 F.R.D. 386, 394 (D.Md. 2013).  In either event, inadvertence or negligence will not suffice.  *Id.  See also Yoder v. Conaway Racing & Trucking, LLC*, 2026 U.S. Dist. LEXIS 38229 *17 (D.Md. Feb. 25, 2026) (declining to issue sanctions based on Court's inherent or statutory authority after plaintiff subjected to additional discovery so that defendant could verify authenticity of potentially fraudulent document because additional discovery was not unreasonable or vexatious, and not undertaken in bad faith).

E.      The Standard for Imposing Sanctions Under the Court's Inherent Authority

The Court's authority to impose sanctions based on its inherent authority is narrower than its authority to impose sanctions under §1927 and "almost always" requires proof of fraud, deceit, misrepresentations, harassment, or unethical conduct.  *Yoder,* at 33 (internal citations omitted).  The Court's inherent authority to sanction "…must be exercised with the greatest restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993) (internal citations omitted). Subjective bad faith, while not necessarily required for sanctions under 28 U.S.C. §1927 (*see Branhaven, supra*) is always

required for sanctions under the Court's inherent authority. *Yoder*, at *16, *citing Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 n. 14 (4th Cir. 1999).

Moreover, a party seeking sanctions based on 28 U.S.C. §1927 or the Court's inherent authority must establish that it is entitled to sanctions by the clear and convincing evidence standard. *Yoder*, 2026 U.S. Dist. LEXIS at *21-22.

In the instant case, Robert seeks imposition of the ultimate sanctions, and cites five separate supposed grounds for the imposition of those sanctions, including three separate Federal rules, a Federal statute, and the Court's inherent authority. Robert also alleges a laundry list of purported misconduct by David, Li Fen, and their counsel. In so doing, Robert appears to hope that a morass of factual allegations juxtaposed against a variety of legal theories will obscure the inescapable conclusion that he is not entitled to the sanctions that he seeks.

### III.   ARGUMENT

Robert's various claims for sanctions must be viewed through the lens of the discovery process, which is, of course, limited by relevance and proportionality. Discovery must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b) (emphasis added). The right to discovery is not absolute; the benefit of the discovery sought must outweigh its likely burden. *Cf. Bunce v. Prince George's County*, 2020 U.S. Dist. LEXIS 49178 *6 (D.Md. 2020).

Robert's claims, regardless of the legal theory underlying those claims, are based on two general categories of alleged misconduct: the documents produced by David in this case and

6542722.1

David's written discovery responses.  Sanctions, however, are not warranted as a result of David's conduct in either producing documents or in responding to written discovery.

In determining whether dismissal or other sanctions are warranted, this Court must consider four factors: (1) the evidence of bad faith by the non-complying party; (2) the amount of prejudice noncompliance caused the opposing party, which necessarily includes an inquiry into the materiality of the evidence not produced; (3) the need for deterrence of the particular sort of non-compliance; and (4) the effectiveness of less drastic sanctions.  FED. R. CIV. P. 37; *Caruccio v. Marco Techs., Inc.*, 2023 U.S. Dist. LEXIS 135044 *3-4 (D.Md. Aug. 2, 2023) (internal citations omitted).  The sanction of dismissal is reserved for the most "flagrant cases where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules."  *Id*.  The law "strongly favors" trying cases on the merits.  *Id*.  The law further disfavors dismissal as a sanction where the court has not afforded the non-compliant party with a "clear and explicit fair warning" of the possibility of dismissal as a sanction for noncompliance. *Id*.

Moreover, sanctions that are tantamount to dismissal are analyzed under the same framework.  *See Caruccio*, 2023 U.S. Dist. LEXIS 135044 at *5-7 (District Judge Rubin fully adopting the report and recommendation of Magistrate Judge Coulson, who declined either to dismiss or to impose sanctions that would be "tantamount to dismissing plaintiff's case").

Here, the conduct of David, Li Fen, and their counsel certainly does not warrant the ultimate sanction or any tantamount sanction.  Before addressing the factual allegations of supposedly sanction-worthy behavior, though, the Court can and should dispense with several legal arguments raised in the Motion.

6542722.1

7

A.   <u>Rule 16 is Inapplicable to This Dispute.</u>

At the outset, the Court can dispense with claims that Robert is entitled to sanctions of any kind under Rule 16(f).  By its express language, that Rule applies only to "a scheduling or other pre-trial conference."  Fed R. Civ. P. 16(f).  Robert's allegations regarding bad faith or lack of preparedness are directed to meet-and-confer sessions.  *See, e.g.,* Memorandum of Law in Support of Motion (Dkt. No. 194-1, the "Memorandum"), pp. 3-4.  Unsurprisingly, Robert cites no authority equating a meet-and-confer session under the discovery rules with a scheduling or pre-trial conference under Rule 16.  In fact, Rule 16 confirms that meet-and-confer sessions are <u>not</u> Rule 16 conferences.  *Cf.* Fed. R. Civ. P. 16(e) (describing pre-trial conferences and noting that the last one must be "…held as close to the start of trial as is reasonable….").  Meet-and-confer sessions, instead, are expressly required under FED. R. CIV. P. 37(a)(1) and Local Rule 104.7, which are both discovery rules.

Thus, Rule 16 offers no basis for any sanctions in this action.

B.   28 U.S.C. §1927 Does Not Authorize Sanctions Against David or Li Fen, and Robert Has Failed To Establish §1927 Sanctions Against David and Li Fen's <u>Counsel By Clear And Convincing Evidence.</u>

The express language of 28 U.S.C. §1927 limits its scope to sanctions against attorneys. *See* Section IV, p. 6, *supra*.  Further, the sanction power of §1927 is limited to the individual offending lawyer, and not the law firm.  *Branhaven*, 288 F.R.D. 386, 393, n. 9, *citing Pavelic & LeFlore v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.,* 493 U.S. 120, 125 (1989).

In the Fourth Circuit, sanctions pursuant to §1927 typically require proof of affirmative steps to advance baseless claims or otherwise delay litigation. *See e.g., Six v. Generations Fed. Credit Union*, 891 F.3d 508, 522 (4th Cir. 2018) (awarding sanctions because counsel "evince[ed] a multi-year crusade to suppress the truth to gain a tactical litigation advantage"); *Sweetland v. Bank of Am. Corp.*, 241 Fed. Appx. 92, 97 (4th Cir. 2007) (awarding sanctions because counsel

pursued claims knowing that they lacked evidentiary support, took affirmative steps to stall discovery, and filed a motion for summary judgment based on unsupported claims); *Salvin v. Am. Nat'l Ins. Co.*, 281 Fed. Appx. 222, 226 (4th Cir. 2008) (awarding sanctions because counsel "protracted the litigation" by refusing to voluntarily dismiss the case once its lack of merit became evident).

On the other hand, as in the *Yoder* case, the plaintiffs therein moved for sanctions after the defendants submitted a fraudulent document with their motion for summary judgment, refused to disavow it for months, and conducted additional discovery over plaintiffs' objections to determine the validity of the document. *Yoder*, 2026 U.S. LEXIS at *29-32. Even though Magistrate Judge Aslan, writing for this Court, found that it was "inconceivable" that the defendants and their counsel failed to immediately correct the record, she declined to issue sanctions (aside from striking the fraudulent document) because plaintiffs failed to produce clear and convincing evidence that the defendants' actions were made in bad faith, vexatious, or with the intent to unreasonably multiply the proceedings. *Id*. at *31-34.  The *Yoder* Court held that "Section 1927 *requires* the unreasonable and vexatious multiplication of proceedings as a prerequisite to imposition of any sanction." *Id*. at *30 (emphasis added).

Given the above authorities, 28 U.S.C. §1927 does not permit the imposition of sanctions against David or Li Fen, and this Court should deny a request for §1927 sanctions against David or Li Fen out of hand.  Nor has Robert demonstrated by clear and convincing evidence that sanctions are warranted against David and Li Fen's counsel under §1927. As in *Yoder*, Robert has failed to demonstrate that counsel's actions were undertaken in bad faith to advance baseless claims or unreasonably and vexatiously multiply the proceedings.  *See Yoder*, 2026 U.S. Dist. LEXIS at *21-22.  Counsel's discourteous language or tone, while certainly regrettable, did not

6542722.1

unreasonably delay or multiply the proceedings. And while counsel has at times expressed concern that Robert has been inflexible and unwilling to compromise on a multitude of discovery issues during meet and confers (*see e.g.,* J.R. 063 at pp. 81-82; J.R. 066 at pp. 93-94), this too does not constitute an "unreasonable" or "vexatious" multiplication of proceedings. If anything, undersigned counsel has attempted in good faith, where possible, to streamline the discovery proceedings in this case. Further, the arguments advanced by Robert with respect to (1) David and Li Fen's document production and (2) David and Li Fen's written discovery responses do not provide a basis for this Court to issue sanctions against counsel under §1927. As such, Robert has failed to produce clear and convincing evidence that David and Li Fen's counsel are subject to sanctions based on §1927.

C.    Discourteous Language or Tone, While Regrettable, Does Not Provide a Basis for <u>Sanctions.</u>

As alluded to above, discourteous language or tone, while certainly regrettable, does not provide a basis for sanctions. Moreover, undersigned counsel's use of questionable language or tone was the direct result of equally (or even worse) offensive behavior by counsel for the Robert parties, highlighted by their arrogance and unreasonable requests. All of this has been underscored by what is perceived to be a deliberate attempt by counsel to Robert to complain about anything and everything, and to make the proceedings as litigious as possible in the hopes of forcing David and Li Fen to eventually "throw in the towel" due to the overwhelming and completely unnecessary expenses required in rebutting these obvious attempts.

Undersigned counsel has a practice of dealing with opposing counsel in a very reactionary posture, and what is meant by that is that undersigned counsel starts every case trying to get along with opposing counsel, and that has been his practice for his almost thirty (30) years of practice. If opposing counsel wants to reciprocate that approach, undersigned counsel works

in cooperation with opposing counsel and is 100% collegial and cooperative.  If opposing counsel does NOT want to reciprocate a professional approach, undersigned counsel will continue to give opposing counsel the benefit of the doubt and will try to "encourage" opposing counsel to conduct the litigation in a professional manner.  But, if opposing counsel does not adjust their actions, frustration eventually seeps in and undersigned counsel will "react" to opposing counsel's demeanor and actions.  Undersigned counsel can count on one hand the amount of times that cases have regrettably followed such a pattern.  This case, unfortunately, is one of those handful of cases.

If this Court were to follow the chronology of this matter, starting in mid-June 2025, it would be easy to see how the relationship between counsel denigrated into what was discussed and addressed at the November 20, 2025 hearing before this Court.  The message delivered by this Court was loudly heard that day, and undersigned counsel has tried very hard to be as professional as possible, even when opposing counsel started to fall back into their previous patterns of arrogance, entitlement, and unreasonable requests, whether based on the substance of the requests or the "drop everything" nature of opposing counsel's request with no respect for our schedules or other cases upon which we are currently involved.  Undersigned counsel should not have to "tr(y) very hard to be as professional as possible" but opposing counsel, unfortunately, brings about such a mindset due to their less than professional demeanor and actions in this case.

In Section I of the Motion, Robert raises the Court's comments from the November 20, 2025 hearing, when the Court stated that undersigned counsel's treatment of Ms. Clattenburg was "appalling."  For the record, while undersigned counsel disagrees with the notion that his treatment of Ms. Clattenburg was "appalling," undersigned counsel does readily acknowledge

6542722.1

that the Court perceived it to be appalling.  Undersigned counsel, on the other hand, would also note, though, that the Court clearly was not interested in entertaining his rebuttal to the Court's perception, and he clearly did not attempt to provide such a rebuttal under the circumstances. Furthermore, since that November 20 hearing, undersigned counsel has sought to be extremely professional to opposing counsel, despite opposing counsel's demeanor, actions, insinuations, assertions, and allegations since that hearing, which can be highlighted by opposing counsel (and not just Ms. Clattenburg) continuously pushing the envelope on their demands and their unreasonable expectations in carrying out this litigation.

To this point, Section I of the Motion claims that "Mr. Giles's rude communications to her continue to this day" and the footnote attached to this allegation references language quoted out of context and in a manner in the hopes of projecting some sort of recurring behavior. Rather, undersigned counsel would encourage the Court to review the full context of the back and forth email exchange by reviewing the entirety of the message, which is attached as part of the Joint Record and cited to by opposing counsel.

In reviewing the full context of the email exchange, it should become readily apparent that undersigned counsel continues to have to deal with a persistent pattern of misrepresentations from opposing counsel at each turn of the case.  Opposing counsel completely misrepresented undersigned counsel's efforts in addressing the numerous issues raised by Robert in the February 18 Meet and Confer.

Opposing counsel turns minor differences into major disputes, causing undersigned counsel to spend hours upon hours reacting to such over-stated and unsupported allegations. When undersigned counsel attempts a different approach by refraining from "taking the bait," so to speak, undersigned counsel then gets hit with repeated emails alleging improper actions and

6542722.1

motivations regarding discovery obligations, the integrity of David and of undersigned counsel, and other like-minded arguments.  Why?  Because the apparent goal of opposing counsel in this litigation is to over-litigate this case, to make David and Li Fen spend more and more money dealing with the other side's repeated and incessant arguments that are being made for the primary purpose of burying David and Li Fen in an expensive and uncomfortable case which they hope will ultimately result in David and Li Fen eventually saying "Enough….no more….we quit."

Dealing with that on a constant basis is extremely frustrating for David, Li Fen, and undersigned counsel, and, unfortunately, Mr. Giles has, on occasion, lashed out….IN RESPONSE….to these efforts by opposing counsel.  It is not the best response, obviously, but under the circumstances, undersigned counsel would submit that it is entirely understandable.

> **D.**    Robert Has Failed to Demonstrate by Clear and Convincing Evidence That He is Entitled to Sanctions Based on David and Li Fen's Document Production.

In his Motion, Robert claims that David and Li Fen should be sanctioned for (1) failing to run adequate search terms, (2) failing to individually review and/or de-duplicate their document production, (3) providing an "incorrect" production of documents, and (4) re-collecting data. For the reasons stated below, none of Robert's arguments have merit and their Motion for Sanctions should be denied.

> **1.**    *David's Collection and Identification of Responsive Documents Complied With Applicable Law and Was Performed in Good Faith.*

On or about April 12, 2024 David and Li Fen retained TransPerfect Legal ("TransPerfect") to assist with the collection, management, and production of electronically-stored information in this case.  Affidavit of Jacob Schaub, attached hereto as **Exhibit 1** and incorporated herein by this reference (the "TransPerfect Affidavit").

TransPerfect then collected data from David and Li Fen throughout 2024 and early 2025. *Id.* (such collection, the "Original Collection").  The sources from which the data was collected, and the dates on which it was collected, are set forth on Exhibit A to the TransPerfect Affidavit. *Id.*

In April and October of 2024, David provided his own Discord data to TransPerfect via a Discord "takeout." In April 2024, David provided his data from Discord to TransPerfect using a program called DiscordChatExplorer, which exports selected group messages, direct messages, and server channels. *See* TransPerfect Affidavit.   In October 2024, David provided his data from Discord to TransPerfect using a feature called "download my data," which provides only that user's messages across all servers and channels.  *Id.*  Therefore, at least a portion of the 2024 collections of David's Discord data contained only his personal messages and not the messages of any other users in the conversation.

In January and February of 2025, TransPerfect performed an "export" of David's Discord data.  An "export," such as was performed by TransPerfect, collects all messages from all users on any channel on any of the servers that are collected.  *Id.*

The servers from which TransPerfect exported David's Discord data (the "Discord Servers") are listed on Exhibit B to the TransPerfect Affidavit.  *Id.*  TransPerfect collected all messages from all users on all channels of which David was a member at the time of the collection.  *Id.*

In the fall of 2024, Carter Ledyard & Milburn, LLP, prior counsel to David and Li Fen ("CLM"), agreed with counsel for Robert on a set of agreed search terms to cull responsive documents from the enormous volume of electronic information collected.  The agreed search

terms (the "2024 Terms") are set forth, along with the 2025 Terms (as defined below) in Exhibit D to the TransPerfect Affidavit.  *Id.*

In cases such as this, the use of search terms to identify responsive documents is an accepted practice in the federal court system. *See e.g. Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater"); *In re Telescopes Antitrust Litig.*, 2022 U.S. Dist. LEXIS 150470 *9-12 (N.D.Cal. Aug. 22, 2022) (finding that in a case with millions of potentially responsive documents "a party may choose to expedite its production by relying on search terms and a privilege screen" and further denying a request for sanctions against the party for so doing)(emphasis added).

The Original Collection and a subsequent Re-Collection (discussed and defined below) yielded roughly 46 million electronic documents.  A document-by-document review of that universe of documents would have been wildly impractical, enormously burdensome, and not remotely proportional to the amount in controversy in this case, regardless of the time allotted to do so, and especially given the time for document production in the revised Scheduling Order. Therefore, the only feasible and effective option to produce responsive materials was to use agreed search terms, and to then conduct a second-level review for privilege, which is precisely what David and Li Fen did in this case. *See In re Telescopes*, 2022 U.S. Dist LEXIS at *9-12.

The fact that David and Li Fen's productions included many documents that were not responsive to an individual request is a foreseeable by-product of the insistence by Robert and his counsel on the use of overbroad search terms across millions of documents. Incredibly, Robert claim that they have been provided with a "document dump" of discovery yet simultaneously claim that David and Li Fen should have used *more* search terms to locate

6542722.1

15

responsive documents. *See* Memorandum at pp. 8-10. Having made their bed with overbroad search terms, Robert and his counsel must now lie in it, and this Court should not sanction David, Li Fen, or their counsel for the inevitably overbroad results. *See Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 43 (D.Md. 2000) (denying a motion for sanctions based on alleged failures of discovery because "it [was] apparent from the continued overbreadth of plaintiff's discovery demands that he has been less reasonable in this process than he should have been.").

Undersigned counsel repeatedly emphasized to Robert's counsel that if they felt the agreed search terms were inadequate, they should identify any additional search terms to be used. *See e.g.,* J.R. 114, 13:10-16:10. Further, Robert's counsel could have requested that David and Li Fen run exclusionary criteria across the search terms in an effort to reduce erroneous "hits." They did not. Instead, they insisted "well, the burden is actually on you." *Id*. Clearly, Robert expected David and Li Fen to perform a document-by-document review of millions upon millions of documents in order to certify that they have produced all of the responsive documents in this case. This position is directly contrary to established law; the use of search terms and a privilege review is expressly permitted under applicable law, and the document-by-document review would be wildly disproportionate to the amount at issue in this case. *See Treppel*, 233 F.R.D. at 5 ("thus, the plaintiff's refusal to stipulate to a search methodology in this case was apparently based on a misconception of the scope of the responding party's obligation. At the same time, it was a missed opportunity; the plaintiff might have convinced [the defendant] to broaden its search in ways that would uncover more responsive documents and avoid subsequent disputes."); Fed. R. Civ. P. 26(b).

The Motion never alleges that Robert asked for narrowing or exclusionary search terms and David failed to run them. Instead, Robert asks this Court to impose sanctions because the search terms that Robert requested produced a larger volume of documents than Robert was expecting, and David has been unwilling voluntarily to assume the enormous cost of Robert's decisions. David's use of search terms to locate and produce responsive documents was reasonable in light of the volume of materials collected in this case, and Robert has, unsurprisingly, cited no authority for the proposition that David must bear the costs of Robert's discovery choice.

> 2.    *Robert Has Cited No Legal Authority or Binding ESI Protocol Requiring David and Li Fen to individually review and/or de-duplicate documents.*

In the Motion, Robert claims, without any legal support, that David and Li Fen were required to review each document produced for responsiveness and/or de-duplicate documents and that they should be sanctioned for their failure to do so. *See* Memorandum, pp. 8-9. As demonstrated above, the approach used by David and Li Fen in this case is expressly authorized under Federal law. Robert has identified no law, Order of this Court, or agreement to the contrary, despite a record extract exceeding six hundred pages and some sixty pages of additional exhibits. The burden for Robert to review the documents produced is no greater than David and Li Fen's burden to do so, and they have produced the documents as such documents were kept in the ordinary course of business. *See e.g.*, *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, 2018 U.S. Dist. LEXIS 191918 at *12-13 (D.Md. Nov. 9, 2018) (in a case with a voluminous document production, finding that producing documents as they are kept in the ordinary course of business was sufficient under discovery rules and that "the burden of identifying these documents would be substantially the same for both [plaintiff and defendant].") Accordingly, David and Li Fen have met their discovery obligations.

6542722.1

17

Robert's incorrect claim that David and Li Fen produced certain responsive documents in an "unusable" format does not change this analysis. These documents have been produced to Robert in the same form in which David maintained them and TransPerfect collected them.  *See* TransPerfect Affidavit. Therefore, the documents were produced in the form in which they are ordinarily maintained. Fed. R. Civ. P. 34(b)(2)(E)(ii). They are also "reasonably usable" in the sense that the documents have a Bates-stamp and are searchable.  *Cf. Branhaven v. Beeftek, Inc.*, 288 F.R.D. 386, 392 (D.Md. 2013) (finding that a production was not reasonably usable because it did not have Bates-stamping and was produced in PDF format in contrast with earlier productions in the case).

3.      *David and Li Fen Corrected and Withdrew Their Fifth Production of Documents (YAO005) and Explained Why the Bates Numbers and Pages Were Different.*

Robert asserts that David and Li Fen should be sanctioned because their fifth production of documents (YAO005) contained "incomplete and inauthentic documents."  *See* Memorandum, p. 12.  This claim ignores the pertinent facts, which demonstrate that no sanction is warranted.

Production YAO005 was "incomplete" due to the issues noted with obtaining documents from Discord discussed *supra*, namely, that when David self-collected his data from Discord, he did so via two different collection methods, one of which resulted only in the collection of David's own messages (and not those of others with whom he was communicating), and when TransPerfect obtained David's Discord data from Discord directly, it received messages from the entire message chain. *See* TransPerfect Affidavit.

Further, while Robert claims that he "had to file a motion to compel," it should be noted that this Court *denied* Robert's request to file that motion because Robert failed to comply with Local Rule 104.7 and appropriately meet and confer on those issues. ECF Nos. 132, 136. Further, after Robert *did* appropriately meet and confer on these issues, David and Li Fen: (a)

withdrew YAO005, (b) produced a corrected set of documents (YAO0016), and (c) provided a spreadsheet explaining the corrections. *See* e-mail of Madelyn White, dated July 3, 2025, attached as hereto as **Exhibit 2** and incorporated herein by this reference. Therefore, any prejudice that Robert might have suffered by receiving "incorrect" documents has long since been cured by the correction and explanation.  There has been no failure of discovery with respect to the fifth production and it provides no basis for this Court to issue sanctions.

4.      *The Re-Collection of Data Was Justified and Necessary.*

In his Motion, Robert asserts that "in late 2025, David's counsel insisted on re-collecting all of David and Li Fen's documents and data, knowing that the collection would be the least complete set of documents."  *See* Memorandum, p. 5 (emphasis in original). While it is true that David and Li Fen instructed TransPerfect to re-collect much of their documents and data (the "Re-Collection"), Robert conveniently omits and ignores the reasons for that re-collection, which justify the decision and preclude sanctions against David, Li Fen, or their counsel.

First, in August 2025, the parties agreed upon new search terms applicable to the *Chen v. Chen* discovery requests (the "2025 Terms").  This meant that David and Li Fen, through TransPerfect, needed to run the new search terms across the entire prior collection of data and determine what additional documents needed to be produced.

Second, after the Original Collection, as described above, the parties continued to argue over the relevant time period to be searched in each of the cases. Then, on May 29, 2025, the Court ordered David to preserve evidence across all data sources between February 1, 2021 and April 17, 2025. ECF 141.  However, nearly all of the sources of David and Li Fen's data had been collected only through 2024 or early 2025.  *See* TransPerfect Affidavit.  This meant that at

a minimum, TransPerfect would need to re-collect new data from each source to ensure that all data from the Relevant Period was properly preserved.

Third, prior to undertaking the re-collection process in 2025, David and Li Fen provided numerous additional and new sources of data, including additional computers, external drives, a tablet, etc., from which TransPerfect needed to perform collections. *Id.*

In addition, there were actual or potential gaps in David's prior Discord collections due to how Discord provides documents and data. As explained in Li Fen's Second Amended Answers to Interrogatories, and above, David and TransPerfect had performed multiple prior collections from Discord. *See* Li Fen Yao's Second Amended Answers to Robert's Interrogatories, attached hereto as **Exhibit 3** and incorporated herein by this reference; *see also* Letter from S. Plotnick dated June 13, 2025, attached hereto as **Exhibit 4** and incorporated herein by this reference.

Further, TransPerfect advised undersigned counsel that the reconciling of what had been collected versus what still needed to be collected would take longer and cost more than simply performing a re-collection. The reconciliation process would have been particularly difficult with David's Discord data, in part due to the very problems noted above. The re-collection, of course, also eliminated the potential for errors in the reconciliation, which could have resulted in responsive documents not being produced.

For all of the above reasons, David and his counsel decided, in consultation with TransPerfect, that full re-collection of documents from most of the old data sources and all of the new ones would be the fastest, most efficient, and most economical way to ensure that all responsive documents were collected, preserved, and produced. In light of all of the foregoing, the decision to re-collect documents, rather than attempt to reconcile prior collections and perform limited new ones, was eminently justifiable.

6542722.1

Further, the decision to re-collect has caused no prejudice to Robert. On the contrary, it substantially reduced the risk of an incomplete production, compared to the risk of an incomplete production after an attempted reconciliation.

Finally, following the production of the re-collected Discord data in YAO020 on January 16, 2026, TransPerfect conducted an audit of the production and discovered that it had only run one of the two groups of search terms across the re-collected Discord data. *See* TransPerfect Affidavit. Undersigned counsel had instructed TransPerfect to run both sets of search terms against the Discord data on December 12, 2025. However, once TransPerfect ran both sets of agreed-upon search terms through the re-collected Discord data, it resulted in thirty million additional "hits" that had not been produced. *Id.*

On or about March 4, 2026, TransPerfect informed David and Li Fen's counsel of the additional Discord documents. *Id.* TransPerfect also advised that of the thirty million additional documents, the vast majority of documents pertain to messages in channels in which David Chen did not ever participate; therefore, the vast majority of these documents cannot be relevant in the instant case. *Id.* Nonetheless, promptly after being informed by TransPerfect of the additional Discord documents, undersigned counsel contacted Robert's counsel, informed them of the additional Discord documents, and offered to cooperate in any extension request and to jointly raise the issue with the Court.

E.    Robert Has Failed to Demonstrate by Clear and Convincing Evidence That He is Entitled to Sanctions Based on David and Li Fen's Discovery Responses.

Robert fails to establish that sanctions are warranted given any alleged bad faith conduct in written discovery. Specifically, Robert cannot establish severe prejudice with respect to the First & Second Set of Requests for Production of Documents and Interrogatories and Subpoena in

*Yao v. Chen*, nor the First and Second Set of Requests for Production of Documents and Interrogatories in *Chen v. Chen*.

> 1.    *Robert Cannot Establish Severe Prejudice with Respect to the First & Second Set of Document Requests or the Subpoena to David in Yao v. Chen*

Here, Robert seeks sanctions for David's failure to amend his Responses to the First and Second Sets of Requests for the Production of Documents propounded in *Yao v. Chen* and to the third-party subpoena on David in that case. It is true that those amended Responses have not yet been served. However, that failure has not prejudiced Robert in any way, and does not evidence a lack of good faith, as Robert asks this Court to believe. No responsive documents have been withheld from production except as described on privilege logs produced to Robert's counsel.

After the November 20 hearing before this Court, undersigned counsel discussed potential amendments with CLM, and have yet to amend those responses. However, suggesting that this failure is sanction-worthy represents the ultimate triumph of form over substance. All responsive, non-privileged documents of which counsel was aware at the time of production have been produced. Others, omitted due to an error by TransPerfect, of which counsel was unaware, will be produced promptly after minimizing as much as possible of the production of documents not directly relevant. All objections to production have been withdrawn or overruled by the Court. An amended response telling Robert's counsel that David and Li Fen will produce documents that have already been produced adds nothing to this case. The absence of such a response does not prejudice Robert in any way.

Similarly, the response to the third-party subpoena to David has never been amended, but all responsive documents have been produced, and counsel for Robert has been so advised: "we feel comfortable that the documents that are currently in existence and could theoretically

comply with the June 6, 2024 Subpoena served on a then non-party [David Chen] have since been produced." January 21, 2026 Letter from A. Giles; Dkt. No. 190, at 6.

Robert claims he has been prejudiced because of his dizzying assertion that "[much of the most relevant discovery in both cases is in David's possession only…." *See* Memorandum, ¶29. This assertion is simply false. David and Li Fen have, as set forth above, produced all remaining responsive documents other than those inadvertently omitted by TransPerfect's recently-discovered error.[2]

Regarding opposing counsel's statement that David has not "identif[ed] documents already produced and provide written certification under Fed. R. Civ. P. 26(g)" as ordered by the Court, the undersigned's letter dated November 24, 2025 specifically "provide[s] the following required updates pursuant to our obligations under the Federal Rules of Civil Procedure Rule 26(g)[.]" Though the letter did not identify the source of the Discord documents, as ordered, those documents were originally found in productions YAO005 and YAO007-YAO013. They were included in YAO020, after the Re-collection.

Thus, the failure to amend the responses to the First and Second Requests for Production of Documents and to the subpoena to David have not prejudiced Robert. *Brito v. New Life Healthy Living, LLC*, No. CV-CJC-24-1124, 2025 WL 2638030 (D.Md. Sept. 9, 2025)—cited by Robert's counsel—is inapposite here. There, the court found that "[m]any of the [document request] responses are grouped together and written in incomplete sentences, suggesting a rushed and careless approach to discovery at best, or an intentionally misleading or evasive approach at worst." *Id.* at *7-8. Moreover, defendants in *Brito* produced "records that were separated into more than 100 sets of improperly numbered PDFs" and the documents lacked sequential Bates

---

[2] The potential spoliation of relevant evidence will, of course, be addressed in response to the pending Motion for Spoliation Sanctions (Dkt. No. 197)

numbering. *Id.* at *5. David, Li Fen, and their counsel have not evaded their discovery obligations but have spent hundreds of hours, and hundreds of thousands of dollars, to comply with them. His responses reflect none of the behavior described in *Brito.* To the extent that his responses are deficient, those deficiencies result from the occasional failure to manage a truly enormous volume of information, and not from any bad faith or willful avoidance of discovery obligations.

2.      *Robert Cannot Establish Severe Prejudice with Respect to the First Set of Interrogatories in Yao v. Chen.*

With respect to the First Set of Interrogatories in *Yao v. Chen*, the agreed-upon amendments were generally narrower in scope than Robert's counsel suggests. For No. 2, CLM agreed to amend the answer to list the communications referenced in the Complaint that Li Fen "is currently aware of" notwithstanding their objections that this interrogatory "is better suited to a document request, and [they were] producing these documents." *See* M&C 1/3/25 Tr. 139:4-141:8. Regarding No. 5, CLM agreed to amend the response to remove the reference to the Complaint. *See* M&C 1/3/25 Tr. 141:12-17. Regarding No. 9, CLM agreed to amend the response to refer to the communications referenced in the Complaint that Li Fen is aware of, notwithstanding their objections that this request is burdensome, better suited to a document request, and "[they were] producing these documents." *See* M&C 1/3/25 Tr. 142:12-22. Regarding No. 10, CLM agreed to amend the response "to remove the reference to the Complaint and the memorandum of law and provide [Li Fen's] understanding of why David Chen ceased working for OtterSec." *See* M&C 1/3/25 Tr. 144:3-7.

Regarding No. 11, CLM and David's counsel discussed revising the interrogatory, and opposing counsel proposed revising it to: "State the facts concerning when and why David Chen came to believe that Robert Chen was concealing information from him relating to his

conversations with Jump Crypto[.]" *See* M&C 1/3/25 Tr. 149:1-153:13.  While CLM stated that they thought that they could provide a response to the proposed revised interrogatory, they would need to take it under advisement.  *See* M&C 1/3/25 Tr. 153:15-154:1.  Regarding No. 12, CLM agreed to amend the response to remove references to the Complaint and provide a substantive response, subject to their other objections.  *See* M&C 1/3/25 Tr. 147:11-14.

Regarding No. 13, CLM agreed to amend the response to provide a substantive response. *See* M&C 1/3/25 Tr. 154:9-10.   Regarding No. 16, CLM agreed to consider whether or not they could amend the response to make it clearer, notwithstanding their privilege objection.  *See* M&C 1/3/25 Tr. 157:7-159:11.

While amended answers have not yet been served, Robert has not suffered any prejudice by that failure.[3]  Other than the numerous limited depositions of David regarding alleged spoliation, no depositions have occurred, been scheduled, or even been requested.  Robert can still do everything he could have done had amended answers been served.  The above-mentioned depositions of David all would have happened regardless.  In short, Robert has suffered no substantive prejudice at all from the failure to amend answers as promised.

3. *Robert Cannot Establish Severe Prejudice with Respect to the Second Set of Interrogatories in Yao v. Chen.*

With respect to the second set of interrogatories in *Yao v. Chen*, Robert contends that he has been prejudiced by David's serving multiple sets of interrogatory answers.  *See* Memorandum, pp. 17-19.  As an initial matter, serving four sets of answers does not necessarily indicate "unnecessarily protracting the litigation, driving up costs, and evading clear responses about David's spoliation."  To the contrary, undersigned counsel has repeatedly met and

---

[3] To further mitigate any prejudice to Robert, David and Li Fen will promptly amend these answers.

conferred with opposing counsel in good faith in an effort to determine what was lost, and whether any of the lost information might be recoverable.

Robert appears to conclude, and would have this Court conclude, that Li Fen and CLM were aware that certain statements made by David were false when he made them.  For example, Robert asserts that Li Fen asserted that she was unaware of documents that had been destroyed, lost, or transferred on or after September 20, 2022.  *See* Memorandum, ¶35, citing to the Joint Record.  Robert then asserts, *with no supporting citation*, that Li Fen "…made this statement, also signed by [CLM], with full awareness at that time that David [] had deleted 17,222 Discord messages since February 2023…."  *Id.*  Robert offers no evidence to support his claim that either Li Fen, CLM, or both, knew that the referenced statement by Li Fen was false.

Robert asks the Court to make the same inferential leap with respect to CLM.  Robert asserts that "… on April 1, 2025, when CLM [] represented that David had not deleted any relevant Discord messages, David had not actually analyzed what was deleted.  Yet, David, Li Fen, and [CLM] signed three sets of Answers … stating that 'after making reasonable inquiry' no 'responsive documents' were lost…"  *See* Memorandum, p. 38.  Robert asserts, again without support, that "…none of them had, in fact, made a reasonable inquiry and when, in fact, David *had* deleted responsive and relevant documents."  *Id.*

Robert again asks the Court to assume that CLM knew, on April 1, that David had not then analyzed what was deleted.  Such a leap is not only unsupported, it is directly contradicted by the conduct of CLM in this case.  When CLM discovered prior false statements, it promptly wrote to the Court to correct the record.  Similarly, Robert asserts, again without support, that neither CLM nor Li Fen made a reasonable inquiry into David's deletion, asking the Court to assume that no such inquiry occurred.  *Id.*

6542722.1

26

Robert tries to stretch Rule 26(g), regarding CLM's signature on David's discovery responses, too far.  When Mr. Plotnick signed, he "…certifie[d] that to the best of [his] knowledge, information, and belief formed after a reasonable inquiry: […] (B) [the] discovery request, response, or objection [was]:

(i)     consistent with these rules and warranted by existing law…;

(ii)    not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii)   neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."  FED. R. CIV. P. 26(g)(1).

Attorneys do not, by their signatures, guarantee the veracity of their clients' discovery responses.  Mr. Plotnick's obligation with respect to those answers was to make a reasonable inquiry to ensure that they satisfied the requirements of Rule 26(g)(1)(B)(i).  Robert has offered no evidence even suggesting that he failed to do so.  Rather, Robert hopes the Court will assume that because some of David's answers were false, Mr. Plotnick and Li Fen knew that they were false.  No such inferential leap is warranted or, indeed, permitted.

Even if all of Robert's inferential leaps were supported by evidence and factually correct (and they are neither), any supposed prejudice from these allegedly deficient interrogatory answers has been cured by the repeated depositions of David.  Robert asked for and received two separate limited depositions of David at which his counsel was permitted to ask, and received answers to, whatever questions he deemed necessary.  There has been no prejudice as a result of the allegedly deficient interrogatory answers, and any other alleged prejudice should be addressed in the context of the Spoliation Motion.

6542722.1

27

       4.       *Robert Cannot Establish Severe Prejudice with Respect to the First and Second Sets of Interrogatories and Document Requests in Chen v. Chen.*

Here, Robert asserts that sanctions are warranted due to, in part, late discovery responses. He asserts prejudice from receiving late responses, which contained new objections. However, no information has been withheld due to the objections, and the lateness of the responses has not prejudiced Robert. Robert claims otherwise, because undersigned counsel admitted that he did not know whether the documents produced were "sufficient to identify all liquidator bots [that David was running]" and the platforms on which he was running them. *See* Memorandum, ¶47. Neither undersigned counsel nor any other lawyer is obligated to opine for opposing counsel, or certify to opposing counsel, the sufficiency of any document produced for any particular purpose. Undersigned counsel's failure to ensure that documents produced are sufficient for opposing counsel's purposes is not remotely sanction-worthy.

Robert has, as discussed above with respect to other discovery failures, not been materially prejudiced by these late responses. Discovery remains open. Robert has taken the limited depositions of David discussed above, and has taken a deposition of Ally Guo. Other than those depositions, Robert has neither requested to take, or taken, any other depositions, though the expectation is that he and his counsel are intending to take other depositions in this litigation.

There is nothing that Robert has been unable to do, that he could have done had discovery responses been timely provided. In short, these failures are insufficient to warrant the sanction of dismissal or any tantamount sanction. *See Rockwell v. Rawlins*, Civ. No. RDB-13-3049, 2014 U.S. Dist. LEXIS 146663, at *10-11 (D.Md. Oct. 15, 2014) (declining to dismiss or impose a tantamount sanction for late discovery responses because, *inter alia,* movant had "not demonstrated any prejudice arising from the late disclosure").

6542722.1

28

F.    The Sanctions Requested By Robert In The Discovery Motion Are Not Warranted In This Case

In the Discovery Motion, Robert has requested (1) dismissal of the case against him in *Yao v. Chen*, (2) default judgment in his favor in *Chen v. Chen*, and (3) monetary sanctions against David, Li Fen, and their counsel and/or appointment of a special master to oversee remaining discovery. Robert hopes that the myriad alleged discovery failures will convince this Court to issue sanctions under some combination of the Federal Rules, §1927, and the Court's inherent authority. However, as noted *infra*, none of these authorities support the ultimate sanction of dismissal or default judgment or the extent of monetary sanctions described by Robert in his Motion. In fact, the sanctionable conduct alleged by Robert in his Motion is a far cry from the conduct at issue in the cases he cites.

For instance, in *Branhaven LLC v. Beeftek, Inc.*, the plaintiff (1) did "little or nothing" to investigate responsive documents in response to discovery requests and improperly certified that it made reasonable efforts to assure that the client had provided responsive documents and (2) produced 112,106 pages only a couple of business days before 30(b)(6) depositions, without bates-stamping and in PDF format, which was not a form "in which it is ordinarily maintained" or "a reasonably usable form" as required by Federal Rule 34(b)(2)(E)(ii). 288 F.R.D. 386, 390-91 (D.Md. 2013). In granting the motion, in part, for monetary sanctions, this Court also noted that this 11th hour "document dump" included an inexcusably late production of company emails which was the singular most obvious and critical sources of information that counsel should have done much earlier. *Id*. at 391. Further, plaintiff's counsel inexplicably waited five months after the requests for production to engage an outside discovery vendor. *Id*.

Similarly, in *Six v. Generations Fed. Credit Union*, counsel repeatedly challenged the authenticity of a loan document, both orally and in writing before the Court, despite knowing

that the document was true and correct. 891 F.3d 508, 516-17 (4th Cir. 2018). In granting the motion for monetary sanctions in that case, the Court found that the attorneys "acted in bad faith and vexatiously and violated their duty of candor by hiding a relevant document and potentially dispositive document from the Court in connection with a long-running dispute over arbitrability." *Id*. at 517 (internal citations omitted).

Simply put, the conduct alleged by Robert in his Motion does not compare to the intentional, bad faith conduct in cases such as *Branhaven* and *Six*, where the conduct at issue included intentionally misrepresenting foundational elements of a claim to the tribunal or opposing parties or purposefully dumping documents in an unusable format on the eve of party depositions. Further, in both of these cases, the Court only went as far as to issue monetary sanctions. In contrast, in this case, there is no intentional bad faith conduct by David, Li Fen, or their counsel. Indeed, David and Li Fen have spent a considerable amount of money to engage an outside discovery vendor to manage the collection, preservation, and production of documents. *See* TransPerfect Affidavit. Further, as noted *infra*, Robert's claims that David, Li Fen, and their counsel misled this Court with respect to their document production are without merit. For the foregoing reasons, the sanctions requested by Robert in his Motion are not warranted, and this Court should deny the Motion.

## IV.    CONCLUSION

For the foregoing reasons, Robert has failed to demonstrate that the sanctions requested in his Discovery Motion are warranted in this case pursuant to the Federal Rules, 28 U.S.C. §1927, or this Court's inherent authority to issue sanctions. Therefore, this Court should deny Robert's Discovery Motion and decline to impose the requested sanctions of a dismissal of the claims against him in *Yao v. Chen* and a default judgment in his favor on his affirmative claims in *Chen v. Chen,* an award of attorneys' fees against David, Li Fen, and their counsel, and/or the

6542722.1

30

appointment of a special master to "oversee" the continuing discovery process, or any other sanction.

Respectfully submitted,

*/s/ Alexander M. Giles*
Alexander M. Giles (Fed. Bar No. 25474)
Michael J. Lentz (Fed. Bar No. 26097)
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: (410) 752-9700
Email:  agiles@tydings.com
        mlentz@tydings.com

*Counsel for Li Fen Yao and David Chen*

### REQUEST FOR HEARING

Pursuant to Local Rule 105.6, undersigned counsel hereby requests a hearing on the Discovery Motion.

*/s/ Alexander M. Giles*
Alexander M. Giles

6542722.1

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of March, 2026, a copy of the foregoing was served

electronically via the Court's CM/ECF system on:

Kevin P. Crenny
Rachel M. Clattenburg
Joshua A. Levy
Justin A. DiCharia
Christina Lamoureux
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington DC 20006
Tel: 202-845-3215
Fax: 202-595-8253
kcrenny@levyfirestone.com
rmc@levyfirestone.com
jal@levyfirestone.com
jdicharia@levyfirestone.com
christinal@levyfirestone.com

*Attorneys for Plaintiffs Robert Chen and
OtterSec LLC and Defendants Robert
Chen, Otter Audits LLC, and RC Security
LLC*

/s/ Alexander M. Giles
Alexander M. Giles

6542722.1

32