## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LI FEN YAO, as administrator of the Estate of Sam Mingsan Chen, | |
| Plaintiff, | Case No. 8:23-cv-00889-TDC-GLS |
| v. | |
| ROBERT CHEN, OTTER AUDITS LLC, and RC SECURITY LLC, | |
| Defendants. | |
| ROBERT CHEN and OTTERSEC LLC, | |
| Plaintiffs, | Case No. 8:24-cv-03628-TDC-GLS |
| v. | |
| DAVID CHEN, | |
| Defendant. | |

## REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DAVID CHEN, LI FEN YAO, AND THEIR COUNSEL

## **TABLE OF CONTENTS**

I.    David, Li Fen, and Their Counsel Do Not Justify Their Many Violations of Court Orders and Rules............................................................................................................................... 1

II.    David, Li Fen, and Their Counsel Misstate the Legal Standards.............................................. 2

      Rule 16(f) applies............................................................................................................... 2

      28 U.S.C. § 1927 applies .................................................................................................... 2

      Rule 37 applies .................................................................................................................... 4

III.    David's Counsel Claims His Unprofessional Conduct is "Entirely Understandable," But Provides No Factual Support ...................................................................................................... 4

IV.    David, Li Fen, and Their Counsel Do Not Refute That Their Search Terms Are Inadequate..................................................................................................................................5

V.    David, Li Fen, and Their Counsel's Abusive Document Dumps Warrant Sanctions .........7

VI.    David, Li Fen, and Their Counsel's Knowing Production of Inauthentic Documents Merits Sanctions .......................................................................................................................10

VII.    David, Li Fen, and Their Counsel's Abusive Practices Concerning Their Incomplete, Untimely, and Deficient Discovery Responses Merit Sanctions......................................11

      RFPDs.................................................................................................................................11

      ROGs ..................................................................................................................................12

VIII.    TransPerfect's Affidavit—Not Based on Personal Knowledge—Highlights David's Counsel's Deliberately Careless and Sloppy Document Discovery Process ....................14

CONCLUSION.......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Branhaven, LLC v. BeefTek, Inc.*,
    288 F.R.D. 386 (D. Md. 2013) ...............................................................................5, 8, 12

*Brito v. New Life Healthy Living, LLC*,
    No. CV CJC-24-1124, 2025 WL 2638030 (D. Md. Sept. 9, 2025)...................................12

*Class Produce Group, LLC v. Harleysville Worcester Insurance Co.*,
    No. 16-cv03431, 2018 WL 5892791 (D. Md. Nov. 9, 2018).............................................8

*In re Telescopes Antitrust Litig.*,
    Case No. 20-cv-03642, 2022 WL 3590342 (N.D. Cal. Aug. 22, 2022) ..............................7

*John W. Daniel & Co., Inc. v. Durham Public Schools Bd. of Educ.*,
    No. 1:07CV61, 2008 WL 2781164 (M.D.N.C. March 7, 2008) ........................................8

*Lomangino v. Polaris Indus. Inc.*,
    No. 21-cv-501, 2023 WL 3737110 at *5 (S.D. W.Va. May 31, 2023), *vacated as moot upon joint motion*, 2023 WL 11964440 (Oct. 31, 2023) ....................................................15

*MuniCap, Inc. v. Wilson*,
    No. 24-cv-01274, 2025 WL 3003968 (D. Md. Oct. 24, 2025)........................................ 8-9

*Rockwell v. Rawlins*,
    No. RDB–13–3049, 2014 WL 5310616 (D. Md. Oct. 15, 2014) .....................................14

*Shank v. Eagle Techs., Inc.*,
    No. 10-cv-2231, 2013 WL 4442033 (D. Md. Aug. 15, 2013)............................................3

*Six v. Generations Fed. Credit Union*,
    891 F.3d 508 (4th Cir. 2018) ............................................................................................3

*Sweetland v. Bank of Am. Corp.*,
    241 F. App'x 92 (4th Cir. 2007)........................................................................................3

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006)................................................................................7, 8, 9

*Wilson v. Volkswagen of America, Inc.*,
    561 F.2d 494 (4th Cir. 1977) ...........................................................................................25

*Yoder v. Conaway Racing & Trucking, LLC*,
    2026 WL 524140 (D. Md. Feb. 25, 2026)...................................................................2, 3, 4

**Statutes**

Fed. R. Civ. P. 16(f)...........................................................................................................2

Fed. R. Civ. P. 26(e) ......................................................................................................11, 12

Fed. R. Civ. P. 26(g) .................................................................................................8, 12, 14

Fed. R. Civ. P. 33(b)(3) ...............................................................................................11, 12

Fed. R. Civ. P. 34(b)(2)(B) ................................................................................................12

Fed. R. Civ. P. 34(b)(2)(C) ................................................................................................12

Fed. R. Civ. P. 34(b)(2)(E) ............................................................................................8, 11

Fed. R. Civ. P. 37(a)(4) .................................................................................................4, 11

Fed. R. Civ. P. 37(b)(2)(A) ..................................................................................................4

Fed. R. Civ. P. 37(c) ............................................................................................................4

Fed. R. Civ. P. 37(d)(1)(A)(ii) .............................................................................................4

28 U.S.C. § 1927 ............................................................................................................ 2-4

David, Li Fen, and their counsel's Opposition (ECF 199) ("Opp.") shows that they are doubling down on their misconduct, regret nothing, and are indifferent to this Court's Orders. Anything short of dismissal of *Yao* and default judgment in *Chen* is a license for them to continue their sanctionable conduct.

## I.    David, Li Fen, and Their Counsel Do Not Justify Their Many Violations of Court Orders and Rules.

David, Li Fen, and their counsel display a profound indifference to the Court's authority, nowhere attempting to justify their blatant and ongoing violations of Court Orders, which are described in the Memorandum in Support of the Motion for Sanctions ("Mot.").[1]

The Court's November 24, 2025, Order required Li Fen and David to take action on twenty different items. ECF 183 at 2-3. Two required them to meet and confer with Robert's counsel, which they did. *Id.* (items 5 and 8). For two others, they eventually took the required action, but not on the timeline ordered by the Court. *Id.* (items 1.a and 6). For the remaining **sixteen**, they have **still** not done what the Court ordered: they have not amended **any** discovery responses nor have they identified documents already produced in response to specific RFPDs (items 1.b, 1.c, 1.d, 1.e, 1.h, 1.i, 2, 4, 5, 7, 9, 10), *see* Motion for Sanctions at 15, 20-25; they have not produced all responsive documents with respect to items 1.b, 1.c, 1.f, 1.h, 1.i, 6, or 11, or all the identifying documents requested in items 1.d, 1.e, or 1.g, or taken steps to ensure they will be producing all such responsive documents, *see* Mot. at 8-14; and they have not followed the Court's instructions with respect to items 3, 7, and 9.

David, Li Fen, and their counsel also violated the Court's Orders to meet and confer in good faith. ECFs 95, 135, and 167. They reneged on agreements they made in the meet and confers,

---

[1] They also did not keep their commitment to the Court to "keep the Court . . . apprised of efforts to recover the data" David deleted in violation of the Preservation Order (ECF 141): they have never provided any update to the Court. *See* ECF 155.

were unprepared, lacked knowledge of prior commitments and their own discovery, and required Robert's counsel to reeducate them on discovery and their obligations. *See* Mot. at 3-4, 14-25.

## II.    David, Li Fen, and Their Counsel Misstate the Legal Standards.

**Rule 16(f) applies**: David, Li Fen, and their counsel selectively quote Rule 16(f) to argue that it is inapplicable here. Opp. at 4 & 8. Their Opposition excludes the subsection that allows sanctions—including dismissal and default judgment—for "fail[ing] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). They quote only Rule 16(f)(1)(A) and (B), Opp. at 4, and use an ellipsis to omit subsection 16(f)(1)**(C)**, which is specifically cited in Robert's briefing. Mot. at 13. This is disingenuous and misleading. As the Motion enumerates, sanctions under Rule 16(f) are warranted because they violated the Court's Orders—namely, counsel violated the Court's Scheduling Order (ECF 129), Mot. at 5-8 & 13, and the Court's Order to timely request an extension (ECF 167), Mot. at 5-6 & 13; and Li Fen, David, and their counsel violated both the Court's Orders to meet and confer in good faith (ECFs 95, 135, 167), Mot. at 3-4, 23 (summary of violations), and its Order to produce documents and discovery responses (ECF 183), Mot. at 13-14 & 22-25 (summary of violations).

**28 U.S.C. § 1927 applies**: Robert has identified many affirmative steps David's counsel have taken to delay this litigation, all of which have "multiplie[d] the proceedings. . . unreasonably and vexatiously," *Yoder v. Conaway Racing & Trucking, LLC*, 2026 WL 524140, at *6 (D. Md. Feb. 25, 2026) (cited in Opp. at 8-9), including, among other things, a months-long, unnecessary, and incomplete re-collection procedure, Mot. at 5-8 ¶¶ 1-9; document dumps from an incomplete set of documents and produced without attorney review for responsiveness, Mot. at 8-10 ¶¶ 12-17; knowingly using inadequate search terms, Mot. at 11 ¶¶ 18-19; failing to make timely, and agreed-upon, disclosures of discovery sources, Mot. at 11 ¶ 20; knowingly producing inauthentic

documents and not disclosing that fact at the time of the production, Mot. at 12 ¶ 21; not responding to discovery requests, Mot. at 15-16 ¶¶ 25-28; evasive discovery responses, Mot. at 16-17 ¶¶ 30-32, Mot. at 17-20 ¶¶ 34-41, Mot. at 20-21 ¶¶ 43-46; and repeatedly missing deadlines, *see* ECF 194-3, Appendix 2 (list of missed deadlines). Courts within the Fourth Circuit do not always require the movant to show that the party has taken "affirmative steps" to delay litigation to justify sanctions under Section 1927. *See Shank v. Eagle Techs., Inc.*, No. 10-cv-2231, 2013 WL 4442033, at *2 (D. Md. Aug. 15, 2013) ("A district court may find bad faith when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." (internal quotation marks omitted))[2]; *contra* Opp. at 8-9.

Even the cases David's attorneys cite support sanctions here. The "mosaic" of David's counsel's misconduct described throughout the Motion is comparable to that in *Six v. Generations Fed. Credit Union* (cited in Opp. at 8 and Mot. at 2-3, 25, 27-28), where the court concluded there had been "at least one clear, affirmative misrepresentation," and found that "[t]he remainder of the sanctioned conduct forms a mosaic of half-truths [and other similar conduct] . . . that, in their totality, evince lack of candor to the court and disrespect for the judicial process." 891 F.3d 508, 511 (4th Cir. 2018). David's counsel's affirmative steps to stall discovery are similar to those described in *Sweetland v. Bank of Am. Corp.* (cited in Opp. at 8 and Mot. at 2), which applied sanctions under § 1927 based on "affirmative steps to stall the discovery process through evasive and nonresponsive answers." 241 F. App'x 92, 97 (4th Cir. 2007).

Although "[t]he Fourth Circuit has not addressed . . . directly" the "applicable evidentiary standard" for sanctions under § 1927, *Yoder*, 2026 WL 524140, at *8, Robert has nonetheless

---

[2] Robert cited *Shank* in his Motion. Mot. at 14. The Opposition makes no attempt to distinguish this case or argue that this standard should not apply here.

3

demonstrated by clear and convincing evidence that sanctions are warranted. The totality of the evidence in the Motion and accompanying Declaration support "a firm belief or conviction," *id.* at *8, that David's counsel have engaged in discovery abuses that merit sanctions under Section 1927.[3] Combined with David's counsel's conduct set forth in the companion Spoliation Motion (ECF 197-1), this conviction is undeniable.

**Rule 37 applies**: Sanctions under Rule 37(a)(4), (b)(2)(A), (c), and (d)(1)(A)(ii) are appropriate. Mot. at 1-2, 5, 13-14, 24–25, 26-29. David, Li Fen, and their counsel do not address, and therefore concede, that Rule 37(a)(4) and Rule 37(d)(1)(A)(ii) form a proper basis for sanctions. With respect to Rule 37(c), they again misstate the Rule by falsely claiming that "[t]he permissible sanctions under subpart (c) of Rule 37 do not include dismissal, in whole or in part, default judgment, or contempt" because that provision of the Rule "authoriz[es] sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(iv), **but not (v)-(vii)**." Opp. at 4 (emphasis added). Rule 37(c)(1)(C) specifically provides that the Court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A**)(i)—(vi)**") (emphasis added). Section (v) provides for dismissal as a potential sanction, and Section (vi) provides for default judgment.

### III.   David's Counsel Claims His Unprofessional Conduct is "Entirely Understandable," But Provides No Factual Support.

David's counsel says his unprofessional conduct was the "direct result" of "offensive behavior" by Robert's counsel, Opp. 10-11, but cannot point to any such behavior because there is none. David's counsel does not address their refusal to prepare for meet and confers, Mot. at 3-

---

[3] David's counsel claim, with no explanation, that they cannot be sanctioned under §1927 for "(1) David and Li Fen's document production and (2) David and Li Fen's written discovery responses," (Opp. at 10). David's counsel drafted and signed deficient discovery responses and oversaw the flawed document production process, both of which have multiplied proceedings. This conduct is the exact type sanctionable under § 1927. *See* Mot. at 2 (citing *Sweetland*, 241 F. App'x at 97).

4. *See also* Decl. of R. Clattenburg, ECF 194-4 (hereinafter "Decl.") ¶¶ 4-22. Moreover, Li Fen is the *plaintiff*; if her case is "uncomfortable" for her, Opp. at 13, that is self-inflicted. Finally, David's counsel's claim that Robert's counsel are "over-litigat[ing]," to make David and Li Fen "spend more and more money[,]" Opp. at 13, is unfounded: if David and Li Fen had taken their discovery duties seriously, discovery would have run smoothly and with minimal motion practice and court involvement, as it is designed to do. *See* Mot. at 27 (quoting *Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. 386, 393 (D. Md. 2013)).

## IV.    David, Li Fen, and Their Counsel Do Not Refute That Their Search Terms Are Inadequate.

David, Li Fen, and their counsel do not address the severe prejudice caused by their inadequate document search, which has deprived Robert of evidence needed to defend against claims in *Yao* and to pursue his own claims in *Chen*, particularly as to the Jump-related claims and all of the code-related claims. Mot. at 12-13 ¶¶ 22-23; *id.* at 26-27. They also do not refute that the search terms are inadequate; they argue only that Robert should have designed their search process for them. Opp. at 15-17.

David, Li Fen, and their counsel never designed a search protocol to locate their documents responsive to the *specific* RFPDs in both cases. Instead, they plucked two sets of search terms that they stumbled upon, the Code Terms and the *Yao* Terms, Mot. at 11 ¶ 18, without understanding how prior counsel had developed those terms or what types of documents they were meant to find. They then sent these to their discovery vendor, Ex. 2, J.R.045 (9:7–22), who ran **one** set of the terms against an incomplete set of documents, and produced every hit without attorney review. Affidavit of Jacob Schaub, ECF 200 (hereinafter "TransPerfect Aff.") ¶¶ 28, 34-39. David's

5

counsel and their discovery vendor cannot decide *which* set of search terms they ran;[4] regardless, even running both sets is not adequate, as Robert's counsel have been explaining for months. *See* Ex. 2, J.R.045-46 (9:7-15:4) (explaining the origins of the Code Terms and *Yao* Terms to David's counsel, and why the terms were inadequate); Ex. 3, J.R.112-14 (8:17-11:1) (explaining to David's counsel the scope of their document search process obligations, and offering to help draft search terms); Mot. at 11 ¶¶ 18-19.

The inadequacy of their search protocol is evident from the RFPDs that request documents "sufficient to identify" certain facts, such as RFPDs 20-23 in *Chen*. Ex. 20, J.R.580-81. These requests are not amenable to search terms, but David's counsel, when asked how he was locating documents responsive to these Requests, stated it was not his "responsibility" to identify documents produced in response to these RFPDs. Ex. 4, J.R.174-75 (28:22-29:2); Decl. ¶ 22. He also confirmed that he had **<u>never</u>** checked whether his clients had actually produced documents sufficient to identify the facts requested in these RFPDs, Ex. 4, J.R.174-75 (29:3-6) (Robert's counsel: "How do you know that they are sufficient to show? Have you actually checked this?" Mr. Giles: "No."). This is despite David having stated that he would produce these documents. Ex. 20, J.R. 580-81.

The Opposition also falsely suggests the parties agreed to a universal set of search terms. Opp. at 14-15. Not so. *Compare* Opp. at 19 *with* Mot. at 11 ¶¶ 18-19. (For a history of the two sets of search terms, with citations to the Joint Record, *see* Declaration (ECF 194-4) at Paragraphs 57-

---

[4] David's counsel and TransPerfect disagree about which search terms the discovery vendor ran. David's counsel emailed Robert's counsel on March 16, 2026, that "TransPerfect evidently only used the second set of search terms [the Code Terms][.]" TransPerfect says the opposite: "TransPerfect discovered they had not run the second set of search terms[.]" TransPerfect Aff. ¶ 35.

68. David's counsel have provided nothing to refute this history.)[5] Furthermore, the Opposition falsely states that Robert's counsel did not suggest additional search terms. Opp. at 16. Although David's counsel, as the one with the information about David's documents and their locations, should be drafting the terms and search protocol, Robert's counsel *did* offer to draft search terms, Ex. 3, J.R.112-14 (9:2-8), and proposed additional search terms on December 19, 2025, as part of the spreadsheet that was later submitted to the Court on January 14, 2026 (ECF 191).

## V.    David, Li Fen, and Their Counsel's Abusive Document Dumps Warrant Sanctions.

David and Li Fen's arguments about document production obligations start from a false premise: that a party can unilaterally decide to run search terms and produce all of the hits without any review for responsiveness, Opp. at 15, citing *In re Telescopes Antitrust Litig.*, Case No. 20-cv-03642, 2022 WL 3590342, at *4 (N.D. Cal. Aug. 22, 2022) and *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006), for support. This is wrong. Among other distinguishing facts, *In re Telescopes* involved four months' worth of negotiations between the parties, Hearing Transcript at 24:3-8, *In re Telescopes*, No. 20-cv-3642 (N.D. Cal., Nov. 8, 2021) (ECF 213), related to more than 1,000 agreed-upon ESI search terms, and the parties had *agreed* that they would run the heavily negotiated search terms, conduct a privilege screen, and produce the documents without a manual review for responsiveness, *see* Opp. to Mot. to Enforce at 7, *In re Telescopes*, No. 20-cv-3642 (N.D. Cal., July 19, 2022) (ECF 245). While *Treppel* encourages the parties to stipulate to a search methodology, Opp. at 15, it also makes clear that the lack of a stipulated procedure "does not excuse [the responding party]'s failure to produce" documents they

---

[5] During a December 17, 2025, meet and confer, when Robert's counsel asked if David's counsel had actually gone through the document requests in *Chen v. Chen* to confirm they were using search terms that would locate all responsive documents, David's counsel had no answer. Decl. ¶ 68; Mot. at 11 ¶ 19. David's counsel nevertheless proceeded to tell the Court the search terms were adequate. ECF 190 at 8.

should have produced. 233 F.R.D. at 374. The *Treppel* court instructed the responding party to commence with a search and production strategy (to which the opposing party had not agreed), but was clear that this was "an interim step that is subject to revision" once the opposing party "articulated any specific concerns about the scope of the search," *id.* at 375, as Robert has countless times here.

The Opposition also relies on the false premise that David's counsel was required, or asked by Robert, to perform a "document-by-document review" of "roughly 46 million electronic documents." Opp. at 15. This, too, is false. The 46 million "documents"[6] represent the total number of documents *collected* by David and his counsel, not responsive ones. *Id.* Robert's counsel never asked David's counsel to individually review the entire collected digital footprint of their client.

Document dumps are not authorized by federal law, contrary to David's claim. Opp. at 17. Robert's briefing explained that David and Li Fen's document dump should be sanctioned under Rule 26(g), and that similar tactics merited sanctions in *Branhaven, LLC v. BeefTek, Inc.*, 288 F.R.D. at 393, and in *John W. Daniel & Co., Inc. v. Durham Public Schools Bd. of Educ.*, No. 1:07CV61, 2008 WL 2781164, at *1 (M.D.N.C. March 7, 2008). Mot. at 2, 14. David cites *Class Produce Group, LLC v. Harleysville Worcester Insurance Co.*, No. 16-cv03431, 2018 WL 5892791 (D. Md. Nov. 9, 2018), Opp. at 17, which is not to the contrary and not applicable. It concerns whether a production of "hard copy documents in file cabinets" complied with Rule 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business or must organize and label them[.]"). *Class Produce*, 2018 WL 5892791, at *4. *Class Produce* did not concern a document dump, and in fact, "Rule 34(b)(2)(E)(i)," on which *Class*

---

[6] David's counsel and TransPerfect artificially inflate the number of documents collected by calling each individual Discord message (i.e., an individual text message) a "document." *See* Ex. 24, J.R.611 ("[Y]ou are correct that the term 'document' . . . refers to each separate Discord message.").

*Produce* relies, "prohibits simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *MuniCap, Inc. v. Wilson*, No. 24-cv-01274, 2025 WL 3003968, at *9 (D. Md. Oct. 24, 2025). This is exactly what David, Li Fen, and their counsel have done here. Search terms obviously can play a role in discovery, but the party responding to document requests "must conduct a diligent search, which involves developing a reasonably comprehensive search strategy." *Treppel*, 233 F.R.D. at 374.

The Opposition fails to explain that—until Mr. Giles and his firm took over the case—David and Li Fen were *not* producing every document that hit on (unspecified) search terms. Therefore, Robert's counsel had no reason to suspect that, after 14 productions, David and Li Fen would suddenly switch their production process, by handing the reins (and inadequate search terms) to TransPerfect with little to no attorney oversight, as they did in the fall of 2025. TransPerfect Aff. ¶¶ 28-32; 34-36 (starting with the productions after Mr. Giles became lead counsel, the discovery vendor ran searches and produced hits, apparently without counsel review).

Furthermore, the Opposition ignores the fact that Li Fen and David's re-collected data is the least complete set of data and that it might be missing even more (deleted by David) than what is described in the pending Motion for Spoliation Sanctions. *See* Mot. at 7, 13–14. Their argument that the re-collection "reduced the risk of an incomplete production," Opp. at 21, makes no sense in the face of David's counsel's statements that the re-collected data is missing documents David deleted after the initial collection. Mot. at 7 (citing Ex. 4, J.R.171–72 (16:11-22, 18:9-14)). (They also never raised this as a reason they needed to re-collect everything back in September, when they first raised the re-collection with the Court. *See* ECF 162 at 3.)

David and Li Fen complain that it is inconsistent for Robert to claim both that they provided a document dump and that they should have used "*more* search terms to locate responsive

documents." Opp. at 15-16. Not so. The problem is that David and Li Fen are producing hundreds of thousands of documents that hit on an incomplete list of search terms, but the document hits are not **responsive** documents: *i.e.*, documents that respond to specific RFPDs. Much of their production is not responsive to any document request. Thus, they have dumped irrelevant and non-responsive documents and also used inadequate search terms.

The prejudice from David and Li Fen's abusive document production process is manifest: Robert does not have the evidence he needs to defend against claims that David did not know about the Jump negotiations prior to the 10% transfer, or to pursue his claims that David is profiting from the Codes he stole (and however many iterations of the Codes David is now running, which is impossible to know because of his failure to respond to discovery). The Opposition suggests that David and Li Fen "have . . . produced all remaining responsive documents other than those inadvertently omitted by TransPerfect's recently discovered error." Opp. at 23. Even if this were true, which it is not, it would not cure the prejudice caused by months of delay and unnecessary work, *see* Mot. at 27. It is false, though, as the productions are missing relevant and responsive documents. *Supra* Part IV. David and Li Fen are also withholding documents responsive to RFPDs 5 and 7 based on their unilateral view of relevance, *see* ECF 187 at 1.b and 1.c. & ECF 190 at 1.b & 1.c, a position they took in a January 22, 2026, letter to the Court, but never timely presented in any written discovery, and which ignores the Court's directive at the November 20, 2025, hearing that it was too late for David and Li Fen to make objections. ECF 184 (110:12-19) (Tr. Hg. Nov. 20, 2025). David's counsel glosses over David's destruction of evidence, including his 10,000 Discord messages to Ally Guo he never produced. *See* ECF 197-1 at 13-14; 16-17.

VI.   **David, Li Fen, and Their Counsel's Knowing Production of Inauthentic Documents Merits Sanctions.**

The Opposition's chronology of the Fifth Production and David's counsel's belated

10

attempts to fix it, Opp. at 18-19, does nothing to cure the prejudice to Robert, whose counsel had to spend significant time to discover their errors independently, serve a motion to compel, and hold three meet and confers on this issue—causing months of delay to this litigation, Mot. at 12 ¶¶ 21, and Decl. at ¶¶ 95-101, which they do not dispute.[7]

### VII. David, Li Fen, and Their Counsel's Abusive Practices Concerning Their Incomplete, Untimely, and Deficient Discovery Responses Merit Sanctions.

David's counsel concedes that they have not amended their discovery responses. *See* Opp. at 22, 25, 27, 28. They provide no justification for not having done so, *id.*, and brush off Robert's claims of prejudice with little explanation. Nor do they acknowledge that their failures to respond and amend discovery violate: *first,* the Court's Orders, including ECF 183 (ordering responses to discovery and to amend responses), and ECFs 95, 135, 167 (ordering good faith meet and confers, which was violated by noncompliance with agreements to amend discovery that were reached at meet and confers); and *second*, Federal Rules 26(e), (g), 33(b)(3), 34(b)(2), and 37(a)(4). *See* Mot. at 14-25. David, Li Fen, and their counsel's indifference to the Court's authority and the Federal Rules reflects their *modus operandi* in discovery: they do what they want, when they want, and have no regard for the judicial process that governs these cases.

Beyond the disdain David, Li Fen, and their counsel have for the judicial process, as shown by their indifference to Court Orders and the Federal Rules, their failures to provide complete and accurate written discovery responses severely prejudice Robert. Mot. at 16, 17, 20, 22. Their suggestion that Robert take more depositions and conduct more discovery, which would be mired in the same issues raised here, does not cure this prejudice. Opp. at 27, 28.

---

[7] The Court did not deny a request to file a motion to compel related to the Fifth Production, *contra* Opp. at 18; rather, the Court's Order recognized that ECF 128-1was attached only as an exhibit "to provide context to the discovery issues raised" in correspondence at ECF 128. ECF 136.

**RFPDs**: David, Li Fen, and their counsel ignored the Court's Order, ECF 183 at items 1.b, 1.c, 1.d, 1.e, 1.f, 1.h, 1.i, 2, 6, 7, 9, 10, and their obligations, to identify the documents produced in response to each RFPD under Rules 26(e), 26(g), 34(b)(2)(B) and (C). *See* Mot. at 13, 15-16, 21, 23-24. In not amending their responses to RFPDs to identify whether they have produced responsive documents *specific to each request served on them*, David and Li Fen have deprived Robert of information about what evidence exists to defend against *Yao* claims and to support his claims in *Chen.* This is sanctionable. *See Brito v. New Life Healthy Living, LLC*, No. CV CJC-24-1124, 2025 WL 2638030, at *3 (D. Md. Sept. 9, 2025); *see* Mot. at 13, 16 (citing *Brito*). In *Brito*, the Court sanctioned defendants whose document responses "indicate[d] that responsive documents have already been produced but fail[ed] to specifically identify those documents by a production date or Bates number, leaving Plaintiffs with no straightforward way to track the documents produced to their corresponding requests." 2025 WL 2638030, at *3. David and Li Fen have done exactly this, but on an even larger scale, across both cases. Their failure to amend and serve complete discovery responses has also deprived Robert of David counsel's "certifi[cation] that [he] has made a reasonable effort to assure that the client *has provided* all the information and documents available to him that are responsive to the discovery demand." *Branhaven*, 288 F.R.D. at 389 (emphasis in original) (quoting Adv. Notes to Rule 26(g)); *see* Mot. at 2, 24, 27.

The refusal to amend and provide proper certifications is likely a result of David and Li Fen's counsel's improper protocol that can be summarized as "*produce, don't review*," (*see* TransPerfect Aff. at ¶¶ 28-32; 34-36), a protocol they apparently instructed their discovery vendor to follow, and which prevents them from knowing whether they truly are identifying all responsive documents.

**ROGs:** Knowingly providing false and misleading responses to ROGs is self-evidently

prejudicial to Robert, who is entitled to answers that are "full[]" and provided "under oath." *See* Mot. at 17–20; Fed. R. Civ. P. 33(b)(3). David, Li Fen, and their counsel knew that their many false statements were false when they made them, and they are wrong to suggest otherwise. Opp. at 26–27. They still have not corrected them but instead claim that Robert's arguments are unsupported, *see id.*, which is also untrue, and they minimize the nature of the amendments. *See* Mot. at 18, 19. Repeated depositions of David do not cure the prejudice done to Robert by incomplete and false discovery responses, *contra* Opp. at 27; rather, they compound the prejudice, as Robert had to spend significant resources on his counsel preparing for and taking depositions that should not have been necessary in the first place had David not deleted massive amounts of evidence or had he, his mother, and his counsel not lied about this for months. That discovery remains open does not mitigate the prejudice either, *contra* Opp. at 28, since discovery remains open only because of the extensions necessitated by *their* bad faith conduct prolonging this case.

Li Fen claims there is no evidence showing that she knew David had deleted 17,222 Discord messages when she claimed, in an interrogatory response, that she was unaware that David destroyed, lost, or transferred documents on or after September 20, 2022. Opp. at 26. It is preposterous for her to claim that on April 10, 2025, when she signed her interrogatory response, Ex. 9, J.R.391-409, she did not know about David's Discord deletions, which had been the primary issue in *her case* since the end of January 2025. *See e.g.*, ECFs 121-7, 121-8 & Ex. 23 J.R.607-08 (correspondence between counsel about the 17,222 deletions dating from January, February, and April 1, 2025); ECF 176-3 (17:1:16) (Li Fen's counsel discussing the Discord deletions at a February 2025 hearing). *See* Mot. at 18 ¶ 35. The Opposition also asks the Court to ignore evidence showing that David, Li Fen, and their counsel had not made a reasonable inquiry into David's deletions prior to signing interrogatories claiming that they had done so. Opp. at 26; Mot. at 18-19

¶¶ 35, 37, 38. Li Fen and David served deficient responses to the Second Set of Interrogatories on April 10, May 30, and July 17, 2025, Mot. at 18-19 ¶¶ 35, 37, 38, all **before** David ever looked at documents to analyze the relevance of his deletions, Mot. at 19 ¶ 38. Thus, David, his mother, and their counsel did not conduct a reasonable inquiry, as they claimed, before falsely stating that David had not deleted any relevant Discord messages.[8]

David's counsel also claims that "no information has been withheld due to the objections." Opp. at 28. This is incorrect. S*ee supra* at 10 (regarding ECF 190 and RFPDs 5 & 7). (And if it were true, it would belong in the overdue amended responses, not in an Opposition.) *Rockwell v. Rawlins*, No. RDB–13–3049, 2014 WL 5310616 (D. Md. Oct. 15, 2014), is inapplicable because Robert has demonstrated serious prejudice by these late disclosures, as he has been and continues to be deprived of material evidence. That case involved only one set of late answers to interrogatories, which had been served, unlike here where none of David or Li Fen's written discovery responses are complete and served. *Id.* at *4.

### VIII. TransPerfect's Affidavit—Not Based on Personal Knowledge—Highlights David's Counsel's Deliberately Careless and Sloppy Document Discovery Process.

David's counsel have long used their discovery vendor, TransPerfect, to excuse their own discovery malfeasance. *E.g.*, Ex. 2, J.R.049 (19:14-20:4); Ex. 3, J.R.116 (15:7-15:16); Ex. 4, J.R.171 (7:15-18; 34:18-35:4). They do so again here. In an Affidavit, TransPerfect's affiant states that "[s]ome of the information set forth in this Affidavit was collected by others, and such information is not necessarily within my personal knowledge," a caveat that renders the Affidavit inadmissible hearsay. Putting that issue aside, TransPerfect's account does not relieve David, Li

---

[8] Contrary to David's argument, Opp. at 27, counsel's signature on a discovery response means that the attorney is certifying "after a reasonable inquiry," that the response is "not interposed for any improper purpose" and is not "unreasonable." Fed. R. Civ. P. 26(g)(1). A false response is an unreasonable one, and if it is knowingly false, it is certainly interposed for an improper purpose.

Fen, and their counsel of their responsibility for their abusive, vexatious, and bad faith conduct. TransPerfect was their agent, working at their direction, and "the litigant and its attorney are ultimately responsible for complying with the Federal Rules of Civil Procedure and court orders." *Lomangino v. Polaris Indus. Inc.*, No. 21-cv-501, 2023 WL 3737110, at *5 (S.D. W.Va. May 31, 2023), *vacated as moot upon joint motion*, 2023 WL 11964440 (Oct. 31, 2023).

The TransPerfect Affidavit illustrates more examples of David, Li Fen, and their counsel's ongoing bad faith and unreasonable discovery conduct. *See* Mot.; App'x 1 & 2. For instance:

- David and Li Fen insist that they need not convert the plainly unusable JSON files for review or production. Opp. at 18; *see* Mot. at 9-10 ¶¶ 16–17. But even their own discovery vendor disagrees, acknowledging that JSON files needed to be converted before their review. TransPerfect Aff. ¶ 16 (TransPerfect "converted [JSON data] to load it into Relativity for review.").

- Exhibit A allegedly lists, "on the right-hand side[,]" the new sources of data David and Li Fen collected in the fall of 2025. *Id.* ¶ 8. But the right-hand column of each spreadsheet includes only dates. Exhibit B purports to be a list of the Discord "servers and the channels" that TransPerfect collected in the fall of 2025. *Id.* ¶ 9. It lacks any of David's direct messages with key witnesses including Philip Papurt, Ally Guo, or Robert, and it uses unexplained labels such as "141-0010 Servers," "185-0007 Servers" and "142-0002 Direct Messages."

- The list of new and original collections in Exhibit A is inconsistent with Li Fen's response to ROG 2 (amended three times already) in the second set of *Yao v. Chen* interrogatories, which asked her to "[i]dentify with specificity what sources of documents [she] gathered for purposes of discovery in this case" and when. The ROG response is missing all 73 data collections listed as "2025 Preservation Order & Refresh Collections", over 50 of which predated the latest (August 29, 2025) amendment of the ROG response.

The affidavit does nothing to cure the pervasive prejudice David, Li Fen, and their counsel have caused Robert.

## CONCLUSION

The Court should grant the underlying Motion and award sanctions.

Dated: April 13, 2026                                Respectfully submitted,

15

/s/ Rachel M. Clattenburg
Rachel M. Clattenburg
Joshua A. Levy
Christina M. Lamoureux
Justin A. DiCharia
Kevin P. Crenny
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington DC 20006
Tel: 202-845-3215
Fax: 202-595-8253
rmc@levyfirestone.com
jal@levyfirestone.com
christinal@levyfirestone.com
jdicharia@levyfirestone.com
kcrenny@levyfirestone.com

*Attorneys for Defendants Robert Chen, Otter Audits LLC, and RC Security LLC, and Plaintiffs Robert Chen and OtterSec LLC*

16

## CERTIFICATE OF SERVICE

I certify that, on April 13, 2026, the foregoing Reply Brief was served on counsel of record via e-filing on CM/ECF.

/s/ Rachel Clattenburg